## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and )
NOKIA, INC., )
               )
         Plaintiffs, )
               )     C.A. No. 05-16-JJF
               )
         v. )
               )
INTERDIGITAL COMMUNICATIONS )
CORPORATION and INTERDIGITAL )     **DEMAND FOR JURY TRIAL**
TECHNOLOGY CORPORATION, )
               )
         Defendants. )

## OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1), 12(B)(6), AND 12(H)(3)

OF COUNSEL:

D. Dudley Oldham
Robert S. Harrell
Richard S. Zembek
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Telecopier: (713) 651-5246
doldham@fulbright.com
rharrell@fulbright.com
rzembek@fulbright.com

Dan D. Davison
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
Telecopier: (214) 855-8200
ddavison@fulbright.com

Dated: March 15, 2005

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, Delaware 19801
Telephone: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants Interdigital Communications Corporation and Interdigital Technology Corporation*

## TABLE OF CONTENTS

PAGE

TABLE OF CITATIONS ............................................................................... iv

PROCEDURAL BACKGROUND.................................................................... 1

SUMMARY OF ARGUMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................... 4

I.    InterDigital Has Long Played a Critical Role in the Development
      of Digital Wireless Technology ............................................................ 4

II.   Nokia's Scorched-Earth Campaign Against InterDigital .................... 6

ARGUMENT ................................................................................................... 8

I.    Nokia's Declaratory Judgment Action Should Be Dismissed for
      Lack of Subject Matter Jurisdiction Because No Actual
      Controversy Exists................................................................................. 8

      A.   Standard for Dismissal Under Federal Rules of Civil
           Procedure 12(b)(1) and 12(h)(3)................................................... 8

      B.   Requirements for Declaratory Relief in Patent Actions ............... 8

      C.   Nokia Lacks a Reasonable Apprehension of Suit as a
           Matter of Law Because It Currently Is a Licensee of the
           Patents in Dispute ...................................................................... 10

      D.   Nokia Has Failed to Prove a Reasonable Apprehension of
           Suit for Patent Infringement....................................................... 15

           1.   The Mere Statement That a Product "Falls Within"
                a Patent Does Not Support a Reasonable
                Apprehension of Suit ......................................................... 16

           2.   The Only Allegations That Colorably Refer to a
                Threat of Litigation Do Not Support a Reasonable
                Apprehension of Suit ......................................................... 17

      E.   Nokia Has Failed to Prove the Existence of a Reasonable
           Apprehension of Suit Based on Future 3G Products .................... 21

**TABLE OF CONTENTS**
**(Continued)**

PAGE

II.    Alternatively, This Court Should Exercise Its "Unique and Substantial" Discretion Not to Hear Nokia's Declaratory Judgment Action Because Nokia Has Brought This Action for Improper Purposes ............................................................................................... 23

III.   Nokia's Claim Under Section 43(a) of the Lanham Act Should Be Dismissed Because It Fails to State a Claim Upon Which Relief May Be Granted ............................................................................... 25

A.    Standard for Dismissal Under Federal Rule of Civil Procedure 12(b)(6) ........................................................... 26

B.    Requirements for a Claim Under Section 43(a) of the Lanham Act ........................................................................ 27

C.    InterDigital's Alleged Representations Could Not Have Been False or Misleading ............................................... 30

1.    InterDigital's Alleged Representations That Its 3G Patents Cover Nokia's 3G Products Could Not Have Been False or Misleading Because Nokia Is a Licensee of Those Patents .......................................... 30

2.    InterDigital's Alleged Representations Regarding the Validity of the 3G Patents in Dispute Could Not Have Been False or Misleading Because Patents Are Presumptively Valid ........................................... 30

3.    InterDigital's Alleged Representations That Its 3G Patents Cover Nokia's 3G Products Could Not Have Been False or Misleading Because Nokia Does Not Claim That All of the Essential 3G Patents Are Noninfringed or Invalid ................................. 32

D.    InterDigital's Alleged Representations Could Not Have Influenced Purchasing Decisions and There Could Not Have Been "Actual Deception or a Tendency to Deceive a Substantial Portion of the Intended Audience" ............................. 33

E.    InterDigital's Alleged Representations Could Not Have Been "Commercial Advertising" .................................... 34

F.    The Advertised Goods Have Not "Traveled in Interstate Commerce" ......................................................................... 35

## TABLE OF CONTENTS
### (Continued)

PAGE

G.    Nokia Could Not Have Suffered Any Injury From InterDigital's Alleged Representations ........................................... 37

H.    InterDigital Could Not Have Made the Alleged Representations in Bad Faith ........................................................ 38

CONCLUSION ................................................................................................. 39

# TABLE OF CITATIONS

**PAGE(S)**

## CASES

*Allen v. Howmedica Leibinger, Inc.*,
    197 F. Supp. 2d 101 (D. Del. 2002), *aff'd*,
    2003 U.S. App. LEXIS 984 (Fed. Cir. Jan. 16, 2003) ......................................28, 31

*Amana Refrigeration, Inc. v. Quadlux, Inc.*,
    172 F.3d 852 (Fed. Cir. 1999)..................................................................................22

*Apotex, Inc. v. Pfizer, Inc.*,
    2004 U.S. Dist. LEXIS 26232 (S.D.N.Y. Jan. 3, 2005)..........................................19

*CAE Screenplates, Inc. v. Beloit Corp.*,
    957 F. Supp. 784 (E.D. Va. 1997) ...........................................................................19

*Conley v. Gibson*,
    355 U.S. 41 (1957).....................................................................................................26

*Cygnus Therapeutic Sys. v. Alza Corp.*,
    92 F.3d 1153 (Fed. Cir. 1996).......................................................................9, 10, 23

*digiGAN, Inc. v. iValidate, Inc.*,
    2004 U.S. Dist. LEXIS 1324 (S.D.N.Y. Feb. 3, 2004)............................................32

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
    232 F.3d 173 (3d Cir. 2000)......................................................................................26

*DuPont Dow Elastomers, L.L.C. v. Greene Tweed of Del., Inc.*,
    148 F. Supp. 2d 412 (D. Del. 2001).........................................................................18

*EMC Corp. v. Norand Corp.*,
    89 F.3d 807 (Fed. Cir. 1996)..............................................................................23, 24

*Enzo Life Sci., Inc. v. Digene Corp.*,
    295 F. Supp. 2d 424 (D. Del. 2003)............................................................28, 35, 36

*Fina Oil & Chem. Co. v. Ewen*,
    123 F.3d 1466 (Fed. Cir. 1997)..................................................................................9

*Gen-Probe Inc. v. Vysis, Inc.*,
    359 F.3d 1376 (Fed. Cir. 2004)........................................................................*Passim*

*Golan v. Pingel Enter., Inc.*,
    310 F.3d 1360 (Fed. Cir. 2002)................................................................................29

*Gould Elec. Inc. v. United States,*
    220 F.3d 169 (3d Cir. 2000)..................................................................................8

*In re NAHC, Inc. Sec. Litig.,*
    306 F.3d 1314 (3d Cir. 2002)...............................................................................27

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.,*
    311 F.3d 198 (3d Cir. 2002)..................................................................................26

*Indium Corp. of America v. Semi-Alloys, Inc.,*
    781 F.2d 879 (Fed. Cir. 1985)......................................................................9, 19, 21

*Isco Int'l v. Conductus, Inc.,*
    279 F. Supp. 2d 489 (D. Del. 2003),
    *aff'd*, 2005 U.S. App. LEXIS 1709 (Fed. Cir. Feb. 3, 2005)..................................28

*Lang v. Pacific Marine & Supply Co.,*
    895 F.2d 761 (Fed. Cir. 1990)...................................................................22, 23, 36

*Laube v. KM Europa Metal AG,*
    1998 U.S. Dist. LEXIS 3921 (S.D.N.Y. Mar. 27, 1998) ........................................32

*Lum v. Bank of America,*
    361 F.3d 217 (3d Cir.), *cert. denied*, 125 S. Ct. 271 (2004) ..................................27

*Metabolite Labs., Inc. v. Competitive Techs., Inc.,*
    370 F.3d 1354 (Fed. Cir. 2004)...............................................................12, 13, 14

*Mikohn Gaming Corp. v. Acres Gaming, Inc.,*
    165 F.3d 891 (Fed. Cir. 1998)...............................................................................29

*Morse v. Lower Merion Sch. Dist.,*
    132 F.3d 902 (3d Cir. 1997)..................................................................................26

*Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,*
    57 F.3d 1051 (Fed. Cir. 1995)...............................................................................10

*Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.,*
    75 F.3d 1568 (Fed. Cir. 1996)...............................................................................28

*Shell Oil Co. v. Amoco Corp.,*
    970 F.2d 885 (Fed. Cir. 1992)...................................................................16, 17, 25

*Sierra Applied Sci., Inc. v. Advanced Energy Indus., Inc.*
    363 F.3d 1361 (Fed. Cir. 2004)................................................................9, 10, 23

*Spectronics Corp. v. H.B. Fuller Co.,*
    940 F.2d 631 (Fed. Cir. 1991).................................................................................9

*Springs Window Fashions L.P. v. Novo Indus., L.P.*,
    323 F.3d 989 (Fed. Cir. 2003)..................................................................29

*Teva Pharm. USA, Inc. v. Pfizer Inc.*,
    2005 U.S. App. LEXIS 1078 (Fed. Cir. Jan. 21, 2005) ...........................10

*Torpharm, Inc. v. Pfizer Inc.*,
    2004 U.S. Dist. LEXIS 11930 (D. Del. June 28, 2004)....................17, 21

*Traffix Devices, Inc. v. Marketing Displays, Inc.*,
    532 U.S. 23 (2001)..................................................................................28

