# EXHIBIT 4

LEXSEE 2004 U.S. DIST. LEXIS 26232

**APOTEX, INC. and APOTEX CORP., Plaintiffs, - against -
PFIZER INC., Defendant.**

**04 Civ. 2539 (DC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF NEW YORK**

*2004 U.S. Dist. LEXIS 26232*

**December 30, 2004, Decided
January 3, 2005, Filed**

**DISPOSITION:** [*1] Defendant's motion to dismiss for lack of subject matter jurisdiction was granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Plaintiffs: William A. Rakoczy, Esq., Deanne M. Mazzochi, Esq., Amy D. Brody, Esq., RAKOCZY MOLINO MAZZOCHI SIWIK LLP, Chicago, Illinois.

For Defendant: Dimitrios T. Drivas, Esq., Jeffrey J. Oelke, Esq., Brendan G. Woodward, Esq., WHITE & CASE LLP, New York, New York.

**JUDGES:** DENNY CHIN, United States District Judge.

**OPINIONBY:** DENNY CHIN

**OPINION:**

**MEMORANDUM DECISION**

**CHIN, D.J.**

In this patent case, plaintiffs Apotex, Inc. and Apotex Corp. (together, "Apotex") bring a declaratory judgment action for a determination that their generic drug does not infringe *U.S. Patent No. 5,248,699* ("the '699 patent"), held by defendant Pfizer Inc. ("Pfizer"). Pfizer moves to dismiss the action, arguing that the Court lacks subject matter jurisdiction because of the absence of an actual controversy between the parties. For the reasons that follow, the motion is granted and the complaint is dismissed, without prejudice.

**BACKGROUND**

**A. Regulatory Background**

**1. Hatch-Waxman Amendments**

This dispute arises under a series of amendments to the Federal Food, Drug, and Cosmetic [*2] Act of 1938 (the "FDCA"), *21 U.S.C. § 1 et seq.* The "Hatch-Waxman Amendments," enacted as the Drug Price Competition and Patent Term Restoration Act

of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984), simplified Food and Drug Administration ("FDA") procedures for the approval of generic drugs. *Mova Pharm. Corp. v. Shalala, 329 U.S. App. D.C. 341, 140 F.3d 1060, 1063 (D.C. Cir. 1998)*. Under the Hatch-Waxman Amendments, companies that want to market generic versions of pioneer drugs may file with the FDA an Abbreviated New Drug Application ("ANDA"), relying on the FDA's prior determinations that the pioneer drug was safe and effective. See *21 U.S.C. § 355(j)(2)(A)*; see generally *Andrx Pharms., Inc. v. Biovail Corp., 276 F.3d 1368, 1371 (Fed. Cir. 2002)*; *Mylan Pharms., Inc. v. Thompson, 268 F.3d 1323, 1325-27 (Fed. Cir. 2001)*; *Glaxo Group Ltd. v. Dr. Reddy's Labs., Ltd., 325 F. Supp. 2d 502 (D.N.J. 2004)*.

A pioneer drug manufacturer is required to notify the FDA of all patents that cover the pioneer drug. *21 U.S.C. § 355(b)(1), (c)(2)*. These patents and their expiration [*3] dates are listed by the FDA in what is commonly known as the "Orange Book" -- the "Approved Drug Products With Therapeutic Equivalence Evaluations." For all applicable patents listed in the Orange Book, ANDA applicants must certify whether the generic drug would infringe the patents. *21 U.S.C. § 355(j)(2)(A)(vii)*. Specifically, the ANDA applicant may certify that (I) the required patent information has not been submitted to the FDA; (II) the patent has expired; (III) the patent has not expired but is set to expire on a certain date; or (IV) the patent is invalid or will not be infringed by the new generic drug for which the ANDA is submitted. *21 U.S.C. § 355(j)(2)(A)(vii)(I-IV)*. These are commonly referred to as paragraph I, II, III, and IV certifications. See generally *Andrx Pharms., Inc., 276 F.3d at 1371*.

If an ANDA applicant makes a paragraph IV certification and the patent holder (the pioneer drug company) sues for patent infringement within forty-five days, the FDA

may not approve the ANDA until expiration of the patent, a judicial determination that the patent is invalid or not infringed, or thirty months, whichever [*4] is earlier. If the patentee does not sue, the ANDA will be approved. *21 U.S.C. § 355(j)(2)(B)(I), (5)(B)(iii)*; *21 C.F.R. § 314.95(c)(6)*.

The first applicant to file an ANDA with a paragraph IV certification is a "first filer," and is eligible for a 180-day exclusivity period during which it is entitled to have the sole generic version of the pioneer drug on the market. *21 U.S.C. § 355(j)(5)(B)(iv)*. The FDA is prohibited from approving any other ANDA involving the same brand name drug until the end of the exclusivity period, i.e., during that period only the brand name manufacturer and the first filer may market that drug. Id. The marketing exclusivity period does not begin immediately upon FDA approval of the first ANDA, but rather upon the earlier of (1) the first commercial marketing of the drug, or (2) the date of a court decision declaring the patent invalid or not infringed. Id.

While the Hatch-Waxman framework "has saved billions and billions of dollars for consumers[,] . . . there [has been] a gaming of the system" by some brand name drug companies. 149 Cong. Rec. S15563 (daily ed. Nov. 22, 2003) (statement of [*5] Sen. Hatch); see Congressional Budget Office, "How Increased Competition from Generic Drugs Has Affected Prices and Returns in the Pharmaceutical Industry," 27-31 (July 1998). Some brand name drug manufacturers have succeeded in "parking" the 180-day marketing exclusivity period, indefinitely delaying ANDA approvals and bottlenecking the market. Federal Trade Commission, "Generic Drug Entry Prior to Patent Expiration," vi-vii (July 2002). "Parking" occurs when the brand name manufacturer convinces the first filer not to enter the market, often through a settlement agreement concluding a patent infringement suit. Id. Absent an intervening

court decision, the first filer's failure to enter the market delays the triggering of the 180-day exclusivity period so that it neither begins nor ends, and subsequently filed ANDAs cannot be approved. Id.

### 2. Medicare Amendments

To curb these abuses, Congress added another round of amendments to the FDCA in the comprehensive Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (the "Medicare Amendments"). Pub. L. No. 108-173, 117 Stat. 2066 (2003). The Medicare Amendments established forfeiture provisions [*6] to prevent bottlenecking and revised sections of the patent code authorizing declaratory judgment actions by ANDA filers. Id. In particular, Congress provided that "the courts of the United States shall, to the extent consistent with the Constitution, have subject matter jurisdiction" in any declaratory judgment action by a generic manufacturer who (1) has filed an ANDA with a paragraph IV certification and (2) was not sued by the NDA holder within the forty-five day statutory period. *35 U.S.C. § 271(e)(5).*

## B. Facts

### 1. Pfizer

Pfizer markets Zoloft(R), the brand name version of setraline hydrochloride approved by the FDA for the treatment of mood and anxiety disorders. Pfizer has listed Zoloft(R) in the Orange Book, associating it with the *'699 patent* and *U.S. Patent No. 4,356,518* ("the '518 patent"). The *'699 patent* will expire on September 28, 2010, and the *'518 patent* will expire on June 30, 2006.

