# EXHIBIT M

# MILBANK, TWEED, HADLEY & McCLOY LLP

**NEW YORK**
1-212-530-5000

**LOS ANGELES**
1-215-892-4000

**WASHINGTON, D.C.**
1-707-835-7500

**PALO ALTO**
1-650-739-7000

DASHWOOD HOUSE
69 OLD BROAD STREET
LONDON EC2M 1QS

TEL: 44-20-7448-3000
FAX: 44-20 7448-3029

**TOKYO**
81 3 3504-1050

**HONG KONG**
852-2971-4888

**SINGAPORE**
65-6428-2400

**FRANKFURT**
49-89-7593-7170

**MUNICH**
49 89 24441 2070

| | | |
|---|---|---|
| **TO:** | **FAX:** | **DATE:** |
| Bird & Bird | 020 7415 6111 | 8 April 2005 |
| Ref: HAE/PWW84/NOKCO.0043 | | |
| **FROM:** | **REFERENCE:** | **PAGES:** |
| Don Clossick Thomson | BCT/70364.00000/DCLP | 6 |

## NOKIA CORPORATION .V. INTERDIGITAL TECHNOLOGY CORPORATION [CLAIM NO. HC04 C01952]

Please see attached

LN1 #20054080v1

**CONFIDENTIALITY NOTICE**

This communication is intended only for the use of the individual(s) to whom it is addressed and may contain information which is privileged and/or confidential. If you have received this communication in error, you are hereby notified that its disclosure, distribution or copying is strictly prohibited and are requested to notify us of its receipt by telephone to the above number and we will on the original to us by mail.

THE PRINCIPAL PLACE OF BUSINESS OF THIS PARTNERSHIP, WHOSE PARTNERS INCLUDE SOLICITORS AND REGISTERED FOREIGN LAWYERS AND WHICH IS REGULATED BY THE LAW SOCIETY, IS DASHWOOD HOUSE, 69 OLD BROAD STREET, LONDON EC2M 1QS. WHERE A LIST OF THE PARTNERS' NAMES MAY BE INSPECTED. THE OFFICES OF AN AFFILIATED PARTNERSHIP ARE LISTED ABOVE

# MILBANK, TWEED, HADLEY & McCLOY LLP

NEW YORK
1-212-530-5000

LOS ANGELES
1-213-892-4000

WASHINGTON, D.C.
1-202-835-7500

PALO ALTO
1-650-739-7000

DASHWOOD HOUSE
69 OLD BROAD STREET
LONDON EC2M 1QS

TEL: 44-20-7448-3000
FAX: 44-20-7448-3088

8 April 2005

TOKYO
81-3-3504-1050

HONG KONG
852-2971-4888

SINGAPORE
65-6428-2400

FRANKFURT
49-69-7593-7170

MUNICH
49.89.24445 20 IV

Bird & Bird
90 Fetter Lane
London
EC4A 1JP

**FIRST LETTER**

Dear Sirs,

**Nokia Corporation v InterDigital Technology Corporation (Claim No. HC04 C01952)**

We write with reference to your client's position as regards the purpose of this action, as stated in Nokia's skeleton argument for the forthcoming appeal (paragraphs 2.8 to 2.10 and in particular the assertion in footnote 9 concerning 3G telephony).

**The '571 Patent (System)**

As to Nokia's position in relation to this patent, we refer to our second letter of today's date. Not only is it futile to continue the case on this patent in any event, but to persist in keeping in claims which InterDigital do not assert to be essential is still less comprehensible.

**What is covered by the Patent Licence Agreement**

As to the commercial significance of this action, Nokia are of course licensed until 31 December 2006, by which time the '571 System patent will have expired. In your letter dated 24 December 2004 you justify continuance of the action in relation to the two remaining patents ('774 Base Station and '414 Frequency Agility) on the basis that after 31 December 2006 Nokia will no longer be licensed and that the patent(s) may also be asserted in relation to 3G applications.

The extent of Nokia's license under the three patents in suit has already been canvassed in evidence (Boles I paragraphs 26, 35, 74 and 87, Boles II paragraph 6 and Laakkonen paragraphs 61 & 62) and in correspondence (B&B third letter dated 6 December 2004 and MTHM letter dated 10 December 2004).

LN1:#20089209v2

THE PRINCIPAL PLACE OF BUSINESS OF THIS LIMITED LIABILITY PARTNERSHIP, WHOSE PARTNERS INCLUDE SOLICITORS AND REGISTERED FOREIGN LAWYERS ANY WHICH IS REGULATED BY THE LAW SOCIETY, IS DASHWOOD HOUSE, 69 OLD BROAD STREET, LONDON EC2M 1QS, WHERE A LIST OF THE PARTNERS' NAMES MAY BE INSPECTED. THE OFFICES OF AN APPLY IATED PARTNERSHIP ARE LISTED ABOVE.

MILBANK, TWEED, HADLEY & M¢CLOY LLP

For the avoidance of doubt, InterDigital's position in this respect is set out below.

1. There are two distinct types of technology which fall to be considered, 2G TDMA/GSM/GPRS/EDGE technology and 3G CDMA technology. The three patents in suit do not relate to CDMA technology and would not be infringed by CDMA 3G equipment

2. Nokia have a licence (which extends to the three patents in suit as well as InterDigital's other patents) in relation to all 2G TDMA/GSM/GPRS/EDGE equipment. This includes GSM equipment itself and also covers GSM equipment which might form part of a dual mode product (i.e. a product which was capable of operating as a GSM product and also as a 3G CDMA product).

3. However, as regards 3G CDMA equipment per se, the licence does not extend to such technology. That is, however, irrelevant as regards this UK action because none of these three patents in suit would be infringed by CDMA 3G equipment in any event.

4. As stated, Nokia's licence expires on 31 December 2006 (by which time the '571 System Patent will have expired, leaving the Base Station and Frequency Agility Patents in force until August 2007 and October 2008 respectively).

5. However, InterDigital's position in the arbitration is that the licence will be paid up after 31 December 2006 (because the comparable Ericsson and Sony Ericsson licenses are paid up in that fashion). If the Arbitrators find in InterDigital's favour on that point then, as far as these patents are concerned, there is no issue between the parties over and above the question of the proper royalty rate, which is to be decided in the arbitration.

