## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOKIA CORPORATION and | ) | |
| NOKIA, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 05-16-JJF |
| v. | ) | |
| | ) | |
| INTERDIGITAL COMMUNICATIONS | ) | |
| CORPORATION and INTERDIGITAL | ) | **DEMAND FOR JURY TRIAL** |
| TECHNOLOGY CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE
12(B)(1), 12(B)(6), AND 12(H)(3)**


OF COUNSEL:

D. Dudley Oldham
Robert S. Harrell
Richard S. Zembek
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Telecopier: (713) 651-5246
doldham@fulbright.com
rharrell@fulbright.com
rzembek@fulbright.com

Dan D. Davison
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
Telecopier: (214) 855-8200
ddavison@fulbright.com

Dated: May 12, 2005

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, Delaware 19801
Telephone: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants InterDigital
Communications Corporation and
InterDigital Technology Corporation*

# TABLE OF CONTENTS

**PAGE**

TABLE OF CITATIONS .................................................................................................. iii

ARGUMENT ................................................................................................................. 1

I.    Nokia's Declaratory Judgment Action Should Be Dismissed for
      Lack of Subject Matter Jurisdiction Because No Actual
      Controversy Exists ........................................................................................... 1

      A.    Nokia Lacks a Reasonable Apprehension of Imminent Suit
            Because It Currently Is a Licensee of the Patents at Issue ............. 1

      B.    Nokia Failed to Prove a Reasonable Apprehension of
            Imminent Suit ......................................................................................... 4

            1.    The "Litigation History" Between Nokia and
                  InterDigital Does Not Establish a Reasonable
                  Apprehension of Imminent Suit ........................................... 4

            2.    InterDigital's Litigation History With Other
                  Companies Does Not Establish a Reasonable
                  Apprehension of Imminent Suit ........................................... 5

            3.    Nokia Has Not Presented Any Other Objective
                  Evidence That It Has a Reasonable Apprehension of
                  Imminent Suit ........................................................................ 7

II.   Federal Circuit Precedent Does Not Authorize This Court to Apply
      the Open-Ended Ripeness Analysis Espoused By Nokia .......................... 8

III.  Alternatively, This Court Should Exercise Its "Unique and
      Substantial" Discretion Not to Hear Nokia's Declaratory Judgment
      Action Because Nokia Has Brought This Action for Improper
      Purposes ........................................................................................................... 10

IV.   Nokia's Claim Under Section 43(a) of the Lanham Act Should Be
      Dismissed Because It Fails to State a Claim Upon Which Relief
      May Be Granted ............................................................................................... 12

      A.    InterDigital's Alleged Representations Could Not Have
            Been False or Misleading .................................................................... 12

            1.    Nokia Is a Licensee of the Patents at Issue ...................... 12

            2.    The Patents at Issue Are Presumptively Valid ................. 12

3.  Nokia Does Not Claim That All of the Essential 3G Patents Are Noninfringed or Invalid ................................. 13

B.  InterDigital's Alleged Representations Could Not Have Influenced Purchasing Decisions and There Could Not Have Been "Actual Deception or a Tendency to Deceive a Substantial Portion of the Intended Audience" ........................... 13

C.  InterDigital's Alleged Representations Could Not Have Been "Commercial Advertising" ...................................... 14

D.  The Advertised Goods Have Not "Traveled in Interstate Commerce" ....................................................... 16

E.  Nokia Could Not Have Suffered Any Injury From InterDigital's Alleged Representations ...................................... 16

F.  InterDigital Could Not Have Made the Alleged Representations in Bad Faith ....................................... 18

CONCLUSION ................................................................. 20

# TABLE OF CITATIONS

**PAGE(S)**

## CASES

*Amana Refrigeration, Inc. v. Quadlux, Inc.*,
172 F.3d 852 (Fed. Cir. 1999)..................................................................................2, 3

*C.R. Bard, Inc. v. Schwartz*,
716 F.2d 874 (Fed. Cir. 1983)..................................................................................1

*Civco Med. Instr. Co. v. Protek Med. Prods.*,
2005 U.S. Dist. LEXIS 1640 (D. Iowa Feb. 4, 2005).............................................3

*Cordis Corp. v. Medtronic, Inc.*,
835 F.2d 859 (Fed. Cir. 1987)..................................................................................1

*Cordis Corp. v. Medtronic, Inc.*,
1986 U.S. Dist. LEXIS 17091 (D. Minn. Dec. 1, 1986), *aff'd*, 835 F.2d
859 (Fed. Cir. 1987)..................................................................................................2

*DuPont Dow Elastomers, L.L.C. v. Greene Tweed of Del., Inc.*,
148 F. Supp. 2d 412 (D. Del. 2001).........................................................................7

*EMC Corp. v. Norand Corp.*,
89 F.3d 807 (Fed. Cir. 1996)....................................................................................9

*Enzo Life Sci., Inc. v. Digene Corp.*,
295 F. Supp. 2d 424 (D. Del. 2003)....................................................................14, 15

*Fina Oil & Chem. Co. v. Ewen*,
123 F.3d 1466 (Fed. Cir. 1997).................................................................................9

*GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*,
90 F.3d 479 (Fed. Cir. 1996).....................................................................................9

*Gen-Probe Inc. v. Vysis, Inc.*,
359 F.3d 1376 (Fed. Cir. 2004)...........................................................................1, 2, 6

*InterDigital Tech. Corp. v. OKI Am., Inc.*,
845 F. Supp. 276 (E.D. Pa. 1994)...........................................................................19

*Lang v. Pac. Marine & Supply Co.*,
895 F.2d 761 (Fed. Cir. 1990)..............................................................................3, 4

*Metabolite Labs., Inc. v. Competitive Tech., Inc.*,
370 F.3d 1354 (Fed. Cir. 2004).............................................................................1, 2

