IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA, :
INC., :
 :
    Plaintiffs, :
 :
  v. : Civil Action No. 05-16-JJF
 :
INTERDIGITAL COMMUNICATIONS :
and INTERDIGITAL TECHNOLOGY :
CORPORATION, :
 :
    Defendants. :

Jack B. Blumenfeld, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware.
Attorney for Plaintiffs.

Richard L. Horowitz, Esquire and David Ellis Moore, Esquire of POTTER ANDERSON & CORROON, LLP, Wilmington, Delaware.
Of Counsel: D. Dudley Oldham, Esquire, Robert S. Harrell, Esquire, and Richard S. Zembek, Esquire of FULBRIGHT & JAWORSKI, LLP, Houston, Texas.
Of Counsel: Dan D. Davison, Esquire of FULBRIGHT & JAWORSKI, LLP, Dallas, Texas.
Attorneys for Defendants.

**MEMORANDUM OPINION**

December 21, 2005
Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is Defendants' Motion To Dismiss For Lack Of Jurisdiction Over The Subject Matter Pursuant To Federal Rules Of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3) (D.I. 10). For the reasons discussed, the Motion will be granted in part and denied in part.

**I.    Background**

On January 12, 2005, Plaintiffs filed a Complaint seeking a declaratory judgment that several of Defendants' third generation wireless technology patents ("3G patents") are either invalid or not infringed by Plaintiffs' products. The patents at issue are the subject of three licensing agreements, whereby Plaintiffs are licensed to practice all of Defendants' patents until the end of 2006. Plaintiffs brought the instant action, alleging reasonable apprehension that Defendants would bring suit at the end of the licensing agreements. Additionally, Plaintiffs alleged that Defendants violated Section 43 of the Lanham Act by using false or misleading information in bad faith, thereby inhibiting Plaintiffs' ability to develop technology and damaging Plaintiffs' reputation in the market. Defendants filed the instant Motion, requesting that the Court dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3).

**II. Parties' Contentions**

By their Motion, Defendants contend that Plaintiffs' Complaint should be dismissed pursuant to Rules 12(b)(1) and 12(h)(3) for failure to plead and prove an actual controversy. Defendants contend that there is no actual controversy because Plaintiffs could not be in reasonable apprehension of a lawsuit when there is a licensing agreement between the parties. Alternatively, Defendants request that the Court exercise its "unique and substantial" discretion and refuse to hear the case because Plaintiffs brought the case for improper purposes. Finally, Defendants contend that Plaintiffs' Lanham Act claim should be dismissed pursuant to Rule 12(b)(6), because Plaintiffs have failed to state a claim under Section 43(a).

In response, Plaintiffs contend that reasonable apprehension of suit exists because the parties' licensing agreement expires at the end of 2006, Defendants have a history of threatening other wireless technology manufacturers with litigation, and Defendants have threatened to sue Plaintiffs. Alternatively, Plaintiffs contend that the Court should consider a ripeness test or that the Court should exercise its discretion to resolve the dispute because the case is fit for resolution and a declaratory judgment would be useful. Finally, Plaintiffs contend that they have sufficiently stated a claim under Section 43 of the Lanham Act to survive Defendants' motion to dismiss.

**III. Discussion**

    A.    <u>Whether Plaintiffs' Claims For Declaratory Judgment Should Be Dismissed Pursuant To Federal Rules Of Civil Procedure 12(b)(1) and 12(h)(3)</u>

        1.    *Standard of Review*

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of a court to address the merits of a plaintiff's complaint. The motion should be granted where the asserted claim is "insubstantial, implausible, foreclosed by prior decisions of [the] Court, or otherwise completely devoid of merit as not to involve a federal controversy." <u>Coxson v. Commonwealth of Pennsylvania</u>, 935 F.Supp. 624, 626 (W.D. Pa. 1996)(citations omitted).

A motion to dismiss under 12(b)(1) may present either a facial or a factual challenge to subject matter jurisdiction. <u>See</u> <u>Mortensen v. First Fed. Sav. and Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977). A factual challenge to subject matter jurisdiction exists where there is an attack on "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." <u>Id</u>.

