# ATTACHMENT A

# ATTACHMENT A

1. The facts underlying InterDigital's responses listed as "Answer[s]" to Interrogatory No. 1 through and including Interrogatory No. 4 in InterDigital's First Amended Answers and Objections to Plaintiffs' First Set of Interrogatories.

2. The facts underlying why the defendants believe that the Group of 11 patents[1] are essential or potentially essential to a 3G standard, and the specific standard or portions thereof (if any) to which the patent is essential or potentially essential,[2] and the facts underlying why no other patent otherwise declared to be essential or potentially essential has been so identified by InterDigital in this litigation.

3. The process by which InterDigital determined that any InterDigital patent is essential or potentially essential to a 3G standard.[3]

4. The names, current location, and current employment of all persons involved in making intellectual property declarations on behalf of InterDigital to any standards body.[4]

5. The process[5] by which InterDigital decided to declare the patents shown on Attachment B to the European Telecommunications Standards Institute (ETSI).

---

[1] The "Group of 11 patents" means the patents listed on page 6 of InterDigital's First Amended Answers to Plaintiffs' First Set of Interrogatories

[2] By "essential or potentially essential to a 3G standard," in this attachment we mean to have the same meaning as defendants gave the phrase in their answer to the plaintiffs' Interrogatory No. 1.

[3] By "[t]he process," in this attachment we mean to include how *each* patent was selected (*not just the overall process*), the facts underlying why each patent was selected, including – without limitation – whether a particular portion of the standard was identified as being relevant to the patent (and if so what part of the standard), whether it was believed that any standard could not be practiced without infringing the patent (and if so, what part of the standard), and the identities of the persons involved in the analysis.

[4] In this attachment, we mean "making intellectual property declarations … to any standards body" to include the process of deciding whether to identify any intellectual property, such as any specific patent, to bodies that set, promulgate or publish telecommunications standards, such as ETSI; and by "InterDigital," we mean to include both defendants and any affiliate of either defendant.

[5] By "[t]he process" here, we mean the same thing we meant in footnote 3 above.

6. The process[6] by which InterDigital listed any patents on a copy of Annex 2 to an "IPR INFORMATION STATEMENT AND LICENSING DECLARATION FORMS" (an exemplar of which is attached as Attachment C), or any previous or subsequent versions of Annex 2.

7. Whether any and each patent in the Group of 17 patents[7] is presently believed by InterDigital to be essential;[8]

    a. and if not, the facts underlying why InterDigital's position changed;[9]

    b. but if so, the facts underlying why one or all of them were not identified in response to Plaintiffs' Interrogatories, and the specific standard or portions to which the patent is essential.

8. Whether any and each patent in the Group of 10 patents[10] is presently believed by InterDigital to be essential;[11]

---

[6] By "[t]he process" here, we mean the same thing we meant in footnote 3 above.

[7] The Group of 17 patents is U.S. Patents Nos. 5,574,747; 6,181,949; 5,841,768; 6,215,778; 5,179,572; 6,075,792; 5,799,010; 5,614,914; 5,663,990; 5,859,879; 5,363,403; 5,553,062; 5,719,852; 6,014,373; 6,259,688; 5,081,643; 5,673,286. By way of information, InterDigital declared these patents to ETSI, and Nokia analyzed these patents in its original and supplemental responses to InterDigital's First Set of Interrogatories

[8] By "essential" we mean "that it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that patent." The words in all capitals in this definition have the same meaning as they do in the ETSI IPR Policy.

[9] By "the facts underlying why InterDigital's position changed," we mean to include – without limitation – when the position was changed, what facts, if any, were learned to cause the change, the facts underlying the change, the names of the persons involved in the decision, and the substance of any meetings or communications at which such change was discussed and ultimately decided upon.

[10] The Group of 10 patents is U.S. Patents Nos. 6,577,876; 5,943,331; 6,141,332; 5,351,269; 6,212,174; 5,588,020; 5,367,533; 5,224,120; 5,920,590; 5,563,907. By way of information, this is an exemplary group patents that InterDigital declared to ETSI and for which InterDigital's essentiality claims appear to be particularly egregious.

[11] By "essential" we mean the same thing as we said in footnote 8.

LEGAL02/12239942v3

    a.    and if not, the facts underlying why InterDigital's position changed;[12]

    b.    but if so, the facts underlying why one or all of them were not identified in response to Plaintiffs' Interrogatories, and the specific standard or portions to which the patent is essential.

9.    Whether any and each patent in the Group of 34 patents[13] is presently believed by InterDigital to be essential;[14]

    a.    and if not, the facts underlying why InterDigital's position changed;[15]

    b.    but if so, the facts underlying why one or all of them were not identified in response to Plaintiffs' Interrogatories, and the specific standard or portions to which the patent is essential.

---

[12] By "the facts underlying why InterDigital's position changed," we mean to include – without limitation – when the position was changed, what facts, if any, were learned to cause the change, the facts underlying the change, the names of the persons involved in the decision, and the substance of any meetings or communications at which such change was discussed and ultimately decided upon.

[13] The Group of 34 patents is U.S. Patents Nos. 5,081,643; 5,093,840; 5,166,951; 5,179,571; 5,260,967; 5,299,226; 5,345,467; 5,351,269; 5,363,403; 5,365,544; 5,367,533; 5,410,568; 5,420,896; 5,469,468; 5,535,238; 5,553,062; 5,574,747; 5,588,020; 5,631,921; 5,703,874; 5,719,852; 5,748,687; 5,796,776; 5,799,010; 5,835,527; 5,841,768; 5,995,538; 6,005,898; 6,011,789; 6,014,373; 6,115,406; 6,157,619; 6,181,949; 6,215,778. By way of information, InterDigital declared these patents to ETSI in 2001 but not in 2004.

[14] By "essential" we mean the same thing as we said in footnote 8.

[15] By "the facts underlying why InterDigital's position changed," we mean to include – without limitation – when the position was changed, what facts, if any, were learned to cause the change, the facts underlying the change, the names of the persons involved in the decision, and the substance of any meetings or communications at which such change was discussed fand ultimately decided upon.