IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOKIA CORPORATION and<br>NOKIA, INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| | )   C.A. No. 05-16-JJF |
| v. | )<br>) |
| INTERDIGITAL COMMUNICATIONS<br>CORPORATION and INTERDIGITAL<br>TECHNOLOGY CORPORATION, | )<br>)<br>)<br>) |
| Defendants. | ) |

## SECOND DISCOVERY ORDER

The Special Master, having considered Nokia Corporation's and Nokia, Inc.'s (collectively "Nokia") motion to compel InterDigital Communication Corporation and Interdigital Technology Corporation (collectively "InterDigital") to answer interrogatories, and InterDigital's motion to compel compliance with the First Discovery Order, and having heard argument on the motions on November 2, 2006, it is ordered as follows:

1.  On December 21, 2005, the District Court entered a Memorandum Opinion and Order dismissing Nokia's declaratory judgment patent infringement claims. The only claim presently in the case is Nokia's Lanham Act claim. Nokia claims that "InterDigital has repeatedly made public statements that its patent portfolio covers the practice of 3G wireless phone systems and the sale of 3G compliant products."[1] These statements are alleged to be false and made in bad faith, and therefore violate the Lanham Act.

---

[1] Paragraph 143 of Nokia's January 12, 2005 complaint.

2. In the First Discovery Order, I resolved a dispute about Nokia's Federal Rule of Civil Procedure 26(a)(1) initial disclosures. Anticipating future disputes between the parties about the specificity with which each party would set forth the factual basis for its claims or defenses, in the June 12, 2006 First Discovery Order, I required that Nokia provide verified responses to the following:

> Nokia shall identify separately (a) each public statement that it relies upon for this allegation, (b) the date of the public statement, and (c) the identity of anyone who made the statement. For each public statement, Nokia shall also provide a detailed response why each statement is false.

InterDigital had a similar obligation:

> On or before July 14, 2006, InterDigital shall provide verified responses to the following questions: InterDigital shall identify separately (a) each public statement it has made regarding its patent portfolio and whether the portfolio covers the practice of 3G wireless phone systems and the sale of 3G compliant products, (b) the date of the public statement, and (c) the identity of anyone who made the statement.

3. On August 2, 2006, InterDigital filed a Motion to Compel Compliance with the Special Master's First Discovery Order and a Motion to Compel Supplementation of Nokia's Responses to InterDigital's First Set of Interrogatories. The interrogatory responses in dispute are numbers 2, 5-7, and 9-10. Nokia filed a response to InterDigital's motion on August 15, 2006, and at the same time served supplemental responses to InterDigital's interrogatories. After I scheduled a hearing on InterDigital's motions, the parties requested that I defer the hearing to allow the parties more time to attempt to resolve InterDigital's motion.

4. On October 23, 2006, Nokia filed its own motion to compel, requesting that the Special Master order InterDigital to supplement its answers to interrogatory numbers 1 and 3-11 regarding the patents it has declared "essential" to European

2

Telecommunications Standards Institute ("ETSI") to the practice of Third Generation (3G) technology for digital communication devices. On November 1, 2006, InterDigital filed a response to Nokia's October 23, 2006 motion.

5. On November 2, 2006, I heard argument on the outstanding motions.[2] Although some progress was made during the hearing to resolve the disputes, a formal Order is nonetheless necessary to state the discovery obligations of each party regarding disclosure of facts supporting their claims and defenses.

6. First, with regard to InterDigital's motion to compel compliance with the First Discovery Order, InterDigital claims that Nokia (a) has not definitively stated the universe of statements that it relies upon for its Lanham Act claims; and (b) has not provided a detailed response why it claims each statement is false. The "universe of statements" issue was resolved at the November 2, 2006 hearing. Nokia stated that its supplemental responses were complete based on its present knowledge, and that the qualifying language in the interrogatory responses was intended to preserve its right to supplement its discovery responses once Nokia obtained discovery from InterDigital.[3] Therefore, the statements set forth in Nokia's supplemental responses represent the current state of Nokia's knowledge of the facts supporting Nokia's Lanham Act claims, without the benefit of complete discovery from InterDigital.

