IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOKIA CORPORATION and NOKIA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> INTERDIGITAL COMMUNICATIONS CORPORATION and INTERDIGITAL TECHNOLOGY CORPORATION, <br><br> Defendants. | ) ) ) ) ) ) C. A. No. 05-16-JJF ) ) ) **JURY TRIAL DEMANDED** ) ) ) ) ) |

### DEFENDANTS' NOTICE OF DEPOSITION OF HARRI HONKASALO AND SUBPOENA DUCES TECUM

TO:   Plaintiff Nokia Corporation and Nokia Inc., by and through their attorneys of record, Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell L.L.P., 1201 N. Market Street, Wilmington, Delaware 19801.

**PLEASE TAKE NOTICE** that the oral deposition of Harri Honkasalo will be taken, pursuant to the FEDERAL RULES OF CIVIL PROCEDURE, by stenographic and videographic means on Wednesday, December 6, 2006, beginning at 9:30 a.m. in the London offices of Fulbright & Jaworski L.L.P., 90 Long Acre, London WC2E 9RA, United Kingdom. The deposition will continue from day to day until completed. The deposition will be taken by an officer who is authorized by law to take depositions and by audio-video recording device. It may be attended by a corporate representative of InterDigital Communications Corporation and/or InterDigital Technology Corporation (collectively "InterDigital").

To the extent not previously produced, Mr. Honkasalo is requested to produce any and all documents which are in his possession, custody or control set forth in Attachment A prior to or at the commencement of the deposition.

| | |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| D. Dudley Oldham<br>Linda L. Addison<br>Richard S. Zembek<br>Fulbright & Jaworski L.L.P.<br>1301 McKinney, Suite 5100<br>Houston, Texas 77010-3095<br>Tel: (713) 651-5151 | By: /s/ David E. Moore<br>Richard L. Horwitz (#2246)<br>David E. Moore (#3983)<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>Wilmington, Delaware 19801<br>Tel: (302) 984-6000<br>rhorwitz@potteranderson.com<br>dmoore@potteranderson.com |
| Dan D. Davison<br>Fulbright & Jaworski L.L.P.<br>2200 Ross Avenue, Suite 2800<br>Dallas, Texas 75201-2784<br>Tel: (214) 855-8000 | *Attorneys for Defendants,<br>Interdigital Communications<br>Corporation And Interdigital<br>Technology Corporation* |
| Dated:<br>762972/ 28840 | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on November 17, 2006, the attached document was hand delivered to the following person(s) and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Julia Heaney
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347

I hereby certify that on November 17, 2006, I have Electronically Mailed the documents to the following:

Peter Kontio
Patrick J. Flinn
Gardner S. Culpepper
Keith E. Broyles
Randall L. Allen
Lance Lawson
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA  30309-3424
pkontio@alston.com
pflinn@alston.com
gculpepper@alston.com
keith.broyles@alston.com
rallen@alston.com
llawson@alston.com

By:  /s/ David E. Moore
Richard L. Horwitz
David E. Moore
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

713935

# ATTACHMENT A

# DEFINITIONS OF TERMS AND INSTRUCTIONS

As used herein, the following words and phrases are defined as follows:

1. "3G Standard(s)" shall mean third generation digital wireless cellular phone standards, including, without limitation, WCDMA, UMTS, cdma2000, and TD-SCDMA.

2. "3G Product(s)" shall mean hardware and software, including, without limitation, terminal units and infrastructure equipment complying in whole or in part with 3G Standards, including those terminal units and infrastructure equipment which operates or is capable to operate so as to comply in whole or in part with 3G Standards.

3. "cdma2000" means the family of standards promulgated by the TIA and known as cdma2000, 1XEV-DO, and 1xEV-DV, including, without limitation, TIA/EIA/IS-2000 (revisions 0, A, B, C, and D), IS-707A, TIA/EIA/IS-835, TIA/EIA/IS-856, and TIA/EIA/IS-878 standards.

4. "Correspondence" shall mean and include any transmission or exchange of information between two or more persons, whether orally or in writing, including, without limitation, any conversation or discussion face-to-face or by means of letter, note, memorandum, telephone, telegraph, telex, telecopier, electronic mail, cable, or some other medium, whether electronic or otherwise, and whether by chance or prearrangement, formal, or informal.

