## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and　　　　　　　)
NOKIA, INC.,　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )
　　　　Plaintiffs,　　　　　　　　　　 )　　C. A. No. 05-16-JJF
　　　　　　　　　　　　　　　　　　 )
　　v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　 )　　**JURY TRIAL DEMANDED**
INTERDIGITAL COMMUNICATIONS　　　)
CORPORATION and INTERDIGITAL　　　)　　**PUBLIC VERSION**
TECHNOLOGY CORPORATION,　　　　　)
　　　　　　　　　　　　　　　　　　 )
　　　　Defendants.　　　　　　　　　　)

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF ITS
## MOTION TO COMPEL ARBITRATION AND STAY LITIGATION
## PENDING COMPLETION OF ARBITRATION

OF COUNSEL:

D. Dudley Oldham
Linda L. Addison
Richard S. Zembek
Fulbright & Jaworski L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel: (713) 651-5151

Dan D. Davison
Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Tel: (214) 855-8000

Dated: November 17, 2006
Public Version Dated: November 27, 2006
763978 / 28840

Richard L. Horwitz  (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants,*
*Interdigital Communications Corporation and*
*Interdigital Technology Corporation*

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ....................................................................1

SUMMARY OF ARGUMENT ........................................................................................1

RELEVANT FACTUAL BACKGROUND.......................................................................3

     A.    InterDigital Grants Nokia a License; Parties Enter Into Various
          Agreements Including One that Restricts Nokia's "Use" of
          Confidential Information ..........................................................................3

     B.    The Parties Renegotiate; During Negotiations, InterDigital
          Provides Nokia with Confidential Information.............................................5

     C.    Nokia Attempts to "Use" the Confidential Presentations – U.K.
          and Delaware Proceedings.........................................................................6

ARGUMENT AND AUTHORITIES.................................................................................8

I.     ARBITRATION ENJOYS A FAVORED STATUS UNDER THE LAW.............8

II.    THE PARTIES CONTRACTED TO HAVE THE ARBITRATORS DECIDE
       ARBITRABILITY...............................................................................................11

III.   IF REACHED, THE ISSUES RAISED IN INTERDIGITAL'S ARBITRATION
       DEMAND ARE ARBITRABLE AND WITHIN THE SCOPE OF THE
       MASTER AGREEMENT'S BROAD ARBITRATION PROVISION.................17

IV.   INTERDIGITAL IS ENTITLED TO A STAY OF THE LITIGATION PENDING
       COMPLETION OF THE ARBITRATION..........................................................19

CONCLUSION.............................................................................................................21

## TABLE OF AUTHORITIES

### CASES

*Apollo Computer, Inc. v. Berg,*
  886 F.2d 469 (1st Cir. 1989)................................................................................15

*Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.,*
  910 F.2d 1540 (7th Cir. 1990) ............................................................................13

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
  475 U.S. 643 (1986).................................................................................9, 11, 17

*Brayman Constr. Corp. v. Home Ins. Co.,*
  319 F.3d 622 (3d Cir. 2003)................................................................................18

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel,*
  346 F.3d 360 (2d Cir. 2003)................................................................................11

*Corpman v. Prudential-Bache Sec., Inc.,*
  907 F.2d 29 (3d Cir. 1990)....................................................................................9

*Crawford v. West Jersey Health Sys., Inc.,*
  847 F. Supp. 1232 (D.N.J. 1994) ........................................................................20

*Cybertek, Inc. v. Bentley Sys., Inc.,*
  182 F. Supp. 2d 864 (D. Neb. 2002) ...................................................................20

*Dean Witter Reynolds Inc. v. Byrd,*
  470 U.S. 213 (1985)................................................................................................8

*Detroit Med. Ctr. v. Provider Healthnet Servs. Inc.,*
  269 F. Supp. 2d 487 (D. Del. 2003).....................................................................18

*Diamond Waterproofing Sys., Inc. v. 55 Liberty Owners Corp.,*
  793 N.Y.S.2d 831, 826 N.E.2d 802 (2005)..........................................................16

*Digene Corp v. Ventana Med. Sys., Inc.,*
  316 F. Supp. 2d 174 ............................................................................................19

*First Options of Chi., Inc. v. Kaplan,*
  514 U.S. 938 (1995).............................................................................................11

*Flexi-Van Leasing, Inc. v. Through Transport Mut. Ins. Ass'n. Ltd.,*
  108 F. App'x 35, 2004 U.S. App. LEXIS 15352 (3d Cir. 2004)..........................10

*Francisco v. Stolt Achievement MT,*
  293 F.3d 270 (5th Cir. 2002) ..............................................................................10

*Gilmer v. Interstate/Johnson Lane Corp.,*
   500 U.S. 20 (1991)..................................................................................8

*Hamilton v. State Farm Fire & Cas. Co.,*
   270 F.3d 778 (9th Cir. 2001) ..............................................................13

*InterDigital Commc'ns Corp. v. Nokia Corp.,*
   407 F. Supp. 2d 522 (S.D.N.Y. 2005)..................................................6

*John Hancock Life Ins. Co. v. Wilson,*
   254 F.3d 48 (2d Cir. 2001)..............................................................11, 12

*Kitchen v. WSCO Petroleum Corp.,*
   CV-04-828-ST, 2006 U.S. Dist. LEXIS 3738 (D. Or. Jan. 13, 2006) .........................14

