IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOKIA CORPORATION and NOKIA INC., | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | C.A. No. 05-16 (JJF) |
| INTERDIGITAL COMMUNICATIONS CORPORATION and INTERDIGITAL TECHNOLOGY CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DECISION ON PLAINTIFFS' MOTION FOR DECLARATION
THAT DOCUMENTS ARE DISCOVERABLE AND
DEFENDANTS' CROSS MOTION TO STAY DISCOVERY
PENDING RESOLUTION OF ARBITRATION PROCEEDINGS**

Jack B. Blumenfeld and Julia Heaney of MORRIS, NICHOLS, ARSHT & TUNNELL, for Plaintiffs, Nokia Corporation and Nokia, Inc.

Richard L. Horwitz and David E. Moore of POTTER ANDERSON & CORROON, LLP for Defendants, InterDigital Communications Corporation and Interdigital Technology Corporation

Collins J. Seitz, Jr., Special Master

**PROCEDURAL HISTORY**

This is a discovery dispute in a Lanham Act case. On September 1, 2006, Plaintiffs Nokia Corporation and Nokia, Inc., (collectively "Nokia") filed a Motion for Declaration that Documents are Discoverable ("Motion for Declaration"). Nokia seeks a ruling that two technical presentations produced during discovery by the Defendants, InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "InterDigital"), need not be returned to InterDigital, and can be subject to discovery in the present action, consistent with the Protective Order entered on July 13, 2006 ("Protective Order").

On September 5, 2006, InterDigital filed a Cross Motion to Stay Discovery Relating To Statements Made During Confidential Licensing Presentations Pending Resolution of Arbitration Proceedings (the "Motion to Stay"). InterDigital asks for a limited stay of discovery while it proceeds with arbitration over the permitted use of the technical presentations at issue in Nokia's Motion for Declaration.

On September 15, 2006, Nokia submitted a response in opposition to InterDigital's Motion to Stay, and on September 22, 2006, InterDigital submitted a reply in support of its Motion to Stay. On October 13, 2006, the Special Master heard argument on both motions.

After consideration of the parties' submissions and argument, for the reasons set forth below, InterDigital's Motion to Stay is granted, and Nokia's Motion for Declaration is denied.

## BACKGROUND

### A. The 1999 Master Agreement

Nokia and InterDigital have each been involved in research and development efforts for wireless communication technology. As part of their collaborative efforts, in 1999, Nokia and InterDigital entered into three related agreements – the TDD Development Agreement, the Patent License Agreement, and a Master Agreement. The three agreements arose from negotiations between Nokia and InterDigital for the development of the next generation of wireless technology. Nokia and InterDigital sought to work together on research and development, to cross-license the developed technology, and cross-license patents and patent applications relating to the technology.[1]

Although the parties did not provide the Special Master with copies of the TDD Development Agreement or the Patent License Agreement, it appears from the Master Agreement that it acts as the umbrella under which the other agreements operate. The Master Agreement contains payment terms, and also contains standard provisions addressing consideration (Article 3), dispute

---

[1] Master Agreement, pp. 1-2 (Ex. C to Motion to Stay).

resolution (Article 4), proprietary information (Article 5), and termination (Article 7).

Relevant to the instant dispute, the Master Agreement also contains a "confidentiality provision" that limits disclosure and use of confidential information of each party. Article 5, Section 5.1 provides as follows:

> 5.1  Protection of Confidential Information. Except as otherwise provided in this Agreement or the Related Agreements, InterDigital and Nokia each agree not to disclose or make available to any third person the other's confidential information, or confidential information created in the TDD Project (regardless of the creator or owner of such information), or the contents of this Agreement and the Related Agreements without the express written consent of the disclosing party. The party receiving confidential information shall use such confidential information only as necessary to exercise its rights or perform its obligations under this Agreement and shall not circulate confidential information within its own organization except to employees with a specific need to know such confidential information for such purposes.

The Master Agreement also contains a broad arbitration provision. According to Section 4.1, "all disputes arising under" any of the three related agreements must be submitted to the mediation and arbitration procedures contained in the Master Agreement.

