# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOKIA CORPORATION and<br>NOKIA, INC., | )<br>)<br>) | C. A. No. 05-16-JJF |
| Plaintiffs, | )<br>)<br>) | **JURY TRIAL DEMANDED** |
| v. | )<br>) | |
| INTERDIGITAL COMMUNICATIONS<br>CORPORATION and INTERDIGITAL<br>TECHNOLOGY CORPORATION, | )<br>)<br>)<br>) | **PUBLIC VERSION** |
| Defendants. | )<br>) | |

## BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

OF COUNSEL:

D. Dudley Oldham
Linda L. Addison
Richard S. Zembek
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel: (713) 651-5151

Dan D. Davison
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Tel: (214) 855-8000

Dated: December 1, 2006
Public Version Dated: December 6, 2006

Richard L. Horwitz  (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants,*
*Interdigital Communications*
*Corporation and Interdigital Technology*
*Corporation*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION AND NATURE AND STAGE OF PROCEEDING ........................... 1

SUMMARY OF ARGUMENT ................................................................................ 4

STATEMENT OF FACTS ...................................................................................... 5

ARGUMENT ....................................................................................................... 6

I.      Summary Judgment Standards ................................................................. 6

II.     InterDigital Is Entitled To Summary Judgment on Nokia's Lanham Act Claim ........................................................................................... 7

      A.    Congress and the Courts Have Limited the Type of Statements Which Can Support a Valid Lanham Act Claim .......... 7

      B.    Nokia's Lanham Act Claim Fails Because as a Matter of Law, the Statements at Issue Do Not Qualify as Commercial Speech or Commercial Promotion ............................. 9

            1.    As a Matter of Law, Mandatory Statements to the Government Do Not Constitute Commercial Speech or Commercial Promotion ................................................. 12

            2.    As a Matter of Law, InterDigital's Statements to the Press Are Not Commercial Speech and Do Not Qualify as Commercial Promotion ..................................... 13

            3.    As a Matter of Law, Statements Made During Private Negotiations Are Not Commercial Speech or Commercial Promotion ................................................. 18

            4.    As a Matter of Law, InterDigital's Statements to ETSI Are Not Actionable Under the Lanham Act ............. 19

      C.    If Reached, Nokia's Lanham Act Claim Fails for the Separate Reason That it is Predicated on Statements of Opinion, Not Statements of Fact ............................................ 21

            1.    The ETSI Statements Are Statements of Opinion ............. 24

            2.    All of the SEC Statements Are Statements of Opinion ................................................................. 26

            3.    The Vast Majority of the Press Statements Are Statements of Opinion ......................................... 29

      D.    The Statute of Limitations Precludes Nokia From Relying on Any Statement Made Before January 11, 2002 ........................ 32

CONCLUSION ................................................................................................... 34

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Alfred Dunhill Ltd. v. Interstate Cigar Co.,*
   499 F.2d 232 (2d Cir. 1974)...................................................................................7

*Allen v. Howmedica Leibinger, Inc.,*
   197 F. Supp. 2d 101 (D. Del. 2002), *aff'd,*
   54 Fed. App'x 697 (Fed. Cir. 2003) (per curiam) ....................................................8

*Alphamed Pharms. Corp. v. Arriva Pharms., Inc.,*
   391 F. Supp. 2d 1148 (S.D. Fla. 2005) ...................................................................10

*Am. Italian Pasta Co. v. New World Pasta Co.,*
   371 F.3d 387 (8th Cir. 2005) .................................................................................22

*Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.,*
   820 F. Supp. 1072 (N.D. Ill. 1993) ........................................................................18

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)................................................................................................6

*BellSouth Adver. & Publ'g Corp. v. Lambert Publ'g,*
   45 F. Supp. 2d 1316 (S.D. Ala. 1999)....................................................................10

*Board of Trs. of State Univ. of N.Y. v. Fox,*
   492 U.S. 469 (1989)..............................................................................................14

*Boule v. Hutton,*
   328 F.3d 84 (2d Cir. 2003).............................................................11, 14, 15, 16

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)................................................................................................6

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
   173 F.3d 725 (9th Cir. 1999) ...........................................................................10, 22

*Conopco, Inc. v. Campbell Soup Co.,*
   95 F.3d 187 (2d Cir. 1996).....................................................................................32

*Cytyc Corp. v. Neuromedical Sys., Inc.,*
   12 F. Supp. 2d 296 (S.D.N.Y. 1998)......................................................................26

*Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.,*
   441 F. Supp. 2d 695 (M.D. Pa. 2006) ....................................................................11

*E.I. DuPont De Nemours & Co. v. Millennium Chems., Inc.,*
    C.A. No. 97-237-SLR, 1999 WL 615164 (D. Del. Aug. 2, 1999)........................32

*Eli Lilly & Co. v. Roussel Corp.,*
    23 F. Supp. 2d 460 (D.N.J. 1998) ...........................................................11, 12, 13

*Enzo Life Scis., Inc. v. Digene Corp.,*
    295 F. Supp. 2d 424 (D. Del. 2003)....................................................8, 11, 15, 17

*Ericsson, Inc. v. InterDigital Commc'ns Corp.,*
    418 F.3d 1217 (Fed. Cir. 2005)...........................................................................2

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,*
    314 F.3d 48 (2d Cir. 2002)................................................................................11

*First Health Group Corp. v. BCE Emergis Corp.,*
    269 F.3d 800 (7th Cir. 2001) ...............................................................11, 18, 19

*Gmurzynska v. Hutton,*
    355 F.3d 206 (2d Cir. 2004) (per curiam)..................................................14, 15, 16

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics,*
    859 F. Supp. 1521 (S.D.N.Y. 1994).....................................................10, 11, 14

*Groden v. Random House, Inc.,*
    61 F.3d 1045 (2d Cir. 1995)..........................................................................22, 25

*Hot Wax, Inc. v. Turtle Wax, Inc.,*
    191 F.3d 813 (7th Cir. 1999) ...............................................................................32

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997)..................................................................23, 25, 29

*In re Nokia Okia Oyj (Nokia Corp.) Sec. Litig.,*
    423 F. Supp. 2d 364 (S.D.N.Y. 2006)....................................................23, 25, 20

*In re Warfarin Sodium Antitrust Litig.*
    C.A. No. MDL 98-1232-SLR,
    1998 U.S. Dist. LEXIS 19555 (D. Del. Dec. 7, 1998), *rev'd on other*
    *grounds*, 214 F.3d 395 (3d Cir. 2000) ......................................................... *passim*

*InterDigital Commc'ns Corp. v. Nokia Corp.,*
    407 F. Supp. 2d 522 (S.D.N.Y. 2005)...................................................................2

*Isco Int'l, Inc. v. Conductus, Inc.*,
   279 F. Supp. 2d 489 (D. Del. 2003),
   *aff'd*, 2005 U.S. App. LEXIS 1709 (Fed. Cir. Feb. 3, 2005) ...................................8

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) ................................................................................32

*Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc
   Rorer Pharms., Inc.*,
   19 F.3d 125 (3d Cir. 1994)........................................................................................8

*Kansas Bankers Sur. Co. v. Bahr Consultants, Inc.*,
   69 F. Supp. 2d 1004 (E.D. Tenn. 1999)................................................................10

*Keytrade USA, Inc. v. Ain Temouchent M/V*,
   404 F.3d 891 (5th Cir. 2005) ..................................................................................1

*Lorillard Tobacco Co. v. Reilly*,
   533 U.S. 525 (2001)...........................................................................................14, 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).................................................................................................6

*Nevyas v. Morgan*,
   309 F. Supp. 2d 673 (E.D. Pa. 2004) ...................................................................11

*Phantom Touring, Inc. v. Affiliated Publ'ns*,
   953 F.2d 724 (1st Cir. 1992)..................................................................................23

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
   227 F.3d 489 (5th Cir. 2000) .....................................................................22, 25, 29

*Podiatrist Ass'n v. La Cruz Azul de P.R., Inc.*,
   332 F.3d 6 (1st Cir. 2003).......................................................................................11

*Porous Media Corp. v. Pall Corp.*,
   201 F.3d 1058 (8th Cir. 2000) ...............................................................................17

*Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*,
   784 F.2d 674 (5th Cir. 1986)..................................................................................22

*Proctor & Gamble Co. v. Haugen*,
   222 F.3d 1262 (10th Cir. 2000) .............................................................................10

*Prof'l Sound Servs., Inc. v. Guzzi*,
   159 Fed. App'x 270 (2d Cir. 2005) ......................................................21, 22, 25, 34

*Radolf v. Univ. of Conn.,*
    364 F. Supp. 2d 204 (D. Conn. 2005) ..................................................................13

*Sandoz Pharms. v. Richardson-Vicks, Inc.,*
    902 F.2d 222 (3d Cir. 1990).................................................................................26

*Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.,*
    401 F.3d 123 (3d Cir. 2005)..................................................................................32

*Sports Unlimited, Inc. v. Lankford Enters., Inc.,*
    275 F.3d 996 (10th Cir. 2002) .......................................................................11, 18

*Synygy, Inc. v. Scott-Levin, Inc.,*
    51 F. Supp. 2d 570 (E.D. Pa. 1999) ....................................................................11

*Tao of Sys. Integration v. Analytical Servs. & Materials, Inc.,*
    299 F. Supp. 2d 565 (E.D. Va. 2004) ..................................................................10

*Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan,*
    439 F. Supp. 2d 337 (D. Del. 2006)........................................................................6

*Uline, Inc. v. JIT Packaging, Inc.,*
    437 F. Supp. 2d 793 (N.D. Ill. 2006) ..............................................................23, 25

*United States v. Edge Broad. Co.,*
    509 U.S. 418 (1993).......................................................................................11, 14

*Zenith Elecs. Corp. v. Exzec, Inc.,*
    182 F.3d 1340 (Fed. Cir. 1999)....................................................................8, 9, 21

## RULES, STATUTES

FED. R. CIV. P. 54(d) ......................................................................................................34

FED. R. CIV. P. 56(c) ........................................................................................................6

15 U.S.C. § 1117(a) .......................................................................................................34

15 U.S.C. § 1125............................................................................................... *passim*

28 U.S.C. § 1919............................................................................................................34

35 U.S.C. § 285..............................................................................................................34

D. Del. LR 54.1(a)(1)..................................................................................................34

10 Del. C. § 8106 .....................................................................................................32

**MISCELLANEOUS**

134 Cong. Rec. 31,851 (Oct. 19, 1988) ....................................................................14

3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
    § 27:56 (4th ed. 2006)..................................................................................22, 29

3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
    § 27:96 (4th ed. 2006)..........................................................................................22

3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
    § 27:109 (4th ed. 2006)........................................................................................22

## INTRODUCTION AND NATURE AND STAGE OF PROCEEDING[1]

This is a dispute between Plaintiffs Nokia Corporation and Nokia, Inc. (collectively "Nokia"), global leaders in the design, manufacture, and supply of mobile handset and infrastructure products (Complaint ¶ 2), and Defendants InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "InterDigital"), developers of wireless technology and product platforms for more than 30 years. In 1999, Nokia entered into a Patent License Agreement with InterDigital concerning 2G and 3G digital wireless technology and a development agreement concerning certain 3G digital wireless technology. *See generally* Complaint ¶ 12.

On January 12, 2005, Nokia filed a Complaint for Declaratory Judgments of Patent Invalidity and Noninfringement and Violations of the Lanham Act Relating to 3G Mobile Phone Technology (hereafter "Complaint"). At the time Nokia filed this lawsuit, Nokia was a licensee of InterDigital's 2G and 3G patented technology. However,

---

[1] After exhausting contractually required attempts to resolve its dispute with Nokia regarding the use of certain confidential licensing presentations described herein, on November 16, 2006, InterDigital initiated an arbitration proceeding with the International Chamber of Commerce ("I.C.C.") to resolve Nokia's intended use of the confidential licensing presentations. On November 17, 2006, InterDigital filed with this Court a Motion to Compel Arbitration and Stay Litigation Pending Completion of Arbitration (D.I. 75). This Motion for Summary Judgment and Brief in Support is filed subject to, and without waiving, InterDigital's Motion to Compel Arbitration and Stay Litigation Pending Completion of Arbitration. The arguments set forth in InterDigital's Summary Judgment motion and this brief are distinct from any issue to be decided by the I.C.C. arbitration panel, and therefore, as a matter of case management should be considered even while and after the Court decides InterDigital's motion to stay. Moreover, by filing its summary judgment motion subject to its motion to compel arbitration, InterDigital has not waived its right to compel arbitration or to obtain a stay of the litigation pending arbitration. *See generally Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 898 (5th Cir. 2005) (filing defensive summary judgment motion does not waive right to compel arbitration).

InterDigital and Nokia were involved in a pending I.C.C. arbitration initiated by Nokia involving past and future royalty payments due under their Patent License Agreement.[2]

In its Complaint filed in this Court, Nokia originally sought a declaratory judgment that certain claims of InterDigital's patents are invalid and that Nokia does not infringe certain claims of those patents. Complaint, 8-34 (D.I. 1). Nokia also alleged that InterDigital violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)). *Id.* at 34-35. On December 21, 2005, the Court dismissed all of Nokia's claims except its Lanham Act claim. *See* Memorandum Opinion at 13 (D.I. 25).

By Order dated March 22, 2006, the Court referred discovery disputes to a Special Master, the Honorable Collins J. Seitz, Jr. On April 26, 2006, the Court entered a Revised Scheduling Order in which it ordered that (1) all discovery is to be completed by February 15, 2007 and (2) no case dispositive motion can be filed before August 5, 2007, without leave from the Court. *Id.* at ¶¶ 6, 9.

Following certain discovery disputes between the parties, on June 12, 2006, the Special Master issued his First Discovery Order requiring Nokia to provide a verified response regarding Paragraph 143 of its Complaint, which alleges that "InterDigital has repeatedly made public statements that its patent portfolio covers the practice of 3G wireless phone systems and the sale of 3G compliant products." Specifically, the Special Master ordered that Nokia:

---

[2] The majority of the three member I.C.C. panel entered an award that resulted in Nokia being liable to InterDigital for approximately $250 million in royalty payments. Nokia's motion to vacate the arbitration was denied and InterDigital's motion to confirm the award was granted. *InterDigital Commc'ns Corp. v. Nokia Corp.*, 407 F. Supp. 2d 522 (S.D.N.Y. 2005); *see also Ericsson, Inc. v. InterDigital Commc'ns Corp.*, 418 F.3d 1217 (Fed. Cir. 2005) (holding that district court abused its discretion in granting Nokia's motion to intervene in the litigation for the purpose of reinstating orders vacated pursuant to settlement between InterDigital and Ericsson).

[I]dentify separately (a) each public statement that it relies upon for this allegation, (b) the date of the public statement, and (c) the identity of anyone who made the statement. For each public statement, Nokia shall also provide a detailed response why each statement is false.

Ex. A hereto. On June 30, 2006, Nokia served the required verified response, identifying four categories of statements on which it relies for its Lanham Act allegations. *See* Ex. B hereto, Plaintiffs' Statement Pursuant to First Discovery Order.

On November 2, 2006, during a hearing with the Special Master, Nokia made clear its intentions to conduct discovery on approximately 195 patents listed in InterDigital's European Telecommunications Standards Institute ("ETSI") declarations. Ex. C hereto at 32:10-33:21, Transcript of November 2 Hearing Before the Special Master. The Special Master stated that with regard to whether those statements are actionable under the Lanham Act, "it may be prudent to brief the issue to see whether the claim, in fact, is defective or not as alleged in InterDigital's papers." *Id.* at 35:23-36:8. (At the time InterDigital filed its motion to dismiss, it did not know the factual basis of Nokia's Lanham Act claim. Had Nokia pleaded with more particularity, InterDigital would have moved then to dismiss Nokia's Lanham Act claim based on the legal arguments set forth below in addition to the arguments urged in its motion to dismiss.)

InterDigital agrees with the Special Master that it would be prudent to determine now whether Nokia's Lanham Act claim is defective. No amount of additional discovery will permit Nokia to avoid the requested summary judgment because the law demonstrating InterDigital's right to summary judgment is clear. Now that Nokia has identified the statements on which it relies in support of Paragraph 143 of its Complaint,[3]

---

[3] Nokia's Rule 30(b)(6) representative was unable to identify any allegedly actionable statements or categories of statements that formed the basis of Nokia's claim other than

3

InterDigital believes that summary judgment is appropriate on the entirety of Nokia's Lanham Act claim.

## SUMMARY OF ARGUMENT

InterDigital files this motion for summary judgment on Nokia's Lanham Act claim because, as a matter of law, none of the statements that form the basis of Nokia's claim were statements made in commercial advertising or promotion, which is an essential element of a Lanham Act claim. In addition, as a matter of law, none of the statements at issue qualify as "commercial speech," which is also a requirement of a Lanham Act claim.

If reached, Nokia's Lanham Act claim independently fails because the vast majority of statements on which Nokia predicates its Lanham Act claim are mere statements of opinion, not "representations of fact," another required element of a Lanham Act claim. Finally, as a matter of law, Nokia cannot base its Lanham Act claim on statements made more than three years before this lawsuit was filed. As demonstrated below, many of the statements Nokia relies upon were made more than three years before Nokia filed this case and are therefore not actionable.

