# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOKIA CORPORATION and NOKIA, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 05-16-JJF |
| v. | ) ) | |
| INTERDIGITAL COMMUNICATIONS CORPORATION and INTERDIGITAL TECHNOLOGY CORPORATION, | ) ) ) ) | |
| Defendants. | ) | |

## FIRST DISCOVERY ORDER

The Special Master, having considered the submissions of the parties on InterDigital Communication Corporation's and Interdigital Technology Corporation's (collectively "InterDigital") motion to compel supplementation of Nokia Corporation's and Nokia, Inc.'s (collectively "Nokia") Federal Rule of Civil Procedure 26(a)(1) initial disclosures, it is ordered as follows:

1.    InterDigital has filed a motion to compel supplementation of Nokia's F.R.Civ.P. 26(a)(1) initial disclosures. It claims that Nokia has failed to identify with the required specificity the "individuals likely to have discoverable information that the disclosing party may use to support its claim or defense." Although Nokia has identified several individuals in its supplemental initial disclosures,[1] InterDigital claims that there must be additional individuals with personal knowledge of statements allegedly made by InterDigital that support Nokia's Lanham Act claim. InterDigital also claims that Nokia

---

[1] Nokia served its initial disclosures on March 31, 2006. InterDigital conferred with Nokia about alleged deficiencies in Nokia's initial disclosures, and Nokia served supplemental initial disclosures on April 21, 2006.

did not provide either the basis or theory for its damage claim, as allegedly required by F.R.Civ.P. 26(a)(1)(C), and should be ordered to supplement this disclosure as well.

2.      Nokia responds that its supplemental disclosures are sufficient for the early stages of this litigation because it has provided "basic" information from the information it has to date. Nokia also asserts that its Lanham Act claims are based on allegedly false statements about the applicability of InterDigital's patents to 3G wireless standards. Therefore Nokia identified individuals involved with the prosecution of the underlying InterDigital patents, including the inventors, as well as InterDigital employees who made comments on InterDigital's patent portfolio. Because the allegedly false statements underpinning the Lanham Act claim were made by InterDigital representatives, Nokia also identified six InterDigital directors, officers, or employees. Regarding Nokia's lack of disclosure of its damage theories or claims, Nokia contends that its damage claims will be the subject of expert discovery and reports, and therefore it is premature to respond to this initial disclosure.

3.      The duty to provide initial disclosures is not co-extensive with the duty to respond to interrogatories and document requests. Initial disclosures are just that - initial. A party must disclose the basic information it has for each of the categories set forth in Rule 26(a)(1). The initial disclosures should contain sufficient information to direct formal discovery in an efficient manner. *See Self v. Equilon Enters., LLC*, 2005 WL 3763533 (E.D. Mo. 2005)(initial disclosures are intended to supply basic information). With regard to damage information, where the calculation will be the subject of expert reports and testimony, it is appropriate to defer damages calculations to a later time in the proceedings. 6 James Wm. Moore et al, *Moore's Federal Practice* § 26.22[4][c][ii] (3d

2

ed. 2005). After reviewing Nokia's initial disclosures, as later supplemented, I find that they are spartan, but meet the minimum initial disclosure requirements. Nokia's disclosures appear to provide the basic information required by Rule 26(a)(1), and deferring detailed damages disclosures and information is appropriate where as here damages will be the subject of expert testimony. Therefore InterDigital's motion is denied.

4.    Although I have denied InterDigital's motion, given this initial skirmish I fully anticipate disputes over discovery relating to the basis for Nokia's Lanham Act claims. Therefore, to assist the parties with their discovery obligations, I order the following actions (which are supplemental to, and not in place of, any existing discovery requests and responses served and answered by the parties):

A.    On or before June 30, 2006, Nokia shall provide verified responses to the following questions: Paragraph 143 of the January 12, 2005 complaint states that "InterDigital has repeatedly made public statements that its patent portfolio covers the practice of 3G wireless phone systems and the sale of 3G compliant products." Nokia shall identify separately (a) each public statement that it relies upon for this allegation, (b) the date of the public statement, and (c) the identity of anyone who made the statement. For each public statement, Nokia shall also provide a detailed response why each statement is false.

B.    On or before July 14, 2006, InterDigital shall provide verified responses to the following questions: InterDigital shall identify separately (a) each public statement it has made regarding its patent portfolio and whether the portfolio covers the

3

practice of 3G wireless phone systems and the sale of 3G compliant products, (b) the date of the public statement, and (b) the identity of anyone who made the statement.

5.    The Special Master shall be served with the foregoing responses to ensure that the responses are as complete as possible.


Dated:  June 12, 2006

Special Master

4

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA
INC.,

       Plaintiffs,

          v.

INTERDIGITAL COMMUNICATIONS
CORPORATION and INTERDIGITAL
TECHNOLOGY CORPORATION,

       Defendants.

C.A. No. 05-16-JJF

**ATTACHMENTS C & D ARE
CONFIDENTIAL**

## PLAINTIFFS' STATEMENT PURSUANT TO FIRST DISCOVERY ORDER

Pursuant to the First Discovery Order, issued by Special Master Seitz on June 12, 2006, Plaintiffs Nokia Corp. and Nokia Inc. ("Nokia") hereby serve on Defendants InterDigital Communications Corp. and InterDigital Technology Corp. ("InterDigital") Plaintiffs' Statement Pursuant to First Discovery Order.

### I.    INTERDIGITAL'S FALSE PUBLIC STATEMENTS

Nokia's allegation that "InterDigital has repeatedly made public statements that its patent portfolio covers the practice of 3G wireless phone systems and the sale of 3G compliant products" is supported by numerous statements regarding InterDigital's portfolio and specific statements regarding particular InterDigital patents.

Nokia's allegations are supported by statements in InterDigital's filings with the U.S. Securities and Exchange Commission, including the following:

- "We have indicated to the appropriate [standards bodies] that we hold patents and patent applications that are essential for implementation of the present 3G standards in products, and have, in conjunction with such indication, declared that

our patented inventions will be available for license under the general principles of fairness, reasonableness and/or non-discrimination." InterDigital Communications Corp. Form 10-K, Mar. 31, 2005.

- "As a result of our participation in the Standards, we have filed declarations that make our essential inventions available for use and we will license on fair, reasonable and non-discriminatory or similar terms consistent with the requirements of the individual Standards organizations." InterDigital Communications Corp. Form 10-K, Mar. 31, 2005.

- "We have indicated to the appropriate standards bodies that we hold patents and patent applications that are essential for implementation of the present 3G standards specifications in products, and have, in conjunction with such indication, declared that our patented inventions will be available for license under the general principles of fairness, reasonableness and/or non-discrimination for each standards body." InterDigital Communications Corp. Form 10-K, Mar. 15, 2004.

- "We have indicated to the appropriate standards bodies that we hold patents and patent applications that are essential for implementation of the present 3G standards specifications in products, and have, in conjunction with such indication, declared that our patented inventions will be available for license under the general principles for each standards body." InterDigital Communications Corp. Form 10-K, Mar. 31, 2003.

- "We have indicated to the appropriate standards setting bodies that we hold patents and patent applications that are either essential or commercially important for implementation of the present 3G standards specifications in products, and have, in conjunction with such indication, declared that our patented inventions will be available for license under the general principles for each standards body." InterDigital Communications Corp. Form 10-K405, Mar. 29, 2002

- "We have indicated to the appropriate standards setting bodies that we hold patents and patent applications that are either essential or commercially important for implementation of the present 3G standards specifications into products." InterDigital Communications Corp. Form 10-K405, Apr. 2, 2001.

- "We believe that our patent portfolio is applicable to all of the air interface protocols described in the [3G] standard, and we have indicated to the standard setting bodies that we hold patents and patent applications that are either essential or commercially important for 3G products built to present standards specifications." InterDigital Communications Corp. Form 10-K, Mar. 29, 2000.

InterDigital has also claimed on its website to have essential patents, stating:

- "InterDigital believes that, in many instances, licenses for certain of our patents are required for third parties to manufacture and sell digital cellular products in compliance with TDMA and CDMA-based standards currently in use worldwide." www.InterDigital.com/tech_products_licensing.shtml.

2

- "Today, [InterDigital's] inventions and technology are embedded in every 2G, 2.5G and 3G device." www.InterDigital.com/tech_products_introduction.shtml.

- "InterDigital has a strong portfolio of patented technologies covering 2G, 2.5G and 3G standards, which it licenses worldwide." http://www.interdigital.com/press_room_news_archive_detail.jsp?releaseId=5474 34&cb=1151594870650

- "InterDigital supports the evolution of 3G technology through active participation in the standards bodies, invention of essential patented technologies, and development of advanced 3G product solutions." http://phx.corporate-ir.net/phoenix.zhtml?c=116582&p=irol-newsArticle&ID=813104 (dated Feb. 6, 2006).

- InterDigital's 3G license with High Tech Computer "affirms InterDigital's position as a recognized developer and contributor of essential wireless technologies." http://phx.corporate-ir.net/phoenix.zhtml?c=116582&p=irol-newsArticle&ID=547419 (dated Dec. 17, 2003).

InterDigital has also claimed through various news outlets that its patents are essential to 3G standards:

- "[W]e have essential patents . . . and anybody that produces a 3G terminal U.S. device, needs to be licensed under all these essential patents. So from our perspective, every manufacturer who produces devices to that standards [sic] needs to license with us." William Merritt, Speech at Bear Stearns Annual Technology Conference (June 12, 2006).

- "Panasonic's acknowledgement that they used our technology was tantamount to a . . . statement that our patents are essential. So it's not that they were making some - doing some particular implementation that lead them into our patents. It was an acknowledgement by them that, yes InterDigital does hold essential patents." *Id.*

- "InterDigital holds essential [intellectual property rights] in variations of 3G, including FDD, TDD and CDMA." www.tdscdma-forum.org/EN/zf/yjx.asp (attributing quote to Donald Boles, Senior Vice President and Chief Patent Strategist of InterDigital from Interview; dated July 25, 2005).

