IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOKIA CORPORATION and NOKIA INC.,<br><br>Plaintiffs,<br><br>v.<br><br>INTERDIGITAL COMMUNICATIONS CORPORATION and INTERDIGITAL TECHNOLOGY CORPORATION,<br><br>Defendants. | C.A. No. 05-16-JJF<br><br>**REDACTED VERSION** |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL ARBITRATION
AND STAY LITIGATION PENDING COMPLETION OF ARBITRATION**

                                MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                Jack B. Blumenfeld (#1014)
                                Julia Heaney (#3052)
                                1201 N. Market Street
                                Wilmington, DE 19801
                                (302) 658-9200
                                Attorneys for NOKIA CORPORATION and NOKIA, INC.

OF COUNSEL:

ALSTON & BIRD LLP
Peter Kontio
Patrick Flinn
Randall Allen
Lance Lawson
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000

Original Filing Date:  December 12, 2006

Redacted Filing Date:  December 22, 2006

i.

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS ......................................................................................... ii

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................ 1

II. SUMMARY OF THE ARGUMENT ................................................................. 2

III. STATEMENT OF FACTS ................................................................................. 3

V. ARGUMENT ...................................................................................................... 7

    A. InterDigital Is Not Entitled to a Stay of This Entire Case Pending Arbitration of an Isolated Evidentiary/Discovery Issue. ......... 7

        1. The FAA Does Not Mandate a Stay of the Entire Non-Arbitrable Lanham Act Claim. ................................................ 8

        2. Extending Any Stay Available Under § 3 to the Nonarbitrable Lanham Act Claim in its Entirety Would Substantially Prejudice Nokia. ...................................... 10

        3. Qualcomm v. Nokia Is Inapposite. ................................................ 11

    B. A Limited Discretionary Stay of Use of the Presentations During Discovery Is not Warranted. ..................................................... 12

    C. Any Claim that the Discovery Versions Are Subject to the Arbitration Clause or the Confidentiality Provisions in the Master Agreement Is "Wholly Groundless." ......................................... 13

**CONCLUSION** ............................................................................................................ 15

# TABLE OF CITATIONS

Page(s)

Cases

*Chang v. Lin,*
    824 F.2d 219 (2d Cir.1987)     10

*CTF Hotel Holdings, Inc. v. Marriott Intern., Corp.,*
    381 F.3d 131 (3d. Cir. 2004)     12

*Cybertek, Inc. v. Bentley Sys., Inc.,*
    182 F. Supp. 2d 864 (D. Neb. 2002)     10

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,*
    815 F.2d 840 (2d Cir. 1987)     8

*Klay v. PacifiCare Health Systems, Inc.,*
    389 F.3d 1191 (11th Cir. 2004)     8

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936)     12

*Levin v. Ripple Twist Mills,*
    416 F. Supp. 876 (E.D.Pa. 1976)     11

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,*
    460 U.S. 1 (1983)     8

*Qualcomm Inc. v. Nokia Corp.,*
    466 F.3d 1366 (Fed. Cir. 2006)     11, 14

*Riley Mfg. Co. v. Anchor Glass Container Corp.,*
    157 F.3d 775 (10th Cir. 1998)     10

*United Communications Hub, Inc. v. Qwest Communications, Inc.,*
    46 F. Appx. 412 (9th Cir. Aug. 23, 2002)     10

Statutes

9 U.S.C. § 3     *passim*

9 U.S.C. § 4     2

1.

Pursuant to 9 U.S.C. §§ 3 and 4, Nokia Corporation and Nokia Inc. (collectively "Nokia") file this answering brief in opposition to the Motion to Compel Arbitration and Stay Litigation filed by InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "InterDigital").

I. NATURE AND STAGE OF THE PROCEEDINGS

Nokia filed suit against InterDigital on January 12, 2005, seeking a declaratory judgment of non-infringement and invalidity as to certain InterDigital patents, and also asserting claims under Section 43 of the Lanham Act. InterDigital moved to dismiss the entire action pursuant to Federal Rules 12(b)(1), 12(b)(6) and 12(h)(3). This Court subsequently dismissed Nokia's claim for declaratory relief, but not its Lanham Act claim.

