# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION )
and NOKIA INC., )
)
Plaintiffs, )
)
v. )    C.A. No. 05-16 (JJF)
)
INTERDIGITAL COMMUNICATIONS )
CORPORATION and INTERDIGITAL )
TECHNOLOGY CORPORATION, )
)
Defendants. )

## DECISION ON PLAINTIFFS' MOTION FOR DECLARATION THAT DOCUMENTS ARE DISCOVERABLE AND DEFENDANTS' CROSS MOTION TO STAY DISCOVERY PENDING RESOLUTION OF ARBITRATION PROCEEDINGS

Jack B. Blumenfeld and Julia Heaney of MORRIS, NICHOLS, ARSHT & TUNNELL, for Plaintiffs, Nokia Corporation and Nokia, Inc.

Richard L. Horwitz and David E. Moore of POTTER ANDERSON & CORROON, LLP for Defendants, InterDigital Communications Corporation and Interdigital Technology Corporation

Collins J. Seitz, Jr., Special Master

## PROCEDURAL HISTORY

This is a discovery dispute in a Lanham Act case. On September 1, 2006, Plaintiffs Nokia Corporation and Nokia, Inc., (collectively "Nokia") filed a Motion for Declaration that Documents are Discoverable ("Motion for Declaration"). Nokia seeks a ruling that two technical presentations produced during discovery by the Defendants, InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "InterDigital"), need not be returned to InterDigital, and can be subject to discovery in the present action, consistent with the Protective Order entered on July 13, 2006 ("Protective Order").

On September 5, 2006, InterDigital filed a Cross Motion to Stay Discovery Relating To Statements Made During Confidential Licensing Presentations Pending Resolution of Arbitration Proceedings (the "Motion to Stay"). InterDigital asks for a limited stay of discovery while it proceeds with arbitration over the permitted use of the technical presentations at issue in Nokia's Motion for Declaration.

On September 15, 2006, Nokia submitted a response in opposition to InterDigital's Motion to Stay, and on September 22, 2006, InterDigital submitted a reply in support of its Motion to Stay. On October 13, 2006, the Special Master heard argument on both motions.

After consideration of the parties' submissions and argument, for the reasons set forth below, InterDigital's Motion to Stay is granted, and Nokia's Motion for Declaration is denied.

## BACKGROUND

### A.   The 1999 Master Agreement

Nokia and InterDigital have each been involved in research and development efforts for wireless communication technology.  As part of their collaborative efforts, in 1999, Nokia and InterDigital entered into three related agreements – the TDD Development Agreement, the Patent License Agreement, and a Master Agreement.  The three agreements arose from negotiations between Nokia and InterDigital for the development of the next generation of wireless technology.  Nokia and InterDigital sought to work together on research and development, to cross-license the developed technology, and cross-license patents and patent applications relating to the technology.[1]

Although the parties did not provide the Special Master with copies of the TDD Development Agreement or the Patent License Agreement, it appears from the Master Agreement that it acts as the umbrella under which the other agreements operate.  The Master Agreement contains payment terms, and also contains standard provisions addressing consideration (Article 3), dispute

---

[1]  Master Agreement, pp. 1-2 (Ex. C to Motion to Stay).

resolution (Article 4), proprietary information (Article 5), and termination (Article 7).

Relevant to the instant dispute, the Master Agreement also contains a "confidentiality provision" that limits disclosure and use of confidential information of each party. Article 5, Section 5.1 provides as follows:

> 5.1 <u>Protection of Confidential Information</u>. Except as otherwise provided in this Agreement or the Related Agreements, InterDigital and Nokia each agree not to disclose or make available to any third person the other's confidential information, or confidential information created in the TDD Project (regardless of the creator or owner of such information), or the contents of this Agreement and the Related Agreements without the express written consent of the disclosing party. The party receiving confidential information shall use such confidential information only as necessary to exercise its rights or perform its obligations under this Agreement and shall not circulate confidential information within its own organization except to employees with a specific need to know such confidential information for such purposes.

The Master Agreement also contains a broad arbitration provision. According to Section 4.1, "all disputes arising under" any of the three related agreements must be submitted to the mediation and arbitration procedures contained in the Master Agreement.

