IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA INC.,

    Plaintiffs,

        v.

INTERDIGITAL COMMUNICATIONS
CORPORATION and INTERDIGITAL
TECHNOLOGY CORPORATION,

    Defendants.

C.A. No. 05-16-JJF

**REDACTED**
**PUBLIC VERSION**

## PLAINTIFFS' BRIEF IN SUPPORT OF OBJECTIONS
## TO SPECIAL MASTER'S DECEMBER 1, 2006 DECISION

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Plaintiffs*

OF COUNSEL:

ALSTON & BIRD LLP
Patrick Flinn
Lance Lawson
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000

Original Filing Date: December 21, 2006
Redacted Filing Date: December 29, 2006

i.

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF CITATIONS | | ii |
| I. | NATURE AND STAGE OF THE PROCEEDINGS | 1 |
| II. | SUMMARY OF THE ARGUMENT | 1 |
| III. | RELEVANT FACTUAL BACKGROUND | 2 |
| IV. | ARGUMENT | 6 |
| | A.    Standard of Review. | 6 |
| | B.    The Special Master Erred in Entering a Stay. | 6 |
| |       1.    The Special Master apparently applied the wrong law. | 6 |
| |       2.    The potential harm that a stay could cause to Nokia, this Court's schedule, and principles of judicial economy outweigh any minor harm to InterDigital. | 8 |
| | C.    The Special Master Wrongly Concluded that the Discovery Versions Are Subject to the Arbitration Clause or the Confidentiality Provisions in the Master Agreement. | 9 |
| CONCLUSION | | 11 |

ii.

<u>TABLE OF CITATIONS</u>

<u>Page(s)</u>

<u>Cases</u>

*Builders Ass'n of Greater Chicago v. City of Chicago*,
170 F.R.D. 435 (N.D. Ill. 1996)                              7

*CTF Hotel Holdings, Inc. v. Marriott Intern., Corp.*,
381 F.3d 131 (3d. Cir. 2004)                                 7

*Dimension Data North America, Inc. v. NetStar-1, Inc.*,
226 F.R.D. 528 (E.D.N.C. 2005)                              10

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)                                          7

*Louis Dreyfus Negoce, S.A. v. Blystad Shipping & Trading Inc.*,
252 F.3d 218 (2d Cir. 2001)                                 10

*Qualcomm Inc. v. Nokia Corp.*,
466 F.3d 1366 (Fed. Cir. 2006)                              10

*Simpson v. Speciality Retail Concepts, Inc.*,
121 F.R.D. 261 (M.D.N.C.1988)                                7

<u>Statutes</u>

9 U.S.C. § 3                                               5, 6

Fed. R. Civ. P. 1                                            7

Fed. R. Civ. P. 26(b)                                       10

Fed. R. Civ. P. 53(g)                                        6

1.

I.    NATURE AND STAGE OF THE PROCEEDINGS

Pursuant to Federal Rule of Civil Procedure 53(g), Nokia Corporation and Nokia Inc. (collectively "Nokia") have objected to the Decision of Special Master Seitz issued on December 1, 2006 ("Special Master's Decision", D.I. 87), on the grounds that the Decision (i) enters a partial stay of discovery without balancing the equities that must be considered under the law of this Circuit; and (ii) declares as arbitrable Nokia's right to pursue discovery as to documents produced in this case.

The issues raised herein are closely related to those in InterDigital's Motion to Compel Arbitration and Stay Litigation Pending Completion of Arbitration, filed on November 17, 2006 ("Motion to Compel Arbitration", D.I. 75). At issue in each instance are questions regarding an arbitration over the permitted use of evidence produced in this case and whether this litigation should be stayed in some manner pending that arbitration.

Nokia requests that the Court simultaneously consider this brief and InterDigital's Motion to Compel Arbitration, and incorporates by reference herein the Nature and Stage of Proceedings set forth in its Answering Brief in Opposition to Defendants' Motion to Compel Arbitration, filed on December 12, 2006 ("Nokia's Opposition to Motion to Compel", D.I. 92).

II.    SUMMARY OF THE ARGUMENT

Without balancing the relevant equities, as required by the law of this Circuit, the Special Master entered a stay forbidding Nokia from examining witnesses with – or otherwise using in discovery – two Power Point Presentations (the "Presentations") that were produced by InterDigital during discovery in this case. These

2.

