IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOKIA CORPORATION and NOKIA INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 05-16 (JJF) |
| INTERDIGITAL COMMUNICATIONS CORPORATION and INTERDIGITAL TECHNOLOGY CORPORATION, | ) ) ) ) | |
| Defendants. | ) ) | |

**DECISION ON DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH DISCOVERY OBLIGATIONS REGARDING ELECTRONIC INFORMATION AND PLAINTIFFS' CROSS-MOTION TO COMPEL ELECTRONIC DISCOVERY**

Jack B. Blumenfeld and Julia Heaney of MORRIS, NICHOLS, ARSHT & TUNNELL, for Plaintiffs, Nokia Corporation and Nokia, Inc.

Richard L. Horwitz and David E. Moore of POTTER ANDERSON & CORROON, LLP for Defendants, InterDigital Communications Corporation and InterDigital Technology Corporation

Collins J. Seitz, Jr., Special Master

## PROCEDURAL HISTORY

This is a discovery dispute involving the scope of production of electronically stored information. On November 3, 2006, defendants InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "InterDigital") filed a motion to compel ("InterDigital Motion") compliance by Nokia Corporation and Nokia, Inc. (collectively "Nokia") with their discovery obligations under Fed. R. Civ. P. 26(f) and the Default Standard for Discovery of Electronic Discovery for the District of Delaware. InterDigital seeks an order compelling Nokia immediately to provide disclosures required by Rule 26, and approving InterDigital's proposed electronic discovery collection and production procedures.

On November 20, 2006, Nokia filed a Cross-Motion to Compel Electronic Discovery ("Nokia Cross-Motion"). Nokia seeks a ruling that would require InterDigital to adopt search terms proposed by Nokia relevant to 195 of InterDigital's United States patents that relate to InterDigital's "essentiality" claims under the 3G UMTS standard. Nokia also requests that InterDigital use search terms that would identify any third party, not already licensed, with whom InterDigital has sought to license any of InterDigital's patents declared "essential" to the 3G UMTS standard and for which there are no currently scheduled licensing negotiations.

2

On November 28, 2006, InterDigital submitted a response to Nokia's Cross-Motion, and on December 6, 2006, Nokia submitted a reply in support of its Cross-Motion. On December 21, 2006, InterDigital replied to Nokia's Cross-Motion. After consideration of the parties' submissions and for the reasons set forth below, InterDigital's Motion is granted in part and denied in part, and Nokia's Cross-Motion to Compel is denied.

## BACKGROUND

When Nokia and InterDigital conferred about a discovery plan as required by Fed. R. Civ. P. 26(f), a dispute arose regarding the scope of discovery of electronically stored information and the applicability of the "Delaware Local Rules on Default Standards for Discovery of Electronic Documents."[1] InterDigital claims that Nokia failed to provide a complete list of all custodians involved in Nokia's patent declaration process, and sales, marketing, and licensing; information about

---

[1] An Ad Hoc Committee under the direction of Chief Judge Sue L. Robinson (http://www.ded.uscourts.gov/ordersmain.htm) developed the District of Delaware's Default Standard for Discovery of Electronic Evidence ("E-Discovery") (the "Default Standard"). The Default Standard is not a local court rule but instead a standard that is "available for use by the Court and the parties engaged in litigation in the District of Delaware." *Id.* Because it is not a local rule, each Judge decides whether to adopt the Default Standard as part of his or her case management orders. It appears that only Chief Judge Robinson and former District Court Judge Kent Jordan have expressly included the Default Standard. While Judge Farnan has not stated that he would adopt the Default Standard as part of his regular case management orders, in a recent decision he cited the Default Standard as the authority to address the form of production of electronically stored information. *See Wyeth v. Impax Labs, Inc.*, 2006 WL 3091331 (D. Del.) at 2.

3

relevant electronic systems; and electronic document retention policies.[2]  After

Nokia raised those issues, the parties conferred again, and eventually reached sub-

stantial agreement on many issues in InterDigital's Motion.  Nokia supplemented

its disclosures and identified nine additional electronic document custodians.  It

also provided additional information about Nokia's electronic systems, and de-

scribed in greater detail Nokia's electronic document retention policies.  In addi-

tion, with limited exceptions, the parties agreed to the e-discovery collection and

production procedures proposed by InterDigital.[3]

The parties appear to have resolved all but two issues regarding electronic

discovery – custodians and search terms.  InterDigital claims that Nokia has failed

to provide a complete list of all custodians who are potential sources of relevant

electronic information.  The parties have also not agreed on search terms relating

to the number of InterDigital patents and applications to be searched, and the scope

of discovery directed to InterDigital's on-going 3-G licensing negotiations.

