EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOKIA CORPORATION and NOKIA INC., <br><br> Plaintiffs, <br><br> v. <br><br> INTERDIGITAL COMMUNICATIONS CORPORATION and INTERDIGITAL TECHNOLOGY CORPORATION, <br><br> Defendants. | C.A. No. 05-16-JJF |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs Nokia Corp. and Nokia Inc. ("Nokia") hereby request that Defendants InterDigital Communications Corp. and InterDigital Technology Corp. ("Defendant" or "InterDigital") serve upon Nokia sworn Answers to Interrogatories set forth within thirty (30) days after the service hereof. These interrogatories are intended to be continuing in nature so as to require supplemental answers if InterDigital obtains information on the basis of which it knows that a prior response was incorrect or incomplete when made, or if InterDigital knows that the response, although correct when made, is no longer true and the circumstances are such that a failure to amend the response is, in substance, a knowing concealment.

## DEFINITIONS AND INSTRUCTIONS

Nokia incorporates herein the instructions regarding supplementation and the assertion of any claim of privilege or immunity, and the definitions set forth in Plaintiff Nokia's

First Set of Requests for Production of Documents to Defendant InterDigital. Nokia additionally instructs as follows:

(1) If you contend that an interrogatory cannot be answered, state the reasons for such a conclusion.

(2) Unless otherwise indicated, the relevant time period for these interrogatories is five years before the earliest of the priority dates for the declared InterDigital patents.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify every patent that InterDigital has declared to any person or entity to be essential to a 3G standard (the "declared InterDigital patents"), indicating in claims charts the essential claims in the patent and the specific provision of every 3G standard, including WCDMA and/or CDMA2000, to which that claim is essential, with specific citations to standards documents, such as those made available by ETSI, 3GPP, and 3GPP2.

### INTERROGATORY NO. 2:

Identify every patent that InterDigital currently contends to be essential to a 3G standard, indicating in claims charts the essential claims in the patent and the specific provision of every 3G standard, including WCDMA and/or CDMA2000, to which that claim is essential, with specific citations to standards documents, such as those made available by ETSI, 3GPP, and 3GPP2.

2

**INTERROGATORY NO. 3:**

If InterDigital no longer contends that a claim of a declared InterDigital patent is essential to the portions of the 3G standards for which that claim was previously declared essential, explain why InterDigital's position on the essentiality of that claim has changed.

**INTERROGATORY NO. 4:**

Describe with specificity InterDigital's investigation, evaluation, and/or analysis related to InterDigital's contention that any of the claims of the declared InterDigital patents are essential to practice a 3G standard, as addressed in Interrogatory No. 1, including but not limited to all facts and documents (by production numbers), and materials that relate to InterDigital's construction(s) of "essential" for such 3G standard(s), and identify all persons with knowledge of any of those facts.

**INTERROGATORY NO. 5:**

Separately for each claim of the declared InterDigital patents that InterDigital has alleged to be essential to a 3G standard, state how you construe each element of that claim; the scope of equivalents under the doctrine of equivalents to which you contend the claim and/or element is entitled; and identify all intrinsic and all extrinsic evidence upon which you rely in support of your construction.

**INTERROGATORY NO. 6:**

Describe in detail any facts relating to InterDigital's knowledge or belief of the truth or falsity of InterDigital's statements that the declared InterDigital patents are essential to some portion of some 3G standard, including but not limited to (1) any statements by any person or entity related to InterDigital or third parties that some or all of the claims of the declared InterDigital patents may not be essential, or may be invalid, or that any processes InterDigital

3

uses to determine essentiality may be deficient, (2) any indication by any person or entity related to InterDigital – at any time whatsoever – that InterDigital should exaggerate or otherwise misrepresent the scope or validity of any patents currently or formerly owned by InterDigital, and (3) any InterDigital business plans – at any time whatsoever – regarding exaggerating or otherwise misrepresenting the scope or validity of any patents owned by InterDigital.

**INTERROGATORY NO. 7:**

Identify all novelty, validity or invalidity, infringement or noninfringement, enforceability or unenforceability, prior art investigations, studies, legal opinions, or searches, written or oral, that have been conducted, prepared, or requested by or on behalf of InterDigital, or that are otherwise known to InterDigital, with respect to the declared InterDigital patents, 3G standards or the Nokia 3G products, and summarize the conclusions and the reason(s) therefor.

**INTERROGATORY NO. 8:**

Describe with specificity the conception and reduction to practice of each claimed invention in the declared InterDigital patents, including each inventor's role and the identity of all documents related to the foregoing.

**INTERROGATORY NO. 9:**

Describe the applicability of each of the secondary considerations of non-obviousness as set forth in *Graham v. John Deere*, 383 U.S. 1 (1966), and its progeny to each claimed invention in the declared InterDigital patents.

**INTERROGATORY NO. 10:**

For each of the patents that InterDigital has declared to some entity to be essential to some wireless telecommunications standard, including the declared InterDigital patents and patents InterDigital has declared to be essential to 2G standards, describe the licensing history,

4

including but not limited to all licenses and attempts by InterDigital to license the patents and the terms and conditions of such license or potential licenses, and/or the outcome of each attempt.

**INTERROGATORY NO. 11:**

For each of the declared InterDigital patents, describe in detail any accusations made by any person or entity related to InterDigital of patent infringement to any third party regarding that patent, whether litigation ensued, and, if such an accusation was made or if litigation ensued, explain the outcome and disposition, including but not limited to where suit was filed, the parties, involved, the case caption, and the terms of any settlement or judgment.

**INTERROGATORY NO. 12:**

Describe in detail any Lanham Act, false advertising, or similar claim that has been brought against InterDigital, including but not limited to the identities of the parties, the jurisdiction, the case number, and the resolution (if any).

**INTERROGATORY NO. 13:**

Identify each person whom InterDigital expects to call as a witness at trial, including whether the witness will testify as a fact or an expert witness, the subject matter on which each witness is expected to testify, and each document upon which each witness will rely or testify about at trial.

**INTERROGATORY NO. 14:**

Identify each source of information that you considered in preparing your responses to these interrogatories, including but not limited to all persons who provided information that you considered in preparing your responses.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


_____

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
jheaney@mnat.com
   *Attorneys for Nokia Corporation and Nokia Inc.*

OF COUNSEL:

Peter Kontio
Randall L. Allen
Lance A. Lawson
William R. Hubbard
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000

April 13, 2006

6

<u>**CERTIFICATE OF SERVICE**</u>

I, Julia Heaney, hereby certify that on April 13, 2006 I caused to be served Plaintiffs' First Set of Interrogatories upon the following in the manner indicated:

**<u>BY HAND</u>**

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

**<u>BY FEDERAL EXPRESS</u>**

D. Dudley Oldham
Fulbright & Jaworski
1301 McKinney
Suite 5100
Houston, TX 77010

Dan D. Davison
Fulbright & Jaworski LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201-2784

_____
Julia Heaney

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NOKIA CORPORATION and | ) | |
| NOKIA, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C. A. No. 05-16-JJF |
| v. | ) | |
| | ) | |
| INTERDIGITAL COMMUNICATIONS | ) | **JURY TRIAL DEMANDED** |
| CORPORATION and INTERDIGITAL | ) | |
| TECHNOLOGY CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**INTERDIGITAL'S ANSWERS AND OBJECTIONS**
**TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the FEDERAL RULES OF CIVIL PROCEDURE, Defendants InterDigital

Communications Corp. and InterDigital Technology Corp. (collectively "Defendant" or

"InterDigital") serve their Answers and Objections to Plaintiffs Nokia Corp. and Nokia Inc.

("Nokia") First Set of Interrogatories and for same would show as follows:

**GLOBAL AND GENERAL OBJECTIONS**

1.    InterDigital objects to the interrogatories to the extent that they seek discovery of

information independently obtained by InterDigital's attorneys. In addition, InterDigital objects

to Nokia's interrogatories to the extent that the requests or definitions seek information protected

by the attorney-client privilege, the work product doctrine, and/or any other immunity or

privilege. InterDigital does not intend to disclose any such information. Any inadvertent

disclosure or production of such information or documents shall not be deemed a waiver of the

attorney-client privilege or the work product doctrine.

