# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NOKIA CORPORATION and | ) | |
| NOKIA, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C. A. No. 05-16-JJF |
| v. | ) | |
| | ) | |
| INTERDIGITAL COMMUNICATIONS | ) | **JURY TRIAL DEMANDED** |
| CORPORATION and INTERDIGITAL | ) | |
| TECHNOLOGY CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**INTERDIGITAL'S OBJECTIONS TO
NOKIA'S 30(b)(6) NOTICE OF DEPOSITION**

InterDigital Technology Corporation and InterDigital Communication Corporation (collectively "InterDigital"), pursuant to Federal Rule of Civil Procedure 30(d) and Local Rule 30.2, hereby object as follows to Nokia's 30(b)(6) Notice of Deposition.

**INTRODUCTION**

On June 14, 2006, Nokia Corporation and Nokia, Inc. (collectively "Nokia") served on InterDigital a Notice of Deposition pursuant to FED. R. CIV. P 30(b)(6). On August 14, 2006 Nokia served an identical Notice of Deposition (the "Deposition Notice") (Exhibit A hereto), setting the deposition for August 24 and 25, 2006. Although Nokia did not first determine if InterDigital's witness was available on these dates, InterDigital will produce a witness to respond to the Deposition Notice, subject to its objections. InterDigital requested that Nokia agree to move the location of the deposition from Wilmington to Dallas. Nokia has yet to agree to this request

Nokia's Deposition Notice seeks testimony under FED.R.CIV.P. 30(b)(6) and requests that InterDigital produce a corporate representative to give testimony regarding certain of InterDigital's interrogatory responses, InterDigital's process for determining essential patents in both the United States and Europe, how each InterDigital 3G patent was determined to be essential, and the identity of InterDigital's essential foreign 3G patents. Some of the topics identified in the Deposition Notice are the proper subject for a 30(b)(6) deposition and InterDigital will make a witness available to address them. However, other topics identified in the Deposition Notice are clearly improper and objectionable. There is no good cause for Nokia to have broad discovery regarding patents which are not at issue in this lawsuit. Therefore, InterDigital submits the following objections to the specific requests sought in the Deposition Notice:

## OBJECTIONS

1. **Item No. 2 Of The Deposition Notice Requests Information That Can Be More Efficiently Obtained By Other Means[1]**

Item No. 2 of the Deposition Notice requests that InterDigital produce a corporate witness to testify why InterDigital believes the eleven patents it identified in its interrogatory responses are essential or potentially essential and the specific 3G standard or portions of the standard that apply. (*See* Deposition Notice at Attachment A.)

InterDigital objects to Nokia's improperly seeking to obtain information regarding legal issues or matters that call for expert opinion through the use of a 30(b)(6) deposition. The Deposition Notice is objectionable because it seeks to inquire into matters of law and matters

---

[1] InterDigital does not object to producing a corporate witness to testify to responsive, non-privileged information requested by Item No. 1 of Nokia's Deposition Notice.

2

that call for expert opinion.[2]  Matters that are a question of law, and legal contentions are not a

proper subject for factual discovery.  *See SmithKline Beecham Corp. v. Apotex Corp.*, 2004 WL

739959, at *2-4 (E.D. Pa.) (ruling that certain categories of a proposed deposition pertained to

legal positions that should be ascertained by means of interrogatories rather than deposition); *In*

*re Indep. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (granting protective

order against Rule 30(b)(6) deposition inquiry into legal conclusions, on grounds that producing

responses to such questions is "overbroad, inefficient, and unreasonable); *McCormick-Morgan,*

*Inc. v. Tledyne Insus., Inc.*, 134 F.R.D. 275, 285-88 (N.D. Cal. 1991) (ordering both parties to

use contention interrogatories rather than Rule 30(b)(6) deposition to ascertain other side's legal

positions).

    Additionally, InterDigital objects to this requests as it seeks information that is protected

by the attorney-client privilege and work product doctrine.  Also, InterDigital objects to this

request because it is overbroad and unduly burdensome because it seeks to have a corporate

representative testify to factual details regarding patents that can more conveniently and with less

burden and expenses be obtained through written discovery, expert and fact witness depositions

and relevant documents.

    Subject to these objections, and without waiving same, InterDigital will produce a

witness to respond to this requested area of examination.

---

[2]  The court shall limit discovery if it can be obtained from other sources that are more
convenient, less burdensome and less expensive.  *See* FED. R. CIV. P 26(b)(2)(i); *In Re In Malev
Hungarian Airlines*, 964 F.2d 97, 102 (2d Cir. 1992); *see also, Thompson v. Dept. of Hous. &
Urban Dev.*, 1999 F.R.D. 168, 171 (D. Md. 2001) (all discovery is subject to limitations imposed
by F.R.C.P. 26(b)(2)(i)).

2.     **Item Nos. 3 and 4 Of The Deposition Notice Request Information That InterDigital Has Previously Provided**

Item No. 3 of the Deposition Notice requests that InterDigital produce a corporate witness to testify regarding the process by which it determines patents to be essential or potentially essential to 3G standards. (*See* Deposition Notice at Attachment A.) Under Nokia's definition of "process," this request would have InterDigital (1) identify each essential or potentially essential 3G patent (regardless of whether InterDigital made a public statement regarding the patent); (2) how each patent was selected; (3) the reason it was selected; (4) whether a particular portion of the standard was identified as being relevant to the patent; (5) what part of the standard applies; (6) whether it was believed that any standard could not be practiced without infringing the patent; (7) whether the patent is necessary; (8) the nature of any analysis of the patent or standard; and (9) the identity of persons involved in the analysis. (*See* Deposition Notice at Attachment A, footnote 2.)

