# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION                        )
and NOKIA INC.,                          )
                                         )
        Plaintiffs,                      )
                                         )
    v.                                   )        C.A. No. 05-16 (JJF)
                                         )
INTERDIGITAL COMMUNICATIONS              )
CORPORATION and INTERDIGITAL             )
TECHNOLOGY CORPORATION,                  )
                                         )
        Defendants.                      )

## DECISION ON PLAINTIFFS' MOTION FOR DECLARATION THAT DOCUMENTS ARE DISCOVERABLE AND DEFENDANTS' CROSS MOTION TO STAY DISCOVERY PENDING RESOLUTION OF ARBITRATION PROCEEDINGS

Jack B. Blumenfeld and Julia Heaney of MORRIS, NICHOLS, ARSHT & TUNNELL, for Plaintiffs, Nokia Corporation and Nokia, Inc.

Richard L. Horwitz and David E. Moore of POTTER ANDERSON & CORROON, LLP for Defendants, InterDigital Communications Corporation and Interdigital Technology Corporation

Collins J. Seitz, Jr., Special Master

## PROCEDURAL HISTORY

This is a discovery dispute in a Lanham Act case. On September 1, 2006, Plaintiffs Nokia Corporation and Nokia, Inc., (collectively "Nokia") filed a Motion for Declaration that Documents are Discoverable ("Motion for Declaration"). Nokia seeks a ruling that two technical presentations produced during discovery by the Defendants, InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "InterDigital"), need not be returned to InterDigital, and can be subject to discovery in the present action, consistent with the Protective Order entered on July 13, 2006 ("Protective Order").

On September 5, 2006, InterDigital filed a Cross Motion to Stay Discovery Relating To Statements Made During Confidential Licensing Presentations Pending Resolution of Arbitration Proceedings (the "Motion to Stay"). InterDigital asks for a limited stay of discovery while it proceeds with arbitration over the permitted use of the technical presentations at issue in Nokia's Motion for Declaration.

On September 15, 2006, Nokia submitted a response in opposition to InterDigital's Motion to Stay, and on September 22, 2006, InterDigital submitted a reply in support of its Motion to Stay. On October 13, 2006, the Special Master heard argument on both motions.

2

After consideration of the parties' submissions and argument, for the reasons set forth below, InterDigital's Motion to Stay is granted, and Nokia's Motion for Declaration is denied.

## BACKGROUND

### A.    The 1999 Master Agreement

Nokia and InterDigital have each been involved in research and development efforts for wireless communication technology.  As part of their collaborative efforts, in 1999, Nokia and InterDigital entered into three related agreements – the TDD Development Agreement, the Patent License Agreement, and a Master Agreement.  The three agreements arose from negotiations between Nokia and InterDigital for the development of the next generation of wireless technology.  Nokia and InterDigital sought to work together on research and development, to cross-license the developed technology, and cross-license patents and patent applications relating to the technology.[1]

Although the parties did not provide the Special Master with copies of the TDD Development Agreement or the Patent License Agreement, it appears from the Master Agreement that it acts as the umbrella under which the other agreements operate.  The Master Agreement contains payment terms, and also contains standard provisions addressing consideration (Article 3), dispute

---

[1]  Master Agreement, pp. 1-2 (Ex. C to Motion to Stay).

3

resolution (Article 4), proprietary information (Article 5), and termination (Article 7).

Relevant to the instant dispute, the Master Agreement also contains a "confidentiality provision" that limits disclosure and use of confidential information of each party.  Article 5, Section 5.1 provides as follows:

> 5.1    Protection of Confidential Information.  Except as otherwise provided in this Agreement or the Related Agreements, InterDigital and Nokia each agree not to disclose or make available to any third person the other's confidential information, or confidential information created in the TDD Project (regardless of the creator or owner of such information), or the contents of this Agreement and the Related Agreements without the express written consent of the disclosing party.  The party receiving confidential information shall use such confidential information only as necessary to exercise its rights or perform its obligations under this Agreement and shall not circulate confidential information within its own organization except to employees with a specific need to know such confidential information for such purposes.

The Master Agreement also contains a broad arbitration provision. According to Section 4.1, "all disputes arising under" any of the three related agreements must be submitted to the mediation and arbitration procedures contained in the Master Agreement.

