IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOKIA CORPORATION and NOKIA INC., | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 05-16 (JJF) |
| INTERDIGITAL COMMUNICATIONS CORPORATION and INTERDIGITAL TECHNOLOGY CORPORATION, | ) ) ) ) ) | |
| Defendants. | ) | |

**DECISION ON DEFENDANTS' MOTION TO COMPEL
TESTIMONY AND FOR SANCTIONS**

Jack B. Blumenfeld and Julia Heaney of MORRIS, NICHOLS, ARSHT & TUNNELL, for Plaintiffs, Nokia Corporation and Nokia, Inc.

Richard L. Horwitz and David E. Moore of POTTER ANDERSON & CORROON, LLP for Defendants, InterDigital Communications Corporation and InterDigital Technology Corporation

Collins J. Seitz, Jr., Special Master

**PROCEDURAL HISTORY**

This is a discovery dispute involving the deposition of a corporate designee pursuant to Fed.R.Civ.P. 30(b)(6). On November 14, 2006, InterDigital Communications and InterDigital Technology Corporation (collectively "InterDigital") filed a motion for sanctions pursuant to Fed.R.Civ.P. 30(b)(6) and 37(d) ("Motion for Sanctions") against Nokia Corporation and Nokia Inc. (collectively "Nokia") for their failure to prepare and to present a witness knowledgeable on all topics in InterDigital's 30(b)(6) deposition notice (the "Deposition Notice"). In the alternative, InterDigital moved to compel the reconvening of the deposition, and for reimbursement of its attorneys' fees and expenses.

On November 27, 2006, Nokia submitted its opposition to InterDigital's Motion for Sanctions ("Nokia Response"). On December 1, 2006, InterDigital submitted a reply to Nokia's Response ("InterDigital's Reply"). After consideration of the parties' submissions, for the reasons set forth below, InterDigital's Motion for Sanctions is granted in part and denied in part.

**BACKGROUND**

On August 31, 2006, InterDigital served the Deposition Notice on Nokia that required Nokia to prepare and to present a witness or witnesses knowledgeable on the following six topics:[1]

---

[1] *See* Motion for Sanctions, Ex. C.

1. The facts underlying Plaintiffs' claim in paragraph 142 of the Complaint for Declaratory Judgments of Patent Invalidity and Noninfringement and Violations of the Lanham Act Relating to 3G Mobile Phone Technology (the " Complaint") that "InterDigital has used false or misleading descriptions or representations in connection with its patent portfolio, the WCDMA standard, the CDMA 2000 standard, Nokia's products, the applicability of InterDigital's patents to Nokia's products, and the applicability of InterDigital's patents to 3G Wireless standards within the meaning of 15 U.S.C. § 1125(a) (§ 43(a) of the Lanham Act).";

2. The facts underlying Plaintiffs' claim in paragraph 142 of the Complaint that "This misconduct of InterDigital has inhibited the development of 3G technology, damaged Nokia's business and its reputation in the wireless market.";

3. The facts underlying Plaintiffs' assertion in Count XXI and the Prayer for Relief in the Complaint that InterDigital's allegedly false statements have damaged Plaintiffs, including the type, nature, and scope of the damages;

4. The facts underlying Plaintiffs' assertion in its Answering Brief in Opposition to Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), and 12(h)(3) that the allegedly false statements made by InterDigital "…influenced purchasing decisions by raising costs for all market participants…increased production costs for Nokia and raised the cost of Nokia developing and marketing standards compliant technology and deterred Nokia's customers from purchasing Nokia's standards compliant products.";

5. Plaintiffs' answers to the Defendants' First Set of Interrogatories to Plaintiffs served on or about May 1, 2006; and

6. The facts underlying Plaintiffs' claim in paragraph 146 of the Complaint that "InterDigital has made these false statements in bad faith and with knowledge of their falsity."

