# EXHIBIT 1

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 2

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 3

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 4

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 5

# ALSTON&BIRD LLP

Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, NC 28280-4000

704-444-1000
Fax: 704-444-1111
www.alston.com

Kevin A. O'Brien                    Direct Dial: 704-444-1412                    E-mail: kevin.obrien@alston.com

November 16, 2006

*Via Email (clayrogers@fulbright.com)*
*Confirmation via U.S. Mail*

I. Clay Rogers, Esq.
Fulbright & Jaworski LLP
1301 McKinney, Suite 5100
Houston, TX 77010

Re:    *Nokia Corp. et al. v. InterDigital Commc'ns Corp. et al.,*
       (D. Del. Action No.: 05-16-JJF (D. Del)

Dear Clay:

As promised in our teleconference yesterday, below is my understanding of the current status of e-discovery in this case. Please advise immediately if you believe my understanding is inaccurate in any manner.

## I.    **Search Methodology**

Nokia has agreed to utilize the search methodology proposed by InterDigital, *i.e.*, applying agreed upon search terms to relevant electronic gathered by identified electronic document custodians.

## II.    **Electronic Document Custodians**

### Nokia

In response to your November 10, 2006, request, Nokia has agreed to identify (to the extent not already identified) as electronic document custodians key Nokia employees involved in the following activities: (1) Nokia's 3G patent declaration process; (2) Nokia's analysis of InterDigital's patents; and (3) Nokia's patent licensing. As discussed yesterday, Nokia has already identified key personnel in the remaining two requested categories ((4) sales, marketing, rollout, or support of Nokia's 3G products and (5) standards setting organizations) but will consider requests to supplement its custodian list

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
404-881-7000
Fax: 404-881-7777

90 Park Avenue
New York, NY 10016
212-210-9400
Fax: 212-210-9444

3201 Beechleaf Court, Suite 600
Raleigh, NC 27604-1062
919-862-2200
Fax: 919-862-2260

The Atlantic Building
950 F Street, NW
Washington, DC 20004-1404
202-756-3300
Fax: 202-756-3333

I. Clay Rogers, Esq.
November 16, 2006
Page 2

with specific individuals involved in these activities that are identified during discovery. As also discussed yesterday, Nokia has agreed to include as electronic document custodians a majority of the relevant individuals specifically identified by InterDigital.

Accordingly, the following Nokia employees are identified as electronic document custodians (in addition to the ten individuals identified by Nokia on November 1, 2006)[1]:

1.  Erkki Yli-Juuti;
2.  Esko Friman;
3.  Teija Kopio;
4.  Mika K. Lehtinen;
5.  Jukka Nihtila;
6.  Harri Tulimaa;
7.  Anne Eckert;
8.  Anders Arvidsson; and
9.  Federico Fraccaro.

As noted during our conversation, we do not believe that Lucy Nichols or Tero Ojanpera have any documents relevant to this action. If you believe otherwise, please let us know the basis of this belief. As we also stated during our conversation, we don't believe that a successor was named to the position of "Head of IPR America" following the departure of Paul Juhasz in 2001 but have requested confirmation of this from our client. Finally, as noted yesterday, Nokia cannot identify Maurits Dolmans as an electronic document custodian because this individual is not employed by Nokia.

<u>InterDigital</u>

From our discussions this week and your October 30, 2006, email, I understand the following to be InterDigital's response to Nokia's October 5, 2006, request for additional custodians:

1.      InterDigital has agreed to include as electronic document custodians all persons that have participated in any "scrub" meetings involving InterDigital patents and patent applications;

2.      InterDigital has agreed to include as electronic document custodians all inventors named on the eleven patents identified in InterDigital's discovery responses;

3.      InterDigital has agreed to include as electronic document custodians all InterDigital employees who participated in licensing presentations to any of InterDigital's existing 3G licensees;

---

[1] As previously noted, relevant local statutes or regulations may impose some limitations upon electronics searches (*e.g.*, consent of the individual). We will, of course, work to satisfy any statutory or regulatory requirements

I. Clay Rogers, Esq.
November 16, 2006
Page 3

    4.    InterDigital has already identified as electronic document custodians individuals that prepared or conducted any presentations or conversations analyzing, evaluating, or assessing either InterDigital or the cellular telephony market in general; and