*Turicentro, S.A. v. American Airlines Inc.*,
    303 F.3d 293 (3d Cir. 2002)......................................................................8

*U.S. Express Lines, Ltd. v. Higgins*,
    281 F.3d 383 (3d Cir. 2002)...............................................................26, 27

*Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*,
    338 F.3d 1353 (Fed. Cir. 2003)..................................................................9

*Waters Corp. v. Hewlett-Packard Co.*,
    999 F. Supp. 167 (D. Mass. 1998) ..........................................................19

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)..................................................................................23

*Wright Med. Tech., Inc. v. Osteonics Corp.*,
    914 F. Supp. 1524 (W.D. Tenn. 1995).....................................................18

*Zenith Elecs. Corp. v. Exzec, Inc.*,
    182 F.3d 1340 (Fed. Cir. 1999).................................................28, 29, 31

**STATUTES, RULES & CODES**

15 U.S.C. § 1125(a)(1)..........................................................1, 27, 32, 36

28 U.S.C. § 2201(a) ..........................................................................9, 23

35 U.S.C. § 282.......................................................................................31

35 U.S.C. § 287.......................................................................................29

FED. R. CIV. P. 12(b)(1)......................................................................1, 3, 8

FED. R. CIV. P. 12(h)(3)......................................................................1, 3, 8

Fed. R. Evid. 201(b)..............................................................................27

## PROCEDURAL BACKGROUND

On January 12, 2005, Plaintiffs Nokia Corporation and Nokia, Inc. (collectively, "Nokia") filed a complaint seeking a declaratory judgment that: (1) certain claims of various patents owned by Defendants InterDigital Communications Corporation ("IDCC") and InterDigital Technology Corporation ("ITC") (collectively, "InterDigital") are invalid; and (2) Nokia does not infringe certain claims of those patents. Complaint, pp. 8-34 (D.I. #1). Nokia also alleges that InterDigital has violated Section 43(a) of the Lanham Act (11 U.S.C. § 1125(a)). *Id.* at 34-35. In response – and prior to filing its answer and discovery – InterDigital files a motion to dismiss Nokia's claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3) as well as this brief in support.[1]

## SUMMARY OF ARGUMENT

The centerpiece of Nokia's complaint is its request for a declaratory judgment that its future 3G products do not infringe certain of InterDigital's 3G patents and that certain of those patents are invalid. Controlling legal precedent, however, bars Nokia's declaratory judgment action because Nokia currently is a licensee of the very patents in dispute in this case. Nokia's complaint flies in the face of recent Federal Circuit decisions unequivocally holding that patent licensees like Nokia are barred from seeking a declaratory judgment of noninfringement and invalidity because there is no actual

---

[1]    Unless specifically cited in the section of this brief addressing Nokia's claim under Section 43(a) of the Lanham Act, the evidence filed in support of InterDigital's motion to dismiss is filed in support of InterDigital's motion to dismiss Nokia's declaratory judgment action under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) only. At this time, InterDigital seeks dismissal of Nokia's claim under Section 43(a) of the Lanham Act under Federal Rule of Civil Procedure 12(b)(6) only.

controversy to support a court's jurisdiction to grant such relief. Stated simply, Nokia cannot prove that it has a reasonable apprehension of suit for patent infringement when it holds a license to practice the same patents upon which its suit is based.

Nokia's complaint attempts not only to rewrite existing law but to rewrite history to erroneously paint InterDigital as having a "history of litigiousness." Nokia, however, fails to allege, much less prove, that InterDigital has ever: (1) initiated any type of adversarial proceeding against Nokia; (2) threatened to sue Nokia for infringement of the patents in dispute; or (3) sought anything other than a business solution of any dispute with Nokia. Indeed, Nokia is forced to admit that, in January 1999, Nokia and InterDigital successfully negotiated a business solution to the issues in this case by executing a patent license agreement covering the patents in dispute and that neither party has expressed any intent to repudiate that agreement before it expires by its terms at the end of 2006.

Not surprisingly, Nokia's complaint ignores Nokia's own "history of litigiousness" against InterDigital. This lawsuit is simply the latest fight that Nokia has chosen to pick with InterDigital in the past few years. In addition to this lawsuit, Nokia has initiated an I.C.C. arbitration against InterDigital, intervened in the long-settled litigation between InterDigital and Ericsson Inc. (resulting in an appeal pending in the Federal Circuit), filed a patent revocation proceeding against InterDigital in the United Kingdom, and filed two discovery actions under 28 U.S.C. § 1782 that sought discovery from two of InterDigital's licensees – Ericsson and Sony Ericsson – but required responses from InterDigital due to Nokia's attempt to use those actions to obtain discovery for improper purposes.

2

Similarly confounding is Nokia's claim under Section 43(a) of the Lanham Act. Despite voluntarily executing a license to practice the 3G patents in dispute in January 1999, Nokia now claims that, for all these years, InterDigital has been misrepresenting in "bad faith" that those patents cover Nokia's 3G products. If, as Nokia now contends, the applicability of InterDigital's 3G patents to Nokia's 3G products is so specious as to establish that InterDigital made such representations in bad faith, it defies explanation why Nokia failed to stand its ground and file its claim under Section 43(a) of the Lanham Act before taking the license in January 1999. The gamesmanship underlying Nokia's decision to file suit in January *2005* – six full years later – is confirmed by Nokia's decision to delay filing suit until after it initiated the I.C.C. arbitration against InterDigital and just days before the commencement of the hearing in that arbitration.

In the end, Nokia's complaint is as meritless as it is malicious. As shown below, Nokia's declaratory judgment action should be dismissed under Rules 12(b)(1) and 12(h)(3) because Nokia has failed to plead and prove that there is an actual controversy to support this Court's jurisdiction over that claim. Alternatively, this Court should exercise its "unique and substantial" discretion not to hear Nokia's declaratory judgment action because it has been brought for improper purposes. Finally, Nokia's claim under Section 43(a) of the Lanham Act should be dismissed under Rule 12(b)(6) because Nokia, based on its pleadings and as a matter of law, cannot satisfy the requirements for such a claim.

STATEMENT OF FACTS[2]

I.    **InterDigital Has Long Played a Critical Role in the Development of Digital Wireless Technology**

IDCC was formed in 1992 by the merger of two companies that, throughout the 1980's, developed, improved, and patented digital wireless systems that provided for the efficient use of the radio spectrum. Exh. 1, ¶ 5.[3] One predecessor company developed and patented a digital wireless system that utilized Frequency Division Multiple Access, Time Division Multiplexing, and Time Division Multiple Access (an "FD/TDMA System"), while the other predecessor company developed and patented a digital wireless system that utilized spread spectrum Code Division Multiple Access ("CDMA"). *Id.*

In the late 1980's and early 1990's, the cellular industry (manufacturers and cellular service providers) cooperated in the development of second generation ("2G") digital wireless system standards – the GSM and US-TDMA FD/TDMA systems and the IS-95 CDMA system – which are widely deployed today. *Id.* at ¶ 6.[4] Recognizing InterDigital's predecessors' unique knowledge and experience, the United States standards-setting bodies invited their participation in the development of the US-TDMA standards and adopted in these 2G standards many of their contributions and much of

---

[2]    "Exh. ___" refers to the exhibits attached to this brief.

[3]    InterDigital has a workforce of approximately 325 employees. *Id.* at ¶ 4. The substantial majority of that workforce is its engineers, many of whom hold advanced engineering degrees. *Id.* InterDigital has four research and development facilities which are located in King of Prussia, Pennsylvania (where the company also is headquartered); Melville, New York; Montreal, Canada; and Melbourne, Florida. *Id.* With the exception of Montreal, each of its development centers has extensive laboratory facilities. *Id.*

[4]    "Standards" are approved instructions and guidelines for designing equipment. *Id.* at ¶ 9. In the mobile telephone business, standards are adopted by national and international standards-setting bodies and ensure that equipment built by different vendors to the same standard will interoperate. *Id.*

their patented intellectual property. *Id.* at ¶ 7.[5]  Similarly, European standards-setting bodies incorporated in the GSM standard much of InterDigital's patented intellectual property. *Id.* Because of the pioneering work of its predecessors and the inclusion of InterDigital's patented intellectual property in the 2G standards, InterDigital has entered into over thirty-five patent license agreements with the cellular industry. *Id.* at ¶ 8.

InterDigital's proven ability to conceive of new digital wireless access schemes and to transform these concepts into products has enabled it to become a technology company that designs and delivers advanced digital wireless solutions. *Id.* at ¶ 11. InterDigital has successfully used this ability under long-term agreements to develop third generation ("3G") digital wireless technology, which includes WCDMA and cdma2000 technology. *Id.* Under these 3G agreements, InterDigital develops technology for a third party, owns intellectual property related to that technology, licenses that technology to the third party, and promotes the use of that technology in 3G applications. *Id.* One such agreement was for the development of a complete Time Division Duplex technology platform for Nokia – the plaintiffs in this lawsuit. *Id.*[6]

---

[5]    From their inception, InterDigital and its predecessors have focused on the patenting of their inventions. *Id.* at ¶ 10. Today, ITC – IDCC's principal patent holding company – owns some 1,609 active issued patents and has over 5,077 active applications pending worldwide. *Id.* Of this portfolio of active patents, over 480 issued patents originate from FD/TDMA-based development programs and 1,129 issued patents originate from CDMA-based development programs. *Id.*

[6]    InterDigital also is the exclusive provider of certain WCDMA software to Infineon AG; it is the designated supplier of a complete WCDMA solution for the United States military's MUOS project; and it is the supplier to Amtel, Inc. of a smart antenna solution for wireless LAN products. *Id.*

## II.    Nokia's Scorched-Earth Campaign Against InterDigital

This lawsuit is merely the latest step in an aggressive, worldwide campaign that Nokia has launched against InterDigital – a campaign that has dragged InterDigital into courts, arbitrations, and patent proceedings across the United States and abroad. Nokia initiated this attack because what it once thought to be unthinkable occurred – the triggering of its obligation to pay InterDigital significant royalties on 2G products under the patent license agreement it voluntarily executed in January 1999 ("PLA"). *Id.* at ¶ 12.