### 2. IVAX

In 1999, Zenith Goldline Pharmaceuticals, Inc., now known as IVAX, filed the first setraline hydrochloride ANDA. IVAX submitted a paragraph IV certification with respect to the *'699 patent*, i.e., it asserted that [*7] the *'699 patent* was invalid or not infringed by IVAX's product, and a paragraph III certification with respect to the *'518 patent*, i.e., it asserted that IVAX will not enter the market until the expiration of the *'518 patent* on June 30, 2006. As the first filer, IVAX was entitled to a 180-day marketing exclusivity period pursuant to *21 U.S.C. § 355(j)(5)(B)(iv).* Pfizer responded within forty-five days of receiving notice of the ANDA, initiating a patent infringement action against IVAX in January 2000. Pursuant to *21 U.S.C. § 355(j)(5)(B)(iii),* the suit automatically suspended FDA approval of the IVAX ANDA for thirty months. The parties reached a settlement in May 2002 that provided that IVAX would receive a license to the *'699 patent* and may begin marketing setraline hydrochloride by June 30, 2006.

### 3. Apotex

On October 27, 2003, Apotex filed an ANDA seeking the FDA's approval to market its version of setraline hydrochloride. Like IVAX, Apotex filed a paragraph III certification with respect to the *'518 patent* and a paragraph IV certification with respect to the *'699 patent.* Pursuant to the Hatch-Waxman framework, the FDA [*8] cannot approve the Apotex ANDA until 180 days after IVAX enters the market or a court decision decrees the *'699 patent* invalid or not infringed, whichever is earlier. If neither event occurs, the Apotex ANDA cannot be approved until September 2010, when the last Zoloft-related patent expires. See *21 U.S.C. § 355(j)(5)(B)(ii).*

### 4. Other ANDA Filers

In addition to IVAX and Apotex, at least six other generic drug manufacturers have filed ANDAs for setraline hydrochloride; Pfizer has initiated suit against none of them. (Myers Decl. P9). Two of these companies, Teva Pharmaceuticals USA, Inc. and Dr. Reddy's Laboratories, Ltd., filed ANDA-related declaratory judgment actions against Pfizer, as Apotex has done here. (Def.'s Mem.

2004 U.S. Dist. LEXIS 26232, *

at 7-8). Both cases were dismissed for lack of subject matter jurisdiction. *Teva Pharms. USA, Inc. v. Pfizer Inc.*, 2003 U.S. Dist. LEXIS 21940, No. 03-CV-10167 (RGS), 2003 WL 22888848, at *1 (D. Mass. Dec. 8, 2003); *Dr. Reddy's Labs., Ltd. v. Pfizer Inc.*, 2003 U.S. Dist. LEXIS 24351, No. 03-CV-726 (JAP), 2003 WL 21638254, at *7 (D.N.J. July 8, 2003).

### C. Procedural History

Apotex filed its complaint on April 1, 2004. On June 22, 2004, Pfizer **[*9]** moved to dismiss pursuant to *Fed. R. Civ. P. 12(b)(1)* for lack of subject matter jurisdiction. Pfizer argues that this Court does not have subject matter jurisdiction because of the absence of an actual controversy, as required by the Declaratory Judgment Act. *28 U.S.C. § 2201(a)*. Apotex contends that there is such a controversy. For the reasons that follow, the motion to dismiss is granted.

### DISCUSSION

### A. Applicable Law

### 1. Motion to Dismiss Standard

In considering a motion to dismiss for lack of subject matter jurisdiction under *Rule 12(b)(1)*, federal courts "need not accept as true contested jurisdictional allegations." *Jarvis v. Cardillo*, 1999 U.S. Dist. LEXIS 4310, No. 98 Civ. 5793 (RWS), 1999 WL 187205, at *2 (S.D.N.Y. Apr. 5, 1999). Rather, a court may resolve disputed jurisdictional facts by referring to evidence outside the pleadings. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998). As the party "seeking to invoke the subject matter jurisdiction of the district court," plaintiff bears **[*10]** the burden of demonstrating that there is subject matter jurisdiction in this case. *Scelsa v. City Univ. of New York*, 76 F.3d 37, 40 (2d Cir. 1996).

### 2. Subject Matter Jurisdiction

Subject matter jurisdiction under the Declaratory Judgment Act requires the existence of an actual case or controversy: "The Declaratory Judgment Act permits declaratory relief only in cases presenting 'actual controversies,' . . . a requirement that incorporates into the statute the case or controversy limitation on federal jurisdiction found in Article III of the Constitution." *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996) (citing *28 U.S.C. § 2201(a)*).

### 3. The Reasonable Apprehension Test

In declaratory judgment actions for patent invalidity or non-infringement, the courts have applied a two-part test to determine whether an "actual controversy" exists:

> There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity **[*11]** which could constitute infringement or concrete steps taken with the intent to conduct such activity.

*Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed. Cir. 1998). The first prong of this inquiry examines the defendant's conduct, while the second prong focuses on the plaintiff's conduct. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988). This two-part test has become known as the "reasonable apprehension" test.

To determine whether there is a reasonable apprehension that the defendant

will sue for patent infringement, courts apply an objective test that focuses on the conduct of the defendant and attempts to ascertain whether a defendant has shown an intent to enforce its patent rights. *Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 888 (Fed. Cir. 1992); Arrowhead, 846 F.2d at 736.* Such an intent is readily exhibited with express accusations of infringement and threats to bring suit. Explicit threats, however, are not required to create a reasonable apprehension. *EMC Corp. v. Norand Corp., 89 F.3d 807, 811 (Fed. Cir. 1997).* "In light of the subtleties [*12] in lawyer language . . . the courts have not required an express infringement charge," *Arrowhead, 846 F.2d at 736,* finding instead that "reasonable apprehension. . . may be induced by subtler conduct." *EMC Corp., 89 F.3d at 811.*

In the absence of overt threats, the "totality of the circumstances" must be considered in evaluating whether a reasonable apprehension of infringement litigation exists. *Arrowhead, 846 F.2d at 736.* In other words, the court must look at the full range of the defendant's conduct and determine whether those actions, considered in context, create a reasonable apprehension. *Consac Indus. v. Nutramax Labs., Inc., 1998 U.S. Dist. LEXIS 6228, No. 97 Civ. 1155 (SJ), 1998 WL 229255, at *3 (E.D.N.Y. Mar. 31, 1998).*

### 4. The Medicare Amendments

Apotex argues that the reasonable apprehension test is "legally irrelevant," contending that it no longer applies because of the Medicare Amendments passed in 2003. (Pl.'s Mem. at 7). Instead, Apotex argues, the Medicare Amendments expressly authorize an ANDA-filer to bring a declaratory judgment action where, as here, a patentee does not file suit within the forty-five [*13] day period. (Id. at 8 (citing *21 U.S.C. § 355(j)(5)(C)*). It also relies on the amendment to the patent code, which provides that federal courts "shall, to the extent consistent with the

Constitution, have subject matter jurisdiction" over declaratory judgment actions for a declaration of invalidity or non-infringement brought by ANDA applicants who have made a paragraph IV certification. (Id.).