6. Nokia's position in the arbitration has the consequence that the licence would not be paid up after 31 December 2006 (because Nokia contend the Ericsson and Sony Ericsson licenses are not applicable). If the Arbitrators find in Nokia's favour on that issue, then Nokia's GSM equipment sold after 31 December 2006 will infringe the remaining two patents in suit (Base Station and Frequency Agility).

**Conclusion**

Thus, in summary

(a) this action has nothing to do with 3G CDMA products. Nokia's lack of a licence for 3G products from InterDigital provides no ground for continuing this action on these patents on any basis.

(b) InterDigital's position in the arbitration is that the existing licence will be paid up post 31 December 2006. If that is the Arbitrators' decision, then the position post expiry provides no ground for continuing this action since Nokia will be licensed post expiry for the only products this action is concerned with.

(c) It is Nokia who argue in the arbitration in favour of a position which leaves them without a licence post 31 December 2006. Only if that position were to be accepted

MILBANK, TWEED, HADLEY & McCLOY LLP

could Nokia end up in a position of infringement post 31 December 2006. But, in that event, licenses under the two remaining patents are available on FRAND terms and, accordingly, there would be no risk of injunction.

First, please confirm that the analysis in paragraphs 1 to 6 above is agreed. If it is not, please identify any respects in which it is not agreed and why.

Second, we invite you to reconsider InterDigital's proposal of 23 December 2004 that this action should be stayed pending conclusion of the arbitration. In addressing the issues raised in your letter under reply, it becomes even more apparent that this is the appropriate way to proceed and is in full conformity with the overriding principles of the CPR.

Yours faithfully,

*Milbank*

# MILBANK, TWEED, HADLEY & McCLOY LLP

**NEW YORK**
1-212-530-5000

**LOS ANGELES**
1-213-892-4000

**WASHINGTON, D.C.**
1-202-835-7300

**PALO ALTO**
1-650-739-7000

DASHWOOD HOUSE

69 OLD BROAD STREET

LONDON EC2M 1QS

———

TEL: 44–20–7448–3000

FAX: 44–20–7448–3029

8 April 2005
Our Ref: DCLP/70364.00000
Your Ref: HAE/ALD/PWW84/NOKCO.0043

**TOKYO**
81-3-3504-1050

**HONG KONG**
852-2971-4888

**SINGAPORE**
65-6428-2400

**FRANKFURT**
49-69-7593-7170

**MUNICH**
49-89-24445 2070

**SECOND LETTER**

Bird & Bird
90 Fetter Lane
London
EC4A 1JP

**By fax and by post**

Dear Sirs,

**Nokia Corporation v InterDigital Technology Corporation (Claim No. HC04 C01952)**

We write with reference to your second letter dated 21 March 2005. This concerns continuance of the action in relation to the '571 "System Patent".

## The Arbitration

We understand that a draft of the Award was expected to be submitted to the ICC Court by the end of March and that the Award is expected on or, more probably, before 31 May 2005.

## The Patent Licence Agreement

The '571 is one of very many patents licensed to Nokia since 29 January, 1999. Its validity has, 16 months before expiry, belatedly been challenged by Nokia. InterDigital believe that, as proposed to be amended, the patent is valid. Hence, the application to amend.

What Nokia now say in relation to the importance of the '571 Patent should be considered against the following background.

## The Finnish Opposition

Nokia themselves sought to revoke its counterpart in Finland as long ago as 30 November, 1990. Further, 3 of the 4 prior art publications now relied upon – namely, NEC : CD900 and Kinoshita – were cited by Nokia in the Finnish proceedings. Furthermore, Nokia were content to withdraw the action in Finland on 29 October, 1999 upon settlement with InterDigital.

THE PRINCIPAL PLACE OF BUSINESS OF THIS LIMITED LIABILITY PARTNERSHIP, WHOSE PARTNERS INCLUDE SOLICITORS AND REGISTERED FOREIGN LAWYERS AND WHICH IS REGULATED BY THE LAW SOCIETY, IS DASHWOOD HOUSE, 69 OLD BROAD STREET, LONDON EC2M 1QS, WHERE A LIST OF THE PARTNERS' NAMES MAY BE INSPECTED. THE OFFICES OF AN AFFILIATED PARTNERSHIP ARE LISTED ABOVE.

MILBANK, TWEED, HADLEY & McCLOY LLP

## Essentiality to GSM

Mr Laakkonen's Witness Statement refers to Nokia's knowledge as early as June 1993 that InterDigital considered the System Patents potentially essential to GSM: Laakkonen, paragraphs 17 - 18. Then, as referred to in the Particulars of Claim, the System Patent family was first notified by InterDigital to ETSI in April 2001.

## Putting the '571 Patent into Context

In the circumstances, Nokia's contention as to the critical importance of GB '571 carries little weight. The Arbitrators were given an opportunity of postponing the hearing to enable the English Court to rule on essentiality and validity but refused a stay. That refusal reflects the fact that this action relates only to the GB patent. It can have no relevance to the counterpart patents, which have already been the subject of US litigation (Motorola), US re-issue proceedings (the '089 Patent), and extensive Patent Office proceedings in Finland, Germany, Japan and Sweden all of which are matters of public record.

Since GB '571 expires the day before the current date set for trial of the action, whatever the outcome, it will have no future effect.

Continuance of the action in relation to GB '571 simply will not have any impact on the outcome of the real dispute between the parties. Nor in this case does public interest arise. No third party has objected to the proposed amendments and, as stated, the patent expires on 16 October 2005.

It is for Nokia to discontinue the action (on terms to be agreed), not for InterDigital to consent to revocation.