*Motorola, Inc. v. InterDigital Tech. Corp.*,
   121 F.3d 1461 (Fed. Cir. 1997)..................................................................................19

*Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*,
   902 F.2d 222 (3d Cir. 1990)......................................................................................14

*Serbin v. Ziebart Int'l Corp.*,
   11 F.3d 1163 (3d Cir. 1993)......................................................................................15

*Shell Oil Co. v. Amoco Corp.*,
   970 F.2d 885 (Fed. Cir. 1992)..................................................................................7, 8

*Spectronics Corp. v. H.B. Fuller Co.*,
   940 F.2d 631 (Fed. Cir. 1991)..................................................................................10

*Super Sack Mfg. Corp. v. Chase Pkg. Corp.*,
   57 F.3d 1054 (Fed. Cir. 1995)....................................................................................3

*Teva Pharms., Inc. v. Pfizer Inc.*,
   395 F.3d 1324 (Fed. Cir. 2005)................................................................................7, 9

*Wright Med. Tech., Inc. v. Osteonics Corp.*,
   914 F. Supp. 1524 (W.D. Tenn. 1995)........................................................................5

## ARGUMENT[1]

I.    **Nokia's Declaratory Judgment Action Should Be Dismissed for Lack of Subject Matter Jurisdiction Because No Actual Controversy Exists**

    A.    **Nokia Lacks a Reasonable Apprehension of Imminent Suit Because It Currently Is a Licensee of the Patents at Issue**

Controlling authority requires dismissal of Nokia's declaratory judgment action for lack of subject matter jurisdiction. In *Gen-Probe Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1381 (Fed. Cir. 2004), the Federal Circuit held that no actual controversy existed to support a declaratory judgment where the plaintiff: (1) was a licensee of the patents at issue when suit was filed; and (2) had not materially breached the license. In this case, Nokia admits that it is a licensee in good standing and intends to comply with the PLA until it expires at the end of 2006. Nokia's attempts to distinguish *Gen-Probe* fail.[2]

First, Nokia's focus on the discussion of the totality of the circumstances standard in *Gen-Probe* ignores that the Federal Circuit held that no actual controversy existed under that standard because: (1) the license was a promise not to sue the licensee; and (2) the licensee had not materially breached the patent license agreement. *Id.* at 1381.

Second, the two cases that Nokia relies upon in its efforts to distinguish *Gen-Probe – C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874 (Fed. Cir. 1983), and *Cordis Corp. v. Medtronic, Inc.*, 835 F.2d 859 (Fed. Cir. 1987) – are inapposite. In *Gen-Probe*, the Federal Circuit explained that *C.R. Bard* was distinguishable because, unlike Nokia, the

---

[1]    Nokia makes numerous assertions of fact which lack citations to supporting evidence and, thus, should not be considered in deciding InterDigital's motion to dismiss.

[2]    Nokia does not even attempt to distinguish *Metabolite Labs., Inc. v. Competitive Tech., Inc.*, 370 F.3d 1354, 1369 (Fed. Cir. 2004), where the Federal Circuit applied *Gen-Probe* and held that no case or controversy existed because, like Nokia, the plaintiff was a licensee of the patents at issue and had fulfilled its obligations under the license.

licensee materially breached the patent license agreement, which authorized the licensor to sue the licensee and precluded the licensee from avoiding the suit – a fact absent here. 359 F.3d at 1380. *Cordis* is distinguishable because it was disputed whether the allegedly infringing product was licensed. *Cordis Corp. v. Medtronic, Inc.* 1986 U.S. Dist. LEXIS 17091, at *32-*37 (D. Minn. 1986), *aff'd*, 835 F.2d 859 (Fed. Cir. 1987) (Exhibit 2).[3]

Third, Nokia erroneously contends that *Gen-Probe* applies only when a license "completely subsumes the patentee's threats of litigation." Resp. Br., p. 19 (D.I. 14).[4] According to Nokia, there are a number of claims upon which InterDigital could sue Nokia prior to the PLA's expiration. Nokia, however, does not cite any authority in which a court has held that a licensor may bring such claims against a licensee prior to the license's expiration. Resp. Br., pp. 14-16. Even assuming those claims are viable, Nokia still cannot prove it has a reasonable apprehension of imminent suit in light of: (1) the undisputed fact that InterDigital has not filed any such claims against Nokia since the PLA was executed in 1999; (2) Nokia's failure to present any evidence that InterDigital has imminent plans to file any such claims; and (3) InterDigital's continued interest in seeking a business solution, including an extension of the PLA beyond 2006. Opening Br., Exh. 1, ¶ 19 (D.I. 11); Supp. Decl. of William J. Merritt, ¶¶ 6-7 (Exhibit 1).

Moreover, the very case Nokia cites in support of its claim that it has a reasonable apprehension of imminent suit based on products sold after the PLA expires – *Amana*

---

[3]    The district court concluded that the plaintiff's argument that the license did not cover the allegedly infringing product had a probability of success on the merits. *Id.* The Federal Circuit affirmed the lower court's decision but did not address that issue.

[4]    InterDigital is unable to find support for Nokia's assertion that the license in *Gen-Probe* lasted for the life of the patent at issue. Resp. Br., p. 20. There also is no indication the license in *Metabolite Labs.* lasted for the life of the patent at issue.

*Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852 (Fed. Cir. 1999) – rejected that argument. The plaintiff in that case sought a declaratory judgment that the patents were invalid and noninfringed. *Id.* at 855. After suit was filed, the patent holder executed a covenant not to sue the plaintiff for infringement as to any existing or past products; thus, the district court dismissed the plaintiff's declaratory judgment action as moot. *Id.*

On appeal, the plaintiff argued that an actual controversy existed because the patent holder's covenant not to sue "did not remove [the plaintiff's] reasonable apprehension of being sued with regard to its new products 'in the pipeline' . . ." *Id.* The Federal Circuit flatly rejected the plaintiff's concern as unduly speculative. *Id.* at 855-56 ("[A]n actual controversy cannot be based on a fear of litigation over future products").[5]

Consequently, controlling Federal Circuit precedent prevents Nokia from establishing an actual controversy based on its subjective apprehension that InterDigital might sue it at some future date for infringement based on future products that are merely "in the pipeline" (current products, of course, are protected by the PLA).[6] This holds particularly true in this case because any potentially infringing activity from Nokia's sale of products after the PLA expires at the end of 2006 will not occur until ***two years*** after Nokia filed this suit in January 2005 – a delay twice as long as the delays found to

---

[5]    *See also Super Sack Mfg. Corp v Chase Pkg. Corp.*, 57 F.3d 1054, 1060 (Fed. Cir. 1995) ("The residual possibility of a future infringement suit based on [the alleged infringer's] future acts is simply too speculative a basis for jurisdiction over . . . declaratory judgments of invalidity"); *Lang v. Pac Marine & Supply Co.*, 895 F.2d 761, 764-65 (Fed. Cir. 1990) (*see* discussion in Opening Br., pp. 22-23); *Civco Med. Instr. Co. v. Protek Med. Prods.*, 2005 U.S. Dist. LEXIS 1640, at *21 (D. Iowa Feb. 4, 2005) ("Although a product developed in the future may not be covered by [the covenant not to sue], fear of liability on a future product is not justiciable under the Act") (Exhibit 3).

[6]    The cases Nokia cites to establish that an actual controversy may exist before actual infringement of a patent occurs (Resp. Br., pp. 15-16) are inapposite. Unlike Nokia, the infringing parties in those cases were not licensees of the patents at issue.

preclude the existence of an actual controversy in *Lang* and *Sierra Applied Sci., Inc. v.
Advanced Energy Indus.*, 363 F.3d 1361 (Fed. Cir. 2004). Opening Br., pp. 22-23.

### B.    Nokia Failed to Prove a Reasonable Apprehension of Imminent Suit

Even assuming Nokia can overcome the bar against licensees bringing declaratory
judgment actions, Nokia still cannot establish a reasonable apprehension of imminent suit
based on 3G products that it allegedly will be manufacturing and selling after the PLA
expires. Conspicuously absent from the "evidence" submitted by Nokia is any alleged
statement or act by InterDigital specifically threatening to sue Nokia because its 3G
products infringe the patents at issue. Instead, Nokia relies on immaterial evidence of
decade-old alleged threats against its 2G products for the infringement of patents *not* at
issue in this action as well as alleged threats made prior to and mooted by the PLA.

### 1.    The "Litigation History" Between Nokia and InterDigital Does Not Establish a Reasonable Apprehension of Imminent Suit

Nokia claims that the litigation history between the parties to a suit may
contribute to a plaintiff's reasonable apprehension of suit but fails to present any
evidence that any such history exists here. Resp. Br., pp. 17-18. First, InterDigital has
never sued Nokia. InterDigital did not sue Nokia during the nine-year period prior to the
PLA in which it allegedly threatened Nokia and Nokia's products were unlicensed.
InterDigital also has not sued Nokia during the six years the PLA has been in effect.[7]

---

[7]    Nokia incorrectly states that it "was reasonably apprehensive that InterDigital
would sue" because it "refused to 'pay up'" in the face of InterDigital's "litigation
history" against the mobile telephone industry. Resp. Br., p. 17. Nokia, of course,
voluntarily took a license from InterDigital in 1999 under which it paid an up-front
royalty of $31.5 million. Opening Br., Exh. 1, ¶ 13. The PLA eliminated any reasonable
apprehension of imminent suit that InterDigital would sue Nokia.

Second, InterDigital has made clear its willingness to consider a business solution to any dispute with Nokia in the past, present, and future by executing the PLA in 1999 and by continuing to express interest in extending the PLA past 2006. Opening Br., Exh. 1, ¶ 19. InterDigital also has committed to license its essential 3G patents for the WCDMA and cdma2000 standards on fair, reasonable, and nondiscriminatory terms. *Id.* Nokia should not be allowed to unilaterally declare that negotiations to extend the PLA are dead in order to fabricate an actual controversy where none otherwise exists.

Third, Nokia fails to respond to the undisputed fact that every legal and patent proceeding pending between Nokia and InterDigital *was initiated by Nokia.* It is common sense (and the law) that a declaratory judgment plaintiff cannot manufacture a reasonable apprehension of suit by initiating litigation against the defendant. *See Wright Med. Tech., Inc. v. Osteonics Corp.*, 914 F. Supp. 1524, 1531-32 (W.D. Tenn. 1995).

### 2.    InterDigital's Litigation History With Other Companies Does Not Establish a Reasonable Apprehension of Imminent Suit

Because it initiated the only litigation between the parties, Nokia unpersuasively contends that it had a reasonable apprehension of imminent suit based on InterDigital "attack[ing] the mobile telephony industry for years" and "forcing manufacturers into expensive litigation." Resp. Br., p. 16.[8] Nokia again refers to the remarkably few patent actions in which InterDigital has been involved. Opening Br., pp. 18-19. None of the those actions has involved any of the patents for which Nokia currently seeks a

---

[8]    Nokia further states that "[m]any of those threats were directed at Nokia, and InterDigital ultimately convinced Nokia to avoid the expense of litigation by taking a less expensive – but temporary – patent license." Resp. Br., p. 16. This statement confirms that "[m]any" of the alleged threats upon which Nokia's alleged apprehension of suit is based were made *prior to Nokia's execution of the PLA in 1999* – a nine-year period during which InterDigital did not sue Nokia even though Nokia's potentially infringing products were not under license and a time period predating this suit by at least six years.