When a Court considers a factual challenge to jurisdiction, it does not presume the truth of the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims. <u>Id</u>. Moreover, the plaintiff has the burden of proof

3

that jurisdiction does in fact exist.  Id.

The Court concludes that the instant case presents a factual challenge because Defendants dispute the existence of the jurisdictional facts alleged in the Complaint.  Thus, the Court is not required to presume the truth of Plaintiffs' allegations, and Plaintiffs bear the burden of proving that jurisdiction exists.

### 2.  *Analysis*

The Declaratory Judgment Act "requires an actual controversy between the parties before a federal court may exercise jurisdiction."  28 U.S.C. § 2201(a); EMC Corp. v. Norand Corp., 89 F.3d 807, 801 (Fed. Cir. 2004).  An actual controversy exists when there is both "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity."  Gen-Probe, Inc. v. Vysis, Inc., 359 F.3d 1376, 1380 (Fed. Cir. 2004) (quoting BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993)).  A court must look to the circumstances and facts at the time the complaint is filed to determine whether there is an actual controversy.  MedImmune, Inc. v. Centocor, Inc., 409 F.3d 1376, 1381 (Fed. Cir. 2005).

4

The parties do not dispute that the second prong, present infringing activity, of the two-part test is satisfied. Rather, the motion turns on the first prong, reasonable apprehension of suit. "When the defendant's conduct, including its statements, falls short of an express charge, one must consider the 'totality of the circumstances' in determining whether that conduct meets the first prong of the test." Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988) (quoting Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 955 (Fed. Cir. 1987)).

The Court concludes that, under the totality of the circumstances, Plaintiffs have not demonstrated reasonable apprehension of suit. First, and most damaging to Plaintiffs, is the existence of a licensing agreement that does not expire until the end of 2006. While the existence of a licensing agreement is not conclusive as to the Court's jurisdiction, C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 880 (Fed. Cir. 1983), the Federal Circuit has been reluctant to find reasonable apprehension where a licensing agreement exists. See Gen-Probe, 359 F.3d 1376; MedImmune, 409 F.3d 1376. Furthermore, the Federal Circuit has recently distinguished those cases finding reasonable apprehension despite a licensing agreement from the type of case at bar; in the cases finding reasonable apprehension, there was a breach of the licensing agreement or the plaintiff sought to

5

prevent such a breach. See Gen-Probe, 359 F.3d at 1380 (finding no reasonable apprehension of suit due to the existence of a licensing agreement and the absence of two "critical circumstances" from C.R. Bard: a material breach of the licensing agreement and a suit brought by the defendant); MedImmune, 409 F.3d at 1381 (distinguishing the case from Cordis Corp. v. Medtronic, Inc., 835 F.2d 859 (Fed. Cir. 1987) in which the licensee also "sought to pay royalties into escrow pendente lite, and to enjoin the licensor from canceling the license agreement"). In this case, there is a licensing agreement between Plaintiffs and Defendants, there has been no breach or threat of breach, and Defendants have not brought any lawsuits against Plaintiffs.

Second, where a licensing agreement has been formed, a court must only consider a defendant's actions occurring after formation of the licensing agreement. Gen-Probe, 359 F.3d at 1381. Thus, the Court will examine whether the following facts alleged by Plaintiffs, occurring after formation, give rise to reasonable apprehension:

- "Since the early 1990s, InterDigital has been accusing *every* mobile telephone equipment manufacturer of patent infringement." (D.I. 14 at 17).

- "InterDigital was the cause of *all* of the patent proceedings to which it has been a party." (Id.).

- "InterDigital also directly filed suit against OKI America and Qualcomm in 1993 and against Lucent this past year." (Id.).

6

- "After Nokia initiated the arbitration proceeding to obtain information, InterDigital escalated the proceedings by counterclaiming against Nokia for the massive royalties it promised its shareholders in its press release." (Id. at 9).

- "For at least ten years, through correspondence, licensing presentations, meetings, and public statements, InterDigital has been claiming that Nokia's products infringed its patents." (Id. at 17).

- "In its licensing negotiations, InterDigital has repeatedly referenced its suits against other mobile telephone equipment manufacturers." (Id. at 17-18).