7. Turning to InterDigital's motion to require Nokia to supplement its discovery responses, and also Nokia's motion to require InterDigital to supplement its

---

[2] At the hearing, InterDigital noted that it had submitted its response to Nokia's October 23 motion the day before the hearing, and had not anticipated that Nokia's motion would be heard that day. Because the pending motions are interrelated, the parties were able to address both motions in a satisfactory manner. In rendering this decision, the Special Master has also considered Nokia's November 8, 2006 reply in support of its October 23, 2006 motion.

[3] Nov. 2, 2006 Hearing Transcript at 10-12.

discovery responses, at bottom, these disputes are about who should turn over their cards first. InterDigital argues that Nokia as the plaintiff should be required to go first, and to state clearly and definitively for each of InterDigital's alleged false statements why each of the statements is false. Nokia contends that InterDigital should, either initially or at the same time as Nokia serves its responses, state clearly and definitively for each essentiality statement made by InterDigital whether the statement is true, and the reasons why the statement is true. The statements at issue focus on, but are not exclusively, the declarations made to ETSI that each of the many patents InterDigital has claimed are essential or potentially essential to practice the 3G standard.[4]

8.  I accept InterDigital's argument that Nokia, as the plaintiff, who bears the burden of proof, must "show its cards" first by setting forth the facts supporting its Lanham Act claim. Regarding the appropriate scope of discovery, it should be in proportion to the claims raised in the complaint. Nokia has alleged that InterDigital's "ETSI Declarations, combined with public statements, amount to a public statement that everyone in the industry in order to comply to practice the then-established 3G standards needs a license to all 195 patents."[5] At argument, InterDigital said it was standing by its ETSI declarations,[6] which means that each patent in the ETSI declarations must be addressed to determine whether it is "essential," as the term "essential" is used by ETSI, to practice the 3G technology. Therefore, within thirty days from the date of this order

---

[4] As applications continue to ripen into issued patents, the number of patents at issue has been increasing. The current number appears to be 195.

[5] Nov. 2, 2006 Hearing Transcript at 25. *See also* Hearing Transcript at 24-25 ("Our contention is that the ETSI declarations, combined with their public statements, amounts to a statement that everyone in the industry in order to comply to practice the then-established 3G standards needs a license to all 195 patents.").

[6] Nov. 2, 2006 Hearing Transcript at 24 ("we are standing by our ETSI Declarations"). *See also* Hearing Transcript at 17 ("the declarations to ETSI state that it is InterDigital's opinion the patents listed in the declarations are either essential or potentially essential to the standards listed.").

Nokia must identify on a patent by patent basis why InterDigital's ETSI declarations are false and made in bad faith.[7] Nokia's statements should be based on its present knowledge, and it can supplement its responses based on information derived from discovery after its supplemental responses are served. The ability to supplement should not be viewed as an opportunity to hold back information Nokia presently has, only to be disclosed at a later stage in the litigation. Finally, if Nokia, in addition to the ETSI declarations, intends to rely on other statements made by InterDigital to support its Lanham Act claim, it must make the same clear statement regarding alleged falsity that is required for InterDigital's ETSI declarations. To the extent that Nokia's supplemental response does not cover all the information requested in InterDigital interrogatories 2 and 5, Nokia shall supplement its responses to those interrogatories on the same schedule.

     9.    Once Nokia has shown its cards on its Lanham Act claim, and in particular why InterDigital's essentiality statements are allegedly false, InterDigital must respond in kind, within thirty days from the service of Nokia's verified statement, and with the same level of detail provided by Nokia. InterDigital must state for each patent whether the patent is "essential" as that term "essential" is used by ETSI, and the basis for its defense that its statements regarding essentiality are true statements. To the extent this statement does not cover all the information requested in Nokia interrogatories 1, 3-4, 6, and 11, InterDigital must supplement its responses to those interrogatories on the same schedule.