5. "Document" and "documents" shall have the broadest meaning accorded by Rule 34(a) of the Federal Rules of Civil Procedure and shall include, without limitation, all of the matters defined in Rule 1001 of the Federal Rules of Evidence, correspondence (as defined below), memoranda, stenographic or handwritten notes, drafts, studies, publications, invoices, ledgers, journals, books, records, accounts, pamphlets, voice recordings, photographs, reports, surveys, statistical compilations, work papers, data processing cards, computer tapes or printouts, microfiche or microfilm, and writings of every other kind and character, whether originals or reproductions. The terms "document" and "documents" also include every copy where such copy is not an identical reproduction of the original or where such copy contains any commentary, marginal comment, or notation whatsoever that does not appear in the original. The terms "document" and "documents" also mean any printed, typewritten, or handwritten matter of reproduction thereof of whatever character, or means or electronic storage of information, such as e-mail, that is within Nokia's possession, control, or custody. The terms "document" and "documents" also include all drafts. Without limitation of the term "control," a document is deemed to be with Nokia's control if Nokia has ownership, possession, or custody of the document or a copy thereof, or the right to secure the document or a copy thereof, from any other person or public or private entity having physical possession thereof,. If any document requested herein was, but is no longer, subjected to Nokia's control, please state what disposition was made of it, and the date or dates, or the approximate date or dates, of such disposition.

6. "**3G Technology**" shall mean technology used in connection with 3G Products.

7. **"Identify"** shall mean:

a. when used with reference to a "document," state the Bates number(s) of the document;

b. when used with reference to an oral communication;

*state the time and place of the oral communication;*

*identify the person who made the oral communication and each person who was present (in person or by telephone or other communications means) when it was made;*

*state its subject matter and contents; and*

*identify, in accordance with Definition 4(a) above, each document which refers thereto or which was prepared as a consequence of the oral communication; and*

c. when used with reference to a person, state the person's full name, correct employer, job title, and address.

8. "InterDigital's Patent Portfolio" shall mean the patents issued to and/or held by InterDigital and Tantivy and IPR Licensing and which form the basis of the claims made in Nokia's Complaint.

9. "Reflecting," "referring," and "relating" shall be used in the broadest sense and shall mean and include without limitation "referring to," "mentioning," "discussing," "containing," or "setting forth" and refers to every document or other form of information that in any way explicitly or implicitly refers to, or reasonably could be construed to refer to, the subject mater of the document requested or inquired about, or which in fact refers to its subject matter through such reference is only determinable with reference to some extrinsic information, program, or code. In the latter case, the document request or inquiry shall be read to include whatever extrinsic information, program, or code is useful or necessary to render intelligible the relationship and meaning of the document or other form of information with respect to the subject matter thereof, including, but not limited to, codes for identifying the person, organizations, and transactions described in the document request or inquiry.

10. "Nokia's Complaint" shall mean Nokia's Complaint for Declaratory Judgment of Patent Invalidity and Infringement and Violations of the Lanham Act relating to 3G Mobile Phone Technology filed on or about January 12, 2005 and all amendments or supplements thereto.

11. "WCDMA" shall mean the family of standards promulgated by 3GPP and known as WCDMA, UMTS FDD, and UMTS TDD, including, without limitation, UMTS FDD, UMTS TDD, FOMA, IMT-2000, IMT-DS Direct Spread, and UTRA-FDD.

2

12.     **"Nokia"** shall mean Nokia Corporation and Nokia Inc. and any of their officers, directors, employees, agents, and persons acting on behalf of each and predecessor or successor entities.

## II.
## INSTRUCTIONS

1.      In the event you object to a request, you are requested to respond to that request to the extent it is not objectionable and specifically identify that portion of the request that is objectionable.

2.      If you maintain that any exemption(s) or privilege(s) exist, you shall fully and completely identify the specific exemption or privilege that it claims exists as to the request.

3.      The conjunctions "and" and "or" shall not be interpreted to exclude any information otherwise within the scope of any of the following requests.

4.      Unless the context requires otherwise, use in the following requests of the singular shall include the plural, use of the present tense shall include the past tense, and vice versa. Use of the word "including" shall mean "including without limitation."