*Kroll v. Doctor's Assocs., Inc.,*
   3 F.3d 1167 (7th Cir. 1993) ...............................................................18

*Local 827, Int'l Brotherhood of Elec. Workers, AFL-CIO v.*
   *Verizon N. J., Inc.,*
   458 F.3d 305 (3d Cir. 2006)...............................................................18

*Maross Constr., Inc. v Cent. N.Y. Reg'l Transp. Auth.,*
   66 N.Y.2d 341, 488 N.E.2d 67, 497 N.Y.S.2d 321 (1985).........................16

*Matter of PricewaterhouseCoopers L.L.P. v Rutlen,*
   284 A.D.2d 200, 726 N.Y.S.2d 258  (2001) ........................................16, 18

*Matter of Siegel,*
   389 N.Y.S.2d 800, 358 N.E.2d 484 (1976)................................................16

*McMahan Sec. Co. v. Forum Capital Markets, L.P.,*
   35 F.3d 82 (2d Cir. 1994)..................................................................19

*Medtronic AVE Inc. v. Cordis Corp.,*
   100 F. App'x 865, 2004 U.S. App. LEXIS 8533
   (3d Cir. Apr. 30, 2004)....................................................................14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
   473 U.S. 614 (1985)...........................................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983)............................................................................8, 9

*Nova Hut a.s. v. Kaiser Group Int'l, Inc.,*
   307 B.R. 449 (Bankr. D. Del. 2004) ....................................................18

*Oriental Republic of Uruguay v. Chem. Overseas Holdings, Inc.*,
  05 Civ. 6151 (WHP), 05 Civ. 6154 (WHP),
  2006 U.S. Dist. LEXIS 2261 (S.D.N.Y. Jan. 24, 2006)...............................3, 15, 16, 17

*Pers. Sec. & Safety Sys., Inc. v. Motorola Inc.*,
  297 F.3d 388 (5th Cir. 2002) ..................................................................................9

*Pratta v. Am. Gen. Fin. Servs.*,
  C.A. No. 04-089-JJF, 2004 U.S. Dist. LEXIS 23044
  (D. Del. Nov. 5, 2004) .........................................................................................17

*Qualcomm Inc. v. Nokia Corp.*,
  No. 2006-1317, 2006 U.S. App. LEXIS 25942 (Fed. Cir. Oct. 20,
  2006) ........................................................................................................3, 11, 12

*Riley Mfg. Co. v. Anchor Glass Container Corp.*,
  157 F.3d 775 (10th Cir. 1998) ..............................................................................19

*Scherk v. Alberto-Culver Co.*,
  417 U.S. 506 (1974)...........................................................................................9, 10

*Shaw Group Inc. v. Triplefine Int'l Corp.*,
  322 F.3d 115 (2d Cir. 2003)................................................................3, 15, 16, 17

*Smith Barney Shearson Inc. v. Sacharow*,
  91 N.Y.2d 39, 689 N.E.2d 884 (1997).................................................................16

*Standard Bent Glass Corp. v. Glassrobots Oy*,
  333 F.3d 440 (3d Cir. 2003).............................................................................10, 11

*Thornburg v. Pak 2000, Inc.*,
  C.A. No. 03-824-JJF, 2004 U.S. Dist. LEXIS 1544
  (D. Del. Feb. 2, 2004) .........................................................................................18

*Trippe Mfg. Co. v. Niles Audio Corp.*,
  401 F.3d 529 (3d Cir. 2005)................................................................................17

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
  No. 01-56742, 46 F. App'x 412, 2002 U.S. App. LEXIS 17746 (9th
  Cir. Aug. 23, 2002) .............................................................................................19

*United States v. Daco Constr., Inc.*,
  38 F. Supp. 2d 1299 (N.D. Okla. 1999)................................................................20

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960)............................................................................................18

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*,
  515 U.S. 528 (1995) ............................................................................................9

*Von Steen v. Musch*,
  3 Misc. 3d 207, 776 N.Y.S.2d 170 (2004) .......................................................16

## FEDERAL STATUTES AND OTHER AUTHORITIES

9 U.S.C. § 202 ..................................................................................................10

9 U.S.C. § 3 ..................................................................................................1, 9, 18, 19

9 U.S.C. § 4 ......................................................................................................1

15 U.S.C. § 1125(a). ..........................................................................................1

28 U.S.C. § 1295 ..............................................................................................13

28 U.S.C. § 1338 ..............................................................................................13

28 U.S.C. § 1338(a) ..........................................................................................13

Federal Arbitration Act, 9 U.S.C.A. § 201 (West 2005) ....................................10

Section 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-08...............................9

American Heritage Dictionary, College Ed. (2d ed.) at p. 94...............................14

Pursuant to 9 U.S.C. §§ 3, 4, and 206, Defendants InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "InterDigital") file this opening brief in support of their motion to compel arbitration and stay litigation pending completion of arbitration, and would show as follows:

### NATURE AND STAGE OF PROCEEDINGS

On January 12, 2005 Nokia Corporation and Nokia Inc. (collectively "Nokia") filed their Original Complaint in this case, seeking: (1) a declaratory judgment of non-infringement and invalidity as to certain patents held by InterDigital; and (2) relief under Section 43 of the Lanham Act (15 U.S.C. § 1125(a)). On December 21, 2005 the Court granted in part and denied in part InterDigital's Motion to Dismiss for Lack of Jurisdiction Over the Subject Matter Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12 (h)(3). The Court dismissed Nokia's invalidity or non-infringement claims, but it Lanham Act claim remained.