**B.   The Presentations**

In January, 2002, InterDigital began discussions with Nokia about entering into a new patent license agreement to extend beyond the January 1, 2007

expiration date of the existing agreements.[2] As part of the negotiations, InterDigital gave Nokia a "presentation," marked confidential, reviewing InterDigital's overall wireless communication patent portfolio, as well as patents relating to the next generation 3G technology (the "January 2002 Presentation").[3] In June, 2003, InterDigital gave a similar but longer confidential presentation to Nokia on the same subject matter (June 2003 Presentation") (collectively, the "Presentations").[4]

### C. Disclosure of the Presentations during Discovery

On June 30, 2006, Nokia attached the Presentations to its statement submitted as required by the First Discovery Order. On August 16, 2006, in response to Nokia's First Set of Requests for Production, InterDigital produced to Nokia the Presentations. The Presentations produced in discovery were the same presentations attached to Nokia's statement, except that InterDigital placed document identification numbers on each page.

Two weeks later, at the August 29-30, 2006 deposition of InterDigital's 30(b)(6) designee, InterDigital demanded the return of the Presentations, and claimed that they were subject to the attorney client privilege and had been inadvertently produced. InterDigital thereafter withdrew its claim of privilege, and

---

[2] Motion for Declaration at 2.
[3] Ex. A to Motion For Declaration.
[4] Ex. B to Motion For Declaration.

also withdrew its request that Nokia return the Presentations. Instead, InterDigital filed its present motion seeking a stay of discovery relating to the Presentations until arbitration proceedings are concluded under the Master Agreement.

### D.  The UK and New York Proceedings

In addition to the Delaware litigation, Nokia also brought a proceeding in July 2005 against an InterDigital subsidiary, InterDigital Technology Corporation ("IDT"), in the High Court of Justice, Chancery Division, Patents Court in the United Kingdom (the "UK Proceeding").[5] Although the dispute involved in the UK Proceeding is not entirely clear from the record, the parties agree that in March, 2006, InterDigital moved to dismiss the UK Proceeding. As part of the motion to dismiss briefing, Nokia attempted to rely upon the Presentations to support its argument against dismissal.

InterDigital responded by filing an action in the United States District Court for the Southern District of New York. The complaint has not been made of record, but as part of the New York litigation, InterDigital filed a motion for a temporary restraining order ("TRO"), seeking a court order prohibiting Nokia from disclosing or using the confidential information in the UK Proceeding, pending the conclusion of arbitration proceedings that had not, as of that date, been initiated.

---

[5] Motion to Stay at 4.

On March 24, 2006, the New York district court granted a temporary restraining order, precluding Nokia from disclosing or circulating the Presentations except as permitted by the Master Agreement. The district court also enjoined Nokia from disclosing or circulating the Presentations in the UK Proceedings "unless and until (i) the London Court shall have issued an order directing such disclosure and then only to the extent of such order, or (ii) another judge of this court shall have issued an order amending or dissolving this Order."[6] On March 29, 2006, the temporary restraining order was kept in place, but was modified to enjoin disclosure of the Presentations without an order from both the New York district court and the UK court.[7]

On March 31, 2006, the New York district court vacated the temporary restraining order and dismissed the case without prejudice, following the agreement of the parties that Nokia could use the Presentations solely to support its opposition to the motion to dismiss.[8]

E.  **Arbitration Proceedings**

On August 18, 2006, InterDigital initiated arbitration proceedings under the Master Agreement by sending Nokia a notice of dispute letter.[9] By the terms of the Master Agreement, if the parties did not resolve the dispute within 30 days of the

---

[6] Ex. D to Motion to Stay.
[7] Ex. E to Motion to Stay.
[8] Exs. B-C to Sept. 15 Nokia Reply.
[9] Ex. A. to Motion to Stay.

notice letter, senior executives of each party were required to meet and discuss the dispute. According to a November 13, 2006 letter to the Special Master, senior executives of InterDigital and Nokia met on November 8, 2006, but were unable to resolve the dispute.