Accordingly, the small piece of Nokia's case that survived InterDigital's motion to dismiss should now be resolved by summary judgment. There are no material fact issues to be tried by a jury relevant to the issues raised in this motion. Nokia's Lanham

---

those listed in Nokia's written interrogatory responses, nor could he identify why such statements were false or misleading or damaged Nokia. *See* Ex. D hereto at 199:10-201:16; 307:9-25; 308:16-20; 310:9-20; 312:23-316:3; 317:18-318:10; 319:25-323:7, Deposition Transcript of Henry Muir. Therefore, Nokia's written discovery responses contain the universe of allegedly actionable statements in this case. *See* Ex. B at 1-5, Plaintiffs' Statement Pursuant to First Discovery Order; *see also* Ex. E hereto at 6, Plaintiffs' Supplemental Objections and Responses to Defendants' First Set of Interrogatories.

Act claim is foreclosed by settled law.  InterDigital's motion for summary judgment should be granted.

## STATEMENT OF FACTS

As set forth above, days before the 2005 I.C.C. arbitration was to begin on the issue of Nokia's royalty obligation, Nokia filed this lawsuit seeking a declaratory judgment that:  (1) certain claims of various 3G patents owned by InterDigital are invalid; and (2) Nokia does not infringe certain claims of those patents.  Complaint, pp. 8-34 (D.I. 1).  Nokia also alleged that InterDigital violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) by making statements that it held essential 3G patents.  *Id.* at 34-35.  Significantly, Nokia's Complaint does not state with any specificity the particular statements that formed the basis of its Lanham Act claim.

More specifically, in Paragraph 143 of its Complaint, Nokia alleges that "InterDigital has repeatedly made public statements that its patent portfolio covers the practice of 3G wireless phone systems and the sale of 3G compliant products."  On June 12, 2006, the Special Master ordered Nokia to identify the public statements on which it based its Lanham Act claim.  *See* First Discovery Order (D.I. 55).  On June 30, 2006, Nokia served the statement required by the Special Master's order and identified statements that fall into the following four categories:

(1)    statements made in filings with the Securities and Exchange Commission (the "SEC Statements");

(2)    statements on InterDigital's website and through various news outlets (the "Press Statements");

(3)    statements made to the European Telecommunications Standardization Institute ("ETSI") (the "ETSI Statements"); and

(4)    statements made to Nokia during confidential licensing discussions (the "Confidential Licensing Statements").

*See* Ex. B at 1-5, Plaintiffs' Statement Pursuant to First Discovery Order. (As an aid to the Court, the specific statements that Nokia contends are actionable under the Lanham Act are in a chart attached as Exhibit F and are discussed in detail below.)  Therefore, even though discovery in this case is ongoing, pursuant to the Special Master's Order, Nokia has identified all of the statements on which its Lanham Act claim is based. Accordingly, this motion for summary judgment is timely.

## ARGUMENT

### I.    Summary Judgment Standards

Summary judgment is proper when the pleadings and evidence show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*, 439 F. Supp. 2d 337, 339 (D. Del. 2006).  The mere existence of a factual dispute will not defeat a properly supported motion for summary judgment; there must be a genuine factual dispute as to a material fact. *Anderson*, 477 U.S. at 247-48; *Toy*, 439 F. Supp. 2d at 339. The movant may satisfy its summary judgment burden by showing there is an absence of evidence to support the non-movant's claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant shows there is an absence of evidence to support the non-movant's claims, the burden shifts to the non-movant to show "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

6

**II.    InterDigital Is Entitled To Summary Judgment on Nokia's Lanham Act Claim**

    **A.    Congress and the Courts Have Limited the Type of Statements Which Can Support a Valid Lanham Act Claim**

The Lanham Act is a remedial statute. Nonetheless, the statute "does not have boundless application . . . but is limited to false advertising as that term is generally understood." *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974). Stated differently, the Lanham Act is not elastic; it has a specifically defined purpose tailored to the conduct that it proscribes. It is not a statute that provides a remedy to those who desire to challenge patents but lack standing to raise such challenges.

Section 43(a) of the Lanham Act provides in relevant part:

(1)    Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of *fact*, or false or misleading representation of *fact*, which –

    (A)    is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    (B)    *in commercial advertising or promotion*, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (emphasis added). While Nokia's Complaint fails to specify on which subsection of Section 43(a) it relies, the gravamen of Nokia's claim is that InterDigital misrepresented that it holds patents that are essential to the 3G standard. The

Federal Circuit has held that such a claim falls within Subsection (B) of Section 43(a)(1).

*See Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1347-48 (Fed. Cir. 1999).

To establish a claim under Subsection (B), Nokia must plead and prove each of

the following elements:

(1)    the defendant made a false or misleading statement of fact in ***commercial advertising or promotion*** about the plaintiff's goods or services;

(2)    the statement actually deceives or is likely to deceive a substantial segment of the intended audience;

(3)    the deception is material in that it is likely to influence purchasing decisions;

(4)    the defendant caused the statement to enter interstate commerce; and

(5)    the statement results in actual or probable injury to the plaintiff.

*Id.* at 1348 (emphasis added); *Isco Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 504

(D. Del. 2003), *aff'd*, 2005 U.S. App. LEXIS 1709 (Fed. Cir. Feb. 3, 2005) (unreported

cases are attached in Ex. G hereto).[4]

---

[4] This Court's formulation of the test is slightly different. *See Enzo Life Scis., Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 427 (D. Del. 2003) ("Under the Lanham Act a plaintiff must allege that: (1) defendant made false or misleading statements as to its product, or those of the plaintiff; (2) there was actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception was material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.") (citing *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)); *Allen v. Howmedica Leibinger, Inc.*, 197 F. Supp. 2d 101, 107-08 (D. Del. 2002), *aff'd*, 54 Fed. App'x 697 (Fed. Cir. 2003) (per curiam) (same).

When, as here, a plaintiff's claim under Section 43(a) of the Lanham Act is based on a defendant's alleged misrepresentations regarding the scope of its patents and the applicability of its patents to the plaintiff's products, the plaintiff must prove a sixth element – that the defendant made the alleged misrepresentations in "bad faith." *See, e.g., Zenith Elecs. Corp.*, 182 F.3d at 1353; *Enzo Life Scis., Inc. v. Digene Corp.*, 295 F.

Summary judgment is proper on Nokia's Lanham Act claim because, as a matter of law, the SEC, Press, ETSI, and Confidential Licensing Statements do not constitute statements of fact made in commercial advertising or promotion. *See* Section II(B)(1) below. That these statements do not satisfy these criteria as a matter of law is case dispositive.

Even if Nokia could satisfy the commercial advertising or promotion requirement, which it cannot, InterDigital would nonetheless be entitled to summary judgment because (1) many of the statements on which Nokia relies are not statements of fact but are non-actionable statements of opinion; and (2) many of the individual statements are barred by the statute of limitations. *See* Sections II(C) and (D) below.

### B. Nokia's Lanham Act Claim Fails Because as a Matter of Law, the Statements at Issue Do Not Qualify as Commercial Speech or Commercial Promotion

The first requirement of a claim under Section 43(a)(1)(B) of the Lanham Act is that the allegedly false statements giving rise to the claim must have been made in "commercial advertising or promotion . . . or commercial activities." 15 U.S.C. § 1125(a)(1)(B); *see also Zenith Elecs. Corp.*, 182 F.3d at 1347-48. When the statement at issue appears in an advertisement as that term is generally understood, courts have no difficulty finding that this requirement is satisfied. However, when the statement falls outside the traditional advertisement context, it may not be as readily apparent whether

---

Supp. 2d at 427. While InterDigital denies that it made any false representations or that it acted in bad faith, those elements are beyond the scope of this motion. In the unlikely event that this motion is denied in part or in full, InterDigital reserves the right to file a motion for summary judgment on other grounds including but not limited to that as a matter of law it did not act in bad faith, and/or a no evidence motion for summary judgment.

the statement meets the statutory condition precedent. Because the statute's text does not provide guidance on the reach of its language, courts have stepped in to fill the vacuum.

The majority of courts apply the test first set forth in *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994), to determine whether a challenged statement constitutes commercial advertising or promotion. *See, e.g.*, *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir. 2000); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734-35 (9th Cir. 1999).[5]

The *Gordon* court reviewed the legislative history and the reasoning of courts across the country. It then synthesized the principles into a four factor test. Under *Gordon*, statements of fact are actionable under the Lanham Act only if they:

(1)    ***qualify as commercial speech***;

(2)    were made by a defendant who is in commercial competition with the plaintiff;

(3)    were made for the purpose of influencing customers to buy the defendant's goods or services; and

(4)    were disseminated sufficiently to the relevant purchasing public.