- "[InterDigital's] broad portfolio of essential patents, along with InterDigital's 3G products and technology, will serve to fuel [InterDigital's] revenue growth as the 3G market emerges." www.3Gnewsroom.com/3g_news/jan_02/news_1743.shtml (attributing quote to Howard E. Goldberg, President and Chief Executive Officer of InterDigital; dated Jan 16, 2002).

- InterDigital's 3G licenses with Matsushita, Sharp and Japan Radio Company "reflect the industry's recognition of the importance of [InterDigital's] 3G essential patent portfolio." www.3Gnewsroom.com/3g_news/jan_02

3

/news_1732.shtml (attributing quote to Howard E. Goldberg, President and Chief Executive Officer of InterDigital; dated Jan. 15, 2002).

- InterDigital is "a recognized developer and contributor of essential technology" for 3G. www.3Gnewsroom.com/3g_news/dec_02/news_2867.shtml (attributing quote to William Merritt, President of InterDigital Technology Corp.; dated Dec. 18, 2002).

- "We have said in a prior press release that we believe that our patents are essential to each of the five specifications under the third generation technology. Therefore anyone practicing that technology is going to have to deal with us." Video Interview by Bill Griffeth with Howard Goldberg, President, InterDigital Communications Corp. (Jan. 10, 2000), 2000 WLNR 2850752(statement by Goldberg).

- "InterDigital began saying on Nov. 17[, 1999] that it holds 'patents that are essential to the new IMT-2000 standard,' executive vice president Rip Tilden said yesterday." Henry J. Holcomb, *InterDigital Soars After U.N. Report a New Wireless-Technology Standard Was Adopted*, Philadelphia Inquirer (Dec. 31, 1999).

Nokia's allegation is also supported by InterDigital's declarations to the European Telecommunications Standards Institute ("ETSI") that certain foreign and domestic patents are essential to the 3G standard UMTS. In particular, on April 10, 2001, InterDigital declared 80 patents and applications to be essential to UMTS (on behalf of InterDigital or its subsidiaries). These declarations were submitted to ETSI by InterDigital's then CEO, Howard Goldberg, and a copy of these declarations is included as Attachment A to this Statement. On April 8, 2004, InterDigital declared 1,192 patents and applications to be essential to UMTS (on behalf of InterDigital or its subsidiaries). These declarations were submitted to ETSI by Donald Boles, InterDigital's Chief Patent Officer, and a copy of these declarations is included as Attachment B to this Statement.

Essentiality declarations to ETSI are publicly available in a searchable online database, available at http://webapp.etsi.org/IPR/home.asp. The ETSI website instructs manufacturers wishing to produce standards-compliant products to use the database to identify patents that have

been declared to be essential to the relevant standard. *See, e.g.,* http://www.etsi.org/legal/IPR_database/FAQ_IPR-Policy.htm.

# REDACTED

InterDigital made these statements to Nokia for the express purposes of convincing Nokia to enter into a license agreement with InterDigital. These presentations are important marketing materials developed and utilized by InterDigital for the purpose of selling patent licenses, InterDigital's only source of revenue.

**II.    INTERDIGITAL'S STATEMENTS ARE FALSE**

A review of InterDigital's patents establishes the falsity of the statements regarding the essentiality of those patents. Although the enormous number of patents InterDigital has declared to ETSI has prevented Nokia from reviewing every patent that InterDigital claims is essential, the patents Nokia has reviewed are believed not to be essential to UMTS or CDMA2000. (*See, e.g.,* Attachment E.) InterDigital can not reasonably contest this fact because it previously publicly embraced it. In December 2003, Forbes Magazine reported that Howard Goldberg, who was at that time the Chief Executive Officer of InterDigital Communications Corp., said, "Any company can design around our patents ...." Elizabeth MacDonald, *Pay Up Or Else,* Forbes Magazine, Dec. 22, 2003, at 122-24 (included as Attachment F). InterDigital made this statement less than four months before declaring to ETSI that 1,192 patents and applications were essential to UMTS.

5

The patents InterDigital has declared to ETSI do not substantiate InterDigital's claims regarding the essentiality of its portfolio. At least two third-party experts studying the industry have reviewed the essentiality of InterDigital's ETSI patents and determined that the vast majority of these patents are in fact not essential to UMTS. Dr. David Goodman and Dr. Robert A. Myers have concluded that approximately 64% of InterDigital's publicly declared inventions are not essential to UMTS (*see* Attachment G, at 4-5). Although this study did not find affirmatively all of InterDigital's patents to be non-essential, the study does not support InterDigital's claims that its patent portfolio is essential to UMTS. The study did not consider the file history of the patents in interpreting the claims (which may require a substantially narrower interpretation of the patent claims), nor did it examine the validity of any of InterDigital's patents.

Because the study did not disclose the patents that were not affirmatively judged essential, Nokia cannot augment this analysis with proper claim construction or with invalidity considerations at this time. Moreover, because InterDigital has declared over 1,272 patents to ETSI, it is practically impossible, at least at this stage, for Nokia to have reviewed all of InterDigital's patents for essentiality. Instead, Nokia has analyzed in detail a sample of InterDigital's self-proclaimed stronger patents. Nokia included this analysis in its responses to InterDigital's First Set of Interrogatories and includes it with this statement as Attachment E. This analysis strongly supports Nokia's view that none of these patents are essential to UMTS or CDMA2000.

Moreover, InterDigital's statements that particular patents and applications are essential to UMTS are themselves violations of the Lanham Act. The Goodman and Myers Report agrees that the vast majority of these 1,272 statements are false.

6

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Julia Heaney
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
    Attorneys for NOKIA CORPORATION and
    NOKIA INC.

OF COUNSEL:

ALSTON & BIRD LLP
Peter Kontio
Randall L. Allen
Lance A. Lawson
William R. Hubbard
1201 West Peachtree Street
Atlanta, GA 30309
404-881-7000

June 30, 2006

7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA
INC.,

      Plaintiffs,

         v.

INTERDIGITAL COMMUNICATIONS
CORPORATION and INTERDIGITAL
TECHNOLOGY CORPORATION,

      Defendants.

C.A. No. 05-16-JJF

## VERIFICATION

I, Henry Muir, state as follows:

I am a Director of IPR Licensing for Nokia Corporation. I have read Plaintiffs'

Statement Pursuant to First Discovery Order ("Plaintiffs' Statement"), and I know the

contents thereof. I verify under penalty of perjury under the laws of the United States of

America that the facts in Plaintiffs' Statement are true and correct to the best of my

knowledge.

Executed this 30th day of June, 2006.

Henry Muir
Director of IPR, Licensing
Nokia Corporation
Nokia House
Summit Avenue
Farnborough, Hampshire GU14 0NG
United Kingdom

ATL01/12259222v2

# EXHIBIT C

1

```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE STATE OF DELAWARE


NOKIA CORPORATION and NOKIA      :
INC.,                            :
               Plaintiffs        :
                                 :
      -v-                        : C.A. NO. 05-16(JJF)
                                 :
INTERDIGITAL COMMUNICATIONS      :
CORPORATION and INTERDIGITAL     :
TECHNOLOGY CORPORATION,          :
               Defendants.       :
```

               Special Master Teleconference taken at the
law offices of Connelly Bove Lodge & Hutz, LLP, at 1007
North Orange Street, 10th Floor, Wilmington, Delaware on
November 2, 2006, commencing approximately at 10:05
a.m., before Elaine Gallagher Parrish, RPR, CRR and
Notary Public.


BEFORE:  COLLINS J. SEITZ, JR., ESQUIRE
         Special Master
APPEARANCES:
         JULIA HEANEY, ESQ.
         Morris, Nichols, Arsht & Tunnell
               1201 North Market Street
               P.O. Box 1347
               Wilmington, Delaware 19899-1347
                    -and-
         RANDALL ALLEN, ESQ.
         Alston & Bird, LLP
               One Atlantic Center
               1201 West Peachtree Street
               Atlanta, Georgia 30309-3424
                    -and-


         WILCOX & FETZER
   1330 King Street - Wilmington, Delaware 19801
               (302)655-0477
               www.wilfet.com