Nokia's Lanham Act claim alleges that InterDigital has repeatedly misled the marketplace regarding the supposed applicability of InterDigital's patent portfolio to emerging wireless telephony technologies. Compl. ¶¶ 141-46. Under the current Scheduling Order, Nokia may seek to leave to amend prior to January 15, 2007, a date set by the Court over InterDigital's objection. *See* Trans. of March 1, 2006 Hearing, attached hereto as Exhibit E at 08: 8-10; 13:17 – 14:13; 37-40.

The supposed arbitrable issue at the center of the present briefing arose during discovery, which has been proceeding for nine months now under the guidance of Special Master Seitz. In the course of discovery, InterDigital produced two PowerPoint Presentations (the "Presentations") which contain admissions supportive of Nokia's Lanham Act claim. *See* Attachments A and B to Nokia's Mot. for Declaration filed with the Special Master (attached hereto as Exhibit A). InterDigital filed a motion with Special Master Seitz arguing that the confidentiality provision and    REDACTED    in the parties' 1999 Agreement (the so-called "Master Agreement") eliminate Nokia's ability to introduce these Presentations in this case, no

matter how supportive of Nokia's case.[1]  *See* Defs.' First Mot. to Stay, attached hereto as Exhibit B at 3-4.  InterDigital sought arbitration of this [REDACTED] issue under the Master Agreement's arbitration clause and also a stay as to the use of these two Presentations pending that arbitration. *Id.* at 5-9.  Importantly, InterDigital expressly disavowed any argument that the entire Lanham Act case should be stayed. *Id.* at 7.[2]

II.   SUMMARY OF THE ARGUMENT

This case should not be stayed in any manner, even if an arbitration over the use of the disputed Presentations is to proceed.

First, a stay of the entire action pursuant to 9 U.S.C. § 3 is wholly unwarranted. This statutory stay is only applicable to suits actually premised upon an arbitrable issue. The statutory stay may not be applied to the entirety of any litigation that happens to raise isolated arbitrable issues regarding the permissible use of a very limited quantity of evidence. Nokia's Lanham Act claim is not itself arbitrable, nor is that claim brought upon or premised on Nokia's ability to use the disputed Presentations, which constitute but a portion of Nokia's evidence in this matter. A Section 3 stay is not authorized.

Moreover, considering InterDigital's delay in seeking a stay from this Court, the potential prejudices that such a stay would cause, and the interest in promoting judicial

---

[1]   InterDigital initially attempted to "claw back" the documents produced in discovery under a claim that the documents were privileged. *See* Nokia's Mot. for Dec. (Ex. A) at 3-5. In apparent recognition that there is no colorable claim of privilege that could attach to the documents, InterDigital dropped its request that the documents be retuned and instead advanced its current [REDACTED] argument. *See* Ex. B at 8 n.3.

[2]   On December 1, 2006, Special Master Seitz ruled that the applicability of the Master Agreement's [REDACTED] limitations was arbitrable and that only the very limited stay that InterDigital requested should be entered pending such an arbitration. *See* Dec. 1, 2006 Special Master Decision, attached hereto as Exhibit C at 10-12.

efficiency demonstrates that even a limited discretionary stay as to the use of the disputed Presentations in discovery is unwarranted. If arbitration must proceed, it can and should do so in parallel and without disturbing this litigation. But, if a discretionary stay is to issue at all, it should relate only to the use of the disputed Presentations in discovery. Indeed, in papers and oral argument to the Special Master on this exact issue, InterDigital admitted as much.

Lastly, the two PowerPoint presentations at issue were disclosed in at least two distinct and separate ways. First, they were produced to Nokia in the 2002/2003 timeframe REDACTED *See* Defs.' Mot. (D.I. 76) at 5-6. Second, the same presentations were produced by InterDigital during the course of discovery without any objection under or reference to the protections of the confidentiality or REDACTED provisions in the Master Agreement now asserted. *See* Nokia's Mot. for Declaration (Ex. A) at 2. At a minimum, the Court should decline to compel arbitration on the issue of whether Nokia can use documents already produced in discovery in this case. Any claim that documents obtained in discovery are subject to either the arbitration clause or the confidentiality provisions in a 1999 contract is wholly groundless.