### B.   The Presentations

In January, 2002, InterDigital began discussions with Nokia about entering into a new patent license agreement to extend beyond the January 1, 2007

4

expiration date of the existing agreements.[2]  As part of the negotiations,

InterDigital gave Nokia a "presentation," marked confidential, reviewing

InterDigital's overall wireless communication patent portfolio, as well as patents

relating to the next generation 3G technology  (the "January 2002 Presentation").[3]

In June, 2003, InterDigital gave a similar but longer confidential presentation to

Nokia on the same subject matter (June 2003 Presentation") (collectively, the

"Presentations").[4]

### C.    Disclosure of the Presentations during Discovery

On June 30, 2006, Nokia attached the Presentations to its statement

submitted as required by the First Discovery Order.  On August 16, 2006, in

response to Nokia's First Set of Requests for Production, InterDigital produced to

Nokia the Presentations.  The Presentations produced in discovery were the same

presentations attached to Nokia's statement, except that InterDigital placed

document identification numbers on each page.

Two weeks later, at the August 29-30, 2006 deposition of InterDigital's

30(b)(6) designee, InterDigital demanded the return of the Presentations, and

claimed that they were subject to the attorney client privilege and had been

inadvertently produced.  InterDigital thereafter withdrew its claim of privilege, and

---

[2]  Motion for Declaration at 2.
[3]  Ex. A to Motion For Declaration.
[4]  Ex. B to Motion For Declaration.

also withdrew its request that Nokia return the Presentations.  Instead, InterDigital

filed its present motion seeking a stay of discovery relating to the Presentations

until arbitration proceedings are concluded under the Master Agreement.

### D.    The UK and New York Proceedings

In addition to the Delaware litigation, Nokia also brought a proceeding in

July 2005 against an InterDigital subsidiary, InterDigital Technology Corporation

("IDT"), in the High Court of Justice, Chancery Division, Patents Court in the

United Kingdom (the "UK Proceeding").[5]  Although the dispute involved in the

UK Proceeding is not entirely clear from the record, the parties agree that in

March, 2006, InterDigital moved to dismiss the UK Proceeding.  As part of the

motion to dismiss briefing, Nokia attempted to rely upon the Presentations to

support its argument against dismissal.

InterDigital responded by filing an action in the United States District Court

for the Southern District of New York.  The complaint has not been made of

record, but as part of the New York litigation, InterDigital filed a motion for a

temporary restraining order ("TRO"), seeking a court order prohibiting Nokia from

disclosing or using the confidential information in the UK Proceeding, pending the

conclusion of arbitration proceedings that had not, as of that date, been initiated.

---

[5]   Motion to Stay at 4.

On March 24, 2006, the New York district court granted a temporary restraining order, precluding Nokia from disclosing or circulating the Presentations except as permitted by the Master Agreement. The district court also enjoined Nokia from disclosing or circulating the Presentations in the UK Proceedings "unless and until (i) the London Court shall have issued an order directing such disclosure and then only to the extent of such order, or (ii) another judge of this court shall have issued an order amending or dissolving this Order."[6] On March 29, 2006, the temporary restraining order was kept in place, but was modified to enjoin disclosure of the Presentations without an order from both the New York district court and the UK court.[7]

On March 31, 2006, the New York district court vacated the temporary restraining order and dismissed the case without prejudice, following the agreement of the parties that Nokia could use the Presentations solely to support its opposition to the motion to dismiss.[8]

**E.    Arbitration Proceedings**

On August 18, 2006, InterDigital initiated arbitration proceedings under the Master Agreement by sending Nokia a notice of dispute letter.[9] By the terms of the Master Agreement, if the parties did not resolve the dispute within 30 days of the

---

[6] Ex. D to Motion to Stay.
[7] Ex. E to Motion to Stay.
[8] Exs. B-C to Sept. 15 Nokia Reply.
[9] Ex. A. to Motion to Stay.

notice letter, senior executives of each party were required to meet and discuss the dispute. According to a November 13, 2006 letter to the Special Master, senior executives of InterDigital and Nokia met on November 8, 2006, but were unable to resolve the dispute.