Presentations contain admissions and other statements relevant to Nokia's pending Lanham Act Claim. The Special Master entered the stay merely because he concluded that a confidentiality provision in the 1999 contract between Nokia and InterDigital (hereinafter the "Master Agreement") created an arbitrable question regarding the Presentations.

Identifying a potentially arbitrable dispute is not a sufficient basis for a stay. Instead, the Special Master was required to balance the prejudice to Nokia and the harm to principles of judicial economy that a stay might cause against the harm to InterDigital in the event a stay was not entered. He failed to do so. If the balancing test is performed, it is plain that InterDigital's right to arbitrate and its confidentiality interests are largely and adequately protected by this Court's existing agreed-upon Protective Order. No additional stay of discovery is necessary. On the other hand, a stay creates an unfair obstacle to Nokia's pursuit of its case. Moreover, in the event InterDigital's expansive interpretation of the 1999 confidentiality provision is rejected in arbitration (as seems likely), critical witnesses will have been deposed and discovery will likely have been largely completed before Nokia is permitted to pursue discovery based on this important evidence. The real possibility of prejudice, delay, and inefficiency is obvious.

The Special Master also found that Nokia's right to use copies of the Presentations that were produced in this litigation (and without any objection under the 1999 contract) was subject to arbitration. This finding should not be sustained.

III.    RELEVANT FACTUAL BACKGROUND

The dispute before the Special Master centered on two Presentations

**REDACTED**

*See* Nokia's Opp. To Defs.' Mot. to Compel (D.I. 92) at 9.

3.

**REDACTED**

Copies of the same two Presentations were later produced to Nokia in this litigation (the "Discovery Versions"). *Id.* at 9.

InterDigital has long been on notice that Nokia would seek to use these Presentations. Nokia's original Complaint, filed January 12, 2005, sought declarations of invalidity and non-infringement as to 18 InterDigital patents    **REDACTED**

Then, in March of 2006, Nokia attached these Presentations as exhibits to a witness statement, which was submitted in litigation between Nokia and InterDigital in the United Kingdom. *See* Defs.' Mot. to Compel Arbitration (D.I. 75) at 6.    Throughout that same month,

**REDACTED**                              sought

temporary injunctive relief in New York District Court and undertook various other efforts to shield the documents from the view of the UK Court. *Id.* at 6 n.6. Throughout, InterDigital never made any objection in this Court to the use of the Presentations in this Lanham Act case. In fact, when an accommodation was reached in the UK, InterDigital abandoned any attempt to pursue arbitration over the confidentiality provision, though the dispute with Nokia over the scope of this contract provision was clear. *Id.*

4.

On March 30, 2006, with that dispute unresolved, the parties began written discovery in this case. On June 30, 2006, in response to an order from the Special Master,

**REDACTED**

InterDigital offered no objection in this Court. Nor did it initiate arbitration. Approximately 6 weeks later, on August 16, 2006, InterDigital produced copies of the Presentations – the Discovery Versions – in this litigation in response to Nokia's First Request for Production. *See* Nokia's Opp. To Defs.' Mot. to Compel (D.I. 92) at 9. Even though it raised a variety of objections,

**REDACTED**
nor did InterDigital initiate arbitration or raise any claim of arbitrability.

Next, on August 29 and 30, 2006, at the deposition of InterDigital's 30(b)(6) designee, Nokia sought to examine the witness with the Presentations. *See* Nokia's Mot. for Dec. That Documents are Discoverable, filed with the Special Master on Sept. 1, 2006 (attached hereto as Exhibit "A"), at 3. InterDigital refused to allow the questions and demanded the return of the Discovery Versions, contending that they had been inadvertently produced. *Id.* Rather than making the arguments now advanced, InterDigital first claimed that the documents had to be returned under the "claw back" provision in the Protective Order, which applies to *privileged* documents that have been inadvertently produced. *Id.* at 4. When Nokia demanded to know what privilege InterDigital was claiming, and InterDigital was unable to identify one that was valid, the

5.

present arguments regarding arbitration and Master Agreement's confidentiality provisions finally surfaced before this Court. *Id.*

InterDigital first advanced these arguments before the Special Master in its Cross Motion to Stay Discovery Relating to Statements Made During Confidential Licensing Presentations Pending Resolution of Arbitration Proceedings, filed on September 5, 2006. InterDigital argued that even though it produced the Presentations to Nokia in the course of this litigation,                              **REDACTED**

                              bars Nokia from actually using the documents in this case. *See* Nokia's Opp. To Defs.' Mot. to Stay at 9.