## I.     Custodians of Relevant Electronic Information

On November 1, 2006, Nokia identified ten individuals as electronic infor-

mation custodians representing various levels (Managers, Vice Presidents, and Di-

rectors) of Nokia's Intellectual Property Rights and Licensing organizations.  In-

terDigital asked Nokia to expand its list of custodians to include eleven additional

---

[2] InterDigital Motion, pp. 1, 4.
[3] Nokia Cross-Motion, Ex. 1.

4

individuals as well as individuals involved in five categories: (1) Nokia's 3G patent declaration process, (2) Nokia's analysis of InterDigital's patents, (3) patent licensing, (4) sales, marketing, roll-out, and support of Nokia's 3G products, and (5) standard setting organizations.[4] Nokia eventually agreed to include most of the eleven identified individuals or their successors after Nokia stated that two of the identified individuals are no longer employed by Nokia, two do not have electronic documents relevant to any claims or defenses in this matter, and one was never a Nokia employee.[5] Nokia also supplemented its list of electronic information custodians to include nineteen more employees. Nokia further confirmed the parties' mutual agreement to "consider requests to supplement its custodian list with specific individuals...that are identified during discovery."[6]

At about the same time the parties were discussing Nokia's custodians, the parties were going through a similar process with respect to InterDigital's custodians. On September 18, 2006, InterDigital sent a list of custodians to Nokia. In response, Nokia requested additional individuals by name and category. InterDigital responded and agreed to include most but not all of the additional individuals sug-

---

[4] Nokia Cross-Motion, Ex. 3, p. 1.
[5] *Id.* at 3.
[6] *Id.* at 4.

gested by Nokia.[7]  InterDigital thereafter clarified its response and stated that it would only identify "key" individuals for the categories requested by Nokia.[8]

The current dispute arose when InterDigital asked Nokia to identify "all" personnel involved in the various activities identified by InterDigital.  InterDigital insists that Nokia is required under the Default Standard to produce a "complete list of electronic document custodians."  In addition, InterDigital claims Nokia must provide "a reasonably complete list" of its document custodians.  InterDigital further claims that Nokia is aware of or should be aware of its likely document custodians at this time.  Rather than making a good faith effort to disclose the individuals most likely to have relevant information in this case, InterDigital claims that Nokia has chosen to disregard the Default Standard and has limited the number of custodians whose records will be searched for relevant information.  Finally, InterDigital argues that while neither party need identify every individual who may have a relevant document, the parties should be required to identify the custodians who have material knowledge and documents relevant to the case.

Nokia responds that its identification of "key" personnel is consistent with the requirements of the Default Standard.  Moreover, Nokia states that the parties agreed to and InterDigital adopted the practice of identifying key personnel with

---

[7] Nokia Cross-Motion Ex. 5.
[8] *Id.* at Ex. 4.

6

full reservation to request the identification of additional custodians during the course of discovery.

## II.  **Search Terms**

### A.    **InterDigital's ETSI-Declared Patents and Applications**

In its Cross-Motion, Nokia argues that InterDigital should be required to search its documents for information related to 195 of InterDigital's ETSI-declared patents because Nokia has placed in issue all 195 patents as part of its Lanham Act claim.  InterDigital objects, arguing that it would be unreasonably burdensome and a waste of resources if InterDigital were required to search millions of pages of documents relating to patents for which Nokia has not yet offered any evidence that InterDigital made false or misleading statements regarding specific patents. Moreover, InterDigital argues that, pursuant to the Second Discovery Order, Nokia is required to identify "the specific patents that InterDigital allegedly falsely declared as essential to ETSI" and until such identification is made, the request is premature and possibly over-inclusive.  InterDigital further argues that Rule 26 bars this type of discovery because the burden and expense of producing these documents outweigh Nokia's interest in searching for evidence on which to base its claims.