2.      InterDigital objects to the interrogatories to the extent they call for expert opinions, which is premature at this time. InterDigital will provide such information and opinions as required in the Scheduling Order issued by the Court.

3.      InterDigital objects to all of the discovery requests to the extent that they seek production of information or documents containing or embodying trade secrets, confidential business information, proprietary materials and/or other private matters protected under Federal Rule of Civil Procedure 26(c)(7) and/or Federal Rule of Evidence 501. Subject to the Local Rules of this Court, InterDigital objects to the production of such information, documents or things until such time as a Protective Order is entered by the Court.

4.      InterDigital objects to Nokia's definition of the term "you," "your," "InterDigital," "Plaintiff," and "Defendant" because each is overbroad and possibly includes persons for whose action and knowledge InterDigital could not have knowledge and whose documents InterDigital would not have access. For example, Nokia's definition would include all individuals who are "former officers, directors, agents, employees, attorneys, accountants, investigators, consultants, or other persons acting or purporting to act on them or their behalf." Additionally, InterDigital objects to this definition as it seeks information from individuals whose documents or knowledge are protected by the attorney-client privilege or attorney work product doctrine or consulting expert privilege.[1]

5.      InterDigital objects to Nokia's definition No. 2, "document," to the extent it seeks to impose requirements in excess of those under the FEDERAL RULES OF CIVIL PROCEDURE.

6.      InterDigital objects to Nokia's definition No. 3, "identify," as that term is used and defined in an overbroad manner and exceeds the requirements of the FEDERAL RULES OF

---

[1] Nokia has incorporated into its First Set of Interrogatories to InterDigital its definitions from its First Set of Requests for Production to InterDigital. InterDigital's objections here refer to the definitions and instructions as set forth and numbered in Nokia's First Set of Requests for Production to InterDigital.

2

CIVIL PROCEDURE. Additionally, to the extent this definition purports to require information to be identified on a privilege log, it exceeds the legal requirements for a privileged document log.

7. InterDigital objects to Nokia's definition No. 14, "essential" on the grounds that it is overbroad, vague, and ambiguous because it fails to define "technical grounds," "commercial grounds," "normal technical practice," "the state of the art," "the time of standardization," "methods associated with those products," and the standards and portions of the standard to which the term is directed. InterDigital further objects to this definition to the extent that it prematurely calls for expert testimony.

8. InterDigital objects to Nokia's definition No. 15, "3G standard" on the grounds that the phrase "third-generation wireless telecommunication standard" is vague and the terms "WCDMA" and CDMA2000 are not defined.

9. InterDigital objects to Nokia's definition No. 17, "Nokia 3G Product," as it fails to identify the 3G products "designed, manufactured, distributed or sold by Nokia." Without such identification, this definition is vague and ambiguous, and fails to identify with sufficient particularity the Nokia 3G Products to which this definition refers.

10. InterDigital objects to Nokia's definition No. 19, "third-party 3G Product," as it fails to identify the 3G products to which it refers. Without such identification, this definition is vague and ambiguous, and fails to identify with sufficient particularity the third party 3G products to which this definition refers.

11. InterDigital objects to Nokia's definition No. 20, "declared InterDigital Patents," as it is overbroad, unduly burdensome and fails to identify with any particularity the InterDigital Patents to which the Plaintiffs' claims and the Defendants' defenses thereto apply. For purposes of answering these interrogatories, InterDigital shall respond to "declared InterDigital Patents" as

3

meaning U.S. Patent Nos. 5,093,840, 5,179,571, 5,228,056, 5,345,467, 5,631,921, 5,974,039, 6,771,632, 6,873,643, 6,956,889, 6,993,063, and RE38627.

12.    InterDigital objects to Nokia's definition No. 21 as it defines for purposes of Nokia's interrogatories for production the relevant scope as being "since five years before the earliest of the priority dates for the declared InterDigital Patents." This definition is overbroad and fails to identify with any particularity to the relevant time period for which information are sought.

13.    InterDigital objects to Nokia's First Set of Interrogatories as they purport to serve 14 interrogatories on InterDigital. These interrogatories contain unrelated and excessive subparts that should be counted as separate interrogatories for purposes of determining the allowed number of interrogatories. InterDigital will answer these interrogatories, but reserves its right to object to Nokia's attempt to exceed 50 interrogatories as provided in the Revised Rule 16 Scheduling Order.

14.    Counsel for InterDigital invites discussion with counsel for Nokia with regard to the objections asserted herein, with the expectation that discussions between counsel may eliminate or modify objections, or reduce burden on InterDigital, or otherwise result in a mutually satisfactory resolution of objections contained herein.

## GLOBAL AND GENERAL OBJECTIONS TO INSTRUCTIONS

1.    InterDigital objects to Nokia's Instruction No. 1 as it exceeds the requirements under the FEDERAL RULES OF CIVIL PROCEDURE for the identification of withheld privileged documents. *See* F.R.C.P. 26(b)(5). InterDigital will object to interrogatories and document requests that call for privileged documents and identify any document withheld with sufficient information to enable the Court to determine whether the asserted privileges is satisfied.

4

2.      InterDigital objects to Nokia's Instruction No. 3 as vague and ambiguous as it seeks information regarding "a responsive document [that] once existed, but has been destroyed, or cannot be located." Additionally, this request is overbroad and unreasonably burdensome as it seeks to impose requirements on InterDigital that exceed the requirements of the FEDERAL RULES OF CIVIL PROCEDURE.

3.      InterDigital objects to Nokia's Instruction No. 5 as it is vague and ambiguous and seeks InterDigital's determination of Nokia's subjective intent of its definitions and instructions. This sort of ambiguity lacks the certainty which is required for InterDigital to reasonably respond to Nokia's discovery. InterDigital, subject to its objections, will use the definitions as set forth in Nokia's discovery requests.

## SPECIFIC OBJECTIONS AND RESPONSES TO NOKIA'S FIRST SET OF INTERROGATORIES

InterDigital incorporates each of its Global and General Objections ("General Objections") and Objections to Instructions into each of the following answers. Subject to and without waiving any of the above General Objections, InterDigital submits the following specific objections and responses to Nokia's first set of interrogatories.

**INTERROGATORY NO. 1:**

Identify every patent that InterDigital has declared to any person or entity to be essential to a 3G standard (the "declared InterDigital patents"), indicating in claims charts the essential claims in the patent and the specific provision of every 3G standard, including WCDMA and/or CDMA2000, to which that claim is essential, with specific citations to standards documents, such as those made available by ETSI, 3GPP, and 3GPP2.

**ANSWER:**

OBJECTION. InterDigital objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, or consulting expert privilege. InterDigital objects to this interrogatory as it is overbroad and

5

unreasonably burdensome as it seeks to require InterDigital to "[i]dentify every patent that InterDigital has declared to any person or entity to be essential to a 3G standard (the "declared InterDigital patents")." InterDigital objects to the term "declared" as unfairly vague. InterDigital objects on the grounds that this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. InterDigital objects to this request to the extent that it call for expert opinion testimony prior to such time as it may required by the Court's scheduling order.

Subject to these objections, InterDigital's Global Objections and the Agreed Protective Order, InterDigital states as follows:

At least the following U.S. InterDigital patents are essential or potentially essential to a 3G standard.

- 5,093,840;
- 5,179,571;
- 5,228,056;
- 5,345,467;
- 5,631,921;
- 5,974,039;
- 6,771,632;
- 6,873,643;
- 6,956,889;
- 6,993,063; and
- RE38627.