InterDigital objects to this request as overbroad because it is unlimited in scope as to time and it is duplicative. InterDigital has previously provided a sworn interrogatory response that describes the process. *See* InterDigital's Responses and Objections to Plaintiffs' First Set of Interrogatories to Defendants at No. 4. InterDigital also objects to this request as overbroad, unduly burdensome and because it seeks information that is irrelevant and not reasonable calculated to lead to the discovery of admissible evidence. Additionally, InterDigital objects to this request as it seeks information protected by the attorney-client privilege and work product doctrine. InterDigital objects to Nokia's seeking to improperly obtain information regarding legal issues or matters that call for an expert opinion through the use of a 30(b)(6) deposition. Further, this request, because of Nokia's definition for "process," is overbroad because it is not

limited to the eleven patents InterDigital has identified as essential or potentially essential to 3G standards in its interrogatory responses for the purpose of defending Nokia's claims.

Subject to these objections, and without waiving same, InterDigital will produce a witness to testify regarding the process (as that term is generally understood) by which InterDigital evaluates patents as essential or potentially essential to 3G standards.

*    *    *

Item No. 4 of the Deposition Notice requests the identity, location and employment of persons involved in making intellectual property declarations to any standards body. (*See* Deposition Notice at Attachment A.)

InterDigital objects to Item No. 4 as overbroad as it is unlimited in scope as to time and as to any particular type of patent. Additionally, InterDigital objects to this request as duplicative as InterDigital has previously identified such persons in its Response to Nokia's Request for Disclosures. Finally, InterDigital objects to this request as it is overbroad, unduly burdensome and it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Like Item No. 3, this request seeks information regarding patents that are not relevant to Nokia's Lanham Act claim or the patents InterDigital has identified as essential or potentially essential in its interrogatory responses.

Subject to these objections, and without waiving same, InterDigital will produce a witness to respond to this request for the patents identified in InterDigital's interrogatory responses.

3.   **Item No. 5 Of The Deposition Notice Request Detailed Information On The Process By Which InterDigital Declared Patents In Europe As Potentially Essential To European Standards**

Item No. 5 of the Deposition Notice requests, "[t]he process by which InterDigital decided to declare the patents shown on Attachment B to the European Telecommunications Standards Institute ("ETSI")." (*See* Deposition Notice at Attachment A.)

Attachment B of the Deposition Notice is a list of 180 InterDigital U.S. patents that were declared to ETSI, as potentially essential to the European standards. This request by Nokia seeks information that goes far beyond even the 18 patents it originally claimed to be invalid or not infringed in its Complaint and which claims the Court has dismissed. InterDigital's ETSI declarations do not make these 180 patents relevant to Nokia's Lanham Act claim, and InterDigital is not relying on the essentiality of any of these patents in defending against Nokia's claims. Therefore, Nokia's request seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and is the quintessential "fishing expedition." Also, InterDigital objects to Nokia improperly seeking to obtain information regarding legal issues and matters that call for expert opinion through the use of a 30(b)(6) deposition.

Also, InterDigital objects to this requests as it seeks information that is protected by the attorney-client privilege and work product doctrine.

Subject to these objections, and without waiving same, InterDigital will produce a witness to testify regarding the process (as that term is generally understood) by which InterDigital's evaluates its 3G patents as essential or potentially essential to 3G standards.

4.   **Item No. 6 of The Deposition Notice Seeks Information on Unidentified Patents**

Item No. 6 of the Deposition Notice requests "[t]he process by InterDigital listed any

patents, a copy of Annex to the 'IPR Information Statement and Licensing Declaration Forms.'"

(*See* Deposition Notice at Attachment A; Attachment C.)  InterDigital objects to this request as

vague, ambiguous and nonsensical.  To the extent this request is understood to seek information

regarding the process by which InterDigital lists patents on the ETSI form attached to the

Deposition Notice see InterDigital's objections and response made in section "3" above, and

subject to these objections, and without waiving same, InterDigital will produce a witness to

testify on the requested process.

5.   **Item No. 7 Of The Deposition Notice Seeks Information On Patents Nokia Has Represented As "Not Germane" To This Lawsuit**

Item No. 7 of the Deposition Notice requests "[t]he identity of any non-U.S. patent

owned by InterDigital that is essential or potentially essential to a 3G standard, and the standard

or portion thereof to which it is essential or potentially essential." (*See* Deposition Notice at

Attachment A.)  InterDigital objects to this request as overbroad, unduly burdensome, and

because it seeks information that is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence.  InterDigital also objects in that the request seeks information

protected by the attorney-client and/or work product privilege.

Nokia has repeatedly represented to the Court that InterDigital's foreign patents are not at

issue in this lawsuit.  Nokia has stated in its pleadings " . . . that InterDigital violated the Lanham

Act by claiming that *certain* of the **U.S. patents** are necessary for protecting the 3G wireless

telecommunications standards.  Only the U.S. patents that InterDigital contends cover the 3G

standards are germane to this suit." *See* Nokia Response to Defendants' Notice of Intent

Regarding "Complex" Designation at pp. 1-2 (emphasis added).

Consistent with its objections, InterDigital is not producing a witness to testify regarding

this requested area of examination.