## B.    The Presentations

In January, 2002, InterDigital began discussions with Nokia about entering into a new patent license agreement to extend beyond the January 1, 2007

4

expiration date of the existing agreements.[2]  As part of the negotiations,
InterDigital gave Nokia a "presentation," marked confidential, reviewing
InterDigital's overall wireless communication patent portfolio, as well as patents
relating to the next generation 3G technology  (the "January 2002 Presentation").[3]
In June, 2003, InterDigital gave a similar but longer confidential presentation to
Nokia on the same subject matter (June 2003 Presentation") (collectively, the
"Presentations").[4]

### C.   Disclosure of the Presentations during Discovery

On June 30, 2006, Nokia attached the Presentations to its statement
submitted as required by the First Discovery Order.  On August 16, 2006, in
response to Nokia's First Set of Requests for Production, InterDigital produced to
Nokia the Presentations.  The Presentations produced in discovery were the same
presentations attached to Nokia's statement, except that InterDigital placed
document identification numbers on each page.

Two weeks later, at the August 29-30, 2006 deposition of InterDigital's
30(b)(6) designee, InterDigital demanded the return of the Presentations, and
claimed that they were subject to the attorney client privilege and had been
inadvertently produced.  InterDigital thereafter withdrew its claim of privilege, and

---

[2]  Motion for Declaration at 2.
[3]  Ex. A to Motion For Declaration.
[4]  Ex. B to Motion For Declaration.

also withdrew its request that Nokia return the Presentations. Instead, InterDigital filed its present motion seeking a stay of discovery relating to the Presentations until arbitration proceedings are concluded under the Master Agreement.

**D.     The UK and New York Proceedings**

In addition to the Delaware litigation, Nokia also brought a proceeding in July 2005 against an InterDigital subsidiary, InterDigital Technology Corporation ("IDT"), in the High Court of Justice, Chancery Division, Patents Court in the United Kingdom (the "UK Proceeding").[5] Although the dispute involved in the UK Proceeding is not entirely clear from the record, the parties agree that in March, 2006, InterDigital moved to dismiss the UK Proceeding. As part of the motion to dismiss briefing, Nokia attempted to rely upon the Presentations to support its argument against dismissal.

InterDigital responded by filing an action in the United States District Court for the Southern District of New York. The complaint has not been made of record, but as part of the New York litigation, InterDigital filed a motion for a temporary restraining order ("TRO"), seeking a court order prohibiting Nokia from disclosing or using the confidential information in the UK Proceeding, pending the conclusion of arbitration proceedings that had not, as of that date, been initiated.

---

[5]   Motion to Stay at 4.

6

On March 24, 2006, the New York district court granted a temporary restraining order, precluding Nokia from disclosing or circulating the Presentations except as permitted by the Master Agreement. The district court also enjoined Nokia from disclosing or circulating the Presentations in the UK Proceedings "unless and until (i) the London Court shall have issued an order directing such disclosure and then only to the extent of such order, or (ii) another judge of this court shall have issued an order amending or dissolving this Order."[6] On March 29, 2006, the temporary restraining order was kept in place, but was modified to enjoin disclosure of the Presentations without an order from both the New York district court and the UK court.[7]

On March 31, 2006, the New York district court vacated the temporary restraining order and dismissed the case without prejudice, following the agreement of the parties that Nokia could use the Presentations solely to support its opposition to the motion to dismiss.[8]

### E.    Arbitration Proceedings

On August 18, 2006, InterDigital initiated arbitration proceedings under the Master Agreement by sending Nokia a notice of dispute letter.[9] By the terms of the Master Agreement, if the parties did not resolve the dispute within 30 days of the

---

[6]  Ex. D to Motion to Stay.
[7]  Ex. E to Motion to Stay.
[8]  Exs. B-C to Sept. 15 Nokia Reply.
[9]  Ex. A. to Motion to Stay.

notice letter, senior executives of each party were required to meet and discuss the dispute. According to a November 13, 2006 letter to the Special Master, senior executives of InterDigital and Nokia met on November 8, 2006, but were unable to resolve the dispute.

### F.    The Parties' Positions

Nokia argues that the Presentations are relevant to the Lanham Act claims in this case, are not protected by any privilege, and therefore need not be returned to InterDigital. It also claims that a private contract between the parties cannot shield relevant information from the judicial process. Because InterDigital produced the Presentations in the litigation, Nokia claims that they were disclosed "outside" the Master Agreement and therefore are not governed by the Master Agreement. Nokia argues further that the confidentiality provisions of the Master Agreement were superseded by an April 2006 Settlement Agreement between the parties. The 2006 Settlement Agreement allegedly permits Nokia to disclose the Presentations as part of the instant litigation. Finally, Nokia contends that even if the Master Agreement controls the disclosure and use of the Presentations, the "court order" provision of the Master Agreement permits disclosure in this case.