On September 14, 2006, Nokia served its Objections to InterDigital's

30(b)(6) Notice of Deposition ("Nokia's Objections") in which Nokia raised a

number of general and specific objections, including the objections that each of the six topics: (i) was overly broad and unduly burdensome in that they sought to have a corporate representative testify to factual details that can be obtained with less burden and expense through written discovery and fact witnesses; and (ii) improperly sought contentions.[2] Despite raising the objections, Nokia expressly stated in response to each category that "[s]ubject to – and without waiving – these objections, Nokia will produce a witness to testify regarding [each topic described in the Deposition Notice]."[3]

On September 22, 2006, Nokia presented as its corporate representative for the 30(b)(6) deposition, Mr. Henry Muir, Director of IPR Licensing for Nokia U.K. Limited. Mr. Muir was deposed for a full day. At the beginning of his deposition, Mr. Muir stated that he knew he was testifying as the corporate representative on behalf of both Nokia Corporation and Nokia, Inc., and that he was prepared to testify on the six categories identified in the Deposition Notice.[4] Shortly thereafter, counsel for Nokia stated that Mr. Muir was going to testify "subject to the objections... contained in Defendants' Exhibit Number 2 [Nokia's Objections to InterDigital's 30(b)(6) Notice of Deposition]."[5] Throughout the deposition, counsel for Nokia objected and sought to preclude Mr. Muir from testifying as to those sub-

---

[2] *See* Motion for Sanctions, Ex. D at 2-7.
[3] *See* Motions for Sanctions, Ex. D.
[4] Muir dep. Tr. 10:6–10:19.
[5] *Id.* at 11:11-11:25.

jects that Nokia deemed "contention" questions, even though Nokia never filed a Rule 26(c)(7) motion for a protective order to limit the scope of InterDigital's inquiry.[6]

## INTERDIGITAL'S CLAIMS

InterDigital claims that Nokia had an obligation to prepare Mr. Muir, as the Nokia 30(b)(6) witness, in such a manner that he could provide complete, knowledgeable, and binding answers on behalf of the corporations.[7] According to InterDigital, throughout his deposition, Mr. Muir demonstrated that he was unprepared to testify substantively about any of the topics in the Deposition Notice as required by Rule 30(b)(6). Mr. Muir's "responses" to many questions, according to InterDigital, were not really responses at all because he testified that either: (i) he had no knowledge on the topic; (ii) he was not qualified to answer the question; (iii) he would need to do more research to determine the answer; or (iv) he would merely read Nokia's prior interrogatory responses into the record.[8] InterDigital offers the following examples:

For Topic No. 1, Mr. Muir repeatedly testified that he could not answer questions relating to alleged false statements forming the basis of Nokia's Lanham Act claim because he was not qualified to do so, did not know who within Nokia

---

[6] Under Fed.R.Civ.P. 26(c)(7), a party may file a motion for an order to protect the party from annoyance, embarrassment, oppression, or undue burden or expense, including that a trade secret or other confidential information "not be revealed or be revealed only in a designated way."
[7] *See* Motion for Sanctions at 1.
[8] Motion for Sanctions at 5.

would be qualified to provide the requested testimony, and to obtain the answers would require "significant research."[9]

For Topic No. 2, Mr. Muir simply referred InterDigital to Nokia's responses to Interrogatories 7 and 8 in Defendants' First Set of Interrogatories.[10] Mr. Muir also repeatedly testified that he would need to perform further research or investigation before he could respond to questions relating to the alleged affect InterDigital's statements had on Nokia's business and reputation.[11]

For Topic No. 3, Mr. Muir testified that questions regarding facts underlying Nokia's damage claims consisted of statements that the questions were "outside the scope" of his testimony and would require further research.[12]

For Topic No. 4, Mr. Muir's "answers" were generally unresponsive. For example, when asked which of Nokia's clients have been deterred from purchasing Nokia's standards-compliant products, Mr. Muir responded that he could not answer the question.[13] He further testified that he did not know which individuals, if any, from whom he could obtain the answer.[14] Mr. Muir could only refer Inter-

---

[9] *See* Muir Dep. At 199:3-9; 307:9-25: 308:16-20: 312: 23-316:3: 317:18-318:10; 319:25-323:7.
[10] *See* Muir Dep. at 190:25-191:19.
[11] *See id.* at 190:13-191:19; 193:9-21; 219:24-220:12; 220:18-221:8, 276:13-19; 277:4-16.
[12] *See Id.* at 188:3-190:21; 90:17-91:6.
[13] *See* Muir Dep. 93:9-16; 95:2-9.
[14] *See id.* at 97:13-98:21.