    5.    InterDigital has agreed to search the electronic documents and communications of former InterDigital CEO and President Donald L. Schilling,

**III.**    **Search Terms**

In response to your November 15, 2006, proposed list of search terms, below is the chart I forwarded earlier today via email.

| No. | InterDigital's 11/16/06 Proposal (proposed changes in bold) | Nokia's 11/16/06 Proposal (proposed changes in bold) |
|---|---|---|
| 1. | Scrub* | AGREED |
| 2. | (opposing party name) and infring* | (opposing party name) w/12 infring* |
| 3. | Essential* w/12 (3G or 3GPP or 3GPP2 or ETSI or **European Telecommunications Technology Institute**) | Essential* w/12 (3G or 3GPP or 3GPP2 or ETSI or "European Telecommunications Standards Institute"); <br><br> **Essential* w/10 (stud* or analy* or examin* or evaluat* or review* or invest* or research* or apprais* or assess* or determine*)** |
| 4. | (Patent* or application* or IPR* or "intellectual property right*") w/12 (WCDMA or W-CDMA or "wideband CDMA" or UMTS) <br><br> (delay or "roll out" or slow*) w/12 (WCDMA or W-CDMA or "wideband CDMA" or UMTS) | AGREED |
| 5. [sic] | (patent* or application* or "intellectual property right*") w/12 (cdma2000* or "cdma 2000" or rtt or 1X-EV or 1X-EVDO or 1X-EVDV or EVDI or EV-DO or EVDV or EV-DV) | AGREED |
| 6. | (Patent* or application* or IPR* or "intellectual property right*") w/12 (Declar*) | AGREED |

I. Clay Rogers, Esq.
November 16, 2006
Page 4

| No. | InterDigital's 11/15/06 Proposal (proposed changes in bold) | Nokia's 11/16/06 Proposal (proposed changes in bold) |
|---|---|---|
| 7. | The patent number and internal patent docket number for the patent family of each of the 11 patents identified in InterDigital's Interrogatory responses:<br>• 5.093.840;<br>• 5,093,840;<br>• 5093840;<br>• 2-002;<br>• 2.002;<br>• 5.179.571 ;<br>• 5,179,571;<br>• 5179571;<br>• 2-006;<br>• 2.006;<br>• 5.228.056;<br>• 5,228,056;<br>• 5228056;<br>• 2-004;<br>• 2.004;<br>• 5.345.467;<br>• 5,345,467;<br>• 5345467;<br>• 2-003;<br>• 2.003;<br>• 5.631.921;<br>• 5,631,921;<br>• 5631921;<br>• 2-269;<br>• 2.269;<br>• 5.974.039;<br>• 5,974,039;<br>• 5974039;<br>• 2-404;<br>• 2.404;<br>• 6.873.643;<br>• 6,873,643;<br>• 6873643;<br>• 2-032;<br>• 2.032;<br>• RE38627<br>• RE38,627;<br>• RE.38,627;<br>• RE.38,627<br>• 2-062; | **Nokia maintains that this search should also include the specified information (USPTO number, internal docket number) for all patents and applications that have been declared essential to ETSI. For all declared patents, the search should include the corresponding application information. For all declared applications, the search should include, if applicable, the corresponding patent information.** |