Under the PLA between InterDigital and Nokia, InterDigital granted Nokia a worldwide non-exclusive license under essentially all of InterDigital's 1,609 active issued patents and 5,077 active pending patent applications. *Id.* Those patents include InterDigital's TDMA and CDMA patents, which apply to 2G products such as GSM and US-TDMA products as well as 3G products such as WCDMA and cdma2000 products. *Id.*

The amount of consideration paid and to be paid by Nokia for this license is divided into two different periods. *Id.* at ¶ 13. Period 1 ran through December 2001 and required Nokia to make an irrevocable and non-refundable payment of $31.5 million, which Nokia has paid. *Id.* Period 2 runs from January 2002 to December 2006, and requires Nokia to pay royalties at market-defined rates upon the occurrence of InterDigital licensing a contractually-defined "Major Competitor" at royalties paid by this competitor, retroactive to the beginning of Period 2. *Id.* Under this process, Nokia is treated as a most favored licensee of InterDigital and its royalty obligations during Period 2 are determined by reference to InterDigital's patent license agreements with defined Major Competitors, their successors and assigns, and purchasers of the assets that are the subject of the PLA. *Id.*

One of the defined Major Competitors was Ericsson, Inc. *Id.* at ¶ 14. At the time InterDigital and Nokia entered into the PLA in January 1999, InterDigital was engaged in patent litigation with Ericsson. *Id.* In March 2003, to Nokia's apparent surprise, InterDigital and Ericsson and Sony Ericsson (the successor, assign, and purchaser of Ericsson's handset business) entered into patent license agreements for 2G products at market-based running royalty rates. *Id.* Those licenses triggered Nokia's Period 2 royalty obligations on Nokia's 2G products, which – given Nokia's market share – are very substantial. *Id.*[7]

The triggering of Nokia's contractual royalty obligations did not result in Nokia's payment of royalties as the PLA required. Instead, it triggered Nokia's present onslaught of legal proceedings against InterDigital. At this time, Nokia's campaign against InterDigital consists of the following adversarial proceedings, all of which were initiated by Nokia after it refused to pay the Period 2 royalties owed under the PLA:

(1)    An I.C.C. arbitration to vitiate any Period 2 royalty obligations on Nokia's 2G products;

(2)    A revocation proceeding in the United Kingdom seeking to revoke certain of InterDigital's U.K. patents as invalid as well as a declaration that these patents are not essential to the GSM standard;

(3)    A post-judgment, post-settlement intervention in the prior litigation between InterDigital and Ericsson to reinstate certain orders vacated by the district court (resulting in an appeal currently pending in the Federal Circuit);

(4)    Two actions to obtain discovery pursuant to 28 U.S.C. § 1782 (filed against Ericsson and Sony-Ericsson but requiring responses

---

[7]    InterDigital has not yet entered into an agreement with a Major Competitor that would define and trigger payment of Nokia's Period 2 royalty obligation on Nokia's 3G products. *Id.* at ¶ 16. Thus, Nokia's Period 2 royalty obligation on 3G products continues to accrue at a yet to be defined royalty rate. *Id.*

by InterDigital due to indications Nokia intended to use such discovery not just in the U.K. proceeding, as it claimed, but in the arbitration as well); and

(5)    This lawsuit.

*Id.* at ¶ 15.

## ARGUMENT

I.    **Nokia's Declaratory Judgment Action Should Be Dismissed for Lack of Subject Matter Jurisdiction Because No Actual Controversy Exists**

A.    **Standard for Dismissal Under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3)**

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a suit if the court lacks subject matter jurisdiction over the claims in question. FED. R. CIV. P. 12(b)(1) & 12(h)(3). Unlike challenges under Federal Rule of Civil Procedure 12(b)(6), challenges to a district court's jurisdiction under Rule 12(b)(1) may be "facial" or "factual." *See, e.g.*, *Turicentro, S.A. v. American Airlines Inc.*, 303 F.3d 293, 300 n.4 (3d Cir. 2002); *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Facial attacks contest the sufficiency of the pleadings while factual attacks contest the factual allegations in the pleadings. *Id.* When considering a factual attack, a district court "accords plaintiff's allegations no presumption of truth" and may consider evidence outside the pleadings, including "affidavits, documents, and even limited evidentiary hearings." *Id.* "[I]f there is a dispute of a material fact, the court must conduct a plenary trial on the contested facts prior to making a jurisdictional determination." *Gould Elec. Inc.*, 220 F.3d at 177.

B.    **Requirements for Declaratory Relief in Patent Actions**

As a threshold matter, Federal Circuit law governs in determining whether a court has jurisdiction to enter a declaratory judgment that the patents in dispute are

8

noninfringed and invalid. *See, e.g., Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1356 (Fed. Cir. 2003) ("We apply our own law and not the law of the regional circuit to issues concerning our jurisdiction"); *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1469 & n.3 (Fed. Cir. 1997) (Federal Circuit law governs motion to dismiss declaratory judgment action based on absence of reasonable apprehension of suit for patent infringement).

A district court cannot render a declaratory judgment unless there is an actual controversy over which the court may exercise jurisdiction. *See, e.g.*, 28 U.S.C. § 2201(a); *Fina Oil & Chem. Co.*, 123 F.3d at 1470; *Cygnus Therapeutic Sys. v. Alza Corp.*, 92 F.3d 1153, 1158 (Fed. Cir. 1996). "The existence of an actual controversy is an absolute predicate for declaratory judgment jurisdiction. . . . When there is no actual controversy, the court has no discretion to decide the case." *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 633-34 (Fed. Cir. 1991). The declaratory judgment plaintiff bears the burden of proving "'the existence of facts underlying' his allegations of the existence of an actual controversy" and "that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the complaint was filed." *See, e.g., Sierra Applied Sci., Inc. v. Advanced Energy Indus., Inc.,* 363 F.3d 1361, 1373 (Fed. Cir. 2004); *Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985).

The Federal Circuit has adopted a two-prong test for determining whether an actual controversy exists in a patent declaratory judgment action. A plaintiff must prove:

(1)    an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit; and

(2)    present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

9

*See, e.g., Gen-Probe Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1380 (Fed. Cir. 2004).

With respect to the first requirement, a declaratory judgment plaintiff must prove that "it has a reasonable apprehension of ***imminent*** suit." *Teva Pharm. USA, Inc. v. Pfizer Inc.*, 2005 U.S. App. LEXIS 1078, at \*24 (Fed. Cir. Jan. 21, 2005) (emphasis added) (Exh. 2). "This requirement of imminence reflects the Article III mandate that the injury in fact be 'concrete,' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at \*25. The test for the reasonableness of a party's apprehension of suit is an objective one. *See, e.g., Cygnus Therapeutic Sys.*, 92 F.3d at 1159; *see also Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053-54 (Fed. Cir. 1995) (reasonable apprehension of suit "requires more than the nervous state of mind of a possible infringer"). Reasonable apprehension of suit may be shown by express charges of infringement by the defendant, or – if no such charges are made – may be shown by the "totality of the circumstances." *See, e.g., Cygnus Therapeutic Sys.*, 92 F.3d at 1155.

With respect to the second requirement, Article III requires a dispute "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Sierra Applied Sci., Inc.*, 363 F.3d at 1378 (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The Federal Circuit has emphasized the importance of the period of time between the date on which the complaint was filed and the date on which potentially infringing activities will begin. *Id.* at 1378-79. "The greater the length of this interim period, the more likely the case lacks the requisite immediacy." *Id.*

### C. Nokia Lacks a Reasonable Apprehension of Suit as a Matter of Law Because It Currently Is a Licensee of the Patents in Dispute

Nokia makes several critical admissions in its complaint that mandate dismissal of its declaratory judgment action for lack of an actual controversy. First, Nokia admits that

it currently is a licensee of the patents in dispute and will remain so through the end of 2006. *See* Complaint, p. 6 (¶ 15). Second, by basing its request for declaratory relief on its alleged plans to sell 3G products *after* the license expires, Nokia has expressly indicated that it intends to comply with its obligations under the PLA until it expires. *See id.*; Complaint, p. 7 (¶ 20). Nokia has not alleged that it has repudiated the PLA.