Accordingly, Apotex asks the Court to disregard the reasonable apprehension test, and, instead to employ the Article III case or controversy analysis applied in non-patent cases and in patent cases involving allegations of actual (as opposed to potential) infringement, requiring that "there is (1) an actual or imminent injury-in-fact, (2) that is fairly traceable to the defendant, and (3) is redressible by a favorable decision." (Pls.' Mem. at 12 (citing *Bennett v. Spear, 520 U.S. 154, 162, 167, 137 L. Ed. 2d 281, 117 S. Ct. 1154 (1997); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41, 81 L. Ed. 617, 57 S. Ct. 461 (1937);* and *Allergan, Inc. v. Alcon Labs., Inc., 324 F.3d 1322, 1331 (Fed. Cir. 2003)).* Apotex argues that the changes made by the Medicare Amendments require [*14] a similar analysis for ANDA-related declaratory judgment actions.

The argument is rejected. The Medicare Amendments do not disturb the Federal Circuit's consistent holding that the constitutional limits of an Article III court's jurisdiction in anticipatory patent infringement declaratory judgment actions are defined by the two-part reasonable apprehension test. *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc., 363 F.3d 1361 (Fed. Cir. 2004); Arrowhead, 846 F.2d at 736; TorPharm, Inc. v. Pfizer, Inc., 2004 U.S. Dist. LEXIS 11930, No. Civ. 03-990-SLR, 2004 WL 1465756, at *7 (D. Del. June 28, 2004)* (citing Medicare Amendments and holding reasonable apprehension test is "'consistent with the Constitution'"); *Glaxo Group Ltd. v. Dr. Reddy's Labs., Ltd., 325 F. Supp. 2d 502, 507-08 (D.N.J. 2004).* All of these decisions post-date the Medicare Amendments.

2004 U.S. Dist. LEXIS 26232, *

The legislative history of the Medicare Amendments supports the continued application of the reasonable apprehension test. The Conference Report accompanying the Medicare Amendments explains plainly, "the conferees do not intend for the courts to modify their application of the requirements **[\*15]** under Article III that a declaratory judgment plaintiff must, to the extent required by the Constitution, demonstrate a 'reasonable apprehension' of suit to establish jurisdiction." H.R. Conf. Rep. No. 108-391, at 836 (2003). In response, Apotex points to Congressional testimony reflecting a general intent to eliminate ANDA bottlenecks, arguing that jurisdiction in this case would effectuate that goal. (Pls.' Mem. at 9). While that may be true, it does not show that Congress intended to replace the well-established reasonable apprehension test for declaratory judgment patent cases with the analysis used in non-patent cases.

Accordingly, I apply the two-prong reasonable apprehension test.

**B. Application**

Pfizer does not dispute that the second prong of the reasonable apprehension test has been met. (See Def.'s Mem. at 10-20). By filing the ANDA, Apotex--committed a "defined act of infringement sufficient to create case or controversy jurisdiction" in patent infringement actions. *Glaxo, Inc. v. Novopharm, Ltd., 110 F.3d 1562, 1569 (Fed. Cir. 1997).* Therefore I address only the first prong -- whether Pfizer's conduct gave rise to a reasonable apprehension **[\*16]** of suit.

Apotex has not shown that Pfizer created a reasonable apprehension of patent litigation, and thus no actual controversy exists. Therefore this Court does not have subject matter jurisdiction. The Court notes that two District Courts recently reached the same conclusion, in virtually identical cases involving the same patents and products at issue here. *Teva Pharms. USA, Inc. v. Pfizer Inc., 2003 U.S. Dist. LEXIS 21940, No. 03-CV-10167 (RGS), 2003 WL 22888848 (D. Mass. Dec. 8, 2003)*; *Dr. Reddy's Labs., Ltd. v. Pfizer Inc., 2003 U.S. Dist. LEXIS 24351, No. 03-CV-726 (JAP), 2003 WL 21638254 (D.N.J. July 8, 2003)*. Likewise, courts in three other similar declaratory judgment cases also dismissed for lack of subject matter jurisdiction. *TorPharm, Inc. v. Pfizer Inc., 2004 U.S. Dist. LEXIS 11930, No. Civ. 03-990-SLR, 2004 WL 1465756 (D. Del. June 28, 2004)*; *Glaxo Group Ltd. v. Dr. Reddy's Labs., Ltd., 325 F. Supp. 2d 502 (D.N.J. 2004)*. *Mutual Pharm. Co. v. Pfizer Inc., 307 F. Supp. 2d 88 (D.D.C. 2004)*.

As Pfizer has not explicitly threatened suit (Def.'s Mem. at 15), I consider the totality of the circumstances. See *Arrowhead, 846 F.2d at 736*. Apotex identifies four **[\*17]** aspects of Pfizer's conduct that, taken together, allegedly give rise to a reasonable apprehension of suit: (1) Pfizer listed the *'699 patent* in the Orange Book, (2) Pfizer asserted the *'699 patent* against IVAX, (3) Pfizer has a history of litigating its patents, and (4) Pfizer has not acknowledged that Apotex's product does not infringe the *'699 patent*. (Pls.' Mem. at 21-25).

First, Pfizer's listing of the *'699 patent* in the Orange Book does not contribute to a reasonable apprehension of suit. According to the plain language of the law, an Orange Book listing represents merely that, in certain circumstances, an infringement claim "could" be asserted, but not that one will be asserted. *21 U.S.C. § 355(b)(1)*. An Orange Book listing imposes no obligation on the patent owner to sue, and does not suggest that a suit is expected or even likely. Id.; see *TorPharm, Inc., 2004 U.S. Dist. LEXIS 11930, 2004 WL 1465756, at \*9* (finding that an Orange Book listing does not "communicate an intent to sue each and every generic who opts to file an ANDA"). Apotex compares the Orange Book listing to a private letter, noting that

reasonable apprehension would exist if Pfizer had sent a letter **[*18]** to Apotex bearing the very same message. (Pls.' Mem. at 22). An Orange Book listing is unlike a private letter and does not carry the same threatening suggestion. An Orange Book listing is directed to the FDA, not any company in particular, and is submitted as a necessary element of the drug application. See *21 U.S.C. § 355(a), (b)(1)*.

Second, Pfizer's suit against IVAX does not contribute to a reasonable apprehension of suit. There was a distinct statutory incentive for Pfizer to sue IVAX: by suing the first filer within forty-five days of notice of the ANDA, Pfizer received an automatic thirty-month delay in the approval of that ANDA pursuant to *21 U.S.C. § 355(j)(5)(B)(iii)*. There is no similar incentive for suing Apotex. Moreover, Pfizer has not sued any of the other ANDA applicants. (Myers Decl. P9).