Yours faithfully,

*[signature: Milbank]*

# EXHIBIT N

# MILBANK, TWEED, HADLEY & McCLOY LLP

| | | |
|---|---|---|
| **NEW YORK**<br>1-212-530-5000 | DASHWOOD HOUSE | **TOKYO**<br>81-3-3504-1050 |
| | 69 OLD BROAD STREET | **HONG KONG**<br>852-2971-4898 |
| **LOS ANGELES**<br>1-213-892-4000 | LONDON EC2M 1QS | **SINGAPORE**<br>65-6428-2400 |
| **WASHINGTON, D.C.**<br>1-202-835-7500 | | **FRANKFURT**<br>49-69-7593-7170 |
| | TEL: 44–20–7448–3000 | **MUNICH**<br>49-89-24445-2070 |
| **PALO ALTO**<br>1-650-739-7000 | FAX: 44–20–7448–3029 | |

| | | |
|---|---|---|
| **TO:** | **FAX:** | **DATE:** |
| Bird & Bird | **0207 415 6111** | 25 April 2005 |
| **FROM:** | **YOUR REFERENCE:** | **PAGES:** |
| David Perkins | ALD/HAE/PWW/84/NOKCO.0043 | 12 |

## URGENT

Please see attached.

**CONFIDENTIALITY NOTICE**

This communication is intended only for the use of the individual(s) to whom it is addressed and may contain information which is privileged and/or confidential. If you have received this communication in error, you are hereby notified that its dissemination, distribution or copying is strictly prohibited and are requested to notify us of its receipt by telephone at the above number and to return the original to us by mail.

THE PRINCIPAL PLACE OF BUSINESS OF THIS LIMITED LIABILITY PARTNERSHIP, WHOSE PARTNERS INCLUDE SOLICITORS AND REGISTERED FOREIGN LAWYERS AND WHICH IS REGULATED BY THE LAW SOCIETY, IS DASHWOOD HOUSE, 69 OLD BROAD STREET, LONDON EC2M 1QS, WHERE A LIST OF THE PARTNERS' NAMES MAY BE INSPECTED. THE OFFICES OF AN AFFILIATED PARTNERSHIP ARE LISTED ABOVE.

# MILBANK, TWEED, HADLEY & McCLOY LLP

NEW YORK
1-212-530-5000

LOS ANGELES
1-213-892-4000

WASHINGTON, D.C.
1-202-835-7500

PALO ALTO
1-650-739-7000

DASHWOOD HOUSE

69 OLD BROAD STREET

LONDON EC2M 1QS

————

TEL: 44–20–7448–3000
FAX: 44–20–7448–3088

25 April 2005

Our Ref: DCLP/70364.00000/BCT

Your Ref: ALD/HAE/PWW/84/NOKCO.0043

TOKYO
81-3-3504-1050

HONG KONG
852-2971-4888

SINGAPORE
65-6428-2400

FRANKFURT
49-69-7593-7170

MUNICH
49-89-24445 2070

SECOND LETTER

Bird & Bird
90 Fetter Lane
London
EC4A 1JP

By Fax and by Post
0207 415 6111

Dear Sirs,

**Nokia Corporation v InterDigital Technology Corporation (Claim No. HC04 C01952)**

Thank you for your three letters dated 18 April and your letter dated 11 April, 2005.

**Trial Date**

The sensible approach is to fix a date which provides continuity, hence the proposal of 31 October, 2005 in our letters of 5 and 8 April, 2005. If you persist in rejecting that date, this can be reconsidered after the Hearing tomorrow.

**Essentiality**

Nokia's Amended Particulars of Claim allege non-essentiality of the three patents in suit to GSM Release 4 (we assume that GSM *Revision* 4 referred to at paragraph 8 is merely an error). Nokia defines GSM Release 4 by reference to "ETSI TS 141 101 V4.11.0 (also known as 3GPP TS 41.101 version 4.11.0 Release 4)", thereby recognising their equivalence. In fact, when reading the ETSI version of the standards, it will be noted that the top left corner of each page states the relevant 3GPP TS number.

There is an additional half page of text (the same in each case) relating to Intellectual Property Rights present in each ETSI document that does not appear in the 3GPP text. However, what makes the 3GPP text more useful is the fact that where each standard cross-references other

LN1:#20090136v4

THE PRINCIPAL PLACE OF BUSINESS OF THIS LIMITED LIABILITY PARTNERSHIP, WHOSE PARTNERS INCLUDE SOLICITORS AND REGISTERED FOREIGN LAWYERS AND WHICH IS REGULATED BY THE LAW SOCIETY, IS DASHWOOD HOUSE, 69 OLD BROAD STREET, LONDON EC2M 1QS, WHERE A LIST OF THE PARTNERS' NAMES MAY BE INSPECTED. THE OFFICES OF AN AFFILIATED PARTNERSHIP ARE LISTED ABOVE.

MILBANK, TWEED, HADLEY & McCLOY LLP

standards, it does so generally using the 3GPP designations rather than referring to the numbers associated with the ETSI technical standards.

We attach a document that provides web references to zipped versions of the 3GPP standards. In each case we have identified the Release 4 version that is dated just prior to InterDigital's more recent declaration to ETSI in 2004. You will note that the 3GPP texts are dated in the same manner as the ETSI texts.

With respect to standards other than GSM Release 4, we note that you request copies of these standards. Please explain why these standards are relevant to the declaration that Nokia seeks?

With regard to your questions about specific paragraph numbers in InterDigital's Statement of Essentiality which do not appear to be correct references, we have referred this to one of our experts and will revert to you shortly.

### Disclosure in the Amendment Proceedings

Your second letter of 18 April, 2005 says that InterDigital have delayed in providing disclosure "…because you do not want to be disclosing claim charts your client has previously prepared in its licensing negotiations, mapping your client's patents to the standards, shortly before the Appeal where you wish to challenge the validity of our client's case on essentiality."

This is incorrect. There is no calculated policy of delay as regard InterDigital's List. You will receive relevant disclosure when it is ready. We have said this will be on or before 29 April, 2005. If it is completed before then, you will receive the List before then.

### Nokia's Statement of Case on Essentiality

InterDigital have provided a Statement of Essentiality in the terms offered to the Court, which Nokia belatedly accepted. It is now for Nokia to provide its Statement of Case. If additional particulars are requested from InterDigital, Nokia should make an application.

### The Scope of the Nokia Patent License Agreement [PLA]

As to the meaning of 3G CDMA/CDMA 3G, both components are defined in the PLA.

- "CDMA" means Code Division Multiple Access.

- "3G" is defined by reference to "Third Generation", which means the next generation of digital, wireless telephony standards currently (i.e. as of the Effective Date) in the process of being adopted by world-wide standards setting bodies, including without limitation ETSI. This effort is also commonly referred to as "3G".