declaratory judgment of noninfringement and invalidity, and all involved 2G patents with the exception of the Lucent suit (which involves 3G patents). Exhibit 1, ¶ 8.[9]  Moreover, all but one of the actions were filed *more than a decade ago*, undermining Nokia's claim that it had a reasonable apprehension of *imminent* suit. Resp. Br., Exh. A, pp. 28-30 (D.I. 15). Suits against different companies involving different patents – especially when they are few and far between – do not establish that Nokia has a reasonable apprehension of imminent suit on the patents at issue. Opening Br., pp. 18-19.[10]

Nokia's reliance on InterDigital's decade-old litigation history as well as other alleged threats predating the PLA's execution in 1999 also is misplaced under *Gen-Probe*. In *Gen-Probe*, the Federal Circuit stated that the execution of the license in that case "obliterated any reasonable apprehension of a lawsuit" based on threats the defendant allegedly made before the license was executed. 359 F.3d at 1381. Thus, "once [the parties] formed the license, . . . the events that led to the formation became irrelevant" and the plaintiff was required to present evidence of threats made *after* the execution of the license in order to establish a reasonable apprehension of suit. *Id.*

---

[9]     Nokia concedes that the Lucent suit involves cdma2000 infrastructure products – products it does not sell. Decl. of Ilkka Rahnasto, ¶¶ 31-32. InterDigital also disputes Nokia's claim that it has "used the Lucent litigation in its 3G licensing negotiations with Nokia as a threat just as it used its pending 2G litigation in the late 1990's in attempting to obtain a 2G license with Nokia." *Id.* at ¶ 33. InterDigital has not. Exhibit 1, ¶ 7.

[10]    Nokia asserts that InterDigital's "inability to win" suits against other companies evidences an intent, willingness, and capacity to use litigation to pursue its patent rights. Resp. Br., p. 17. OKI, Qualcomm, and Ericsson's decisions to settle with InterDigital by executing licenses (requiring payment of royalties and/or an up-front payment) hardly constitute an "inability to win." Resp. Br., Exh. A, pp. 16, 28-29 & Exh. K, p. 1.

### 3.    Nokia Has Not Presented Any Other Objective Evidence That It Has a Reasonable Apprehension of Imminent Suit

In addition to failing to present any relevant litigation history, Nokia fails to offer any other objective evidence establishing that it has a reasonable apprehension of imminent suit. First, Nokia conclusorily asserts that "[f]or at least ten years, through correspondence, licensing presentations, meetings, and public statements, InterDigital has been claiming that Nokia's products infringed its patents." Resp. Br., p. 17. Even assuming such statements were made, they would not necessarily establish that Nokia had a reasonable apprehension of imminent suit. *See, e.g., DuPont Dow Elastomers, L.L.C. v. Greene Tweed of Del., Inc.*, 148 F. Supp. 2d 412, 415 (D. Del. 2001) ("As a general principle, then, the Federal Circuit has concluded that the objective test for determining declaratory justiciability is not met 'when a patentee does nothing more than exercise its lawful commercial prerogatives. . .'"); Opening Br., p. 29 n.16. Furthermore, Nokia's claim that InterDigital has been making such statements *for ten years* without suing Nokia refutes any notion that Nokia has a reasonable apprehension of *imminent* suit. *See, e.g., Teva Pharms., Inc. v. Pfizer Inc.*, 395 F.3d 1324, 1333 (Fed. Cir. 2005).

Second, Nokia's claim that "in licensing negotiations, InterDigital has repeatedly referenced its suits against other mobile telephone equipment manufacturers," also fails to establish a reasonable apprehension of suit since, if true, it reflects nothing more than the posturing that typically occurs in such negotiations. *See, e.g., Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888-89 (Fed. Cir. 1992) (defendant's statements that plaintiff's activities "fall within," are "covered by," and are "operations under" the patent and that defendant intended to enforce its patent did not establish reasonable apprehension of suit because such statements were "merely 'jawboning' which typically occurs in licensing

7

negotiations"). *Shell Oil* further refutes the value of Mr. Rahnasto's testimony regarding InterDigital's alleged infringement accusations during the parties' discussions on whether to extend the 3G license between the parties. Decl. of Ilkka Rahnasto, ¶ 27 (D.I. 16).

Third, even if "InterDigital has boasted to Nokia that it was a company run by lawyers that would use litigation to gain business advantages," such a vague, non-specific statement does not establish that Nokia has a reasonable apprehension InterDigital will sue it for infringing products sold after the PLA expires. The probative value of any such "boast" is further undermined by the fact that InterDigital has never sued Nokia.

The absurdity of Nokia's claim that it fears suit by InterDigital (when it should be the other way around) is capped by Nokia's complaint that "after Nokia initiated arbitration proceedings to obtain information, InterDigital escalated those proceedings – dragging Nokia through a year and a half of legal proceedings." Resp. Br., p. 18. First, Nokia filed the arbitration not "to obtain information" but to vitiate its contractual obligation to pay the Period 2 royalty. Opening Br., Exh. 1, ¶¶ 13-15; Resp. Br., Exh. G, p. 53. Second, putting aside Nokia's nerve in complaining about InterDigital allegedly escalating litigation that *Nokia* initiated, InterDigital's counterclaim in the arbitration merely sought to require Nokia to pay the sums it contractually agreed to pay and to determine the amount of royalty and payment terms. Resp. Br., Exh. G, p. 54. In fact, it was Nokia who attempted to "escalate" the arbitration by seeking to litigate the validity and infringement of certain InterDigital patents only to withdraw those claims later. *Id.*

## II.    Federal Circuit Precedent Does Not Authorize This Court to Apply the Open-Ended Ripeness Analysis Espoused By Nokia

Unable to satisfy its burden of proving that it has a reasonable apprehension of imminent suit, Nokia improperly attempts to sidestep that requirement by asking this

Court to substitute an open-ended ripeness analysis for the traditional two-prong analysis that the Federal Circuit has consistently applied in determining whether an actual controversy exists in patent declaratory judgment actions. Resp. Br., pp. 21-23. None of the cases Nokia cites in its response brief grants this Court such unfettered discretion:

- ***Teva Pharms. USA, Inc.***: The Federal Circuit applied the traditional two-prong analysis and expressly stated that the declaratory judgment plaintiff "must be able to demonstrate that it has a reasonable apprehension of imminent suit." *Teva Pharms. USA, Inc.*, 395 F.3d at 1333.