- "InterDigital's CEO, Howard Goldberg, recently threatened Nokia with suit, stating that InterDigital was considering litigation as a means of obtaining 'leverage' in the negotiations with Nokia." (Id. at 18).

The Court concludes that, under the totality of the circumstances, the facts alleged do not give rise to a reasonable apprehension of a lawsuit. As to Defendants' litigation tactics, in the past twelve years, Defendants have brought only three actions to defend their patents. The fact that two of them were brought in 1993, "against two other parties unconnected with [Plaintiffs, is] too remote to make [Plaintiffs'] apprehension of further litigation in [2005] reasonable." Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 883 (Fed. Cir. 1985) (finding that a seven-year difference was too remote). Furthermore, even if Defendants have claimed for ten years that Plaintiffs are infringing their patents, Plaintiffs' reasonableness is belied by the fact that not once in those ten years have Defendants sued Plaintiffs. To the contrary, Plaintiffs have filed lawsuits

7

against Defendants, most notably, the arbitration Plaintiffs initiated "regarding Nokia's royalty payment obligations...under the existing patent license agreement." (D.I. 15, Ex. G, p. 54). It was hardly escalation of the proceedings for Defendants to counterclaim on their right to receive those royalties. (<u>Id</u>. at 55).

Additionally, as to Defendants' conduct in negotiations for a potential 2006 license, "the Federal Circuit has concluded that the objective test for determining declaratory justiciability is not met 'when a patentee does nothing more than exercise its lawful commercial prerogatives....'" <u>DuPont Dow Elastomers, LLC v. Greene Tweed of Del., Inc.</u>, 148 F. Supp. 2d 412, 415 (D. Del. 2001) (quoting <u>Cygnus Therapeutic Sys. v. Alza Corp.</u>, 92 F.3d 1153, 1160 (Fed. Cir. 1996)). Mere "'jawboning,' which typically occurs in licensing negotiations," is not sufficient to give rise to reasonable apprehension. <u>Shell Oil Co. v. Amoco Corp.</u>, 970 F.2d 885, 889 (Fed. Cir. 1992).

Finally, Plaintiffs' argument is not furthered by its allegation that InterDigital's CEO, Howard Goldberg, recently threatened it with a lawsuit. In the allegedly threatening conversation, Mr. Goldberg was responding to a question in a conference call from an analyst regarding whether Defendants had any leverage in the arbitration that had been initiated by Plaintiffs:

>    FRANK MARSALA:  Then just a Nokia question on that
>    issue.  Is there any leverage that you guys have today?
>    Is there anything you can do to influence Nokia to
>    bring this matter to a close--here I'm talking about
>    things like bringing injunctions against them--shipping
>    handsets--things of that sort of [sic].  So, I'm
>    curious about that.
>
>    HOWARD GOLDBERG:  Let me first say that we certainly
>    will look at every point of leverage.  The dynamics in
>    a situation such as this are very important.  We will
>    look--and have been looking--at how we can drive this
>    to a successful resolution.  Through internal and
>    external resources.  One of the ways that leverage is
>    best used is as a surprise or-certainly you don't want
>    to create an anticipation of anything that you may do.
>    So the answer is yes.  But I would be very reluctant to
>    talk about it and layout our plan for dealing with this
>    particular matter.

(D.I. 1, Ex. T, p. 14).  In the Court's view, Mr. Goldberg is discussing the leverage that Defendants will use to defend their rights in the arbitration <u>initiated by Plaintiffs</u>.  It would be illogical to require patent owners to state that they have no leverage in legal proceedings initiated by a competitor in order to avoid giving rise to that competitor's reasonable apprehension.  Thus, the Court finds that the answer by Mr. Goldberg was "reflexive and obligatory."  <u>Shell</u>, 970 F.2d at 889.