     10.    With regard to Nokia's interrogatories 7-9, these interrogatories are directed primarily to patent validity issues. InterDigital argues that the interrogatories are irrelevant to the truth or falsity of the statements alleged to have violated the Lanham

---

[7] Nokia agreed to this process at the November 2, 2006 argument. Nov. 2, 2006 Hearing Transcript at 32-33.

Act. I agree with InterDigital that Nokia's Lanham Act allegations so far are unrelated to patent validity issues. In its November 8, 2006 reply, Nokia does not seriously challenge InterDigital's argument that patent validity issues are irrelevant to Nokia's Lanham Act claims. Therefore, the objection is sustained, and InterDigital need not respond to these interrogatories.

11. With regard to interrogatory number 10, Nokia has requested discovery directed to license negotiations between InterDigital and third parties relating to the patents at issue in this litigation. Nokia argues that the standards for discovery under Federal Rule of Civil Procedure 26 are broad, and Federal Rule of Evidence 408, precluding admission of settlement negotiations, is an evidentiary rule, not a discovery rule, and therefore should not bar discovery of settlement negotiations. InterDigital has objected to this discovery, claiming that the documents being withheld reflect substantive settlement correspondence that would be inadmissible under Rule 408, and allowing discovery would invade the protections afforded settlement negotiations by Federal Rule of Evidence 408. InterDigital also objects to discovery relating to compliance with 2G standards.

12. While Rule 408 addresses the inadmissibility of evidence at trial, "the same consideration of the policy which actuates the courts to exclude an offer of compromise made by [the defendant to the plaintiff], also applies to settlement [negotiations between the defendant and a third party.]" *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 554 (E.D.Cal.1990), *overruled on other grounds by Jaffee v. Redmond*, 518 U.S. 1 (1996) (brackets in original) (*quoting McCormick on Evidence* at 813 (3rd. Ed. 1984)). *See also Bottaro v. Hatton Associates*, 96 F.R.D. 158, 159

(E.D.N.Y.1982) ("... while admissibility and discoverability are not equivalent, it is clear that the object of the inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue."). Relying on the policy considerations behind Rule 408, the court in *Cook* denied discovery of settlement correspondence, and concluded that settlement discussions can be filled with "puffing and posturing," and are not a reliable source of relevant information for resolving contested claims. The "facts" exchanged in the settlement process may sometimes not be facts at all, but the posturing of the parties. Discovery of settlement exchanges could be highly misleading if allowed to be used for purposes other than settlement. *See also United States v. Contra Costa County Water Dist.*, 678 F.2d 90, 92 (9th Cir.1982) (settlement evidence "is irrelevant as being motivated by a desire for peace rather than from a concession of the merits of the claim"). Statements made during on-going settlement negotiations are considered unreliable and therefore irrelevant to other litigation. Equally important, if discovery is permitted of on-going negotiations, such a ruling may discourage resolution of other disputes, and may chill the on-going settlement process. *See Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 1996 WL 71507, at *6 n.1 (S.D.N.Y.) ("The court recognizes that disclosure of offers in ongoing settlement negotiations might have an adverse impact on the settlement process."); *United States v. American Society of Composers*, 1996 WL 157523, at *3 (S.D.N.Y.) ("Of particular pertinence to this case is the distinction between disclosure of negotiations that have led to a consummated settlement and the disclosure of discussions that are either ongoing or at least have not yet resulted in agreement."). Therefore, InterDigital need not respond to discovery, including depositions, related to on-going license negotiations. Based on the

present record I will also sustain InterDigital's objection to discovery relating to 2G standards. This discovery is unlikely to result in the discovery of admissible evidence in a case involving 3G standards.

13. Finally, the parties responded to certain interrogatories by invoking Federal Rule of Civil Procedure 33(d) as a substitute for a narrative response. The parties agreed at argument to produce responsive documents on a rolling basis as soon as practical.

_____
Special Master

DATED: November 14, 2006

8