5.      If any document responsive to any request, regardless of its relevance, is withheld because of any assertion of privilege, you should provide a log that satisfies the requirements of Fed. R. Civ. P. 26(b)(5) and shall include a schedule at the time of production stating, for each document withheld, the following information:

   (a)   the type of document;

   (b)   the title or caption of the document;

   (c)   The date the document was prepared and the date of any meeting or conversation reflected within the withheld document;

   (d)   the name(s) of the author(s) or preparer(s) of the document and the names and addresses of all recipients, including recipients of copies;

   (e)   if the document reflects or refers to a meeting or conversation, the names of all persons who were present at or parties to the meeting or the conversation;

   (f)   the nature of the privilege asserted; and

   (g)   a brief explanation stating why the document is believed to be privileged.

6.      Each request contained herein extends to all documents in your possession, custody, or control. A document is deemed to be in your possession, custody, or control if it is in your physical custody or if it is in the physical custody of any person and you:

3

  (a)  own the document in whole or in part;

  (b)  have a right by contract, statute, or otherwise to use, inspect, examine, or copy the document on any terms;

  (c)  have an understanding, express or implied, that you may use, inspect, examine, or copy the document on any terms; or,

  (d)  have, as a practical matter, been able to use, inspect, examine, or copy the document when you have sought to do so.

  7.  These requests are continuing. Responsive documents that are identified, generated, or located after the date of the request or defendants' response thereto shall be produced promptly after they have been identified, generated, or located.

  8.  The following requests for production are intended to be construed as broadly as their language permits. The enumerated requests for production are to be construed independently as are the items requested within each enumerated request for production, except where such construction limits the scope of a request. Any ambiguity should be resolved by selecting the broadest construction possible.

### III.
### REQUESTS FOR PRODUCTION

1. All correspondence, papers, notes, memoranda, lists, studies, summaries, calendars, schedules, date books, emails, or any other documents or tangible things, whether prepared by the witness or obtained from any other source in the possession, custody, or control of the witness, which may relate in any way to the above captioned cause.

2. All notes, memoranda, correspondence, or other written material or documents in the possession, custody or control of the witness from whatever source obtained reflecting, referring to or relating to communications with Nokia, which may relate in any way to the above captioned cause.

3. All notes, memoranda, correspondence, or other written material or documents in the possession, custody or control of the witness from whatever source obtained reflecting, referring to or relating to communications with InterDigital.

4. All documents reviewed or used by the witness in preparation for the deposition of the witness.

5. All documents reflecting, referring to, or relating to Nokia's allegation that "InterDigital has used false or misleading descriptions or representations in connection with its patent portfolio, the WCDMA standard, the cdma2000 standard, Nokia's products, the applicability of InterDigital's patent to Nokia's products, [or] the applicability of InterDigital's patents to 3G wireless standards." See Nokia's Complaint at Count XXI.

6. All documents reflecting, referring to, or relating to Nokia's allegations that "misconduct

of InterDigital has inhibited the development of 3G technology [sic and] damaged Nokia's business and its reputation in the wireless market." See Nokia's Complaint at Count XXI.

7. All documents reflecting, referring to, or relating to Nokia's allegations that "InterDigital has repeatedly made public statements that its patent portfolio covers the practice of 3G wireless phone systems, and the sale of 3G compliant product." See Nokia's Complaint at Count XXI.

8. All documents reflecting, referring to, or relating to Nokia's allegation that "InterDigital's patents are not necessary to practice 3G wireless phone standards." See Nokia's Complaint at Count XXI.

9. All documents reflecting, referring to, or relating to Nokia's allegation that "InterDigital's misrepresentations about the scope and validity of its patents and how these patents apply to Nokia's products have injured Nokia in its business and have damaged Nokia's reputation." See Nokia's Complaint at Count XXI.

10. All documents reflecting, referring to, or relating to Nokia's allegation that "InterDigital has made . . . false statements in bad faith and with knowledge of their falsity." See Nokia's Complaint at Count XXI.

11. All documents reflecting, referring to, or relating to Nokia's allegations that "all of InterDigital's 3G Patents are either invalid or not infringed by mobile handset and infrastructure products being rolled out on the United States. In particular, no Nokia product either sold in the United States or in development for sale in the United States infringes any valid claim of InterDigital's 3G Patents." See Nokia's Complaint at ¶ 11.

12. All documents reflecting, referring to, or relating to Nokia's allegations that "[w]hen asked to specify which of the 1,600 patents are actually essential, InterDigital identified the patents for which declaratory relief [was] sought in this proceeding." See Plaintiffs' Answering Brief in Opposition to Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(B)(1), 12(B)(6) and 12(H)(3) ("Nokia's Answering Brief"), at p. 9.