Special Master Seitz is appointed to the case for discovery matters. Document production is scheduled to be complete December 29, 2006 pursuant to the Revised Rule 16 Scheduling Order entered April 26, 2006. All fact discovery, including depositions, is scheduled to be completed by February, 15, 2007 and a final pretrial conference is scheduled for November 15, 2007. The parties are currently exchanging documents and scheduling and taking depositions.

### SUMMARY OF ARGUMENT[1]

InterDigital asks the Court to compel the parties' dispute regarding Nokia's intended use of confidential documents to arbitration. To support its Lanham Act claim,

---

[1] All Exhibits referenced herein are contained in the Appendices filed contemporaneously herewith.

Nokia relies on Power Point presentations ("Confidential Presentations") produced by InterDigital as confidential information under a Master Agreement. The Confidential Presentations were presented by InterDigital to Nokia in confidential licensing negotiations in 2002 and 2003. Because ███████████████████ is addressed (and foreclosed) by the parties' Master Agreement, and the Master Agreement contains a ███████████████ Nokia's use of the Confidential Presentations in this litigation must be resolved in arbitration.[2]

If the Court determines that the issue of whether Nokia can use the Confidential Presentations is arbitrable, then discovery and trial of Nokia's Lanham Act claim should be stayed pending arbitration. That is because if the arbitrators determine that Nokia cannot use the Confidential Presentations to advance its Lanham Act claim, then Nokia's Lanham Act claim must be tried (to the extent there is any other statement on which the claim is predicated), without Nokia using the Confidential Presentations to prove its case. If the Court allows Nokia to use the Confidential Presentations before the arbitral tribunal decides the propriety of that use, the Court would usurp the authority of the arbitrators and render meaningless the parties' arbitration agreement. That result would be inimical to arbitration's favored status under the law.

Importantly, as established below, whether this dispute over the use of the Confidential Presentations belongs in arbitration is a matter that the parties entrusted to the arbitrators, not to a court. Therefore, to the extent that there is a dispute about the scope of the arbitration provision, this Court must, under settled law, defer to the

---

[2] On November 16, 2006, InterDigital served the Secretariat of the International Court of Arbitration in Paris, France its Request for Arbitration pursuant to Article 4 of the Rules of the International Chamber of Commerce. (Ex. A hereto).

arbitrators. *See Qualcomm Inc. v. Nokia Corp.*, No. 2006-1317, 2006 U.S. App. LEXIS 25942 (Fed. Cir. Oct. 20, 2006) (Ex. M hereto); *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115 (2d Cir. 2003); *Oriental Republic of Uruguay v. Chem. Overseas Holdings, Inc.*, 05 Civ. 6151 (WHP), 05 Civ. 6154 (WHP), 2006 U.S. Dist. LEXIS 2261 (S.D.N.Y. Jan. 24, 2006) (Ex. N hereto). As explained below, Nokia is estopped to argue otherwise.

## RELEVANT FACTUAL BACKGROUND

**A.  InterDigital Grants Nokia a License; Parties Enter Into Various Agreements Including One that Restricts Nokia's "Use" of Confidential Information**

On January 29, 1999, InterDigital and Nokia entered into a series of related agreements – a Patent License Agreement, a Master Agreement and a ███████████ ██████[3] – pursuant to which InterDigital licensed to Nokia certain of its patented telecommunications technologies and agreed to provide Nokia certain engineering services. The Patent License Agreement gave Nokia access to certain InterDigital technologies, and its term originally ran through December 31, 2006.

Through these agreements, InterDigital licensed Nokia's ███████████ ███████████████████████████ which included Nokia's ████████ ███████████████████████████ Exs. B, C, and D hereto. In return, Nokia agreed to pay InterDigital a fixed royalty payment for the period ending on the earlier of December 31, 2001, or the ████ Project Termination Date ("Period 1"). Nokia also agreed to pay InterDigital additional royalties if certain events occurred for the period commencing upon the termination of Period 1, and ending on December 31, 2006

---

[3] ███████████████████████████████████████
███████████████████

("Period 2"). (Ex. B). In addition, the Patent License Agreement expressly provided that



(Ex. B at § 3.2.1(A)) (emphasis added).

The Master Agreement contains a provision



(Ex. C at § 5.1) (emphasis added). Section 5.3 of the Master Agreement provides:

*Id.* at § 5.3.

Thus, in addition to agreeing

4

█████████████████████████████████

████████████[4]

███████████████████████████████ That provision

provides as follows:



(Ex. C at § 4.1) (emphasis added).

**B.    The Parties Renegotiate; During Negotiations, InterDigital Provides Nokia with Confidential Information**

After 1999, Nokia and InterDigital had numerous discussions which resulted in

the renegotiation of the ████████████████ (Ex. D hereto).  The parties also

met to discuss ███████████████████████████████

████████████████ During meetings held on January 10, 2002 and June 18,

2003, InterDigital provided Confidential Presentations to Nokia to ████████████

---

[4] In 2006, the parties entered into a Settlement Agreement resolving a dispute regarding Nokia's royalty obligation for its sales of 2G TDMA-based products and related litigation matters.  Section 6 of the Settlement Agreement allows ██████████████████



(Ex. E hereto at § 6).