### F.   The Parties' Positions

Nokia argues that the Presentations are relevant to the Lanham Act claims in this case, are not protected by any privilege, and therefore need not be returned to InterDigital. It also claims that a private contract between the parties cannot shield relevant information from the judicial process. Because InterDigital produced the Presentations in the litigation, Nokia claims that they were disclosed "outside" the Master Agreement and therefore are not governed by the Master Agreement. Nokia argues further that the confidentiality provisions of the Master Agreement were superseded by an April 2006 Settlement Agreement between the parties. The 2006 Settlement Agreement allegedly permits Nokia to disclose the Presentations as part of the instant litigation. Finally, Nokia contends that even if the Master Agreement controls the disclosure and use of the Presentations, the "court order" provision of the Master Agreement permits disclosure in this case.

In response to Nokia's Motion for Declaration, and in support of its Motion to Stay, InterDigital argues that a stay of discovery should be granted limited to the Presentations, and Nokia should be prohibited from using, disclosing, or relying on

the statements, until the arbitration is concluded.[10] InterDigital claims that the Presentations were made during confidential licensing negotiations between the parties, and Nokia is now attempting to use them to support its Lanham Act claims in violation of the restrictions on use contained in the Master Agreement.[11] Because the Master Agreement contains a provision requiring that any dispute arising out of the Master Agreement be resolved through the procedures set forth in the Master Agreement, InterDigital claims that any discovery relating to the Presentations should be stayed until the use of the Presentations can be decided according to the procedures of the Master Agreement.[12]

## DISCUSSION

### A.  InterDigital's Motion to Stay

In Section 4.1 of the Master Agreement, Nokia and InterDigital agreed to resolve "all disputes arising under" the Master Agreement and the related agreements according to the dispute resolution provisions contained in the Master Agreement. The Master Agreement is a contract involving international commerce, and is therefore governed by the Federal Arbitration Act. 9 U.S.C. §§ 1, 2 (2004). A broad arbitration provision like § 4.1 creates a presumption of arbitrability for issues arising under the Master Agreement. *ADR/JB, Corp. v.*

---

[10] *Id.* at 3.
[11] *Id.* at 2.
[12] Motion to Stay at 2.

*MCY III, Inc.*, 299 F.Supp.2d 110, 114 (E.D. N.Y. 2004). If there is any ambiguity about whether an issue was intended to be arbitrated, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Looking within the four corners of the Master Agreement, the dispute raised by InterDigital falls squarely within § 4.1 of the Master Agreement. Nokia intends to use the Presentations to support its Lanham Act claims, and has also sought discovery related to the Presentations. Whether Nokia's intended use of the Presentations would violate § 5.1 of the Master Agreement qualifies as a dispute "arising under" the Master Agreement, and therefore should be decided through the contractually-agreed dispute resolution process.

Nokia argues that under federal law, private parties cannot by contract deprive the federal court of relevant non-privileged information such as the Presentations. The cases cited by Nokia, however, are clearly distinguishable from the instant case. In those cases, the parties attempted to rely on the confidential nature of the documents, or asserted a contractual confidentiality agreement, to resist disclosure to a third party. *See Westinghouse Elec. Corp. v. Republic of the Phillipines*, 951 F.2d 1414, 1426 (3d Cir. 1991)(disclosure of information to government on agreement of confidentiality did not prohibit third party access to the information); *In re Columbia/HCA Healthcare Corp. Billing*

*Practices Litig.*, 293 F.3d 289, 313 n.3 (6th Cir. 2002)(same); *Constand v Cosby*, 229 F.R.D. 472, 481 n.11 (E.D. Pa. 2005)(confidentiality invoked in an attempt to shield information from public review); *Sonnino v. University of Kansas Hosp. Authority*, 2004 WL 769325 at *3 (D. Kan.)(confidential settlement agreement invoked in an attempt to preclude discovery of its details by third party); *Burda Media, Inc. v. Blumenberg*, 1999 WL 413469 at *3 (S.D.N.Y.), superseded on other grounds by *Johnson Matthey, Inc. v. Research Corp.*, 2002 WL 31235717 at *2 (S.D.N.Y.)(same).

Here, Nokia is a party to the contract with InterDigital, that InterDigital is attempting to enforce against Nokia. The contractual term at issue addresses the "use" that can be made of the confidential Presentations – InterDigital is not seeking to enforce a confidentiality obligation. Assuming InterDigital prevails in the arbitration proceedings, nothing in federal law prevents a court from enforcing a voluntary agreement between two parties restricting the use in future litigation of confidential information exchanged between the parties.