*Gordon & Breach Sci. Publishers S.A.*, 859 F. Supp. at 1532, 1535-36.[6]

---

[5] *See also Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 391 F. Supp. 2d 1148, 1164 (S.D. Fla. 2005); *Tao of Sys. Integration v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 572 & n.2 (E.D. Va. 2004) (relying on the *Gordon* test and recognizing that the Fourth Circuit has not adopted a test); *Kansas Bankers Sur. Co. v. Bahr Consultants, Inc.*, 69 F. Supp. 2d 1004, 1012-13 (E.D. Tenn. 1999) (adopting the *Gordon* test); *BellSouth Adver. & Publ'g Corp. v. Lambert Publ'g*, 45 F. Supp. 2d 1316, 1323 (S.D. Ala. 1999) ("[This] Court sees no reason to depart from [the *Gordon* court's] definition.").

[6] The Third Circuit has not adopted the *Gordon* test, or any other test, for determining what constitutes commercial advertising and promotion under the Lanham Act. However, district courts in the Third Circuit addressing the issue have adopted the

The first *Gordon* factor is decisive of this case.   As *Gordon* explained, commercial speech in the context of Section 43(a) is speech that "propos[es] a commercial transaction."  *Id.* at 1537-38 (citing and quoting *United States v. Edge Broad. Co.*, 509 U.S. 418, 426 (1993)).   As a matter of law, the statements forming the basis of Nokia's claim under Section 43(a)(1)(B) fail to qualify as commercial speech for the following reasons:

- The SEC Statements are mandatory statements made to the government and therefore do not constitute commercial speech;

---

*Gordon* test.  *See, e.g.*, *Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.*, 441 F. Supp. 2d 695, 706 n.4 (M.D. Pa. 2006); *Nevyas v. Morgan*, 309 F. Supp. 2d 673, 680 (E.D. Pa. 2004); *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 576 (E.D. Pa. 1999); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 480 (D.N.J. 1998); *In re Warfarin Sodium Antitrust Litig.*, 1998 U.S. Dist. LEXIS 19555, at *42 n.13 (D. Del. Dec. 7, 1998), *rev'd on other grounds*, 214 F.3d 395 (3d Cir. 2000).  In fact, this Court itself has relied upon the *Gordon* test.  *See Enzo Life Scis., Inc.*, 295 F. Supp. 2d at 428 (listing the four prongs of *Gordon* test and citing case law explicitly adopting *Gordon*).

The Second Circuit has adopted three of the four *Gordon* prongs, and has not ruled on whether a fourth prong (that the defendant and the plaintiff be competitors) is necessary. *Boule v. Hutton*, 328 F.3d 84, 90-91 (2d Cir. 2003); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56-58 (2d Cir. 2002).  Other Circuits have adopted a variation of the *Gordon* test or like the Third Circuit have not addressed the issue.  The Tenth Circuit has explained that the terms "advertising or promotion" and "commercial" "by their plain, everyday meaning connote *some* level of *public* dissemination of information."  *Sports Unlimited, Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 1005 (10th Cir. 2002).  Recently, the First Circuit held that under any of the Circuit Courts' tests, commercial advertising and promotion "must at a bare minimum target a class or category of purchasers or potential purchasers, not merely particular individuals." *Podiatrist Ass'n v. La Cruz Azul de P.R., Inc.*, 332 F.3d 6, 19 (1st Cir. 2003). The Seventh Circuit has rejected the *Gordon* test, and instead defines "commercial advertising or promotion" narrowly as "a form of promotion to anonymous recipients, as distinguished from face-to-face communication. . . . [and] a subset of persuasion [that relies on] dissemination of prefabricated promotional material."  *See First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803-04 (7th Cir. 2001) ("[I]t is hard to see how statements of [the defendant's] executives and lawyers, made over a conference table in an effort to negotiate a contract, or included in the contract's language, could be called 'commercial advertising or promotion'.").

- The SEC, Press, and ETSI Statements do not propose a commercial transaction and therefore do not constitute commercial speech; and

- The SEC, Press, ETSI, and Confidential Licensing Statements were not made in a commercial advertising or promotion.[7]

### 1. As a Matter of Law, Mandatory Statements to the Government Do Not Constitute Commercial Speech or Commercial Promotion

It is beyond cavil that mandatory statements to governing bodies do not "propose a commercial transaction" and are therefore not commercial speech. Indeed, even if it is commercially motivated, a statement to a governing body is not commercial speech. For example, in *In re Warfarin Sodium Antitrust Litig.*, C.A. No. MDL 98-1232-SLR, 1998 U.S. Dist. LEXIS 19555 (D. Del. Dec. 7, 1998), *rev'd on other grounds*, 214 F.3d 395 (3d Cir. 2000), the defendant allegedly sought to suppress competition from fellow generic drug manufacturers by petitioning the Federal Drug Administration and other governing bodies to impose stricter bioequivalence standards. *In re Warfarin Sodium Antitrust Litig.*, 1998 U.S. Dist. LEXIS 19555, at **41-42. The District Court determined that the statements made to the governing bodies did not propose a commercial transaction, and therefore did not constitute commercial speech. *Id.*

Similarly, in *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 480 (D.N.J. 1998), the court held that a recall notice regarding a drug manufactured by defendants was not commercial advertising or promotion under the Lanham Act, in part, because the notice complied with Federal Drug Administration regulations and did not contain any

---

[7] *See* Motion to Compel Arbitration and Stay Litigation Pending Completion of Arbitration and Brief in Support on file herein (D.I. 75) setting forth InterDigital's arguments in support of arbitrating whether Nokia can use the Confidential Licensing Statements in this proceeding. *See* n.1 *supra.*

promotional materials to detract from the recall statement. If voluntary statements to a governing body do not constitute commercial speech, then it necessarily follows that *required* statements to a governing body certainly cannot qualify as commercial speech.

The SEC Statements on which Nokia relies were statements made in mandatory 10-K and 10-K405 filings with the SEC. *See* Ex. F hereto. The SEC Statements identified by Nokia are all portfolio-based statements and generally state that InterDigital has indicated to standards bodies that it believes it holds patents and patent applications that are essential or potentially essential for implementation of the present 3G standards specifications. *See id.*

Consistent with the holdings and teachings of *In re Warfarin* and *Eli Lilly & Co.*, Nokia therefore cannot rely on statements made in InterDigital's required filings with the SEC as a basis for its Lanham Act claim because, even to the extent they may have had an underlying commercial purpose, those statements do not constitute commercial speech, advertising or commercial promotion as a matter of law. *Eli Lilly & Co.*, 23 F. Supp. 2d at 480; *In re Warfarin Sodium Antitrust Litig.*, 1998 U.S. Dist. LEXIS 19555, at *42 n.13; *see also Radolf v. Univ. of Conn.*, 364 F. Supp. 2d 204, 222-23 (D. Conn. 2005) (holding that submission of an academic research proposal to a government funding agency does not constitute "commercial advertising or promotion," and is not commercial speech).

2.   **As a Matter of Law, InterDigital's Statements to the Press Are Not Commercial Speech and Do Not Qualify as Commercial Promotion**

Similarly, InterDigital's Press Statements that form the basis of Nokia's claims do not propose a commercial transaction and do not constitute commercial speech or qualify as commercial advertising or promotion as a matter of law.

In order to satisfy the first *Gordon* prong, Nokia must demonstrate the statements qualify as "commercial speech." As noted above, the Supreme Court has repeatedly instructed that commercial speech is that which "propose[s] a commercial transaction." *United States v. Edge Broad. Co.*, 509 U.S. at 426; *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 554 (2001) (defining commercial speech as "speech proposing a commercial transaction"); *Board of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 473-74 (1989) (characterizing the proposal of a commercial transaction as "the test for identifying commercial speech"); *see also* 134 Cong. Rec. 31,851 (Oct. 19, 1988) (statement of Rep. Kastenmeier) (reach of section 43(a) "specifically extends *only* to false and misleading speech that is encompassed within the 'commercial speech' doctrine developed by the United States Supreme Court") (emphasis added). Despite Nokia's efforts to forcibly cram InterDigital's press statements into the Supreme Court's commercial speech mold, Nokia simply cannot show that any of these statements satisfy the appropriate standard this Court is bound to follow.

Courts considering whether statements in the press qualify as commercial speech have reached different conclusions based on the content and context of the statements at issue. *See, e.g.*, *Boule v. Hutton*, 328 F.3d 84, 91-92 (2d Cir. 2003) (finding that statements by defendant in news article by reporter did not constitute commercial speech). For example, statements made in certain articles addressing matters of public concern are not actionable under Section 43(a)(1)(B) because courts do not consider those statements as having been made in the context of proposing a commercial transaction. *See Gmurzynska v. Hutton*, 355 F.3d 206, 210-11 (2d Cir. 2004) (per curiam) (finding that statements in industry publication article were not actionable under

the Lanham Act); *Boule*, 328 F.3d at 91-92 (finding non-actionable statements in news article). Such statements cannot serve as the basis to impose liability under the Lanham Act even if they promoted the speaker's commercial interests, or damaged the commercial interests of another party. *See id.* at 91; *see also Gmurzynska*, 355 F.3d at 210 ("[A] journalist's article is not commercial advertising, commercial promotion, or commercial speech.").