**WILCOX & FETZER LTD.**
Registered Professional Reporters


```

2

```
 1   APPEARANCES:(Continued)
 2        LANCE A. LAWSON, ESQUIRE
          Alston & Bird, LLP
 3             Bank of America Plaza
               101 South Tryon Street, Suite 4000
 4             Charlotte, North Carolina  28280-4000
 5                  -and-
 6        PATRICK J. FLINN, ESQUIRE
          Alston & Bird, LLP
 7             One Atlantic Center
               1201 West Peachtree Street
 8             Atlanta, Georgia 30309-3424
               for the Plaintiffs,
 9
10        RICHARD L. HORWITZ, ESQ.
          Potter Anderson & Corroon
11             Hercules Plaza - 6th Floor
               1313 North Market Street
12             Wilmington, Delaware 19801
13                  -and-
14        DAN D. DAVISON, ESQUIRE
          Fulbright & Jaworski, LLP
15             2200 Ross Avenue, Suite 2800
               Dallas, Texas  75201-2784
16
                    -and-
17
          LINDA L. ADDISON, ESQUIRE
18        Fulbright & Jaworski, LLP
               1301 McKinney, Suite 5100
19             Houston, Texas  77010-3095
20                  -and-
21        ANDREW G. ISZTWAN, ESQUIRE
          InterDigital Communications Legal Department
22             781 Third Avenue
               King of Prussia, Pennsylvania  19046-1409
23             For the Defendants.
24
```



**WILCOX & FETZER LTD.**
Registered Professional Reporters

31

1    you think they are essential.  In other words, prove the

2    truth of what you said before.  I have to tell you, in

3    fact, if it's false or why it's false.  I think that

4    turns the burden of proof on its head.

5         MR. FLINN:  This is Patrick Flinn.  This is

6    a process we believe of discovery management, not burden

7    of proof.  And the irony is that they don't want to give

8    us any discovery until we somehow establish our burden

9    of proof when a large amount of the fact discovery is in

10   their possession.  Now, Mr. Davison keeps trying to

11   restate our claim.  Our claim is not that a declaration

12   to ETSI that some of these 195 patents or all of them or

13   none of them may some day become essential if someone

14   changes the standard or if somehow the patent claims

15   change or some apocalyptic universe change occurs and we

16   live in an altered universe.  That's, in essence, what

17   they say -- all they said and that must be true.

18        What we're saying is they have gone to the

19   public, and we said essentially you, the public,

20   practicing UMTS -- UMTS, that's the 3G standard we're

21   talking about, that what they are, in fact, telling the

22   world is you need a license to all 195 of these patents

23   to practice the currently-enabled UMTS technology that's

24   out there.  Now, we said -- they're only willing to say

**W&F**

WILCOX & FETZER LTD.
Registered Professional Reporters

1  18 -- 11 of those patents meet that -- or that

2  particular test, and it turns out that nobody needs a

3  license to those 18 patents because the industry is

4  already licensed through another company to eight of

5  them, and the remaining three apply only to a standard

6  that nobody -- a piece of the technology nobody has ever

7  adopted, nobody has ever rolled out. So nobody needs a

8  license to any of the patents so far that they have ever

9  actually come to the stake on.

10         Now, we will -- we will list for all 195

11  our basis for believing why they're not essential. I

12  have to say that for a substantial number of them it's

13  going to be a fairly simple answer, which is we have

14  looked at this and we can't concede how this patent has

15  anything to do with any part of the 3G standard because

16  literally they have thrown in an amazing pile of garbage

17  into this 195. Some of them we can be more specific,

18  like the 18 where they at least believe they had a claim

19  to pass the red face test. To the extent that they have

20  others, that they're willing to try to say with a

21  straight face, meet not their version of what they told

22  the public but what we contend has -- is the actionable

23  statement that they have made. Now, we will do that for

24  195.



33

1          But what Mr. Davison says is he's never

2    going to tell us their view on the 195 ever unless he's

3    ordered to, and then only grudgingly.  Now, it may seem,

4    Mr. Seitz, there is two things I think you could do to

5    resolve this dispute:  One is to say, Nokia, for 195

6    patents you tell us now why you believe none of them is

7    -- is -- meets the standard of what you think

8    InterDigital has publicly said about them, but at the

9    same time, at a very minimum, they have to open their

10   own discovery and give us their contentions and give us

11   testimony and give us the documents on their view, not

12   of whether or not it meets their version of the standard

13   of what they think they told the public but what we

14   contend they told the public.  Because if we're right,

15   that the effect of their public statements is this

16   assertion that everybody needs a license to these 195

17   patents to practice the currently rolled-out UMTS

18   technology, if that's what they said then we need to

19   know whether or not they're willing to admit or deny or

20   acknowledge that some of those 195 patents don't meet

21   the standard as we have articulated it.

22          MR. DAVISON:  Can I respond, Your Honor?

23          MR. SEITZ:  Yes.

24          MR. DAVISON:  As I understood Mr. Flinn,

34

1  he's now said that with regard to ETSI he'll comply with

2  the first discovery order. He will tell us what patents

3  or what statements within the ETSI statements are false

4  and why. That's all we have ever asked and that's what

5  you ordered them to do on June the 30th that they still

6  haven't done.

7          I would, and it was addressed a little bit

8  in the response that was filed yesterday, I know

9  Mr. Flinn wasn't the Nokia corporate rep, but he keeps

10 talking about ETSI being the declaration of right. His

11 own corporate representative said that's not true.

12 Everybody knows it's just an opinion. It's an opinion

13 of the declarant. The ETSI rules and policies section

14 3.2.2 says that as a matter of fact it says it says the

15 disclosure reflects, of course, only an opinion of the

16 member, and then it goes on and talks about further

17 opinions -- when further opinions should be added.

18          MR. SEITZ:  On that issue, Mr. Davison,

19 when the motion to dismiss was briefed before Judge

20 Farnan were these arguments made about why the Lanham

21 Act allegation should be dismissed as well?

22          MR. DAVISON:  No.  I do not believe these

23 issues were, Your Honor, because at that point we didn't

24 know what claims they were asserting under the Lanham



35

1    Act.  We didn't know what statements were the subject of

2    their Lanham Act claim.

3                MR. SEITZ:  Mr. Flinn, is that in accord

4    with your recollection as well?

5                MR. FLINN:  No.  They threw the -- they

6    threw the bucket at us with every theory they could in

7    that motion to dismiss, and it is clear, and the reason

8    why Mr. Davison is simply wrong, is that a statement

9    that your patent is essential to the practice of the

10   technology is an assertion of your patent claim scope

11   which the law has recognized for a long time can, in

12   fact, be a Lanham Act violation.  The Federal Circuit

13   recognizes it and says if you want to get money damages

14   you have to prove that claim.

15               MR. SEITZ:  My question more directly,

16   though, was that argument before Judge Farnan?

17               MR. FLINN:  I believe it was.  I believe

18   they argued that there was no way we could actionably

19   challenge their assertions of essentiality and that's my

20   memory of it.  I don't have the briefs in front of me.

21               MR. DAVISON:  I can pull the briefs up in

22   just a moment, Your Honor.

23               MR. SEITZ:  Just so we don't have to put

24   you out, Mr. Davison, I'd be interested and I would ask

36

1   both of you to follow up for me on the issue of whether

2   or not that issue was considered by Judge Farnan when he

3   denied the motion to dismiss. And the reason I think

4   it's important is because if it wasn't before him it may

5   be prudent - and I'm not going to stop discovery while

6   we do this - but it may be prudent to brief the issue to

7   see whether the claim, in fact, is defective or not as

8   alleged in InterDigital's papers.

9            MR. FLINN: Let me make one other comment,

10  Mr. Seitz. Patrick Flinn. Mr. Davison keeps going on

11  and on about how Nokia's 30(b)(6) witness made this

12  statement. Ironically enough, given our last appearance

13  before you, that was a question way outside the scope

14  for which he was designated. And Mr. Davison

15  acknowledges that he was riding the range with that

16  question. And the fact of the matter is that - and we

17  don't think that it's going to be that controversial

18  and, in fact, InterDigital has been sued in the past for

19  Lanham Act violations, Ericsson sued it for a Lanham Act

20  violation claiming that its patents were essential to

21  second-generation or 2G standards.

22           MR. DAVISON: And which we got summary

23  judgment on that.

24           MR. SEITZ: Hang on. We're far too much



# EXHIBIT D

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA INC.,

    Plaintiffs,

      v.

INTERDIGITAL COMMUNICATIONS
CORPORATION and INTERDIGITAL
TECHNOLOGY CORPORATION,

    Defendants.

C.A. No. 05-16-JJF

## PLAINTIFFS' FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFFS

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs Nokia Corp. and Nokia Inc. ("Nokia") hereby serve on Defendants InterDigital Communications Corp. and InterDigital Technology Corp. ("Defendants" or "InterDigital") Plaintiffs' First Supplemental Objections and Responses to Defendants' First Set of Interrogatories to Plaintiffs.

### I.    RESERVATIONS OF RIGHTS

In responding to Defendants' First Set of Interrogatories to Plaintiffs, Nokia states that it has conducted a diligent search, reasonable in scope, of those files and records in its possession, custody, or control believed to be the most likely to contain information responsive to the interrogatories herein and has solicited information from those individuals employed by or otherwise affiliated with Nokia who are believed to be the most likely to have knowledge of such matters. Nokia has not, however, undertaken to search or review all of the files and records in its possession or control, nor has it

solicited information from every individual employed by or otherwise affiliated with it, because to do so would be unduly burdensome and prohibitively expensive. In the event, therefore, that information or documents containing information responsive to Defendants' First Set of Interrogatories to Plaintiff are later identified or brought to Nokia's attention, Nokia reserves the right to amend, revise, supplement, modify, or clarify the following objections and responses. Nokia further reserves the right to complete its investigation and discovery of the facts, and to rely at trial or in other proceedings upon documents and information in addition to the information provided herein, regardless of whether such information is newly discovered or newly in existence.

Nokia has responded to these interrogatories as it interprets and understands them. If InterDigital subsequently asserts an interpretation of any response that differs from Nokia's understanding, Nokia reserves the right to supplement or amend its objections or responses.