  III. STATEMENT OF FACTS

Nokia's pending Lanham Act claim relates in part to a so-called third generation ("3G") wireless telephony technology known as "WCDMA." This WCDMA technology represents an advance (especially with respect to video streaming and internet capabilities) beyond the second generation "digital" mobile telephone products that are most prevalent in the United States. Nokia is a world leader in the manufacture and sale of WCDMA handsets and infrastructure.

As is true of most significant species of mobile communications technology, WCDMA is standardized. In fact, WCDMA is one of two branches of a 3G standard known as

4.

"UMTS," which includes WCDMA and "UMTS-TDD." To ensure that all WCDMA handsets and infrastructure can operate together seamlessly in a WCDMA network (no matter the manufacturer), a standard development organization ("SDO"), after considering the available technologies, promulgates the technical specifications by which all WCDMA products must abide in order to function interoperably. The SDO responsible for the creation of the WCDMA standard is known as the 3rd Generation Partnership Project ("3GPP").

Members of SDOs who hold patents that are "essential" to that standard are typically required to publicly declare those patents. Among other things, this allows organizations that officially set the standards for different localities – "Standard Setting Organizations" or "SSOs" – to make an informed decision about proceeding in a technological direction that implicates patent rights. In the context of WCDMA, the declarations of essentiality are filed with the European Telecommunications Standards Institute ("ETSI") in France. Essentiality declarations filed with ETSI are available worldwide in a searchable online database.

By filing a declaration of essentiality as to WCDMA, a patent holder is representing to the world that the WCDMA standard cannot be practiced without infringing the declared patent and that both the industry and particular sellers of WCDMA products (such as Nokia) are due to pay it royalties. Remarkably, InterDigital has declared to ETSI over 195 of its patents as supposedly essential to UMTS, without identifying whether those patents were essential to WCDMA or UMTS-TDD, even though UMTS-TDD has not been commercially implemented anywhere in the world. Nokia's Lanham Act claim is based, in part, on the allegation that InterDigital submitted these public declarations, and maintained its accompanying

claims for royalties, even though it did not actually consider many of the patents essential at all to any implemented 3G standard.

The two Presentations that are the subject of the instant briefing contain a

REDACTED

but the Presentations are certainly not the only evidence. The technical assessment of InterDigital's patents,

REDACTED

(though it had declared at least 195 to ETSI) are but examples of other evidence demonstrating the bad faith nature of many InterDigital ETSI declarations.

Apparently recognizing that these two Presentations are particularly problematic –

REDACTED

– InterDigital has sought to shield these documents from the eyes of the courts in the United States and in the United Kingdom. D.I. 76 at 6. In this Court, these efforts began on September 5, 2006, when InterDigital filed with the Special Master a Cross Motion to Stay Discovery Relating to Statements Made During Confidential Licensing Presentations Pending Resolution of Arbitration Proceedings ("First Motion for Stay").[3] Importantly, InterDigital sought protection of all copies of the Presentations in Nokia's possession, even though the Presentations were disclosed to Nokia in at least two distinct

---

[3] This Cross-Motion was filed in response to Nokia's September 1, 2006, Motion to the Special Master for Declaration that Documents Are Discoverable.

6.

contexts.

REDACTED

*See* D.I. 76 at 5-6.  Secondly, InterDigital later produced different copies of these documents to Nokia in this litigation on August 16, 2006 ("Discovery Versions").  *See* Ex. A at 2.  It did so in response to Requests for Production and without making any objection under the Master Agreement Confidentiality provisions now at issue.  *Id.* at 4.