**F.    The Parties' Positions**

Nokia argues that the Presentations are relevant to the Lanham Act claims in this case, are not protected by any privilege, and therefore need not be returned to InterDigital. It also claims that a private contract between the parties cannot shield relevant information from the judicial process. Because InterDigital produced the Presentations in the litigation, Nokia claims that they were disclosed "outside" the Master Agreement and therefore are not governed by the Master Agreement. Nokia argues further that the confidentiality provisions of the Master Agreement were superseded by an April 2006 Settlement Agreement between the parties. The 2006 Settlement Agreement allegedly permits Nokia to disclose the Presentations as part of the instant litigation. Finally, Nokia contends that even if the Master Agreement controls the disclosure and use of the Presentations, the "court order" provision of the Master Agreement permits disclosure in this case.

In response to Nokia's Motion for Declaration, and in support of its Motion to Stay, InterDigital argues that a stay of discovery should be granted limited to the Presentations, and Nokia should be prohibited from using, disclosing, or relying on

the statements, until the arbitration is concluded.[10]  InterDigital claims that the
Presentations were made during confidential licensing negotiations between the
parties, and Nokia is now attempting to use them to support its Lanham Act claims
in violation of the restrictions on use contained in the Master Agreement.[11]
Because the Master Agreement contains a provision requiring that any dispute
arising out of the Master Agreement be resolved through the procedures set forth in
the Master Agreement, InterDigital claims that any discovery relating to the
Presentations should be stayed until the use of the Presentations can be decided
according to the procedures of the Master Agreement.[12]

## DISCUSSION

### A.    InterDigital's Motion to Stay

In Section 4.1 of the Master Agreement, Nokia and InterDigital agreed to
resolve "all disputes arising under" the Master Agreement and the related
agreements according to the dispute resolution provisions contained in the Master
Agreement.  The Master Agreement is a contract involving international
commerce, and is therefore governed by the Federal Arbitration Act.  9 U.S.C. §§
1, 2 (2004).  A broad arbitration provision like § 4.1 creates a presumption of
arbitrability for issues arising under the Master Agreement.  *ADR/JB, Corp. v.*

---

[10] *Id.* at 3.
[11] *Id.* at 2.
[12] Motion to Stay at 2.

*MCY III, Inc.*, 299 F.Supp.2d 110, 114 (E.D. N.Y. 2004). If there is any ambiguity about whether an issue was intended to be arbitrated, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Looking within the four corners of the Master Agreement, the dispute raised by InterDigital falls squarely within § 4.1 of the Master Agreement. Nokia intends to use the Presentations to support its Lanham Act claims, and has also sought discovery related to the Presentations. Whether Nokia's intended use of the Presentations would violate § 5.1 of the Master Agreement qualifies as a dispute "arising under" the Master Agreement, and therefore should be decided through the contractually-agreed dispute resolution process.

Nokia argues that under federal law, private parties cannot by contract deprive the federal court of relevant non-privileged information such as the Presentations. The cases cited by Nokia, however, are clearly distinguishable from the instant case. In those cases, the parties attempted to rely on the confidential nature of the documents, or asserted a contractual confidentiality agreement, to resist disclosure to a third party. *See Westinghouse Elec. Corp. v. Republic of the Phillipines*, 951 F.2d 1414, 1426 (3d Cir. 1991)(disclosure of information to government on agreement of confidentiality did not prohibit third party access to the information); *In re Columbia/HCA Healthcare Corp. Billing*

10

*Practices Litig.*, 293 F.3d 289, 313 n.3 (6th Cir. 2002)(same); *Constand v Cosby*,

229 F.R.D. 472, 481 n.11 (E.D. Pa. 2005)(confidentiality invoked in an attempt to

shield information from public review); *Sonnino v. University of Kansas Hosp.*

*Authority*, 2004 WL 769325 at *3 (D. Kan.)(confidential settlement agreement

invoked in an attempt to preclude discovery of its details by third party); *Burda*

*Media, Inc. v. Blumenberg*, 1999 WL 413469 at *3 (S.D.N.Y.), superseded on

other grounds by *Johnson Matthey, Inc. v. Research Corp.*, 2002 WL 31235717 at

*2 (S.D.N.Y.)(same).