                              **REDACTED**

InterDigital argued that the dispute was arbitrable, and that the Special Master should therefore stay discovery as to the Presentations. *Id.* at 9.

On December 1, 2006, the Special Master issued a Decision granting InterDigital's First Motion to Stay and staying Nokia's ability to use the Presentations in discovery pending arbitration.[1] Special Master's Decision (D.I. 87) at 12. The Special Master's Decision found that "the dispute raised by InterDigital falls squarely within [the arbitration clause] of the Master Agreement," and that, as a result, "a stay of discovery is appropriate, limited to the Presentations, until the arbitration proceedings are concluded." *Id.* at 12.

---

[1]    InterDigital's Motion both cited the Federal Arbitration Act's mandatory stay provision, 9 U.S.C. § 3, and asked the Special Master to issue a discretionary stay. *See* Ex. B to Nokia's Opp. To Defs.' Mot. to Compel (D.I. 92) at 6,7.

IV.    ARGUMENT

    A.    Standard of Review.

    Federal Rule of Civil Procedure 53(g)(3) provides that the Special Master's legal conclusions should be reviewed *de novo*, factual findings under the clearly erroneous standard, and miscellaneous "procedural matters" for abuse of discretion  Fed. R. Civ. P. 53(g)(3)-(5).   The Special Master's decision is fundamentally premised on misapplication of the law and misconstruction of the contract at issue and should therefore be reviewed *de novo*.

    B.    The Special Master Erred in Entering a Stay.

    Even assuming Nokia's ability to question InterDigital witnesses regarding documents produced in this Court is subject to arbitration, the special master applied the wrong law in staying discovery as to those Presentations.[2]

    1.    The Special Master apparently applied the wrong law.

    The Special Master's Decision seemingly concludes that there is an arbitrable dispute over the permitted use of the Presentations, and thus a stay of discovery as to the Presentations is justified or required.  But, as Nokia has previously argued in this Court, the only provision of the Federal Arbitration Act that could mandate a stay in favor of arbitration – 9 U.S.C. § 3 – has no application to the facts of this case. *See* Nokia's Opp. to Mot. to Compel (D.I. 92) at 11-14 (incorporated by reference herein). The existence of an arbitrable discovery dispute did not mandate a stay of this case.

---

[2]    In filing these Objections, Nokia does not waive any argument related to the arbitrability or underlying merits of InterDigital's claims.

Instead, before granting the stay, the Special Master was required to first consider the following factors: (i) the hardship or inequity that InterDigital would face if the case were to proceed; (ii) the injury that a stay would inflict on Nokia; and (iii) judicial economy. *See CTF Hotel Holdings, Inc. v. Marriott Intern., Corp.*, 381 F.3d 131, 140 (3d. Cir. 2004) (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 254-55 (1936)). The Special Master entered his Decision without considering these factors, which weigh heavily against the discovery stay.

Moreover, though the Federal Rules may allow for a stay in appropriate circumstances, they should fundamentally be administered to "secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, while a stay of discovery may be sensible when it will allow for the early resolution of a potentially dispositive issue, courts are skeptical of any stay that will create only inefficiencies and case management delays. *Builders Ass'n of Greater Chicago v. City of Chicago*, 170 F.R.D. 435, 437 (N.D. Ill. 1996) (courts should decline to enter stay that "is unlikely to significantly expedite the litigation, and may actually slow it down"); *Simpson v. Speciality Retail Concepts, Inc.,* 121 F.R.D. 261, 263 (M.D.N.C.1988) (motions to stay discovery "are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems"). Here, it is undisputed that the arbitration for which discovery has been stayed will not dispose of this litigation. The absence of any potential for this substantial efficiency weighs heavily against the imposition of the stay.

8.

    2.    The potential harm that a stay could cause to Nokia, this Court's schedule, and principles of judicial economy outweigh any minor harm to InterDigital.

Nokia should be allowed to proceed with discovery based on the Presentations. This discovery would, of course, be conducted under the auspices of the already-entered Protective Order so that the Presentations are neither (i) disclosed to anyone except the two parties who already have them (Nokia and InterDigital); nor (ii) used in any way except in this litigation between these same two parties. Then, if InterDigital prevails in an arbitration regarding the Master Agreement's purported use limitations, the Court could still prohibit Nokia from using the documents at trial to establish liability. Under this approach, even if InterDigital prevailed, it would have been fully protected both from disclosure of these documents and against the use of the documents to establish liability. The only harm would be minimal additional and completely confidential intra-party discovery regarding two documents – hardly prejudice justifying a stay.