Finally, InterDigital claims that Nokia has conceded the undue burden of this project, when Nokia stated that "[t]he enormous number of patents InterDigital

has declared to ETSI has prevented Nokia from reviewing every patent that Inter-

Digital claims is essential...."[9]

**B.    "On-Going" Licensing Negotiations**

The parties originally each proposed search terms to identify information re-

lated to the other party's licensing efforts.  On November 14, 2006, I issued the

Second Discovery Order which limited the scope of that discovery.  I found that

InterDigital "need not respond to discovery, including depositions, related to on-

going license negotiations."  *See* Second Discovery Order at ¶ 12.

After the issuance of the Second Discovery Order, the parties now disagree

about the meaning of "on-going" license negotiations.  InterDigital argues that

Nokia is only entitled to discovery regarding 3G license negotiations that are no

longer "on-going"; *i.e.*, completed negotiations that either resulted in a license, or

were terminated.  Nokia claims that the appropriate definition of an "on-going" ne-

gotiation is a negotiation in which a subsequent meeting of the parties is currently

scheduled.  It should not, according to Nokia, include negotiations that are stalled

or postponed indefinitely.

While InterDigital offered to produce information regarding completed 3G

licenses with third parties, InterDigital objected to discovery of all communications

leading up to these completed settlements because that would undermine the policy

---

[9] InterDigital Response to Nokia Cross-Motion, Ex. F, at p. 5.

considerations behind the limitations in Federal Rule of Evidence 408. InterDigital also rejected Nokia's narrow definition of "on-going" negotiations. According to InterDigital, if the Court accepts Nokia's definition, then only settlement negotiations with on-going meetings would be immune from discovery. Adopting this approach, InterDigital argues, would invite the precise danger of the case law I cautioned against in the Second Discovery Order – discourage resolution of disputes and chill on-going settlement negotiations. Finally, InterDigital argues that discovery of on-going but suspended settlement discussions would be contrary to the purpose of Rule 408 – threatening the success of dispute resolution.

## DISCUSSION

### A.    Defendants' Motion to Compel Compliance

The Default Standard dictates that the parties must be prepared to discuss the parameters of their anticipated e-discovery early in the litigation – at the Fed. R. Civ. P. 26(f) conference. This period in the litigation, where the parties and their counsel are collecting electronically stored information that might be relevant to the pending litigation, requires the parties and their counsel to work in good faith and with a sense of urgency based upon the quickness with which electronic information can be modified or deleted. Prior to both the Rule 26(f) conference and any meet and confer in preparation for the Rule 26(f) conference, the parties and their counsel must gather a significant amount of information regarding the parties'

9

electronic information systems, document retention information systems, document retention policies, as well as "the most likely custodians of relevant electronic materials." Default Standard, ¶ 2. This includes identifying custodians in possession of electronic information.

Because the litigation is still unfolding, it may be difficult for the parties to know where all of the electronic information is located and who the custodians might be. Section 2 of the Default Standard accounts for this uncertainty by requiring only that the parties exchange "a list of the <u>most</u> <u>likely</u> custodians of relevant electronic materials, including a brief description of each person's title and responsibility." (emphasis added). There is no mandate that the parties identify "all" of the likely custodians at this point.[10] Moreover, after each party has collected relevant information regarding the sources, locations, amounts, and custodians of electronically stored information, the "most likely" standard requires that the parties qualitatively review and prioritize the results to determine which custodians are "more likely" than others to have relevant electronic information.

At the same time, because the parties are required to exercise good faith in collecting and exchanging information prior to the Rule 26(f) conference, there is no basis in the rule to limit the number of "most likely" custodians. Section 2 of

---

[10] It is logical to assume that if the Default Standard Committee wanted to include a requirement that "all" custodians be identified at this time, the Default Standard would have included such language.

the Default Standard does not restrict a party's obligation to search for and pre-serve information relevant to the litigation. Once discovery commences, the par-ties are free to ask about the opposing party's preservation protocol, the identity of all sources of electronically stored information that might be relevant to the litiga-tion, who the "custodian(s)" of that information might be, what process was used to identify that information, and when that information was located and preserved. With that process, the requesting party may test the extent to which the responding party acted in good faith to disclose information prior to the Rule 26(f) conference.

Because the Default Standard does not require the exchange of a list of all custodians, InterDigital's Motion is denied. Both parties are directed to exchange a list of the custodians most likely to have relevant electronic information, based upon the parties' good faith analysis of the issues, no later than seven days after the date of this decision.