6

To the extent that this interrogatory seeks specific provisions of the WCDMA and specific citations to standards documents, InterDigital, pursuant to FED. R. CIV. P. 33(d) further states that the answer to this interrogatory may be derived or ascertained from the business records of InterDigital or from an examination, audit or inspection of such business records, and the burden of deriving or ascertaining the answer is substantially the same for Nokia as for the InterDigital, including the following documents:

- 3GPP TS 21.101 Technical Specifications and Technical Reports for a UTRAN based 3GPP system

- 3GPP TR 21.900 Technical Specification Group working methods

- 3GPP TR 21.902 Evolution of 3GPP system

- 3GPP TR 21.905 Vocabulary for 3GPP Specifications

- 3GPP TS 22.001 Principles of circuit telecommunication services supported by a Public Land Mobile Network (PLMN)

- 3GPP TS 23.002 Network architecture

- 3GPP TS 23.101 General UMTS Architecture

- 3GPP TS 23.107 Quality of Service (QoS) concept and architecture

- 3GPP TS 23.110 UMTS Access Stratum Services and Functions

- 3GPP TS 23.221 Architectural requirements

- 3GPP TS 25.101 User Equipment (UE) radio transmission and reception (FDD)

- 3GPP TS 25.102 User Equipment (UE) radio transmission and reception (TDD)

- 3GPP TS 25.104 Base Station (BS) radio transmission and reception (FDD)

- 3GPP TS 25.105 Base Station (BS) radio transmission and reception (TDD)

- 3GPP TS 25.123 Requirements for support of radio resource management (TDD)

- 3GPP TS 25.133 Requirements for support of radio resource management (FDD)

- 3GPP TS 25.141 Base Station (BS) conformance testing (FDD)

- 3GPP TS 25.142 Base Station (BS) conformance testing (TDD)

- 3GPP TS 25.201 Physical layer - general description

- 3GPP TS 25.211 Physical channels and mapping of transport channels onto physical channels (FDD)

- 3GPP TS 25.212 Multiplexing and channel coding (FDD)

- 3GPP TS 25.213 Spreading and modulation (FDD)

- 3GPP TS 25.214 Physical layer procedures (FDD)

- 3GPP TS 25.215 Physical layer; Measurements (FDD)

- 3GPP TS 25.221 Physical channels and mapping of transport channels onto physical channels (TDD)

- 3GPP TS 25.222 Multiplexing and channel coding (TDD)

- 3GPP TS 25.223 Spreading and modulation (TDD)

- 3GPP TS 25.224 Physical layer procedures (TDD)

- 3GPP TS 25.225 Physical layer; Measurements (TDD)

- 3GPP TS 25.301 Radio interface protocol architecture

- 3GPP TS 25.302 Services provided by the physical layer

- 3GPP TS 25.303 Interlayer procedures in Connected Mode

- 3GPP TS 25.304 User Equipment (UE) procedures in idle mode and procedures for cell reselection in connected mode

- 3GPP TS 25.305 User Equipment (UE) positioning in Universal Terrestrial Radio Access Network (UTRAN); Stage 2

- 3GPP TS 25.306 UE Radio Access capabilities definition

- 3GPP TS 25.321 Medium Access Control (MAC) protocol specification

- 3GPP TS 25.322 Radio Link Control (RLC) protocol specification

- 3GPP TS 25.331 Radio Resource Control (RRC) protocol specification

- 3GPP TS 25.401 UTRAN overall description

- 3GPP TS 25.402 Synchronization in UTRAN Stage 2

- 3GPP TS 25.410 UTRAN Iu interface: General aspects and principles

- 3GPP TS 25.411 UTRAN Iu interface layer 1

- 3GPP TS 25.412 UTRAN Iu interface signaling transport

- 3GPP TS 25.413 UTRAN Iu interface Radio Access Network Application Part (RANAP) signaling

- 3GPP TS 25.414 UTRAN Iu interface data transport & transport signaling

- 3GPP TS 25.415 UTRAN Iu interface user plane protocols

- 3GPP TS 25.420 UTRAN Iur Interface: General Aspects and Principles

- 3GPP TS 25.421 UTRAN Iur interface Layer 1

- 3GPP TS 25.422 UTRAN Iur interface signaling transport

- 3GPP TS 25.423 UTRAN Iur interface Radio Network Subsystem Application Part (RNSAP) signaling

- 3GPP TS 25.424 UTRAN Iur interface data transport & transport signaling for Common Transport Channel data streams

- 3GPP TS 25.425 UTRAN Iur interface user plane protocols for Common Transport Channel data streams

9

- 3GPP TS 25.426 UTRAN Iur and Iub interface data transport & transport signaling for DCH data streams

- 3GPP TS 25.427 UTRAN Iur/Iub interface user plane protocol for DCH data streams

- 3GPP TS 25.430 UTRAN Iub Interface: general aspects and principles 3GPP TS 25.431 UTRAN Iub interface Layer 1

- 3GPP TS 25.432 UTRAN Iub interface: signaling transport

- 3GPP TS 25.433 UTRAN Iub interface Node B Application Part (NBAP) signaling

- 3GPP TS 25.434 UTRAN Iub interface data transport and transport signaling Common Transport Channel data streams

- 3GPP TS 25.435 UTRAN Iub interface user plane protocols for Common Transport Channel data streams

- 3GPP TS 25.442 UTRAN implementation-specific O&M transport

- 3GPP TS 25.450 UTRAN Iupc interface general aspects and principles

- 3GPP TS 25.451 UTRAN Iupc interface layer 1

- 3GPP TS 25.452 UTRAN Iupc interface: signaling transport

- 3GPP TS 25.453 UTRAN Iupc interface Positioning Calculation Application Part (PCAP) signaling

- 3GPP TS 25.460 UTRAN Iuant interface: General aspects and principles

- 3GPP TS 25.461 UTRAN Iuant interface: Layer 1

- 3GPP TS 25.462 UTRAN Iuant interface: Signaling transport

- 3GPP TS 25.463 UTRAN Iuant interface: Remote Electrical Tilting (RET) antennas Application Part (RETAP) signaling

- 3GPP TR 25.902 Iub/Iur congestion control

10

- 3GPP TR 25.921 Guidelines and principles for protocol description and error handling

- 3GPP TR 25.922 Radio resource management strategies

- 3GPP TR 25.931 UTRAN functions, examples on signaling procedures

- 3GPP TR 25.942 Radio Frequency (RF) system scenarios

- 3GPP TR 25.943 Deployment aspects

- 3GPP TR 25.951 Base Station (BS) classification (FDD)

- 3GPP TS 34.108 Common test environments for User Equipment (UE); Conformance testing

- 3GPP TS 34.109 Terminal logical test interface; Special conformance testing functions

- 3GPP TS 34.121 Terminal Conformance Specification, Radio Transmission and Reception (FDD)

- 3GPP TS 34.122 Terminal conformance specification, Radio transmission and reception (TDD)

- 3GPP TS 34.123-1 User Equipment (UE) conformance specification; Part 1: Protocol conformance specification

- 3GPP TS 34.123-2 User Equipment (UE) conformance specification; Part 2: Implementation conformance statement (ICS) specification

- 3GPP TS 34.123-3 User Equipment (UE) conformance specification; Part 3: Abstract test suites (ATSs)

To the extent that this interrogatory seeks specific provisions of the cdma2000 and/or EVDO standards and specific citations to standards documents, InterDigital, pursuant to FED. R.

11

CIV. P. 33(d), further states that the answer to this interrogatory may be derived or ascertained from the business records of InterDigital or from an examination, audit or inspection of such business records, and the burden of deriving or ascertaining the answer is substantially the same for Nokia as for the InterDigital, including the following documents:

- TIA/EIA/IS-2000.1-C, Introduction to cdma2000 Spread Spectrum Systems (May 2002)

- TIA/EIA/IS-2000.2-C, Physical Layer Standard for cdma2000 Spread Spectrum Systems (May 2002)

- TIA/EIA/IS-2000.3-C, Medium Access Control (MAC) Standard for cdma2000 Spread Spectrum Systems (May 2002)

- TIA/EIA/IS-2000.4-C, Signaling Link Access Control (LAC) Standard for cdma2000 Spread Spectrum Systems (May 2002)

- TIA/EIA/IS-2000.5-C, Upper Layer (Layer 3) Signaling Standard for cdma2000 Spread Spectrum Systems (May 2002)

- TIA/EIA/IS-2000.5-C, Analog Signaling Standard for cdma2000 Spread Spectrum Systems (May 2002)

- TIA/EIA/IS-856, cdma2000 High Rate Packet Data Air Interface Specification (November 2000)

- TIA/EIA/IS-856-1, cdma2000 High Rate Packet Data Air Interface Specification (January 2002)

- TIA/EIA/IS-856-1, cdma2000 Wireless IP Network Standard (August 2003)