OF COUNSEL:

D. Dudley Oldham
Linda L. Addison
Richard S. Zembek
Fulbright & Jaworski L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel: (713) 651-5151

Dan D. Davison
Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Tel: (214) 855-8000

Dated: August 21 , 2006
746878 / 28840

POTTER ANDERSON & CORROON LLP


By:  */s/ David E. Moore*
        Richard L. Horwitz  (#2246)
        David E. Moore (#3983)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, Delaware 19801
        Tel: (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

*Attorneys for Defendants,*
*InterDigital Communications*
*Corporation and InterDigital*
*Technology Corporation*

# EXHIBIT E

## FILED SEPARATELY UNDER SEAL

# EXHIBIT F

## FILED SEPARATELY UNDER SEAL

EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOKIA CORPORATION and | ) | |
| NOKIA, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 05-16-JJF |
| v. | ) | |
| | ) | |
| INTERDIGITAL COMMUNICATIONS | ) | |
| CORPORATION and INTERDIGITAL | ) | |
| TECHNOLOGY CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND DISCOVERY ORDER

The Special Master, having considered Nokia Corporation's and Nokia, Inc.'s (collectively "Nokia") motion to compel InterDigital Communication Corporation and Interdigital Technology Corporation (collectively "InterDigital") to answer interrogatories, and InterDigital's motion to compel compliance with the First Discovery Order, and having heard argument on the motions on November 2, 2006, it is ordered as follows:

1.    On December 21, 2005, the District Court entered a Memorandum Opinion and Order dismissing Nokia's declaratory judgment patent infringement claims. The only claim presently in the case is Nokia's Lanham Act claim.  Nokia claims that "InterDigital has repeatedly made public statements that its patent portfolio covers the practice of 3G wireless phone systems and the sale of 3G compliant products."[1]  These statements are alleged to be false and made in bad faith, and therefore violate the Lanham Act.

---

[1]  Paragraph 143 of Nokia's January 12, 2005 complaint.

2.      In the First Discovery Order, I resolved a dispute about Nokia's Federal

Rule of Civil Procedure 26(a)(1) initial disclosures.  Anticipating future disputes between

the parties about the specificity with which each party would set forth the factual basis

for its claims or defenses, in the June 12, 2006 First Discovery Order, I required that

Nokia provide verified responses to the following:

> Nokia shall identify separately (a) each public statement that it relies upon
> for this allegation, (b) the date of the public statement, and (c) the identity
> of anyone who made the statement.  For each public statement, Nokia
> shall also provide a detailed response why each statement is false.

InterDigital had a similar obligation:

> On or before July 14, 2006, InterDigital shall provide verified responses to
> the following questions: InterDigital shall identify separately (a) each
> public statement it has made regarding its patent portfolio and whether the
> portfolio covers the practice of 3G wireless phone systems and the sale of
> 3G compliant products, (b) the date of the public statement, and (c) the
> identity of anyone who made the statement.

3.      On August 2, 2006, InterDigital filed a Motion to Compel Compliance

with the Special Master's First Discovery Order and a Motion to Compel

Supplementation of Nokia's Responses to InterDigital's First Set of Interrogatories.  The

interrogatory responses in dispute are numbers 2, 5-7, and 9-10.  Nokia filed a response

to InterDigital's motion on August 15, 2006, and at the same time served supplemental

responses to InterDigital's interrogatories.   After I scheduled a hearing on InterDigital's

motions, the parties requested that I defer the hearing to allow the parties more time to

attempt to resolve InterDigital's motion.

4.      On October 23, 2006, Nokia filed its own motion to compel, requesting

that the Special Master order InterDigital to supplement its answers to interrogatory

numbers 1 and 3-11 regarding the patents it has declared "essential" to European

2

Telecommunications Standards Institute ("ETSI") to the practice of Third Generation (3G) technology for digital communication devices. On November 1, 2006, InterDigital filed a response to Nokia's October 23, 2006 motion.

5.     On November 2, 2006, I heard argument on the outstanding motions.[2] Although some progress was made during the hearing to resolve the disputes, a formal Order is nonetheless necessary to state the discovery obligations of each party regarding disclosure of facts supporting their claims and defenses.

6.     First, with regard to InterDigital's motion to compel compliance with the First Discovery Order, InterDigital claims that Nokia (a) has not definitively stated the universe of statements that it relies upon for its Lanham Act claims; and (b) has not provided a detailed response why it claims each statement is false. The "universe of statements" issue was resolved at the November 2, 2006 hearing. Nokia stated that its supplemental responses were complete based on its present knowledge, and that the qualifying language in the interrogatory responses was intended to preserve its right to supplement its discovery responses once Nokia obtained discovery from InterDigital.[3] Therefore, the statements set forth in Nokia's supplemental responses represent the current state of Nokia's knowledge of the facts supporting Nokia's Lanham Act claims, without the benefit of complete discovery from InterDigital.

7.     Turning to InterDigital's motion to require Nokia to supplement its discovery responses, and also Nokia's motion to require InterDigital to supplement its

---

[2]   At the hearing, InterDigital noted that it had submitted its response to Nokia's October 23 motion the day before the hearing, and had not anticipated that Nokia's motion would be heard that day. Because the pending motions are interrelated, the parties were able to address both motions in a satisfactory manner. In rendering this decision, the Special Master has also considered Nokia's November 8, 2006 reply in support of its October 23, 2006 motion.
[3]   Nov. 2, 2006 Hearing Transcript at 10-12.