In response to Nokia's Motion for Declaration, and in support of its Motion to Stay, InterDigital argues that a stay of discovery should be granted limited to the Presentations, and Nokia should be prohibited from using, disclosing, or relying on

the statements, until the arbitration is concluded.[10]  InterDigital claims that the

Presentations were made during confidential licensing negotiations between the

parties, and Nokia is now attempting to use them to support its Lanham Act claims

in violation of the restrictions on use contained in the Master Agreement.[11]

Because the Master Agreement contains a provision requiring that any dispute

arising out of the Master Agreement be resolved through the procedures set forth in

the Master Agreement, InterDigital claims that any discovery relating to the

Presentations should be stayed until the use of the Presentations can be decided

according to the procedures of the Master Agreement.[12]

## DISCUSSION

### A.    InterDigital's Motion to Stay

In Section 4.1 of the Master Agreement, Nokia and InterDigital agreed to

resolve "all disputes arising under" the Master Agreement and the related

agreements according to the dispute resolution provisions contained in the Master

Agreement.  The Master Agreement is a contract involving international

commerce, and is therefore governed by the Federal Arbitration Act.  9 U.S.C. §§

1, 2 (2004).  A broad arbitration provision like § 4.1 creates a presumption of

arbitrability for issues arising under the Master Agreement.  *ADR/JB, Corp. v.*

---

[10]  *Id.* at 3.
[11]  *Id.* at 2.
[12]  Motion to Stay at 2.

*MCY III, Inc.*, 299 F.Supp.2d 110, 114 (E.D. N.Y. 2004). If there is any ambiguity about whether an issue was intended to be arbitrated, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Looking within the four corners of the Master Agreement, the dispute raised by InterDigital falls squarely within § 4.1 of the Master Agreement. Nokia intends to use the Presentations to support its Lanham Act claims, and has also sought discovery related to the Presentations. Whether Nokia's intended use of the Presentations would violate § 5.1 of the Master Agreement qualifies as a dispute "arising under" the Master Agreement, and therefore should be decided through the contractually-agreed dispute resolution process.

Nokia argues that under federal law, private parties cannot by contract deprive the federal court of relevant non-privileged information such as the Presentations. The cases cited by Nokia, however, are clearly distinguishable from the instant case. In those cases, the parties attempted to rely on the confidential nature of the documents, or asserted a contractual confidentiality agreement, to resist disclosure to a third party. *See Westinghouse Elec. Corp. v. Republic of the Phillipines*, 951 F.2d 1414, 1426 (3d Cir. 1991)(disclosure of information to government on agreement of confidentiality did not prohibit third party access to the information); *In re Columbia/HCA Healthcare Corp. Billing*

10

*Practices Litig.*, 293 F.3d 289, 313 n.3 (6th Cir. 2002)(same); *Constand v Cosby*, 229 F.R.D. 472, 481 n.11 (E.D. Pa. 2005)(confidentiality invoked in an attempt to shield information from public review); *Sonnino v. University of Kansas Hosp. Authority*, 2004 WL 769325 at *3 (D. Kan.)(confidential settlement agreement invoked in an attempt to preclude discovery of its details by third party); *Burda Media, Inc. v. Blumenberg*, 1999 WL 413469 at *3 (S.D.N.Y.), superseded on other grounds by *Johnson Matthey, Inc. v. Research Corp.*, 2002 WL 31235717 at *2 (S.D.N.Y.)(same).

Here, Nokia is a party to the contract with InterDigital, that InterDigital is attempting to enforce against Nokia.  The contractual term at issue addresses the "use" that can be made of the confidential Presentations – InterDigital is not seeking to enforce a confidentiality obligation.  Assuming InterDigital prevails in the arbitration proceedings, nothing in federal law prevents a court from enforcing a voluntary agreement between two parties restricting the use in future litigation of confidential information exchanged between the parties.

**B.    Nokia's Motion for Declaration**

Nokia's arguments center on the applicability of the Master Agreement to the Presentations.  Under New York law, and case law under the Federal Arbitration Act, where the parties agree to a broad arbitration provision, the arbitration panel decides all issues that relate to the main agreement. *Louis Dreyfus*

*Negoce S.A., v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001) (internal citation omitted) ("When parties use expansive language in drafting an arbitration clause, presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated..."). Whether the Presentations come within the disclosure and use provisions of the Master Agreement, and whether the 2006 Agreement of the parties superseded § 5.1 of the Master Agreement are issues to be decided by the arbitration panel. Therefore, a stay of discovery is appropriate, limited to the Presentations, until the arbitration proceedings are concluded.