Digital to Nokia's response to Interrogatory 6, which states that Nokia will produce documents from which the answer can be ascertained.[15]

For Topic No. 5, Mr. Muir could not identify what documents, as Nokia alleged in its response to Interrogatory 6, would be produced in support of its contention, refused to answer similar questions because of confidentiality provisions in place with other companies, and testified that he would need to conduct further research to answer the questions.[16]

Finally, for Topic No. 6, Mr. Muir failed to provide any meaningful testimony on this topic, and testified instead that he did not have sufficient information to comment on the topic, and would need to conduct further research to do so.[17]

## NOKIA'S RESPONSE

Nokia argues that it satisfied its obligations under Rule 30(b)(6) and Third Circuit law when it produced Mr. Muir for his deposition. According to Nokia, InterDigital improperly attempted to obtain contention information through a Rule 30(b)(6) deposition, and in the District of Delaware, contentions should be the subject of written discovery, not depositions.

Nokia also claims that the deposition notice was unduly burdensome because detailed facts are more properly the subject of written discovery or individ-

---

[15] *See id.* at 101:16-102:7. Notably, Mr. Muir testified that even though he was the individual who verified the interrogatory answers on behalf of Nokia, he did not know what documents contained the information sought, nor did he know what documents would be produced.
[16] *See id.* at 95:18-96:14; 101:16-103:22; 108:19-109:9.
[17] Muir Dep. 239:3-25; 246:9-247:25.

ual depositions. Furthermore, Nokia argues that InterDigital cannot claim that it was unfairly surprised by the scope of the responses Mr. Muir was prepared to provide, because Nokia made it clear to InterDigital through Nokia's objections to the Deposition Notice that Nokia viewed all six topics in the Deposition Notice as improperly seeking contention discovery in a deposition.[18]

Finally, Nokia argues that many of the questions asked of Mr. Muir have been subsequently answered by Nokia in its supplemental responses to interrogatories. Therefore the issues raised by the questions asked in the deposition are moot.

## DISCUSSION

Fed.R.Civ.P. 30(b)(6) requires a corporate party to prepare its corporate representatives on all properly noticed areas of examination.

> A party may in the party's notice ... describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify....The persons so designated shall testify as to matters known or reasonably available to the organization.

When a party seeking to depose a corporation properly describes the subject matter of the proposed examination, the corporate deponent has a duty to make a good-faith effort to designate a knowledgeable person or persons, and to prepare

---

[18] Nokia's Objections to InterDigital's 30(b)(6) Notice of Depositions at 2.

them to answer fully questions about the designated subject matter. *See Black Horse Land Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 303 (3d Cir. 2000) (*citing Starlight Int'l Inc. v. Herlihy,* 186 F.R.D. 626, 639 (D. Kan. 1999)).

In reviewing the deposition transcript and videotape of Mr. Muir's deposition, I find that Mr. Muir was unprepared to offer meaningful testimony about most, if not all, of the six topics in the Deposition Notice. Even though Mr. Muir was told approximately a month before the deposition date that he was going to testify as a corporate representative for Nokia, he was not shown the topics in the Deposition Notice until two days before the deposition date.[19] His preparation consisted of two days of discussions, but only with Nokia's lawyers.[20] Mr. Muir did not talk to anyone else to gather information related to the deposition subjects; he only looked at a handful of documents, and all of those documents were selected by counsel and already provided to InterDigital in discovery.[21] Mr. Muir testified that he did review Nokia's statement pursuant to the First Discovery Order (he was the individual who had originally verified the statement), but he did not review the exhibits that were supposed to be attached.[22] Mr. Muir testified that at

---

[19] Muir Tr. 19:24-21:13.
[20] *Id.* at 21:14-27:19.
[21] *Id.* at 17:9-17:22; 52:20-53:19. Although Mr. Muir is the current Director of IPR Licensing at Nokia, he did not speak to his predecessor, Mr. Huttunen (who was the director of IPR Europe during a portion of the time period that is the subject of this litigation).
[22] Muir Tr. 12:25-14:20.

the time he signed the verification, he did not know there were exhibits to the statement.[23]

Mr. Muir was unprepared to meet his obligations under Rule 30(b)(6). He repeatedly stated that either he did not know the answer to the question, or that he would have to do research to provide further information.[24] Remarkably, counsel for Nokia either objected or warned the witness over 400 times during the deposition with a speaking objection about answering a question. While some of the objections were legitimate objections, in many instances, the questions being asked were not even substantive questions but merely perfunctory background questions. For example:

> [Counsel for InterDigital] Q: What business is Nokia Corporation in?
>
> [Counsel for Nokia] A: Object to the form. Same objection with respect to outside categories noticed.[25]

Many of the objections were improper speaking objections and the witness, following counsel's objections, started to sound more like his counsel than a 30(b)(6) witness:

> Q. On behalf of the corporation, Nokia Corp., can you identify any other company other than InterDigital who you believe is overdeclared?
>
> [Counsel for Nokia]: Same objection, Outside the scope.