I. Clay Rogers, Esq.
November 16, 2006
Page 5

| No. | InterDigital's 11/15/06 Proposal (proposed changes in bold) | Nokia's 11/16/06 Proposal (proposed changes in bold) |
|---|---|---|
| 8. | ((Patent or application* or IPR* or intellectual property right*") and standard) w/12 (3G or 3GPP or 3GPP2) | AGREED |
| 9. | ((Patent or application* or IPR* or "intellectual property right*") and ETSI) w/12 (3G or 3GPP or 3GPP2) | AGREED |
| 10. | (Goodman and Myers) or (Bekkers and West) or "PA Consulting" | AGREED |
| 11. | Forbes and (Goldberg or InterDigital) | AGREED |
| 12. | (Cumulative or stack* or cap* or high* or excess* or limit* or "roll out") w/12 Royalt* | AGREED |
| 13. | (patent* or application* or IPR* or "intellectual property right*") w/3 polic* | AGREED |
| 14. | (IPR or "Intellectual Property Rights" or "Intellectual Property") w/3 (polic* or guide*) | AGREED |
| 15. | (essential* or declar*) w/12 (licens* or royalt* or reputation or appear* or brand) w/12 (3G or 3GPP or 3GPP2 or ETSI or WCDMA or W-CDMA or "wideband CDMA" or UMTS or cdma2000* or "cdma 2000" or rtt or 1X-EV or 1X-EVDO or 1X-EVDV or EVDI or EV-DO or EVDV or EV-DV) | (essential* or declar*) w/12 (licens* or royalt* or reputation or appear* or brand) **and** (3G or 3GPP or 3GPP2 or ETSI or WCDMA or W-CDMA or "wideband CDMA" or UMTS or cdma2000* or "cdma 2000" or rtt or 1X-EV or 1X-EVDO or 1X-EVDV or EVDI or EV-DO or EVDV or EV-DV or **FDD**) |
| 16. | (essential* or declar* w/12 (procedure* or method* or process* or system*) **w/12 (3G or 3GPP or 3GPP2 or ETSI or WCDMA or W-CDMA or "wideband CDMA" or UMTS or cdma2000* or "cdma 2000" or rtt or 1X-EV or 1X-EVDO or 1X-EVDV or EVDI or EV-DO or EVDV or EV-DV)** | (essential* or declar*) w/12 (procedure* or method* or process* or system*) |
| 17. | (essential* or declar*) w/12 (accurate* or correct* or tru* or fals* or mislead*) **w/12 (3G or 3GPP or 3GPP2 or ETSI or WCDMA or W-CDMA or "wideband CDMA" or UMTS or cdma2000* or "cdma 2000" or rtt or** | (essential* or declar*) w/12 (accurate* or correct* or tru* or fals* or mislead*) **and** (3G or 3GPP or 3GPP2 or ETSI or WCDMA or W-CDMA or "wideband CDMA" or UMTS or cdma2000* or "cdma 2000" or rtt or 1X-EV or 1X- |

I. Clay Rogers, Esq.
November 16, 2006
Page 6

| No. | InterDigital's 11/15/06 Proposal (proposed changes in bold) | Nokia's 11/16/06 Proposal (proposed changes in bold) |
|---|---|---|
| | 1X-EV or 1X-EVDO or 1X-EVDV or EVDI or EV-DO or EVDV or EV-DV) | EVDO or 1X-EVDV or EVDI or EV-DO or EVDV or EV-DV **or FDD**) |
| 18. | (essential* or declar* w/12 relative* w/12 (3G or 3GPP or 3GPP2 or ETSI or WCDMA or W-CDMA or "wideband CDMA" or UMTS or cdma2000* or "cdma 2000" or rtt or 1X-EV or 1X-EVDO or 1X-EVDV or EVDI or EV-DO or EVDV or EV-DV) | (essential* or declar* w/12 relative* **and** (3G or 3GPP or 3GPP2 or ETSI or WCDMA or W-CDMA or "wideband CDMA" or UMTS or cdma2000* or "cdma 2000" or rtt or 1X-EV or 1X-EVDO or 1X-EVDV or EVDI or EV-DO or EVDV or EV-DV **or FDD**) |
| 19. | **InterDigital's search - Licens\* w/12 (present\* or pitch\*) w/12 (Arima or Danger or "High Tech" or "hop-on" or Infineon or "Japan Radio" or NEC or "Option IV" or Quanta or Qualcomm or "Research in Motion" or Sony or Panasonic or Sanyo or Samsung or Sierra or Siemens or Kyocera or LG or Sharp or Toshiba)**<br><br>**Nokia should not restrict its license search to these companies therefore Nokia's search will be:**<br><br>**"Licens\* w/12 (present\* or pitch\*)"** | **Per 12/16/2006 telephone conversation, Clay will investigate (1) whether this list includes all licensees of InterDigital's 3G patents and (2) whether there are any potential licensees for which there are no "on-going" license negotiations (to include the criteria of what constitutes an "on-going" license negotiation)**<br><br>InterDigital's search - Licens* w/12 (present* or pitch* or activit*) and (Arima or Danger or "High Tech" or "hop-on" or Infineon or "Japan Radio" or NEC or "Option IV" or Quanta or Qualcomm or "Research in Motion" or Sony or Panasonic or Sanyo or Samsung or Sierra or Siemens or Kyocera or LG or Sharp or Toshiba)<br><br>**Nokia's search - Licens\* w/12 (present\* or pitch\*) and (3G or 3GPP or 3GPP2 or ETSI or WCDMA or W-CDMA or "wideband CDMA" or UMTS or cdma2000\* or "cdma 2000" or rtt or 1X-EV or 1X-EVDO or 1X-EVDV or EVDI or EV-DO or EVDV or EV-DV or FDD)** |