The Federal Circuit's recent decision in *Gen-Probe Inc. v. Vysis, Inc.*, 359 F.3d 1376 (Fed. Cir. 2004) squarely supports dismissal of Nokia's declaratory judgment action. In *Gen-Probe, Inc.*, a Vysis employee orally informed a Gen-Probe employee that Gen-Probe might be infringing U.S. Patent No. 5,750,338 – a Vysis patent that had just been issued. *Id.* at 1377. Vysis' president and chief executive subsequently sent a letter to his counterpart at Gen-Probe, stating that in addition to certain patents already being litigated by the parties at the time, Vysis held other patents – including the '338 patent – that Gen-Probe "should find of interest." *Id.* In a second letter, Vysis also informed Gen-Probe that it was aware that Gen-Probe had plans to develop technology to which the '338 patent "may apply." *Id.* In light of these circumstances, Gen-Probe determined that a significant likelihood existed that it would be sued for infringement of the '338 patent and decided to take a non-exclusive license for the '338 patent as part of the overall settlement of unrelated litigation that was pending between the parties. *Id.*

Six months after executing the license, Gen-Probe filed a declaratory judgment action, alleging that its products did not infringe any claims of the '338 patent and that the patent was invalid. *Id.* In a letter to Vysis the day before the complaint was filed, Gen-Probe clearly stated its intent to maintain the status quo by continuing to pay

11

royalties under the license pending the resolution of the suit even though it believed that the '338 patent was invalid and that its products did not infringe the patent. *Id.*

Vysis filed a motion to dismiss Gen-Probe's suit for lack of subject matter jurisdiction. *Id.* Vysis argued, *inter alia*, that Gen-Probe could not have had a reasonable apprehension of suit when it filed the case because it was a licensee in good standing at the time. *Id.* The district court denied Vysis' motion. *Id.* Following a trial on infringement and validity, the Federal Circuit reversed the district court's ruling that it had subject matter jurisdiction over Gen-Probe's declaratory judgment action, vacated the district court's judgment, and remanded with instructions to dismiss the case. *Id.*

The Federal Circuit noted that the district court had relied on several factors in determining that there was an actual controversy to support a declaratory judgment: (1) Vysis' oral notification of possible infringement of the '338 patent; (2) the letters regarding possible infringement of the '338 patent; and (3) the history of litigation between the parties. *Id.* at 1381. The Federal Circuit, however, observed that, upon entering into the patent license agreement, Vysis promised not to sue Gen-Probe, insulating Gen-Probe from an infringement suit by Vysis. *Id.* Thus, "[t]his license, unless materially breached, obliterated any reasonable apprehension of a lawsuit based on the prior circumstances cited by the district court for jurisdiction." *Id.* Since both parties fulfilled their contractual obligations, the Federal Circuit concluded that there was no evidence that Gen-Probe had a reasonable apprehension of suit. *Id.*

In *Metabolite Laboratories, Inc. v. Competitive Technologies, Inc.*, 370 F.3d 1354 (Fed. Cir. 2004), the Federal Circuit applied *Gen-Probe, Inc.* to reject a challenge to the validity of a patent on the ground that there was no case or controversy to support the

12

court's jurisdiction to address the validity challenge. Metabolite Laboratories, Inc. ("Metabolite") had sought a declaration that one of its patent claims covered a panel test method performed by Laboratory Corporation of America Holdings, Inc. ("LabCorp"). *Id*. at 1368. LabCorp, at all relevant times, had a license from Metabolite to perform the panel test in question and continued to fulfill its obligations under that license. *Id*. at 1369. The district court granted Metabolite's motion for partial summary judgment and found that the patent claim covered LabCorp's performance of the laboratory test. *Id*. at 1368-69. LabCorp, in turn, challenged the validity of the patent claim at trial. *Id*. at 1369.

On appeal, the Federal Circuit inquired *sua sponte* whether it had subject matter jurisdiction to address LabCorp's validity challenge. *Id*. The Federal Circuit concluded that it did not because there was no "real case or controversy regarding the LabCorp panel test." *Id*. In support of its holding, the Federal Circuit explained as follows:

> Neither party disputes that the license is still in effect as to the panel tests that LabCorp performs. This license is, in essence, a licensor's covenant not to sue the licensee. In turn, this court has held that a covenant not to sue deprives a court of declaratory judgment jurisdiction. Accordingly, a licensor who has implicitly covenanted not to sue a licensee by virtue of the license agreement itself cannot seek a declaratory judgment of infringement. Moreover, in light of LabCorp's continuing royalty payments on the panel test, LabCorp cannot itself challenge the validity of a claim for which it continues to pay royalties.

*Id*. (citations omitted / citing *Gen-Probe, Inc.*, 359 F.3d at 1382).[8]

---

[8]    Allowing a licensee in good standing – like Nokia – to seek a declaratory judgment of invalidity and noninfringement on patents for which the licensee voluntarily agreed to take a license is not only legally and contractually unjustifiable but bad policy as well:

> Moreover, permitting Gen-Probe to pursue a lawsuit without materially breaching its license agreement yields undesirable results. Vysis

13

The Federal Circuit's decisions in *Gen-Probe, Inc.* and *Metabolite Laboratories, Inc.* compel dismissal of Nokia's declaratory judgment action. Nokia concedes that it has executed a PLA with InterDigital that encompasses all of the patents in dispute in this case as well as all of InterDigital's other 3G patents. Nokia further concedes that it has not materially breached that agreement or repudiated the agreement in any other manner. Nokia thus cannot prove that InterDigital can sue Nokia for infringing the patents in dispute unless and until: (1) the agreement expires at the end of 2006; or (2) Nokia materially breaches the agreement. In short, *Gen-Probe, Inc.* and *Metabolite Laboratories, Inc.* expressly foreclose Nokia's baseless attempt to manufacture an actual controversy based on speculative claims as to what ***might*** happen in the future.

The PLA further constitutes a factual as well as a legal bar to establishing a reasonable apprehension of suit. Coupled with the absence of any allegation that InterDigital has threatened to sue Nokia for infringement of the 3G patents in dispute, InterDigital's decision to enter into the PLA with Nokia demonstrates that InterDigital has consistently sought a business solution to any alleged patent dispute with Nokia. Indeed, the parties negotiated the existing PLA on and off for over a decade without either party filing suit against the other. Exh. 1, ¶ 18. Additionally, InterDigital has

_____

      voluntarily relinquished its statutory right to exclude by granting Gen-Probe a non-exclusive license. In so doing, Vysis chose to avoid litigation as an avenue of enforcing its rights. Allowing this action to proceed would effectively defeat those contractual covenants and discourage patentees from granting licenses. In other words, in this situation, the licensor would bear all the risk, while licensee would benefit from the license's effective cap on damages or royalties in the event its challenge to the patent's scope or validity fails.

*Gen-Probe, Inc.*, 359 F.3d at 1382.

14

offered to extend a license to Nokia beyond 2006 and remains receptive to such an agreement. *Id.* at ¶ 19.[9]  Therefore, the mere fact that the PLA is set to expire at the end of 2006 is not objective evidence that InterDigital intends to sue Nokia for patent infringement at that time.

### D.    Nokia Has Failed to Prove a Reasonable Apprehension of Suit for Patent Infringement

Nokia's declaratory judgment action suffers from a second fatal defect – Nokia's failure to prove that it has a reasonable apprehension of suit by InterDigital.  Nokia alleges the following facts in support of that requirement:

(1)    "InterDigital has continued to represent for more than a decade both publicly and to the wireless handset industry that it has hundreds of patents that cover the principal wireless handset standards in the United States." *See* Complaint, p. 3 (¶ 7).

(2)    "More recently, InterDigital has made allegations that it has patents that cover '3G' mobile systems that are currently being rolled out and further developed in the United States, referred to as the WCDMA and CDMA 2000 products." *Id.* at 5 (¶ 11).

(3)    "With respect to 3G products, InterDigital continues to contend that its patents broadly cover 3G technology.  Under the Agreements, Nokia is licensed to InterDigital's 3G patents only through the end of 2006.  Nokia is currently designing, rolling out and further developing 3G products in the United States that will be manufactured and sold by Nokia after 2006." *Id.* at 6 (¶ 15).

(4)    "InterDigital has a history of litigiousness.  InterDigital's tactics are so well known, in fact, that *Forbes Magazine* published an article on InterDigital's litigation tactics . . ." *Id.* at 7 (¶ 17).

(5)    "In an August 13, 2003, investor conference call, InterDigital's Chief Executive Officer, Howard Goldberg, acknowledged that InterDigital uses litigation as leverage in disputes with companies

---

[9]    More generally, InterDigital has committed to license its essential 3G patents for the WCDMA and cdma2000 standards on fair, reasonable, and nondiscriminatory terms. *Id.* at ¶ 19.

such as Nokia, included [sic] bringing injunctions to prevent the shipping of handsets." *Id.* (¶ 18).

(6)    "Nokia has filed this suit because of InterDigital's efforts to enhance the value of its patents and Nokia's current need to design and develop 3G products that it will put into wide scale production after 2006." *Id.* (¶ 20).

Even if the above allegations are true, none of those allegations – individually or collectively – establishes that InterDigital has expressly threatened to sue Nokia for infringement of the 3G patents in dispute once the PLA expires. Thus, this Court must look at the "totality of the circumstances" to determine whether Nokia has a reasonable apprehension of suit. As shown below, no such reasonable apprehension exists.

### 1.    The Mere Statement That a Product "Falls Within" a Patent Does Not Support a Reasonable Apprehension of Suit

The first three allegations cannot establish a reasonable apprehension of suit because they merely claim that InterDigital has stated that it has patents that cover the principal wireless handset standards and that it has patents that cover 3G technology and products incorporating such technology.[10]   However, these types of statements, in themselves, do not establish that a plaintiff has a reasonable apprehension of suit:

> We agree with [the patentee] that a statement that [the plaintiff's] activities "fall within" [the patentee's] claims in the context of the parties' licensing negotiations can hardly be considered an express charge of infringement. Aside from the fact that it was provoked by [the plaintiff], it merely constitutes a statement of [the patentee's] position in negotiation relative to [the plaintiff's] activities. It alone did not create a reasonable apprehension of suit.

*Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888 (Fed. Cir. 1992).

---

[10]    It also should be noted that Nokia's first allegation – that InterDigital has represented "*for more than a decade* . . . that it has hundreds of patents that cover the principal wireless handset standards in the United States" (emphasis added) – undermines Nokia's claim that it has a reasonable apprehension that suit is imminent.

While the statements at issue in *Shell Oil Co.* were made in the context of licensing negotiations, there is no principled reason why a statement that a product falls within the scope of a patent ***while a license is in effect*** creates a reasonable apprehension of suit when such a statement made during licensing negotiations does not. Indeed, the argument against a reasonable apprehension of suit is stronger in this case since InterDigital cannot sue Nokia for patent infringement while the PLA remains in effect.