Third, Pfizer's history of litigation, though lengthy, is not sufficiently related to this case to create a reasonable apprehension of suit. In cases where courts have found prior litigation sufficiently threatening, either (1) the defendant referenced that litigation in some communication to the plaintiff, *Arrowhead, 846 F.2d at 733*; **[*19]** *Ivoclar Vivadent, Inc. v. Hasel, 2003 U.S. Dist. LEXIS 12611, No. 02-CV-0316E(F), 2003 WL 21730520, at *1 (W.D.N.Y. June 30, 2003)*, or (2) there was ongoing litigation between the parties over a series of closely related patents involving the same technology. *Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953 (Fed. Cir. 1987)*; *Clontech Labs., Inc. v. Life Techs., Inc., 2000 U.S. Dist. LEXIS 19320, No. Civ.A. AW-00-1879, 2000 WL 33124811, at *1 (D. Md. Dec. 20, 2000)*; *SmithKline Beech Am Corp. v. Zenith Goldline Pharms.,*

*Inc., 2000 U.S. Dist. LEXIS 9659, No. Civ.A. 00-CV-1393, 2000 WL 963165, at *1 (E.D. Pa. June 28, 2000)*. Apotex does not claim that Pfizer sent any threatening communication, but rather it relies on the fact that Pfizer has previously asserted its patent rights against other generic drug companies. (Pls.' Mem. at 24). What is missing from Apotex's argument, however, is an explanation as to how setraline hydrochloride is "essentially the same technology involved" in those actions. See *Goodyear Tire, 824 F.2d at 954*. Companies that profit largely from research and development will frequently find themselves involved in patent infringement litigation; what creates **[*20]** a reasonable apprehension of suit in any given case is a relationship between that case and some prior litigation. Apotex has not established such a relation here.

Finally, Apotex asks the Court to consider Pfizer's refusal to acknowledge non-infringement, but Apotex does not explain how this behavior is threatening. (Pls.' Mem. at 25). At most, Pfizer's refusal is ambiguous; it does not affirmatively show an intent to sue.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is granted. The Clerk of the Court shall enter judgment dismissing the complaint without prejudice and close this case.

SO ORDERED.

Dated: New York, New York

December 30, 2004

DENNY CHIN

United States District Judge

# EXHIBIT 5

LEXSEE 2004 U.S. DIST. LEXIS 1324

**DIGIGAN, INC., Plaintiff, - against - IV ALIDATE, INC. d/b/a
PLENAR, MDM GROUP, INC., and TIE TECHNOLOGIES, INC.
f/k/a GLOBAL WIDE WEB, INC., Defendants.**

**02 Civ. 420 (RCC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF NEW YORK**

*2004 U.S. Dist. LEXIS 1324; 71 U.S.P.Q.2D (BNA) 1455; 52
U.C.C. Rep. Serv. 2d (Callaghan) 1022*

**February 3, 2004, Decided
February 3, 2004, Filed**

**SUBSEQUENT HISTORY:** Magistrate's recommendation at *Digigan, Inc. v. Ivalidate, Inc., 2004 U.S. Dist. LEXIS 8705 (S.D.N.Y., Apr. 28, 2004)*

**PRIOR HISTORY:** *digiGAN, Inc. v. iVALIDATE, Inc., 2002 U.S. Dist. LEXIS 19696 (S.D.N.Y., Oct. 4, 2002)*

**DISPOSITION:** [*1] Defendants' motions to dismiss for failure to state claim GRANTED IN PART AND DENIED IN PART. MDM's motion to dismiss for lack of personal jurisdiction DENIED WITHOUT PREJUDICE.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Digigan, Inc, PLAINTIFF: David A Einhorn, James M Andriola, Anderson, Kill, Olick & Oshinsky PC, New York, NY USA.

For Ivalidate, Inc DBA Plenar, DEFENDANT: Anthony Motta, Law Offices of Joel Z Robinson & Co, New York, NY USA.

**JUDGES:** RICHARD CONWAY CASEY, United States District Court Judge.

**OPINIONBY:** RICHARD CONWAY CASEY

**OPINION:**

**MEMORANDUM & ORDER**

**RICHARD CONWAY CASEY, United States District Court Judge:**

Plaintiff digiGAN, Inc. ("Plaintiff") brought this action against i Validate, Inc. ("iValidate"), MDM Group, Inc. ("MDM"), and TIE Technologies, Inc. ("TIE") (collectively referred to as "Defendants") for a declaratory judgment that Plaintiff is the owner of certain property, including a number

2004 U.S. Dist. LEXIS 1324, *; 71 U.S.P.Q.2D (BNA) 1455;
52 U.C.C. Rep. Serv. 2d (Callaghan) 1022

of patents, and for damages based on violations of federal patent law and state unfair competition law. The three Defendants filed separate motions to dismiss the action. The Court addresses all three motions in this opinion. For the reasons that follow, Defendants' motions pursuant to *Federal Rule of Civil Procedure 12(b)(6)* **[*2]** are **GRANTED IN PART AND DENIED IN PART.** The Court **DENIES WITHOUT PREJUDICE** MDM's motion to dismiss for lack of personal jurisdiction.

## I. BACKGROUND

The following facts are derived from the Amended Complaint in this case, the truth of which the Court assumes for purposes of these motions. On February 26, 2001, Plaintiff entered into an agreement with iValidate, titled "Advance Letter," under which Plaintiff lent sums of money to iValidate. (Compl. P 7.) The Advance Letter stated that if a separate agreement, called an "Asset Purchase Agreement," did not close by April 15, 2001, the advances made by Plaintiff to iValidate were to convert into a loan payable by April 30, 2001. (Id. P 8.) That deadline was extended by consent of the parties until October 1, 2001. (Id. P 10.) The Asset Purchase Agreement did not close, but iValidate failed to pay back $ 107,500 plus interest. (Id. PP 8, 11.) Under a security agreement executed on March 13, 2001, iValidate assigned certain collateral to Plaintiff to secure its obligations under the Advance Letter. (Id. P 12.) On October 23, 2001, Plaintiff notified iValidate that it would strictly foreclose on the **[*3]** collateral, and received no objection. (Id. PP 13, 14.) Plaintiff therefore contends that it is the legal owner of the collateral.

On October 21, 2001, MDM issued a press release in which it claimed ownership of the collateral--which appears to include a number of patents--despite Plaintiff's perfected security interest which it recorded

in the states of New York and Georgia, and with the United States Patent and Trademark Office. (Id. PP 16, 17.) MDM then licensed rights in the patents to TIE (Id. P 19.) Defendants are alleged to be alter egos of one another. (Id. P 23.)

First, Plaintiff contends that it is entitled to a declaratory judgment that it is the rightful owner of the collateral and to an injunction against Defendants' infringement of its rights in the collateral. (Id. P 27.) Second, Plaintiff alleges that Defendants have violated the Lanham Act, *15 U.S.C. § 1125(a)*, by making false and misleading statements that they possess certain rights in the patents. (Id. P 36.) These statements allegedly caused confusion among the public and damage to Plaintiff. (Id. P 38.) The Amended Complaint also alleges that these misleading **[*4]** statements violated New York unfair competition law and *sections 349 and 350* of the New York General Business Law. (Id. PP 42, 44.)

Defendants argue that the Amended Complaint fails to state a claim on which relief can be granted, and have brought motions pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. In addition, MDM moves to dismiss the Amended Complaint for lack of personal jurisdiction under *Federal Rule of Civil Procedure 12(b)(2)*. n1

> n1 In its original moving papers, MDM moved for a more definite statement of the claims under *Federal Rule of Civil Procedure 12(e)*. However, in its supplemental moving papers filed after Plaintiff amended its complaint, that motion was not reasserted. The motion has therefore been abandoned.

## II. DISCUSSION

2004 U.S. Dist. LEXIS 1324, *; 71 U.S.P.Q.2D (BNA) 1455;
52 U.C.C. Rep. Serv. 2d (Callaghan) 1022

## A. Defendants' 12(b)(6) Motions

Defendants argue that the Amended Complaint should be dismissed in its entirety. Under *Rule 12(b)(6)*, **[*5]** the Court must presume that all of the complaint's allegations are true and read the Amended Complaint in the light most favorable to Plaintiff. See *Connolly v. McCall, 254 F.3d 36 (2d Cir. 2001)*. The Court can only grant the motion if it appears beyond doubt that Plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995)*. The Court will discuss each cause of action separately.