The PLA does include a license for 3G subscriber units and infrastructure, which fall within the definitions of Covered Subscriber Units and Covered Infrastructure. But on InterDigital's

MILBANK, TWEED, HADLEY & McCLOY LLP

construction, royalty payments due from Nokia in respect of 3G products have not yet been triggered. This is because no Major Competitor License Agreement [e.g. the Ericsson and Sony Ericsson Licences] presently includes 3G products. Accordingly, for clarity, references to "licence" should be prefixed by the words "paid up". An amended version of the letter is attached for clarification.

It is confirmed that the three GB patents in suit—including the '774 Base Station Patent—do not relate to CDMA technology.

The analysis of the PLA set out in the first letter of 8 April, 2005 is derived, as you would expect, from the terms of the license itself and instructions from InterDigital. Other than the Terms of Reference in the arbitration, neither this firm nor counsel have seen any pleadings or evidence in the arbitration relating to construction of the PLA.

As to the position after expiry of the PLA on 31 December, 2006, what you say only serves to emphasise the futility of pursuing this Action until the Arbitrators' award is published.

### The '571 Subscriber System Patent

Your letter quite fails to deal with this firm's second letter of 8 April. That said, the parties' respective positions have been fully canvassed in the correspondence. Clearly, this can now only be resolved by the Court.

### Stay

Again, the respective positions have been stated. We do not agree with your assessment of the relevance of this litigation to the overall dispute. Validity of counterparts of the patents in suit has been challenged in a number of jurisdictions and this would have been known to Nokia for many years, certainly before they entered into the PLA. Nokia's opposition to the stay requested must be viewed against the totality of their attitude to InterDigital's patents from the time they were first put on notice of those patents in 1993.

Yours faithfully

Milbank Tweed

# MILBANK, TWEED, HADLEY & McCLOY LLP

NEW YORK
1-212-530-5000

LOS ANGELES
1-213-892-4000

WASHINGTON, D.C.
1-202-835-7500

PALO ALTO
1-650-739-7000

DASHWOOD HOUSE

69 OLD BROAD STREET

LONDON EC2M 1QS

—————

TEL: 44–20–7448–3000
FAX: 44–20–7448–3088

8 April 2005

TOKYO
81-3-3504-1050

HONG KONG
852-2971-4888

SINGAPORE
65-6428-2400

FRANKFURT
49-69-7593-7170

MUNICH
49-89-24445 2070

## AMENDED 25 April 2005

Bird & Bird
90 Fetter Lane
London
EC4A 1JP

**AMENDED
FIRST LETTER**

Dear Sirs,

## Nokia Corporation v InterDigital Technology Corporation (Claim No. HC04 C01952)

We write with reference to your client's position as regards the purpose of this action, as stated in Nokia's skeleton argument for the forthcoming appeal (paragraphs 2.8 to 2.10 and in particular the assertion in footnote 9 concerning 3G telephony).

### The '571 Patent (System)

As to Nokia's position in relation to this patent, we refer to our second letter of today's date. Not only is it futile to continue the case on this patent in any event, but to persist in keeping in claims which InterDigital do not assert to be essential is still less comprehensible.

### What is covered by the Patent Licence Agreement

As to the commercial significance of this action, Nokia are of course licensed until 31 December 2006, by which time the '571 System patent will have expired. In your letter dated 24 December 2004 you justify continuance of the action in relation to the two remaining patents ('774 Base Station and '414 Frequency Agility) on the basis that after 31 December 2006 Nokia will no longer be licensed and that the patent(s) may also be asserted in relation to 3G applications.

LN1:#20089209v4

THE PRINCIPAL PLACE OF BUSINESS OF THIS LIMITED LIABILITY PARTNERSHIP, WHOSE PARTNERS INCLUDE SOLICITORS AND REGISTERED FOREIGN LAWYERS AND WHICH IS REGULATED BY THE LAW SOCIETY, IS DASHWOOD HOUSE, 69 OLD BROAD STREET, LONDON EC2M 1QS. WHERE A LIST OF THE PARTNERS' NAMES MAY BE INSPECTED. THE OFFICES OF AN AFFILIATED PARTNERSHIP ARE LISTED ABOVE.

MILBANK, TWEED, HADLEY & McCLOY LLP

The extent of Nokia's license under the three patents in suit has already been canvassed in evidence (Boles I paragraphs 26, 35, 74 and 87, Boles II paragraph 6 and Laakkonen paragraphs 61 & 62) and in correspondence (B&B third letter dated 6 December 2004 and MTHM letter dated 10 December 2004).

For the avoidance of doubt, InterDigital's position in this respect is set out below.

1. There are two distinct types of technology which fall to be considered, 2G TDMA/GSM/GPRS/EDGE technology and 3G CDMA technology. The three patents in suit do not relate to CDMA technology and would not be infringed by CDMA mode 3G equipment

2. Nokia will have a paid up licence (which extends to the three patents in suit as well as InterDigital's other patents) in relation to all 2G TDMA/GSM/GPRS/EDGE equipment. This includes GSM equipment itself and also covers the GSM part of the equipment which might form part of a dual mode product (i.e. a product which was capable of operating as a GSM product and also as a 3G CDMA product).

3. However, as regards 3G CDMA equipment per se, the paid up licence does not extend to such technology. That is, however, irrelevant as regards this UK action because none of these three patents in suit would be infringed by CDMA mode 3G equipment in any event.

4. As stated, Nokia's licence expires on 31 December 2006 (by which time the '571 System Patent will have expired, leaving the Base Station and Frequency Agility Patents in force until August 2007 and October 2008 respectively).

5. However, InterDigital's position in the arbitration is that the licence of paragraph 2 above will be paid up after 31 December 2006 (because the comparable Ericsson and Sony Ericsson licenses are paid up in that fashion). If the Arbitrators find in InterDigital's favour on that point then, as far as these patents are concerned, there is no issue between the parties over and above the question of the proper royalty rate, which is to be decided in the arbitration.