- ***Fina Oil & Chem. Co.***: The Federal Circuit made clear that "[i]n the classic patent declaratory judgment suit, *i.e.*, where the declaratory plaintiff is laboring under the threat of litigation for alleged infringement of a patent, the 'actual controversy' requirement means that there is jurisdiction over the action if . . . the patentee has created in the declaratory plaintiff a reasonable apprehension that the patentee will bring suit if the activity in question continues." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1470 (Fed. Cir. 1997). While this case involved a request for a declaration that the inventors were properly named on the patent at issue, the Federal Circuit still required proof of a reasonable apprehension of suit to establish an actual controversy. *Id.* at 1471.

- ***GAF Bldg. Materials Corp.***: The Federal Circuit again applied the traditional two-prong analysis. *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 481-82 (Fed. Cir. 1996). Nokia quotes the Federal Circuit as stating that "[a] broader inquiry than [the] two-part 'test' [may sometimes be] required" (Resp. Br., p. 22), but the actual passage from which Nokia splices that quotation makes clear that such a "broader inquiry" is not proper in this case. *Id.* at 482 ("However, the cases which have discussed only these two requirements have involved a granted patent, such that further issues which arise in the absence of a patent were not discussed. A broader inquiry than our two-part 'test' is required here because no patent had issued when the complaint was filed").

- ***EMC Corp.***: The Federal Circuit expressly applied the traditional two-prong analysis. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811-12 (Fed. Cir. 1996). While it noted such analysis incorporates considerations of ripeness, the Federal Circuit did not hold that a district court had discretion to substitute an open-ended ripeness inquiry for the specific requirements of the traditional two-prong analysis. *Id.* at 811.

Even if this Court could assume jurisdiction over Nokia's declaratory judgment action based solely on considerations of ripeness, Nokia has failed to establish that there

is a ripe controversy between the parties. First, there is no adversity between the parties regarding the patents at issue because Nokia currently is – and admits it will remain – a licensee in good standing until the PLA expires, and InterDigital has expressed a continuing interest in reaching a business solution. To the extent any adversity exists, it is attributable solely to Nokia's ongoing, unilateral efforts to manufacture a controversy – conduct that strongly justifies this Court's rejection of jurisdiction over this suit.

There also is not sufficient factual development for this Court to exercise jurisdiction. As to the validity of InterDigital's patents, Nokia claims that this Court need only look at the prior art at the time of the alleged invention. Resp. Br., p. 22. If this Court has discretion to assume jurisdiction based solely on considerations of ripeness, and if the factual development for a court to determine a patent's validity is always sufficient at the time suit is filed, that would eviscerate the large body of Federal Circuit precedent applying the traditional two-prong analysis and barring licensees from seeking the declaratory relief that Nokia seeks. It would be difficult to imagine a case in which a plaintiff could not establish a "ripe" controversy as to a patent's validity.

Finally, Nokia will not "unquestionably suffer hardship in the absence of immediate adjudication" because the PLA does not expire until the end of 2006.

**III.    Alternatively, This Court Should Exercise Its "Unique and Substantial" Discretion Not To Hear Nokia's Declaratory Judgment Action Because Nokia Has Brought This Action for Improper Purposes**

As shown in the preceding section, this Court lacks discretion to ignore the traditional two-prong analysis for determining whether an actual controversy exists. Instead, this Court's "unique and substantial" discretion applies only to its ability to *refuse* to exercise jurisdiction after an actual controversy is shown to exist. *See, e.g., Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991) ("When there is

no actual controversy, the court has no discretion to decide the case. When there is an actual controversy and thus jurisdiction, the exercise of that jurisdiction is discretionary"). As previously shown, this Court should decline jurisdiction over Nokia's declaratory judgment action even if Nokia has satisfied the traditional two-prong analysis because Nokia has filed this suit for improper purposes. Opening Br., pp. 23-25.

Nokia, however, contends that this Court should exercise jurisdiction over Nokia's declaratory judgment action because the commercial interests of other wireless communications companies, the interests of consumers, and the denial of Nokia's opportunity to challenge InterDigital's patent infringement claims in court support the exercise of jurisdiction. Nokia's arguments should be rejected. As to the first rationale, the record makes clear that Nokia filed this lawsuit purely out of self-interest. Nokia has no love for competitors like Ericsson and is not filing this suit for their benefit, even if it had standing to do so. As to the second rationale, InterDigital merely seeks to enforce the constitutional and statutory requirement that Nokia prove that an actual controversy exists before InterDigital is dragged into protracted and expensive litigation. Nokia also had ample opportunity to challenge InterDigital's alleged patent infringement claims in court in 1999, but Nokia deliberately chose to take a license instead.[11]

---

[11]    In its attempt to refute InterDigital's arguments in favor of declining jurisdiction, Nokia makes a number of accusations that warrant brief mention. Resp. Br., pp. 24-25. First, Nokia incorrectly attempts to blame the alleged impossibility of a "business solution" in this case on InterDigital's attempt to "leverage" the *Ericsson* settlement to obtain substantial royalty payments from Nokia. *Id.* But Nokia omits that it expressly agreed to make its Period 2 royalty obligations turn on the terms of any licenses InterDigital entered into with "Major Competitors" like Ericsson. Opening Br., Exh. 1, ¶¶ 13-14. Thus, any souring of the parties' relationship is due to Nokia's subsequent refusal to comply with those obligations. Second, Nokia notes that a business solution is impossible because the parties "are presently on the opposite sides of four pending legal proceedings." Resp. Br., p. 25. But *Nokia* initiated all four proceedings. If a business