The Federal Circuit has stated that satisfaction of the two-part test is not a requirement for every declaratory judgment action.  <u>Fina Oil & Chem. Co. v. Ewen</u>, 123 F.3d 1466, 1470 (Fed. Cir. 2003).  Plaintiffs, therefore, contend that the Court should also consider a ripeness test to determine whether there is a sufficient controversy.  Plaintiffs cite several cases in support

9

of this standard, but in each of those cases, the court still applied the two-prong test. See <u>Teva Pharm. USA, Inc. v. Pfizer, Inc.</u>, 395 F.3d 1324 (Fed. Cir. 2005); <u>Fina Oil</u>, 123 F.3d 1466; <u>GAF Bldg. Materials Corp. v. Elk Corp.</u>, 90 F.3d 479 (Fed. Cir. 1996); <u>EMC Corp.</u>, 89 F.3d 807. Other cases cited in Plaintiffs' analysis either did not discuss the Declaratory Judgment Act or did not discuss whether an actual controversy existed. See <u>Dow Chem. Co. v. Exxon Corp.</u>, 30 F. Supp. 2d 673 (D. Del. 1998); <u>Cedars-Sinai Med. Ctr. v. Watkins</u>, 11 F.3d 1573 (Fed. Cir. 1993). <u>Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs</u>, 330 F.3d 1345 (Fed. Cir. 2003)  Moreover, even if the case were ripe for review, the Court still could not hear the case unless an actual controversy existed, which the Court has concluded does not. Accordingly, the Court declines to apply a test different from the two-prong test applied above.

In sum, the Court concludes that Plaintiffs did not have a reasonable apprehension of litigation at the time the Complaint was filed. Therefore, there is no actual controversy to support the Court's jurisdiction over the declaratory judgment claims under the Declaratory Judgment Act. Accordingly, the Court will dismiss Plaintiffs' declaratory judgment claims for lack of subject matter jurisdiction.

> B. **Whether Plaintiffs' Claim Under Section 43 Of the Lanham Act Should Be Dismissed Pursuant to Rule 12(b)(6) For Failure To State A Claim**

1. *Legal Standard*

Defendants also request that the Court dismiss Plaintiffs' claim under Section 43 of the Lanham Act pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

2. *Analysis*

To state a claim under § 43(a) of the Lanham Act, a plaintiff must allege that: (1) defendant made false or misleading statements as to its products, or those of the plaintiff; (2) there was actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception was material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc. Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-

11

Poulenc Rorer Pharms., Inc., 19 F.3d 125, 129 (3d Cir. 1994). Additionally, a plaintiff must demonstrate that the patent holder acted in bad faith. Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1353 (Fed. Cir. 1999).

    Accepting as true all allegations in Plaintiffs' Complaint and drawing all reasonable inferences therefrom, the Court concludes that, at this juncture, Plaintiff has stated a claim under Section 43 of the Lanham Act sufficient to survive Defendants' motion to dismiss. Plaintiffs allege that Defendants made false or misleading statements in bad faith to the effect that Defendants' patents cover Plaintiffs' 3G products. Plaintiffs further allege that these statements are material and "have caused actual deception or have a tendency to deceive." (D.I. 1 at 35). Additionally, Plaintiffs have alleged that the misrepresentations have injured Plaintiffs in their business and have damaged their reputations.

    The requirement that the advertised goods have traveled in interstate commerce is not as clearly alleged as the other requirements. Drawing all reasonable inferences in the light most favorable to Plaintiffs, however, the Court concludes that the statement "Nokia is currently designing, rolling out and further developing 3G products in the United States that will be manufactured and sold by Nokia after 2006" means that at least some 3G products have already been developed and entered

12

interstate commerce.[1] (D.I. 1 at 6). Accordingly, the Court will deny Defendants' motion to dismiss pursuant to Rule 12(b)(6).

## IV. Conclusion

For the reasons discussed, Defendants' Motion To Dismiss For Lack Of Jurisdiction Over The Subject Matter Pursuant To Federal Rules Of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3) (D.I. 10) will be granted in part and denied in part.

An appropriate Order will be entered.

---

[1] Defendants quote this statement to demonstrate that Plaintiffs are suing on future products. Read in the context of the entire paragraph and in the light most favorable to Plaintiffs, however, the Court concludes the statement means that some 3G products have already been made ("rolled out") and will continue to be made after the licensing agreement expires ("further developed").

13