13. All documents reflecting, referring to, or relating to Nokia's allegation that InterDigital "increased production costs for Nokia and its competitors alike, as manufacturers must either design around InterDigital's portfolios of over 1,600 patents or determine whether its products infringe any patent in that portfolio." See Nokia's Answering Brief at p. 29.

14. All documents reflecting, referring to, or relating to Nokia's allegations that "InterDigital's misleading statement has directly raised the costs of Nokia developing marketing standards – compliant technology and deterred Nokia's customers purchasing Nokia's standards complaint products." See Nokia's Answering Brief at p. 30.

15. All documents reflecting, referring to, or relating to Nokia's allegations that "by falsely representing characteristics of Nokia's products, InterDigital has hurt Nokia's goodwill and reputation." See Nokia's Answering Brief at pp. 30-31.

5

16. All documents reflecting, referring to, or relating to Nokia's allegations that "InterDigital's statement have chilled consumer demand after the expiration of the 1999 License Agreement because consumers are reluctant to buy allegedly infringing products," or otherwise tarnished the reputation of Nokia. See Nokia's Answering Brief at p. 31.

17. All documents reflecting, referring to, or relating to Nokia's allegations that "InterDigital's threats to the entire mobile industry have, for many manufacturers like Nokia, raised development costs, elicited considerable attorneys' fees, and chilled consumer demand." See Nokia's Answering Brief at p. 31.

18. All documents reflecting Nokia's document retention policies adopted or in place between 1990 and the present.

19. All documents reflecting, referring to, or relating to any opinion of counsel that Nokia may have received or requested for any patent(s) in InterDigital's Patent Portfolio.

20. All documents reflecting, referring to, or relating to any analyses of InterDigital's Patent Portfolio.

21. All non-privileged documents reflecting, referring to, or relating to whether any Nokia 3G Product infringes any claim of any patent in InterDigital's Patent Portfolio.

22. All documents and/or correspondence between Nokia and any standards setting body, reflecting, referring to, or relating to any of the patents in InterDigital's Patent Portfolio.

23. All documents reflecting, referring to, or relating to any communications between Nokia and any third-party in which any statement was made with respect to (1) the alleged applicability of any patent in InterDigital's Patent Portfolio, or (2) any statement or assertion by InterDigital regarding InterDigital's Patent Portfolio.

24. All documents reflecting, referring to, or relating to the meaning of "essential" and/or "essential patent" and/or "essential IPR" as that term is applied to 3G Standards or 3G Products.

25. All documents reflecting, referring to, or relating to the appropriate analysis that must be undertaken to determine whether a patent is essential or potentially essential to 3G Standards.

26. All documents reflecting, referring to, or relating to InterDigital's statements made in promotion or advertising of InterDigital's Patent Portfolio.

27. All documents reflecting, referring to, or relating to the value of Nokia's goodwill or reputation from 1990 to the present.

28. All documents reflecting, referring to, or relating to Nokia's diminished goodwill or reputation from 1990 to the present which you claim resulted from statements made by InterDigital.

29.  All documents where Nokia or any third-party described licenses with InterDigital as "insurance."

30.  All documents reflecting, referring to, or relating to any damages Nokia is claiming in this lawsuit.

31.  All documents reflecting, referring to, or relating to diminished or decreased 3G Product sales to any of Nokia's customers or potential customers that you claim resulted from statements made by InterDigital.

32.  A list of all of Nokia's 3G Product customers.

33.  All organizational charts sufficient to identify your research and development, testing, design, patent activities, management, engineering, production, manufacturing, licensing, sales and marketing, technical services, and distribution functions from 1990 to the present time, including the names and titles of all professional and managerial employees in such areas.

34.  All documents evidencing due diligence, analyses, or similar work performed prior to entering into license agreements involving 3G technology, products, standards or patents.

35.  All documents reflecting, referring to, or relating to Nokia's analysis of any Nokia patent declared as an essential patent for any 3G Standard.

36.  All documents reflecting, referring to, or relating to Nokia's efforts to determine that its 3G patents are technologically or commercially essential.

37.  All documents reflecting, referring to, or relating to FRAND that Nokia has produced or received in the Prior Nokia Patent Litigation.

38.  All documents reflecting, referring to, or relating to FRAND that Nokia has provided to or received from the European Union.

39.  All documents reflecting, referring to, or relating to FRAND that Nokia has provided to or received from the United States Federal Trade Commission.

40.  All documents reflecting, referring to, or relating to FRAND that Nokia has provided to or received from the 3G Standard Setting Body.