████████████████████████████████████████████████████

███████████████████████████████ (Ex. B). InterDigital labeled the materials

as "Confidential and Proprietary."[5]   Emails preceding these meetings further establish

that the materials provided were confidential and provided as part of InterDigital's efforts

████████████████████████████████████████████████████

████████ (*See* Ex. F hereto) (emails dated October 30, 2001 through July 7, 2003).

### C.     Nokia Attempts to "Use" the Confidential Presentations – U.K. and Delaware Proceedings

In mid-2005, Nokia brought a proceeding in the United Kingdom complaining

that certain InterDigital patents were not essential to the FDD mode of operation set forth

in certain 3G cellular technology industry standards.   InterDigital contested the U.K.

court's jurisdiction.   In defending the U.K. court's exercise of jurisdiction, Nokia filed

witness statements which included as attachments the Confidential Presentations.

InterDigital vigorously objected to Nokia's use of the Confidential Presentations

as it violated the Master Agreement.[6]  On March 30, 2006 the U.K. court determined that

the materials were relevant to the jurisdictional issue but also decided that whether they

---

[5] The parties did not reach agreement on  Nokia's Period 2 royalty obligations, and Nokia's Period 2 obligations on 2G TDMA Subscriber Units and Infrastructure became the subject of an arbitration between the parties in 2005, which resulted in an ICC award in InterDigital's favor.  That award was confirmed in *InterDigital Commc'ns Corp. v. Nokia Corp.*, 407 F. Supp. 2d 522 (S.D.N.Y. 2005).  The parties then settled those disputes.  *See* n. 3, *supra.*

[6] InterDigital filed a proceeding in New York federal district court and obtained an injunction prohibiting Nokia from using the documents unless the U.K. court determined it wanted the documents and the circumstances under which they should be disclosed and the New York district court then determined that disclosure was appropriate.  *See InterDigital Commc'ns Corp. v. Nokia Corp.*, Civil Action No. 1:06-CV-2333-GBD. This case was later dismissed on InterDigital's motion.

could be used by Nokia had to be decided by arbitration consistent with the Master Agreement's arbitration provision. (Ex. G hereto).

On January 12, 2005, Nokia filed its Complaint in this Court against InterDigital alleging a Lanham Act claim.[7]   On June 12, 2006, Nokia submitted its Statement Pursuant to First Discovery Order dated June 30, 2006, which included as exhibits the same Confidential Presentations that Nokia sought to use in the U.K. proceeding.  Nokia subsequently referred to the confidential information – *i.e.* the Confidential Presentations – in its responses to InterDigital's Interrogatories, indicating that it is using them as a basis for its Lanham Act claim. (Ex. H hereto).

Plainly put, Nokia made manifest its intention to *use* the Confidential Presentations to prove its Lanham Act claim.  Therefore, by letter dated August 18, 2006, InterDigital initiated the dispute resolution process contained in Section 4.1 of the Master Agreement.  Pursuant to that process, InterDigital's senior executives met with Nokia executives on November 8, 2006 to attempt to resolve the dispute, but those efforts to reach a resolution failed. (Ex. I hereto; Ex. C) (requiring that notice be sent, that the parties attempt to amicably resolve the dispute and failing a resolution, that senior executives meet to attempt to resolve the dispute).  InterDigital has therefore satisfied all contractual conditions precedent to filing this motion.

---

[7] Nokia's Original Complaint (D.I. #1) contains twenty-one separate counts. Counts one through twenty request declarations of noninfringement and invalidity of certain patents. Count twenty-one alleges violation of the Lanham Act. On December 21, 2005, this Court dismissed Nokia's claims for declaratory relief, leaving the Lanham Act claim as the only claim left in this suit. (D.I. #26).

On October 25, 2006, the U.K. court determined that Nokia could not use the Confidential Presentations in that proceeding unless and until the arbitrators decided that Nokia could. (Ex. J hereto).

On November 15, 2006, InterDigital served the Secretariat of the International Court of Arbitration in Paris, France its Request for Arbitration pursuant to Article 4 of the Rules of the International Chamber of Commerce. (Ex. A).

## ARGUMENT AND AUTHORITIES

### I.    ARBITRATION ENJOYS A FAVORED STATUS UNDER THE LAW

By enacting the FAA, Congress embraced a "statutory policy of rapid and unobstructed enforcement of arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23-24 (1983) (the FAA "is a congressional declaration of a liberal federal policy favoring arbitration"); *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217-18 (1985). The U.S. Supreme Court has held that Congress' "clear intent" was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (recognizing that parties who agree to arbitrate trade the opportunity for review and procedures of the courtroom for the simplicity, informality, and expedition of arbitration). Even the possible preclusive effect of an arbitration award on pending litigation is ***not*** a basis to deny a motion to compel arbitration. *Dean Witter Reynolds Inc.*, 470 U.S. at 222.

To facilitate the move from the courthouse to the favored arbitral forum, Section 3 of the Federal Arbitration Act (the "FAA") provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon

being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, ***shall*** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default with such arbitration.

9 U.S.C. § 3 (emphasis added); *see also Corpman v. Prudential-Bache Sec., Inc.,* 907 F.2d 29, 30 n.1 (3d Cir. 1990) (per curiam).