B. **Nokia's Motion for Declaration**

Nokia's arguments center on the applicability of the Master Agreement to the Presentations. Under New York law, and case law under the Federal Arbitration Act, where the parties agree to a broad arbitration provision, the arbitration panel decides all issues that relate to the main agreement. *Louis Dreyfus*

*Negoce S.A., v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001) (internal citation omitted) ("When parties use expansive language in drafting an arbitration clause, presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated..."). Whether the Presentations come within the disclosure and use provisions of the Master Agreement, and whether the 2006 Agreement of the parties superseded § 5.1 of the Master Agreement are issues to be decided by the arbitration panel. Therefore, a stay of discovery is appropriate, limited to the Presentations, until the arbitration proceedings are concluded.

Alternatively, if it is necessary to consider the merits of Nokia's arguments, I find that the express language of § 5.1 of the Master Agreement covers not only confidential information exchanged as part of the TDD Project, but also covers the disclosure of either party's confidential information unrestricted as to subject matter. The Master Agreement provides that "InterDigital and Nokia each agree not to disclose or make available to any third person the other's confidential information...." There is no dispute that the Presentations were marked confidential and continue to maintain their confidentiality under the Protective Order. Therefore, confidential information exchanged between the parties relating to the Presentations falls within the use limitation of § 5.1 of the Master Agreement.

I also find that, at most, the 2006 Settlement Agreement would have altered the disclosure restrictions of the Master Agreement, but did not supersede the restrictions on use. The 2006 Settlement Agreement addressed the parties' dispute regarding Nokia's royalty obligations for sales of 2G TDMA-based products and related litigation matters. As part of the 2006 Settlement Agreement, Nokia and InterDigital "acknowledge[d] all pre-existing obligations of confidentiality...and agree[d] that they continue to be bound thereby in accordance with their terms."[13] Although the Master Agreement contained a provision allowing either party to "disclose" information in a "Proceeding" between the parties, the "information" referred to in this provision is information relating to the 2006 Settlement Agreement, not confidential information unrelated to the 2006 Settlement Agreement where the confidentiality obligations were reaffirmed.

Furthermore, when the agreement is reviewed as a whole, it becomes clear that ¶ 6 was intended to address only confidentiality issues, and not issues of the proper "use" of confidential information in a Proceeding between the Parties. Instead, the "use" issue was addressed in a separate paragraph of the 2006 Settlement Agreement, and does not refer to prior confidential information exchanged by the parties. See ¶ 4(e) ("Use of this Agreement").[14]

---

[13] 2006 Settlement Agreement, ¶ 6.
[14] Nokia also argues that the Protective Order provisions somehow supersede the Master Agreement. As with the 2006 Settlement Agreement, however, the Protective Order is aimed at

Finally, Section 5.5 of the Master Agreement provides that "the parties may disclose confidential information…if required by…court order." Nokia argues that the Court should simply order disclosure of the Presentations under the Master Agreement, eliminating the dispute over use of the confidential information. This standard contract language, however, typically contemplates disclosure pursuant to subpoenas issued by third parties. It was not intended to address the use of confidential information in a dispute between the parties to the agreement.[15] Perhaps more significantly, what Nokia asks the Court to do, is to ignore a freely-negotiated restriction on use provision in an agreement between two highly sophisticated commercial parties. InterDigital should not be deprived of the benefit of its bargain.

## CONCLUSION

InterDigital's Motion to Stay limited to the Presentations is granted. Nokia's Motion for Declaration is denied. The parties shall provide monthly status reports on the progress of arbitration proceedings.

Dated: December 1, 2006

_____
Special Master

---

protecting the confidentiality of information produced in litigation, and contains no provision superseding or modifying either party's rights under a separate agreement restricting use of the confidential information.

[15] This interpretation also squares with the other language of the same provision. If information is disclosed pursuant to court order, the party who controls the confidential information must be consulted about its disclosure. This provision has no real meaning in a dispute between the parties to the agreement.