In contrast, this Court has determined in the lenient 12(b)(6) context that certain press releases did represent commercial speech where the statements referenced a specific patent and a specific competitor. *See Enzo Life Scis., Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 428 (D. Del. 2003). However, the *Enzo* press releases made reference to a specific patent by number, and one of the releases indicated that Enzo "intends to pursue infringement claims against [its competitor]." *Id.* at 426. Unlike the *Enzo* press releases, the press statements relied upon by Nokia in this case are not patent-specific but fall into two entirely different categories: (1) statements made by InterDigital during the course of interviews or journalistic articles; and (2) general statements describing InterDigital's involvement in patented technology. When these categories are considered in the context of other case law construing similar statements, it is clear that Nokia's reliance on InterDigital's Press Statements as commercial speech is misplaced.

The Press Statements that form the basis of Nokia's Lanham Act claim are listed on pages 3-4 of Plaintiffs' Statement Pursuant to First Discovery Order (Ex. B). Three of the statements on their face fall under the umbrella of cases protecting speech made in articles and used in journalistic publications. In particular, Nokia points to the following statements:

- "InterDigital holds essential [intellectual property rights] in variations of 3G, including FDD, TDD, and CDMA." www.tdscdma-forum.org/EN/zf/yjx.asp (attributing quote to Donald Boles, Senior Vice President and Chief Patent Strategist of InterDigital *from Interview*; dated July 25, 2005) (emphasis added).

- "We have said in a prior press release that we believe that our patents are essential to each of the five specifications under the third generation technology. Therefore anyone practicing that technology is going to have to deal with us." Video *Interview by Bill Griffeth* with Howard Goldberg, President, InterDigital Communications Corp. (Jan. 10, 2000), 2000 WLNR 2850752 (statement by Goldberg) (emphasis added).

- "'InterDigital began saying on Nov. 17 [, 1999] that it holds "patents that are essential to the new IMT-2000 standard," executive vice president Rip Tilden said yesterday.'" Henry J. Holcomb, *InterDigital Soars After U.N. Report a New Wireless-Technology Standard Was Adopted, Philadelphia Inquirer* (Dec. 31, 1999) (emphasis added).[8]

With these statements, Nokia is urging the Court to declare that answers given in response to interview questions and quotes used by journalists in reporting on matters in large market newspapers constitute commercial speech. Such statements are not contemplated as actionable by the Lanham Act, and do not qualify under the case law interpreting the commercial speech requirement under the Lanham Act. *See Boule*, 328 F.3d at 91-92 (distinguishing between reactive statements made in response to interview questions and proactive statements); *see also Gmurzynska*, 355 F.3d at 210 (protecting journalistic forums).

The remaining Press Statements also do not qualify as commercial speech. A close examination of the statements cited by Nokia reveals nothing more than general statements describing the InterDigital company. In fact, most of the statements are contained in press releases announcing an agreement with other companies. Following the description of the agreement, the press releases generally describe both of the

---

[8] As explained in Section II(D) below, Nokia's reliance on many of these statements in support of its Lanham Act claim is barred because of the applicable statute of limitations.

16

companies involved in the agreement. As such, these statements are also unlike the press releases found to be commercial speech in *Enzo* because the statements at issue here do not reference a specific product or patent. *See Enzo Life Scis., Inc.*, 295 F. Supp. 2d at 426. At most, InterDigital's press release statements can be described as referencing its entire patent portfolio, which contains hundreds of patents in the 3G context. Unlike *Enzo*, where the direct competitor was identified, not one of the statements at issue references Nokia. *Id.* Taken together, these differences point to the conclusion that the Press Statements (reactive statements in articles and journalistic publications and general, non-patent specific statements in press releases) relied upon by Nokia cannot qualify as commercial speech. Moreover, unlike *Enzo*, this case is at the summary judgment stage, and therefore the lenient standards applicable to a motion to dismiss are not applicable.

Apparently, Nokia seeks to lead this Court into error by urging the Court to adopt the following proposition: any statement made by InterDigital regarding the essentiality of certain InterDigital patents equates to commercial speech. Yet commercial speech has never been subject to such a sweeping definition. Rather, the test provided by the Supreme Court is that the speech must "propos[e] a commercial transaction." *Lorillard Tobacco Co.*, 533 U.S. at 554. As none of the statements cited by Nokia satisfy this criteria, the statements cannot serve as "commercial advertising or promotion" under the Lanham Act. Thus, summary judgment as to these statements is appropriate. *See Porous Media Corp. v. Pall Corp.*, 201 F.3d 1058, 1059 (8th Cir. 2000) (affirming summary judgment in favor of defendant on grounds that "press releases did not constitute 'commercial advertising or promotion' as required by the Lanham Act").

3. **As a Matter of Law, Statements Made During Private Negotiations Are Not Commercial Speech or Commercial Promotion**

Two statements identified by Nokia as forming, in part, the basis of its Lanham Act claim are contained in private, confidential licensing presentations (the Confidential Licensing Statements) made by InterDigital to Nokia in 2002 and 2003.[9] "[Commercial advertisement or promotion] by their plain, everyday meaning connote *some* level of *public* dissemination of information." *Sports Unlimited, Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 1004-05 (10th Cir. 2002) (emphasis in original) (citing *Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.*, 820 F. Supp. 1072, 1077-78 (N.D. Ill. 1993)). As such, confidential statements made during private negotiations among business executives and lawyers do not constitute statements made in commercial advertising or promotion under the Lanham Act. *See First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 804 (7th Cir. 2001). This is because "advertising is a form of promotion to anonymous recipients, as distinguished from face-to-face communication." *Id.* at 803.

In *First Health Group Corp.*, the plaintiffs brought a claim against the defendants under Section 43(a)(1)(B) of the Lanham Act based on allegedly false statements the defendants made during private contract negotiations between executives and lawyers. *Id.* at 801, 803. The Seventh Circuit noted that an "essential ingredient" of a claim under Section 43(a)(1)(B) is that the statements must have been made in a commercial advertisement or promotion. "In normal usage, an advertisement read by millions (or even thousands in a trade magazine) is advertising, while a person-to-person pitch by an account executive is not." *Id.* at 803-04. As noted in n.6 *supra*, the Seventh Circuit

---

[9] As noted in nn.1 & 8 *supra*, whether Nokia can use the Confidential Licensing Statements in this litigation is the subject of a pending arbitration.

applied the normal usage of the term "advertisement" and concluded that "it is hard to see how statements of [defendant's] executives and lawyers, made over a conference table in an effort to negotiate a contract, or included in the contract's language, could be called 'commercial advertising or promotion'." *Id.* at 804.

Like the plaintiffs in *First Health Group Corp.*, Nokia bases its claim under Section 43(a)(1)(B) in part on the Confidential Licensing Statements, which, as noted above, were statements made by InterDigital in private, face-to-face licensing negotiations with Nokia under the terms of a non-disclosure agreement between the parties. *See* Ex. B at 5, Plaintiffs' Statement Pursuant to First Discovery Order. Nokia urges the Court to determine that statements made in the midst of private, confidential contract negotiations with a single party can serve as the basis to impose liability under the Lanham Act. Such a proposition conflicts with *First Health Group*'s holding that statements made during private negotiations do not constitute statements made in commercial advertisements or promotion. Summary judgment therefore is proper on Nokia's claim under Section 43(a)(1)(B) of the Lanham Act to the extent it is based on the Confidential Licensing Statements because they do not meet the express requirement that the allegedly false statements must have been made in commercial advertising or promotion.

### 4. As a Matter of Law, InterDigital's Statements to ETSI Are Not Actionable Under the Lanham Act

A Delaware District Court has already rejected the notion that statements to entities like ETSI constitute commercial speech. *See In re Warfarin Sodium Antitrust Litig.*, 1998 U.S. Dist. LEXIS 19555, at *42 & n.13. In *In re Warfarin*, now Chief Judge Robinson specifically found that the defendant's communications to the United States

Pharmacopeia ("USP") did not constitute commercial speech. *Id.* ("Plaintiff has not alleged, ***nor could it***, that any statements made to these regulatory bodies proposed a commercial transaction.") (emphasis added). According to USP's website:

> The USP is the ***official public standard-setting authority*** for all prescription and over-the-counter medicines, dietary supplements, and other healthcare products manufactured and sold in the United States. . . . USP's standards are also recognized and used in more than 130 countries. . . . USP is an ***independent***, science-based public health organization. As a self-sustaining ***nonprofit organization***, USP is funded through revenues from the sale of products and services that help to ensure good pharmaceutical care.