Nokia's responses to Defendants' First Set of Interrogatories to Plaintiffs shall not constitute an admission by Nokia that any of the interrogatories or the responses thereto, or the documents produced in connection therewith, are admissible as evidence in any trial or other proceeding. Nokia specifically reserves the right to object on any grounds, at any time, to the admission of any interrogatory or any response or document produced in connection therewith in any such trial or other proceeding. Nokia's responses to these interrogatories is not a concession that any of the individuals identified by Nokia will be called as a witness or that he or she possesses discoverable information, or that the subject matter of the particular interrogatory is relevant to this action.

2

Any responsive documents or thing not privileged will be produced as business records in the manner in which they are maintained, or, unless otherwise noted below, categorized by Interrogatory Number to the extent feasible, and made available for inspection by InterDigital at a mutually convenient time and place, using procedures permitted by Rules 33(d) and 34 of the Federal Rules of Civil Procedure.

## II.    GENERAL OBJECTIONS

1.     Nokia objects to Defendants' First Set of Interrogatories to Plaintiffs to the extent they call for the disclosure of information and documents that are subject to the attorney-client privilege, other privilege, or the work-product immunity, or call for a response that would require disclosure of the mental impressions, conclusions, or legal theories of its attorneys or other representatives. Nokia further objects to identifying such information and documents on the grounds that such identification would itself intrude on the attorney-client privilege and work-product immunity.

2.     Nokia objects to any directions, definitions, or instructions contained in Defendants' First Set of Interrogatories to Plaintiffs to the extent that those instructions and definitions alter the generally understood definitions under the Federal Rules of Civil Procedure and Evidence or seek to impose on Nokia obligations -- including but not limited to disclosure and supplementation requirements -- beyond those required by the Federal Rules of Civil Procedure. For example, the Federal Rules of Civil Procedure do not obligate Nokia to comply with InterDigital's Instruction 1, which purports to require Nokia to "identify that portion of [an] interrogatory that is allegedly overly broad." This objection also includes but is not limited to Definitions 7, 8, 9, and 15, and Instructions 1, 2, and 3.

3.    Nokia further objects to the definitions contained in Defendants' First Set of Interrogatories to Plaintiffs to the extent that InterDigital intends for those definitions to apply outside of Defendants' First Set of Interrogatories to Plaintiffs.

4.    Nokia further objects to Defendants' First Set of Interrogatories to Plaintiffs to the extent that InterDigital prematurely seeks discovery of Nokia's contentions at an early point in this litigation, before Nokia has had an opportunity to obtain meaningful discovery from InterDigital or non-parties. Nokia has endeavored to answer the interrogatories as completely as reasonably possible at this time. Because discovery has only recently begun and much of the information Nokia needs to respond to these interrogatories is in the possession, custody, or control of InterDigital or third parties, Nokia's responses are therefore unavoidably incomplete. Nokia will supplement its responses insofar as merited by further discovery.

Insofar as any of Defendants' First Set of Interrogatories to Plaintiffs seek information to which the foregoing General Objections apply, failure to note these General Objections shall not be a waiver of those or other general objections with respect to any interrogatory.

## III.    RESPONSES TO FIRST SET OF INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each statement or assertion made by InterDigital which forms the basis of Nokia's Lanham Act claim, including the declarant, recipient, date each statement was allegedly made, and the statement or assertion made, together with any documents, materials or individuals with knowledge that relate to such statement(s) or assertion(s). *See* Nokia's Complaint at Count XXI.

### ANSWER:

In addition to the foregoing Reservations of Rights and General Objections, all of which are incorporated herein by reference, Nokia specifically objects to Interrogatory

4

No. 1 to the extent that it seeks information or documents protected by the Attorney/Client privilege or Work Product immunity. Nokia further objects to this interrogatory because it is overly broad and unduly burdensome. For example, given (1) the capacious definition of "relate" in the definitions, (2) the size of Nokia's workforce, which includes tens of thousands of employees, and (3) the public nature of some of InterDigital's essentiality claims, many Nokia employees may have knowledge and may have created documents or materials that "relate" to InterDigital's essentiality claims. Nokia further objects to this interrogatory to the extent it seeks information that is publicly available or in the possession, custody, or control of InterDigital. Indeed, Nokia may not be aware of all statements that will form the basis of its Lanham Act claim, as Nokia may be unaware of all of the false claims of essentiality that InterDigital has presented to a substantial portion of the relevant audience.

Nokia further objects to this interrogatory because it is premature as, among other things, InterDigital has neither identified each of the patents it has in the past declared to be essential,nor identified all of the statements it has made regarding the essentiality of its patents. Nokia has endeavored to answer the aspects of this interrogatory involving opinions or contentions as completely as reasonably possible at this time. However, because discovery has only recently begun and much of the information Nokia needs to respond to this interrogatory is in InterDigital's possession, custody, or control, Nokia's response is unavoidably incomplete. Nokia will supplement this response insofar as further discovery supports a more complete response.

Subject to and without waiving the General Objections and the specific objections, Nokia is presently aware of certain statements by InterDigital demonstrating

that InterDigital has violated the Lanham Act and answers as follows. Nokia's Lanham Act claim is based on InterDigital's false and misleading claims that InterDigital owns patents that are essential to WCDMA and CDMA2000, including but not limited to all statements identified in Plaintiffs' Statement Pursuant to First Discovery Order and in Defendants' Statement Pursuant to Special Master's First Discovery Order. For example, the statements forming the basis of Nokia's Lanham Act claim include:

(1)     InterDigital's essentiality declarations to the European Telecommunications Standards Institute ("ETSI"). With respect to its U.S. patents, InterDigital has contended that approximately 182 U.S. patents are essential to a 3G standard. These declarations were made on April 10, 2001, and April 8, 2004, and are available from ETSI's website at http://webapp.etsi.org/IPR/home.asp.

(2)     InterDigital's 3G licensing presentations. In licensing presentations to Nokia dated January 2002 and June 2003, InterDigital contended that certain patents were essential to certain 3G standards. The presentations were memorialized in two PowerPoint presentations. Nokia will produce copies of these presentations.

(3)     InterDigital's public statements, to the media and other persons or entities, regarding the essentiality of its patents, including but not limited to Elizabeth MacDonald, *Pay Up Or Else*, FORBES, Dec. 22, 2003, at 122-24; and

(4)     Statements in InterDigital's SEC filings, including for example the Form 10-K that InterDigital filed with the SEC on March 14, 2006.

Individuals with knowledge of InterDigital's false statements include individuals present at InterDigital's licensing presentations to Nokia in January 2002 and June 2003:

- Ilkka Rahnasto, Nokia Corporation

- Kalle Moilanen, Nokia Corporation

- Kari Läng, Nokia Corporation

- William J. Merritt, InterDigital Communications Corp., 781 Third Avenue, King of Prussia, PA 19406

6

- Joseph King, InterDigital Communications Corp.

- Fatih Ozloturk, InterDigital Communications Corp., 2 Huntington Quadrangle, Melville, NY 11747

## INTERROGATORY NO. 2:

Identify any and all evidence that InterDigital made the statements or assertions identified in Nokia's Answer to Interrogatory No. 1 in bad faith and/or with knowledge of their falsity, including all facts, documents, materials, and the person(s) with knowledge that support or refute that such statements were made in bad faith and with knowledge of their falsity. *See* Nokia's Complaint at Count XXI.

### ANSWER:

In addition to the foregoing Reservations of Rights and General Objections, all of which are incorporated herein by reference, Nokia specifically objects to Interrogatory No. 2 to the extent that it seeks information or documents protected by the Attorney/Client privilege or Work Product immunity. Nokia further objects to this interrogatory because it is overly broad and unduly burdensome. For example, some of the information targeted by this interrogatory -- regarding InterDigital's bad faith -- is publicly available. In Elizabeth MacDonald, *Pay Up Or Else*, FORBES, Dec. 22, 2003, at 122-24, InterDigital's former CEO, Howard Goldberg is quoted as saying "Any company can design around our patents . . . ." That same article indicates that InterDigital has pursued a licensing strategy based on "dragging its customers . . . through legal disputes over patents."

Nokia also objects to this interrogatory to the extent it seeks information that is in the possession, custody, or control of InterDigital. Indeed, InterDigital possesses far better access to evidence of its bad faith than Nokia at this time because Nokia has not yet received complete discovery responses nor any documents from InterDigital.

7

Nokia further objects to this interrogatory because it is premature as, among other things, InterDigital has neither identified each of the patents it has in the past declared to be essential, nor identified all of the statements it has made regarding the essentiality of its patents. Nokia has endeavored to answer the aspects of this interrogatory involving opinions or contentions as completely as reasonably possible at this time. However, because discovery has only recently begun and much of the information Nokia needs to respond to this interrogatory is in InterDigital's possession, custody, or control, Nokia's response is unavoidably incomplete. For example, Nokia understands that similar issues have arisen in other cases involving InterDigital. Nokia believes that it will be able to more fully respond to this interrogatory after InterDigital has adequately responded to Nokia's first round of discovery requests, and will supplement this response insofar as further discovery supports a more complete response.

Subject to and without waiving the General Objections and the specific objections, Nokia answers as follows. First, a review of many of the statements listed in response to Interrogatory 1 shows those statements to be false, and Nokia therefore reasonably believes that InterDigital knew or should have known of the falsity of these statements. Second, InterDigital has not updated its ETSI declarations to reflect its current essentiality contentions. In its 2001 and 2004 declarations to ETSI, InterDigital identified as essential 110 U.S. patents and 72 applications that have issued as US patents. In InterDigital's response to Nokia's request that InterDigital "[i]dentify every patent that InterDigital currently contends to be essential" InterDigital identified (by reference) only 10 of those 182 U.S. patents. InterDigital has made no effort to notify ETSI, the industry, or the public that it no longer contends that 172 U.S. patents are

8