In its First Motion for Stay, InterDigital argued that even though it produced the Presentations to Nokia in the course of this litigation, <span>REDACTED</span> bars Nokia from actually using the documents in this case.  *See* Defs.' First Mot. to Stay (Ex. B) at 3-4.  Because the Master Agreement also contains a provision that obligates the parties to arbitrate <span>REDACTED</span> <span>REDACTED</span> InterDigital argued for arbitration of this issue.  *Id.* at 6-9.  InterDigital also made clear to the Special Master that any requested stay of the proceedings should and could be limited "**solely** to the extent they relate to the Confidential Licensing Presentation Statements."  *Id.* at 7 (emphasis in original).  InterDigital argued that a stay of the entire case was unnecessary, and that Nokia would suffer no prejudice from the limited stay "because matters unrelated to the Confidential Licensing Presentation Statements would proceed and would not be subject to the requested stay."  *Id.*  InterDigital reiterated this position in oral argument, arguing that the Special Master need only "preserve the status quo that these two documents not be used in discovery, and that the rest of the case just proceeds and develops."  Trans. of Oct. 13, 2006 hearing, attached hereto as Exhibit D at 41:15 – 41:18.

On December 1, 2006, the Special Master issued an Order granting InterDigital's First Motion to Stay and staying discovery only in the limited manner InterDigital had

7.

requested.[4] Having obtained the relief it sought from the Special Master, InterDigital abruptly changed course. Not one month after telling the Special Master that the entire underlying case need not be stayed pending arbitration, InterDigital now argues that it is "entitled" to a stay of Nokia's entire non-arbitrable Lanham Act claim. *See* D.I. 76 at 19. As set forth below, even the limited stay that InterDigital requested before the Special Master is inappropriate given InterDigital's delay in seeking it and the potential inefficiencies and prejudices such a stay could cause. The all-encompassing mandatory stay under the FAA, which InterDigital now for the first time requests, has even less basis in the law and should be rejected.

Moreover, Nokia opposes the Motion to Compel Arbitration in so far as it relates to the dispute over the use of the Discovery Versions of the Presentations.

IV. ARGUMENT

    A.     InterDigital Is Not Entitled to a Stay of This Entire Case Pending Arbitration of an Isolated Evidentiary/Discovery Issue.

Even assuming, for the limited purposes of the Motion, that the question of whether Nokia can submit and use the Presentations as evidence in this Court is arbitrable, InterDigital is not entitled to a stay of this entire Lanham Act action while this narrow evidentiary/discovery issue is arbitrated. In fact, given the facial inapplicability of 9 U.S.C. § 3 to this case and the potential prejudice to Nokia if the stay is granted, even the limited stay originally requested by InterDigital before the Special Master is inappropriate.

---

[4]     Nokia will timely file its Objections to the Special Masters Order in accordance with Rule 53(g) and in filing this Answering Brief does not waive, and hereby expressly reserves, any such Objections.

8.

1. The FAA Does Not Mandate a Stay of the Entire
Non-Arbitrable Lanham Act Claim.

InterDigital's contention that it is entitled to a mandatory stay of the entire litigation pending completion of the arbitration under 9 U.S.C. § 3 is wrong as a matter of law. D.I. 76 at 19. As the language of the statue makes clear, this statutory stay is only applicable to the extent a claim is actually "brought upon" (*i.e.* premised upon) an issue referable to arbitration.

> If any suit or proceeding be **brought** in any of the courts of the United States **upon any issue referable to arbitration** under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). The law also is clear that when a lawsuit contains multiple claims, some arbitrable and some not, the Section 3 mandatory stay applies only to arbitrable claims, while the non-arbitrable claims are permitted to proceed. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 21 n.23, (1983); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 856 (2d Cir. 1987) (holding that only arbitrable claims must be stayed and finding that "[t]he decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket"); *Klay v. PacifiCare Health Systems, Inc.*, 389 F.3d 1191, 1204 (11th Cir. 2004) ("[I]t is well established that a district court may order arbitration and refuse to stay nonarbitrable proceedings").