Here, Nokia is a party to the contract with InterDigital, that InterDigital is

attempting to enforce against Nokia. The contractual term at issue addresses the

"use" that can be made of the confidential Presentations – InterDigital is not

seeking to enforce a confidentiality obligation. Assuming InterDigital prevails in

the arbitration proceedings, nothing in federal law prevents a court from enforcing

a voluntary agreement between two parties restricting the use in future litigation of

confidential information exchanged between the parties.

### B.    Nokia's Motion for Declaration

Nokia's arguments center on the applicability of the Master Agreement to

the Presentations. Under New York law, and case law under the Federal

Arbitration Act, where the parties agree to a broad arbitration provision, the

arbitration panel decides all issues that relate to the main agreement. *Louis Dreyfus*

*Negoce S.A., v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001) (internal citation omitted) ("When parties use expansive language in drafting an arbitration clause, presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated..."). Whether the Presentations come within the disclosure and use provisions of the Master Agreement, and whether the 2006 Agreement of the parties superseded § 5.1 of the Master Agreement are issues to be decided by the arbitration panel. Therefore, a stay of discovery is appropriate, limited to the Presentations, until the arbitration proceedings are concluded.

Alternatively, if it is necessary to consider the merits of Nokia's arguments, I find that the express language of § 5.1 of the Master Agreement covers not only confidential information exchanged as part of the TDD Project, but also covers the disclosure of either party's confidential information unrestricted as to subject matter. The Master Agreement provides that "InterDigital and Nokia each agree not to disclose or make available to any third person the other's confidential information...." There is no dispute that the Presentations were marked confidential and continue to maintain their confidentiality under the Protective Order. Therefore, confidential information exchanged between the parties relating to the Presentations falls within the use limitation of § 5.1 of the Master Agreement.

I also find that, at most, the 2006 Settlement Agreement would have altered the disclosure restrictions of the Master Agreement, but did not supersede the restrictions on use. The 2006 Settlement Agreement addressed the parties' dispute regarding Nokia's royalty obligations for sales of 2G TDMA-based products and related litigation matters. As part of the 2006 Settlement Agreement, Nokia and InterDigital "acknowledge[d] all pre-existing obligations of confidentiality...and agree[d] that they continue to be bound thereby in accordance with their terms."[13] Although the Master Agreement contained a provision allowing either party to "disclose" information in a "Proceeding" between the parties, the "information" referred to in this provision is information relating to the 2006 Settlement Agreement, not confidential information unrelated to the 2006 Settlement Agreement where the confidentiality obligations were reaffirmed.

Furthermore, when the agreement is reviewed as a whole, it becomes clear that ¶ 6 was intended to address only confidentiality issues, and not issues of the proper "use" of confidential information in a Proceeding between the Parties. Instead, the "use" issue was addressed in a separate paragraph of the 2006 Settlement Agreement, and does not refer to prior confidential information exchanged by the parties. *See* ¶ 4(e) ("Use of this Agreement").[14]

---

[13] 2006 Settlement Agreement, ¶ 6.
[14] Nokia also argues that the Protective Order provisions somehow supersede the Master Agreement. As with the 2006 Settlement Agreement, however, the Protective Order is aimed at .

Finally, Section 5.5 of the Master Agreement provides that "the parties may disclose confidential information…if required by…court order." Nokia argues that the Court should simply order disclosure of the Presentations under the Master Agreement, eliminating the dispute over use of the confidential information. This standard contract language, however, typically contemplates disclosure pursuant to subpoenas issued by third parties. It was not intended to address the use of confidential information in a dispute between the parties to the agreement.[15] Perhaps more significantly, what Nokia asks the Court to do, is to ignore a freely-negotiated restriction on use provision in an agreement between two highly sophisticated commercial parties. InterDigital should not be deprived of the benefit of its bargain.

## CONCLUSION

InterDigital's Motion to Stay limited to the Presentations is granted. Nokia's Motion for Declaration is denied. The parties shall provide monthly status reports on the progress of arbitration proceedings.