The Special Master's Decision, however, precludes Nokia from seeking any testimony or discovery whatsoever regarding the obviously relevant Presentations. This will have the immediate impact of hindering Nokia's pursuit of the pending Lanham Act claim and excluding relevant evidence from the discovery process. Moreover, InterDigital's position is that if Nokia later prevails in arbitration, the case management issues will simply have to be dealt with at that time. But, if Nokia were only permitted to use the Presentations after arbitration, the negative impact on judicial efficiency, this Court's schedule, and Nokia's right to prosecute its claims would be severe. Discovery is well underway already; it would likely be nearly complete before an arbitration is

9.

resolved. Thus, an arbitral victory for Nokia after the stay has long been in place would almost certainly lead to duplicative depositions, alteration to the Court's schedule, and a host of other inefficiencies.

Of course, had InterDigital initiated the arbitration and sought the stay at the outset of this litigation – or even when Nokia first used the Presentations in a submission to the Special Master in June 2006 – any necessary arbitration could have been completed. By waiting until now to pursue arbitration, InterDigital greatly increased the potential prejudice to Nokia.

> C.     The Special Master Wrongly Concluded that the
> Discovery Versions Are Subject to the Arbitration
> Clause or the Confidentiality Provisions in the
> Master Agreement.

To narrow the issues before the Court, Nokia is willing to limit its use of the Presentations in this litigation to the Discovery Presentations, thus avoiding any disputes (as to arbitrability or otherwise)     **REDACTED**     But the extent to which Nokia can use the Discovery Versions as evidence in this case is not a matter properly subject to the Master Agreement's arbitration clause or confidentiality provisions. The Special Master's contrary contract interpretation should not be sustained.

It is undisputed that the Discovery Versions were not provided to Nokia in connection with any activity or performance under the Master Agreement or the other agreements related thereto.

**REDACTED**

unlike "arising out of or relating to" or "arising from" arbitration clauses, are limited to matters of contract performance or

interpretation. *See Louis Dreyfus Negoce, S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 226 (2d Cir. 2001) ("To the extent a distinction exists between the present language of 'arising from' and *Kinoshita's* 'arising under,' we believe that distinction is more than just a semantic one, <u>and only the latter phrase limits arbitration to a literal interpretation or performance of the contract.</u>") (emphasis added). Even where the parties delegate arbitrability decisions to an arbitrator, the Court must still determine whether InterDigital's assertions of arbitrability are "wholly groundless." *See Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) ("If the court concludes that the parties clearly and unmistakably intended to delegate the [arbitrability] power to an arbitrator, then the court should also inquire as to whether the party's assertion of arbitrability is 'wholly groundless.'").

InterDigital's arbitrability assertions are wholly groundless because

REDACTED

Rule 26(b) provides this Court broad discretion in structuring discovery, and empowers it to allow discovery "of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b); *see also Dimension Data North America, Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005). The Discovery Versions were provided to Nokia during discovery in this litigation, without any objection based on (or reference to) the Master Agreement's confidentiality provision, and thus Rule 26(c) and the parties' Protective Order governs the permissible use of these documents. In fact, the

11.

Discovery Versions were expressly produced pursuant to the Protective Order, which provides that one of its purposes is "to ensure that the parties are permitted reasonably necessary *uses* of [discovery materials]." Protective Order, Preamble (emphasis added). The Protective Order further provides that "all disputes concerning CONFIDENTIAL or ATTORNEYS' EYE ONLY information produced in this matter and under the protection of this Protective Order shall be resolved by the United States District Court for the District of Delaware." Protective Order ¶ 30. This Court can and should resolve any dispute over the use of the Discovery Versions.

CONCLUSION

For the foregoing reasons, the December 1, 2006 Decision of the Special Master should be vacated.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Plaintiffs*

OF COUNSEL:

ALSTON & BIRD LLP
Patrick Flinn
Lance Lawson
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000

December 21, 2006
549771

## CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on December 29, 2006 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Richard L. Horwitz
Potter Andersoon & Corroon LLP
rhorwitz@potteranderson.com

I also certify that copies were caused to be served on December 29, 2006 upon the following in the manner indicated:

BY HAND AND E-MAIL

Wilmington, DE 19801

BY E-MAIL

Dan D. Davison
Fulbright & Jaworski LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201-2784

*/s/ Julia Heaney*
Julia Heaney