### B. **Electronic Search Terms**

#### 1. **InterDigital's Declared Patents and Applications**

InterDigital argues that the parties' searches of electronic documents should be limited only to the eleven patents Nokia has selected, and not all of the ETSI-declared patents that Nokia has maintained form the basis of its Lanham Act claim. Conducting searches on more than the selected eleven patents, InterDigital asserts, is unnecessary because:

11

> **[a]t this time** it is uncertain which InterDigital patents Nokia
> will address in its response to the Second Discovery Order.
> **Until such time** as Nokia specifies precisely which patents
> form the basis of its claim, the Court should not allow massive
> discovery into all 195 patents because some of them ultimately
> may not be at issue in the case.

December 6, 2006 Response, p. 5 (emphasis in original).

InterDigital concedes that Nokia has "implicated all 195 patents." *Id.* Indeed, Nokia confirmed this position during the November 2, 2006 hearing. *See* Second Discovery Order, p. 4, fn. 5 ("[Nokia's] contention is that the ETSI declarations, combined with their public statements, amounts to a statement that everyone in the industry in order to comply to practice the then-established 3G standards needs a license to all 195 patents"). InterDigital's defense similarly implicates all 195 patents. *See id.*, p.4 fn.6 ("we are standing by our ETSI Declarations"). Moreover, in the Second Discovery Order, I found that "[r]egarding the appropriate scope of discovery, it should be in proportion to the claims raised in the complaint" and therefore "each patent in the ETSI declarations must be addressed...." *See* Second Discovery Order, ¶ 8.

In the Second Discovery Order, Nokia was required to identify "on a patent by patent basis why InterDigital's ESTI declarations are false and made in bad faith." *See* Second Discovery Order at 4-5. Nokia served its submission on December 14, 2006, and included 195 InterDigital patents. Therefore, electronic search terms should include InterDigital's 195 patents at issue in this litigation.

### 2. "On-Going" Licensing Negotiations

In the Second Discovery Order at ¶ 12, I determined that "InterDigital need not respond to discovery, including depositions, relating to on-going license negotiations." The parties are now at odds over the meaning of "on-going licensing negotiations." It appears that the parties need a bright line rule to resolve this dispute. Therefore, "on-going" licensing negotiations shall be protected from discovery only where InterDigital has met with, or exchanged correspondence with, a potential licensee within the last three months, and where the parties in the three month time period substantively addressed a license under any of the 195 patents at issue in this litigation.[11]

### 3. Nokia's Goodwill

In InterDigital's November 28, 2006 response to Nokia's Cross-Motion, InterDigital argues that Nokia is now claiming that InterDigital's false statements have harmed Nokia's "goodwill." InterDigital requested that Nokia add search terms that would capture information about "the value of Nokia's goodwill and reputation...." Nokia initially refused to add those search terms, but after further discussions, it appears that the parties have only a limited dispute to be resolved.

InterDigital wants Nokia to include in its electronic searches the string "(goodwill or reputation) w/200 (vale* or amount or decreas*)." Nokia does not

---

[11] *See* also Decision on Nokia's Request for Reconsideration, issued with this decision.

object to InterDigital's proposed search string as long as it is further limited to
"Nokia's" goodwill or reputation as follows:  Nokia* w/12 (goodwill or reputation)
w/200 (valu* or amount or decreas*).  I accept InterDigital's proposed search
string as it is further modified by Nokia.  It appears reasonably limited to obtain
discoverable information about Nokia's goodwill or reputation.

## CONCLUSION

For the reasons set forth above, InterDigital's Motion to Compel Compli-
ance by Nokia with its discovery obligations under Fed. R. Civ. P. 26(f) and the
Default Standard is granted in part and denied in part.  Both Nokia and InterDigital
must revise their list of custodians to comply with the Default Standard in a man-
ner consistent with this decision.  The definition of "on-going" license negotiations
means where InterDigital has met with, or exchanged correspondence with, a po-
tential licensee within the last three months, and where the parties substantively
addressed a license under any of the 195 patents at issue in this litigation.  As to
the remainder of Nokia's motion regarding approval of its proposed e-discovery
collection and production procedures, as well as search methodologies, it is denied
as moot, except that InterDigital's latest proposal regarding the "goodwill" search
string, as modified by Nokia, shall be used by Nokia.

With respect to Nokia's Cross-Motion to Compel, the motion is denied.


_____
Special Master

Dated:  January 3, 2007