- TIA/EIA/IS-707, Data Service Options for Wideband Spread Spectrum Systems (February 1998)

- TIA/EIA/IS-707-A, Data Service Options for Wideband Spread Spectrum Systems (April 1999)

- TIA/EIA/IS-707-A-1, Data Services Options for Spread Spectrum Systems – Radio Link Protocol Type 3 Addendum No. 1 (December 1999)

- TIA/EIA/IS-707-A-2, Data Service Options for Spread Spectrum Systems Addendum 2 (March 2001)

- TIA-870-1[E] Test Data Service Option (TDSO) for cdma2000® Spread Spectrum Systems - Addendum 1[E] (January 2004)

- TIA/EIA/IS-870 Test Data Service Option (TDSO) for cdma2000® Spread Spectrum Systems (April 2001)

- TIA/EIA/IS-890 Test Application Specification (TAS) for High Rate Packet Data Air Interface (July 2001)

- TIA-898 Signaling Conformance Tests for cdma2000® Spread Spectrum Systems (December 2001)

- TIA-919 Signaling Conformance Standard for cdma2000® High Rate Packet Data Air Interface (May 2002) (Superseded by TIA-919-A-2006)

- TIA-918 Signaling Conformance Standard for cdma2000® Wireless IP Networks (May 2002)

- TIA-1013 Mobile Equipment (ME) Conformance Testing for cdma2000® Spread Spectrum Standards (December 2003)

- TIA-1035 Signaling Conformance Test Specification for cdma2000 Air Interface (January 2005)

13

- TIA-1036 Interoperability Test Specification for cdma2000 Air Interface (January 2005)

- TIA-870-A Test Data Service Option (TDSO) for cdma2000® Spread Spectrum Systems – Revision A (March 2005)

- TIA-1044 Signaling Conformance Test Specification for Over-the-Air Service Provisioning (TIA-1044-2006) (February 2006)

To the extent that this interrogatory requests claim charts and other confidential information, InterDigital states that it will supplement its response after the parties enter a mutually agreeable protective order.

InterDigital's investigation and analysis is ongoing. InterDigital reserves the right to supplement the above identified patents, claims, charts, and standard references.

**INTERROGATORY NO. 2:**    Identify every patent that InterDigital currently contends to be essential to a 3G standard, indicating in claims charts the essential claims in the patent and the specific provision of every 3G standard, including WCDMA and/or CDMA2000, to which that claim is essential, with specific citations to standards documents, such as those made available by ETSI, 3GPP, and 3GPP2.

**ANSWER:**

OBJECTION. InterDigital objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, or consulting expert privilege. InterDigital objects to this interrogatory as it is overbroad and unreasonably burdensome as it seeks to require InterDigital to "identify every patent that InterDigital currently contends to be essential to a 3G standard . . ." and to indicate "in claims charts the essential claims in the patent and the specific provision of every 3G standard, including WCDMA and/or CDMA2000, to which that claim is essential, with specific citations to standards documents, such as those made available by ETSI, 3GPP, and 3GPP2." InterDigital objects on the grounds that this interrogatory is not reasonably calculated to lead to the discovery

14

of admissible evidence. InterDigital objects to this request to the extent that it call for expert opinion testimony prior to such time as it may required by the Court's scheduling order.

Subject to these objections, InterDigital's Global Objections and the Agreed Protective Order, InterDigital incorporates by reference its answer to Interrogatory No. 1.

## INTERROGATORY NO. 3:

If InterDigital no longer contends that a claim of a declared InterDigital patent is essential to the portions of the 3G standards for which that claim was previously declared essential, explain why InterDigital's position on the essentiality of that claim has changed.

## ANSWER:

OBJECTION. InterDigital objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, or consulting expert privilege. InterDigital further objects to this interrogatory as it is overbroad and unreasonably burdensome as it seeks to require InterDigital to "[i]dentify every patent that InterDigital has declared to any person or entity to be essential to a 3G standard (the "declared InterDigital patents")." InterDigital objects to the term "declared" as unfairly vague. InterDigital objects to this request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. InterDigital objects to this request to the extent that it call for expert opinion testimony prior to such time as it may required by the Court's scheduling order.

Subject to these objections, InterDigital's Global Objections, and the Agreed Protective Order, InterDigital states that each of the patents identified in Interrogatory No. 1 remain essential or potentially essential to practice a 3G standard.

## INTERROGATORY NO. 4:

Describe with specificity InterDigital's investigation, evaluation, and/or analysis related to InterDigital's contention that any of the claims of the declared InterDigital patents are essential to practice a 3G standard, as addressed in Interrogatory No. 1, including but not limited to all facts and documents (by production numbers), and materials that relate to InterDigital's

construction(s) of "essential" for such 3G standard(s), and identify all persons with knowledge of any of those facts.

**ANSWER:**

OBJECTION. InterDigital objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, or consulting expert privilege. InterDigital objects to this interrogatory as it is overbroad and unreasonably burdensome as it seeks to require InterDigital to "[i]dentify every patent that InterDigital has declared to any person or entity to be essential to a 3G standard (the "declared InterDigital patents")." InterDigital further objects to the term "declared" as unfairly vague. InterDigital objects to this request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. InterDigital objects to this request to the extent that it call for expert opinion testimony prior to such time as it may required by the Court's scheduling order.

Subject to these objections, InterDigital's Global Objections, and the Agreed Protective Order, InterDigital incorporates by reference its answer to Interrogatory No. 1.

InterDigital further states that in selecting patents declared, InterDigital identifies what it believes to be the disclosure in a patent application for comparison with a Standard. This is because claims in an application and a standard's requirements are often not crystallized.

In determining whether a disclosure in a patent application maps to a defined or potential requirement of a standard, InterDigital engineers knowledgeable about the defined or potential requirements of a standard review the disclosure and defined or potential requirement of the standard. The engineers rely on their personal knowledge and education in forming an opinion as to whether a patent applies or potentially applies to a standard. Where there is an element of doubt, InterDigital's practice is to err on the side of caution and notify the patent as potentially

essential. Where InterDigital determines that it should identify a patent as potentially essential, InterDigital identifies the entire patent family.

To the extent that this interrogatory seeks information regarding the investigation, evaluation, and/or analysis related to InterDigital's contention that any of the claims of the declared InterDigital patents are essential to practice a 3G standard, InterDigital, pursuant to FED. R. CIV. P. 33(d), states that the answer to this interrogatory may be derived or ascertained from the business records of InterDigital or from an examination, audit or inspection of such business records, and the burden of deriving or ascertaining the answer is substantially the same for Nokia as for the InterDigital, including the following documents:

- U.S. Patent No. 5,093,840 and its prosecution history;

- U.S. Patent No. 5,179,571 and its prosecution history;

- U.S. Patent No. 5,228,056 and its prosecution history;

- U.S. Patent No. 5,345,467 and its prosecution history;

- U.S. Patent No. 5,631,921 and its prosecution history;

- U.S. Patent No. 5,974,039 and its prosecution history;

- U.S. Patent No. 6,771,632 and its prosecution history;

- U.S. Patent No. 6,873,643 and its prosecution history;

- U.S. Patent No. 6,956,889 and its prosecution history;

- U.S. Patent No. 6,993,063 and its prosecution history; and

- U.S. Reissue Patent No. 38,627 and its prosecution history.

InterDigital further states that to the extent that this interrogatory seeks facts and documents, and materials that relate to InterDigital's construction(s) of "essential" for such 3G standard(s), InterDigital identifies the following documents:

17

- www.etsi.org

- www.etsi.org/legal/documents/ETSI_IPRPolicy.pdf

- www.etsi.org/legal/documents/ETSI_Guide_on_IPRs.pdf

- www.etsi.org/legal/IPR_database/FAQ_IPR-Policy.htm

- webapp.etsi.org/IPR/home.asp

The following person have knowledge of some of the above facts:

- Donald M. Boles

- Kimberly Chotkowski

- Fatih Ozluturk

- Mario A. Obeidat

**INTERROGATORY NO. 5:**

**ANSWER:**

Separately for each claim of the declared InterDigital patents that InterDigital has alleged to be essential to a 3G standard, state how you construe each element of that claim; the scope of equivalents under the doctrine of equivalents to which you contend the claim and/or element is essential; and identify all intrinsic and all extrinsic evidence upon which you rely in support of your construction.