3

discovery responses, at bottom, these disputes are about who should turn over their cards first. InterDigital argues that Nokia as the plaintiff should be required to go first, and to state clearly and definitively for each of InterDigital's alleged false statements why each of the statements is false. Nokia contends that InterDigital should, either initially or at the same time as Nokia serves its responses, state clearly and definitively for each essentiality statement made by InterDigital whether the statement is true, and the reasons why the statement is true. The statements at issue focus on, but are not exclusively, the declarations made to ETSI that each of the many patents InterDigital has claimed are essential or potentially essential to practice the 3G standard.[4]

8.      I accept InterDigital's argument that Nokia, as the plaintiff, who bears the burden of proof, must "show its cards" first by setting forth the facts supporting its Lanham Act claim. Regarding the appropriate scope of discovery, it should be in proportion to the claims raised in the complaint. Nokia has alleged that InterDigital's "ETSI Declarations, combined with public statements, amount to a public statement that everyone in the industry in order to comply to practice the then-established 3G standards needs a license to all 195 patents."[5] At argument, InterDigital said it was standing by its ETSI declarations,[6] which means that each patent in the ETSI declarations must be addressed to determine whether it is "essential," as the term "essential" is used by ETSI, to practice the 3G technology. Therefore, within thirty days from the date of this order

---

[4]  As applications continue to ripen into issued patents, the number of patents at issue has been increasing. The current number appears to be 195.

[5]  Nov. 2, 2006 Hearing Transcript at 25. *See also* Hearing Transcript at 24-25 ("Our contention is that the ETSI declarations, combined with their public statements, amounts to a statement that everyone in the industry in order to comply to practice the then-established 3G standards needs a license to all 195 patents.").

[6]  Nov. 2, 2006 Hearing Transcript at 24 ("we are standing by our ETSI Declarations"). *See also* Hearing Transcript at 17 ("the declarations to ETSI state that it is InterDigital's opinion the patents listed in the declarations are either essential or potentially essential to the standards listed.").

Nokia must identify on a patent by patent basis why InterDigital's ETSI declarations are false and made in bad faith.[7] Nokia's statements should be based on its present knowledge, and it can supplement its responses based on information derived from discovery after its supplemental responses are served. The ability to supplement should not be viewed as an opportunity to hold back information Nokia presently has, only to be disclosed at a later stage in the litigation. Finally, if Nokia, in addition to the ETSI declarations, intends to rely on other statements made by InterDigital to support its Lanham Act claim, it must make the same clear statement regarding alleged falsity that is required for InterDigital's ETSI declarations. To the extent that Nokia's supplemental response does not cover all the information requested in InterDigital interrogatories 2 and 5, Nokia shall supplement its responses to those interrogatories on the same schedule.

9.    Once Nokia has shown its cards on its Lanham Act claim, and in particular why InterDigital's essentiality statements are allegedly false, InterDigital must respond in kind, within thirty days from the service of Nokia's verified statement, and with the same level of detail provided by Nokia. InterDigital must state for each patent whether the patent is "essential" as that term "essential" is used by ETSI, and the basis for its defense that its statements regarding essentiality are true statements. To the extent this statement does not cover all the information requested in Nokia interrogatories 1, 3-4, 6, and 11, InterDigital must supplement its responses to those interrogatories on the same schedule.

10.    With regard to Nokia's interrogatories 7-9, these interrogatories are directed primarily to patent validity issues. InterDigital argues that the interrogatories are irrelevant to the truth or falsity of the statements alleged to have violated the Lanham

---

[7]  Nokia agreed to this process at the November 2, 2006 argument. Nov. 2, 2006 Hearing Transcript at 32-33.

Act. I agree with InterDigital that Nokia's Lanham Act allegations so far are unrelated to patent validity issues. In its November 8, 2006 reply, Nokia does not seriously challenge InterDigital's argument that patent validity issues are irrelevant to Nokia's Lanham Act claims. Therefore, the objection is sustained, and InterDigital need not respond to these interrogatories.

11.    With regard to interrogatory number 10, Nokia has requested discovery directed to license negotiations between InterDigital and third parties relating to the patents at issue in this litigation. Nokia argues that the standards for discovery under Federal Rule of Civil Procedure 26 are broad, and Federal Rule of Evidence 408, precluding admission of settlement negotiations, is an evidentiary rule, not a discovery rule, and therefore should not bar discovery of settlement negotiations. InterDigital has objected to this discovery, claiming that the documents being withheld reflect substantive settlement correspondence that would be inadmissible under Rule 408, and allowing discovery would invade the protections afforded settlement negotiations by Federal Rule of Evidence 408. InterDigital also objects to discovery relating to compliance with 2G standards.

12.    While Rule 408 addresses the inadmissibility of evidence at trial, "the same consideration of the policy which actuates the courts to exclude an offer of compromise made by [the defendant to the plaintiff], also applies to settlement [negotiations between the defendant and a third party.]" *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 554 (E.D.Cal.1990), *overruled on other grounds by Jaffee v. Redmond*, 518 U.S. 1 (1996) (brackets in original) (*quoting McCormick on Evidence* at 813 (3rd. Ed. 1984)). *See also Bottaro v. Hatton Associates*, 96 F.R.D. 158, 159

(E.D.N.Y.1982) ("... while admissibility and discoverability are not equivalent, it is clear that the object of the inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue."). Relying on the policy considerations behind Rule 408, the court in *Cook* denied discovery of settlement correspondence, and concluded that settlement discussions can be filled with "puffing and posturing," and are not a reliable source of relevant information for resolving contested claims. The "facts" exchanged in the settlement process may sometimes not be facts at all, but the posturing of the parties. Discovery of settlement exchanges could be highly misleading if allowed to be used for purposes other than settlement. *See also United States v. Contra Costa County Water Dist.*, 678 F.2d 90, 92 (9th Cir.1982) (settlement evidence "is irrelevant as being motivated by a desire for peace rather than from a concession of the merits of the claim"). Statements made during on-going settlement negotiations are considered unreliable and therefore irrelevant to other litigation. Equally important, if discovery is permitted of on-going negotiations, such a ruling may discourage resolution of other disputes, and may chill the on-going settlement process. *See Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 1996 WL 71507, at *6 n.1 (S.D.N.Y.) ("The court recognizes that disclosure of offers in ongoing settlement negotiations might have an adverse impact on the settlement process."); *United States v. American Society of Composers*, 1996 WL 157523, at *3 (S.D.N.Y.) ("Of particular pertinence to this case is the distinction between disclosure of negotiations that have led to a consummated settlement and the disclosure of discussions that are either ongoing or at least have not yet resulted in agreement."). Therefore, InterDigital need not respond to discovery, including depositions, related to on-going license negotiations. Based on the