Alternatively, if it is necessary to consider the merits of Nokia's arguments, I find that the express language of § 5.1 of the Master Agreement covers not only confidential information exchanged as part of the TDD Project, but also covers the disclosure of either party's confidential information unrestricted as to subject matter. The Master Agreement provides that "InterDigital and Nokia each agree not to disclose or make available to any third person the other's confidential information...." There is no dispute that the Presentations were marked confidential and continue to maintain their confidentiality under the Protective Order. Therefore, confidential information exchanged between the parties relating to the Presentations falls within the use limitation of § 5.1 of the Master Agreement.

12

I also find that, at most, the 2006 Settlement Agreement would have altered the disclosure restrictions of the Master Agreement, but did not supersede the restrictions on use. The 2006 Settlement Agreement addressed the parties' dispute regarding Nokia's royalty obligations for sales of 2G TDMA-based products and related litigation matters. As part of the 2006 Settlement Agreement, Nokia and InterDigital "acknowledge[d] all pre-existing obligations of confidentiality...and agree[d] that they continue to be bound thereby in accordance with their terms."[13] Although the Master Agreement contained a provision allowing either party to "disclose" information in a "Proceeding" between the parties, the "information" referred to in this provision is information relating to the 2006 Settlement Agreement, not confidential information unrelated to the 2006 Settlement Agreement where the confidentiality obligations were reaffirmed.

Furthermore, when the agreement is reviewed as a whole, it becomes clear that ¶ 6 was intended to address only confidentiality issues, and not issues of the proper "use" of confidential information in a Proceeding between the Parties. Instead, the "use" issue was addressed in a separate paragraph of the 2006 Settlement Agreement, and does not refer to prior confidential information exchanged by the parties. *See* ¶ 4(e) ("Use of this Agreement").[14]

---

[13] 2006 Settlement Agreement, ¶ 6.
[14] Nokia also argues that the Protective Order provisions somehow supersede the Master Agreement. As with the 2006 Settlement Agreement, however, the Protective Order is aimed at

13

Finally, Section 5.5 of the Master Agreement provides that "the parties may disclose confidential information…if required by…court order." Nokia argues that the Court should simply order disclosure of the Presentations under the Master Agreement, eliminating the dispute over use of the confidential information. This standard contract language, however, typically contemplates disclosure pursuant to subpoenas issued by third parties. It was not intended to address the use of confidential information in a dispute between the parties to the agreement.[15] Perhaps more significantly, what Nokia asks the Court to do, is to ignore a freely-negotiated restriction on use provision in an agreement between two highly sophisticated commercial parties. InterDigital should not be deprived of the benefit of its bargain.

## CONCLUSION

InterDigital's Motion to Stay limited to the Presentations is granted. Nokia's Motion for Declaration is denied. The parties shall provide monthly status reports on the progress of arbitration proceedings.

Dated:  December 1, 2006

_Colm J. Swty_
Special Master

---

protecting the confidentiality of information produced in litigation, and contains no provision superseding or modifying either party's rights under a separate agreement restricting use of the confidential information.
[15] This interpretation also squares with the other language of the same provision. If information is disclosed pursuant to court order, the party who controls the confidential information must be consulted about its disclosure. This provision has no real meaning in a dispute between the parties to the agreement.

14

# EXHIBIT B

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

JACK B. BLUMENFELD
302 351 9291
302 425 3012 FAX
jblumenfeld@mnat.com

September 1, 2006

**By E-Mail and Hand Delivery**

Collins J. Seitz, Jr., Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19899

Re:    *Nokia Corporation, et al. v. Interdigital Communications Corporation, et al.,*
       C.A. No. 05-16(JJF)

Dear Special Master Seitz:

Nokia hereby submits this Motion for Declaration that Documents Are Discoverable. Nokia specifically seeks confirmation that two PowerPoint Presentations given to Nokia (the "Presentations") by Defendants InterDigital Communications Corporation and InterDigital Technology Corporation (collectively, "InterDigital"), need not be returned to InterDigital and may be used consistent with the parties' Agreed Protective Order, entered by Judge Farnan on July 13, 2006 (the "Agreed Protective Order").