---

[23] *Id.*
[24] *Id.* tr. 95:24-96:14.
[25] Tr. 80:16-80:19.

10

> A. I guess to answer any question like that, which is outside the scope of my testimony, would require further research. But I'm not sure it would be appropriate for me to respond to that question. It's outside the scope....[26]

Indeed, this level of inappropriate deposition conduct escalated to the point that the witness started to argue with the attorney asking the questions.

> Q. Where in that document does it say that Nokia needs a license for its products infringed on individual patents?
>
> [Counsel for Nokia]: Object. Asked and Answered.
>
> A. I have already answered that question.
>
> Q. Show me where in the article, sir.
>
> A. You didn't listen to my answer.
>
> Q. Please explain it to me, again.
>
> [Counsel for Nokia]: Same objection.
>
> A. It is already on the record, sir.[27]

After reviewing the entire transcript, it is apparent that Mr. Muir was ill-prepared to provide testimony about any of the six topics identified in the Deposition Notice beyond what Nokia had already provided in its answers to written discovery. Indeed, in a rare moment of frankness in the deposition, Mr. Muir re-

---

[26] Tr. 190:13-190:23.
[27] Muir Tr. 209:7-209:17.

vealed how he was prepared to testify by counsel for Nokia – "[m]y advice has been to respond only to the extent we provided answers."[28]

Rule 37(d) of the Federal Rule of Civil Procedure states that if a person designated under Rule 30(b)(6) fails to appear before the officer who is to take the deposition after being served with a proper notice:

> [T]he court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule....In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

A corporate party's failure properly to prepare and to present a knowledgeable witness on the areas of examination described in a 30(b)(6) deposition notice is tantamount to failing to appear at the deposition, and justifies sanctions under Rule 37(d). *See Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000). Rule 37(d) further states that "[t]he failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c)." *Id.*

---

[28] Tr. 173:3-4.

Rule 37(d) does not require a court to have issued an order compelling discovery before imposing sanctions for a party's violations of its obligations under Rule 30(b)(6). *See Black Horse Land Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 302 (3d Cir. 2000) (citing *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 611 F.2d 32, 35 (3d Cir. 1979)). Under Fed.R.Civ.P. 37A(a)(4)(A), if a motion to compel is granted, the court:

> shall ... require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees.

Fed.R.Civ.P. 37(a)(4)(A).

The court in *Black Horse* found that the plaintiffs' failure properly to prepare and present its designated witness under Rule 30(b)(6) justified an award of sanctions. *Id.* The court found that the testimony provided "little assistance" in analyzing the plaintiffs' claims, and was therefore "contrary to the spirit of Rule 30(b)(6)." *Id.* at 296. Furthermore, the court noted that the witness "failed to proffer any useful information concerning the factual basis" for the plaintiffs' claims in the lawsuit. *Id.* Although the plaintiffs urged the court to adopt a literal reading of Rule 37(d), the court construed the provision broadly and held:

> In reality if a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it. Indeed, we believe that

> the purpose behind Rule 30(b)(6) undoubtedly is frustrated in the situation in which a corporate party produces a witness who is unable and/or unwilling to provide the necessary factual information on the entity's behalf... Thus, we hold that when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), "[p]roducing an unprepared witness is tantamount to a failure to appear" that is sanctionable under Rule 37(d).

*Id.* at 304.

In *Black Horse*, the Third Circuit also noted that the witness's lack of preparation was not a mere oversight but instead "a clear demonstration of bad faith."[29] The basis for the Court's finding of bad faith rested on, among other things, the repeated denial by the witness of any knowledge of his status as a 30(b)(6) witness, and his denial of knowledge of documents which he had signed, claiming that he had no recollection of such documents despite acknowledging that he normally did not sign anything that he did not read first.[30] The Court also noted that the witness acted incompetent and uncooperative and his actions were "magnified by his status as a member of the Bar."[31]

Nokia argues that it had a good faith basis to object to the contention interrogatory questions, and therefore should not be sanctioned. Whether the topics of the Deposition Notice are "contention" subjects is irrelevant to the disposition of

---

[29] *Id.* at 300.
[30] *Id.*
[31] 228 F.3d at 300.