I. Clay Rogers, Esq.
November 16, 2006
Page 7

| No. | InterDigital's 11/15/06 Proposal (proposed changes in bold) | Nokia's 11/16/06 Proposal (proposed changes in bold) |
|---|---|---|
| 20. | (essential* or standard*) w/14 (defin* or mean* or expla*) w/12 (3G or 3GPP or 3GPP2 or ETSI or WCDMA or W-CDMA or "wideband CDMA" or UMTS or cdma2000* or "cdma 2000" or rtt or 1X-EV or 1X-EVDO or 1X-EVDV or EVDI or EV-DO or EVDV or EV-DV) | (essential* or standard*) w/12 (defin* or mean* or expla*) **and** (3G or 3GPP or 3GPP2 or ETSI or WCDMA or W-CDMA or "wideband CDMA" or UMTS or cdma2000* or "cdma 2000" or rtt or 1X-EV or 1X-EVDO or 1X-EVDV or EVDI or EV-DO or EVDV or EV-DV or **FDD**) |
| 21. | (commercial* or technical*) w/3 essential* w/12 (3G or 3GPP or 3GPP2 or ETSI or WCDMA or W-CDMA or "wideband CDMA" or UMTS or cdma2000* or "cdma 2000" or rtt or 1X-EV or 1X-EVDO or 1X-EVDV or EVDI or EV-DO or EVDV or EV-DV) | (commercial* or technical*) w/3 essential* **and** (3G or 3GPP or 3GPP2 or ETSI or WCDMA or W-CDMA or "wideband CDMA" or UMTS or cdma2000* or "cdma 2000" or rtt or 1X-EV or 1X-EVDO or 1X-EVDV or EVDI or EV-DO or EVDV or EV-DV or **FDD**) |
| 22. | "ad hoc group"/12 (essential*) w/12 (3G or 3GPP or 3GPP2 or ETSI or WCDMA or W-CDMA or "wideband CDMA" or UMTS or cdma2000* or "cdma 2000" or rtt or 1X-EV or 1X-EVDO or 1X-EVDV or EVDI or EV-DO or EVDV or EV-DV) | "ad hoc group"/12 (essential*) **and** (3G or 3GPP or 3GPP2 or ETSI or WCDMA or W-CDMA or "wideband CDMA" or UMTS or cdma2000* or "cdma 2000" or rtt or 1X-EV or 1X-EVDO or 1X-EVDV or EVDI or EV-DO or EVDV or EV-DV or **FDD**) |
| 23. | Proposed search term ("European Telecommunications Standards Institute" or ETSI) is covered by item no. 3 | AGREED |

## IV.    Nokia's Electronic Systems

The Nokia facilities where Nokia's currently identified electronic document custodians are employed utilize Microsoft Windows operating systems and Windows XP. Applications typically loaded onto personal computers at these Nokia facilities include Microsoft products (e.g., MS Office 2003 (PowerPoint, Excel, Word, Access, Outlook), MS Explorer, Lotus products (e.g., Lotus Notes R6), Adobe Acrobat Reader 7.0, and Symantec antivirus software. Nokia has recently implemented a document management system where files can be electronically archived and stored. Nokia uses Microsoft Exchange for Email. Each Nokia facility has its own email server and Nokia has contracted with a third-party vendor that manages global email storage needs. Presently, standard user data is backed up to tapes daily. The backups are stored offsite by a vendor for a period of up to 6 months. As agreed by the parties, Nokia will not search any backup media at this time.

I. Clay Rogers, Esq.
November 16, 2006
Page 8

**V.    Nokia's Electronic Document Retention Policies**

Nokia's company-wide Document Retention Policy (enclosed) defines multiple retention periods based upon department, document type, and document classification. That policy establishes either a permanent retention or six-year retention period for most IP-related documents. As noted above, standard user data is backed up and can be restored within 6 months, excluding data that maybe explicitly archived. Nokia has previously placed a "legal hold order" on records relevant to this litigation. In accordance with the Document Retention Policy, records relevant to this litigation are to be held indefinitely until released by appropriate in-house legal counsel.