### 2.   The Only Allegations That Colorably Refer to a Threat of Litigation Do Not Support a Reasonable Apprehension of Suit

Only the fourth and fifth allegations listed above even colorably refer to a threat of litigation, but those allegations only generally refer to: (1) InterDigital's "history of litigiousness" (without indicating against whom and regarding which patents); and (2) an alleged statement by InterDigital's CEO that "InterDigital uses litigation as leverage in disputes with companies ***such as*** Nokia" (without alleging whether InterDigital has actually threatened to sue Nokia for infringement and, if it has, whether any such threats have been made with respect to the patents in dispute). These conclusory statements do not create a reasonable apprehension of suit. *See, e.g., Torpharm, Inc. v. Pfizer Inc.*, 2004 U.S. Dist. LEXIS 11930, at *40-*41 (D. Del. June 28, 2004) (Exh. 3) ("[D]efendants' press release statement that they 'will continue aggressively to defend challenges to [their] intellectual property' is not sufficient to instill a reasonable apprehension of suit. Defendants' statement . . . is of a general nature, directed to their overall strategy of enforcing their patent rights against generic competition. It is not specifically directed against plaintiffs, nor is there any evidence suggesting that it was made with plaintiffs in mind. The Federal Circuit has held that a patent holder's statement that it intends to enforce its patent does not create a reasonable apprehension of

17

suit"); *DuPont Dow Elastomers, L.L.C. v. Greene Tweed of Del., Inc.*, 148 F. Supp. 2d 412, 415 (D. Del. 2001) ("As a general principle, then, the Federal Circuit has concluded that the objective test for determining declaratory justiciability is not met 'when a patentee does nothing more than exercise its lawful commercial prerogatives and, in so doing, puts a competitor in the position of having to choose between abandoning a particular business venture or bringing matters to a head by engaging in arguably infringing activity'").

Nokia's fourth and fifth allegations also are incorrect or, at best, misleading. As to the fourth allegation, Nokia's claim that InterDigital has a "history of litigiousness" ignores the fact that InterDigital has filed exactly one patent infringement action to defend its intellectual property rights since 1995, which is at least three fewer adversarial proceedings than Nokia has filed against InterDigital in the past few years alone. *See* discussion *supra*, p. 7; Exh. 1, ¶ 17. In their nearly thirty-year history, InterDigital and its predecessors have been involved in only five patent infringement lawsuits in defense of their intellectual property rights, and three of those lawsuits were commenced by the infringing party. *Id.*[11] This "history" of litigation – which has not involved Nokia or any of the patents currently in dispute in this case – hardly constitutes a "history of

---

[11]     Nokia's suggestion that it has a reasonable apprehension of suit based on the I.C.C. arbitration between Nokia and InterDigital (*see* Complaint, pp. 7-8 (¶ 22)) is a red herring. First, Nokia admits that the arbitration involves a dispute over its royalty obligations with respect to InterDigital's 2G, not 3G patents. *Id.* Second, Nokia conspicuously fails to mention that the arbitration was filed by *Nokia* after Nokia refused to comply with its royalty obligations with respect to certain of InterDigital's 2G patents. *See Wright Med. Tech., Inc. v. Osteonics Corp.*, 914 F. Supp. 1524, 1531-32 (W.D. Tenn. 1995) (history of litigation between parties did not establish reasonable apprehension of suit where only suit filed between parties was filed by declaratory judgment plaintiff); Exh. 1, ¶ 15.

litigiousness" that establishes a reasonable apprehension that InterDigital would sue Nokia for infringement of the 3G patents in dispute. *See, e.g., id.; Indium Corp.*, 781 F.2d at 883 (litigation against two unrelated parties filed seven years prior to case was too remote to establish reasonable apprehension of suit); *CAE Screenplates v. Beloit Corp.*, 957 F. Supp. 784, 792 (E.D. Va. 1997) ("Prior litigation against parties unconnected to the declaratory judgment plaintiff, standing alone, cannot precipitate an actual controversy").[12]

A party's litigation history is even less probative when the party is a technology company like InterDigital, for whom intellectual property is a critical asset and patent litigation is an unfortunate fact of life. *See Apotex, Inc. v. Pfizer Inc.*, 2004 U.S. Dist. LEXIS 26232, at *19-*20 (S.D.N.Y. Jan. 3, 2005) (Exh. 4) ("Companies that profit largely from research and development will frequently find themselves involved in patent infringement litigation; what creates a reasonable apprehension of suit in any given case is a relationship between that case and some prior litigation"); *Waters Corp. v. Hewlett-Packard*, 999 F. Supp. 167, 173 (D. Mass. 1998) ("Considering that Hewlett-Packard owns more than 4,400 patents, the fact that it has sued on eight unrelated patents in 23 years hardly establishes litigiousness sufficient to convert licensing negotiations into a threat of suit").

Nokia's fifth allegation – that InterDigital's CEO, Howard Goldberg, "acknowledged in a conference call that InterDigital uses litigation as leverage in

---

[12]    The litigation described in the *Forbes* article attached to Nokia's complaint does not establish a reasonable apprehension of suit because the article not only refers to litigation filed almost a decade ago but also refers to litigation over 2G patents unrelated to the 3G patents in dispute in this case. *Id.; see also Indium Corp.*, 781 F.2d at 883.

disputes with companies such as Nokia, includ[ing] bringing injunctions to prevent the shipping of handsets" – mischaracterizes and ignores the context of Mr. Goldberg's comments during that call. The relevant portion of the transcript of the conference call states as follows:

> FRANK MARSALA:[13]    Then, just a Nokia question on that issue. Is there any leverage that you guys have today? Is there anything you can do to influence Nokia to bring this matter [the arbitration] to a close – here I'm talking about things like bringing injunctions against them – shipping handsets – things of that sort of. So, I'm curious about that.
>
> HOWARD GOLDBERG:    Let me first say that we certainly will look at every point of leverage. The dynamics in a situation such as this are very important. We will look – and have been looking – at how we can drive this to a successful resolution. Through internal and external resources. One of the ways that leverage is best used is as a surprise or – certainly you don't want to create an anticipation of anything that you may do. So, the answer is yes. But I would be very reluctant to talk about it and layout our plan for dealing with this particular matter.

*See* Complaint, Exhibit "T."

First, nowhere in Mr. Goldberg's statement does he even suggest that InterDigital intends to sue Nokia for infringement of the 3G patents in dispute so as to establish that an actual controversy exists in this case. Second, the transcript reveals that Mr. Goldberg was merely responding to an analyst's question regarding those options available to InterDigital for reaching a favorable result *in the arbitration filed by Nokia*. Mr.

---

[13]    Mr. Marsala is an analyst for Helpern Capital who participated in the call. *See* Complaint, Exhibit "T."

Goldberg was not, as Nokia attempts to suggest, making a stand-alone statement that InterDigital intended to pursue an aggressive litigation strategy against Nokia to forcibly achieve InterDigital's business goals. Third, when Mr. Goldberg's statement is reviewed in the actual context in which it was made, it would have been absurd for Mr. Goldberg to respond to Mr. Marsala's question with the answer that InterDigital *would not* explore all of its options for achieving the best possible result for InterDigital in the arbitration.

Nokia's final allegation in support of the existence of a reasonable apprehension of suit – that it filed suit "because of InterDigital's efforts to enhance the value of its patents" – is too cryptic to offer a meaningful response. It is unclear why or how such conduct would create a reasonable apprehension of suit by a licensee of those very patents.

In sum, it is apparent from Nokia's complaint and the record that Nokia's true basis for an actual controversy is nothing more than its own subjective apprehension of suit (however misguided), which is not a valid basis for declaratory relief. *See, e.g.*, *Indium Corp. of America*, 781 F.2d at 883; *Torpharm, Inc.*, 2004 U.S. Dist. LEXIS 11930, at *20. Therefore, Nokia's declaratory judgment action should be dismissed.

**E.    Nokia Has Failed to Prove the Existence of a Reasonable Apprehension of Suit Based on Future 3G Products**

Unable to prove the existence of a reasonable apprehension that InterDigital will sue Nokia over *existing* 3G products, Nokia seeks a declaratory judgment of noninfringement and invalidity based on the alleged threat that InterDigital will sue Nokia over *future* 3G products to be manufactured and sold after the PLA expires in 2006. *See* Complaint, p. 6 (¶ 15) ("Under the Agreements, Nokia is licensed to InterDigital's 3G patents through the end of 2006. Nokia is currently designing, rolling

out and further developing 3G products in the United States that *will be manufactured and sold by Nokia after 2006*") (emphasis added) & p. 7 (¶ 20) ("Nokia has filed this suit because of . . . Nokia's current need to design and develop 3G products that it *will put into wide scale production after 2006*") (emphasis added).    The Federal Circuit, however, has held that an actual controversy for jurisdictional purposes "cannot be based on a fear of litigation over future products." *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999); *Lang v. Pacific Marine & Supply Co.*, 895 F.2d 761, 764-65 (Fed. Cir. 1990).

In *Lang*, 895 F.2d 761 (Fed. Cir. 1990), the Federal Circuit affirmed the dismissal of a declaratory judgment action filed by a patentee claiming, *inter alia*, that a ship in the process of being built, when finished, would infringe its patent.    *Id.* at 762-63.    The Federal Circuit held that since "[t]he accused infringing ship's hull would not be finished until at least 9 months after the complaint was filed" and "the accused infringers had not distributed sales literature, prepared to solicit orders, or engaged in any activity indicating that the ship would soon be ready for sea," the district court correctly held that "there is no 'substantial controversy . . . of sufficient immediacy and reality to warrant' consideration of [the patentee's] claim for declaratory relief." *Id.* at 764-65; *see also Amana Refrigeration, Inc.*, 172 F.3d at 855 (rejecting plaintiff's contention that it had reasonable apprehension of being sued with regard to new products "'in the pipeline' but not advertised, manufactured, marketed, or sold before the filing date").