### 1. First Claim: Declaratory Relief Under Article 9 of the New York Uniform Commercial Code

iValidate argues that the Amended Complaint does not state a claim for declaratory relief that Plaintiff is the rightful owner of the collateral for three reasons: (1) Plaintiff breached the Advance Letter and therefore the security agreement is void; (2) Plaintiff failed to comply with the notice requirements of *section 9-620* of the New York Uniform Commercial Code ("N.Y.U.C.C."); and (3) the monies advanced by Plaintiff to iValidate were not loans but were deposits to be applied toward consideration that Plaintiff owed iValidate. (Memorandum of Law of Defendant iValidate **[*6]** in Support of Motion to Dismiss, at 16-19.)

All of these arguments must fail because they mistake the Court's role in deciding a *Rule 12(b)(6)* motion. The Court cannot make findings of fact, but must confine its analysis to whether the "facts stated on the face of the complaint, in documents appended to the complaint, or incorporated in the complaint by reference" would entitle Plaintiff to the requested relief. *Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)*.

The argument that Plaintiff breached the Advance Letter may be a defense that iValidate might eventually assert, but it is not a ground for dismissal under *Rule 12(b)(6)*. It is only a proper basis for a motion to dismiss "if the defense appears on the face of the complaint." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 158 (2d Cir. 2003)* (quoting *Pani Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998)*). There is nothing in the Amended Complaint, the Advance Letter, or the security agreement, that allows the Court to determine that Plaintiff breached the Advance Letter without making factual **[*7]** findings, something the Court cannot do on a motion to dismiss. Thus, this argument is unavailing.

Second, the Amended Complaint alleges that Plaintiff notified iValidate that it intended to strictly foreclose upon the collateral in satisfaction of iValidate's obligations under the Advance Letter. (Compl. P 13.) The Amended Complaint further alleges that iValidate did not object to the foreclosure. (Id. P 14.) N.Y.U.C.C. section 9-620 permits a secured party to retain collateral in satisfaction of an obligation if it sends a proposal to the debtor and receives no objection within twenty days after sending the proposal. *N.Y.U.C.C. Law § § 9-620 to -621.* iValidate argues that such notice did not satisfy the N.Y.U.C.C. requirements because iValidate had already sold the collateral to MDM and the Amended Complaint does not claim that MDM was notified of Plaintiff's proposal to strictly foreclose. However, the N.Y.U.C.C. only requires notification to parties from which the secured party received a claim of interest, or which held a perfected security interest or lien within ten days before the debtor consented to the foreclosure. See id. *§ 9-621(a)*. It is doubtful that Plaintiff **[*8]** must plead the absence of any such claims of interest and secured interest-holders, but a reasonable inference from the

allegation in the Amended Complaint that Plaintiff complied with the N.Y.U.C.C. requirements is that MDM had neither claimed an interest in the collateral nor held a perfected security interest. Thus, the Amended Complaint adequately alleges the necessary facts under the N.Y.U.C.C.

Finally, iValidate argues that the sum Plaintiff claims is owed was not a loan but a deposit toward monies that Plaintiff owed to iValidate. iValidate asserts that the Court must construe the Advance Letter and the security agreement in conjunction with the Asset Purchase Agreement and something called the Term Sheet, which iValidate maintains was executed on January 18, 2001, and specifies that Plaintiff would make cash payments of $ 1.1 million to iValidate; assume certain of iValidate's liabilities, and deliver stock in Plaintiff to iValidate shareholders. The Term Sheet purportedly also states that the patents would not be officially assigned to Plaintiff until it made payments to iValidate of $ 650,000. iValidate argues that this Term Sheet was incorporated into the Asset Purchase [*9] Agreement, which the Court must consider because the Amended Complaint references the Asset Purchase Agreement.

The Amended Complaint does refer to the Asset Purchase Agreement, and in part, relies on the agreement to state its claim for declaratory relief, thus, it may be considered by the Court in ruling on the motion to dismiss. See *Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)* (holding that documents relied on by plaintiff in drafting complaint may be considered on 12(b)(6) motion). iValidate contends that the declaratory judgment claim should be dismissed because Plaintiff failed to tender agreed-upon consideration and because the transaction contemplated by the Asset Purchase Agreement never closed. These arguments ask the Court to make factual findings and then a conclusion of law that

Plaintiff has no rights to the patent. Such actions are impermissible on a motion to dismiss.

Plaintiff has also sufficiently stated a claim for declaratory relief. A district court "must entertain a declaratory judgment action: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate [*10] and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992)* (quoting *Broadview Chemical Corp. v. Loctite Corp., 417 F.2d 998, 1001 (2d Cir. 1969)).* Plaintiff has plead facts suggesting that it is the rightful owner of the patents and that all three Defendants have asserted ownership of the patents. (Compl. PP 25, 26.) iValidate argues in defense that Plaintiff has no such rights. Thus, there is a controversy involving ownership of the patents that will be resolved by the declaratory relief that Plaintiff requests. iValidate's motion to dismiss is therefore denied.

### 2. Second Claim: Patent Infringement

MDM and TIE contend that Plaintiff has failed to state a cause of action for patent infringement. n2 The Amended Complaint alleges that Defendants have violated *35 U.S.C. § 271(a)* by "making, using, offering to sell, and/or selling the invention claimed" in two patents. (Compl. P 31.) *35 U.S.C. § 271(a)* states in relevant part: "Whoever without authority makes, uses, offers to sell, or sells [*11] any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

> n2 iValidate bases its motion on the argument that Plaintiff cannot recover on any of its legal theories because it has no ownership interest in the patents.

2004 U.S. Dist. LEXIS 1324, *; 71 U.S.P.Q.2D (BNA) 1455;
52 U.C.C. Rep. Serv. 2d (Callaghan) 1022

For the reasons already stated, this argument must be rejected.

According to both MDM and TIE, the Amended Complaint fails to state a cause of action against them because it does not claim that they actually produced or sold any patented inventions. "[A] patentee need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself." *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc., 203 F.3d 790, 794 (Fed. Cir. 2000).* In Phonometrics, the Federal Circuit held that a complaint states a claim for patent infringement [*12] when it "alleges ownership of the asserted patent, names each individual defendant, cites the patent that is allegedly infringed, describes the means by which the defendants allegedly infringe, and points to the specific sections of the patent law invoked." Id.

Here, Plaintiff has met the standard articulated in *Phonometrics* for stating a claim under *§ 271.* It has alleged ownership of the patents, named Defendants as the alleged infringers, cited the patents by number, and describes the means by which they were infringed, that is, through making, using, selling, offering to sell or actually selling the patented inventions. Complaints that merely track the statutory language may be sufficient to withstand a motion to dismiss. See *Glazer Steel Corp. v. Yawata Iron & Steel Co., 56 F.R.D. 75, 81 n.1 (S.D.N.Y. 1972).* In addition, the Amended Complaint specifically cites *§ 271* as the applicable patent-law provision. The information provided is adequate to allow Defendants to defend themselves. Therefore, the motions to dismiss the patent infringement claim are denied.