6. Nokia's position in the arbitration has the consequence that the licence would not be paid up after 31 December 2006 (because Nokia contend the Ericsson and Sony Ericsson licenses are not applicable). If the Arbitrators find in Nokia's favour on that issue, then Nokia's GSM equipment sold after 31 December 2006 will infringe the remaining two patents in suit (Base Station and Frequency Agility).

**Conclusion**

Thus, in summary

(a) this action has nothing to do with 3G CDMA products. Nokia's lack of a paid up licence for 3G mode products from InterDigital provides no ground for continuing this action on these patents on any basis.

MILBANK, TWEED, HADLEY & McCLOY LLP

(b)   InterDigital's position in the arbitration is that the existing licence of paragraph 2 above will be paid up post 31 December 2006.  If that is the Arbitrators' decision, then the position post expiry provides no ground for continuing this action since Nokia will be licensed post expiry for the only products this action is concerned with.

(c)   It is Nokia who argue in the arbitration in favour of a position which leaves them without a licence post 31 December 2006.  Only if that position were to be accepted could Nokia end up in a position of infringement post 31 December 2006.  But, in that event, licenses under the two remaining patents are available on FRAND terms and, accordingly, there would be no risk of injunction.

First, please confirm that the analysis in paragraphs 1 to 6 above is agreed.  If it is not, please identify any respects in which it is not agreed and why.

Second, we invite you to reconsider InterDigital's proposal of 23 December 2004 that this action should be stayed pending conclusion of the arbitration.  In addressing the issues raised in your letter under reply, it becomes even more apparent that this is the appropriate way to proceed and is in full conformity with the overriding principles of the CPR.

Yours faithfully,

Milbank Tweed

# DEFENDANT'S

## STATEMENT OF ESSENTIALITY

### REFERENCES

The following tables reproduce the parts of the GSM standards for which InterDigital has said its patents are essential.

Web page references are provided for the relevant standards. In each case, the reference is to Release 4. Where there are a number of versions under release 4, the reference is to the standard that was in existence at the date that InterDigital made its most recent set of declarations to ETSI (i.e. 8 April, 2004).

Where earlier standards are referred to in addition to the Release 4 version (e.g. 24.002 and its precursor 04.02), a second web reference is provided.

'571 Patent (System)

Table 1

| ETSI Standard Number | Title | Relevant Section of Standard | Web Reference |
|---|---|---|---|
| 23.002 | Network architecture | 4, 4.1.2.3, 4.4, Fig. 1 | www.3gpp.org/ftp/Specs/archive/23_series/23.002/23002-480.zip |
| 23.108 | Mobile radio interface layer 3 specification core network protocols; Stage 2 (structured procedures) | 7.1.2 | www.3gpp.org/ftp/Specs/archive/23_series/23.108/23108-401.zip |
| 24.002 | GSM-UMTS Public Land Mobile Network (PLMN) Access Reference Configuration | 3.2 in earlier release 04.02 | www.3gpp.org/ftp/Specs/archive/24_series/24.002/24002-411.zip  www.3gpp.org/ftp/Specs/archive/04_series/04.02/0402-700.zip |
| 29.002 | Mobile Application Part (MAP) specification | 2 in earlier release 09.02 | www.3gpp.org/ftp/Specs/archive/29_series/29.002/29002-4e0.zip  www.3gpp.org/ftp/Specs/archive/09_series/09.02/0902-7f0.zip |

| 29.007 | General requirements on interworking between the Public Land Mobile Network (PLMN) and the Integrated Services Digital Network (ISDN) or Public Switched Telephone Network (PSTN) | 4, 6 | www.3gpp.org/ftp/Specs/archive/ 29_series/29.007/29007-4a0.zip |
|---|---|---|---|
| 43.050 | Transmission Planning Aspects of the Speech Service in the GSM Public Land Mobile Network (PLMN) System | Fig. 2 | www.3gpp.org/ftp/Specs/archive/ 43_series/43.050/43050-400.zip |
| 43.052 | Lower layers of the GSM Cordless Telephony System (CTS) radio interface; Stage 2 | 8 | www.3gpp.org/ftp/Specs/archive/ 43_series/43.052/43052-400.zip |
| 44.018 | Mobile radio interface layer 3 specification; Radio Resource Control (RRC) protocol | 1.5 | www.3gpp.org/ftp/Specs/archive/ 44_series/44.018/44018-4g0.zip |
| 45.001 | Physical layer on the radio path; General description | All Annex A | www.3gpp.org/ftp/Specs/archive/ 45_series/45.001/45001-430.zip |
| 45.002 | Multiplexing and multiple access on the radio path | 5.1, 5.2, Fig. 1, Fig. 2 | www.3gpp.org/ftp/Specs/archive/ 45_series/45.002/45002-480.zip |
| 45.003 | Channel coding | 3, Annex A | www.3gpp.org/ftp/Specs/archive/ 45_series/45.003/45003-420.zip |
| 45.004 | Modulation | 3 | www.3gpp.org/ftp/Specs/archive/ 45_series/45.004/45004-420.zip |
| 46.001 | Full Rate Speech Processing Functions | Fig. 1 | www.3gpp.org/ftp/Specs/archive/ 46_series/46.001/46001-400.zip |
| 46.010 | Full-rate speech transcoding | 1.5, Fig. 1.1 | www.3gpp.org/ftp/Specs/archive/ 46_series/46.010/46010-410.zip |
| 48.002 | Base Station System - Mobile Services Switching Centre (BSS-MSC) Interface - Interface Principles | 4.2.2.1 | www.3gpp.org/ftp/Specs/archive/ 48_series/48.002/48002-420.zip |
| 48.008 | Mobile Switching Centre - Base Station system (MSC-BSS) Interface Layer 3 Specification | 3.1.1.1 | www.3gpp.org/ftp/Specs/archive/ 48_series/48.008/48008-4a0.zip |
| 48.052 | Base Station Controller - Base Tranceiver Station (BSC-BTS) Interface - Interface Principles | 3.1, 5.2 | www.3gpp.org/ftp/Specs/archive/ 48_series/48.052/48052-401.zip |
| 48.058 | Base Station Controller - Base Transceiver Station (BCS-BTS) Interface Layer 3 Specification | 3.2 | www.3gpp.org/ftp/Specs/archive/ 48_series/48.058/48058-410.zip |

| 48.060 | In-band control of remote transcoders and rate adaptors for full rate traffic channels | 6.2 | www.3gpp.org/ftp/Specs/archive/48_series/48.060/48060-410.zip |
| 48.061 | In-band control of remote transcoders and rate adaptors for half rate traffic channels | 6.2, fig 6.1, fig. 6.2 | www.3gpp.org/ftp/Specs/archive/48_series/48.061/48061-411.zip |