**IV.    Nokia's Claim Under Section 43(a) of the Lanham Act Should Be Dismissed Because It Fails to State a Claim Upon Which Relief May Be Granted**

    **A.    InterDigital's Alleged Misrepresentations Could Not Have Been False or Misleading**

        **1.    Nokia Is a Licensee of the Patents at Issue**

Nokia baselessly contends that it "entered the 1999 License in part *because* of InterDigital's claims regarding the breadth of its patent portfolio." Resp. Br., p. 27 (emphasis in original). Nokia, however, is a large and sophisticated company with capable patent counsel, and it had more than ample opportunity to determine for itself whether there was support for InterDigital's alleged representations before Nokia voluntarily executed the PLA in 1999. Thus, InterDigital's alleged representations are consistent with the execution of the PLA and could not have been false or misleading.

        **2.    The Patents at Issue Are Presumptively Valid**

Significantly, Nokia concedes that its Lanham Act claim *is not* based on any alleged representations by InterDigital regarding the validity of the patents in InterDigital's patent portfolio. Resp. Br., pp. 27-28. Instead, Nokia asserts that its Lanham Act claim focuses exclusively on "the necessity of licensing InterDigital's patents" and InterDigital's alleged representations that its patents "cover the mobile telephony standards such that one must first pay a license fee before practicing those standards" and that "any standards-compliant *product* infringes InterDigital's portfolio."

---

solution now may be more difficult to reach, it is because Nokia keeps dragging InterDigital into court. Finally, Nokia incorrectly cites a sound bite by InterDigital's former CEO, Howard Goldberg, which InterDigital has already refuted. Opening Br., pp. 19-21. Nokia also erroneously states that Mr. Goldberg was "asked by an investment analyst whether InterDigital would initiate *a lawsuit* against Nokia to gain an advantage in the arbitration." Resp. Br., p. 25 (emphasis added). The transcript makes no mention of "a lawsuit" and Nokia concedes Mr. Goldberg "refused to answer" the question. *Id.*

*Id.* (emphasis in original). Consequently, this Court, at the very least, should grant InterDigital's motion to dismiss Nokia's Lanham Act claim to the extent that claim is based on InterDigital's alleged representations regarding the validity of its patents.

### 3.    Nokia Does Not Claim That All of the Essential 3G Patents Are Noninfringed or Invalid

InterDigital could not have misrepresented that its patents cover Nokia's products because Nokia's complaint in this case is limited to allegations that Nokia's products do not infringe only certain claims of *eighteen* of the literally thousands of patents in InterDigital's patent portfolio. Therefore, Nokia has failed to allege that *no claim* of InterDigital's patents could have covered Nokia's products – let alone the eighteen patents at issue. Nokia merely responds that its Lanham Act claim "focuses on InterDigital's entire portfolio, not the 18 patents challenged in the declaratory judgment claims." Resp. Br., pp. 27-28. This is a *non sequitur*. By alleging that its products do not infringe only a fraction of InterDigital's patent portfolio and declining to challenge the applicability of the remaining patents in that portfolio, Nokia has failed to allege that none of the remaining patents in that portfolio could have covered Nokia's products.

### B.    InterDigital's Alleged Representations Could Not Have Influenced Purchasing Decisions and There Could Not Have Been "Actual Deception or a Tendency to Deceive a Substantial Portion of the Intended Audience"

Nokia asserts that the fact that so many "insurance customers" have signed licenses with InterDigital "is itself evidence of the materiality" of InterDigital's alleged representations that its patents cover any mobile telephony standards-compliant product. *Id.* at 29. That argument fails because those large and sophisticated companies voluntarily chose to take a license and pay tens of millions of dollars in royalties based on their conclusion that there was at least some support for the proposition that InterDigital's

patents were valid and covered their products.   Even if InterDigital's alleged
representations could have induced parties to execute licenses or increased the costs of
producing products covered by InterDigital's patents, Nokia does not explain how such
outcomes influenced "purchasing decisions" – the actual requirement of proof for a
Lanham Act claim – particularly when any alleged increase in production costs cannot
affect purchasing decisions because Nokia and its competitors are equally impacted.

Furthermore, Nokia's contention that the PLA was "for a period substantially
shorter than the term of the licensed patents or the operational life of the relevant
technology" is immaterial – the critical fact is that Nokia took a license for all of the
patents in InterDigital's patent portfolio.   *Id.*   That same fact precludes any alleged
misrepresentations from deceiving Nokia's customers "in the coming months and years"
or even after the PLA expires because Nokia cannot escape the fact that, by executing the
PLA, it has admitted that its products are covered by InterDigital's patents. *Id.*

### C.   InterDigital's Alleged Representations Could Not Have Been "Commercial Advertising"

Nokia complains that InterDigital has improperly interpreted the commercial
advertising requirement to require commercial speech *by a competitor* (which Nokia does
not dispute InterDigital is not). *Id.* at 30.  InterDigital's authority for such requirement,
however, is this Court's own decision in *Enzo Life Sciences, Inc. v. Digene Corp.*, 295 F.
Supp. 2d 424, 427-28 (D. Del. 2003), which, like this case, involved alleged
representations of patent infringement.[12]   Nokia contends that *Enzo Life Sciences* is

---

[12]     *Cf. Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230 (3d Cir.
1990) ("[T]he [Lanham Act] provides a private remedy to a commercial plaintiff who
meets the burden of proving that its commercial interests have been harmed by a
*competitor's* false advertising") (emphasis added).