41.  All documents reflecting, referring to, or relating to licensing practices that Nokia has provided or received in the Prior Nokia Patent Litigation.

42.  All documents reflecting, referring to, or relating to licensing practices that Nokia has provided to or received from the European Union.

43.  All documents reflecting, referring to, or relating to licensing practices that Nokia has provided to or received from the United States Federal Trade Commission.

7

44. All documents reflecting, referring to, or relating to licensing practices that Nokia has provided to or received from the 3G Standard Setting Body.

45. All documents reflecting, referring to, or relating to the meaning of the term "essential patent" and/or the term "essential IPR" and/or the term "essential" that Nokia has produced or received in the Prior Nokia Patent Litigation.

46. All documents reflecting, referring to, or relating to the meaning of the term "essential patent" and/or the term "essential IPR" and/or the term "essential" that Nokia has provided to or received from the European Union.

47. All documents reflecting, referring to, or relating to the meaning of the term "essential patent" and/or the term "essential IPR" and/or the term "essential" that Nokia has provided to or received from the United States Federal Trade Commission.

48. All documents reflecting, referring to, or relating to the meaning of the term "essential patent" and/or the term "essential IPR" and/or the term "essential" that Nokia has provided to or received from the 3G Standard Setting Body.

49. All documents reflecting, referring to, or relating to capping, limiting, or reducing cumulative royalties on patents reading on 3G Products including, without limitation, any agreement between or among you and any other person or persons to cap, limit or reduce cumulative royalties on patents reading on 3G Products, and all communications related to capping, limiting or reducing cumulative royalties on patents reading on 3G Products.

50. All documents reflecting, referring to, or relating to capping, limiting, or reducing cumulative royalties on patents reading on 3G Standards including, without limitation, any agreement between or among you and any other person or persons to cap, limit or reduce cumulative royalties on patents reading on 3G Standards, and all communications related to capping, limiting or reducing cumulative royalties on patents reading on 3G Standards.

51. All documents reflecting, referring to, or relating to the negotiations described in that certain article in *The Register* by Drew Cullen dated November 6, 2002 titled, "Gang of Four set W-CDMA royalty cap," at http://www.theregister.co.uk/2002/11/06/gang_of_four_set_wcdma/.

52. All documents reflecting, referring to, or relating to antitrust or competition law implications of capping, limiting or reducing cumulative royalties on patents reading on 3G Standards and/or 3G Products.

53. All documents reflecting, referring to, or relating to the legality of capping, limiting or reducing cumulative royalties on patents reading on 3G Standards and/or 3G Products including but not limited to any communications with the European Commission, Competition Directorate - General.

54. All non-privileged documents reflecting, referring to, or relating to the Qualcomm/Nokia Litigation.

8

55. All pleadings, discovery responses, expert reports, and documents produced by any party or third party in the Qualcomm/Nokia Litigation.

56. All pleadings, discovery responses, expert reports, and documents produced by any party or third party in the Qualcomm/Nokia Litigation.

57. All documents reflecting, referring to, or relating to any reserves that Nokia has set up or carried to pay claims of infringement related to essential or potentially essential 3G patents.

58. The final response to any request for proposal, price, or quote submitted by Nokia concerning 3G Products, including, without limitation, those submitted by Nokia to cellular service providers.

59. All final executed contracts, purchase orders and invoices for sale of Nokia 3G Products, or related services, upgrades, or support, including, without limitation, those contracts entered into with cellular service providers.

60. All documents reflecting, referring to, or relating to any studies, analyses, evaluations, forecasts, predictions, projections, or estimates relating to the royal rate(s) offered, granted, accepted, charged, or paid for 3G Products or essential 3G patents.

61. All documents reflecting, referring to, or relating to "Project Stockholm"

62. All documents reflecting, referring to, or relating to communications with Broadcom, Texas Instruments, Ericsson, Panasonic, or NEC related essential patents.

63. All documents reflecting, referring to, or relating to communications with Broadcom, Texas Instruments, Ericsson, Panasonic, or NEC related to the ETSI IPR Policy.

64. All documents reflecting, referring to, or relating to communications with Broadcom, Texas Instruments, Ericsson, Panasonic, or NEC related to the declaration of essential patents to ETSI.

65. All documents reflecting, referring to, or relating to the Minimum Change Optimum Impact ("MCOI") proposal made to the ETSI IPR Ad Hoc Group.