The Supreme Court has further fostered an arbitration-friendly environment by commanding that arbitration agreements be read as broadly as possible. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Accordingly, "[an] order to arbitrate the particular grievance should not be denied unless it may be said with ***positive assurance*** that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citations omitted) (emphasis added); *Pers. Sec. & Safety Sys., Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002).

The support for recognition and enforcement of arbitral agreements "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). Arbitration agreements touching on international commercial matters is governed by the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), 21 U.S.T. 2517, as implemented by Section 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-08. The strong policy favoring enforcement of agreements falling under the New York Convention is necessary to prevent the frustration of "the orderliness and predictability essential to any international business transaction." *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 538, (1995), quoting *Scherk v. Alberto-Culver Co.*, 417

9

U.S. 506, 516 (1974); *see generally Flexi-Van Leasing, Inc. v. Through Transp. Mut. Ins. Ass'n Ltd.*, 108 F. App'x 35, 2004 U.S. App. LEXIS 15352, at *8, *18 (3d Cir. 2004) (Ex. O hereto) (citing Convention and noting that arbitration is particularly favored with respect to international commercial agreements).

Thus, under the Convention, a district court must compel arbitration when: (1) there is an agreement is in writing to arbitrate the subject of the dispute; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arise out of a legal relationship, whether contractual or not, which is considered as commercial; and (4) a party to the agreement is not an American citizen. *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 (3d Cir. 2003); *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002); *see also* 9 U.S.C. § 202 (defining what constitutes an arbitration award or agreement falling under the Convention). If the answers to these four questions are affirmative, the court "must order arbitration unless it determines the agreement is null and void." *Standard Bent Glass Corp.*, 333 F.3d at 449; *see also Francisco*, 293 F.3d at 273.

Here, each of these four requirements is indisputably satisfied. InterDigital is domiciled in the United States and Nokia is domiciled in Finland. Complaint at ¶¶ 2-3. Each is a signatory to the Convention. United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38, *text reprinted in notes*, Federal Arbitration Act, 9 U.S.C.A. § 201 (West 2005); *Standard Bent Glass Corp.*, 333 F.3d at 449. The arbitration agreement provides for arbitration in New York and the relationship

between the parties is commercial in nature. (Ex. C). Therefore, arbitration must be ordered. *Standard Bent Glass Corp.*, 333 F.3d at 449.

## II.    THE PARTIES CONTRACTED TO HAVE THE ARBITRATORS DECIDE ARBITRABILITY

A threshold issue is who decides arbitrability. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995); *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003) (per curiam) ("prior to compelling arbitration, the district court must first determine . . . [whether] the parties' dispute falls within the scope of the arbitration agreement.").

Just last month, the Federal Circuit confirmed that the "district court should ***first*** inquire as to who has the primary power to decide arbitrability under the parties' agreement." *See Qualcomm Inc. v. Nokia Corp.*, No. 2006-1317, 2006 U.S. App. LEXIS 25942, at * 10 (Fed. Cir. Oct. 20, 2006) (Ex. M) (emphasis added).

Generally, the court decides the issue of arbitrability; however, parties can choose to have arbitrability determined by the arbitrators. *First Options of Chi., Inc.*, 514 U.S. at 944 (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. at 649. Parties who wish to have arbitrability determined by the arbitrators and not the court need only make their intentions "clear and unmistakable." *First Options of Chi., Inc.*, 514 U.S. at 944.

State contract law determines whether a contract contains a "clear and unmistakable" expression that arbitrability is to be decided by the arbitrators. *Id.* In determining whether the parties expressed a clear and unmistakable intent to have arbitrability decided by the arbitrators, courts look to the arbitration agreement ***and*** the arbitration rules the parties agreed would govern. *E.g., John Hancock Life Ins. Co. v.*

11

*Wilson*, 254 F.3d 48, 55 (2d Cir. 2001) (parties may overcome the general rule that the court determines arbitrability by expressly incorporating the provisions of a tribunal that requires questions of arbitrability to be decided by arbitration).

For example, in *Qualcomm, Inc.*, the parties' arbitration provision covered "[a]ny dispute, claim or controversy arising out of or relating to this Agreement, or the breach or validity hereof" and further provided that any such dispute "shall be settled by arbitration in accordance with the arbitration rules of the American Arbitration Association." 2006 U.S. App. LEXIS 25942, at *3. Article 15 of the AAA Rules provides that "[t]he tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id.* at *16. The Federal Circuit held that "the 2001 Agreement, which incorporates the AAA Rules . . . clearly and unmistakably shows the parties' intent to delegate the issue of determining arbitrability to an arbitrator." *Id.* at *17. The district court had refused to compel arbitration; the Federal Circuit reversed.[8]

Significantly, the party making the argument in *Qualcomm* that the arbitrators, and not the court, should decide arbitrability, was Nokia, the very same party which in this case is resisting arbitration. In *Qualcomm*, Nokia argued to the Federal Circuit:

> When parties "clearly and unmistakably" provide for an arbitrator to decide whether an issue is arbitrable, the FAA dictates that courts **must** honor that decision. . . . In the 2001 Agreement, the parties agreed that they would arbitrate all disputes "arising out of or relating to this Agreement . . . in accordance with the arbitration rules of the American Arbitration Association. [] The AAA's International Dispute Resolution Rules, in turn, explicitly grant the arbitrator the authority to determine

---

[8] The Federal Circuit remanded the cause to the district court for a determination of whether a "groundless" exception recognized by applicable California law applied. *Id.* at *22.

arbitrability of disputes. . . . Accordingly, the district court should have
stayed the litigation pending a ruling on that issue from the arbitrator.