Ex. H hereto, About USP—An Overview, http://www.usp.org/aboutUSP/ (last visited November 28, 2006) (emphasis added).

Similar to USP, ETSI is "an independent, non-profit organization, whose mission is to produce telecommunications standards for today and for the future." Ex. H, Who Is ETSI?, http://www.etsi.org/about_etsi/5_minutes/home.htm (last visited November 29, 2006). As USP is officially responsible for all prescription drug standards in the United States, ETSI "is officially responsible for standardization of Information and Communication Technologies (ICT) within Europe." *Id.* ETSI is officially recognized by the European Commission and the European Free Trade Association secretariat. *Id.*

Given the Court's decision in *In re Warfarin*, Nokia's reliance on InterDigital's statements to ETSI is clearly misplaced. Even if Nokia asserts that the ETSI statements were commercially motivated, the decision in *In re Warfarin* stands for the proposition that statements made to an independent, regulatory organization pursuant to that organization's regulatory functions do not "propose a commercial transaction." *In re Warfarin Sodium Antitrust Litig.*, 1998 U.S. Dist. LEXIS 19555, at *42 & n.13.

In sum, none of the statements that form the basis of Nokia's claim were statements made in commercial advertising or promotion, or qualify as commercial speech. Accordingly, InterDigital is entitled to summary judgment on Nokia's Lanham Act claim.

### C. If Reached, Nokia's Lanham Act Claim Fails for the Separate Reason That it is Predicated on Statements of Opinion, Not Statements of Fact

On an independent ground, because the vast majority of statements on which Nokia bases its Lanham Act claim are statements of opinion rather than statements of fact, those statements cannot as a matter of law support Nokia's Lanham Act claim. Therefore, the Court can and should dispose of these claims on summary judgment. *See Prof'l Sound Servs., Inc. v. Guzzi*, 159 Fed. App'x 270, 271-72 (2d Cir. 2005) (affirming dismissal of Lanham Act claim with respect to three statements of opinion and allowing claim to proceed on remaining statement of fact).

As shown in this section, as a matter of law, the vast majority of statements on which Nokia relies in support of its Lanham Act claim are not "representations of fact," which is a statutory prerequisite to a triable Lanham Act claim. Instead, Nokia improperly seeks to impose Lanham Act liability upon InterDigital for expressing opinions with which Nokia disagrees. Statements of opinion, even if wrong, are not actionable under the Lanham Act.

Indeed, the absence of a factual assertion is a complete defense to a claim of the type made here under Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a)(1) (for an actionable claim, Section 43(a) of the Lanham Act requires a "false or misleading representation of *fact*") (emphasis added); *Zenith Elecs. Corp.*, 182 F.3d at 1348. Courts have appropriately directed that "[e]ssential to any claim under section 43(a) of the

Lanham Act is a determination of whether the challenged statement is one of fact--actionable under section 43(a)--or one of general opinion--not actionable under section 43(a)." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495-96 (5th Cir. 2000) (collecting cases); *see also Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir. 2005); *Prof'l Sound Servs., Inc.*, 159 Fed. App'x at 271-72; *Coastal Abstract Serv., Inc.*, 173 F.3d at 731-32 (statement that competitor was "not licensed" implying that a license was required not actionable; statements that purport to interpret a statute or regulation are opinion statements, and not statements of fact particularly when correct application of statute was not then "knowable").

To qualify as a statement of fact, the disputed language must constitute "a specific and measurable claim, capable of being proved false." *Pizza Hut, Inc.*, 227 F.3d at 496; *see generally Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 679 (5th Cir. 1986); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:56 (4th ed. 2006) ("To fall within Lanham Act § 43(a), the misrepresentation must be one of 'fact.' This means that a statement of *opinion* about the nature and quality of one's own goods or services is not within § 43(a).") (emphasis in original); *see id.* § 27:96 (collecting cases); *id.* § 27:109 (noting there is "no such thing as an officially 'wrong' opinion").

Accordingly, under the Lanham Act and other causes of action in which a false representation of fact is a required element, statements communicating subjective beliefs about what "might be" or "may be" represent non-actionable opinions, not actionable statements of facts. *See Coastal Abstract Serv., Inc.*, 173 F.3d at 731-32; *Groden v. Random House, Inc.*, 61 F.3d 1045, 1051-52 (2d Cir. 1995) (agreeing with defamation

22

law principles in considering Lanham Act claim that subjective and imprecise statements are not capable of verification or refutation by means of objective proof) (citing *Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 728 n.7 (1st Cir. 1992)); *Uline, Inc. v. JIT Packaging, Inc.*, 437 F. Supp. 2d 793, 803 (N.D. Ill. 2006) (holding in defamation context the statement that a company "may have trouble" paying its bills was not actionable as a forward-looking opinion that could be neither true or false when made); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1427 (3d Cir. 1997) (Alito, J.) (noting in Rule 10b-5 securities fraud context, which requires statement or omission of fact, that statements of belief have been uniformly rejected by courts as non-actionable).

As discussed below, the statements on which Nokia relies are largely statements of opinion and are therefore not actionable under the Lanham Act. But before discussing the specific statements, it should be noted that Nokia has embraced the very argument InterDigital is advancing when doing so advanced Nokia's interests. In defending itself in a very recent securities fraud class action lawsuit, Nokia argued that statements preceded by "meaningful cautionary language" like "believe" were not "facts" that would subject it to securities fraud liability. *See Memorandum of Law in Support of Defendants' Motion to Dismiss the Consolidated Amended Complaint, In re Nokia Okia Oyj (Nokia Corp.) Sec. Litig.*, No. 04 Civ. 2646 (KMK) (S.D.N.Y. Mar. 8, 2005) (attached as Ex. I hereto); *see also In re Nokia Okia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364 (S.D.N.Y. 2006), for the underlying opinion. After finding no actionable statements, the district court dismissed the claims against Nokia. *See In Re Nokia Okia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d at 380-81, 394, 397-98 (rejecting, among others, statements containing phrases such as "believe" and "expect" as not actionable).

When Nokia's statements of opinion regarding the strength of their products was at issue,

Nokia argued that:

> Nokia's managers were entitled to be hopeful and optimistic about their business and their products. They were even entitled to be wrong. Business decisions require judgments to be made concerning what products to offer, what technologies to emphasize, which customers to concentrate on and a myriad of other interrelated choices. In a free market economy companies are judged on the results of these complicated judgments. But making an erroneous judgment is not securities fraud.

Ex. I at 19. Conveniently, but disingenuously, Nokia now seeks to recast InterDigital's

statements and strip phrases like "believe," "may," and "might" of all meaning.

Motivated by self-interest, Nokia has taken an untenable position regarding the

statements at issue. Nokia's position is contrary to case law and conveniently different

and inconsistent with interpretations Nokia has given to similar language in past judicial

proceedings. Yet despite Nokia's claims, InterDigital's language speaks for itself. When

the specific language is considered, Nokia's efforts to recast these opinions as

representations of fact fail and InterDigital is entitled to summary judgment on each of

the statements that are non-actionable statements of opinion, as demonstrated next.

### 1. The ETSI Statements Are Statements of Opinion

Nokia contends that in two separate declarations filed with ETSI in 2001 and

2004 InterDigital stated *as fact* that certain patents *are* essential to UMTS. *See* Ex. B at

4, Plaintiffs' Statement Pursuant to First Discovery Order. Nokia's characterization of

the content of those statements, however, is wrong. The declarations plainly state that the

signatory and/or its affiliates "has informed ETSI that *it believes* that the IPRs *may be*

*considered essential* to the Standards listed above." *See* Ex. F1 hereto at 1-2 (emphasis

added).

Thus, the ETSI Statements are not, as Nokia contends, affirmative factual representations that the patents and applications *are* essential to UMTS. They are only statements of InterDigital's *belief* that the patents and applications *may be* essential, and therefore are statements of opinion that as a matter of law cannot form the basis of a Lanham Act claim. *See Pizza Hut, Inc.*, 227 F.3d at 495-96; *Prof'l Sound Servs., Inc.*, 159 Fed. App'x at 271-72; *Groden*, 61 F.3d at 1051-52; *Uline, Inc.*, 437 F. Supp. 2d at 803; *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1427; *In re Nokia Okia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d at 380-81, 394, 397-98.