essential to UMTS. Third, the process InterDigital employs to identify essential patents – as described in InterDigital's interrogatory responses – is not sufficiently rigorous, reflecting a bad-faith indifference to the truth or falsity of InterDigital's essentiality declarations.

## INTERROGATORY NO. 3:

Identify all facts, documents, materials and the person(s) with knowledge related to, that support and/or that refute your contention that "all of InterDigital's 3G patents are either invalid or not infringed by mobile handset and infrastructure products being rolled out in the United States. In particular, no Nokia product either sold in the United States or in development for sale to the United States infringes any claim of InterDigital 3G patent." *See* Nokia's Compliant at p. 5, ¶11 . Your answer should include what analyses Nokia conducted to make such determination, the result of such analyses for each and every InterDigital patent analyzed, when such analyses took place and the individual(s) with knowledge of such analyses.

### ANSWER:

In addition to the foregoing Reservations of Rights and General Objections, all of which are incorporated herein by reference, Nokia specifically objects to Interrogatory No. 3 to the extent that it misrepresents the contents of Nokia's Complaint. Nokia also objects to this interrogatory – which focuses on invalidity and non-infringement analyses – to the extent that it seeks the production of information or documents protected by the Attorney/Client privilege or Work Product immunity. Nokia further objects to this interrogatory because it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. For example, the contentions in Paragraph 11 of Nokia's Complaint that are quoted in this interrogatory have been dismissed. In addition, this interrogatory targets "every InterDigital patent analyzed" regardless of whether Nokia's Lanham Act claim involves that patent. To the extent that the issues addressed by this interrogatory are still a part of this action, Nokia will address those issues in its response to Interrogatory 4. Nokia further objects to this interrogatory

9

to the extent it seeks information that is in the possession, custody, or control of InterDigital, such as the file histories of the relevant patents.

Nokia further objects to this interrogatory because it is premature as, among other things, InterDigital has neither identified each of the patents it has in the past declared to be essential, nor identified all of the statements it has made regarding the essentiality of its patents. Nokia has endeavored to answer the aspects of this interrogatory involving opinions or contentions as completely as reasonably possible at this time. However, because discovery has only recently begun and much of the information Nokia needs to respond to this interrogatory is in InterDigital's possession, custody, or control, Nokia's response is unavoidably incomplete. Nokia will supplement this response insofar as further discovery supports a more complete response.

Subject to and without waiving the General Objections and the specific objections, Nokia answers as follows. Pursuant to Federal Rule of Procedure 33(d), Nokia will produce documents from which the information targeted by Interrogatory 3 may be derived or ascertained. Nokia further contends that the following persons may have evidence responsive to this interrogatory:

- David J. Goodman, Department of Electrical and Computer Engineering, Polytechnic University, Brooklyn, New York, dgoodman@poly.edu.

- Robert A. Myers, Fairfield Resources International, Stamford, Connecticut, myers@frlicense.com.

### INTERROGATORY NO. 4:

Identify all analyses performed by or for Nokia related to its contention that any or all patents in InterDigital's Patent Portfolio are non-essential, invalid, and/or not infringed, including, without limitation, all facts, documents, materials, conclusions and the person(s) with knowledge related to each analysis.

10

**ANSWER:**

In addition to the foregoing Reservations of Rights and General Objections, all of which are incorporated herein by reference, Nokia specifically objects to Interrogatory No. 4 — which focuses on invalidity and essentiality analyses — to the extent that it seeks the production of information or documents protected by the Attorney/Client privilege or Work Product immunity. Nokia further objects to this interrogatory to the extent it seeks information that is in the possession, custody, or control of InterDigital, such as the file histories of the relevant patents.

Nokia further objects to this interrogatory because it is premature as, among other things, InterDigital has neither identified each of the patents it has in the past declared to be essential, nor identified all of the statements it has made regarding the essentiality of its patents. Nokia has endeavored to answer the aspects of this interrogatory involving opinions or contentions as completely as reasonably possible at this time. However, because discovery has only recently begun and much of the information Nokia needs to respond to this interrogatory is in InterDigital's possession, custody, or control, Nokia's response is unavoidably incomplete. Nokia will supplement this response insofar as further discovery supports a more complete response.

Subject to and without waiving the General Objections and the specific objections, Nokia answers as follows. Pursuant to Federal Rule of Procedure 33(d), Nokia will produce documents from which the information targeted by Interrogatory 4 may be derived or ascertained. Nokia further contends that the following persons may have evidence responsive to this interrogatory:

- David J. Goodman, Department of Electrical and Computer Engineering, Polytechnic University, Brooklyn, New York, dgoodman@poly.edu.

11

- Robert A. Myers, Fairfield Resources International, Stamford,

  Connecticut, myers@frlicense.com.

Subject to and without waiving the General Objections and the specific objections, Nokia further responds that the following patents owned by InterDigital are not essential to any 3G standard for the following reasons and based on the following facts:

# PORTIONS

# REDACTED

# PORTIONS

# REDACTED

# PORTIONS REDACTED

# PORTIONS
# REDACTED

# PORTIONS
# REDACTED

# PORTIONS

# REDACTED

# PORTIONS

# REDACTED

**INTERROGATORY NO. 5**:

    Identify all facts, documents, materials and the person(s) with knowledge related to, that support and/or that refute your contention that "InterDigital has used false or misleading descriptions or representations in connection with its patent portfolio, the WCDMA standard, the cdma2000 standard, Nokia's products, the applicability of InterDigital's patents to Nokia's products, and the applicability of InterDigital's patents to 3G standards within the meaning of 15 U.S.C. § 1125(a) (§ 43(a) of the Lanham Act)." *See* Nokia's Complaint at ¶ 142, p. 34.

**ANSWER:**

In addition to the foregoing Reservations of Rights and General Objections, all of which are incorporated herein by reference, Nokia specifically objects to Interrogatory No. 5 to the extent that it misrepresents the contents of Nokia's Complaint. Nokia also objects to this interrogatory – which focuses on invalidity and non-essentiality analyses – to the extent that it seeks the production of information or documents protected by the Attorney/Client privilege or Work Product immunity. Nokia further objects to this interrogatory because it is overly broad and unduly burdensome. For example, given (1) the capacious definition of "relate" in the definitions, (2) the size of Nokia's workforce, which includes tens of thousands of employees, and (3) the public nature of InterDigital's essentiality claims, many Nokia employees may have knowledge and may have created documents or materials that "relate" to InterDigital's essentiality claims. Nokia also objects to this interrogatory to the extent it seeks information that is in the possession, custody, or control of InterDigital, including InterDigital's essentiality declarations. Nokia also objects to this interrogatory because it is duplicative of Interrogatories 1 and 4.

Nokia further objects to this interrogatory because it is premature as, among other things, InterDigital has neither identified each of the patents it has in the past declared to be essential, nor identified all of the statements it has made regarding the essentiality of its patents. Nokia has endeavored to answer the aspects of this interrogatory involving opinions or contentions as completely as reasonably possible at this time. However, because discovery has only recently begun and much of the information Nokia needs to respond to this interrogatory is in InterDigital's possession, custody, or control, Nokia's

response is unavoidably incomplete. Nokia will supplement this response insofar as further discovery supports a more complete response.

Subject to and without waiving the General Objections and the specific objections, Nokia answers as follows. The statements identified in response to Interrogatory 1 are false for the reasons listed in Plaintiffs' Statement Pursuant to First Discovery Order. Furthermore, pursuant to Federal Rule of Procedure 33(d), Nokia will produce documents from which the information targeted by Interrogatory 5 may be derived or ascertained. Nokia further contends that the following persons may have evidence responsive to this interrogatory:

- Ilkka Rahnasto, Nokia Corporation

- Kalle Moilanen, Nokia Corporation

- Kari Lång, Nokia Corporation

- William J. Merritt, InterDigital Communications Corp., 781 Third Avenue, King of Prussia, PA 19406;

- Joseph King, InterDigital Communications Corp.

- Fatih Ozloturk, InterDigital Communications Corp., 2 Huntington Quadrangle, Melville, NY 11747

- D. Ridgely Bolgiano, InterDigital Communications Corp., 781 Third Avenue, King of Prussia, PA 19406;

- Brian G. Kiernan, InterDigital Communications Corp., 781 Third Avenue, King of Prussia, PA 19406;

- Richard G. Saunders, 19 Big Look Trail, Medford, New Jersey 08055;

- Howard Goldberg;

- Donald M. Boles, InterDigital Communications Corp.,

20

- David J. Goodman, Department of Electrical and Computer Engineering, Polytechnic University, Brooklyn, New York, dgoodman@poly.edu; and

- Robert A. Myers, Fairfield Resources International, Stamford, Connecticut, myers@frlicense.com.

## INTERROGATORY NO. 6:

Identify all facts, documents, materials and the person(s) with knowledge related to, that support and/or that refute your contention that statements by InterDigital ". . . influenced purchasing decisions by raising costs for all market participants . . . increased production costs for Nokia and raised the cost of Nokia developing and marketing standards compliant technology and deterred Nokia's customers from purchasing Nokia's standards complaint products." *See* Plaintiffs' Answering Brief in Opposition to Defendants' Motion to Dismiss Pursuant to FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1), 12(B)(6) and 12(H)(3) ("Nokia's Answering Brief"), at p. 30.

## ANSWER:

In addition to the foregoing Reservations of Rights and General Objections, all of which are incorporated herein by reference, Nokia specifically objects to Interrogatory No. 6 to the extent that it misrepresents the contents of Nokia's Answering Brief. Nokia also objects to this interrogatory to the extent that it seeks the production of information or documents protected by the Attorney/Client privilege or Work Product immunity. Nokia further objects to this interrogatory because it is overly broad and unduly burdensome. For example, some of the information targeted by this interrogatory — regarding the harm caused to the wireless industry by false essentiality claims — is publicly available. Nokia also objects to this interrogatory to the extent it seeks information that is in the possession, custody, or control of InterDigital. For example, in the Form 10-K that InterDigital filed with the SEC on March 14, 2006, InterDigital stated on page 12 that:

[N]umerous companies . . . claim that they hold essential . . . 3G patents. To the extent that multiple parties all seek royalties on the same product,