The case before this Court is not even one where some claims are brought upon arbitrable issues and others are not. Here, there are **no** claims brought upon an arbitrable issue. It is undisputed that Nokia's Lanham Act claim (the only one pending) is not arbitrable or

subject to any mandatory stay. Nor can there be any argument that Nokia's Lanham Act claim is somehow predicated upon the supposedly arbitrable evidentiary/discovery issue that InterDigital has identified. The Presentations are simply one (albeit powerful) piece of the evidence relating to InterDigital's misconduct; they are far from the only piece. The Lanham Act claim is not brought upon the question of whether Nokia can use these Presentations in this proceeding. The mandatory stay provision of Section 3 simply has no applicability on these facts.

In an apparent effort to create the impression that Nokia's claim is premised upon and cannot proceed without resolution of the dispute over the Presentations, InterDigital argues conclusorily that it is "difficult to imagine how this litigation could proceed simultaneously with the arbitration." D.I. 76 at 20. But, in the October 13, 2006, hearing before Special Master Seitz, InterDigital's counsel explained exactly how easily the litigation and arbitration could – and indeed should – proceed simultaneously:

> Secondly, we too would be concerned about delaying these proceedings, and that is why we have asked for possible – probably the narrowest, certainly not only the narrowest motion of the sort that I've ever requested, but probably one of the narrowest I've ever seen. We are simply asking that to preserve the status quo that these two documents not be used in discovery, **and that the rest of the case just proceeds and develops** . . . **We don't anticipate staying any other discovery whatsoever. We don't anticipate delaying the trial,** and we do anticipate that this issue would be resolved by the ICC well in time for this case to proceed on the track on which its proceeding.

Oct. 13, 2006 hearing (Ex. D) at 41:08 – 42:13 (emphasis added). InterDigital should not now be heard to argue that the Lanham Act claim is brought upon or premised on the question of whether Nokia can use these Presentations in the litigation.

At pages 19-20 of its brief, InterDigital also wrongly cites a series of cases for the proposition that it is "entitled" to a 9 U.S.C. § 3 stay of the entire case. In these cases, the courts primarily found some (but not all) claims before them arbitrable and therefore applied

Case 1:05-cv-00016-JJF    Document 100    Filed 12/22/2006    Page 13 of 20

10.

9 U.S.C. § 3 to stay the arbitrable claims. The courts then considered whether to exercise their *discretion* to extend the § 3 stay to the non-arbitrable claims. They did so either because the arbitration initiated in those cases would be dispositive as to the non-arbitrable claims or because the arbitrable claims far outnumbered the non-arbitrable claims. *See, e.g., United Communications Hub, Inc. v. Qwest Communications, Inc.*, 46 F. Appx. 412 (9th Cir. Aug. 23, 2002) ("Expanding the stay, so as to encompass all of the nonarbitrable claims in the case, is [only] appropriate where the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend upon the arbitrator's decision.")(alteration in original) (attached as Exhibit T to InterDigital's Motion); *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 785 (10th Cir. 1998) (same); *Cybertek, Inc. v. Bentley Sys., Inc.*, 182 F. Supp. 2d 864, 872 (D. Neb. 2002) (same). In this case, the only identified arbitrable issue can hardly be said to predominate, and the proposed arbitration has no potential to be dispositive. Indeed, InterDigital implicitly recognized that the proposed arbitration will not dispose of Nokia's Lanham Act claim because it has just recently moved for the right to seek early Summary Judgment, **apparently during the pendency of its requested stay**.

As the Second Circuit has recognized, "arbitration and federal litigation should proceed simultaneously absent compelling reasons to stay the litigation." *Chang v. Lin,* 824 F.2d 219, 223 (2d Cir.1987). No such compelling reason exists, and a stay of the non-arbitrable Lanham Act claim is unwarranted.

        2.    Extending Any Stay Available Under § 3 to the Nonarbitrable Lanham Act Claim in its Entirety Would Substantially Prejudice Nokia.

The broad stay that InterDigital now seeks to extend to Nokia's nonarbitrable claim would substantially harm Nokia in at least two respects. First and foremost, this stay would prolong the harm caused to Nokia by InterDigital's false and misleading statements.