Dated: December 1, 2006

_____

Special Master

_____

protecting the confidentiality of information produced in litigation, and contains no provision superseding or modifying either party's rights under a separate agreement restricting use of the confidential information.

[15] This interpretation also squares with the other language of the same provision. If information is disclosed pursuant to court order, the party who controls the confidential information must be consulted about its disclosure. This provision has no real meaning in a dispute between the parties to the agreement.

14

# EXHIBIT 2

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and )
NOKIA, INC., )
 )
Plaintiffs, )
 )     C.A. No. 05-16-JJF
v. )
 )
INTERDIGITAL COMMUNICATIONS )
CORPORATION and INTERDIGITAL )
TECHNOLOGY CORPORATION, )
 )
Defendants. )

## SECOND DISCOVERY ORDER

The Special Master, having considered Nokia Corporation's and Nokia, Inc.'s (collectively "Nokia") motion to compel InterDigital Communication Corporation and Interdigital Technology Corporation (collectively "InterDigital") to answer interrogatories, and InterDigital's motion to compel compliance with the First Discovery Order, and having heard argument on the motions on November 2, 2006, it is ordered as follows:

1. On December 21, 2005, the District Court entered a Memorandum Opinion and Order dismissing Nokia's declaratory judgment patent infringement claims. The only claim presently in the case is Nokia's Lanham Act claim. Nokia claims that "InterDigital has repeatedly made public statements that its patent portfolio covers the practice of 3G wireless phone systems and the sale of 3G compliant products."[1] These statements are alleged to be false and made in bad faith, and therefore violate the Lanham Act.

---

[1] Paragraph 143 of Nokia's January 12, 2005 complaint.

2.      In the First Discovery Order, I resolved a dispute about Nokia's Federal

Rule of Civil Procedure 26(a)(1) initial disclosures. Anticipating future disputes between

the parties about the specificity with which each party would set forth the factual basis

for its claims or defenses, in the June 12, 2006 First Discovery Order, I required that

Nokia provide verified responses to the following:

> Nokia shall identify separately (a) each public statement that it relies upon
> for this allegation, (b) the date of the public statement, and (c) the identity
> of anyone who made the statement. For each public statement, Nokia
> shall also provide a detailed response why each statement is false.

InterDigital had a similar obligation:

> On or before July 14, 2006, InterDigital shall provide verified responses to
> the following questions: InterDigital shall identify separately (a) each
> public statement it has made regarding its patent portfolio and whether the
> portfolio covers the practice of 3G wireless phone systems and the sale of
> 3G compliant products, (b) the date of the public statement, and (c) the
> identity of anyone who made the statement.

3.      On August 2, 2006, InterDigital filed a Motion to Compel Compliance

with the Special Master's First Discovery Order and a Motion to Compel

Supplementation of Nokia's Responses to InterDigital's First Set of Interrogatories. The

interrogatory responses in dispute are numbers 2, 5-7, and 9-10. Nokia filed a response

to InterDigital's motion on August 15, 2006, and at the same time served supplemental

responses to InterDigital's interrogatories. After I scheduled a hearing on InterDigital's

motions, the parties requested that I defer the hearing to allow the parties more time to

attempt to resolve InterDigital's motion.

4.      On October 23, 2006, Nokia filed its own motion to compel, requesting

that the Special Master order InterDigital to supplement its answers to interrogatory

numbers 1 and 3-11 regarding the patents it has declared "essential" to European

2

—

Telecommunications Standards Institute ("ETSI") to the practice of Third Generation (3G) technology for digital communication devices. On November 1, 2006, InterDigital filed a response to Nokia's October 23, 2006 motion.

5.     On November 2, 2006, I heard argument on the outstanding motions.[2] Although some progress was made during the hearing to resolve the disputes, a formal Order is nonetheless necessary to state the discovery obligations of each party regarding disclosure of facts supporting their claims and defenses.