**ANSWER:**

OBJECTION.    InterDigital objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, or consulting expert privilege.    InterDigital objects to this interrogatory as it is overbroad and unreasonably burdensome as it seeks to require InterDigital to "[i]dentify every patent that InterDigital has declared to any person or entity to be essential to a 3G standard (the "declared InterDigital patents")."    InterDigital further objects to the term "declared" as unfairly vague. InterDigital objects to this request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence.    InterDigital objects to this request to the extent that it call

18

for expert opinion testimony prior to such time as it may required by the Court's scheduling order.

Subject to these objections, InterDigital's Global Objections and the Agreed Protective Order, InterDigital states as follows:

The vast majority of the elements of the claims of the patents identified in response to Interrogatory No. 1 carry their plain and ordinary meaning as would be ascribed by a person of ordinary skill in the art. To the extent that InterDigital believes that any terms merit clarification, InterDigital will supplement its answer following entry of a mutually agreeable protective order.

**INTERROGATORY NO. 6:**

Describe in detail any facts relating to InterDigital's knowledge or belief of the truth or falsity of InterDigital's statements that the declared InterDigital patents are essential to some portion of some 3G standard, including but not limited to (1) any statements by any person or entity related to InterDigital or third parties that some or all of the claims of the declared InterDigital patents may not be essential, or may be invalid, or that any processes InterDigital uses to determine essentiality may be deficient, (2) any indication by any person or entity related to InterDigital – at any time whatsoever – that InterDigital should exaggerate or otherwise misrepresent the scope of validity of any patents currently or formerly owned by InterDigital, and (3) any InterDigital business plans – at any time whatsoever – regarding exaggerating or otherwise misrepresenting the scope or validity of any patents owned by InterDigital.

**ANSWER:**

OBJECTION. InterDigital objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, or consulting expert privilege. InterDigital further objects to this interrogatory as it is overbroad and unreasonably burdensome as it seeks to require InterDigital to "[i]dentify every patent that InterDigital has declared to any person or entity to be essential to a 3G standard (the "declared InterDigital patents")." InterDigital objects to the term "declared" as unfairly vague. InterDigital objects to this request on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence. InterDigital objects to this request to the extent that it call

for expert opinion testimony prior to such time as it may required by the Court's scheduling order.

Subject to these objections, InterDigital's Global Objections, and the Agreed Protective Order, InterDigital incorporates by reference its answer to Interrogatory Nos. 1 and 4.

InterDigital further states that others have publicly and/or privately recognized that InterDigital holds essential or potentially essential patents. InterDigital, pursuant to FED. R. CIV. P. 33(d), further states that the answer to this interrogatory may be derived or ascertained from the business records of InterDigital or from an examination, audit or inspection of such business records, and the burden of deriving or ascertaining the answer is substantially the same for Nokia as for the InterDigital, including the following documents:

- David J. Goodman & Robert A. Myers, 3G Cellular Standards and Patents, IEEE WirelessCom 2005, June 13, 2005

- International Telecommunications Standards User Group, Minutes Of Third Meeting Of A Umts Working Party Ad Hoc Group

**INTERROGATORY NO. 7:**

Identify all novelty, validity or invalidity, infringement or noninfringement, enforceability or unenforceability, prior art investigations, studies, legal opinions, or searches, written or oral, that have been conducted, prepared, or requested by or on behalf of InterDigital, or that are otherwise known to InterDigital, with respect to the declared InterDigital patents, 3G standards or the Nokia 3G products, and summarize the conclusions and the reason(s) therefor.

**ANSWER:**

OBJECTION. InterDigital objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, work product doctrine, or consulting expert privilege. InterDigital objects to the term "declared" as unfairly vague. InterDigital objects to this request as it is overbroad, unreasonably burdensome and not reasonably calculated to lead to the discovery of admissible evidence as it refers to

"investigations, studies, legal opinions, or searches, written or oral, that have been conducted, prepared, or requested by or on behalf of InterDigital, or that are otherwise known to InterDigital, with respect to the declared InterDigital patents, 3G standards or the Nokia 3G products, and summarize the conclusions and the reason(s) therefor." InterDigital objects to this request to the extent that it call for expert opinion testimony prior to such time as it may required by the Court's scheduling order.

Subject to these objections, InterDigital's Global Objections and the Agreed Protective Order, InterDigital, pursuant to FED. R. CIV. P. 33 (d), states that the answer to this interrogatory may be derived or ascertained from the business records of InterDigital or from an examination, audit or inspection of such business records, and the burden of deriving or ascertaining the answer is substantially the same for Nokia as for the InterDigital, including the following documents:

- U.S. Patent No. 5,093,840 and its prosecution history and foreign prosecution history;
- U.S. Patent No. 5,179,571 and its prosecution history and foreign prosecution history;
- U.S. Patent No. 5,228,056 and its prosecution history and foreign prosecution history;
- U.S. Patent No. 5,345,467 and its prosecution history and foreign prosecution history;
- U.S. Patent No. 5,631,921 and its prosecution history and foreign prosecution history;
- U.S. Patent No. 5,974,039 and its prosecution history and foreign prosecution history;
- U.S. Patent No. 6,771,632 and its prosecution history and foreign prosecution history;
- U.S. Patent No. 6,873,643 and its prosecution history and foreign prosecution history;
- U.S. Patent No. 6,956,889 and its prosecution history and foreign prosecution history;
- U.S. Patent No. 6,993,063 and its prosecution history and foreign prosecution history; and

21

- U.S. Reissue Patent No. 38,627 and its prosecution history and foreign prosecution history.

**INTERROGATORY NO. 8:**

Describe with specificity the conception and reduction to practice of each claimed invention in the declared InterDigital patents, including each inventor's role and the identity of all documents relating to the foregoing.

**ANSWER:**

OBJECTION. InterDigital objects to this interrogatory as it seeks information that is protected by the attorney-client privilege and/or work product doctrine. InterDigital objects to the term "declared" as unfairly vague. Additionally, InterDigital objects to this request as it is overbroad, unreasonably burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. InterDigital objects to this request to the extent that it call for expert opinion testimony prior to such time as it may required by the Court's scheduling order.

Subject to these objections, InterDigital's Global Objections and the Agreed Protective Order, InterDigital, pursuant to FED. R. CIV. P. 33(d), states as to U.S. Patent Nos. 6,771,632, 6,873,643, and 6,993,063 that the answer to this interrogatory may be derived or ascertained at least in part from the business records of Nokia or from an examination, audit or inspection of such business records, and the burden of deriving or ascertaining the answer is substantially the less for Nokia as for the InterDigital.

InterDigital's Global Objections and the Agreed Protective Order, InterDigital, pursuant to FED. R. CIV. P. 33(d), states as to U.S. Patent Nos. 5,093,840, 5,179,571, 5,228,056, 5,345,467, 5,631,921, 5,974,039, 6,771,632, 6,873,643, 6,956,889, 6,993,063, and RE38627 that the answer to this interrogatory may be derived or ascertained from the business records of InterDigital or from an examination, audit or inspection of such business records, and the burden of deriving or ascertaining the answer is substantially the same for Nokia as for the InterDigital.

22

**INTERROGATORY NO. 9:**

Describe the applicability of each of the secondary considerations of non-obviousness as set forth in *Graham v. John Deere*, 383 U.S. 1 (1966), and its progeny to each claimed invention in the declared InterDigital patents.

**ANSWER:**

OBJECTION. InterDigital objects to this interrogatory as it seeks information that is

protected by the attorney-client privilege and/or work product doctrine. InterDigital objects to

the term "declared" and "its progeny" as unfairly vague. Additionally, InterDigital objects to

this request as it is overbroad, unreasonably burdensome, and not reasonably calculated to lead to

the discovery of admissible evidence. InterDigital objects to this request to the extent that it call

for expert opinion testimony prior to such time as it may required by the Court's scheduling

order.