7

present record I will also sustain InterDigital's objection to discovery relating to 2G

standards.  This discovery is unlikely to result in the discovery of admissible evidence in

a case involving 3G standards.

  13. Finally, the parties responded to certain interrogatories by invoking

Federal Rule of Civil Procedure 33(d) as a substitute for a narrative response.  The parties

agreed at argument to produce responsive documents on a rolling basis as soon as

practical.

                 _____

                 Special Master

DATED:  November 14, 2006

EXHIBIT H

*Nokia Corporation and Nokia, Inc.   v.*
*Interdigital Communications Corp., et al.*

---

*Hearing*
*October 13, 2006*

---

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

*Original File 101306~1.TXT, 115 Pages*
*Min-U-Script® File ID: 0514830656*

**Word Index included with this Min-U-Script®**

**Nokia Corporation and Nokia, Inc.    v.**
**Interdigital Communications Corp., et al.**

---

1
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
NOKIA CORPORATION and  ) C.A. No. 05-16-JJF
NOKIA, INC.,                        )
        Plaintiffs,             )
v.                                     )
INTERDIGITAL                    )
COMMUNICATIONS CORPORATION)
and INTERDIGITAL              )
TECHNOLOGY CORPORATION, )
        Defendants.            )
                    Friday, October 13, 2006
                    1:29 p.m.
                    Courtroom 4B
                    844 King Street
                    Wilmington, Delaware
BEFORE: SPECIAL MASTER COLLINS J. SEITZ, JR.
APPEARANCES:
    MORRIS, NICHOLS, ARSHT & TUNNELL
    BY: JULIA HEANEY, ESQ.
            -and-
    ALSTON & BIRD, LLP
    BY: PATRICK J. FLINN, ESQ.
    BY: LANCE A. LAWSON, ESQ.
            Counsel for Plaintiffs

                                        Page 2

APPEARANCES CONTINUED:
    POTTER, ANDERSON & CORROON
    BY: RICHARD HORWITZ, ESQ.
            -and-
    FULBRIGHT & JAWORSKI, LLP
    BY: LINDA L. ADDISON, ESQ.
    BY: DAN D. DAVISON, ESQ.
    BY: RICHARD S. ZEMBEK, ESQ.
            Counsel for the Defendants
Also Present:
    Mr. Andrew G. Isztwan, Sr. Director
    InterDigital

                                        Page 3

[1] **SPECIAL MASTER SEITZ:** Is
[2] everybody [2] here that's coming?

[3] **MR. FLINN:** Yes, we are.

[4] **MS. ADDISON:** Yes, Your Honor.

[5] **SPECIAL MASTER SEITZ:** Mr. Seitz is
[6] fine rather than Your Honor. Okay.

[7] All right. Welcome, everybody. [8] We'll
[8] go on the record right now. I [9] assume
everybody has given their appearances
[10] to [10] the court reporter.

[11] Have you talked at all about what [12]
sequence you want to go in since we
have cross [13] motions?

[14] **MS. ADDISON:** We haven't really, and
[15] we're at the Special Master's pleasure
here.

[16] **SPECIAL MASTER SEITZ:** Why
don't we [17] hear from Nokia first, if
that's okay with the [18] parties.

[19] **MS. ADDISON:** Your Honor, with all
[20] due respect, may we make a sug-
gestion?

[21] **SPECIAL MASTER SEITZ:** Sure.

[22] **MS. ADDISON:** This is unknown to
the [23] Court, and the reason it's un-
known to the Special [24] Master is
because it happened — may I approach

                                        Page 4

[1] the podium?

[2] **SPECIAL MASTER SEITZ:** Yes, please
[3] do.

[4] **MS. ADDISON:** It is our position, [5]

Your Honor, that Nokia's motion is, at
best, [6] premature and should not be
heard this afternoon. [7] And the reason
that is unknown to the Court, in [8] the
development that occurred after the
parties [9] completed their filings before
the Special [10] Master, Nokia agreed to
meet with representatives [11] of Inter-
Digital to see if they could resolve the [12]
underlying dispute. I have corres-
pondence that I [13] can show the Court.

[14] The status of that is that on [15]
September 25th representatives of Nok-
ia wrote [16] representatives of Inter-
Digital and accepted [17] their invitation
to meet to attempt to resolve [18] the
dispute that was done under the Master
[19] Agreement that provided that before
a case can go [20] to arbitration, the
parties have to go through [21] certain
steps.

[22] One of those steps was giving [23]
notice, requesting a meeting, having a
meeting.

[24] **SPECIAL MASTER SEITZ:** Why
don't you

                                        Page 5

[1] slow down a little bit, okay, for the
court [2] reporter's sake. Are you talking —
when you [3] say resolving their dispute,
what dispute are you [4] referring to? Are
you referring to the dispute [5] as to
whether these documents can be used
or the [6] overall dispute?