InterDigital contends that recently produced copies of the Presentations should be returned to InterDigital pursuant to a provision of the Agreed Protective Order for return of inadvertently produced privileged documents. In discussions with Nokia, however, InterDigital has not claimed attorney-client or work-product privilege for these documents – copies of which were also given to Nokia several years ago – instead claiming only a so-called "trade secret" privilege.

InterDigital also has claimed that the Presentations are confidential pursuant to a 1999 agreement (the "1999 Agreement") between Nokia and InterDigital and are, therefore, somehow immune from production or use in this litigation. It is well settled, however, that a commercial agreement cannot create an evidentiary privilege that shields relevant documents from discovery. Confidentiality is instead a reason for an appropriate protective order, such as the Agreed Protective Order. With such appropriate protection for confidentiality, the Federal Rules of Civil Procedure require litigants to disclose all relevant non-privileged information to allow the parties to assist the courts in correctly resolving factual disputes. As shown below, the Presentations are, in fact, *highly* relevant.

Collins J. Seitz, Jr., Esquire
September 1, 2006
Page 2

Moreover, the 1999 Agreement cannot apply to the Presentations. Nokia first received the Presentations (the "Marketing Versions") more than three years ago in connection with InterDigital's efforts to induce Nokia to enter a new patent license agreement separate and independent from the 1999 Agreement. Hence the 1999 Agreement does not even cover the Marketing Versions. InterDigital produced a second version of the Presentations to Nokia in discovery in this case (the "Discovery Versions") (IDC00012339-80 and IDC00012381-483, Exhs. A and B filed under seal). The Discovery Versions were produced to Nokia under the Agreed Protective Order and the Federal Rules of Civil Procedure, not under the terms of the 1999 Agreement. Apart from the inclusion of InterDigital bates numbers on the Discovery Versions, the two versions are substantially identical.

To avoid unnecessary disputes, but without waiving any of its arguments, Nokia is willing to limit use of the Presentations in this case to the Discovery Versions. Because the Discovery Versions are not privileged, not covered by the 1999 Agreement, adequately protected by the Agreed Protective Order, and highly relevant, Nokia requests confirmation that the Discovery Versions need not be returned and can be used pursuant to the Agreed Protective Order. If the Court confirms that the Discovery Versions are discoverable, Nokia's use of the Marketing Versions is accordingly moot.

## I.    BACKGROUND.

In 1999, Nokia and InterDigital entered into a series of agreements including a patent license agreement, a technology development agreement, and the 1999 Agreement, which was styled "Master Agreement" and governed the other two agreements (Exh. C § 2.1).[1] The patent license was set to expire in 2006. Accordingly, InterDigital began in 2002 to encourage Nokia to enter a new patent license. To that end, in 2002 and 2003, InterDigital gave to Nokia the Presentations, which purport to analyze InterDigital's patent portfolio, in part by claiming that certain InterDigital patents are essential to 3G standards. In particular, the Presentations ostensibly compare particular InterDigital patents to particular provisions of two 3G standards.

The Presentations are highly relevant to Nokia's Lanham Act claim. This is a case about InterDigital's false representations regarding its patent portfolio. The Presentations at issue are examples of just such representations. Frankly, the inquiry should end there.

Additionally, the Presentations highlight InterDigital's inconsistent positions regarding essentiality and thereby further demonstrate the falsity of InterDigital's various essentiality statements. For example, although InterDigital has declared to ETSI – a prominent 3G standards organization – that 182 U.S. Patents are essential to the 3G standard WCDMA, the Presentations do not claim that many of these 182 patents are essential to WCDMA. Likewise, in response to Nokia's Interrogatories, InterDigital currently contends that only eleven U.S. patents are

---

[1]    Because the 1999 Agreement is itself confidential, Nokia attaches only relevant excerpts to this letter.

Collins J. Seitz, Jr., Esquire
September 1, 2006
Page 3

essential to 3G. These eleven patents do not include many patents described as essential in the Presentations or the ETSI declarations.

Furthermore, the Presentations demonstrate InterDigital's bad faith in declaring patents essential to ETSI and in licensing presentations. InterDigital's inconsistent lists of "essential" patents demonstrate that it knew that many of its essentiality statements were false. Moreover, InterDigital has argued that identifying the specific provisions of 3G standards for which its patents are allegedly essential is unduly burdensome and claimed that it did not have such information readily available. (*See* InterDigital's First Amended Answers and Objections to Plaintiffs' First Set of Interrogatories, at 5, 14, Exh. F.) The Presentations, however, demonstrate the falsity of these claims. In the Presentations, InterDigital used claims charts to compare some of its patents to *specific* provisions of 3G standards.