14

this Motion. Even assuming that the topics are "contention" subjects that are better addressed by interrogatories, Nokia's proper course of action would have been to object to the topics and move for a protective order to limit the deposition topics. Instead what Nokia did -- simply filing objections and then stating that it would provide a witness to testify as to the topic areas subject to the objections -- created an expectation on the part of InterDigital that Mr. Muir would be testifying about the noticed topics. Nokia should not have proceeded with the deposition knowing that the witness would not be prepared on the noticed topics.

While the examples cited earlier amply illustrate the point that Mr. Muir was not properly prepared for his deposition, Nokia's conduct does not rise to the same level of sanctionable conduct exhibited in *Black Horse*. Nokia's 30(b)(6) witness did not exhibit the intentional and deceptive type of behavior as was present in *Black Horse*. Therefore, I decline to enter a preclusion order.

Nokia's conduct, however, does warrant some sanction. As a result, I grant InterDigital's motion compelling Nokia to reconvene the deposition under Rule 30(b)(6), and will require Nokia to produce a witness or witnesses who can testify competently on the topics described in the Deposition Notice appropriate for deposition questioning. I will also grant InterDigital's request for its attorneys' fees and expenses associated with Mr. Muir's September 22, 2006 deposition. Within seven days from the date of this decision, InterDigital shall submit a declaration

setting forth its attorneys' fees and expenses. On or before seven days following service of the declaration, Nokia can respond with any objections it has to the amount claimed.

I also offer the parties the following guidance in the hope of avoiding the need for Nokia to file a request for a protective order.

It is the practice in this District that a lay person is not required to formulate a party's contention as part of deposition questioning. Instead, pure contention discovery is best confined to interrogatories. As Judge Farnan ruled in *Fulhorst v. United Technologies Automotive*, C.A. No. 96-577 (JJF) (Exhibit A to Nokia's Response), questions regarding defenses that are factually based, such as laches and estoppel, are permissible topics for depositions. In contrast, questions regarding defenses that are expert-based, such as validity or inequitable conduct, or theories of damages, are contention questions better suited for interrogatories.

Turning to the specific categories in InterDigital's 30(b)(6) notice, I find that the following areas are appropriate for deposition questioning if the deposition is resumed:

1. Questions concerning what statements Nokia is relying upon to support its contention that InterDigital has made alleged false or misleading descriptions or representations in connection with its patent portfolio, the WCDMA standard, the CDMA 2000 standard, Nokia's products, the applicability of InterDigi-

tal's patents to Nokia's products, and the applicability of InterDigital's patents to 3G Wireless standards. The examination should not be directed to the legal effect of the statements. Instead, the questioning should be limited to the factual basis for the descriptions or representations Nokia is relying upon to support its claims.

2.      Questions concerning the factual basis for how InterDigital's statements have allegedly inhibited the development of 3G technology, damaged Nokia's business and its reputation in the wireless market.

3.      Although Nokia is required to produce documents it will rely upon to support its damage claims, questioning about theories of recovery are better left to expert discovery. Therefore, this area of inquiry should be deferred to expert discovery.

4.      Questions concerning the factual basis for how InterDigital's statements influenced purchasing decisions by raising costs for all market participants, increased production costs for Nokia, raised the cost of Nokia developing and marketing standards compliant technology, and deterred Nokia's customers from purchasing Nokia's standards compliant products.

5.      Questions concerning Nokia's answers to the Defendants' First Set of Interrogatories to Plaintiffs served on or about May 1, 2006, to the extent the responses are not addressed towards contentions.

6. Questions concerning the factual basis (as opposed to the legal basis) for Nokia's statement that InterDigital made false statements in bad faith and with knowledge of their falsity. To the extent that Nokia does not have a factual basis for this contention, and instead intends to rely upon legal argument to support its bad faith claim, it should notify InterDigital in advance that the witness will not testify about the factual basis for this claim.

Finally, I will require that Delaware counsel for both parties be present if the 30(b)(6) deposition is reconvened, and that counsel for both parties review and follow the proper protocol for conducting a deposition subject to the requirements and practices of the District of Delaware, especially with respect to speaking objections. *See, e.g., Dyson Technology Ltd. v. Maytag*, C.A. 05-434-GMS (D. Del.) (Order dated December 18, 2006).

_____
Special Master

Dated: January 15, 2007