I look forward to hearing from you at your earliest convenience regarding the above so that the parties can proceed with electronic discovery.

Sincerely,

Kevin A. O'Brien

KOB:mm
enclosure
cc:    Dan D. Davison, Esq. (via email)
       Patrick J. Flinn, Esq. (via email)
       Randall L. Allen, Esq. (via email)
       Lance A. Lawson, Esq. (via email)
LEGAL02/30161022v1

# EXHIBIT 6

**THIS EXHIBIT HAS BEEN
REDACTED IN ITS ENTIRETY**

# EXHIBIT 7

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2003 WL 22951696 (D.Del.)

(Cite as: Not Reported in F.Supp.2d)

**H**

Briefs and Other Related Documents

In re DaimlerChrysler AGD.Del.,2003.Only the Westlaw citation is currently available.

United States District Court,D. Delaware.

In re: DAIMLERCHRYSLER AG Securities Litigation

TRACINDA CORPORATION, a Nevada Corporation, Plaintiff,

v.

DAIMLERCHRYSLER AG, a Federal Republic of Germany corporation; Daimler-Benz AG, a Federal Republic of Germany corporation; Jurgen Schrempp, a citizen of the Federal Republic of Germany; Manfred Gentz, a citizen of the Federal Republic of Germany, Defendants.

No. Civ.A. 00-993-JJF.

Nov. 25, 2003.

A. Glichrist Sparks. III, Alan J. Stone, and Jessica Zeldin, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Terry Christensen, Mark G. Krum, Eric P. Early, of Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, Los Angeles, California, William G. McGuinness, Julie E. Kamps, and Midwin Charles, of Fried, Frank, Harris, Shriver & Jacobson, New York, New York, for Plaintiff, of counsel.

Thomas J. Allingham II, and Robert S. Saunders, of Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, Delaware, Jonathan J. Lerner, J. Michael Schell, Lea Haber Kuck, and Joseph N. Sacca, of Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York, for Defendants, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Pending before me is a Motion For Relief For Spoliation Of Evidence (D.I.584) filed by Defendants, DaimlerChrysler AG, Daimler-Benz AG, Jürgen Schrempp and Manfred Gentz. By their Motion, Defendants contend that Tracinda deliberately destroyed relevant evidence thereby prejudicing Defendants' ability to defend this action. As relief, Defendants request the dismissal of Tracinda's claims of common

law fraud (Counts 7 and 8 of the Complaint) and violations of Section 10(b) of the Securities and Exchange Act of 1934 (Count 1 of the Complaint). In the alternative, Defendants ask me to draw an adverse inference against Tracinda at trial based on the destruction of this evidence. For the reasons discussed, I will deny Defendants' Motion.

I. THE PARTIES' CONTENTIONS

By their Motion, Defendants contend that Mr. Kirk Kerkorian's personal assistant, Jaclyn Thode, destroyed documents that she used to prepare a list of meetings and/or conversations between Mr. Kerkorian and Mr. Robert Eaton. Defendants contend that Tracinda's general counsel, Richard Sobelle, instructed Ms. Thode to prepare the list, but failed to instruct her to preserve the documents used in making the list. Based on these allegations, Defendants contend that Tracinda engaged in the willful and systematic destruction of relevant evidence.

In response to Defendants' allegations, Tracinda contends that Ms. Thode did not engage in any willful or intentional destruction of evidence. Tracinda contends that Ms. Thode has no knowledge of the underlying allegations of this lawsuit beyond "coffee room talk," and that any destruction of evidence was unintentional. Tracinda contends that the underlying documents are no more than 18 pieces of paper consisting primarily of steno notes or "While You Were Out" pink message notes. According to Tracinda, the substantive content of these notes was transcribed by Ms. Thode into a single list virtually verbatim. Tracinda also contends that the notes did not contain anything about the substance of the conversations between Mr. Kerkorian and Mr. Eaton, and merely reflected the fact that a meeting or telephone conversation occurred. Tracinda further maintains that Ms. Thode followed her routine practice of destroying the notes after she documented them. Because the content of the documents was preserved by Ms. Thode's list and the destruction of the documents was unintentional, Tracinda contends that Defendants cannot establish that sanctions are warranted.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22951696 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