In this case, Nokia bases its alleged reasonable apprehension of suit on its nebulous intent to develop unidentified 3G products after the PLA expires by its terms at the end of 2006  – *two years* after Nokia's complaint was filed and twice as long a period

22

as the period found to preclude the existence of an actual controversy in *Lang. See Sierra Applied Sci., Inc.*, 363 F.3d at 1379 ("The greater the length of this interim period [the period of time between the date on which the complaint was filed and the date on which potentially infringing activities will begin], the more likely the case lacks the requisite immediacy" noting that prototype of alleged infringing product was not built and operational until about one year after complaint was filed). Nokia not only concedes that it is seeking declaratory relief for future 3G products that have not yet been developed, manufactured, or sold but also fails to plead and prove that it has distributed sales literature or prepared to solicit orders for those future products. As a result, there is no actual controversy to support a declaratory judgment based on any future 3G products manufactured and sold by Nokia.

II.    **Alternatively, This Court Should Exercise Its "Unique and Substantial" Discretion Not to Hear Nokia's Declaratory Judgment Action Because Nokia Has Brought This Action for Improper Purposes**

Even if this Court concludes that an actual controversy exists, this Court retains "unique and substantial discretion" to decline to hear Nokia's declaratory judgment action. *See, e.g.*, 28 U.S.C. § 2201(a); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Cygnus Therapeutic Sys.*, 92 F.3d at 1158-59. A court has "broad discretion to refuse to entertain a declaratory judgment action" as long as it "acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813-14 (Fed. Cir. 1996). This Court should decline to hear Nokia's declaratory judgment action because it has been brought for improper purposes and exercising jurisdiction over it would not serve the purposes of the Declaratory Judgment Act or principles of sound judicial administration.

Specifically, Nokia filed its declaratory judgment action not to preempt an imminent suit by InterDigital but to use as leverage in other disputes and licensing negotiations with InterDigital. First, the timing of this suit is highly suspect and revealing of Nokia's true motives. Filed on January 12, 2005 – just days before the start of the hearing in the I.C.C. arbitration on January 17, 2005 and after being under license for more than six years – Nokia's declaratory judgment action is a transparent ploy to obtain leverage in the arbitration (*e.g.*, for settlement purposes) and/or the negotiations to renew and/or extend the PLA beyond 2006 (*e.g.*, to obtain more favorable terms). Exh. 1, ¶ 20. Nokia lacks any credibility in accusing InterDigital of using litigation as leverage in its dealings with others when Nokia itself has filed this suit for precisely that purpose.

Second, unlike many patent cases in which declaratory relief is sought, this case involves parties that have previously successfully negotiated a business solution to their dispute by executing a patent license agreement negotiated over an extensive period of time. Nokia and InterDigital should be afforded the opportunity to fully explore the possibility of extending that agreement before this Court and InterDigital are forced to incur the extraordinary time and cost that full-blown litigation of Nokia's claims likely would require. *See EMC Corp.*, 89 F.3d at 814 ("We agree that a court may take into account the pendency of serious negotiations to sell or license a patent in determining to exercise jurisdiction over a declaratory judgment action. While a court may conclude that ongoing negotiations do not negate the presence of a controversy for jurisdictional purposes, the court may nonetheless find, in deciding whether to hear the declaratory judgment action, that the need for judicial relief is not as compelling as in cases in which

24

there is no real prospect of a non-judicial resolution of the dispute"). InterDigital should not be dragged into this suit simply because Nokia is itching for a fight and the timing is good for Nokia. *See Shell Oil Co.*, 970 F.2d at 889 ("The Declaratory Judgment Act was intended to protect threatened parties, not to drag a non-threatening patentee into court").

### III.  Nokia's Claim Under Section 43(a) of the Lanham Act Should Be Dismissed Because It Fails to State a Claim Upon Which Relief May Be Granted

Nokia's claim under Section 43(a) of the Lanham Act is based on InterDigital's alleged misrepresentations that Nokia's 3G products infringe InterDigital's 3G patents and that InterDigital's 3G patents are valid. It is no coincidence that Nokia's Lanham Act claim requires the resolution of many of the same issues forming the basis of its declaratory judgment action -- *e.g.*, whether InterDigital's 3G patents are noninfringed and invalid. Thus, Nokia's Lanham Act claim effectively gives Nokia a second bite at the apple by allowing Nokia to obtain through the back door essentially the same relief that controlling precedent bars Nokia from obtaining in its declaratory judgment action.

Nokia's artful pleading, however, cannot save its suit from dismissal because Nokia has failed to state a claim upon which relief can be granted under Section 43(a) of the Lanham Act. The PLA between Nokia and InterDigital is fatal to not only Nokia's declaratory judgment action but Nokia's Lanham Act claim as well. InterDigital's alleged representations that its 3G patents cover Nokia 3G products and are valid are fully consistent with the existence of the PLA. That fact – along with Nokia's allegation that InterDigital has represented that its 3G patents cover *all* 3G products (including Nokia's competitors' 3G products) and Nokia's failure to allege that all of InterDigital's essential 3G patents are noninfringed and/or invalid – bar Nokia from establishing any of

25

the six requirements of a Lanham Act claim as a matter of law. Thus, Nokia's Lanham Act claim should be dismissed under Rule 12(b)(6).[14]

### A. Standard for Dismissal Under Federal Rule of Civil Procedure 12(b)(6)

Dismissal is proper under Federal Rule of Civil Procedure 12(b)(6) if "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A district court must accept as true the allegations in the plaintiff's complaint and must construe reasonable inferences in the light most favorable to the plaintiff. *See, e.g., U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). A district court, however, need not accept "bald assertions," "unwarranted inferences," or "legal conclusions" in the complaint. *See, e.g., Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) ("[L]egal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness").

In deciding a motion to dismiss under Rule 12(b)(6), a district court may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public

---

[14] If this Court dismisses Nokia's declaratory judgment action, this Court, in resolving Nokia's Lanham Act claim, still would be required to determine whether InterDigital's 3G patents are essential to the practice of 3G technology since Nokia alleges that InterDigital purportedly misrepresented that its 3G patents cover all 3G products. Moreover, the 3G patents in dispute represent only a fraction of InterDigital's 3G patent portfolio. Thus, in responding to Nokia's allegation that it falsely represented that its 3G patents cover 3G products, InterDigital would be entitled to add 3G patents to this action that are not currently in dispute and this Court would be required to determine whether any single claim of those added patents cover a product implementing the 3G standards.

record, and documents that form the basis of a claim." *See, e.g., Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir.), *cert. denied*, 125 S. Ct. 271 (2004). A document "forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'" *Id.* Matters of public record include facts which a district court may take judicial notice of under Federal Rule of Evidence 201(b). *See, e.g.*, FED. R. EVID. 201(b); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002). Thus, attachment of the above categories of documents in support of a motion to dismiss does not convert it into a motion for summary judgment. *See U.S. Express Lines, Ltd.*, 281 F.3d at 388.

**B.    Requirements for a Claim Under Section 43(a) of the Lanham Act**

Section 43(a) of the Lanham Act provides in relevant part:

(1)    Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

    (A)    is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    (B)    in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). While Nokia's complaint does not specify upon which of the two subsections above Nokia's claim is based, the gravamen of Nokia's claim is that InterDigital has misrepresented that Nokia's products infringe the patents in dispute. The

Federal Circuit has held that such a claim falls within Subsection (B) of Section 43(a).

See *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1347-48 (Fed. Cir. 1999).

To establish a claim under Subsection (B), Nokia must plead and prove:

(1)    the defendant made a false or misleading statement of fact in commercial advertising or promotion about the plaintiff's goods or services;

(2)    the statement actually deceives or is likely to deceive a substantial segment of the intended audience;

(3)    the deception is material in that it is likely to influence purchasing decisions;

(4)    the defendant caused the statement to enter interstate commerce; and

(5)    the statement results in actual or probable injury to the plaintiff.

*Id.* at 1348; *Isco Int'l v. Conductus, Inc.*, 279 F. Supp. 2d 489, 504 (D. Del. 2003), *aff'd*,

2005 U.S. App. LEXIS 1709 (Fed. Cir. Feb. 3, 2005).[15]

---

[15]    This Court's formulation of the test is slightly different. *See Enzo Life Sci., Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 427 (D. Del. 2003) ("Under the Lanham Act a plaintiff must allege that: (1) defendant made false or misleading statements as to its product, or those of the plaintiff; (2) there was actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception was material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.") (citing *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms. Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)); *Allen v. Howmedica Leibinger, Inc.*, 197 F. Supp. 2d 101, 107-08 (D. Del. 2002), *aff'd*, 2003 U.S. App. LEXIS 984 (Fed. Cir. Jan. 16, 2003) (per curiam) (same).

While the Federal Circuit and other courts (including this Court) generally have applied the regional circuit's formulation of the first five requirements for a claim under Section 43(a) of the Lanham Act, those courts uniformly have applied Federal Circuit law to require a plaintiff to prove a sixth requirement – "bad faith" – in cases where the plaintiff's Lanham Act claim is predicated on a defendant's alleged misrepresentations regarding the scope and infringement of its patent. *See Zenith Elecs. Corp.*, 182 F.3d at 1348, 1353; *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001); *Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1574 (Fed. Cir. 1996).