### 3. Third Claim: Lanham Act Violations

MDM and TIE next challenge Plaintiff's claim for [*13] violations of section 43(a)of the Lanham Act, *15 U.S.C. § 1125(a).* Specifically, MDM and TIE contend that Plaintiff only alleges misrepresentations regarding a patent, which is not a good or service. *The Lanham Act* subjects to civil suit:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities
> ...

*15 U.S.C. § 1125(a)* (emphasis added). This provision of the *Lanham Act* is meant "to prevent customer [*14] confusion regarding a product's source or sponsorship." *Chambers, 282 F.3d at 156. The Lanham Act* is not, however, a panacea for all unfair trade

2004 U.S. Dist. LEXIS 1324, *; 71 U.S.P.Q.2D (BNA) 1455;
52 U.C.C. Rep. Serv. 2d (Callaghan) 1022

practices. See *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 156 L. Ed. 2d 18, 123 S. Ct. 2041, 2045 (2003).

The Amended Complaint alleges that Defendants violated *section 43(a) of the Lanham Act* by making false and misleading representations concerning Defendants' rights in one of the patents (Compl. P 36.) These misrepresentations allegedly were made in the course of Defendants' website advertising of products protected by the patent. (Id.) The gravamen of Plaintiff's claim is that Defendants, in marketing their products, falsely stated that they owned the patent that Plaintiff received from iValidate under the security agreement. Thus, the alleged misrepresentations concerned the patent, not any products or services. A patent is not a "good or service" as those terms are used in the *Lanham Act*. See *Hans-Jurgen Laube & Oxidwerk HJL AG v. KM Europa Metal AG*, 1998 U.S. Dist. LEXIS 3921, No. 96 Civ. 8147(PKL), 1998 WL 148427, at *2 (S.D.N.Y. Mar. 27, 1998) (citing *Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1574-75 (Fed. Cir. 1996)). [*15]

In Hans-Jurgen, the plaintiffs alleged that the defendant violated *section 43(a)* when it falsely claimed ownership of a patent. Id. Judge Leisure concluded that the cause of action arose out of misrepresentations regarding ownership of the patent, and noted that the Federal Circuit has held that a patent is not a "good or service" under *section 43(a) of the Lanham Act*. See id.

Plaintiff responds that its *Lanham Act* claim is valid because Defendants advertised "products embodying technology protected by the Patent." (Compl. P 36.) However, drawing all reasonable inferences in Plaintiff's favor, the Amended Complaint does not allege any "false or misleading representation of fact" "in connection with any goods or services." See *15 U.S.C. § 1125*. The patent, and not

any product or service, is at the center of the controversy between the parties.

First, the only misrepresentations alleged occurred when Defendants claimed to own the patent or to be licensees of the patent. (See Compl. P 35.) Second, the reason that Plaintiff claims the statements were false was that it, and not Defendants, actually own the patent. (See id. P 37.) Finally, **[*16]** Plaintiff's vague reference to Defendants' "products embodying technology" does not allege the necessary connection between the misrepresentations of fact and goods or services. Even paragraph 36 of the Amended Complaint, in which Plaintiff mentions Defendants' products, only alleges misrepresentations in connection with Defendants' rights to the patent, not with the products themselves. Thus, the Court concludes that Plaintiff has alleged misrepresentations of fact in connection with a patent, not goods or services. *Therefore, the Lanham Act* claim is dismissed.

### 4. Fourth Claim: Unfair Competition

Plaintiff states that Defendants' false representation that they are the owners or licensees of the patent constitutes unfair competition under New York State law. (Id. P 42.) "The primary concern in unfair competition is the protection of a business from another's misappropriation of the business' organization or its expenditures of labor, skill, and money." *Gucci America, Inc. v. Duty Free Apparel Ltd.*, 277 F. Supp. 2d 269, 275 (S.D.N.Y. 2003) (quoting *Ruder & Finn, Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 422 N.E.2d 518, 522, 439 N.Y.S.2d 858 (N.Y. 1981)) (internal **[*17]** quotation marks omitted).

Defendants TIE and MDM argue that a cause of action for unfair competition cannot lie on the facts stated in the Amended Complaint because there are no allegations that they infringed on Plaintiff's patent rights or misappropriated Plaintiff's business name,

reputation, or good will. In addition, they argue that because the *Lanham Act* claim fails, so too must the claim for unfair competition.

If Defendants are to succeed in dismissing the unfair competition claim, they must not rest on their *Lanham Act* arguments. As the Second Circuit has explained, "the elements of an unfair competition and *Lanham Act* claim are different." *Morex S.p.A v. Design Institute America, Inc* 779 F.2d 799, 801 (2d Cir. 1985). In New York, unfair competition is a broad tort encompassing an "incalculable variety of illegal practices." *Norbrook Labs. Ltd v. G.C. Hanford Mfg. Co.,* 297 F. Supp. 2d 463, 2003 U.S. Dist. LEXIS 23201, 2003 WL 23023866, at *24 (N.D.N.Y. Dec. 3, 2003) (quoting *Electrolux Corp. v. Val-Worth, Inc.,* 6 N.Y.2d 556, 161 N.E.2d 197, 204, 190 N.Y.S.2d 977 (N.Y. 1959)). Plaintiff must allege, however, "unfairness and an unjustifiable attempt to profit from another's expenditure of [*18] time, labor, and talent." *Greenblatt v. Prescription Plan Servs. Corp.,* 783 F. Supp. 814, 825 (S.D.N.Y. 1992).

Here, Plaintiff's labor was not expended, nor talent tapped, in producing the patented technology. Plaintiff's only argument is that it expended money through its agreements with iValidate, and has, in effect, purchased the patent. However, it is the money spent in developing a product or process that the tort of unfair competition protects. See *Norbrook Labs., 2003 U.S. Dist. LEXIS 23201, 2003 WL 23023866, at *25* (finding unfair competition when defendant misappropriated technology for which plaintiff expended substantial time and money in producing). Plaintiff seeks to restate its patent infringement claim as an unfair competition claim, without alleging any expenditure of time, labor, or talent. See *id.* For this reason, the Amended Complaint does not adequately state a claim for unfair competition, and this cause of action is dismissed.

## 5. Fifth Claim: Violation of New York General Business Law

The Amended Complaint alleges that Defendants violated *sections 349 and 350* of the *N.Y. General Business Law. Sections 349 and 350* protect consumers against [*19] deceptive trade practices and false advertising. See N.Y. Gen. Bus. L. § § *349, 350.* The Court determines that Plaintiff has failed to state a claim under these statutes.

To establish a claim for deceptive trade practices under *section 349,* Plaintiff must allege that: "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir. 2000) (per curiam). Competitors have standing to bring a claim under this statute; however, "the gravamen of the complaint must be consumer injury or harm to the public interest." *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir. 1995) (quoting *Azby Brokerage, Inc. v. Allstate Ins. Co.,* 681 F. Supp. 1084, 1089 n.6 (S.D.N.Y. 1988)).