'774 Patent (Base Station):

Table 2

| ETSI Standard Number | Title | Relevant Section of Standard | Web Reference |
| --- | --- | --- | --- |
| 23.002 | Network architecture | 3.1, 4.1.2.1, 4.2.1, 6.2.1.1, Fig. 1 | www.3gpp.org/ftp/Specs/archive/23_series/23.002/23002-480.zip |
| 42.056 | GSM Cordless Telephony System (CTS), Phase 1; Service description; Stage 1 | 4.1, Fig. 1 | www.3gpp.org/ftp/Specs/archive/42_series/42.056/42056-400.zip |
| 43.052 | Lower layers of the GSM Cordless Telephony System (CTS) radio interface; Stage 2 | 3.1, 8 | www.3gpp.org/ftp/Specs/archive/43_series/43.052/43052-400.zip |
| 45.001 | Physical layer on the radio path; General description | 5, 7.6 | www.3gpp.org/ftp/Specs/archive/45_series/45.001/45001-430.zip |
| 45.002 | Multiplexing and multiple access on the radio path | 3.3,3.1, 3.3.4.1 | www.3gpp.org/ftp/Specs/archive/45_series/45.002/45002-480.zip |
| 45.056 | CTS-FP Radio Sub-system | 3.1 | www.3gpp.org/ftp/Specs/archive/45_series/45.056/45056-400.zip |
| 48.001 | General Aspects on the BSS-MSC Interface | 7.2, 7.3 | www.3gpp.org/ftp/Specs/archive/48_series/48.001/48001-400.zip |
| 48.002 | Base Station System - Mobile Services Switching Centre (BSS-MSC) Interface - Interface Principles | 1, 4.2.2, 9, Fig. 1 | www.3gpp.org/ftp/Specs/archive/48_series/48.002/48002-420.zip |
| 48.004 | Base Station System - Mobile Services Switching Centre (BSS-MSC) Interface Layer 1 Specification | 4 | www.3gpp.org/ftp/Specs/archive/48_series/48.004/48004-400.zip |
| 48.008 | Mobile Switching Centre - Base Station system (MSC-BSS) Interface Layer 3 Specification | 2.3, 3.1, 3.2, | www.3gpp.org/ftp/Specs/archive/48_series/48.008/48008-4a0.zip |

| 48.051 | Base Station Controller - Base Tranceiver Station (BSC-BTS) Interface General Aspects | 4 | www.3gpp.org/ftp/Specs/archive/4 8_series/48.051/48051-410.zip |
|---|---|---|---|
| 48.052 | Base Station Controller - Base Tranceiver Station (BSC-BTS) Interface - Interface Principles | 3.1, 5.2, 5.3, Fig. 4.1 | www.3gpp.org/ftp/Specs/archive/4 8_series/48.052/48052-401.zip |
| 48.060 | In-band control of remote transcoders and rate adaptors for full rate traffic channels | 6.2 | www.3gpp.org/ftp/Specs/archive/4 8_series/48.060/48060-410.zip |
| 48.061 | In-band control of remote transcoders and rate adaptors for half rate traffic channels | 6.2, Fig. 6.1, Fig. 6.2 | www.3gpp.org/ftp/Specs/archive/4 8_series/48.061/48061-411.zip |

'414 Patent (Frequency Agility):

**Table 3**

| ETSI Standard Number | Title | Relevant Section of Standard | Web Reference |
|---|---|---|---|
| 22.129 | Handover requirements between UTRAN and GERAN or other radio systems | 3.1, 5.3 | www.3gpp.org/ftp/Specs/archive/ 22_series/22.129/22129-440.zip |
| 23.002 | Network architecture | Fig. 1 | www.3gpp.org/ftp/Specs/archive/ 23_series/23.002/23002-480.zip |
| 23.009 | Handover procedures | 4, 5, 6 | www.3gpp.org/ftp/Specs/archive/ 23_series/23.009/23009-490.zip |
| 23.067 | Enhanced Multi-Level Precedence and Pre-emption Service (eMLPP); Stage 2 | 3.1, 11.5 | www.3gpp.org/ftp/Specs/archive/ 23_series/23.067/23067-411.zip |
| 43.052 | Lower layers of the GSM Cordless Telephony System (CTS) radio interface; Stage 2 | 4.2 | www.3gpp.org/ftp/Specs/archive/ 43_series/43.052/43052-400.zip |
| 45.002 | Multiplexing and multiple access on the radio path | Fig. 2, Fig. 5, 4, 5 | www.3gpp.org/ftp/Specs/archive/ 45_series/45.002/45002-480.zip |
| 45.005 | Radio transmission and reception | 2 | www.3gpp.org/ftp/Specs/archive/ 45_series/45.005/45005-4d0.zip |
| 45.008 | Radio subsystem link control | 3, 3.4, Annex | www.3gpp.org/ftp/Specs/archive/ 45_series/45.008/45008-4d0.zip |

| | | A | |
|---|---|---|---|
| 48.002 | Base Station System – Mobile Services Switching Centre (BSS-MSC) Interface – Interface Principles | 4.8 | www.3gpp.org/ftp/Specs/archive/<br>48_series/48.002/48002-420.zip |
| 48.008 | Mobile Switching Centre – Base Station system (MSC-BSS) Interface Layer 3 Specification | 3.1.6, 5 | www.3gpp.org/ftp/Specs/archive/<br>48_series/48.008/48008-4a0.zip |

# EXHIBIT O

# Appellant's Notice

In the Court of Appeal

**Notes for guidance are available which will help you complete this form. Please read them carefully before you complete each section.**

Seal

| For Court use only | |
|---|---|
| Appeal Court Reference No. | |
| Date filed | |