distinguishable because it "did not hold that the Lanham Act was limited to competitor disputes" and simply "happened to involve a Lanham Act dispute between competitors." Resp. Br., p. 30. Nokia is incorrect. In *Enzo Life Sciences*, this Court expressly stated that "in regard to the fourth element, . . . Representations constitute commercial advertising if they consist of: 1) commercial speech; 2) by *a defendant who is in commercial competition with plaintiff* . . ." 295 F. Supp. 2d at 428 (emphasis added). This Court then specifically concluded that the parties were competitors. *Id*.[13]

Even if Nokia were required only to prove InterDigital's alleged representations harmed its commercial interests, Nokia still cannot state a claim for relief. First, Nokia fails to explain how such representations "directly raised the cost of Nokia developing and marketing standards-compliant technology." Resp. Br., p. 30. If Nokia now chooses to characterize the need to pay InterDigital royalties for producing standards-compliant products under the PLA as additional costs, then InterDigital had nothing to do with Nokia incurring those costs because Nokia voluntarily executed the PLA after having the opportunity to determine whether InterDigital's alleged representations had any merit.

Second, as shown above, Nokia baselessly claims that InterDigital's alleged representations "deterred Nokia's customers from purchasing Nokia's standards-compliant products" because Nokia's products are being sold under a valid license.

Third, Nokia's claim also fails because InterDigital's alleged representations would not have caused Nokia's customers to purchase products from one of Nokia's

---

[13]    Nokia claims that the existence of the competitor requirement conflicts with the Third Circuit's decision in *Serbin v. Ziebart Int'l Corp.*, 11 F.3d 1163 (3d Cir. 1993), but the passage Nokia quotes from *Serbin* merely states that Section 43(a) is not limited to false advertising plaintiffs in "*direct* competition." *Id.* at 1177 (emphasis added). Nokia does not allege that it is in direct or indirect competition with InterDigital.

competitors because any such representations would have impacted Nokia and its competitors equally. If anything, they would have caused Nokia's customers to purchase Nokia's licensed products over Nokia's competitors' unlicensed products.

Indeed, InterDigital's alleged representations could not have harmed Nokia's goodwill and reputation as Nokia claims because any such representations would have been consistent with Nokia's public and voluntary decision in 1999 to execute a license with InterDigital covering all of the patents in InterDigital's patent portfolio.[14]

### D.   The Advertised Goods Have Not "Traveled in Interstate Commerce"

Nokia concedes that, with respect to its 3G products that have not yet entered into commerce, it cannot satisfy this Court's requirement that the allegedly disparaged goods travel in interstate commerce. Resp. Br., p. 31. Thus, at the very least, this Court should dismiss Nokia's Lanham Act claim to the extent it is based on alleged representations regarding Nokia's products that have not yet entered into commerce.

### E.   Nokia Could Not Have Suffered Any Injury From InterDigital's Alleged Representations

Nokia alleges that it has sustained the following injuries from InterDigital's alleged representations (*id.*), none of which withstands scrutiny:

- **InterDigital has "chilled consumer demand" after the PLA expires because consumers are reluctant to buy allegedly infringing products.**

     Nokia cannot allege in good faith that InterDigital has chilled consumer demand for products that will not be sold for another two years. Nokia also does not allege that any of its competitors will be under license with InterDigital after the PLA's expiration so as to cause Nokia's customers to purchase its competitors' products instead. Moreover, Nokia has

---

[14]   Nokia's claim that its sales and goodwill have been damaged is hard to reconcile with its simultaneous boast that it is "the world's largest supplier of mobile phones and one of the leading suppliers of mobile telephone infrastructure." Resp. Br., p. 23.

already conceded that it cannot state a valid claim based on future products because they have not yet "traveled in interstate commerce."

- **Nokia's reputation has been "tarnished."**

    As shown above, Nokia's reputation cannot have been "tarnished" due to its execution of the PLA in 1999. Nokia cryptically counters that "[s]uccess, however, does not insulate a false advertiser from suit." Resp. Br., p. 32. If by "success," Nokia means InterDigital's representations successfully induced Nokia to execute the PLA, that argument fails because, as shown above, Nokia – a sophisticated company armed to the teeth with capable patent counsel – had every opportunity to review InterDigital's patents before agreeing to execute the PLA in 1999.

- **"[F]or many manufacturers like Nokia," InterDigital's alleged representations have "raised development costs, elicited considerable attorneys' fees, and chilled consumer demand."**

    First, any alleged injury to companies other than Nokia is legally immaterial, and Nokia lacks standing to sue based on alleged injury to others. Second, Nokia does not explain how InterDigital's alleged threats have raised development costs. Third, Nokia cannot establish that InterDigital's alleged representations chilled consumer demand for its past and current products, because any such representations apply to both Nokia's and its competitors' products equally and because such representations are consistent with Nokia's execution of the PLA.

    In response to InterDigital's argument that its alleged representations would not have harmed Nokia because Nokia alleges such representations were made to all manufacturers of standards-compliant products, Nokia asserts that "[e]qual harm to all is nonetheless *harm to each*." *Id.* at 32 (emphasis in original). InterDigital's argument, however, is that Nokia cannot show that any manufacturer, including Nokia, lost customers due to InterDigital's alleged representations because none of their customers would have purchased another manufacturer's products if InterDigital allegedly represented that *all* manufacturers' products infringed.

- **"The costs to Nokia" during the period after the PLA expires.**

    Regardless of what those unspecified costs might be, Nokia, as noted above, has already conceded that it cannot state a valid Lanham Act claim based on future products, including products sold after the PLA expires, because those products have not yet "traveled in interstate commerce."