(Ex. K hereto at 26-29) (internal citations omitted; emphasis in original). Nokia also
relied on California law, applicable in that case, as support for having arbitrability
decided by arbitrators and not the court. *Id.*

As any appeal in this case will be resolved by the Federal Circuit, *Qualcomm* is of
great significance. 28 U.S.C. §§ 1295, 1338 (Federal Circuit has exclusive jurisdiction
over certain appeals, including those cases where the jurisdiction of the district court is
based, in whole or in part, on 28 U.S.C. § 1338(a); Section 1338 grants original
jurisdiction to the district courts over any civil actions arising under the federal patent
laws.).

Remarkably, Nokia was represented in *Qualcomm* by the same attorneys who
represent Nokia in this proceeding – the attorneys who are now arguing against
arbitration. It is hard to imagine how Nokia or its counsel could advance any principled
argument for a different result in the instant case than was reached, at their vigorous
insistence, in *Qualcomm*. Any attempt by them to do so is precluded by the well settled
doctrine of judicial estoppel. That doctrine empowers the judiciary to protect the
integrity of the judicial process by not allowing a party to proceed on an argument in one
proceeding only to advance the opposite argument in a different proceeding, *i.e.*, from
"playing fast and loose with the courts." *Hamilton v. State Farm Fire & Cas. Co.*, 270
F.3d 778, 782 (9th Cir. 2001); *see also Astor Chauffeured Limousine Co. v. Runnfeldt
Inv. Corp.*, 910 F.2d 1540, 1548 (7th Cir. 1990) (estoppel is even more appropriate where
the incompatible statements are made in two different cases, since "[i]nconsistent
positions in different suits are much harder to justify" than inconsistent pleadings within

13

one suit); *Kitchen v. WSCO Petroleum Corp.*, CV-04-828-ST, 2006 U.S. Dist. LEXIS 3738, at *7-8 (D. Or. Jan. 13, 2006) (Ex. P hereto) (judicial estoppel prevents "the deliberate manipulation of the courts") (internal citations omitted; collecting cases).

Nor can Nokia escape *Qualcomm* by trumpeting any factual distinction. Indeed, the arbitration provisions in this case and in *Qualcomm* are virtually indistinguishable. In *Qualcomm*, the parties agreed to arbitrate "any dispute, claim or controversy arising out of or relating to this Agreement, or the breach or validity hereof." Nokia's arbitration agreement with InterDigital provides that the parties will arbitrate "all disputes arising under this Agreement or under the Related Agreements." (Ex. C at § 4.1). Undoubtedly, "all disputes" covers the same territory as "any dispute, claim or controversy arising out of relating to this Agreement" – it accomplishes the same end with fewer words. *See Medtronic AVE Inc. v. Cordis Corp.*, 100 F. App'x 865, 868, 2004 U.S. App. LEXIS 8533 (3d Cir. Apr. 30, 2004) (Ex. Q hereto) ("when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction . . . . [A] clause providing for the arbitration of all matters "arising from" an agreement overwhelmingly suggests that a given dispute is arbitrable") (internal citations omitted); *see id.* at 869 (noting that the phrase "any controversy" is at least as expansive as the more verbose "any dispute, claim, or controversy").

Stated differently, the "all" in the InterDigital/Nokia agreement is as sweeping as the "any" in the Qualcomm/Nokia agreement. "All" is commonly defined as "the total

entity or extent of," "any, whatsoever," "each and every one" and "each and every thing." AMERICAN HERITAGE DICTIONARY, COLLEGE ED. (2d ed.) at p. 94.[9]

Any argument by Nokia that *Qualcomm* is not controlling because the arbitration provision there incorporated the AAA Rules and the arbitration agreement here incorporates the ICC Rules,[10] would be futile. Article 6, Section 2 of the ICC Rules provides:

> If the Respondent does not file an Answer, as provided by Article 5, or if any party raises one or more pleas concerning the existence, validity or scope of the arbitration agreement, the Court may decide, without prejudice to the admissibility or merits of the plea or pleas, that the arbitration shall proceed if it is *prima facie* satisfied that an arbitration agreement under the Rules may exist. In such a case, any decision as to the jurisdiction of the Arbitral Tribunal shall be taken by the Arbitral Tribunal itself. If the Court is not so satisfied, the parties shall be notified that the arbitration cannot proceed. In such a case, any party retains the right to ask any court having jurisdiction whether or not there is a binding arbitration agreement.

(Ex. L hereto at p. 12-13).

At least three courts have held that ICC's Article 6, Section 2 requires that the arbitrators decide arbitrability, not the court. *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989); *Oriental Republic of Uruguay v. Chem. Overseas Holdings, Inc.*, 2006 U.S. Dist. LEXIS 2261 (S.D.N.Y. 2006) (Ex. N).

---

[9] Nokia should once again be estopped from arguing that the arbitration language in the Master Agreement is not broad. In *Qualcomm*, Nokia argued that abitration provisions which include "arising out of or relating to" language are "'broad and far reaching' as a matter of law." (Ex. K at 30).