ETSI guidelines and policies further demonstrate that the declarations it requires are merely statements of opinion. ETSI promulgates the WCDMA 3G standards discussed in Nokia's Complaint. The ETSI Guide on Intellectual Property Rights unequivocally states that an ETSI Declaration is a statement of *opinion*:

> Members are obliged to disclose IPRs, *which might be essential* and ETSI is obliged to make these disclosures available to Members. *This disclosure reflects, of course, only an opinion of the Member* and some facts on the IPRs, but the Member is responsible for the content. *Any further opinion* should be added only with the agreement of the Member or to implement a General Assembly decision.

Ex. J hereto at 3.3.3, ETSI IPR Guide (emphasis added).

Even Nokia's Rule 30(b)(6) corporate representative testified that ETSI declarations █████████████████████████████████████████

███████████████████████████████████████████████████████

████████████

Plainly put, the ETSI Declarations are not affirmative assertions of fact that patents are essential to 3G standards. As required by ETSI, a declaration does not identify a "product" that infringes a patent. Instead, a member must provide what is

undisputedly and admittedly "only an opinion" of the declarant that the identified patents "might be essential" to ETSI standards.  Ex. J at 3.2.2, ETSI IPR Guide.  Summary judgment is therefore proper on Nokia's Lanham Act claim based on InterDigital's 2001 and 2004 declarations to ETSI because the declarations contain mere statements of opinion that cannot form the basis of a Lanham Act claim as a matter of law.

### 2.     All of the SEC Statements Are Statements of Opinion

Nokia has identified seven statements from various InterDigital filings with the SEC as grounds for its Lanham Act claim.  However, Nokia failed to cite the SEC Statements in their entirety.  The sufficiency of a Lanham Act claim "is to be judged on the basis of the challenged statements read in their entirety and in context."  *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 300 (S.D.N.Y. 1998) (citing *Sandoz Pharms. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 229-30 (3d Cir. 1990)).  When the complete statements are reviewed, it is clear that all seven SEC Statements relied upon by Nokia are non-actionable statements of opinion.  Furthermore, "savings" language in the SEC filings precludes Nokia from arguing that the statements are factual representations.

For example, Nokia submits in its Statement Pursuant to First Discovery Order that the following March 31, 2005, statement made in an SEC filing is actionable under the Lanham Act:

> We have indicated to the appropriate [standards bodies] that we hold patents and patent applications that are essential for implementation of the present 3G standards in products, and have, in conjunction with such indication, declared that our patented inventions will be available for license under the general principles of fairness, reasonableness and/or non-discrimination.

Ex. B at 1, Plaintiffs' Statement Pursuant to First Discovery Order. The full text of the

paragraph from the SEC filing, however, states as follows:

> Based on our history of invention and our extensive participation in the
> standards bodies, together with the extensive use of our technology
> innovations across different standards, *we believe* that our patent portfolio,
> including patents applied for, is applicable to all of the air interface
> protocols described in the IMT-2000 standards. *We also believe* that we
> *will have* patents essential to new IEEE 802.11 standards currently under
> development. We have indicated to the appropriate [standards bodies] that
> we hold patents and patent applications that are essential for
> implementation of the present 3G standards in products, and have, in
> conjunction with such indication, declared that our patented inventions
> *will be* available for license under the general principles of fairness,
> reasonableness and/or non-discrimination.

Ex. F2 hereto, Mar. 31, 2005 Form 10-K at 8 (emphasis added). Further, the filing

contains the following savings language:

> This Annual Report, including "Item 1. Business" and "Item 7.
> Management's Discussion and Analysis", contains forward-looking
> statements reflecting, among other things, the Company's beliefs and
> expectations as to:...(iv) *our belief* that a number of our inventions are
> essential to the 2G, 2.5G and 3G standards...Although forward-looking
> statements in this Annual Report on Form 10-K reflect the good faith
> judgment of our management, such statements can only be based on facts
> and factors currently known by the Company. Consequently, forward-
> looking statements are inherently subject to risks and uncertainties. We
> caution readers that actual results and outcomes could differ materially
> from those expressed in or anticipated by such forward-looking
> statements. You should not place undue reliance on these forward-looking
> statements, which are only as of the date of this Annual Report.

*See id.* at 18. Similar savings language appears in all of the SEC filings. *See* Ex. F2,

Mar. 15, 2004 Form 10-K at 20; Mar. 31, 2003 Form 10-K at 22; Mar. 29, 2002 Form 10-

K405 at 14; Apr. 2, 2001 Form 10-K405 at 17; Mar. 29, 2000 Form 10-K at 13. The

remaining statements about which Nokia complains are substantially identical non-

actionable statements of opinion, either because the language itself expressly shows that

an opinion and not a fact is being communicated or because the filing containing the

statement had savings language. Those statements are as follows:

> Based on our history of invention and our extensive participation in the standards bodies, together with the extensive use of our technology innovations across different standards, *we believe* that our patent portfolio, including patents applied for, is applicable to all of the air interface protocols described in the IMT-2000 standard. We have indicated to the appropriate standards bodies that we hold patents and patent applications that are essential for implementation of the present 3G standards specifications in products, and have, in conjunction with such indication, declared that our patented inventions will be available for license under the general principles of fairness, reasonableness and/or non-discrimination for each standards body.

Ex. F2, InterDigital Communications Corp. Form 10-K, Mar. 31, 2004 at 6 (emphasis

added).

> Based on our history of invention and our extensive participation in the standards bodies, together with the extensive use of our technology innovations across different standards, *we believe* that our patent portfolio, including patents applied for, is applicable to all of the air interface protocols described in the IMT-2000 standard. We have indicated to the appropriate standards bodies that we hold patents and patent applications that are essential for implementation of the present 3G standards specifications in products, and have, in conjunction with such indication, declared that our patented inventions will be available for license under the general principles for each standards body.

Ex. F2, InterDigital Communications Corp. Form 10-K, Mar. 31, 2003 at 9 (emphasis

added).

> Based on our history of invention and our extensive participation in the standards bodies, together with extensive cross use of technology innovation across different standards, *we believe* we [sic] that our patent portfolio (including patents applied for) is applicable to all of the air interface protocols described in the IMT-2000 standard.  We have indicated to the appropriate standards setting bodies that we hold patents and patent applications that are either essential or commercially important for implementation of the present 3G standards specifications in products, and have, in conjunction with such indication, declared that our patented inventions will be available for license under the general principles for each standards body.

Ex. F2, InterDigital Communications Corp. Form 10-K405, Mar. 29, 2002 at 6 (emphasis added).

> *We believe* that our patent portfolio is, or when applications result in granted patents, will be applicable to all of the air interface protocols described in the IMT-2000 standard. We have indicated to the appropriate standards setting bodies that we hold patents and patent applications that are either essential or commercially important for implementation of the present 3G standards specifications into products.

Ex. F2, InterDigital Communications Corp. Form 10-K405, Apr. 2, 2001 at 5 (emphasis added).

> *We believe* that our patent portfolio is applicable to all of the air interface protocols described in the standard, and we have indicated to the standard setting bodies that we hold patents and patent applications that are either essential or commercially important for 3G products built to present standards specifications.

Ex. F2, InterDigital Communications Corp. Form 10-K, Mar. 29, 2000 at 5 (emphasis added).

A complete reading of each statement demonstrates that InterDigital prefaced each statement with an assertion that it *believes* its patent portfolio is applicable to all of the air interface protocols described in the IMT-2000 3G standard. The statements are therefore non-actionable statements of opinion, and cannot serve as the basis for liability under the Lanham Act as a matter of law. *See Pizza Hut, Inc.*, 227 F.3d at 496; 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:56; *In re Nokia Okia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d at 380-81, 394, 397-98.

### 3.    The Vast Majority of the Press Statements Are Statements of Opinion

Similarly, of the thirteen Press Statements identified by Nokia, the following ten are non-actionable statements of opinion:

29

- "*InterDigital believes that*, in many instances, licenses for *certain* of our patents are required for third parties to manufacture and sell digital cellular products in compliance with TDMA and CDMA-based standards currently in use worldwide." www.InterDigital.com/tech_products_licensing.shtml (emphasis added).

- "InterDigital has a *strong portfolio* of patented technologies covering 2G, 2.5G and 3G standards, which it licenses worldwide." http://www.interdigital.com/press_room_news_archive_detail.jsp?releaseId=547434&cb=1151594870650 (emphasis added).

- "InterDigital supports the evolution of 3G technology through *active participation* in the standards bodies, invention of essential patented technologies, and development of advanced 3G product solutions." http://phx.corporate-ir.net/phoenix.zhtml?c=116582&p=irol-newsArticle&ID=813104 (emphasis added).

- "InterDigital's 3G license with High Tech Computer '*affirms InterDigital's position as a recognized developer and contributor* of essential wireless technologies.'" http://phx.corporate-ir.net/phoenixzhtml?c=116582&p=irol-newsArticle&ID=547419 (emphasis added).