21

the manufacturers may have difficulty in meeting the financial requirements of each patent holder.

Nokia further objects to this interrogatory because it is premature as, among other things, InterDigital has neither identified each of the patents it has in the past declared to be essential, nor identified all of the statements it has made regarding the essentiality of its patents. Nokia has endeavored to answer the aspects of this interrogatory involving opinions or contentions as completely as reasonably possible at this time. However, because discovery has only recently begun and much of the information Nokia needs to respond to this interrogatory is in InterDigital's possession, custody, or control, Nokia's response is unavoidably incomplete. Nokia will supplement this response insofar as further discovery supports a more complete response.

To the extent that Interrogatory No. 6 seeks information regarding a narrative description of the harm to Nokia stemming from InterDigital's false statements, Nokia objects to Interrogatory No. 6 as duplicative of Interrogatory No. 8.

Subject to and without waiving the General Objections and the specific objections, Nokia answers as follows. Pursuant to Federal Rule of Procedure 33(d), Nokia will produce documents from which the information targeted by Interrogatory No. 6 may be derived or ascertained. Nokia further contends that the following persons may have evidence responsive to this interrogatory:

- Henry Joseph Colquhoun Muir, Director of IPR Licensing, Nokia Corporation, Nokia House, Summit Avenue, Farnborough, GU14 ONG, United Kingdom.

22

In addition, the following companies also are likely to possess information relating to Nokia's contention that false essentiality claims by InterDigital have raised costs for all market participants.

- BenQ Corp., Taiwan

- Compal Electronics, Taiwan

- Compal Communications, Inc., Taiwan

- Curitel Communications, Inc., Korea

- DBTel, Taiwan

- Haier, China

- LiteOn, Taiwan

- Option NV, Netherlands

- Palm, Inc., United States

- Pantech, Korea

- Sierra Wireless, United States

- TCL, China

In addition, the following publicly available documents relate to Nokia's contention that false essentiality claims by InterDigital have raised costs for all market participants.

- Drew Cullen, *Gang of Four set W-CDMA royalty cap*, The Register, Nov. 6, 2002, *available at* http://www.theregister.co.uk/2002/11/06/gang_of_four_set_wcdma/.

- *InterDigital will not limit standard royalty*, 3GNewsroom.com, Nov. 21, 2002, *available at* http://www.3gnewsroom.com/3g_news/nov_02/news_2761.shtml.

- Vodafone, *Examining the IPR Regime*, Aug. 29, 2005, *available at* http://portal.etsi.org/docbox/workshop/gsc/gsc10archive/gsc10_ipr/gsc10_ipr_15a1%20Evaluation%20of%20IPR%20challenges%20in%20Standards%20making.ppt

- Vodafone Group plc, *Evaluation of IPR Challenges in Standards Making*, Aug. 24, 2005, *available at* http://portal.etsi.org/docbox/workshop/gsc/gsc10archive/gsc10_ipr/gsc10_ipr_15%20Evaluation%20of%20IPR%20challenges%20in%20Standards%20making.doc

- *Vodafone evaluation of IPR challenges in ETSI*, *available at* http://sos-interop.org//files/vodafone_evaluation_of_ipr_challenges_in_etsi_555.doc

- Ericsson, Motorola, Nokia, *Proposal for IPR Policy Reform*, Feb. 20, 2006, available from http://portal.etsi.org/Portal_Common/home.asp

- IPR Working Group, GSM Association, *IPR Problem Statement*, July 20, 2005, *available at* http://sos-interop.org//files/ipr_working_group_problem_statement_ver_2_246.doc

- Tobias Buck, *Groups push for action on intellectual property*, FT.com, Nov. 21, 2005, *available at* http://www.ft.com/cms/s/9609cb48-5ab1-11da-8628-0000779e2340,dwp_uuid=d4f2ab60-c98e-11d7-81c6-0820abe49a01.html.

24

- John Oates, *Telcos united on anti-patent laws*, The Register, *available at* http://www.theregister.co.uk/2005/11/22/telcos_unite_on_ip/

- ComputerWire, *Patent fees weigh down 3G uptake*, The Register, Sept. 13, 2002, *available at* http://www.theregister.co.uk/2002/09/13/patent_fees_weigh_down_3g/

- *3G market could be stifled by high IPR costs*, 3Gnewsroom.com, May 2, 2005, *available at* http://www.3gnewsroom.com/3g_news/may_05/news_5817.shtml

- Brett Simpson & Richard Kramer, *3G IPR: A Great Mobile Mystery*, Arete, Jan. 25, 2005, *available at* https://www.arete.net/REPORTS/3GIPR250105.pdf

- Kim Tae-gyu, *Cell Phone Makers Face Higher Royalties*, Korea Times, Oct. 17, 2005, *available at* http://times.hankooki.com/lpage/tech/200510/kt2005101718201511800.htm

- Rudi Bekker's & Joel West, *The Effect of Strategic Patenting on Cumulative Innovation in UMTS Standardization*, Mar. 2006, *available at* http://www.dime-eu.org/files/active/1/IPR-WORKING-PAPER-9_BekkersWest.pdf

## INTERROGATORY NO. 7:

Identify all facts, documents, materials and the person(s) with knowledge related to, that support and/or that refute your contention that InterDigital made false statements representing the characteristics of Nokia's products which have harmed Nokia's goodwill and reputation.

**ANSWER:**

In addition to the foregoing Reservations of Rights and General Objections, all of which are incorporated herein by reference, Nokia specifically objects to Interrogatory No. 7 to the extent that it seeks the production of information or documents protected by the Attorney/Client privilege or Work Product immunity. Nokia also objects to this interrogatory to the extent it seeks information that is in the possession, custody, or control of InterDigital. For example, in the Form 10-K that InterDigital filed with the SEC on March 14, 2006, InterDigital stated on page 12 that:

> [N]umerous companies . . . claim that they hold essential . . . 3G patents. To the extent that multiple parties all seek royalties on the same product, the manufacturers may have difficulty in meeting the financial requirements of each patent holder.

Nokia further objects to this interrogatory because it is premature as, among other things, InterDigital has neither identified each of the patents it has in the past declared to be essential, nor identified all of the statements it has made regarding the essentiality of its patents. Nokia has endeavored to answer the aspects of this interrogatory involving opinions or contentions as completely as reasonably possible at this time. However, because discovery has only recently begun and much of the information Nokia needs to respond to this interrogatory is in InterDigital's possession, custody, or control, Nokia's response is unavoidably incomplete. Nokia will supplement this response insofar as further discovery supports a more complete response.

Nokia objects to Interrogatory No. 7 to the extent to which it seeks information duplicative of the information sought through Interrogatories No. 6, 9, and 10. To the extent that Interrogatory No. 7 seeks information regarding a narrative description of the

26

harm to Nokia stemming from InterDigital's false statements, Nokia objects to Interrogatory No. 7 as duplicative of Interrogatory No. 8.

Subject to and without waiving the General Objections and the specific objections, Nokia answers as follows. Pursuant to Federal Rule of Procedure 33(d), Nokia will produce documents from which the information targeted by Interrogatory 7 may be derived or ascertained. Nokia further contends that the following persons may have evidence responsive to this interrogatory:

- Henry Joseph Colquhoun Muir, Director of IPR Licensing, Nokia Corporation, Nokia House, Summit Avenue, Farnborough, GU14 ONG, United Kingdom.

In addition, the following publicly available documents relate to Nokia's contention that InterDigital's claims that its patents are essential – and that Nokia must therefore enter a license with InterDigital – have harmed Nokia's reputation and goodwill.

- *Nokia and InterDigital Settle; Future Battle Looms*, Mobile Europe, May 5, 2006, *available at*

   http://www.mobileeurope.co.uk/news/news_story.ehtml?o=2136

## INTERROGATORY NO. 8:

Identify how each statement or assertion identified in Interrogatory No. 1 has caused Nokia to be damaged and the dollar amount, if any, of such damage, including the amount of damages claimed for Nokia's goodwill and reputation. *See* Nokia's Answering Brief at pp. 30-31.

### ANSWER:

In addition to the foregoing Reservations of Rights and General Objections, all of which are incorporated herein by reference, Nokia specifically objects to Interrogatory

No. 8 to the extent that it seeks the production of information or documents protected by the Attorney/Client privilege or Work Product immunity. Nokia also objects to this interrogatory to the extent it seeks information that is in the possession, custody, or control of InterDigital.

Nokia further objects to this interrogatory because it is premature and unduly burdensome as, among other things, InterDigital has neither identified each of the patents it has in the past declared to be essential, nor identified all of the statements it has made regarding the essentiality of its patents. Nokia has endeavored to answer the aspects of this interrogatory involving opinions or contentions as completely as reasonably possible at this time. However, because discovery has only recently begun and much of the information Nokia needs to respond to this interrogatory is in InterDigital's possession, custody, or control, Nokia's response is unavoidably incomplete. Nokia will supplement this response insofar as further discovery supports a more complete response.

Subject to and without waiving the General Objections and the specific objections, Nokia answers as follows. Nokia has been damaged by InterDigital's actions as provided in the Complaint and any additional damages, under any damages theory, necessary to fully compensate Nokia for InterDigital's violations of the Lanham Act. Nokia expects the extent of these damages to become clear through discovery and Nokia has not yet computed those damages. Nokia expects to provide its damages calculations in an expert report in accordance with the Court's Rule 16 Scheduling Order entered in this matter. Moreover, Nokia need not demonstrate any particular amount of damages in order to obtain the injunctive relief that it has requested.

Without excluding any other form of damages, Nokia contends that it has been damaged in at least four respects. First, InterDigital's false declarations have contributed to the delay in the "roll out" of WCDMA, i.e., InterDigital's statements have slowed the transition from 2G technology to WCDMA technology. InterDigital's false declarations have caused uncertainty regarding the royalties that must be paid for WCDMA products, raising concerns that WCDMA products will be too expensive to provide adequate profits. Wireless operators have consequently been more reluctant to implement WCDMA technology on a wide scale. The confusion in the marketplace has contributed to Nokia selling WCDMA products at a slower rate than it otherwise would have to wireless operators and end consumers.

Second, InterDigital's false essentiality declarations have inhibited Nokia from licensing its WCDMA portfolio. InterDigital's false declarations effectively accuse the WCDMA products manufactured by third parties of infringement. Those manufacturers are also aware of the essentiality claims of companies like Nokia. As a practical matter, because of the large number of patents declared essential to WCDMA, manufacturers have difficulty distinguishing between the false and true essentiality declarations. To avoid licensing non-essential patents, some manufacturers are more reluctant to enter any WCDMA licenses. The position of manufacturers is exacerbated by the possibility that, if a manufacturer accepted the licensing claims of all the owners of patents declared essential, the cumulative royalties might prevent the manufacturer from being able to profit on the sale of its WCDMA products. InterDigital has recognized that the licensing demands of one company may affect the licensing success of another company.

29