Second, the broad stay would frustrate any effort by Nokia to amend its claims. After Nokia's claims for declaratory relief were dismissed last December, it became apparent that InterDigital perceived that Nokia might add certain claims back in the case on or after January 1, 2007. *See* Trans. of March 1, 2006 Hearing, attached hereto as Exhibit E at 08: 8-10; 13:17 – 14:13; 37-40. The Court created a scheduling order that would allow Nokia to file for a leave to amend as later as January 15, 2007. Given the approach of this deadline and InterDigital's apparent desire to pursue litigation in some other forum, it is reasonable to infer that one purpose of InterDigital's Motion is to obtain a stay that would frustrate any litigation in this Court.

3.   Qualcomm v. Nokia Is Inapposite.

InterDigital argues that this case is indistinguishable from *Qualcomm Inc. v. Nokia Corp.*, and that because Nokia sought a stay of the entire case in that litigation, it should be judicially estopped from arguing that a stay of the entire case is improper here. In *Qualcomm*, Nokia raised compulsory, potentially dispositive affirmative defenses to Qualcomm's patent infringement claims, claiming that Qualcomm was wholly barred from asserting the patents in suit either by the doctrine of patent estoppel or by virtue of a license. Both the estoppel and license defenses were arbitrable. Thus Qualcomm's claims of infringement necessarily raised, and were "brought upon," the arbitrable issue of whether the patents in suit could be asserted at all. The FAA mandates a stay of nonarbitrable claims where such claims give rise to a dispositive, arbitrable affirmative defense. *See, e.g., Levin v. Ripple Twist Mills,* 416 F. Supp. 876, 881 (E.D.Pa. 1976) (staying patent infringement case pending resolution of arbitration regarding the existence of a license). Accordingly, Nokia rightly argued that 9 U.S.C. § 3 mandated a stay of the entire case.

The facts of this case are wholly different. The only even arguably arbitrable issue is the extent to which two documents can be used as evidence in support of Nokia's claim. These facts do not implicate the mandatory stay provisions of the FAA.

B. A Limited Discretionary Stay of Use of the Presentations During Discovery Is not Warranted.

The Court should not exercise its inherent discretion to enter a partial stay as to the proceedings or discovery here. The factors to which the courts typically look in deciding whether to exercise such discretion include (i) the hardship or inequity that a defendant would face if the case were to proceed; (ii) the injury that a stay would inflict on the plaintiff; and (iii) judicial economy. *See CTF Hotel Holdings, Inc. v. Marriott Intern., Corp.*, 381 F.3d 131, 140 (3d. Cir. 2004) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). None of these factors favor staying Nokia's ability to use the Presentations in discovery.

First, any claim of prejudice that InterDigital may now make is undermined by its untimely request after the documents were already being used in this lawsuit. For example, in June 2006, Nokia expressly identified the Presentations as evidence to be used in this action, even attaching them as exhibits to a response required by one of the Special Master's discovery orders. *See* D.I. 76 at 7. A more open and notorious [REDACTED] is hard to imagine. Yet, InterDigital did not object. Then, in August of 2006, InterDigital itself actually produced the Presentations to Nokia in response to a request for production. *See* Ex. A at 2. InterDigital's written responses and objections to these same document requests (served on May 30, 2006 and replete with objections), made no objection to the production or use of the Presentations under the Master Agreement confidentiality provisions. *See* Ex. A at 4. InterDigital did not finally act to stay this case or to limit the use of the Presentations in this case until later in August of 2006.

Second, any potential prejudice to InterDigital that could supposedly be prevented by entering the limited stay is small. The potential harm to Nokia and to principles of judicial economy is greater. The parties have entered into an Agreed Protective Order governing the use of confidential information, and under the Protective Order the Presentations have been designated "Attorney's Eyes Only." *See* Ex. A at 7. Accordingly, the Presentations cannot and will not be disclosed to the public. The only even arguable prejudice to InterDigital would be exposing InterDigital and its employees to confidential deposition examination and additional discovery regarding the meaning and intent of the Presentations. And, if InterDigital were to somehow prevail in its proposed arbitration, the Presentations and testimony obtained regarding them could be excluded from use at trial or in any dispositive motions. The limited and largely curable prejudice InterDigital can point to is not a sufficient justification for a stay. If, on the other hand, Nokia is prohibited from using the Presentations in ongoing discovery and InterDigital then later does not prevail, the parties and the Court will face the very real possibility of reasonable requests to reconvene depositions and to engage in other late discovery that will almost certainly disrupt whatever schedule the Court has entered.[5]

        C.      Any Claim that the Discovery Versions Are Subject to the Arbitration Clause or the Confidentiality Provisions in the Master Agreement Is "Wholly Groundless."