6.     First, with regard to InterDigital's motion to compel compliance with the First Discovery Order, InterDigital claims that Nokia (a) has not definitively stated the universe of statements that it relies upon for its Lanham Act claims; and (b) has not provided a detailed response why it claims each statement is false. The "universe of statements" issue was resolved at the November 2, 2006 hearing. Nokia stated that its supplemental responses were complete based on its present knowledge, and that the qualifying language in the interrogatory responses was intended to preserve its right to supplement its discovery responses once Nokia obtained discovery from InterDigital.[3] Therefore, the statements set forth in Nokia's supplemental responses represent the current state of Nokia's knowledge of the facts supporting Nokia's Lanham Act claims, without the benefit of complete discovery from InterDigital.

7.     Turning to InterDigital's motion to require Nokia to supplement its discovery responses, and also Nokia's motion to require InterDigital to supplement its

---

[2]  At the hearing, InterDigital noted that it had submitted its response to Nokia's October 23 motion the day before the hearing, and had not anticipated that Nokia's motion would be heard that day. Because the pending motions are interrelated, the parties were able to address both motions in a satisfactory manner. In rendering this decision, the Special Master has also considered Nokia's November 8, 2006 reply in support of its October 23, 2006 motion.
[3]  Nov. 2, 2006 Hearing Transcript at 10-12.

discovery responses, at bottom, these disputes are about who should turn over their cards

first. InterDigital argues that Nokia as the plaintiff should be required to go first, and to

state clearly and definitively for each of InterDigital's alleged false statements why each

of the statements is false. Nokia contends that InterDigital should, either initially or at

the same time as Nokia serves its responses, state clearly and definitively for each

essentiality statement made by InterDigital whether the statement is true, and the reasons

why the statement is true. The statements at issue focus on, but are not exclusively, the

declarations made to ETSI that each of the many patents InterDigital has claimed are

essential or potentially essential to practice the 3G standard.[4]

       8.     I accept InterDigital's argument that Nokia, as the plaintiff, who bears the

burden of proof, must "show its cards" first by setting forth the facts supporting its

Lanham Act claim. Regarding the appropriate scope of discovery, it should be in

proportion to the claims raised in the complaint. Nokia has alleged that InterDigital's

"ETSI Declarations, combined with public statements, amount to a public statement that

everyone in the industry in order to comply to practice the then-established 3G standards

needs a license to all 195 patents."[5] At argument, InterDigital said it was standing by its

ETSI declarations,[6] which means that each patent in the ETSI declarations must be

addressed to determine whether it is "essential," as the term "essential" is used by ETSI,

to practice the 3G technology. Therefore, within thirty days from the date of this order

---

[4]  As applications continue to ripen into issued patents, the number of patents at issue has been increasing. The current number appears to be 195.

[5]  Nov. 2, 2006 Hearing Transcript at 25. *See also* Hearing Transcript at 24-25 ("Our contention is that the ETSI declarations, combined with their public statements, amounts to a statement that everyone in the industry in order to comply to practice the then-established 3G standards needs a license to all 195 patents.").

[6]  Nov. 2, 2006 Hearing Transcript at 24 ("we are standing by our ETSI Declarations"). *See also* Hearing Transcript at 17 ("the declarations to ETSI state that it is InterDigital's opinion the patents listed in the declarations are either essential or potentially essential to the standards listed.").

Nokia must identify on a patent by patent basis why InterDigital's ETSI declarations are false and made in bad faith.[7] Nokia's statements should be based on its present knowledge, and it can supplement its responses based on information derived from discovery after its supplemental responses are served. The ability to supplement should not be viewed as an opportunity to hold back information Nokia presently has, only to be disclosed at a later stage in the litigation. Finally, if Nokia, in addition to the ETSI declarations, intends to rely on other statements made by InterDigital to support its Lanham Act claim, it must make the same clear statement regarding alleged falsity that is required for InterDigital's ETSI declarations. To the extent that Nokia's supplemental response does not cover all the information requested in InterDigital interrogatories 2 and 5, Nokia shall supplement its responses to those interrogatories on the same schedule.

9.    Once Nokia has shown its cards on its Lanham Act claim, and in particular why InterDigital's essentiality statements are allegedly false, InterDigital must respond in kind, within thirty days from the service of Nokia's verified statement, and with the same level of detail provided by Nokia. InterDigital must state for each patent whether the patent is "essential" as that term "essential" is used by ETSI, and the basis for its defense that its statements regarding essentiality are true statements. To the extent this statement does not cover all the information requested in Nokia interrogatories 1, 3-4, 6, and 11, InterDigital must supplement its responses to those interrogatories on the same schedule.