Subject to these objections, InterDigital's Global Objections and the Agreed Protective

Order, InterDigital states that the commercial success of products complying with 3G standards

and practicing the claimed inventions of the declared patents, adoption of the claimed inventions

into the 3G Standards, and the recognition by others of the essentiality of the declared patents

support secondary considerations of non-obviousness

**INTERROGATORY NO. 10:**

For each of the patents that InterDigital has declared to some entity to be essential to some wireless telecommunications standard, including the declared InterDigital patents and patents InterDigital has declared to be essential to 2G standards, describe the licensing history, including but not limited to all licenses and attempts by InterDigital to license the patents and the terms and conditions of such license or potential licenses, and/or the outcome of each attempt.

**ANSWER:**

InterDigital objects to this interrogatory as it is overbroad, unreasonably burdensome, and

not reasonably calculated to lead to the discovery of admissible evidence as it seeks to require

InterDigital to describe the licensing history of all its patents. InterDigital further objects to the

term "declared" as unfairly vague. InterDigital objects to this request to the extent that it seeks

23

information protected by the attorney-client privilege and/or the work product doctrine. InterDigital objects to this interrogatory as vague and ambiguous as it refers to "patents that InterDigital has declared to some entity to be essential to some wireless telecommunications standard."

Subject to these objections, InterDigital's Global Objections and the Agreed Protective Order, InterDigital states it has entered license agreements with the following companies:

- Alcatel Espana
- American Telephone and Telegraph Company
- Arima Communications Corporation
- Danger Inc.
- Denso Corporation
- Ericsson Inc.
- High Tech Computer (HTC)
- Hitachi Ltd.
- Hop-On Wireless, Inc.
- Hughes Network Systems Inc.
- Infineon Technologies AG
- Iwatsu America Inc.
- Japan Radio
- Kokusai Electric Co. Ltd.
- Kyocera Corporation
- LG Electronics Inc.
- Matsushita Communication Industrial Co. Ltd.

- Mitsubishi Electric Corporation

- Nakayo Telecommunications, Inc.

- NEC Corporation

- Nokia Corporation

- Oki Electric Industry Co. Ltd.

- Option NV

- Pacific Communication Sciences, Inc.

- Panasonic Corporation of North America

- Qualcomm Incorporated

- Quanta Computer Inc.

- Research In Motion Limited

- Robert Bosch GmbH

- Samsung Electronics Co. Ltd.

- Sanyo Electric Co. Ltd.

- Sharp Corporation

- Shintom Company Ltd.

- Siemens Aktiengesellschaft

- Sierra Wireless, Inc.

- Sony Ericsson Mobile Communications AB

- Telefonaktiebolaget LM Ericsson

- Toshiba Corporation

- UbiNetics Ltd.

InterDigital further states, pursuant to FED. R. CIV. P. 33(d), that the answer to this interrogatory may be derived or ascertained from the business records of InterDigital or from an examination, audit or inspection of such business records, and the burden of deriving or ascertaining the answer is substantially the same for Nokia as for the InterDigital, specifically InterDigital's press releases and filings with the SEC describing the agreements with the above identified companies.

**INTERROGATORY NO. 11:**

For each of the declared InterDigital patents, describe in detail any accusations made by any person or entity related to InterDigital of patent infringement to any third party regarding that patent, whether litigation ensued, and, if such an accusation was made or if litigation ensued, explain the outcome and disposition, including but not limited to where suit was filed, the parties, involved, the case caption, and the terms of any settlement or judgment.

**ANSWER:**

OBJECTION. InterDigital objects to the term "declared" as unfairly vague. InterDigital objects to this interrogatory as vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. InterDigital objects to this interrogatory as it is overbroad and unreasonably burdensome as it seeks InterDigital to describe accusations made by "any person or entity" to "any third party" regarding InterDigital's 3G patents.

Subject to these objections, InterDigital's Global Objections, and the Agreed Protective Order, InterDigital responds that

- U.S. Patent No. 5,093,840 was at issue in *Qualcomm Inc. v. InterDigital Communications Corp. et al.*, in the United States District Court for the Southern District of California (Civil Action No. 93-612G(POR)).

- U.S. Patent Nos. 5,179,571 and 5,228,056 were at issue in *InterDigital Technology Corp v. Oki America Inc. et al.*, in the United States District Court for the Eastern District of Pennsylvania (Civil Action No. 93-CV-2004 (Bartle, J.))

26

**INTERROGATORY NO. 12:**

Describe in detail any Lanham Act, false advertising, or similar claim that has been brought against InterDigital, including but not limited to the identities of the parties, the jurisdiction, the case number, and the resolution (if any).

**ANSWER:**

OBJECTION. InterDigital objects to this interrogatory as it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, InterDigital objects to this interrogatory as vague and ambiguous as it refers to "similar claim."

Subject to these objections, InterDigital's Global Objections, and the Agreed Protective Order, InterDigital responds that Ericsson GE Mobile Communications, Inc. and Ericsson Radio Systems, Inc. (collectively "Ericsson") filed a lawsuit against InterDigital in the United States District Court for the Northern District of Texas (Civil Action No. 3-93CV1809-H (N.D.Tx.) asserting Lanham Act violations similar to those of Nokia. The district court awarded InterDigital summary judgment on Ericsson's Lanham Act claim and dismissed same.

**INTERROGATORY NO. 13:**

Identify each person whom InterDigital expects to call as a witness at trial, including whether the witness will testify as a fact or an expert witness, the subject matter on which each witness is expected to testify, and each document upon which each witness will rely or testify about at trial.

**ANSWER:**

OBJECTION. InterDigital objects to this interrogatory as it seeks information protected by the attorney-client privilege, work product doctrine, or consulting expert privilege. Additionally, InterDigital objects to this interrogatory as it is overbroad and unreasonably burdensome as it seeks to require InterDigital to identify "each document upon which each witness will rely or testify about at trial." To the extent this interrogatory seeks the identity of and information regarding experts it is premature and InterDigital will respond to Nokia's Rule 26 request for disclosure regarding experts pursuant to the Revised Rule 16 Scheduling Order.

**INTERROGATORY NO. 14:**

Identify each source of information that you considered in preparing your responses to these interrogatories, including but not limited to all persons who provided information that you considered in preparing your responses.

**ANSWER:**

OBJECTION. InterDigital objects to this interrogatory as it seeks information that is

protected by the attorney-client privilege, work product doctrine, and/or consulting expert

privilege.

Subject to these objections, InterDigital's Global Objections, and the Agreed Protective

Order, InterDigital incorporates by reference its answers to interrogatory nos. 1-13 and the

documents identified therein.

OF COUNSEL:

D. Dudley Oldham
Linda L. Addison
Richard S. Zembek
Fulbright & Jaworski L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel: (713) 651-5151
Fax: (713) 651-5246
doldham@fulbright.com
laddison@fulbright.com
rzembek@fulbright.com

Dan D. Davison
Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Tel: (214) 855-8000
Fax: (214) 855-8200
ddavison@fulbright.com

Dated: March 30, 2006
734386 / 28840

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
   Richard L. Horwitz  (#2246)
   David E. Moore (#3983)
   Hercules Plaza, 6th Floor
   1313 N. Market Street
   Wilmington, Delaware 19801
   Tel: (302) 984-6000
   rhorwitz@potteranderson.com
   dmoore@potteranderson.com

*Attorneys for Defendants,*
*INTERDIGITAL COMMUNICATIONS*
*CORPORATION and INTERDIGITAL*
*TECHNOLOGY CORPORATION*

28

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 30, 2006, a true and correct

copy of the within document was caused to be served on the following counsel of record, in

the manner indicated below:

### VIA HAND DELIVERY

Jack B. Blumenfeld
Julia Heaney
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347

### VIA ELECTRONIC MAIL

Peter Kontio
Patrick J. Flinn
Gardner S. Culpepper
Keith E. Broyles
Randall L. Allen
Lance Lawson
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
pkontio@alston.com
pflinn@alston.com
gculpepper@alston.com
keith.broyles@alston.com
rallen@alston.com
llawson@alston.com

/s/ David E. Moore
David E. Moore

671739

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA INC.,

    Plaintiffs,

    v.

INTERDIGITAL COMMUNICATIONS
CORPORATION and INTERDIGITAL
TECHNOLOGY CORPORATION,

    Defendants.