[7] **MS. ADDISON:** Yes. No, the dispute [8]
as to whether the documents can be
used [9] specifically. The dispute on
which InterDigital [10] will move to
compel arbitration in the event that [11]
the parties can't resolve that for them-
selves.

[12] The status of that is that on [13]
September 25th when Nokia wrote a
letter to [14] InterDigital saying, We will
meet with you on [15] October 3rd,
InterDigital wrote a letter back [16] say-
ing, Here are some dates, and we will
meet [17] with you either at the offices of
Alston & Bird [18] in New York or the
offices of Fulbright & [19] Jaworski in
Washington. That was on October 3rd.

[20] As of last night, Nokia had not yet [21]
selected from those dates. And I believe
another [22] communication has gone to
Nokia saying, you know, [23] We've got a
short limited period of time within [24]
which to meet. Can we hear from you
within the

                                        Page 6

[1] next five business days, because
otherwise we're [2] going to have to start
in arbitration.

[3] But the posture right now is, as far [4] as
I know, unless perhaps Mr. Flinn have
[5] otherwise, that the parties have
agreed to meet, [6] and in good faith,

hopefully within the next two [7] weeks,
because there is a period of time pro-
vided [8] for under the contract to see if
they can resolve [9] their dispute about
the use of those documents. [10] And so
we would respectfully submit that Nok-
ia's [11] motion that I believe the Special
Master had [12] intended to hear this day
is at least premature.

[13] If they reach an agreement, the [14]
Court will never have to hear it. Ob-
viously, if [15] they don't reach an agreem-
ent, the next step [16] would be that
InterDigital would file a motion to [17]
compel arbitration, and then it can be
heard [18] after that.

[19] **SPECIAL MASTER SEITZ:** Well,
there [20] are — and I assume you would
withdraw your [21] motion as well; right?

[22] **MS. ADDISON:** No, Your Honor. We
[23] would not.

[24] It is our position that the motion

                                        Page 7

[1] to stay can and, in fact, should go forth
this [2] afternoon, because what we're
seeking is such [3] limited relief.

[4] And in the event that there were an [5]
agreement between the parties, the stay
then [6] would be moot or could be
dissolved. If there [7] wasn't, then we
would ask that the stay be kept [8] in
place pending an arbitration, that we will
[9] bring a motion to compel.

[10] The reason, and frankly, Your Honor,
[11] Mr. Seitz — please forgive me, old
habits die [12] hard — this afternoon this
is in a very peculiar [13] procedural
stature. I think my colleague, [14] Mr.
Flinn, would probably agree with me,
this is [15] not precisely the posture that
we thought this [16] would be in when we
came before you this [17] afternoon,
because frankly we had thought that by
[18] now we would have filed a motion to
compel [19] arbitration.

[20] **SPECIAL MASTER SEITZ:** Well,    I
think [21] I read in your letter that you
gave them a drop [22] dead date or there
was a drop dead date of [23] September
26th in some correspondence that I saw.

[24] **MS. ADDISON:** Yes, on the 25th they

                                        Page 8

[1] said they would meet with us. That
was not when [2] — once they did that,
we obviously intend and [3] are looking
forward to meeting with Nokia to [4]
negotiate in good faith. I assume that
they are [5] as well.

[6] But until — unless and until those [7]
negotiations occur, it is premature for [8]
InterDigital to give a — to file a motion to
[9] compel arbitration. And if those nego-
tiations [10] are successful, then there
would be no need for a [11] motion to
compel arbitration.

---

Case 1:05-cv-00016-JJF    Document 126-3    Filed 01/09/2007    Page 24 of 25

Hearing
October 13, 2006

Nokia Corporation and Nokia, Inc.    v.
Interdigital Communications Corp., et al.

they [16] would seek examination on.
[17] And the reason is clear, the reason [18] is because a corporation has certain duties once [19] an entity like Nokia says, I want to take [20] InterDigital Corporation's deposition on these [21] specific areas.

[22] On that point, InterDigital has an [23] obligation to identify the appropriate witness or [24] witnesses, and then make sure that witness has

### Page 87

[1] educated him or herself sufficiently to provide [2] answers on behalf of the corporation and bind the [3] corporation to those answers.

[4] It's designed as the King, as the [5] Paparelli case discussed, and even the Detoy case [6] which talked about surprise categories or ambush. [7] It's designed to protect both the presenting [8] party and the questioning party, so that you [9] can't go and you can't say I want to talk to a [10] corporation about Item 1, and then all of a [11] sudden you're surprised and you're talking about [12] Items 2, 3, 4, 5 and 6.

[13] There's a reason that there's a [14] requirement for reasonable specificity. If there [15] wasn't that requirement that the noticing entity [16] identify the categories of requested examination [17] with reasonable specificity, they wouldn't have [18] put that in there. They would have just said [19] kind of give them a general idea of what you want [20] to talk about.

[21] It is clear, we believe, Your Honor, [22] it was appropriate to instruct Mr. Boles not to [23] answer the questions that were clearly outside [24] the areas of examination. We've cited the Court

### Page 88

[1] to the Paparelli analysis. I am not going to [2] read it again for the Court, but I do think even [3] though it was decided in 1985, it is well [4] reasoned. It does make sense.

[5] The King analysis when I say — [6] well, the King analysis is, Well, they can ask [7] for Items 1, 2 and 3, let's say and the [8] corporation, InterDigital, would have an [9] obligation to make sure they produce a witness on [10] Items 1, 2 and 3. And if InterDigital doesn't, [11] then shame on InterDigital.

[12] If they ask questions outside, then [13] and they wanted to bind the corporation, then [14] shame on Nokia for not asking those categories. [15] They can't buy the corporation.