For all of these reasons, the Presentations are important documents in Nokia's Lanham Act case. Indeed, when the Special Master ordered Nokia to identify the statements forming the basis for Nokia's Lanham Act claim, Nokia identified the Presentations and provided copies of the Marketing Versions as Exhibits C and D to Nokia's June 30, 2006 Statement Pursuant to First Discovery Order. Apparently recognizing the relevance of the Presentations to this dispute, InterDigital produced to Nokia the Discovery Versions on August 16, 2006, in response to Nokia's First Set of Requests for Production.

At the deposition of InterDigital's 30(b)(6) designee, Donald Boles, on August 29 and 30, 2006, however, InterDigital demanded the return of the Discovery Versions, contending that they had been inadvertently produced. Nokia had intended to inquire about the Discovery Versions and offered to examine Mr. Boles on them without prejudice to the request for their return. InterDigital's counsel refused, stating that the parties should "not proceed with the examination on [the Presentations]" at the 30(b)(6) deposition. (Excerpt from Donald Boles Deposition Transcript, Volume II, 465: 2-3, Exh. D).[2] InterDigital also demanded return of the Discovery Versions by email on August 29, 2006.

InterDigital has also requested that Nokia agree not to use the Marketing Versions of the Presentations in this case and has threatened arbitration on this issue under an arbitration clause in the 1999 Agreement. InterDigital has likewise sought to prevent a UK court presiding over a similar dispute between InterDigital and Nokia from reviewing the Presentations. In fact, in March 2006, InterDigital sought a temporary restraining order and preliminary injunction from a third court – the Southern District of New York – preventing Nokia from using the Presentations in the UK dispute. *See Interdigital Commc'ns Corp. v. Nokia Corp.*, Civil Action No.: 1:06-CV-02333-GBD. InterDigital's motion, however, was dismissed without prejudice at InterDigital's request on March 31, 2006, and neither the Southern District of New York, nor any other court,

---

[2]    As a courtesy to InterDigital, the deposition was continued and Counsel for Nokia did not ask Mr. Boles any questions regarding the Presentations at that time.

Collins J. Seitz, Jr., Esquire
September 1, 2006
Page 4

has ruled that the 1999 Agreement prevents the discovery or use of the Presentations in any litigation.

InterDigital's attempt to prevent Nokia from using the Presentations in this case is telling. InterDigital has never argued that Nokia cannot keep the Marketing Versions of the presentations or that Nokia improperly received the Presentations. InterDigital has only argued that that the Presentations cannot be shown to this Court or the court in the UK. InterDigital's reticence stems not from a legitimate concern for confidentiality but instead from a desire to prevent this Court and other courts from receiving relevant evidence. InterDigital, however, has no right to hamstring the fact-finding process, and Nokia therefore seeks confirmation from the Special Master that the Discovery Versions need not be returned and can be used for all proper purposes consistent with the Agreed Protective Order.

Counsel for Nokia has conferred with counsel for InterDigital but the parties have been unable to resolve this dispute. Attached hereto is a Rule 7.1.1 certificate.

## II.    ARGUMENT.

For many reasons, the Discovery Versions of the Presentations need not be returned to InterDigital, and can be used consistent with the Agreed Protective Order. First, the Presentations are not privileged. Second, the 1999 Agreement does not exclude the Presentations from discovery. Third, even if the 1999 Agreement could affect the discoverability of the Presentations, the terms of the agreement permit such discovery. Finally, equity and public policy favor disclosure of relevant information to courts.

### A.    The Presentations Are Not Privileged.

Nokia need not return the Discovery Versions of the Presentations because they are not privileged. Section 8 of the Agreed Protective Order provides that no attorney-client privilege, work product immunity, or other applicable "privilege" is waived by inadvertent disclosure if the disclosing party claims the applicable privilege and requests the return of the documents as soon as possible after discovery of the inadvertent disclosure. The inadvertent disclosure provision, however, clearly does not apply to documents, such as the Presentations, which are not protected by attorney-client, work product, or any other applicable privilege.