## II. DISCUSSION

In determining whether sanctions are an appropriate remedy for the alleged destruction of evidence, I must consider three factors: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and where the offending party is seriously at fault, will serve to deter conduct in the future. *Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir.1994).* After considering Defendants' allegations and the evidence submitted on this issue in the context of the applicable law, I conclude that sanctions are not warranted as a result of the alleged spoliation of evidence in this case. The unrebutted deposition testimony and affidavit of Ms. Thode establish that she discarded her handwritten notes after converting them into typewritten form, consistent with her practice in the past.[FN1] (Thode Decl. at ¶ 8, Thode Tr. 15:6-9). Ms. Thode had no information or understanding about the substance of this litigation and no information as to the purpose of Mr. Sobelle's request, and thus she had no reason to alter or omit any information from the documents. (Thode Decl. at ¶ 2, 12-13, 15; Thode Tr. 41:16-25, 52:24-25, 53:2-23, 55:2-6). I am persuaded that Ms. Thode had every incentive to correctly and fully document the notes she was working from in order to comply with Mr. Sobelle's request for information. In these circumstances, I find that Ms. Thode acted unintentionally when she discarded the steno pads and pink message notes. *See S.C. Johnson & Son, Inc. v. Louis & Nashville R.R. Co., 695 F.2d 253, 259 (7th Cir.1982)* (finding that destruction of evidence was not intentional where handwritten notes were discarded after being typed and person handling evidence had no reason to omit or alter necessary information). I further find that Defendants have not suffered any prejudice as a result of Ms. Thode's actions, because they have a complete and accurate chronology of the contents of the documents that were discarded.

> FN1. *See e.g. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir.1995)* (recognizing that adverse inference is not warranted against party who destroyed evid-

ence where destruction of evidence was a matter of routine with no fraudulent intent or otherwise innocently accounted for); *Ziegler v. Anesthesia Assoc. of Lancaster, Ltd., 2002 WL 387174 (E.D.Pa. Mar. 12, 2002)* (holding that spoliation doctrine was inapplicable where president of defendant company destroyed voter list at conclusion of meeting consistent with his past personal practice).

*2 Defendants focus on the fact that the documents from which Ms. Thode made her typewritten list had been stored for two years prior to their destruction. However, Ms. Thode testified that those documents were packed and stored when her office was moved, and she did not have the opportunity to go through them either before or after the move until Mr. Sobelle's request for information. (Thode Decl. at ¶ 9, Thode Tr. at 41:5-15). Ms. Thode explained that when Mr. Sobelle asked her for any information about meetings between Mr. Eaton and Mr. Kerkorian, she initially doubted that she had anything relevant, but later remembered the two boxes that had been shipped from her previous office. (Thode Decl. at ¶ 10-11, Thode Tr. at 40:22-41:15). Ms. Thode also explained that the majority of the contents of the boxes did not contain anything relevant to this litigation, but that she did uncover her pink message notes and steno pads. (Thode Decl. at ¶ 12). In my view, the circumstances Ms. Thode described appear to be consistent with the type of events that occur during the often confusing and hectic move of an office. As such, I do not find anything sinister about the fact that the documents had been in storage for such a long period of time prior to their destruction.

Defendants also suggest that these documents may have contained information regarding the substance of the conversations between Mr. Kerkorian and Mr. Eaton, such that the destruction of these documents prejudiced Defendants' ability to defend this lawsuit and deprived them of relevant information. To establish prejudice, Defendants must show " 'a reasonable possibility, based on concrete evidence rather than a fertile imagination" that access to the [lost material] would have produced evidence favorable to his cause." '[FN2] *Gates Rubber Co. v. Bando Chem. In-*

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22951696 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

_dus., Ltd., 167 F.R.D. 90, 104, 109 (D.Colo.1996);_
_Schmid, 13 F.3d at 80_ (overturning sanction of judg-
ment in favor of defendant where defendant did not
"come forward with plausible, concrete suggestions
as to what that [lost] evidence might have been").
This standard is not satisfied where the evidence lost
is merely "cumulative, insignificant or of marginal
relevance." _Gates, 167 F.R.D. at 104, 109._

> FN2. The burden of establishing prejudice
> must be shown by "direct evidence which is
> clear and convincing" when dispositive
> sanctions are sought, and by a preponder-
> ance of the evidence when non-dispositive
> sanctions are sought. _Gates, 167 F.R.D. at_
> _108._