When, as in this case, a plaintiff's claim under Section 43(a) of the Lanham Act is based on a defendant's alleged misrepresentations regarding the scope of its patents and the applicability of its patents to the plaintiff's products, the plaintiff must prove a sixth requirement for relief – that the defendant made the alleged misrepresentations in "bad faith." *See, e.g., Zenith Elecs. Corp.*, 182 F.3d at 1353; *Mikohn Gaming v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998). The law "recognizes a presumption that the assertion of a duly granted patent is made in good faith" and "this presumption is overcome only by affirmative evidence of bad faith." *Springs Window Fashions L.P. v. Novo Indus., L.P.*, 323 F.3d 989, 999 (Fed. Cir. 2003).[16] While the existence of bad faith is determined on a case-by-case basis, the plaintiff, at a minimum, must present clear and convincing evidence that: (1) the statement is false or a defendant's disregard for its falsity; and (2) the defendant "had no reasonable basis" to believe the plaintiff's product infringed the defendant's patent. *See Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002); *Mikohn Gaming*, 165 F.3d at 897. The mere fact that a defendant's representations may ultimately prove to be incorrect does not establish bad faith. *Id.*

---

[16]    The privileged right of a patentee to notify the public of its patent rights is rooted in the Patent Act, which: (1) authorizes patentees to "give notice to the public" of a patent by marking its patented articles; and (2) makes marking or specific notice to the accused infringer a prerequisite to the recovery of damages. *See* 35 U.S.C. § 287; *Zenith Elecs. Corp.*, 182 F.3d at 1353. Patent law also grants a patentee the right to exclude others from making, using, and selling the invention, to notify others of its patent rights, and to enforce those rights. *See, e.g., Mikohn Gaming Corp.*, 165 F.3d at 897.

C.    **InterDigital's Alleged Representations Could Not Have Been False or Misleading**

1.    **InterDigital's Alleged Representations That Its 3G Patents Cover Nokia's 3G Products Could Not Have Been False or Misleading Because Nokia Is a Licensee of Those Patents**

Even accepting as true Nokia's allegation that InterDigital has represented that its 3G patents cover all 3G products (including Nokia's), Nokia confirmed the truthfulness of any such representations by voluntarily taking a license on those patents. Since January 1999, Nokia has been a licensee in good standing under a PLA for InterDigital's portfolio of patents, which includes InterDigital's 3G patents and the subset of 3G patents in dispute in this case. Therefore, Nokia cannot establish that InterDigital's alleged representations – which are consistent with the existence of the PLA – are false or misleading.

2.    **InterDigital's Alleged Representations Regarding the Validity of the 3G Patents in Dispute Could Not Have Been False or Misleading Because Patents Are Presumptively Valid**

In its complaint, Nokia appears to limit its claim under Section 43(a) of the Lanham Act to allegations accusing InterDigital of misrepresenting that: (1) its 3G patents cover 3G technology; and (2) Nokia's 3G products infringe InterDigital's 3G patents. However, in Paragraph 145 of its complaint and in Subsection (c) of its "Prayer for Relief," Nokia summarily asserts that InterDigital misrepresented the validity of the patents in dispute. *See* Complaint, p. 35 (¶ 145) ("InterDigital's misrepresentations about the scope *and validity* of its patents . . .") (emphasis added); *id.* at 36 (Prayer for Relief, ¶ (c)) ("That InterDigital's statements concerning the scope *and validity* of its 3G patents are false and misleading, in violation of § 43(a) of the Lanham Act") (emphasis added).

30

Even assuming these conclusory allegations adequately plead a claim under Section 43(a) of the Lanham Act, Nokia's allegations still fail to state a claim for relief because it is undisputed that the 3G patents in dispute had not been held invalid (and were not even subject to challenge) at the time the alleged representations were made. Absent a ruling of invalidity, the 3G patents in dispute are presumed to be valid and InterDigital's alleged representations that those patents are valid could not have been false. *See, e.g.*, 35 U.S.C. § 282; *Allen*, 197 F. Supp. 2d at 109 ("The Court is not aware of any case in which a party, by asserting that its product is covered by a valid patent, has been held to have made a literally false statement, when that party's product was in fact protected by a valid patent. Because Defendants' statements and/or representations that their fiducial markers were protected by the '457 Patent occurred prior to the date the '457 Patent was held invalid, the Court concludes that Defendants['] statements and/or representations were literally true. Indeed, to hold otherwise would be contrary to the patent laws, which authorize patentees to mark their patented articles and make marking or specific notice to the accused infringer a prerequisite to the recovery of damages").[17]

---

[17]    *Compare with Zenith Elecs. Corp.*, 182 F.3d at 1354 ("Obviously, if the patentee knows that the patent is invalid . . . yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out"); *Allen*, 197 F. Supp. 2d at 109 (concluding that plaintiff's allegation that defendant represented there was "no problem" with defendant's patent stated actionable claim under Section 43(a) of the Lanham Act where defendant was aware that patent was involved in an interference proceeding where challenge to validity was made). Both cases are readily distinguishable. First, *Zenith Electronics Corp.* does not conflict with the rule that a representation of validity is actionable under Section 43(a) of the Lanham Act only if the patent had been deemed invalid at the time the representation in question was made. Second, unlike this case, there was no allegation in *Zenith Electronics Corp.* that the defendant represented that the patent in dispute was valid (as opposed to infringed). Third, in *Allen*, at the time it represented there was "no problem" with the patent in dispute, the defendant was aware that there was an interference proceeding pending that involved a challenge to the patent's validity. In this case, Nokia has not alleged that such

Nokia also cannot state a claim for relief based on InterDigital's alleged representations that its 3G patents are valid because a defendant's representations that merely relate to its patent – as opposed to a defendant's representations regarding the applicability of that patent to a plaintiff's products – does not state a valid claim under Section 43(a) of the Lanham Act. As a number of courts have held, a patent is not a "good," "service," or "commercial activity" as 15 U.S.C. § 1125(a)(1)(B) requires. *See* 15 U.S.C. § 1125(a)(1)(B); *digiGAN, Inc. v. iValidate, Inc.*, 2004 U.S. Dist. LEXIS 1324, at *14 (S.D.N.Y. Feb. 3, 2004) (Exh. 5) (dismissing claim under Section 43(a) of Lanham Act based on plaintiff's alleged misrepresentations that they owned or were licensees of patent in dispute because "the alleged patent misrepresentation concerned the patent, not any products or services" and "[a] patent is not a 'good or service' as those terms are used in the Lanham Act"); *Laube v. KM Europa Metal AG*, 1998 U.S. Dist. LEXIS 3921, at *6-*7 (S.D.N.Y. Mar. 27, 1998) (Exh. 6) (dismissing claim under Section 43(a) of Lanham Act based on plaintiffs' alleged misrepresentations that they owned invention embodied in patent in dispute because "a patent is not a 'good' for purposes of the Lanham Act").

> **3.    InterDigital's Alleged Representations That Its 3G Patents Cover Nokia's 3G Products Could Not Have Been False or Misleading Because Nokia Does Not Claim That All of the Essential 3G Patents Are Noninfringed or Invalid**

In its complaint, Nokia identifies eighteen 3G patents held by InterDigital that Nokia argues are noninfringed and/or invalid. While it is unclear how Nokia chose to file suit on these particular patents, it is clear that Nokia has conceded that these patents

_____

a proceeding was pending at the time InterDigital allegedly represented that the patents in dispute are valid.

represent only a subset of the total universe of InterDigital's 3G patents that cover 3G products. *See* Complaint, p. 4 (¶ 11) ("The patents that InterDigital contends cover 3G mobile systems . . . *include* . . .") (emphasis added). Because Nokia *has not* sought a declaratory judgment of noninfringement and invalidity with respect to *all* of InterDigital's 3G patents that are essential to the practice of 3G technology, InterDigital cannot be liable under Section 43(a) of the Lanham Act for representing that its 3G patents cover Nokia's 3G products because any such representations are true, even assuming all of the patents actually in dispute in this case are noninfringed and invalid.

### D.    InterDigital's Alleged Representations Could Not Influenced Purchasing Decisions and There Could Not Have Been "Actual Deception or a Tendency to Deceive a Substantial Portion of the Intended Audience"

Nokia's claim under Section 43(a) of the Lanham Act also must be dismissed because Nokia cannot satisfy the third requirement that InterDigital's alleged deception "is material in that it is likely to influence purchasing decisions." Nokia's allegation in support of this requirement consists of five words: "These false statements are material . . ." *See* Complaint, p. 35 (¶ 144).[18] This Court need not accept such a bald assertion, unwarranted inference, or legal conclusion. *See* discussion *supra*, pp. 25-26.

First, Nokia claims that InterDigital allegedly represented that its 3G patents cover *all* 3G products being developed and sold in the United States, without restriction to Nokia's 3G products. *See* Complaint, p. 4 (¶ 11) & p. 5 (¶ 15). Assuming that is true,

---

[18]    The sentence quoted above states in full: "These false statements are material *and, upon information and belief, have caused actual deception or have a tendency to deceive a substantial portion of the intended audience*." *Id.* (emphasis added). The words after "material," however, are in support of the second rather than the third requirement for a Lanham Act claim – the requirement that "there was actual deception or at least a tendency to deceive a substantial portion of the intended audience."

Nokia cannot allege that any such representations have caused or are likely to cause Nokia's customers to purchase 3G products from Nokia's competitors because InterDigital's alleged representations that its 3G patents cover all 3G products apply equally to Nokia's competitors' 3G products. Stated simply, Nokia cannot establish that its customers would decline to purchase Nokia's 3G products in favor of its competitor's 3G products where InterDigital allegedly has represented that *all* 3G products – including Nokia's competitors' 3G products – are covered by InterDigital's 3G patents. Indeed, if the facts were as Nokia claims, any rational purchaser would purchase the licensed 3G products of Nokia rather than the unlicensed 3G products of Nokia's competitors.