The only harm to the public found anywhere in the Amended Complaint is the potential confusion that might arise due to Defendants' claims that they own, or are licensees of, the patent (See Compl. P 38.) Consumer confusion regarding the patent, the use or nature of which is not even stated in the Amended [*20] Complaint, does not rise to the level of consumer injury necessary to sustain a claim under *section 349.* See *New York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 662 N.E.2d 763, 770, 639 N.Y.S.2d 283 (N.Y. 1995). "The conduct [alleged] need not be repetitive or recurring, but defendant's acts or practices must have broad impact on consumers at large ...." *Id.* There are no factual allegations in the Amended Complaint that suggest a broad impact on consumers; in

2004 U.S. Dist. LEXIS 1324, *; 71 U.S.P.Q.2D (BNA) 1455;

52 U.C.C. Rep. Serv. 2d (Callaghan) 1022

fact, Plaintiff never alleges what the invention is for which it claims to own the patent.

The Amended Complaint is replete, however, with allegations of harm to Plaintiff's business. "Where the gravamen of the complaint is harm to a business as opposed to the public at large, the business does not have a cognizable cause of action under § 349." *Gucci America, 277 F. Supp. 2d at 274.* Because this is merely a private dispute "without direct impact on the body of consumers," the claim under *section 349* is dismissed. See *Maurizio, 230 F.3d at 522.*

Plaintiff's claim under *section 350* must suffer a similar fate. To state a claim for false advertising under *section 350*, Plaintiff again must allege conduct that [*21] has a broad impact on consumers. See id. (citing with approval *Galerie Furstenberg v. Coffaro, 697 F. Supp. 1282, 1291-92 (S.D.N.Y. 1988)).* Therefore, the *section 350* claim is also dismissed.

### B. MDM's 12(b)(2) Motion

MDM also maintains that it is not subject to personal jurisdiction in this Court because it has no contacts with the state of New York. MDM claims that it is incorporated in Georgia and has its principal place of business in Texas. It further asserts that it has no offices, employees, or agents in New York, and derives no income from, nor has caused any injuries in, New York. The Amended Complaint, in contrast, alleges that MDM's principal place of business is in New York. (Id. P 3.) Plaintiff argues that this allegation is itself sufficient to withstand a motion to dismiss on the issue of personal jurisdiction. In the alternative, Plaintiff claims that MDM has sufficient contacts through to its own activities and those of TIE.

In demonstrating personal jurisdiction, "the nature of the plaintiff's obligation varies depending on the procedural posture of the litigation." *Ball v. Metallurgie Hoboken-*

*Overpelt S.A., 902 F.2d 194, 197 (2d Cir. 1990).* [*22] As this motion was filed prior to discovery, Plaintiff must make a Prima facie showing of jurisdiction by allegations in the complaint. *Id.*; see also *Metropolitan Life Ins. Co. v. Robertson Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996)* ("Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction.").

MDM cites *Palmieri v. Estefan, 793 F. Supp. 1182 (S.D.N.Y. 1992)*, for the proposition that an evidentiary hearing is required when a defendant challenges the plaintiff's factual allegations relating to personal jurisdiction. See *id. at 1186.* This argument is only partially correct. MDM certainly may challenge both Plaintiff's theory of jurisdiction and the veracity of the facts that purportedly support that theory, *Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 153 (2d Cir. 1999)*, but the Court need not decide both challenges at the same time. See *Ball, 902 F.2d at 197.*

"In ruling on the theory of jurisdictional allegations, the court may provisionally accept disputed factual allegations as true ... The court need only [*23] determine whether the facts alleged by the plaintiff, if true, are sufficient to establish jurisdiction; no evidentiary hearing or factual determination is necessary for that purpose." *Id. at 153* (emphasis added). MDM is correct that Plaintiff must prove facts establishing personal jurisdiction by a preponderance of the evidence, but Plaintiff need not do so on a prediscovery motion pursuant to *Rule 12(b)(2).* See *Ball, 902 F.2d at 196.*

The Court will accept as true the allegation of jurisdiction at this time. The parties shall have an opportunity to conduct discovery on the issue of jurisdiction, if they have not yet done so; the Court will schedule further proceedings after such discovery. Plaintiff will bear the burden of proving, by a

2004 U.S. Dist. LEXIS 1324, *; 71 U.S.P.Q.2D (BNA) 1455;
52 U.C.C. Rep. Serv. 2d (Callaghan) 1022

preponderance of the evidence, both its theory of jurisdiction and the facts on which that theory is based. Therefore, MDM's motion is denied with leave to renew after discovery has been completed.

## III. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss for failure to state a claim are **GRANTED IN PART AND DENIED IN PART.** Specifically, the Court concludes that Plaintiff has failed to state a [*24] cause of action under the *Lanham Act and New York General Business Law sections 349 and 350,* and for unfair competition. Plaintiff has, however, stated claims for declaratory relief and patent infringement. The Court **DENIES WITHOUT PREJUDICE** MDM's motion to dismiss for lack of personal jurisdiction.

**So Ordered:** February 3, 2004

**Richard Conway Casey, U.S.D.J.**

# EXHIBIT 6

LEXSEE 1998 U.S. DIST. LEXIS 3921

**HANS-JURGEN LAUBE AND OXIDWERK HJL AG, Plaintiffs, v. KM EUROPA METAL AG, Defendant.**

**96 Civ. 8147 (PKL)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1998 U.S. Dist. LEXIS 3921; 47 U.S.P.Q.2D (BNA) 1058*

**March 27, 1998, Decided
March 27, 1998, Filed**

**DISPOSITION:** [*1] Defendant's motion pursuant to *Fed. R. Civ. P. 12(b)(6)* for judgment on pleadings GRANTED.

**LexisNexis(R) Headnotes**

**COUNSEL:** For HANS-JURGEN LAUBE, OXIDWERK HJL AG, plaintiffs: Michael J. Sweedler, Amy J. Benjamin, Peter C. Schechter, Darby & Darby P.C., New York, NY.

For KM EUROPA METAL AG, defendant: Richard L. Mayer, Kenyon & Kenyon, New York, NY.

**JUDGES:** Peter K. Leisure, U.S.D.J.

**OPINIONBY:** Peter K. Leisure

**OPINION:**

**MEMORANDUM ORDER**

**LEISURE, District Judge:**

Plaintiffs Hans-Jurgen Laube ("Laube") and Oxidwerk HJL AG ("Oxidwerk") claim that defendant KM Europa Metal AG ("Europa") has acted to cause confusion, mistake, or deception among purchasers and potential purchasers of patinated copper as to the origin of the process by which such copper is patinated and as to the ownership of the intellectual property embodied in U.S. Patent No. *5,376,190* (the " *'190* Patent"), which discloses the patination process. Defendant moves pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* for judgment on the pleadings. For the reasons stated below, defendant's motion is granted.

**BACKGROUND**

Plaintiff Laube is the owner of Oxidwerk, a Swiss corporation, and is the developer of an industrial process for forming an oxidation patina on copper sheets (the "Laube Process"). In 1989, plaintiffs agreed to a contract granting Europa the exclusive right

to sell copper products treated by the Laube Process in a territory that included [*2] the Federal Republic of Germany, Austria, Luxembourg, Belgium, the Netherlands, Great Britain, Spain, and Portugal. Plaintiffs maintained the Laube Process as a trade secret but delivered technical information on the Laube Process to a trustee pursuant to the contract with defendant; the parties agreed to maintain the confidentiality of the information.