## Section 1

| Name of court | High Court of Justice, Chancery Division, Patents Court | Case or claim number | Claim No. HC 04 C 01952 |
|---|---|---|---|

| Names of claimants/ applicants/ petitioner | NOKIA CORPORATION | Names of defendants/ respondents | INTERDIGITAL TECHNOLOGY CORPORATION |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

In the case or claim, were you the
*(tick appropriate box)*

☐ claimant        ☐ applicant        ☐ petitioner

☑ defendant       ☐ respondent       ☐ other *(please specify)* _____

## Section 2

Your (Appellant's) name InterDigital Technology Corporation

Your Agent's name    Milbank, Tweed, Hadley & McCloy LLP        *(if you are legally represented)*

Your agent's address

Dashwood House,
69 Old Broad Street,
London EC2M 1QS

| reference or contact name | David Perkins |
|---|---|
| contact telephone number | 020 7448 3000 |
| DX number | |

1

N161 Appellant's Notice (4.00)

*Crown Copyright. Published by Sweet and Maxwell*

## Section 3

Respondent's name   **Nokia Corporation**

Agent's name   **Bird & Bird**   *(if the respondent is legally represented)*

Respondent's contact address

90 Fetter Lane
London
EC4A 1JP

| reference or contact name | Jane Mutimear |
| contact telephone number | 020 7415 6000 |
| DX number | 119 London Chancery |

Details of other respondents are attached☐ Yes   ☑ No

## Section 4

**Do not complete if appealing to the Court of Appeal**

|  | Days | Hours | Minutes |
|---|---|---|---|
| How long do you estimate it will take to put your appeal to the appeal court at the hearing? |  |  |  |

Who will represent you at the appeal hearing?   ☐ Yourself   ☐ Solicitor   ☐ Counsel

## Section 5

| Name of Judge | Date of order(s) |
|---|---|
| Mr Justice Pumfrey | 8th December 2004 |

If only part of an order is appealed, write out that part (or those parts)

A minute of order is being prepared.  A copy of the Order will be provided as soon as it has been agreed and sealed.  However those parts of the learned judge's order which are appealed against are in summary:-

(1) The refusal to stay this action pending the conclusion of the pending arbitration between the parties.

(2) The refusal to restrain the Claimant from pursuing its applications under 28 USC 1782.

(3) The refusal to strike out parts of the Claimant's pleadings and the allowance of the Claimant's application to amend its Particulars of Claim.

(4) The order that the Appellant pays the Respondent's costs.

Was the case allocated to a track? ☑ Yes   ☐ No

If Yes, which track was the case allocated to? ☐ fast track   ☑ multi-track

Is the order you are appealing a case management order? ☐ Yes   ☐ No (The orders appealed include but are not limited to case management orders.)

2

## Section 6

Has permission to appeal been granted?

Yes ☐ complete box **A**       No ☑ complete box **B**

*if you are asking for permission or it is not required*

**A**

Date of order granting permission_____

Name of Judge_____

Name of Court_____

**B**

☐ I do not need permission

☑ Milbank, Tweed, Hadley & McCloy LLP, Solicitors for the Appellant seek permission to appeal the orders at **section 5** above.

Are you making any other applications?    Yes ☑    No ☐
If Yes, complete section 10

Is the appellant in receipt of legal aid certificate or a community legal service fund (CLSF) certificate?    Yes ☐    No ☑

Does your appeal include any issues arising from the Human Rights Act 1998?    Yes ☐    No ☑

## Section 7

I (the appellant) appeal(s) the order(s) at **section 5** because:

Please see the attachment.

**Section 8**

My skeleton argument is:-

☐ set out below      ☑ attached      ☐ will follow

**Section 9**

I (the Appellant) am (is) asking that:-

*(tick appropriate box)*

☑ the order(s) at **section 5** be set aside

☑ the order(s) at **section 5** be varied and the following order(s) substituted :-

(1) All further proceedings in this action be stayed pending conclusion of the pending arbitration between the parties or further order in the meantime.

(2) The Claimant be restrained from pursuing its applications under 28 USC 1782.

(3) The following parts of the Claimant's pleadings be struck out namely paragraph 4 of the Particulars of Claim, paragraphs 1-3, 7-9 and 16-18 of the Grounds of Invalidity and Paragraphs 1 - 7 of the Reply

(4) The Claimant's application to amend its Particulars of Claim be refused.

(5) The Claimant pays the Defendant's costs of their application made by notice dated 27th October 2004 and of this appeal.

☐ a new trial be ordered

☐ the appeal court makes the following additional orders :-

**Section 10**

I wish to make an application for additional orders ☑ in this section

☐ in the Part 23 application
form (N244) attached

## Part A
The appellant applies for an order that :-

This hearing of this appeal be expedited.

because :-

The appeal against the refusal to grant a stay is urgent. Having decided to dismiss the Defendant's application for a stay, the Court has provisionally set the date for the trial of this action as July 2005.

The appeal against the refusal to restrain the 1782 applications is very urgent. Those applications are pending before the US District Courts of Texas and North Carolina. The briefing periods for each application is complete and the applications are ready for decision. The appeal would be rendered nugatory unless it is dealt with quickly.

As regards the pleadings, the form of the pleadings and the issue of whether a declaration of "essentiality" forms part of this action needs to be resolved expeditiously in order for the action to proceed on a proper basis.

## Part B
I (we) wish to rely on :

☑ evidence in Part C
☐ witness statement (affidavit)

**Part C**

I (we) wish to rely on the following evidence in support of this application:-

We wish to rely on the letter from the Defendant's solicitor dated 13th December 2004 which sets out the reasons for the urgency of this matter. A copy is attached.

**Statement of Truth**

I believe (the appellant believes) that the facts stated in Section 10 are true.

Full name  DAVID CHARLES LANGRIGGE PERKINS

Name of appellant's solicitor's firm: MILBANK TWEED HADLEY & McCLOY LLP

Signed _____          position or office held PARTNER

Appellant ('s solicitor)                (if signing on behalf of firm or company)

TOTAL P.03

13.Dec. 2004 16:52      Nr.0689  S. 2

| Section 11 | |
|---|---|

If you do not yet have a document that you intend to use to support your appeal, identify it, give the date when you expect it to be available and give the reasons why it is not currently available in the box below.

Please tick the papers you are filing with this notice and any you will be filing later.