###### F.    InterDigital Could Not Have Made the Alleged Representations in Bad Faith

Nokia's response gives short shrift to InterDigital's two arguments establishing that InterDigital could not have made the alleged representations in bad faith.  First, Nokia's complaint is limited to allegations that Nokia's products do not infringe certain claims of *eighteen* of the literally thousands of patents in InterDigital's patent portfolio.  Therefore, Nokia has failed to allege that *none of InterDigital's* patents could have covered Nokia's products, and InterDigital could not have represented in bad faith that its patents cover Nokia's products.  Nokia merely responds that its Lanham Act claim "addresses InterDigital's entire patent portfolio, not the 18 identified patents."  Resp. Br., p. 33.  As shown above, this is a *non sequitur. See* discussion *supra*, p. 13.

Second, Nokia meritlessly claims that the fact that it – a sophisticated company with capable patent counsel – voluntarily took a license covering all of the patents in InterDigital's patent portfolio does not preclude it from arguing that InterDigital lacked a good faith basis for representing that its patents cover Nokia's products because: (1) Nokia was "coerced" into executing the PLA; (2) Nokia merely agreed to enter into a "temporary" license; and (3) the PLA "expressly allows Nokia to challenge any InterDigital patent in the world."  Resp. Br., pp. 33-34.  All of those arguments fail.

The absurdity of Nokia's claim that it was "coerced" into executing the PLA has been shown above and is distinctly at odds with Nokia's concession that it will comply with the PLA until it expires.[15]  The fact that Nokia entered into only a "temporary"

---

[15]    Nokia's citation of the amount of attorney's fees InterDigital allegedly incurred in the Ericsson suit as support for Nokia's decision to execute the PLA in 1999 rather than to litigate rings hollow.  Nokia's current scorched-earth campaign against InterDigital belies any alleged concern Nokia may have regarding the costs of litigation.

*seven-year* license is legally immaterial because the critical fact is that Nokia entered into a license.  Moreover, the fact that the PLA may allow Nokia to challenge any InterDigital patent is legally immaterial because Nokia admits that it is not alleging that InterDigital misrepresented the validity of InterDigital's patents.  Resp. Br., pp. 27-28.

Finally, Nokia erroneously contends that InterDigital has not consistently supported in legal proceedings its claim that any standards-compliant product will infringe its patent portfolio and InterDigital's alleged failure to do so suggests that discovery will reveal evidence of bad faith regarding that claim.  Resp. Br., p. 33.  Nokia argues that in the OKI suit, InterDigital claimed that "any telephones which comply or are compatible with [a certain standard] will necessarily infringe certain of [InterDigital's] patents. . . . But the Motorola litigation completely refuted InterDigital's claims that the patents it asserted against OKI were necessarily infringed by standards-compliant products." *Id.* According to Nokia, InterDigital's continued representations that "some yet-to-be-identified patents are necessarily infringed by any standards-compliant products" were made in bad faith given the outcome in *Motorola. Id.*

Nokia's argument does not make sense.  First, the OKI suit involved eight of InterDigital's 2G patents, and the Motorola suit involved certain claims of six of InterDigital's 2G patents. *InterDigital Tech. Corp. v. OKI Am., Inc.*, 845 F. Supp. 276, 280 (E.D. Pa. 1994); *Motorola, Inc. v. InterDigital Tech. Corp.*, 121 F.3d 1461, 1464 (Fed. Cir. 1997).  In contrast, Nokia claims in this case that InterDigital represented that its 3G patents cover 3G products, including Nokia's 3G products.  Complaint, ¶ 11 (D.I. 1).  It is unclear how the outcome of litigation involving InterDigital's *2G* patents is any evidence that InterDigital's alleged representations regarding its *3G* patents were made in

19

bad faith. Second, it is unclear how Nokia, from a holding that ***Motorola's products*** did not infringe ***six*** patents, can argue that InterDigital has acted in bad faith by allegedly representing that ***Nokia's products*** infringe one or more of the thousands of patents that comprise InterDigital's patent portfolio – particularly when Nokia effectively conceded that its products are covered by InterDigital's patents when it executed the PLA in 1999.

## CONCLUSION

For the reasons stated herein and in InterDigital's opening brief, this Court should grant InterDigital's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3) and all other relief to which InterDigital may be entitled.

OF COUNSEL:

D. Dudley Oldham
Robert S. Harrell
Richard S. Zembek
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone:  (713) 651-5151
Telecopier:  (713) 651-5246
doldham@fulbright.com
rharrell@fulbright.com
rzembek@fulbright.com

Dan D. Davison
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone:  (214) 855-8000
Telecopier:  (214) 855-8200
ddavison@fulbright.com

Dated: May 12, 2005

POTTER ANDERSON & CORROON LLP

By: _____

  Richard L. Horwitz (#2246)
  David E. Moore (#3983)
  Hercules Plaza, 6th Floor
  1313 N. Market Street
  P. O. Box 951
  Wilmington, Delaware 19801
  Telephone: (302) 984-6000
  rhorwitz@potteranderson.com
  dmoore@potteranderson.com

*Attorneys for Defendants InterDigital*
*Communications Corporation and*
*InterDigital Technology Corporation*

681951 / 28840

20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 12, 2005, the attached document

was hand delivered to the following person(s) and was electronically filed with the Clerk

of the Court using CM/ECF which will send notification of such filing(s) to the following

and the document is available for viewing and downloading from CM/ECF:

Jack B. Blumenfeld
Julia Heaney
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347


I hereby certify that on May 12, 2005, I have Federal Expressed the documents to

the following non-registered participants:

Peter Kontio
Patrick J. Flinn
Gardner S. Culpepper
Keith E. Broyles
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA  30309-3424

By: _____
        Richard L. Horwitz
        David E. Moore
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        P.O. Box 951
        Wilmington, DE  19899-0951
        (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

673950