[10] (Ex. C at § 4.1) ("the dispute shall be submitted to arbitration . . . in accordance with the then prevailing rules for commercial arbitration of the International Chamber of Commerce (Paris) (hereafter 'ICC').").

Nor can Nokia plausibly argue that *Qualcomm* is not controlling because the agreement in that case specified California law as controlling and here the parties selected New York law. (Ex. C at § 8.3). New York has long favored arbitration. *E.g.*, *Matter of PricewaterhouseCoopers L.L.P. v Rutlen*, 284 A.D.2d 200, 726 N.Y.S.2d 258 (2001); *Maross Constr., Inc. v Central N.Y. Reg'l Transp. Auth.*, 66 N.Y.2d 341, 488 N.E.2d 67, 497 N.Y.S.2d 321 (1985) (arbitration "is now well recognized as an effective and expeditious means of resolving disputes between willing parties desirous of avoiding the expense and delay frequently attendant to the judicial process"); *Matter of Siegel*, 389 N.Y.S.2d 800, 358 N.E.2d 484 (1976); *Von Steen v. Musch*, 3 Misc. 3d 207, 776 N.Y.S.2d 170 (2004).[11]

New York's pro-arbitration policy also extends to permitting arbitrators to decide arbitrability when the parties so choose. *Shaw Group Inc.*, 322 F.3d at 121 (federal and New York law are the same on who decides the issue of arbitrability); *Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 689 N.E.2d 884, 887 (1997).

Two cases representing the perfect storm – New York choice of law clauses and broad arbitration provisions incorporating the ICC – are *Shaw Group Inc.*, 322 F.3d at 121 and *Oriental Republic of Uruguay*, 2006 U.S. Dist. LEXIS 2261 (Ex. N). In both cases, the courts held that the issue of arbitrability was to be determined by the

---

[11] Where, as here, the choice of law provision provides that it governs the validity and interpretation of the agreement, but does not also state that it governs enforcement of the agreement, then defenses to enforcement presents a question for the arbitrators and not the court. *Diamond Waterproofing Sys, Inc. v. 55 Liberty Owners Corp.*, 793 N.Y.S.2d 831, 826 N.E.2d 802, 806 (2005) (where parties agreed that New York law would govern the contract, the issue of timeliness of the arbitration demand would be determined by the arbitrators and not the court); *see also Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 689 N.E.2d 884, 889 (1997) ("While a choice of law clause incorporates substantive New York principles, it does not also pull in conflicting restrictions on the scope of the authority of arbitrators").

arbitrators. *Shaw Group Inc.*, 322 F.3d at 121-22; *Oriental Republic of Uruguay*, 2006 U.S. Dist. LEXIS 2261, at *21-23 (collecting cases) (Ex. N).

Simply stated, no distinction can be forged between *Qualcomm*, *Shaw Group Inc.*, *Oriental* and the instant case that has any footing. Accordingly, InterDigital's motion to compel the issue of the use of the Confidential Presentations in this litigation to arbitration should be granted and the litigation stayed.

**III.    IF REACHED, THE ISSUES RAISED IN INTERDIGITAL'S ARBITRATION DEMAND ARE ARBITRABLE AND WITHIN THE SCOPE OF THE MASTER AGREEMENT'S BROAD ARBITRATION PROVISION**

In the unlikely case that this Court concludes that arbitrability is an issue for the Court to decide, an order compelling to arbitration the issue of whether Nokia can "use" the Confidential Presentations is required, and a stay of the litigation pending the arbitration is likewise necessary.

As this Court is aware, a motion to compel arbitration calls for a two-step inquiry. The Court must decide whether: (1) a valid agreement to arbitrate exists and; (2) the particular dispute falls within the scope of that agreement. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *Pratta v. Am. Gen. Fin. Servs.*, C.A. No. 04-089 JJF, 2004 U.S. Dist. LEXIS 23044, at *4-5 (D. Del. Nov. 5, 2004) (Ex. R hereto). Here, there is no dispute that the Master Agreement contains an arbitration provision. The only possible dispute is its scope.

The issue of Nokia's "Use" of the Confidential Presentations should be arbitrated. As noted above, courts cannot deny a request to arbitrate unless "it may be said with positive assurance" that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *AT&T Techs., Inc.*, 475 U.S. at 650

(citations omitted); *see also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960); *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *Matter of PricewaterhouseCoopers L.L.P.*, 726 N.Y.S.2d at 259 (under FAA, any ambiguity in scope of arbitration provision properly resolved in favor of arbitration).

This Court itself has granted motions to compel arbitration, even when doing so was a "close call." *E.g., Nova Hut a.s. v. Kaiser Group Int'l, Inc.*, 307 B.R. 449, 457 (Bankr. D. Del. 2004) (presumption in favor of arbitration mandated that the case be arbitrated); *Thornburg v. Pak 2000, Inc.*, C.A. No. 03-824-JJF, 2004 U.S. Dist. LEXIS 1544 (D. Del. Feb. 2, 2004) (Ex. S hereto) (compelling arbitration).

This presumption in favor of arbitrability is particularly forceful when, as here, the arbitration provision is broad. *Brayman Constr. Corp.*, 319 F.3d at 625; *accord Local 827, Int'l Bhd. of Elec. Workers, AFL-CIO v. Verizon N. J., Inc.*, 458 F.3d 305 (3d Cir. 2006) (providing examples of narrowly crafted arbitration clauses which expressly limit arbitrable issues); *Detroit Med. Ctr. v. Provider Healthnet Servs. Inc.*, 269 F. Supp. 2d 487 (D. Del. 2003) (where broad arbitration clause was limited by other provisions in contract pertaining to arbitration, arbitration would not be compelled).