- "[W]e have essential patents . . . and anybody that produces a 3G terminal U.S. device, needs to be licensed under all these essential patents. *So from our perspective*, every manufacturer who produced devices to that standards [sic] needs to license with us." William Merritt, Speech at Bear Stearns Annual Technology Conference (June 12, 2006) (emphasis added).[10]

- "*Panasonic's acknowledgement* that they used our technology was *tantamount to a … statement that our patents are essential.* So it's not that they were making some - doing some particular implementation that lead them into our patents. *It was an acknowledgement by them that, yes InterDigital does hold essential patents.*" *Id.* (Emphasis added).

- "[InterDigital's] *broad portfolio* of essential patents, along with InterDigital's 3G products and technology, *will serve to fuel [InterDigital's] revenue growth as the 3G market emerges.*" www.3Gnewsroom.com/3g_news/jan_02/news_1743.shtml (attributing

---

[10] Notably, this alleged statement was not made until June 12, 2006, nearly a year and half after Nokia filed this lawsuit. Further, the full context of this statement is not clear from the small portion of the speech provided by Nokia. The portion provided does demonstrate, however, that Mr. Merritt is summarizing InterDigital's opinion with respect to its patents and related licensing.

quote to Howard E. Goldberg, President and Chief Executive Officer of InterDigital; dated Jan 16, 2002) (emphasis added).

- InterDigital's **3G licenses** with Matsushita, Sharp and Japan Radio Company "**reflect the industry's recognition of the importance of [InterDigital's] 3G essential patent portfolio.**" www.3Gnewsroom. com/3g_news/jan02/news_1732.shtml (attributing quote to Howard E. Goldberg, President and Chief Executive Officer of InterDigital; dated Jan. 15, 2002) (emphasis added).

- InterDigital is "a **recognized developer and contributor** of essential technology" for 3G. www.3Gnewsroom.com/3g_news/dec_02/news_2867.shtml (attributing quote to William Merritt, President of InterDigital Technology Corp.; dated Dec. 18, 2002) (emphasis added).

- "We have said in a prior press release that **we believe that our patents are essential** to each of the five specifications under the third generation technology. Therefore anyone practicing that technology is going to have to deal with us." Video Interview by Bill Griffeth with Howard Goldberg, President, InterDigital Communications Corp. (Jan. 10, 2000), 2000 WLNR 2850752 (statement by Goldberg) (emphasis added).

Ex. B at 2-4, Plaintiffs' Statement Pursuant to First Discovery Order. None of these statements can serve as the basis to impose liability under the Lanham Act because they are all statements of opinion. Again, many of the statements contain the phrase "we believe," which clearly demonstrates that they are nothing more than expressions of InterDigital's opinion on the subject matter being discussed.

Additionally, many of the Press Releases had savings language similar to that in the SEC filings. *See* Ex. F3 at 3-4 (stating that "Forward-looking statements are subject to risks and uncertainties and actual outcomes could differ materially from those expressed in such forward-looking statements due to a variety of factors including, but not limited to, (i) the market relevance of such acquired technologies . . . (iii) differing interpretations of and changes to standards."). To the extent that articles were published which did not include the savings language, the contents of the articles were determined by, and subject to the control of independent parties not in InterDigital's control and

therefore, there can be no Lanham Act liability. Section 43(a) requires that the defendant, not a third party, "uses" in commerce a false misrepresentation of fact in commercial advertising or promotion. 15 U.S.C. § 1125(a).

**D.    The Statute of Limitations Precludes Nokia From Relying on Any Statement Made Before January 11, 2002**

The Lanham Act does not specify a statute of limitations, therefore courts generally look to the most applicable statute of limitations from the forum state for guidance. *See Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 135 (3d Cir. 2005) ("Courts commonly use the appropriate statute of limitations as a guideline in claims for false advertising under § 43(a) of the Lanham Act.") (citing *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187 (2d Cir. 1996); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813 (7th Cir. 1999); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002)). The Court therefore must turn to Delaware's statute of limitations for the applicable statute of limitations period to apply to Nokia's Lanham Act claim.

Delaware's statute of limitations provides that "no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force . . . shall be brought after the expiration of 3 years from the accruing of the cause of such action. . . ." 10 Del. C. § 8106. This Court therefore applies a three-year statute of limitations period to claims brought under the Lanham Act. *See E.I. DuPont De Nemours & Co. v. Millennium Chems., Inc.*, C.A. No. 97-237-SLR, 1999 WL 615164, at *4 (D. Del. Aug. 2, 1999).

Nokia filed this lawsuit on January 12, 2005. Any statement that was made before January 11, 2002, is barred by the statute of limitations. Accordingly, the following statements are therefore all barred.

32

***Barred ETSI Statements.***  Nokia relies on the following statements InterDigital

made to ETSI in April 2001:

> IPR Information Statement: "In accordance with the ETSI IPR Policy,
> Article 4.1, I hereby inform ETSI that....with reference to ETSI Standard
> No. UMTS it is my belief that the IPRs listed in Annex 2 are, or are likely
> to become, Essential IPRs in relation to that Standard."

> IPR Declaration Statement: "The SIGNATORY has notified ETSI that it
> is the proprietor of IPRs listed in Annex 2 and has informed ETSI that it
> believes that the IPRs may be considered ESSENTIAL to the Standards
> listed above."

Ex. F, *see also* Ex. E at 6, Plaintiffs' Supplemental Objections and Responses to

Defendants' First Set of Interrogatories.

***Barred SEC Statements.***  Nokia relies on the following two statements

InterDigital made to the SEC, which were made on March 29, 2000, and April 2, 2001,

respectively:

> We believe that our patent portfolio is, or when applications result in
> granted patents, will be applicable to all of the air interface protocols
> described in the IMT-2000 standard. We have indicated to the appropriate
> standards setting bodies that we hold patents and patent applications that
> are either essential or commercially important for implementation of the
> present 3G standards specifications into products.

> We believe that our patent portfolio is applicable to all of the air interface
> protocols described in the standard, and we have indicated to the standard
> setting bodies that we hold patents and patent applications that are either
> essential or commercially important for 3G products built to present
> standards specifications.

Ex. F; *see also* Ex. B at 2, Plaintiffs' Statement Pursuant to First Discovery Order.

***Barred Press Statements.***  Nokia relies on the following two statements

InterDigital made to the press on January 10, 2000, and December 31, 1999:

> "We have said in a prior press release that we believe that our patents are
> essential to each of the five specifications under the third generation
> technology.  Therefore anyone practicing that technology is going to have
> to deal with us." Video Interview by Bill Griffeth with Howard Goldberg,

33

President, InterDigital Communications Corp. (Jan. 10, 2000), 2000 WLNR 2850752 (statement by Goldberg).

"InterDigital began saying on Nov. 17 [, 1999] that it holds 'patents that are essential to the new IMT-2000 standard,' executive vice president Rip Tilden said yesterday." Henry J. Holcomb, InterDigital Soars After U.N. Report a New Wireless-Technology Standard Was Adopted, Philadelphia Inquirer (Dec. 31, 1999).

Ex. F; *see also* Ex. B at 4, Plaintiffs' Statement Pursuant to First Discovery Order.

Accordingly, InterDigital is entitled to summary judgment that Nokia cannot rely on the above statements to support its Lanham Act claim because to the extent those statements are actionable, a point InterDigital does not concede, limitations bars Nokia's claim. *See generally Prof'l Sound Servs., Inc.*, 159 Fed. App'x at 271-72.

## CONCLUSION

For the reasons stated above, Defendants InterDigital Communications Corporation and InterDigital Technology Corporation respectfully request that this Court (1) grant InterDigital's motion for summary judgment and (2) enter a final judgment that Plaintiffs Nokia Corporation and Nokia, Inc. take nothing against InterDigital.

If this Court grants such relief in full or in part, InterDigital further requests that this Court – pursuant to 35 U.S.C. § 285, 15 U.S.C. § 1117(a), 28 U.S.C. § 1919, Federal Rule of Civil Procedure 54(d), D. Del. LR 54.1(a)(1), and any other applicable law – award InterDigital its reasonable attorney's fees and costs in this litigation. InterDigital expressly reserves the right to submit separate and additional briefing in support of its entitlement to such attorney's fees and costs.

InterDigital further requests all other relief to which it may be entitled.

Respectfully submitted,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

D. Dudley Oldham
Linda L. Addison
Richard S. Zembek
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel: (713) 651-5151

By:    /s/ David E. Moore
     Richard L. Horwitz  (#2246)
     David E. Moore (#3983)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, Delaware 19801
     Tel: (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

Dan D. Davison
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Tel: (214) 855-8000

*Attorneys for Defendants,*
*Interdigital Communications*
*Corporation and Interdigital Technology*
*Corporation*

Dated: December 1, 2006
Public Version Dated: December 6, 2006

765964 / 28840