Interdigital stated in the Form 10-K that InterDigital filed with the SEC on March 14, 2006:

> [N]umerous companies . . . claim that they hold essential . . . 3G patents. To the extent that multiple parties all seek royalties on the same product, the manufacturers may have difficulty in meeting the financial requirements of each patent holder.

Manufacturers are thus concerned that the cumulative royalties will "stack" high enough to eliminate the manufacturer's profits. InterDigital's threats thus create a cloud of uncertainty that inhibits manufacturers from licensing Nokia's patents. The sporadic timing of InterDigital's declarations further contributes to this confusion.

Third, InterDigital's false essentiality declarations have made it more difficult for Nokia to obtain favorable terms in its WCDMA licenses. Even when Nokia is successful in licensing its patents, licensees are unwilling to agree to certain terms out of concern for the amount of cumulative royalties that the licensee must pay. As a practical matter, for WCDMA products to be profitable, royalties cannot exceed a certain threshold. If a manufacturer agrees to pay – or fears it must pay – inflated royalties to InterDigital based on the large number of patent declarations InterDigital has made, the manufacturer will be willing to pay Nokia less than it would if InterDigital had not made the false declarations.

Fourth, InterDigital's false statements have harmed Nokia's goodwill. InterDigital's false essentiality claims are equivalent to claims that Nokia must enter a license with InterDigital or face enormous infringement liability. Such infringement claims further harm Nokia's goodwill. Furthermore, InterDigital's false declarations of essentiality exaggerate InterDigital's role – and thereby diminish Nokia's role – in standard setting.

30

## INTERROGATORY NO. 9:

Identify all facts, documents, materials and the person(s) with knowledge related to, that support and/or that refute your contention that "InterDigital's statements have chilled consumer demand after the expiration of the 1999 license because consumers are reluctant to buy allegedly infringing products."

### ANSWER:

In addition to the foregoing Reservations of Rights and General Objections, all of which are incorporated herein by reference, Nokia specifically objects to Interrogatory No. 9 to the extent that it misrepresents the Nokia's statements. Nokia also objects to this interrogatory to the extent that it seeks the production of information or documents protected by the Attorney/Client privilege or Work Product immunity. Nokia further objects to this interrogatory because it is overly broad and unduly burdensome. For example, the interrogatory seeks publicly available information regarding the impact on the wireless industry of false essentiality declarations. Nokia also objects to this interrogatory to the extent it seeks information that is in the possession, custody, or control of InterDigital. For example, in the Form 10-K that InterDigital filed with the SEC on March 14, 2006, InterDigital stated on page 12 that:

> [N]umerous companies . . . claim that they hold essential . . . 3G patents. To the extent that multiple parties all seek royalties on the same product, the manufacturers may have difficulty in meeting the financial requirements of each patent holder.

Nokia further objects to this interrogatory because it is premature as, among other things, InterDigital has neither identified each of the patents it has in the past declared to be essential, nor identified all of the statements it has made regarding the essentiality of its patents. Nokia has endeavored to answer the aspects of this interrogatory involving opinions or contentions as completely as reasonably possible at this time. However, because discovery has only recently begun and much of the information Nokia needs to

31

respond to this interrogatory is in InterDigital's possession, custody, or control, Nokia's response is unavoidably incomplete. Nokia will supplement this response insofar as further discovery supports a more complete response.

To the extent that Interrogatory No. 9 seeks information regarding a narrative description of the harm to Nokia stemming from InterDigital's false statements, Nokia objects to Interrogatory No. 9 as duplicative of Interrogatory No. 8.

Subject to and without waiving the General Objections and the specific objections and pursuant to Federal Rule of Procedure 33(d), Nokia will produce documents from which information targeted by Interrogatory 9 may be derived or ascertained. Nokia further contends that the following persons may have evidence responsive to this interrogatory:

- Henry Joseph Colquhoun Muir, Director of IPR Licensing, Nokia Corporation, Nokia House, Summit Avenue, Farnborough, GU14 0NG, United Kingdom.

The following publicly available documents also relate to Nokia's contention that consumer demand for 3G products has been chilled by InterDigital's false declarations of essentiality.

- Drew Cullen, *Gang of Four set W-CDMA royalty cap*, The Register, Nov. 6, 2002, *available at* http://www.theregister.co.uk/2002/11/06/gang_of_four_set_wcdma/.

- *InterDigital will not limit standard royalty*, 3GNewsroom.com, Nov. 21, 2002, *available at* http://www.3gnewsroom.com/3g_news/nov_02/news_2761.shtml.

- Vodafone, *Examining the IPR Regime*, Aug. 29, 2005, *available at* http://portal.etsi.org/docbox/workshop/gsc/gsc10archive/gsc10_ipr/gsc10_ipr_15a1%20Evaluation%20of%20IPR%20challenges%20in%20Standards%20making.ppt

- Vodafone Group plc, *Evaluation of IPR Challenges in Standards Making*, Aug. 24, 2005, *available at* http://portal.etsi.org/docbox/workshop/gsc/gsc10archive/gsc10_ipr/gsc10_ipr_15%20Evaluation%20of%20IPR%20challenges%20in%20Standards%20making.doc

- *Vodafone evaluation of IPR challenges in ETSI, available at* http://sos-interop.org//files/vodafone_evaluation_of_ipr_challenges_in_etsi_555.doc

- Ericsson, Motorola, Nokia, *Proposal for IPR Policy Reform*, Feb. 20, 2006, available from http://portal.etsi.org/Portal_Common/home.asp

- IPR Working Group, GSM Association, *IPR Problem Statement*, July 20, 2005, *available at* http://sos-interop.org//files/ipr_working_group_problem_statement_ver_2_246.doc

- Tobias Buck, *Groups push for action on intellectual property*, FT.com, Nov. 21, 2005, *available at* http://www.ft.com/cms/s/9609cb48-5ab1-11da-8628-0000779e2340,dwp_uuid=d4f2ab60-c98e-11d7-81c6-0820abe49a01.html.

- John Oates, *Telcos united on anti-patent laws*, The Register, available at http://www.theregister.co.uk/2005/11/22/telcos_unite_on_ip/

33

- ComputerWire, *Patent fees weigh down 3G uptake*, The Register, Sept.

  13, 2002, *available at*

  http://www.theregister.co.uk/2002/09/13/patent_fees_weigh_down_3g/

- *3G market could be stifled by high IPR costs*, 3Gnewsroom.com, May 2,

  2005, *available at*

  http://www.3gnewsroom.com/3g_news/may_05/news_5817.shtml

- Brett Simpson & Richard Kramer, *3G IPR: A Great Mobile Mystery*,

  Arete, Jan. 25, 2005, *available at*

  https://www.arete.net/REPORTS/3GIPR250105.pdf

- Kim Tae-gyu, *Cell Phone Makers Face Higher Royalties*, Korea Times, Oct.

  17, 2005, *available at*

  http://times.hankooki.com/lpage/tech/200510/kt2005101718201511800.htm

- Rudi Bekker's & Joel West, *The Effect of Strategic Patenting on*

  *Cumulative Innovation in UMTS Standardization*, March 2006, *available*

  *at* http://www.dime-eu.org/files/active/1/IPR-WORKING-PAPER-

  9_BekkersWest.pdf

## INTERROGATORY NO. 10:

Identify each Nokia customer you claim was "deterred from purchasing Nokia's standard compliant products" as a result of InterDigital's alleged false and misleading statements, including, without limitation, the contact person at such customer(s) and all facts, documents, materials, and the person(s) with knowledge that support or refute that such customers have been so deterred.

### ANSWER:

In addition to the foregoing Reservations of Rights and General Objections, all of

which are incorporated herein by reference, Nokia specifically objects to Interrogatory

No. 10 to the extent that it misrepresents Nokia's statements. Nokia also objects to this

34

interrogatory to the extent that it seeks the production of information or documents protected by the Attorney/Client privilege or Work Product immunity. Nokia further objects to this interrogatory because it is overly broad and unduly burdensome: publicly available information -- including InterDigital's own SEC filings -- demonstrates the harm to the wireless industry caused by false essentiality declarations. Nokia also objects to this interrogatory because it seeks confidential and proprietary information of Nokia. Nokia also objects to this interrogatory to the extent it seeks information that is in the possession, custody, or control of InterDigital. For example, in the Form 10-K that InterDigital filed with the SEC on March 14, 2006, InterDigital stated on page 12 that:

> [N]umerous companies . . . claim that they hold essential . . . 3G patents.
> To the extent that multiple parties all seek royalties on the same product,
> the manufacturers may have difficulty in meeting the financial
> requirements of each patent holder.

Nokia further objects to this interrogatory because it is premature as, among other things, InterDigital has neither identified each of the patents it has in the past declared to be essential, nor identified all of the statements it has made regarding the essentiality of its patents. Nokia has endeavored to answer the aspects of this interrogatory involving opinions or contentions as completely as reasonably possible at this time. However, because discovery has only recently begun and much of the information Nokia needs to respond to this interrogatory is in InterDigital's possession, custody, or control, Nokia's response is unavoidably incomplete. Nokia will supplement this response insofar as further discovery supports a more complete response.

To the extent that Interrogatory No. 10 seeks information regarding a narrative description of the harm to Nokia stemming from InterDigital's false statements, Nokia objects to Interrogatory No. 10 as duplicative of Interrogatory No. 8.

Subject to and without waiving the General Objections and the specific objections and pursuant to Federal Rule of Procedure 33(d), Nokia will produce documents from which information targeted by Interrogatory 10 may be derived or ascertained. The following publicly available documents also relate to Nokia's contention that Nokia customers have been deterred from purchasing Nokia's 3G products.

- Drew Cullen, *Gang of Four set W-CDMA royalty cap*, The Register, Nov. 6, 2002, *available at*

  http://www.theregister.co.uk/2002/11/06/gang_of_four_set_wcdma/.

- *InterDigital will not limit standard royalty*, 3GNewsroom.com, Nov. 21, 2002, *available at*

  http://www.3gnewsroom.com/3g_news/nov_02/news_2761.shtml.

- Vodafone, *Examining the IPR Regime*, Aug. 29, 2005, *available at* http://portal.etsi.org/docbox/workshop/gsc/gsc10archive/gsc10_ipr/gsc10_ipr_15a1%20Evaluation%20of%20IPR%20challenges%20in%20Standards%20making.ppt

- Vodafone Group plc, *Evaluation of IPR Challenges in Standards Making*, Aug. 24, 2005, *available at* http://portal.etsi.org/docbox/workshop/gsc/gsc10archive/gsc10_ipr/gsc10_ipr_15%20Evaluation%20of%20IPR%20challenges%20in%20Standards%20making.doc

- *Vodafone evaluation of IPR challenges in ETSI*, *available at* http://sos-interop.org//files/vodafone_evaluation_of_ipr_challenges_in_etsi_555.doc

36

- Ericsson, Motorola, Nokia, *Proposal for IPR Policy Reform*, Feb. 20, 2006, available from http://portal.etsi.org/Portal_Common/home.asp

- IPR Working Group, GSM Association, *IPR Problem Statement*, July 20, 2005, *available at* http://sos-interop.org//files/ipr_working_group_problem_statement_ver_2_246.doc

- Tobias Buck, *Groups push for action on intellectual property*, FT.com, Nov. 21, 2005, *available at* http://www.ft.com/cms/s/9609cb48-5ab1-11da-8628-0000779e2340,dwp_uuid=d4f2ab60-c98e-11d7-81c6-0820abe49a01.html.