This Court should not compel the arbitration requested by InterDigital because, at minimum, the extent to which Nokia can use the Discovery Versions as evidence in this case is not a matter properly subject to the Master Agreement's arbitration clause or confidentiality provisions. Any argument to the contrary is wholly groundless.

---

[5]    As noted above, a broader stay would cause Nokia even more severe prejudice.

Even under the law cited by InterDigital, where the parties delegate arbitrability decisions to an arbitrator, this Court must still determine whether InterDigital's assertions of arbitrability are "wholly groundless." *See Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) ("If the court concludes that the parties clearly and unmistakably intended to delegate the [arbitrability] power to an arbitrator, then the court should also inquire as to whether the party's assertion of arbitrability is 'wholly groundless.'"). In undertaking the wholly groundless inquiry, "the district court should look to the scope of the arbitration clause and the precise issues that the moving party asserts are subject to arbitration." *Id.* at 1374.

It is undisputed that the Discovery Versions were not provided to Nokia in connection with any activity or performance under the Master Agreement or the other agreements related thereto. The arbitration clause at issue, which relates on its face only to disputes REDACTED the Master Agreement (and other related agreements), is thus facially irrelevant and wholly unconnected to these Discovery Versions. The same is true of the Master Agreement's confidentiality language:

REDACTED

D.I. 76 at 4. There is nothing in this provision suggesting that the parties intended to protect or limit the use of documents that were disclosed without any connection whatsoever to the parties' performance or activity under the relevant agreements.

The Discovery Versions were provided to Nokia during discovery in this litigation, without any objection based on (or reference to) the Master Agreement's confidentiality provision. The permissible use of these documents is governed by Federal Rule of Civil Procedure 26 and the parties' Protective Order.[6]

## CONCLUSION

For the foregoing reasons, Nokia respectfully requests that this Court not enter any stay of these proceedings and decline to compel arbitration as to the permissible use of the Discovery Versions of the Presentations.[7]

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
Attorneys for NOKIA CORPORATION and NOKIA INC.

---

[6] Nokia does not concede that the dispute over the Marketing versions is subject to the Master Agreement's arbitration clause or confidentiality provisions. Rather, the clear inapplicability of these provisions to the Discovery Versions renders an inquiry as to the Marketing Versions irrelevant.

[7] To the extent any dispute over these Presentations (the marketing or discovery versions) is ultimately referred to arbitration, Nokia reserves all its defenses and, in particular, its right to argue that the arbitration clause in the Master Agreement does not cover or render arbitrable the disputes that the parties appear to have regarding the use of these Presentations.

16.

OF COUNSEL:

ALSTON & BIRD LLP
Peter Kontio
Patrick Flinn
Randall Allen
Lance Lawson
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000

Original Filing Date:  December 12, 2006

Redacted Filing Date:   December 22, 2006

CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on December 22, 2006 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Richard L. Horwitz
> Potter Andersoon & Corroon LLP
> rhorwitz@potteranderson.com

I also certify that copies were caused to be served on December 22, 2006 upon the following in the manner indicated:

> BY HAND AND E-MAIL
>
> Richard L. Horwitz
> Potter Anderson & Corroon LLP
> 1313 N. Market Street
> Wilmington, DE  19801
>
> BY E-MAIL
>
> Dan D. Davison
> Fulbright & Jaworski LLP
> 2200 Ross Avenue
> Suite 2800
> Dallas, TX 75201-2784

>> */s/ Julia Heaney*
>> Julia Heaney