10.    With regard to Nokia's interrogatories 7-9, these interrogatories are directed primarily to patent validity issues. InterDigital argues that the interrogatories are irrelevant to the truth or falsity of the statements alleged to have violated the Lanham

---

[7] Nokia agreed to this process at the November 2, 2006 argument. Nov. 2, 2006 Hearing Transcript at 32-33.

—

Act. I agree with InterDigital that Nokia's Lanham Act allegations so far are unrelated to patent validity issues. In its November 8, 2006 reply, Nokia does not seriously challenge InterDigital's argument that patent validity issues are irrelevant to Nokia's Lanham Act claims. Therefore, the objection is sustained, and InterDigital need not respond to these interrogatories.

11.    With regard to interrogatory number 10, Nokia has requested discovery directed to license negotiations between InterDigital and third parties relating to the patents at issue in this litigation. Nokia argues that the standards for discovery under Federal Rule of Civil Procedure 26 are broad, and Federal Rule of Evidence 408, precluding admission of settlement negotiations, is an evidentiary rule, not a discovery rule, and therefore should not bar discovery of settlement negotiations. InterDigital has objected to this discovery, claiming that the documents being withheld reflect substantive settlement correspondence that would be inadmissible under Rule 408, and allowing discovery would invade the protections afforded settlement negotiations by Federal Rule of Evidence 408. InterDigital also objects to discovery relating to compliance with 2G standards.

12.    While Rule 408 addresses the inadmissibility of evidence at trial, "the same consideration of the policy which actuates the courts to exclude an offer of compromise made by [the defendant to the plaintiff], also applies to settlement [negotiations between the defendant and a third party.]" *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 554 (E.D.Cal.1990), *overruled on other grounds by Jaffee v. Redmond*, 518 U.S. 1 (1996) (brackets in original) (*quoting McCormick on Evidence* at 813 (3rd. Ed. 1984)). *See also Bottaro v. Hatton Associates*, 96 F.R.D. 158, 159

6

(E.D.N.Y.1982) ("... while admissibility and discoverability are not equivalent, it is clear that the object of the inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue."). Relying on the policy considerations behind Rule 408, the court in *Cook* denied discovery of settlement correspondence, and concluded that settlement discussions can be filled with "puffing and posturing," and are not a reliable source of relevant information for resolving contested claims. The "facts" exchanged in the settlement process may sometimes not be facts at all, but the posturing of the parties. Discovery of settlement exchanges could be highly misleading if allowed to be used for purposes other than settlement. *See also United States v. Contra Costa County Water Dist.*, 678 F.2d 90, 92 (9th Cir.1982) (settlement evidence "is irrelevant as being motivated by a desire for peace rather than from a concession of the merits of the claim"). Statements made during on-going settlement negotiations are considered unreliable and therefore irrelevant to other litigation. Equally important, if discovery is permitted of on-going negotiations, such a ruling may discourage resolution of other disputes, and may chill the on-going settlement process. *See Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 1996 WL 71507, at *6 n.1 (S.D.N.Y.) ("The court recognizes that disclosure of offers in ongoing settlement negotiations might have an adverse impact on the settlement process."); *United States v. American Society of Composers*, 1996 WL 157523, at *3 (S.D.N.Y.) ("Of particular pertinence to this case is the distinction between disclosure of negotiations that have led to a consummated settlement and the disclosure of discussions that are either ongoing or at least have not yet resulted in agreement."). Therefore, InterDigital need not respond to discovery, including depositions, related to on-going license negotiations. Based on the

present record I will also sustain InterDigital's objection to discovery relating to 2G standards. This discovery is unlikely to result in the discovery of admissible evidence in a case involving 3G standards.

13.     Finally, the parties responded to certain interrogatories by invoking Federal Rule of Civil Procedure 33(d) as a substitute for a narrative response. The parties agreed at argument to produce responsive documents on a rolling basis as soon as practical.

_____
Special Master

DATED: November 14, 2006

8