C.A. No. 05-16-JJF

## RE-NOTICE OF DEPOSITIONS

    Please take notice that on August 24, 2006, starting at 9:30 a.m. and continuing until completed, plaintiffs Nokia Corporation and Nokia, Inc., will take the deposition of InterDigital Communications Corporation ("IDC"). Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, IDC is requested and required to designate one or more individuals to testify to on its behalf, and to prepare such individual to testify knowledgeably and fully on, the subjects set forth in Attachment A.

    Please take further notice that on August 25, 2006, starting at 9:30 a.m. and continuing until completed, plaintiffs Nokia Corporation and Nokia, Inc., will take the deposition of InterDigital Technology Corporation ("ITC"). Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, ITC is requested and required to designate one or more individuals to testify on its behalf, and to prepare such individual to testify knowledgeably and fully on the subjects set forth in Attachment A.

    In the event ITC and IDC designate the same person or persons to testify on behalf of both, only a single deposition will be taken on the earlier of the two dates set forth above. The deposition will be recorded stenographically and by audio-video recording device.

The depositions will be held at the offices of Morris, Nichols, Arsht & Tunnell LLP, Chase Manhattan Centre, 18th Floor 1201 North Market Street Wilmington, Delaware, or at such other location as may be agreed upon by counsel.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julie Heaney (#3052)*
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
        Attorneys for NOKIA CORPORATION
        and NOKIA INC.

OF COUNSEL:

ALSTON & BIRD LLP
Peter Kontio
Randall L. Allen
Lance A. Lawson
William R. Hubbard
1201 West Peachtree Street
Atlanta, GA 30309
404-881-7000

August 14, 2006

524776

- 2 -

# ATTACHMENT A

## ATTACHMENT A

1.    The facts stated in answer to Interrogatory No. 1 through and including Interrogatory No. 4 of InterDigital's Answers and Objections to Plaintiffs' First Set of Interrogatories.

2.    The reasons why the defendants believe that the patents listed on page 6 of their Answers to Plaintiffs' First Set of Interrogatories are essential or potentially essential to a 3G standard, and the specific standard or portions thereof (if any) to which the patent is essential or potentially essential.[1]

3.    The process by which InterDigital determined that any InterDigital patent is essential or potentially essential to a 3G standard.[2]

4.    The names, current location, and current employment of all persons involved in making intellectual property declarations on behalf of InterDigital to any standards body.[3]

---

[1]    "Essential or potentially essential to a 3G standard" in this attachment has the same meaning as defendants gave the phrase in their answer to the plaintiffs' Interrogatory No. 1.

[2]    "The process" in this attachment includes how each patent was selected, the reason each patent was selected, whether a particular portion of the standard was identified as being relevant to the patent (and if so what part of the standard), whether it was believed that any standard could not be practiced without infringing the patent (and if so, what part of the standard), whether it was believed the patent was either necessary the nature of any analysis of the patent or the standard, and the identities of the persons involved in the analysis.

[3]    In this attachment, "making intellectual property ... declarations to any standards body" includes the process of deciding whether to identify any intellectual property, such any specific patent, to bodies that set, promulgate or publish telecommunications standards, such as ETSI (including patents declared on Annex 2 to the form attached exemplar attached as Attachment C); and "InterDigital" includes both defendants and any affiliate of either defendant.

5.    The process by which InterDigital decided to declare the patents shown on Attachment B to the European Telecommunications Standards Institute (ETSI).

6.    The process by which InterDigital listed any patents a copy of Annex 2 to an "IPR INFORMATION STATEMENT AND LICENSING DECLARATION FORMS" (an exemplar of which is attached as Attachment C).

7.    The identity of any non-US patent owned by InterDigital that is essential or potentially essential to a 3G standard, and the standard or portion thereof to which it is essential or potentially essential.

# ATTACHMENT B

## ATTACHMENT B

1. U.S. Patent No. 5,081,643
2. U.S. Patent No. 5,093,840
3. U.S. Patent No. 5,161,168
4. U.S. Patent No. 5,166,951
5. U.S. Patent No. 5,179,571
6. U.S. Patent No. 5,179,572
7. U.S. Patent No. 5,224,120
8. U.S. Patent No. 5,228,056
9. U.S. Patent No. 5,260,967
10. U.S. Patent No. 5,263,045
11. U.S. Patent No. 5,274,665
12. U.S. Patent No. 5,299,226
13. U.S. Patent No. 5,345,467
14. U.S. Patent No. 5,351,269
15. U.S. Patent No. 5,363,403
16. U.S. Patent No. 5,365,544
17. U.S. Patent No. 5,367,533
18. U.S. Patent No. 5,410,568
19. U.S. Patent No. 5,420,896
20. U.S. Patent No. 5,469,468
21. U.S. Patent No. 5,506,864
22. U.S. Patent No. 5,535,238
23. U.S. Patent No. 5,553,062
24. U.S. Patent No. 5,563,907
25. U.S. Patent No. 5,574,747
26. U.S. Patent No. 5,588,020
27. U.S. Patent No. 5,631,921
28. U.S. Patent No. 5,663,956
29. U.S. Patent No. 5,673,286
30. U.S. Patent No. 5,703,874
31. U.S. Patent No. 5,719,852
32. U.S. Patent No. 5,748,687
33. U.S. Patent No. 5,796,776
34. U.S. Patent No. 5,799,010
35. U.S. Patent No. 5,835,527
36. U.S. Patent No. 5,841,768
37. U.S. Patent No. 5,912,919
38. U.S. Patent No. 5,920,590
39. U.S. Patent No. 5,940,382
40. U.S. Patent No. 5,943,331
41. U.S. Patent No. 5,974,039
42. U.S. Patent No. 5,991,329
43. U.S. Patent No. 5,991,332
44. U.S. Patent No. 5,995,538

45. U.S. Patent No. 6,005,898
46. U.S. Patent No. 6,011,789
47. U.S. Patent No. 6,014,373
48. U.S. Patent No. 6,049,535
49. U.S. Patent No. 6,075,792
50. U.S. Patent No. 6,115,406
51. U.S. Patent No. 6,141,332
52. U.S. Patent No. 6,157,619
53. U.S. Patent No. 6,175,586
54. U.S. Patent No. 6,181,949
55. U.S. Patent No. 6,212,174
56. U.S. Patent No. 6,215,778
57. U.S. Patent No. 6,226,316
58. U.S. Patent No. 6,229,843
59. U.S. Patent No. 6,252,866
60. U.S. Patent No. 6,256,339
61. U.S. Patent No 6,259,688
62. U.S. Patent No 6,272,168
63. U.S. Patent No 6,278,726
64. U.S. Patent No. 6,330,272
65. U.S. Patent No. 6,373,830
66. U.S. Patent No. 6,373,877
67. U.S. Patent No. 6,381,264
68. U.S. Patent No. 6,389,002
69. U.S. Patent No. 6,396,824
70. U.S. Patent No. 6,404,828
71. U.S. Patent No. 6,456,608
72. U.S. Patent No. 6,463,074
73. U.S. Patent No. 6,490,462
74. U.S. Patent No. 6,493,563
75. U.S. Patent No. 6,507,745
76. U.S. Patent No. 6,519,474
77. U.S. Patent No. 6,560,300
78. U.S. Patent No. 6,571,105
79. U.S. Patent No. 6,574,265
80. U.S. Patent No. 6,574,271
81. U.S. Patent No. 6,577,668
82. U.S. Patent No. 6,577,669
83. U.S. Patent No. 6,577,672
84. U.S. Patent No. 6,577,673
85. U.S. Patent No. 6,577,876
86. U.S. Patent No. 6,584,139
87. U.S. Patent No. 6,587,499
88. U.S. Patent No. 6,587,697
89. U.S. Patent No. 6,590,927
90. U.S. Patent No. 6,597,723