[16] But the King's case says, but the [17] individual ought to be able to go ahead and [18] answer the questions, and we'll figure out some [19] way down the road to figure out if it was an [20] individual or if it

was a corporation — if it [21] was a corporate answer.

[22] With all due respect, it was very [23] clear at both Mr. Boles' deposition and [24] Mr. Muir's deposition that they weren't there in

### Page 89

[1] their individual capacity. They were there [2] solely and expressly as speaking on behalf of the [3] corporation.

[4] I will admit that Paparelli is [5] probably the minority opinion. It's the minority [6] position in the country, but it is still good law [7] in Massachusetts.

[8] King is still good law in Florida. [9] There is law in New Jersey and other [10] jurisdictions. This issue has not been decided [11] in Delaware, and it has not been decided in the [12] Third Circuit. It's an open issue.

[13] But just because Paparelli may be [14] the minority opinion, or may be the minority [15] position of Courts that have addressed it doesn't [16] mean that it's the wrong position. There are [17] many issues throughout our legal history which [18] started out as a minority position, but when the [19] courts looked at it, when the majority of the [20] courts looked at it, when the appellate courts [21] looked at it, turned out to be the right [22] position.

[23] **SPECIAL MASTER SEITZ:** Let me — [24] maybe I can save you some time.

### Page 90

[1] Here's what I'd like to do.

[2] **MR. DAVISON:** Yes, sir.

[3] **SPECIAL MASTER SEITZ:** You know, [4] it's obviously early in the discovery process in [5] this case, and having been a Special Master now [6] in many cases, I find it useful to kind of tell [7] people what I'm thinking early on in the case and [8] give them a chance to govern their conduct [9] accordingly. And if they don't, then I tend to [10] get aggravated and look towards sanctions.

[11] Although I think you'll find in [12] talking with people who have dealt with me as a [13] Special Master, I really do use it as a last [14] resort, because usually the quality of counsel [15] before me is excellent as it is in this case, and [16] it really should be unnecessary once you kind of [17] know what I'm thinking and how discovery should [18] go in a case.

[19] So this is what we're going to do. [20] We're going to reconvene a deposition with a new [21] 30(b)6 deposition notice covering the topics that [22] Nokia wants to cover that were not allegedly able [23] to be covered in the deposition. Okay.

[24] And we're going to do that as

### Page 91

[1] promptly as possible. You will have time to [2] prepare this witness for those categories.

[3] In future depositions, if there are [4] instructions not to answer, I want you to call me [5] and I will resolve it on the phone. If I'm not [6] available, I want you to continue the deposition [7] and leave a message with me. If I can get to [8] you, I will get to you as soon as possible and [9] rule on that instruction right away. If not, [10] we'll have to do it more in the fullness of time, [11] for instance, if I'm traveling or just [12] unavailable.

[13] But I want you to get me on the [14] phone, and I want to rule on these instructions [15] right away. In the future, and when this comes [16] up again, if someone has instructed not to [17] answer, and they are proven to be incorrect in [18] that instruction, then I'm going to consider [19] sanctions. And that is just because I think our [20] rules in this district, and if you read Judge [21] McKelvie's famous opinion on when it is proper to [22] instruct witnesses not to answer in this [23] district, those are pretty close guidelines. And [24] they tell you it's almost never proper to

### Page 92

[1] instruct a witness.

[2] There is some ambiguity in this [3] area, and I think you've done a nice job arguing [4] the fact that there appear to be several [5] different views, and the view which I have some [6] sympathy for, but I'm not deciding for the Court, [7] but I have some sympathy for is that you prepare [8] a witness for certain topics. And if they go [9] outside these topics, it is a bit of an unfair [10] advantage.

[11] Now, I'm sure Mr. Flinn would say, [12] Well, wait a minute. These were within these [13] topics, and what was done at this deposition was [14] improper.

[15] It's a little hard for me on this [16] record to determine whether they're inside or [17] outside. I think some of them are pretty darn [18] close calls.

[19] So what I'm trying to do is give you [20] future guidance that the close calls ought to go [21] in favor of answering the question rather than [22] instruction not to answer. If they are totally [23] outside the topic, then I can make that [24] determination, and I can determine that — make

### Page 93

[1] that determination. There will have to be [2] consequences for that because the rules in this [3] district are pretty tight about when you can't [4] instruct a witness not to answer.

[5] So, Mr. Flinn, are we clear on what [6] your rights are?

[7] **MR. FLINN:** I think so as a matter [8] of

Nokia Corporation and Nokia, Inc.   v.
Interdigital Communications Corp., et al.

**Hearing**
October 13, 2006

process. I have one issue that I would hate [9] to be back here in three weeks fighting over [10] again, and I alluded to in my comments. And I [11] think it's — hopefully we can get some guidance [12] from you on it.

[13] **SPECIAL MASTER SEITZ:** I was going [14] to get to that, —

[15] **MR. FLINN:** Okay.

[16] **SPECIAL MASTER SEITZ:** — but I just [17] wanted to make sure that we were all clear on [18] what I am asking the parties to do, namely for [19] you to do another 30(b)6 deposition notice with [20] the topics that you want to cover, and then they [21] can prepare a witness and will reconvene the [22] deposition. There are not going to be sanctions, [23] I should probably state that explicitly, at this [24] point in time.

Page 94

[1] **MR. FLINN:** Here's the one question [2] I have: And I just don't want to have this [3] happen. We issued, I think, what remain pretty [4] clear direct comments. They served a bunch of [5] objections. They said, We don't want to have [6] them testify about this, this or this, because [7] that is irrelevant or over broad or something.