InterDigital's counsel has not asserted and cannot assert the attorney-client, work product or any other applicable privilege. InterDigital's counsel has referenced a so-called trade secret privilege, but has not identified any authority demonstrating the existence of such a privilege.[3]

---

[3]    Even if a privilege may at one time have applied to these documents, InterDigital's voluntary disclosure of the Presentations to Nokia in 2002 and 2003 is inconsistent with any claim of privilege. *See* 81 Am. Jur. 2d Witnesses § 282 (the "theoretical predicate underlying *all recognized privileges* is that secrecy and confidentiality are necessary to promote the relationship fostered by the privilege, and once the secrecy or confidentiality
(continued . . .)

Collins J. Seitz, Jr., Esquire
September 1, 2006
Page 5

Indeed, Fed. R. Civ. P. 26 makes clear that "trade secrets" are not privileged. *Compare* Fed. R. Civ. P. 26(b)(1) (stating that "[p]arties may obtain discovery regarding any matter not privileged") *with* Fed. R. Civ. P. 26(c)(7) (noting that a protective order may be appropriate for discovery of trade secrets). InterDigital's claim that the Presentations are confidential pursuant to the 1999 Agreement, which itself only covers confidential information given to one party by the other, makes clear that no privilege applies. *See* Exh. C § 5.1. Because there is no privilege applicable to the Discovery Versions, Nokia is under no obligation to return them pursuant to the Agreed Protective Order.

      B.     The 1999 Agreement Does not Govern the Discoverability of the Presentations.

          1.     Parties may not withhold from discovery non-privileged information through confidentiality agreements.

      Protective orders issue because parties must disclose, rather than conceal, non-privileged confidential information during litigation. *See* Fed. R. Civ. P. 26 (b)-(c); *Constand v. Cosby*, 229 F.R.D. 472, 481 n.11 (E.D. Pa. 2005) (stating that parties may "agree to keep some items of discovery confidential so long as the items specifically designated do not involve information that must necessarily be included in court filings or disclosed during open court proceedings") (citing *Aetna Casualty & Surety Co. v. George Hyman Construction Co.*, 155 F.R.D. 113 (E.D. Pa. 1994), which relied upon *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994)). Therefore, parties may not keep from a court information that is otherwise discoverable simply by agreeing to maintain its confidentiality. *See Sonnino v. University of Kansas Hospital Authority*, No. Civ.A.02-2576-KHV-DJ, 2004 WL 769325, at *3 (D.Kan. Apr. 8, 2004) ("Parties cannot create a privilege against civil discovery by mere written agreement" because "litigants cannot shield otherwise discoverable information from disclosure to others by agreement to maintain its confidentiality, and cannot modify the Federal Rules of Civil Procedure by agreement").[4]  Notably, the *Sonnino* case cites for authority the Third Circuit case of

---

(. . . continued)

is destroyed by a voluntary disclosure to a third party, the rationale for granting the privilege in the first instance no longer applies") (emphasis added); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423-24 (3rd Cir. 1991) ("Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly [and] voluntary disclosure to a third party of purportedly privileged communications has long been considered inconsistent with an assertion of the privilege") (citations omitted).

[4]     *See also Burda Media, Inc. v. Blumenberg*, No. 97 Civ. 7167(RWS), 1999 WL 413469, at *3 (S.D.N.Y. June 21, 1999) ("[L]itigants cannot shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality") (citations omitted) (recognized as superseded by rule on other grounds in *Johnson Matthey, Inc. v. Research Corp.*, No. 01 CIV.8115, 2002 WL 31235717, at *2 (S.D.N.Y. Oct. 03, 2002)).

Collins J. Seitz, Jr., Esquire
September 1, 2006
Page 6

*Westinghouse Elec. Corp. v. Republic of the Philippines* where the court ruled that voluntary disclosures of documents to government agencies waived attorney-client privilege and exposed those documents to discovery even where the government agencies arguably agreed to maintain confidentiality of the documents. 951 F.2d 1414, 1424 (3d Cir. 1991). The *Westinghouse* case, which controls in this jurisdiction, confirms that parties cannot prevent a document from being discovered merely by a written agreement. *See In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 313 n. 3 (6th Cir. 2002) (citing *Westinghouse* for the proposition that "other courts addressing this issue [agree] that parties cannot create a privilege against civil discovery by mere written agreement").[5]

Because parties may not bar production or use of confidential, non-privileged documents in litigation, but may only protect their use through an appropriate protective order, Nokia is entitled to the full use of the unprivileged Presentations consistent with the Agreed Protective Order.