After considering the facts and circumstances related
to this issue, I conclude that Defendants have not met
their burden of establishing prejudice under either a
clear and convincing or preponderance of the evid-
ence standard. Ms. Thode's unrebutted testimony is
that she included all the information from her pink
message notes and steno pads into the list she tran-
scribed and that she discarded the pink message notes
and steno pads consistent with her past practice of
discarding such documents after she has looked
through them. Ms. Thode also testified that she was
not present for any meetings or conversations
between Mr. kerkorian and Mr. Eaton, that she had
no knowledge about the content of any such conver-
sations or meetings, and that the documents she dis-
carded had no information regarding the substance or
duration of any conversations or meetings. (Thode
Decl. at ¶ 6,7, 9-15; Thode Tr. at 41:16-25, 52:24-25,
53:2-23, 55:2-6). Because the content of this evid-
ence was preserved, and the nature of the discarded
documents was unlikely to reveal anything regarding
the content or duration of the conversations that took
place, I conclude that Defendants have not been pre-
judiced by the destruction of these documents. _See_
_e.g. Mathias v. Jacobs, 197 F.R.D. 29, 39_
_(S.D.N.Y.2001)_ (finding no prejudice where the sub-
stance of the discarded computer printout was trans-
ferred to plaintiff's palm pilot, which was produced),
_vacated on other grounds, 167 F.Supp.2d 606_
_(S.D.N.Y.2001)._ Further, I note that Defendants have
represented Mr. Eaton throughout this litigation and

have deposed Mr. Kerkorian regarding his conversa-
tions with Mr. Eaton. Thus, Defendants have had
ample opportunity to garner the substance of these
conversations from the actual participants, sources
which are undoubtedly more accurate and more sub-
stantive than the telephone message notes of an as-
sistant who was not present during the actual conver-
sations.

*3 To the extent that Defendants suggest that Mr. So-
belle acted nefariously in failing to instruct Ms.
Thode to preserve the documents, I find that Mr. So-
belle's conduct does not evidence any bad faith. I
have read the testimony of Mr. Sobelle and Ms.
Thode in this regard and find nothing beyond mere
speculation to support Defendants' assertion that Mr.
Sobelle made a deliberate choice not to assure the
preservation of the phone message slips and steno
pads. While it may have been a better litigation prac-
tice for Mr. Sobelle to have instructed Ms. Thode to
preserve the documents, Defendants have not per-
suaded me that Mr. Sobelle acted intentionally to im-
pair Defendants' ability to defend against Tracinda's
claims. _See e .g. Brewer, 72 F.3d at 334_ (holding that
negative inference arises " 'only when the spoliation
or destruction [of evidence] was intentional, and in-
dicates a desire to suppress the truth" ') (citations
omitted); _Universe Tankships, Inc. v. United States,_
_388 F.Supp. 276, 286 (E.D.Pa.1974), aff'd, 528 F.2d_
_73 (3d Cir.1975)_ (holding that negligence resulting in
the destruction of evidence is insufficient to require
the court to draw an adverse inference).

With regard to the cases cited by Defendants to sup-
port their position that sanctions are warranted, I find
the majority of those cases to be distinguishable from
the circumstances in this case. The cases cited by De-
fendants involve the destruction of key pieces of
evidence, without which the defendants could not es-
tablish a defense or refute the plaintiff's allegations.
_See e.g. In re Wechsler, 121 F.Supp.2d 404, 428-429_
_(D.Del.2000)_ (entering an interlocutory finding of li-
ability against plaintiff where plaintiff destroyed his
yacht, the central piece of evidence, before inspectors
could determine if faulty wiring caused the fire,
thereby preventing defendants from discovering the
cause of the fire or establishing that the fire was star-
ted on plaintiff's yacht); _Bowman v. American Medic-_

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22951696 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

*al Systems*, 1998 WL 721079 (E.D.Pa. Oct. 9, 1998) (holding that defendants were prejudiced where they could not examine the prosthesis which was the subject of the action because plaintiff destroyed it, and they could not obtain the relevant information from the doctor because he died); *Walters v. General Motors Corp.*, 209 F.Supp.2d 481 (W.D.Pa.2002) (finding prejudice where plaintiff destroyed the vehicle that was the subject of her defective-manufacturing claim). By contrast, as I have observed, Defendants have had ample opportunity to gather the information they seek about the conversations between Mr. Eaton and Mr. Kerkorian from the participants themselves. Thus, I conclude that the destruction of the documents sought by Defendants will not impair their ability to defend this litigation.