Second, Nokia does not dispute that, in January 1999, it voluntarily entered into a patent license agreement with InterDigital to practice InterDigital's 3G patents. Thus, InterDigital's alleged representations that its 3G patents cover Nokia's 3G products could not have discouraged customers from purchasing Nokia's 3G products because any such representations would not have said anything consumers did not already know given Nokia's execution of a patent license agreement with InterDigital. Similarly, InterDigital's alleged representations that its 3G patents cover Nokia's 3G products could not have actually deceived or had a tendency to deceive a substantial portion of the intended audience – the second requirement for a Lanham Act claim – because, again, such representations are consistent with Nokia's voluntary execution of the PLA.

## E.    InterDigital's Alleged Representations Could Not Have Been "Commercial Advertising"

In construing the fourth requirement for a claim under Section 43(a) of the Lanham Act, this Court has stated that "[r]epresentations constitute commercial advertising if they consist of: 1) commercial speech; 2) by a defendant who is in

commercial competition with plaintiff; 3) for the purpose of influencing consumers to buy defendant's goods or services; 4) that is disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within the industry." *Enzo Life Sci., Inc.*, 295 F. Supp. 2d at 428. Nokia has failed to plead one or more of these required elements.

First, Nokia cannot establish that InterDigital is "in commercial competition with" Nokia. In *Enzo Life Sciences*, this Court strictly applied that requirement, expressly finding that the plaintiff and defendant in that case "are competitors." *Id.*; *see also id.* at 425 ("Both [the defendant] and [the plaintiff] are companies involved in the development, manufacture and distribution of proprietary RNA and DNA testing systems"). In its complaint, Nokia fails to allege that InterDigital is in "commercial competition" with Nokia. Specifically, Nokia does not allege that InterDigital develops, manufactures, sells, or distributes WCDMA or cdma2000 products in competition with Nokia.

Second, because the parties are not in commercial competition, Nokia cannot establish that InterDigital made the alleged representations "for the purpose of influencing consumers to buy defendant's goods or services" for the simple reason that InterDigital does not manufacture goods or provide services that are offered to Nokia's customers.

**F.    The Advertised Goods Have Not "Traveled in Interstate Commerce"**

Nokia also cannot satisfy the fourth requirement for a claim under Section 43(a) of the Lanham Act – that "the advertised goods traveled in interstate commerce." Nokia's Lanham Act claim is predicated substantially, if not fully, on InterDigital's alleged representations regarding *future* 3G products that Nokia purportedly intends to

35

develop, manufacture, and sell after the PLA expires at the end of 2006. *See* discussion *supra*, p. 21. However, consistent with the requirement that "the advertised goods traveled in interstate commerce," the Federal Circuit has held that a claim under Section 43(a) of the Lanham Act cannot be based on alleged misrepresentations regarding a plaintiff's products unless and until those products have actually entered into commerce.

In *Lang v. Pacific Marine & Supply Co.*, 895 F.2d 761 (Fed. Cir. 1990), a patent holder and its licensee filed a declaratory judgment action seeking a judgment that a hull structure that was in the process of being manufactured by and for the defendants – when finished – would infringe the plaintiffs' patents. *Id.* at 762. The vessel was not scheduled to be completed and ready for final inspection by the Coast Guard until approximately nine months after the complaint was filed. *Id.* The plaintiffs claimed, *inter alia*, that one defendant had violated Section 43(a) of the Lanham Act by falsely advertising that an engineering firm was the principal designer of the ship's control systems. *Id.* at 763. The district court dismissed the plaintiffs' claim, and the Federal Circuit affirmed. *Id.*

The Federal Circuit stated that Section 43(a) of the Lanham Act "creates liability for false descriptions or misrepresentations used in connection with 'goods or services [that] enter into commerce.'" *Id.* at 765.[19] "Because [the plaintiffs'] complaint did not, and could not until the ship was completed, allege that the ship had entered into commerce," the Federal Circuit concluded that the district court correctly dismissed the

---

[19]    While the Federal Circuit based this requirement on an earlier version of 15 U.S.C. § 1125, the requirement that "the advertised goods traveled in interstate commerce," as noted above, remains a requirement for relief. *See Enzo Life Sci., Inc.*, 295 F. Supp. 2d at 427 (citing *Johnson & Johnson-Merck Consumer Pharms. Co.*, 19 F.3d at 129).

plaintiffs' Lanham Act claim. *Id.* at 766. Consequently, to the extent Nokia's claim under Section 43(a) of the Lanham Act is based on InterDigital's alleged representations regarding future 3G products by Nokia that have not yet entered into commerce (*i.e.*, products that will not enter commerce until 2007), that claim should be dismissed.

### G.    Nokia Could Not Have Suffered Any Injury From InterDigital's Alleged Representations

Based on much of the same reasoning discussed above, Nokia, as a matter of law, did not suffer any injury from InterDigital's alleged representations. In its complaint, Nokia identifies three potential injuries: (1) the inhibition of the development of 3G technology; (2) unspecified damage to its business; and (3) injury to its reputation. *See* Complaint, pp. 34 (¶ 142) & p. 35 (¶ 145). The first alleged injury ignores Nokia's admission in its complaint that it has been licensed to develop 3G technology covered by InterDigital's 3G patents since January 1999 and has actually done so.[20] The second alleged injury ignores Nokia's own allegation that InterDigital has represented that its 3G patents cover *all* 3G products developed and sold in the United States as well as Nokia's failure to allege that InterDigital is a competitor. Therefore, InterDigital's alleged representations could not have caused Nokia any business injury by causing Nokia's customers to purchase 3G products from Nokia's competitors or InterDigital.[21] Finally, the third alleged injury again ignores Nokia's admission that it voluntarily executed the

---

[20]    Indeed, Nokia contracted with InterDigital for InterDigital to develop 3G technology for Nokia. Exh. 1, ¶ 11.

[21]    To the extent Nokia alleges that InterDigital has misrepresented that Nokia's future 3G products are covered by InterDigital's 3G products, Nokia cannot establish any business injury based on products that have not yet been manufactured and sold.

PLA in January 1999. Nokia's reputation could not have been injured by any alleged representations that were consistent with the existence of that agreement.

### H.   InterDigital Could Not Have Made the Alleged Representations in Bad Faith

Finally, Nokia cannot establish that InterDigital's alleged representations – that its 3G patents cover Nokia 3G's products and are valid – were made in bad faith – *i.e.*, that InterDigital "had no reasonable basis" to believe such representations were true. First, Nokia admits that it executed a PLA with InterDigital for these 3G products for these same 3G patents in January 1999 and has not indicated any intent to repudiate that license before it expires at the end of 2006. Given that a sophisticated company like Nokia felt a need to take such a license, Nokia's argument that InterDigital had ***no*** reasonable basis to believe that its 3G patents cover Nokia's 3G products and are valid makes no sense.

Second, InterDigital could not have made the alleged representations in bad faith because Nokia has not alleged that all of InterDigital's essential 3G patents are noninfringed and invalid. As shown above, Nokia acknowledges that it is seeking a declaratory judgment of noninfringement and invalidity with respect to only a subset of the universe of 3G patents held by InterDigital. *See* Complaint, p. 4 (¶ 11). Indeed, even with respect to the eighteen patents actually in dispute in this case, Nokia alleges that only six of those patents are invalid (and, in some cases, only certain claims of those six patents). If Nokia itself cannot come up with a good faith basis to support a claim that all eighteen patents are invalid, Nokia certainly cannot establish that InterDigital had ***no*** reasonable basis to belief that those patents were valid when it allegedly made representations to that effect.

## CONCLUSION

For the reasons stated above, Defendants InterDigital Communications Corporation and InterDigital Technology Corporation ("InterDigital") respectfully request that this Court: (1) grant InterDigital's Motion to Dismiss; and (2) dismiss any and all of Plaintiffs Nokia Corporation and Nokia, Inc.'s claims against InterDigital.

If this Court grants such relief in full or in part, InterDigital further requests that this Court – pursuant to 35 U.S.C. § 285, 15 U.S.C. § 1117(a), 28 U.S.C. § 1919, Federal Rule of Civil Procedure 54(d), District of Delaware Local Rule 54.1(a)(1), and any other applicable law – award InterDigital its reasonable attorney's fees and costs in this litigation. InterDigital expressly reserves the right to submit separate and additional briefing in support of its entitlement to such attorney's fees and costs.

InterDigital further requests all other relief to which it may be entitled.

Respectfully submitted,

OF COUNSEL:

D. Dudley Oldham
Robert S. Harrell
Richard S. Zembek
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
doldham@fulbright.com
rharrell@fulbright.com
rzembek@fulbright.com

Dan D. Davison
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
ddavison@fulbright.com

Dated: March 15, 2005

POTTER ANDERSON & CORROON LLP

By: _____
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P. O. Box 951
    Wilmington, Delaware 19801
    Telephone: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendants Interdigital
Communications Corporation and
Interdigital Technology Corporation*

39

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 15, 2005, the attached document

was electronically filed with the Clerk of the Court using CM/ECF which will send

notification of such filing(s) to the following and the document is available for viewing

and downloading from CM/ECF:

Jack B. Blumenfeld
Julia Heaney
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347


I hereby certify that on March 15, 2005, I have Federal Expressed the documents

to the following non-registered participants:

Peter Kontio
Patrick J. Flinn
Gardner S. Culpepper
Keith E. Broyles
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424

By: _____
        Richard L. Horwitz
        David E. Moore
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, Delaware 19899-0951
        (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

673950