Under a new agreement in 1992, plaintiffs transferred more detailed information on the Laube Process to defendant and also trained defendant's employees on the Laube Process. The terms of this agreement expanded defendant's contract territory in Europe and Africa, but did not include the United States. Later in 1992, defendant filed a patent application in the United States Patent and Trademark Office for the Laube Process; the '190 Patent issued from this application in 1994. Plaintiffs learned of the '190 Patent from Revere Copper Products, Inc., which had contracted for the exclusive right to sell products made by application of the Laube Process in all countries of North and South America, and filed the Complaint in this action in 1996.

In February of 1997, defendant moved pursuant to *Fed. R. Civ. P. 12(b)(6)* to dismiss Counts [*3] I and II of the Complaint and moved pursuant to Title *28, United States Code ("U.S.C."), Section 1367*(c)(3) to dismiss Counts III-V. The Court held in abeyance further proceedings on defendant's motion to dismiss Count I, which seeks correction of the inventorship of the '190 Patent under *35 U.S.C. § 256,* pending the Federal Circuit's decision in *Stark v. Advanced Magnetics, Inc., 119 F.3d 1551 (Fed. Cir. 1997).* In Stark, the Federal Circuit held that § 256 permits correction of inventorship where, as in the instant case, it is alleged that the misnaming of the wrong inventor was done fraudulently. See *119 F.3d*

*at 1555.* As the Federal Circuit nullified the basis of defendant's motion to dismiss Count I by overturning several district courts' interpretation of § 256, defendant withdrew its motion as to Count I. Since defendant's motion to dismiss Counts III-V was based on the lack of a cognizable claim in Count I, defendant also withdrew its motion to dismiss Counts III-V. Therefore, the defendant's motion to dismiss Count II is all that remains.

## DISCUSSION

### I. Standard for Judgment on the Pleadings

When deciding a defendant's motion for judgment [*4] on the pleadings pursuant to *Fed. R. Civ. P. 12(b)(6)*, a court may grant the motion "only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41, 44 (2d Cir. 1997)* (internal quotation omitted). In considering the defendant's motion, the court "must accept as true the facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Id. at 43.*

### II. False Designation of Origin

Under the federal law of unfair competition, Section 43(a)(1) of the Lanham Act imposes civil liability upon "[any] person who, . . . in connection with any goods . . ., uses in commerce . . . any false designation of origin . . . which is likely to cause confusion." *15 U.S.C. § 1125*(a)(1)(A) (1997). The statute provides a remedy to a party injured by a competitor's false designation of origin of its product regardless of whether the party has secured a federally registered trademark. See *Forschner Group, Inc. v. Arrow Trading Co., Inc., 124 F.3d 402, 407 (2d Cir. 1997).* To prevail in an action under this Section, plaintiffs must [*5] demonstrate that its trade mark or trade dress is distinctive and that there exists a likelihood of confusion between

Case 1:05-cv-00016-JJF    Document 11-3    Filed 03/15/2005    Page 22 of 24    Page 3

1998 U.S. Dist. LEXIS 3921, *; 47 U.S.P.Q.2D (BNA) 1058

its product and the alleged infringer's product. See id. For the purposes of deciding defendant's motion, the Court assesses whether plaintiff could prove any set of facts to satisfy these requirements with respect to the disputed patent. n1

n1 Plaintiffs do not state a claim for the false designation of the origin of patinated copper products (as opposed to the process for patinating copper) and do not allege that defendant sold copper treated by the Laube Process in the United States. See *Tubeco, Inc. v. Crippen Pipe Fabrication Corp., 402 F. Supp. 838, 848 (E.D.N.Y. 1975),* aff'd, *538 F.2d 314 (2d Cir. 1976)* (a cause of action under the Lanham Act for false designation of origin of goods created through a patented process is predicated upon the sale of such goods in interstate commerce); see also *Buti v. Perosa, S.R.L., 139 F.3d 98, 1998 U.S. App. LEXIS 2875, 1998 WL 107690,* at *5 (2d Cir. 1998) (a foreign citizen's product not traded in the United States, and hence not subject to the constitutional regulatory authority of Congress, is not "used in commerce" for purposes of the Lanham Act). Accordingly, the Court restricts its inquiry to the false designation of the origin of the Laube Process.

[*6]

## III. The *'190* Patent

Plaintiffs allege that defendant violated § 43(a) of the Lanham Act by falsely naming a third party Europa employee as the inventor of the Laube Process and by falsely claiming ownership of the invention embodied in the *'190* Patent. See Amended Complaint at PP 39, 40. Plaintiff cites *Repap Enters. Inc. v. Kamyr Inc., No. 92-5701, 1993 U.S. Dist.*

*LEXIS 19524* (E.D. Pa. June 8, 1993), to support the proposition that intellectual property is a "good" for the purposes of § 43(a). The Court rejects this reasoning since the United States Court of Appeals for the Federal Circuit, which would hear any appeal in the instant case, has stated unequivocally that patents are not goods in commerce under § 43(a). See *Pro-Mold and Tool Company, Inc. v. Great Lakes Plastics, Inc., 75 F.3d 1568, 1574, 1575 (Fed. Cir. 1996)* (because "a question concerning whether alleged inequitable conduct in the prosecution of a patent application constitutes unfair competition clearly does impact our exclusive jurisdiction," the Federal Circuit "[does] not defer to the regional circuit law on this issue"; "there is no legal basis for a holding that inequitable conduct, [*7] or the assertion of a patent procured through inequitable conduct, constitutes unfair competition [in violation of Section 43(a) of the Lanham Act]."); see also *Tubeco, Inc., 402 F. Supp. at 848* (neither a patent nor a process for creating a product constitute "goods" under Section 43(a) of the Lanham Act). As a patent is not a "good" for purposes of the Lanham Act, the alleged conduct of defendant does not violate the statute. Plaintiffs can prove no set of facts that would entitle them to relief as to Count II of the Complaint; thus, the Court dismisses Count II. n2

n2 As the Court determines, *supra*, that neither a patent nor a process for creating a product are "goods" for purposes of the Lanham Act, the Court need not decide the questions of distinctiveness and likelihood of confusion.

## CONCLUSION

For the reasons stated above, defendant's motion pursuant to *Fed. R. Civ. P. 12(b)(6)* for judgment on the pleadings is HEREBY

1998 U.S. Dist. LEXIS 3921, *; 47 U.S.P.Q.2D (BNA) 1058

GRANTED. The parties are directed to appear for a pre-trial conference **[*8]** in Courtroom 18B at 500 Pearl Street on May 8, 1998, at 11:30 a.m.

**SO ORDERED.**

New York, New York
March 27, 1998

Peter K. Leisure

U.S.D.J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 15, 2005, the attached document

was electronically filed with the Clerk of the Court using CM/ECF which will send

notification of such filing(s) to the following and the document is available for viewing

and downloading from CM/ECF:

Jack B. Blumenfeld
Julia Heaney
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347


I hereby certify that on March 15, 2005, I have Federal Expressed the documents

to the following non-registered participants:

Peter Kontio
Patrick J. Flinn
Gardner S. Culpepper
Keith E. Broyles
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424

By: _____
           Richard L. Horwitz
           David E. Moore
           Hercules Plaza, 6th Floor
           1313 N. Market Street
           Wilmington, Delaware 19899-0951
           (302) 984-6000
           rhorwitz@potteranderson.com
           dmoore@potteranderson.com

673950