☑ Your skeleton argument *(if separate)*

☑ A copy of the order being appealed *TO BE SUPPLIED AS SOON AS IT IS AVAILABLE*

☑ A copy of any order giving or refusing permission to appeal together with a copy of the reasons for that decision

☐ Any witness statements or affidavits in support of any application included in this appellant's notice

☐ A copy of the legal aid or CLSF certificate *(if legally represented)*

☑ A bundle of documents for the appeal hearing containing copies of your appellant's notice and all the papers listed

   *TO BE SUPPLIED AS SOON AS POSSIBLE*

   ☑ a suitable record of the reasons for the judgment of the lower court;

   ☑ any statements of case;

   ☐ any other affidavit or witness statement filed in support of your appeal;

   ☐ any relevant transcript or note of evidence;

   ☑ any relevant application notices or case management documents;

   ☑ any skeleton arguments relied on by the lower court;
   relevant affidavits, witness statements, summaries, experts' reports and exhibits;

   ☐ any other documents ordered by the court; (give details)

   _____

   ☐ in a second appeal, the original order appealed, the reasons given for making that order and the appellant's notice appealing that original (first) order

   ☐ if the appeal is from a decision of a Tribunal, the Tribunal's reasons for that decision, the original decision reviewed by the Tribunal and the reasons for that original decision

Reasons why you have not supplied a document and date when you expect it to be available:-

This is an urgent appeal made from a judgment given orally on 8th December 2002. At the time of filing this notice the final form of order has not been agreed, nor has a corrected form of the judgment been completed. These will follow as soon as they are available.

Signed *Milburn* ———————— Appellant ('s Solicitor)

### *Section 7 - Grounds of Appeal*

The grounds on which the Defendant appeals are as follows:-

*Stay pending the arbitration*

1.  The judge exercised his discretion whether or not stay the action on a wrong basis. The judge:

    *   failed to have any regard at all to the aspect of the overriding objective that the court should allot an appropriate share of the court's resources to an action. He simply did not consider this issue despite the clear terms of CPR 1.1 (2) (e) on the point (to which he was referred).

    *   Instead wrongly directed himself that *"when in a properly-constituted action the claimant seeks appropriate relief, the dispute is not the subject to an arbitration agreement and the action itself cannot be said to be an abuse of process, it seems to me that the <u>primary duty of the court is to bring it on for trial as fairly and as quickly as the circumstances permit and not to stay it"</u>.*

    *   Failed to have any proper regard to the crucially relevant factor that the action is being run by the Claimant for the purpose of acting as a vehicle for gathering evidence and obtaining an advisory opinion (albeit not binding on the arbitrators) for the co-pending ICC arbitration. He should have held that this was in itself an abuse of process, or at the least a highly material factor in applying the overriding objective.

    *   Misunderstood the Defendant's argument about a stay pending ADR. There was no need to identify a distinct form of dispute resolution over and above the arbitration itself. The evidence before the judge was that the commercial centre of gravity of this dispute was the ICC arbitration, and that the outcome of the arbitration was likely to resolve the real dispute between the parties and render these proceedings entirely unnecessary. If an action proves to be unnecessary there is no need to allot any of court's resources to it.

9

2.  Had the judge considered the question of a stay on the right basis, taking into account the matters set out above, he would have acceded to the Claimant's application for a stay until June 2005, pending the outcome of the arbitration.

*Restraint of 1782 Applications*

3.  Although the judge correctly analysed the law in relation to the Court's jurisdiction to restrain applications made under USC §1782 which are said to be in aid of English proceedings, he erred in the following respects, none of which involved the exercise of his discretion:-

- He wrongly directed himself that "*The extent to which a collateral purpose is an objection to a section 1782 request is a matter for the district court in the light of the guidance provided to it by Intel and other cases. It is not a matter for me.* " He should have held that it was a relevant issue that required a decision by him.

- He declined to decide whether or not the real reason for the 1782 applications was to aid Nokia in the parallel ICC arbitration rather than in these proceedings. Had he decided the question, he would have found that the applications were indeed made for a collateral purpose.

- He erred in deciding in effect that even if the applications were made for a collateral purpose, that was not a ground on which this court could or should restrain them. On the contrary the judge should have held that it was an abuse of these proceedings to make a 1782 application in their name to the US Court when the real purpose is not to obtain material for use before this court.

- He held that the matter of whether the 1782 applications were abuse was a matter for the US court and not this court. This was wrong. The fact that the US court might also refuse the applications for the same reason does not mean that the English could cannot do so.

- He failed to have regard to the fact that the English court is better placed to assess the collateral nature of the 1782 applications than the American court

10

since the English judge is better able to judge the likely utility of the materials sought to the English proceedings.

4.   Had the judge approached the matter correctly he would have restrained the Claimant from pursuing the applications.

*Pleadings - strike out and allowance of the amendments*

5.   The judge failed to address the Defendant's application to strike out certain parts of the Claimant's pleadings addressed to construction. He should have held that subsequent conduct of a patentee was irrelevant to construction and that the matters pleaded were inadmissible.

6.   The judge instead allowed an application by the Claimant to amend its pleadings to add a form of declaratory relief. The judge erred in principle in that the declaration sought to be added by amendment is one the court has no jurisdiction to make for the following reasons:-

- The declaration asks the court to decide on whether the Defendant's patents are "essential" to certain GSM standard.

- Such a declaration does not finally determine any legal rights between the parties.

- The Claimant's products may fall within the patents whether or not they fall within the standards; and the patents may cover the Claimant's products whether or not they are essential and cover the standards.

- There is no proper basis to plead the claim to the declaration. Section 71 of the Patents Act 1977 does not apply. The fact that the Defendant has notified the European standards body ETSI that it believes the patents are essential to the ETSI standard (and that it stands by that declaration) does not amount to a "claim of right". Essentiality is not a legal right. The relevant legal right is patent infringement.

11

- The amendment seeks to usurp the function of the arbitrators, since whether or not the Defendant's patents are essential to a given standard is a matter for them, not for the court.

7. The declaration sought was also impermissible as a further attempt to import inadmissible evidence of construction relating to the patentee's subsequent conduct.

GUY BURKILL QC
COLIN BIRSS

12