Moreover, arbitration does not require that the plaintiff's claim itself be arbitrable; rather the FAA merely requires that an issue in a case be subject to arbitration. 9 U.S.C. § 3. *Kroll v. Doctor's Assocs., Inc.*, 3 F.3d 1167, 1171 (7th Cir. 1993). (Nokia made this precise argument to the Federal Circuit). (Ex. K at 21.)

InterDigital is entitled to an order compelling to arbitration the issue of whether Nokia can use the Confidential Presentations to advance its Lanham Act claim. Use of the Confidential Presentations is addressed by the Master Agreement. A dispute has arisen over whether the Master Agreement's ███████████████████ ███████████ extends to judicial proceedings. The ████████████ provision is sufficiently expansive to include that issue within its scope. Therefore, arbitration of that issue is required.

## IV.    INTERDIGITAL IS ENTITLED TO A STAY OF THE LITIGATION PENDING COMPLETION OF THE ARBITRATION

Once a defendant establishes the existence of a valid arbitration clause and that the parties' dispute falls within its scope, the district court must compel arbitration. 9 U.S.C. § 3 (where issue is referable to arbitration, the court "**shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement") (emphasis added); *see also McMahan Sec. Co. v. Forum Capital Mkts., L.P.*, 35 F.3d 82, 85-86 (2d Cir. 1994) (under FAA, district court has no discretion).

Once the Court determines that Nokia's use of the Confidential Presentations is arbitrable a stay of the entire case is appropriate. *See, e.g., United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, No. 01-56742, 46 F. App'x 412, 2002 U.S. App. LEXIS 17746 (9th Cir. Aug. 23, 2002) (Ex. T hereto) (noting although decision to stay entire action is matter of discretion, expanding stay to nonarbitrable claims appropriate where arbitrable claims predominate or where outcome of nonarbitrable claims depend on arbitrator's decision); *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 785 (10th Cir. 1998); *Digene Corp. v. Ventana Med. Sys., Inc.* 316 F. Supp. 2d 174, (staying litigation

pending arbitration in the interest of judicial economy); *Cybertek, Inc. v. Bentley Sys., Inc.*, 182 F. Supp. 2d 864, 871-72 (D. Neb. 2002) (collecting cases and ruling that entire action should be stayed pending arbitration because arbitrable and nonarbitrable claims rested upon common questions of fact and arbitrator's decision could be determinative of nonarbitrable claims); *United States v. Daco Constr., Inc.*, 38 F. Supp. 2d 1299, 1303-06 (N.D. Okla. 1999) (granting motion to stay pending arbitration with regard to plaintiff's arbitrable claims as well as plaintiff's non-arbitrable Miller Act claim because it would "foster[] judicial efficiency"); *Crawford v. West Jersey Health Sys., Inc.*, 847 F. Supp. 1232, 1243 (D.N.J. 1994) (where significant overlap exists between issues, the proper course is to stay the entire action, pending arbitration of the arbitrable claims).

It is difficult to imagine how this litigation could proceed simultaneously with the arbitration unless Nokia is willing to drop its contention that the Confidential Presentations are probative of its Lanham Act claim. To date, Nokia has been unwilling to do so, and has instead advanced disingenuous arguments in an attempt to avoid it confidentiality and arbitration obligations.

## CONCLUSION

InterDigital requests that the issue of Nokia's use of the Confidential Presentations be compelled to arbitration. In addition, InterDigital requests that the litigation be stayed pending completion of the arbitration. InterDigital further requests all other relief to which it may be justly entitled.

OF COUNSEL:

D. Dudley Oldham
Linda L. Addison
Richard S. Zembek
Fulbright & Jaworski L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel: (713) 651-5151

Dan D. Davison
Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Tel: (214) 855-8000

Dated: November 17, 2006
Public Version Dated: November 27, 2006
763978 / 28840

POTTER ANDERSON & CORROON LLP


By:  /s/ David E. Moore
    Richard L. Horwitz  (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19801
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendants,*
*Interdigital Communications Corporation and*
*Interdigital Technology Corporation*

21

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on November 27, 2006, the attached

document was hand delivered to the following person(s) and was electronically filed with

the Clerk of the Court using CM/ECF which will send notification to the registered

attorney(s) of record that the document has been filed and is available for viewing and

downloading:

Jack B. Blumenfeld
Julia Heaney
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347

I hereby certify that on November 27, 2006, I have Electronically Mailed the

documents to the following:

Peter Kontio
Patrick J. Flinn
Gardner S. Culpepper
Keith E. Broyles
Randall L. Allen
Lance Lawson
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA  30309-3424
pkontio@alston.com
pflinn@alston.com
gculpepper@alston.com
keith.broyles@alston.com
rallen@alston.com
llawson@alston.com

By:  /s/ David E. Moore
   Richard L. Horwitz
   David E. Moore
   Hercules Plaza, 6th Floor
   1313 N. Market Street
   Wilmington, Delaware 19899-0951
   (302) 984-6000
   rhorwitz@potteranderson.com
   dmoore@potteranderson.com

713935