- John Oates, *Telcos united on anti-patent laws*, The Register, available at http://www.theregister.co.uk/2005/11/22/telcos_unite_on_ip/

- ComputerWire, *Patent fees weigh down 3G uptake*, The Register, Sept. 13, 2002, *available at* http://www.theregister.co.uk/2002/09/13/patent_fees_weigh_down_3g/

- *3G market could be stifled by high IPR costs*, 3Gnewsroom.com, May 2, 2005, *available at* http://www.3gnewsroom.com/3g_news/may_05/news_5817.shtml

- Brett Simpson & Richard Kramer, *3G IPR: A Great Mobile Mystery*, Arete, Jan. 25, 2005, *available at* https://www.arete.net/REPORTS/3GIPR250105.pdf

- Kim Tae-gyu, *Cell Phone Makers Face Higher Royalties*, Korea Times, Oct. 17, 2005, *available at*

http://times.hankooki.com/lpage/tech/200510/kt2005101718201511800.ht

m

- Rudi Bekker's & Joel West, *The Effect of Strategic Patenting on Cumulative Innovation in UMTS Standardization*, March 2006, *available at* http://www.dime-eu.org/files/active/1/IPR-WORKING-PAPER-9_BekkersWest.pdf

## INTERROGATORY NO. 11:

For any 3G patent or technology license Nokia has negotiated, entered or attempted to enter with a third party in which InterDigital's Patents Portfolio or 3G technology was discussed, identify the license agreement, licensee or potential licensee, licensor or potential licensor, date of license and the patents or technology licensed.

### ANSWER:

In addition to the foregoing Reservations of Rights and General Objections, all of which are incorporated herein by reference, Nokia specifically objects to Interrogatory No. 11 to the extent it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. For example, the interrogatory seeks detailed information regarding Nokia's licensing efforts even if InterDigital's patents were only mentioned in passing during such negotiations. Nokia also objects to this interrogatory to the extent that it seeks the production of information or documents protected by the Attorney/Client privilege or Work Product immunity.

To the extent that Interrogatory No. 11 seeks information regarding a narrative description of the harm to Nokia stemming from InterDigital's false statements, Nokia objects to Interrogatory No. 11 as duplicative of Interrogatory No. 8.

Subject to and without waiving the General Objections and the specific objections and pursuant to Federal Rule of Procedure 33(d), Nokia will produce documents from which the information targeted by Interrogatory 11 may be derived or ascertained.

In addition, the following companies also are likely to possess information relating to Nokia's contention that InterDigital's false essentiality statements have stifled Nokia's efforts to license its essential 3G patents:

- BenQ Corp., Taiwan

- Compal Electronics, Taiwan

- Compal Communications, Inc., Taiwan

- Curitel Communications, Inc., Korea

- DBTel, Taiwan

- Haier, China

- LiteOn, Taiwan

- Option NV, Netherlands

- Palm, Inc., United States

- Pantech, Korea

- Sierra Wireless, United States

- TCL, China

## INTERROGATORY NO. 12:

State whether, how and when Nokia determines to declare a patent to be essential to a 3G Standard, including the identity of all facts, documents (by production numbers), materials, and the person(s) with knowledge that relate to Nokia's constructions) of "essential" for such 3G Standard(s).

**ANSWER:**

In addition to the foregoing Reservations of Rights and General Objections, all of which are incorporated herein by reference, Nokia specifically objects to Interrogatory No. 12 to the extent that it seeks the production of information or documents protected by the Attorney/Client privilege or Work Product immunity. Nokia further objects to this interrogatory to the extent it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence: Nokia's Lanham Act claim involves the falsity of InterDigital's essentiality declarations, not Nokia's.

Subject to and without waiving the General Objections and the specific objections and pursuant to Federal Rule of Procedure 33(d), Nokia will produce unobjectionable documents – if any are within Nokia's possession custody, or control – from which the information targeted by Interrogatory 12 may be derived or ascertained.

**INTERROGATORY NO. 13:**

Identify all facts, documents, materials and the person(s) with knowledge related to, that support and/or that refute your contention that "the goods that InterDigital has disparaged have indisputably traveled in interstate commerce." *See* Nokia's Answering Brief at p 31. Your answer should include, but not be limited to, the goods claimed to be disparaged, when the goods were shipped, where the goods were shipped from and to and to whom the goods were shipped.

**ANSWER:**

In addition to the foregoing Reservations of Rights and General Objections, all of which are incorporated herein by reference, Nokia specifically objects to Interrogatory No. 13 to the extent it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. For example, given the broad definition of "relate" incorporated into the interrogatory, any "fact, documents, materials, [or] person with knowledge related to" Nokia's interstate or international sale of 3G products

40

would be responsive to this interrogatory. Nokia further objects to this interrogatory to the extent that it seeks the production of information or documents protected by the Attorney/Client privilege or Work Product immunity.

Nokia has endeavored to answer the aspects of this interrogatory involving opinions or contentions as completely as reasonably possible at this time. However, because discovery has only recently begun and much of the information Nokia needs to respond to this interrogatory is in InterDigital's possession, custody, or control, Nokia's response is unavoidably incomplete. Nokia will supplement this response insofar as further discovery supports a more complete response.

Subject to and without waiving the General Objections and the specific objections and pursuant to Federal Rule of Procedure 33(d), Nokia will produce documents from which the information targeted by Interrogatory 13 may be derived or ascertained.

**INTERROGATORY NO. 14:**

Identify the name, address, phone number and principal contact person for all customers or prospective customers to whom Nokia has presented, demonstrated, offered to sell, sold, offered to license or licensed any Nokia 3G Products, including the Nokia employee(s) with the most knowledge of the foregoing.

**ANSWER:**

In addition to the foregoing Reservations of Rights and General Objections, all of which are incorporated herein by reference, Nokia specifically objects to Interrogatory No. 14 to the extent it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. For example, the interrogatory seeks information regarding Nokia sales personnel who may be unaware of InterDigital's deleterious impact on the industry. Nokia further objects to this interrogatory because it seeks confidential and proprietary information of Nokia. Subject to and without waiving

41

the General Objections and the specific objections and pursuant to Federal Rule of Procedure 33(d), Nokia will produce documents from which the information targeted by Interrogatory 14 may be derived or ascertained.

**INTERROGATORY NO. 15:**

Identify by production number one complete, non-duplicative set of Nokia's business plans, from January 1, 1990, to the present, that are related to InterDigital, patents essential to 3G Standards, 3G Products sold or offered for sale by Nokia, 3G Standards, or any other Nokia product or service that was the subject of InterDigital's purported false or misleading statements.

**ANSWER:**

In addition to the foregoing Reservations of Rights and General Objections, all of which are incorporated herein by reference, Nokia specifically objects to Interrogatory No. 15 to the extent that it seeks the production of information or documents protected by the Attorney/Client privilege or Work Product immunity. Nokia further objects to this interrogatory to the extent it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence: this interrogatory seeks information regarding Nokia's business plans completely unrelated to Nokia's Lanham Act Claim. Nokia further objects to this interrogatory to the extent that it seeks information outside the relevant time period for the claims asserted.

Nokia also objects to this interrogatory because it is vague and ambiguous. For example, use of the term "business plan" is vague and ambiguous. Read literally, this interrogatory would address any information related to forward-looking statements made by *any* Nokia employee regarding "InterDigital," and "patents essential to 3G Standards, 3G Products sold or offered for sale by Nokia, [or] 3G Standards." Because the market for 3G products is expected eventually to replace the market for 2G products, a *substantial* portion of Nokia's entire wireless business involves such "business plans."

42

Even if this interrogatory were limited to "business plans . . . related to InterDigital," it would include every forward-looking statement – including memoranda, letters, and emails – made by any Nokia employee regarding the relations between Nokia and InterDigital. While InterDigital would no doubt be interested in such information, the benefit to InterDigital is unwarranted by the burden on Nokia and the issues involved in Nokia's Lanham Act claim.

Subject to and without waiving the General Objections and the specific objections and pursuant to Federal Rule of Procedure 33(d), Nokia will produce unobjectionable documents – if any are within Nokia's possession custody, or control – from which the information targeted by Interrogatory 15 may be derived or ascertained.

**INTERROGATORY NO. 16:**

Please identify by patent number, the date declared, and the applicable 3G Standard, the patents Nokia has within its patent portfolio that Nokia has declared or contends to be essential to 3G Standards.

**ANSWER:**

In addition to the foregoing Reservations of Rights and General Objections, all of which are incorporated herein by reference, Nokia specifically objects to this interrogatory to the extent that it seeks the production of information or documents protected by the Attorney/Client privilege or Work Product immunity. Nokia further objects to this interrogatory to the extent that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Which patents Nokia has declared to be or contends to be essential is irrelevant to the claims currently in dispute and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the General Objections and the specific objections and pursuant to Federal Rule of Procedure 33(d), Nokia will produce unobjectionable

43

documents – if any are within Nokia's possession custody, or control – from which the information targeted by Interrogatory 16 may be derived or ascertained.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
*Attorneys for NOKIA CORPORATION and NOKIA INC.*

OF COUNSEL:

ALSTON & BIRD LLP
Peter Kontio
Randall L. Allen
Lance A. Lawson
William R. Hubbard
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000

August 15, 2006

44

## VERIFICATION

I, Henry Muir, state as follows:

I am a Director of IPR Licensing for Nokia Corporation. I have reviewed Plaintiffs' First Supplemental Objections and Responses to Defendants' First Set of Interrogatories to Plaintiff, and I know the contents thereof. I verify under penalty of perjury under the laws of the United States of America that the facts listed therein are true and correct to the best of my knowledge.

Executed this 15th day of August, 2006.

Henry Muir
Director of IPR, Licensing
Nokia Corporation
Nokia House
Summit Avenue
Farnborough, Hampshire GU14 0NG
United Kingdom

LEGAL02/30056005v1

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on copies of the foregoing were caused

to be served this 15th day of August, 2006 upon the following in the manner indicated:

### BY HAND

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

### BY FEDERAL EXPRESS

Dan D. Davison
Fulbright & Jaworski LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201-2784

Julia Heaney (#3052)