- 2 -

91. U.S. Patent No. 6,597,724
92. U.S. Patent No. 6,600,773
93. U.S. Patent No. 6,603,797
94. U.S. Patent No. 6,603,798
95. U.S. Patent No. 6,606,343
96. U.S. Patent No. 6,606,345
97. U.S. Patent No. 6,606,503
98. U.S. Patent No. 6,608,838
99. U.S. Patent No. 6,611,548
100. U.S. Patent No. 6,614,776
101. U.S. Patent No. 6,615,054
102. U.S. Patent No. 6,633,600
103. U.S. Patent No. 6,633,602
104. U.S. Patent No. 6,671,308
105. U.S. Patent No. 6,674,788
106. U.S. Patent No. 6,674,791
107. U.S. Patent No. 6,690,711
108. U.S. Patent No. 6,697,350
109. U.S. Patent No. 6,707,805
110. U.S. Patent No. RE 35,402
111. U.S. Patent No. 6,717,927
112. U.S. Patent No. 6,717,930
113. U.S. Patent No. 6,721,301
114. U.S. Patent No. 6,721,350
115. U.S. Patent No. 6,738,368
116. U.S. Patent No. 6,744,809
117. U.S. Patent No. 6,745,045
118. U.S. Patent No. 6,778,840
119. U.S. Patent No. 6,782,040
120. U.S. Patent No. 6,788,662
121. U.S. Patent No. 6,795,417
122. U.S. Patent No. 6,798,759
123. U.S. Patent No. 6,801,516
124. U.S. Patent No. 6,801,517
125. U.S. Patent No. 6,804,315
126. U.S. Patent No. 6,807,192
127. U.S. Patent No. 6,810,029
128. U.S. Patent No. 6,816,473
129. U.S. Patent No. 6,823,194
130. U.S. Patent No. 6,826,244
131. U.S. Patent No. 6,831,905
132. U.S. Patent No. 6,831,941
133. U.S. Patent No. 6,832,095
134. U.S. Patent No. 6,832,096
135. U.S. Patent No. 6,839,567
136. U.S. Patent No. 6,845,088

- 3 -

| | |
|---|---|
| 137. | U.S. Patent No. 6,845,093 |
| 138. | U.S. Patent No. 6,845,104 |
| 139. | U.S. Patent No. 6,845,122 |
| 140. | U.S. Patent No. 6,850,514 |
| 141. | U.S. Patent No. 6,850,556 |
| 142. | U.S. Patent No. 6,865,217 |
| 143. | U.S. Patent No. 6,868,076 |
| 144. | U.S. Patent No. 6,868,078 |
| 145. | U.S. Patent No. 6,868,278 |
| 146. | U.S. Patent No. 6,873,643 |
| 147. | U.S. Patent No. 6,873,645 |
| 148. | U.S. Patent No. 6,874,113 |
| 149. | U.S. Patent No. 6,876,665 |
| 150. | U.S. Patent No. 6,879,841 |
| 151. | U.S. Patent No. 6,885,649 |
| 152. | U.S. Patent No. 6,885,652 |
| 153. | U.S. Patent No. 6,898,197 |
| 154. | U.S. Patent No. 6,904,294 |
| 155. | U.S. Patent No. 6,909,901 |
| 156. | U.S. Patent No. 6,915,473 |
| 157. | U.S. Patent No. 6,917,601 |
| 158. | U.S. Patent No. 6,925,071 |
| 159. | U.S. Patent No. 6,934,271 |
| 160. | U.S. Patent No. 6,940,817 |
| 161. | U.S. Patent No. 6,940,840 |
| 162. | U.S. Patent No. 6,947,402 |
| 163. | U.S. Patent No. 6,956,889 |
| 164. | U.S. Patent No. 6,961,398 |
| 165. | U.S. Patent No. 6,973,579 |
| 166. | U.S. Patent No. 6,980,538 |
| 167. | U.S. Patent No. 6,980,615 |
| 168. | U.S. Patent No. 6,983,008 |
| 169. | U.S. Patent No. 6,983,009 |
| 170. | U.S. Patent No. 6,985,457 |
| 171. | U.S. Patent No. 6,985,467 |
| 172. | U.S. Patent No. 6,993,001 |
| 173. | U.S. Patent No. 6,993,063 |
| 174. | U.S. Patent No. 6,996,082 |
| 175. | U.S. Patent No. 7,020,111 |
| 176. | U.S. Patent No. 7,020,114 |
| 177. | U.S. Patent No. 7,020,125 |
| 178. | U.S. Patent No. 7,020,151 |
| 179. | U.S. Patent No. 7,023,835 |
| 180. | U.S. Patent No. RE 38,627 |

ATL01/12242312v1

# ATTACHMENT C

 **ETSI**          EUROPEAN TELECOMMUNICATION STANDARDS INSTITUTE

page 1 of 2

<u>ANNEX 1</u>

## IPR INFORMATION STATEMENT AND LICENSING DECLARATION FORMS

<u>IPR Holder/Organisation</u>

Legal Name: _____

<u>Signatory</u>

Name:          _____
Position:      _____
Department:    _____
Address:       _____
               _____

Tel.:          _____
Fax:           _____
E-mail:        _____

<u>IPR information statement</u>

In accordance with the ETSI IPR Policy, Article 4.1, I hereby inform ETSI that,

with reference to the technical proposal identified as _____
and/or
in relation to Work Item No. _____
and/or
with reference to ETSI Standard No. _____

it is my belief that the IPRs listed in Annex 2 are, or are likely to become, Essential IPRs in relation to that Standard.

<u>IPR licensing declaration</u>

The SIGNATORY has notified ETSI that it is the proprietor of the IPRs listed in Annex 2 and has informed ETSI that it believes that the IPRs may be considered ESSENTIAL to the Standards listed above.

The SIGNATORY and/or its AFFILIATES hereby declare that they are prepared to grant irrevocable licenses under the IPRs on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy, in respect of the STANDARD, to the extent that the IPRs remain ESSENTIAL.

The construction, validity and performance of this DECLARATION shall be governed by the laws of France.

<u>Place, Date:</u>                    <u>Signature:</u>

_____            _____

                                (Signed for and on behalf of the SIGNATORY)

Please return this form duly signed to:
ETSI Director-General - Karl Heinz Rosenbrock

ETSI - 650. route des Lucioles - F-06921 Sophia Antipolis Cedex - FRANCE
Fax +33 (0) 4 93 65 47 16

EUROPEAN TELECOMMUNICATION STANDARDS INSTITUTE

page 2 of 2

## ANNEX 2

| ETSI Standard/Technical Specification/Work Item | | | Patent Publication No. | Patent Application No. | Patent Grant No. | Priority Application No. | Country of Publication/Grant | OPTIONAL INFORMATION Other Patents & Applications in the same Family | |
|---|---|---|---|---|---|---|---|---|---|
| Project (e.g. Technical Committee Name) | Work Item and/or Standard No. | Version/Section No. | | | | | | Patents/Applications No(s) | Country of Application(s) |
| e.g. UMTS | e.g. TS 125 215 | | | | | | | | |

*Patent family information is provided voluntarily. The completeness and accuracy of any patent family information that is provided cannot be guaranteed.

Please return this form duly signed to: ETSI Director General - Karl Heinz Rosenbrock

ETSI - 650, route des Lucioles - F-06921 Sophia Antipolis Cedex -- France / Fax. +33 (0) 4 93 65 47 16

<u>CERTIFICATE OF SERVICE</u>

I, Julie Heaney, hereby certify that on August 14, 2006 I electronically

filed the foregoing Notice of Depositions with the Clerk of the Court using CM/ECF, which will

send notification of such filing(s) to the following:

Richard L. Horwitz
Potter Andersoon & Corroon LLP
rhorwitz@potteranderson.com

I also certify that copies were caused to be served on August 14, 2006 upon the

following in the manner indicated:

BY HAND

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

BY FEDERAL EXPRESS AND E-MAIL

Dan D. Davison
Fulbright & Jaworski LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201-2784

*/s/ Julie Heaney (#3052)*
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 21, 2006, a true and correct copy of the within document was caused to be served on the following counsel of record, in the manner indicated below:

### VIA HAND DELIVERY

Jack B. Blumenfeld
Julia Heaney
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347

### VIA ELECTRONIC MAIL

Peter Kontio
Patrick J. Flinn
Gardner S. Culpepper
Keith E. Broyles
Randall L. Allen
Lance Lawson
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA  30309-3424
pkontio@alston.com
pflinn@alston.com
gculpepper@alston.com
keith.broyles@alston.com
rallen@alston.com
llawson@alston.com

*/s/ David E. Moore*
David E. Moore

671739