[8] And their position has been, up [9] until right now, that it's fair game for them [10] then not to have the witness prepared on that [11] subject. And that it's — so, and I'll give you [12] a real good example of what I mean.

[13] We're going to want to know why it [14] was those 11 and not the rest of them. That's [15] what we tried to find out. First, we're going to [16] try to find out — now, their theory is that the [17] only ones they want to talk about are the 11.

[18] **SPECIAL MASTER SEITZ:** I understand [19] that point and I'm willing to —

[20] **MR. FLINN:** Okay.

[21] **SPECIAL MASTER SEITZ:** — give some [22] kind of guidance on that, as uninformed as it [23] might be this early in the proceeding. If there [24] are objections that are filed that are of such

Page 95

[1] seriousness that they are going to interfere with [2] the questioning of the deposition, call me and [3] we'll resolve them in advance of the deposition. [4] If you're going to make objections that you [5] intend to stand on to block questioning, let's [6] get it on the table. You can call me and we'll [7] resolve it in a telephone conference.

[8] **MR. DAVISON:** Your Honor, the [9] example that Mr. Flinn pointed out why, when we [10] answered our interrogatories, did we pick these [11] 11, we

objected, as I think is clear from the [12] testimony, that that was an issue not only [13] outside the bounds, but it was also protected by [14] attorney client and work product privilege.

[15] **SPECIAL MASTER SEITZ:** Well, as I [16] say, I'm willing to resolve an instruction. [17] Based on privilege is entirely proper.

[18] And assuming that it's supported and [19] sustained, there's no problem with instructions [20] based on privilege.

[21] **MR. DAVISON:** Okay.

[22] **SPECIAL MASTER SEITZ:** It better be [23] correct. But there's certainly no problem with [24] an instruction on privilege.

Page 96

[1] Now, let's deal with the issue of — [2] is it 185 versus 11 or what's the number?

[3] **MR. FLINN:** 180.

[4] **MR. DAVISON:** 180 family. Here's [5] our issue, Your Honor, Nokia has said that the [6] two ETSI declarations, the 2001 and the 2004 ETSI [7] declarations are actionable. They, in response [8] to your first discovery order where you said all [9] right, that's fine, but you need to tell [10] InterDigital how everything is false about it, [11] what they did is they attached, after we had [12] identified our 11, they attached — reattached [13] and rebrought up the 18 patents.

[14] That, to us, means that they're only [15] claiming that 18 of those patents are false. [16] What they want to do is they want to shift the [17] burden to us to say, go through. We don't have [18] to say what's false. You need to go through all [19] 180 family of patents and tell us why you think [20] what you said is true, create claim charts.

[21] We created 300 pages of claim charts [22] that they didn't ask a single question on in the [23] deposition. They want us to go through that same [24] exercise for not 11 patents, for 180 patents, and

Page 97

[1] then they may or may not ask questions about it [2] or they may or may not agree with us.

[3] We think it's incumbent pursuant to [4] their obligations as plaintiff and also the [5] Court's discovery order and the interrogatories [6] to say what is false about those statements.

[7] When we took Mr. Muir's deposition, [8] the 30(b)6 representative of Nokia, we asked him, [9] What's false about this? He couldn't identify a [10] single thing. Couldn't say one thing that was [11] false.

[12] Actually he couldn't say what was [13] false with any of the statements that formed the [14] basis of any of their statements.

[15] **SPECIAL MASTER SEITZ:** Okay. Well, [16] it's hard for me to make a judgment about his [17] deposition, —

[18] **MR. DAVISON:** I appreciate that.

[19] **SPECIAL MASTER SEITZ:** — the [20] quality of his answer. I think I understand your [21] point to be that their lack of specificity on [22] what they're claiming is false is causing you [23] some discovery angst.

[24] **MR. DAVISON:** With all due respect,

Page 98

[1] more than angst.

[2] **SPECIAL MASTER SEITZ:** Okay. Well, [3] the one thing we have to remember here, though, [4] is this is discovery. This is not — you're not [5] trying the case in front of me.

[6] **MR. DAVISON:** I appreciate that.

[7] **SPECIAL MASTER SEITZ:** We are in [8] the discovery phase, so if something is reasonably [9] likely to lead to the discovery of admissible [10] evidence, it is discoverable. Okay.

[11] So let me just give you my initial [12] impression and that is that —

[13] **MR. DAVISON:** Yes.

[14] **SPECIAL MASTER SEITZ:** So blocking [15] questioning based upon this large family of [16] patents, to me, does not seem reasonable at this [17] point in time in the litigation. I mean, as I [18] understand it, there's a universe of 180 patents [19] out here, some which may or may not be asserted [20] as false, but it doesn't necessarily preclude [21] them from asking questions about those patents. [22] Okay.

[23] That's my initial impression here. [24] And, you know, maybe on a better record, I can

Page 99

[1] say they're way off base or they're not. I'm not [2] in a position to do that right now.

[3] And what I'm saying, just as some [4] initial guidance right now, is here's the [5] universe of patents that appears to be at issue. [6] They're not going to be precluded at this point [7] in time about asking questions about them.

[8] **MR. DAVISON:** There is also, as [9] Mr. Horwitz reminded me, Your Honor, as we set [10] forth in our objection about the interrogatories [11] and the deposition notice, the burden of [12] requiring a party to sit down and create claim [13] charts, which is what they've done. And when you [14] look at Category 2, with all due respect to [15] Mr. Flinn, when you get back, they define [16] process — we define the process. But category [17] two said, Give us the reasons why.