       2.     InterDigital's disclosure of the Presentations was outside of the 1999 Agreement's confidentiality provision.

The confidentiality provisions of the 1999 Agreement are unrelated to InterDigital's presentation to Nokia of the Marketing Versions and the Discovery Versions of the Presentations. By its own terms, the 1999 Agreement's purpose relates to the 1999 Agreement itself and two related agreements. *See* Exh. C § 2.1. InterDigital did not give the Marketing Versions to Nokia under the auspices of any of these agreements. Rather, InterDigital gave them to Nokia to induce Nokia to enter a new license agreement. In addition, there is no evidence that the parties intended for the 1999 Agreement to allow them to deceive a court or other competent tribunal by withholding relevant documents from proper discovery requests.

Likewise, the 1999 Agreement is unrelated to InterDigital's production of the Discovery Versions. The 1999 Agreement's confidentiality provision does not apply to documents created and maintained by either party, but only documents shared between the parties. *See* Exh. C § 5.1. The Discovery Versions are unquestionably *InterDigital's copies* of the Presentations. Accordingly, the confidentiality provision of the 1999 Agreement does not apply to InterDigital's production of its own copies of the Presentations, and nothing in that agreement requires Nokia to return them or prohibits Nokia's use of them consistent with the Agreed Protective Order in this action.

---

[5]     Moreover, the 1999 Agreement itself recognizes that a written agreement cannot bar discovery of materials by explicitly acknowledging the authority of courts to order disclosure of non-privileged documents. *See* Exh. C § 5.5.

Collins J. Seitz, Jr., Esquire
September 1, 2006
Page 7

      C.      <u>The Special Master Can Order Disclosure of The Documents Under the 1999</u>
              <u>Agreement.</u>

      Though, as described above, the 1999 Agreement does not apply to the Presentations, even if it did, the agreement recognizes the authority of a court to order disclosure of non-privileged documents. *See* Exh. C § 5.5 (stating that "the parties may disclose confidential information . . . if required by . . . court order"). Therefore, the Special Master may order production of the Presentations and allow their use consistent with the Agreed Protective Order, even if the 1999 Agreement did apply.

      Moreover, the confidentiality provisions of the 1999 Agreement were superseded by a 2006 agreement between the parties (Exh. E). In that agreement, the parties affirmed the confidentiality provisions of the 1999 Agreement, but added that "[n]otwithstanding the foregoing," the parties may use materials covered by the confidentiality provisions of the 1999 Agreement in any legal "Proceeding" between the parties. Exh. E § 6. Thus, the 1999 Agreement cannot prevent Nokia's use of the Presentations in this case.

      D.      <u>The Equities Weigh Against Withholding the Presentations From the Finder of</u>
              <u>Fact.</u>

      The equities favor allowing Nokia to use the Presentations consistent with the parties' Agreed Protective Order. Nokia's ability to effectively litigate will be undermined if Nokia cannot present the Presentations to the finder of fact. Moreover, there is no harm to InterDigital, as Nokia already has had its own copies of the Presentations for more than three years and, if the Discovery Versions are used in this litigation pursuant to the Agreed Protective Order, those documents have been designated "Attorney's Eyes Only" under the Agreed Protective Order and will not be disclosed to the public. Accordingly, the only new entity that will learn their contents is the Court. The benefit of these relevant documents to Nokia and to the finder of fact clearly outweighs any interest InterDigital may have in preventing the Court from learning of their contents on the basis of a more-than-seven-year-old agreement that was not intended to deprive a fact-finder of relevant information. *See* Exh. C § 5.5. In fact, the purpose of Fed. R. Civ. P. 26(b)(1) and its directive that parties may obtain discovery regarding any matter not privileged, is to ensure that the parties and the court actually engage in a "search for the truth," something InterDigital apparently intends to deny Nokia and the Court. 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2001 (2d ed. 1994) (*citing Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. 1968) (the "purpose of our modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice")).

Collins J. Seitz, Jr., Esquire
September 1, 2006
Page 8

**III.     CONCLUSION.**

Nokia respectfully requests the Special Master confirm that the Discovery Versions of the
Presentations need not be returned to InterDigital and can be used consistent with the parties'
Agreed Protective Order.

Respectfully,

*Jack B. Blumenfeld*

Jack B. Blumenfeld

JH/bls

cc:     Richard L. Horwitz, Esquire (By Hand and Email)
        Randall L. Allen, Esquire (By Email)
        Dan D. Davison, Esquire (By Email)

**CERTIFICATE OF CONFERENCE**

Counsel for the plaintiff hereby certifies that the subject of the foregoing motion has been discussed with counsel for the defendants and that the parties have not been able to reach agreement.

Jack B. Blumenfeld