In sum, I find that the destruction of the documents used by Ms. Thode in compiling her list of contacts between Mr. Eaton and Mr. Kerkorian was not intentional and did not result in any prejudice to Defendants. Once Ms. Thode discovered these documents, she handled them in a manner consistent with her past practice. The content of the documents has been fully preserved, and I am not persuaded that those documents, by their nature, would have contained the information which Defendants seek. In these circumstances, I conclude that sanctions are not appropriate, and therefore, I will deny Defendants' Motion For Relief For Spoilation Of Evidence.

### III. CONCLUSION

*4 For the reasons discussed, Defendants' Motion For Relief For Spoilation Of Evidence will be denied.

An appropriate Order will be entered.

#### ORDER

At Wilmington, this 25th day of November 2003, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion For Relief For Spoilation Of Evidence (D.I.584) is DENIED.

D.Del.,2003.

In re DaimlerChrysler AG
Not Reported in F.Supp.2d, 2003 WL 22951696 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 1224634 (Trial Motion, Memorandum and Affidavit) Plaintiff Tracinda Corporation's Answering Post Trial Brief (May. 14, 2004)
• 2004 WL 1224637 (Trial Motion, Memorandum and Affidavit) Defendants' Responsive Post-Trial Brief (May 14, 2004)
• 2004 WL 1224635 (Trial Motion, Memorandum and Affidavit) Defendants' Post-Trial Memorandum of Law and Memorandum in Support of Their Motion for Judgment as a Matter of Law (Apr. 23, 2004)
• 2004 WL 1224636 (Trial Motion, Memorandum and Affidavit) Plaintiff Tracinda Corporation's Opening Post Trial Brief (Apr. 23, 2004)
• 2004 WL 481714 (Trial Pleading) Tracinda Corporation's Reply Memorandum in Support of its Motion for Award of Sanctions Against Defendants for Late Production of Documents (Feb. 20, 2004)
• 2004 WL 481715 (Trial Pleading) Defendants' Response to Tracinda Corporation's Objections to the Report of the Special Master (Feb. 04, 2004)
• 2004 WL 481713 (Trial Pleading) Tracinda Corporation's Memorandum of Points and Authorities in Support of its Motion for Award of Sanctions Against Defendants for Late Production of Documents (Jan. 23, 2004)
• 2004 WL 353914 (Trial Motion, Memorandum and Affidavit) Plaintiff Tracinda Corporation's Objections to the Report and Recommendations of Special Master Collins J. Seitz, Jr., Esq. (Jan. 21, 2004)
• 2003 WL 23180946 (Trial Filing) Statement of Plaintiff Tracinda Corporation in Connection With Proceedings Before the Special Master With Respect to Certain Belatedly Produced Documents (Dec. 19, 2003)
• 2003 WL 24282958 () Consolidated Action (Feb. 10, 2003) Original Image of this Document (PDF)
• 2003 WL 24282959 () Expert Report of Frederick C. Dunbar (Jan. 10, 2003) Original Image of this Document (PDF)
• 2003 WL 24282957 () Report of Expert Witness Richard A. Wines (Jan. 9, 2003) Original Image of this Document (PDF)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22951696 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

- 2003 WL 24337540 () Declaration of Rolf
St%20urner (Jan. 8, 2003) Original Image of this
Document (PDF)
- 2002 WL 32991955 () Report of Mark E. Zmijew-
ski in the matter of (Dec. 2, 2002) Original Image of
this Document (PDF)
- 2002 WL 32991956 () Daimlerchrysler Ag Securit-
ies Litigation Preliminary Report of Anticipated
Testimony (Dec. 2, 2002) Original Image of this
Document (PDF)
- 2000 WL 34408517 (Trial Pleading) Class Action
Complaint for Federal Securities Law Violations
(Nov. 28, 2000)
- 2000 WL 34408518 (Trial Pleading) Class Action
Complaint for Federal Securities Law Violations
(Nov. 28, 2000)
- 1:00CV00993 (Docket) (Nov. 28, 2000)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.