# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.2d                                                                                      Page 1
Not Reported in F.Supp.2d, 1999 WL 615164 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

▷
E.I. Dupont De Nemours & Co. v. Millennium Chemicals, Inc.D.Del.,1999.Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
E.I. DUPONT DE NEMOURS & CO., Plaintiff,
v.
MILLENNIUM CHEMICALS, INC. and Millennium Inorganic Chemicals, Inc., Defendants.
No. C.A. 97-237-SLR.

Aug. 2, 1999.

Richard L. Horwitz, and Joanne Ceballos, of Potter, Anderson & Corroon LLP, Wilmington, Delaware, for Plaintiff, John C. Vassil, and Bruce D. DeRenzi, of Morgan & Finnegan, L.L.P., New York, New York, of counsel.
Jack B. Blumenfeld, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for Defendants, David A. Kalow, and Kenneth L. Bressler, of Kalow, Springut & Bressler LLP, New York, New York, of counsel.

MEMORANDUM OPINION
ROBINSON, J.

I. INTRODUCTION

*1 Plaintiff E.I. DuPont De Nemours & Co. filed this patent infringement action against Millennium Chemicals, Inc. and Millennium Inorganic Chemicals, Inc. (collectively, "defendant") on May 1, 1997. Plaintiff is incorporated under the laws of Delaware and has its principal place of business in Wilmington, Delaware. (D.I.137, ¶ 2) Defendant is also a Delaware corporation with its principal places of business in Iselin, New Jersey and Hunt Valley, Maryland. (D.I.137, ¶¶ 3-4) The court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338. Venue is proper in this judicial district by virtue of 28 U.S.C. §§ 1391(c) and 1400(b).

Currently before the court is defendant's motion for summary judgment (D.I.92) and plaintiff's motion to dismiss, or in the alternative, to strike in whole or in part defendant's second and third counterclaims (D.I.168). In its motion, defendant argues that plaintiff's patents violate the definiteness requirement of 35 U.S.C. § 112 and therefore are invalid. For its part, plaintiff seeks dismissal of defendant's second and third counterclaims as untimely; in the alternative, plaintiff moves the court to strike all or part of defendant's counterclaims for failure to comply with the applicable statute of limitations. For the following reasons, the court shall deny both defendant's motion for summary judgment and plaintiff's motion to dismiss and grant in part plaintiff's motion to strike.

II. BACKGROUND

Plaintiff is the assignee of U.S. Patent Nos. 5,631,310 ("the '310 patent") and 5,889,090 ("the '090 patent").FN1 These patents disclose processes for manufacturing "highly loaded" silanized titanium dioxide pigments in polyethylene or other polymer concentrates. Manufacturers use titanium dioxide pigment, which is white, to color various products, including plastics (such as trash bags and diaper linings), paints, and paper. This suit involves the use of these pigments in the plastic film market. (D.I.160, ¶ 49) There are three steps involved in coloring plastics using titanium dioxide pigment. First, the titanium dioxide pigment is coated with silanes or other materials. Second, the coated titanium dioxide pigment is shipped to a masterbatch, or concentrate, maker who forms the masterbatch by adding plastic to the pigment. Third, the masterbatch maker sells this concentrate to a plastic manufacturer who, in turn, adds more plastic to the concentrate and extrudes the pigmented plastic into film for use in various consumer products. (D.I. 93 at 4)

> FN1. Initially, plaintiff alleged that defendant induced infringement of U.S. Patent No. 5,607,994 (the "'994 patent"), a product patent disclosing a "polyethylene matrix consisting essentially of polyethylene and about 50 to about 87% by weight silanized [titanium dioxide] pigment." (D.I. 93, Ex. A, '994 patent, col. 8, lns. 20-23) After defendant filed the instant motion for summary judgment, plaintiff filed a second amended

Not Reported in F.Supp.2d                                                                                                Page 2
Not Reported in F.Supp.2d, 1999 WL 615164 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

complaint (D.I.137), which substituted the '090 process patent for the '994 patent. Plaintiff appears to have abandoned suit over the '994 patent, focussing instead on defendant's alleged inducement of infringement of the '090 and '310 patents. Defendant's instant motion for summary judgment addresses only the '994 and '310 patents. Because the '994 patent is no longer the subject of suit, the court shall address only defendant's arguments touching on the '310 patent.

In the past, the use of titanium dioxide pigment in plastics had several processing disadvantages and often resulted in product quality problems. The processing disadvantages included poor dispersability of the pigment, high energy requirements for mixing the pigment, and low productivity. The pigment concentrate also occasionally produced "lacing" (holes or tears in the plastic film) and noxious gases or rendered the film resistant to printing. (D.I. 97 at 5) In response to consumer demand for less problematic pigmentation methods, both plaintiff and defendant developed "highly loaded" preparations of coated, silanized titanium dioxide pigment, which purportedly reduce the aforementioned processing and product quality disadvantages. In its second amended complaint, plaintiff alleges that defendant has induced infringement of the '310 and '090 patents through the manufacture, advertisement, promotion, and sale of silanized titanium dioxide pigment under the trade name "TiONA® RCL-188" (hereafter, "RCL-188") for use by masterbatch manufacturers in polyethylene concentrates. (D.I.137, ¶¶ 5-8)

### III. DISCUSSION

#### A. Defendant's Motion for Summary Judgment

*2 Defendant argues that several terms used in the claims of the '310 patent are ambiguous and, therefore, are invalid for indefiniteness. Defendant points to the '310 patent's use of "coating," "mixture," and "at least one" as examples of such indefiniteness. In interrogatories, defendant asked plaintiff to clarify the meaning of each of these disputed terms, but plaintiff refused "on the ground that it is premature in seeking the contentions of [plaintiff] during the initial phase of discovery." (D.I. 93, Ex. C at 2, 4, 5) The '310 patent employs these allegedly indefinite terms in the following manner.

#### 1. "Coating"

The '310 patent uses "coating" as a verb to describe the process of coating the pigment with "at least one organosilicon compound." (D.I.93, Ex. B, col.8, lns.24-25, 58) Defendant contends, without supporting evidence, that the ambiguity of "coating" lies in the fact that the chemical composition of the silane, if added to water, may change at the very least from (i) the time the ingredients are mixed to (ii) the time they attach to the pigment.

(D.I. 93 at 6) Due to this purported ambiguity, it is allegedly impossible to determine whether the '310 patent covers the formula for silane as it is added to water or the formula for silane as (or after) it coats the titanium dioxide pigment. (D.I. 93 at 7)

#### 2. "Mixture"

Claim 3 of the '310 patent discloses a process for coating a titanium dioxide pigment with an organosilicon compound "comprising a mixture of ... (a) at least one silane ... and (b) ... at least one polysiloxane...." (D.I. 93, Ex. B, col. 8, lns. 59-60; col. 9, ln. 5) Defendant asserts that the ambiguity lies in the patent's failure to claim the proportions of silane to polysiloxane which qualify as a mixture. (D.I. 93 at 7)

#### 3. "At least one"

Finally, the '310 patent describes the pigment coating as comprising "at least one" silane or mixtures of "at least one" silane and "at least one" polysiloxane. (D.I. 93, Ex. B., col. 8, ln. 24, 60; col. 9, ln. 5) Defendant argues that this phrase is indefinite because the claims do not provide the meaning of, or the units of measurements associated with, the phrase "at least one." (D.I. 93 at 8)

On a motion for summary judgment, the movant bears the burden of proving that no genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). If a moving party fails to establish the absence of a genuine issue of fact, " 'summary judgment must be denied even if no opposing evidentiary matter is presented." ' Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970) (quoting Advisory Committee Note on 1963 Amendment to Rule 56(e)).

*3 In the context of the instant motion, defendant must demonstrate that there is no genuine issue of material fact with respect to the indefiniteness of the '310 patent claims. A patent claim is indefinite and, therefore, invalid if the claims fail to "particularly point[ ] out and distinctly claim [ ] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. Although compliance with § 112 is a question of law, see Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1576 (Fed.Cir.1986), it rests on a determination of "whether one skilled in the art would understand the bounds of the claim when read in light of the specification." Miles Labs., Inc. v. Shandon, Inc., 997 F.2d 870, 875 (Fed.Cir.1993). "If the claims read in light of the specification reasonably apprise those skilled in the art of the scope of the invention, § 112 demands no more." Id. The degree of precision necessary to satisfy § 112 depends upon the subject matter and cannot be viewed in the abstract. See id.; Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 624 (Fed.Cir.1985).

At issue, then, is whether one skilled in the art would find the '310 patent's use of these disputed terms indefinite. Defendant, however, offers neither evidence of the requisite degree of skill in the art nor evidence of how one skilled in the art would interpret the disputed terms. Instead, defendant merely argues in rhetorical fashion that the aforementioned terms are indefinite. Defendant cannot prevail by arguing that these terms are indefinite to any reader of the patent; rather, defendant must demonstrate that those skilled in the art would find them indefinite. See Miles Labs., 997 F.2d at 875. Terms that appear facially ambiguous to the lay reader may be perfectly definite to those versed in the technology at issue. See, e.g., Andrew Corp. v. Gabriel Elecs., Inc., 847 F.2d 819, 821 (Fed.Cir.1988) (explaining that terms such as "closely approximate," "approach each other," and "substantially equal" are upheld by courts "when serving reasonably to describe the claimed subject matter to those of skill in the field of the invention"); Seattle Box Co. v. Industrial Crating & Packing, Inc., 731 F.2d 818, 826 (Fed.Cir.1984) (finding phrase "substantially equal to" sufficiently definite). On a motion for summary judgment, abstract and rhetorical arguments in support of indefiniteness simply do not satisfy defendant's burden of proof.

Defendant also argues that the court should infer indefiniteness from plaintiff's refusal, in its responses to defendant's interrogatories, to clarify the meaning of the disputed terms. Neither the law nor logic supports such an inferential leap. On a motion for summary judgment, the nonmoving party need not present opposing evidence of definiteness where, as here, the movant has failed to show the absence of genuine factual disputes. See Adickes, 398 U.S. at 160. Because defendant has failed to demonstrate the absence of genuine issues of material fact with respect to whether one skilled in the art would understand the disputed terms, the court shall deny defendant's motion for summary judgment.

B. Plaintiff's Motion to Dismiss or, in the Alternative, to Strike

*4 Plaintiff moves the court, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss defendant's second and third counterclaims as untimely compulsory counterclaims filed without leave of court. In the alternative, plaintiff moves pursuant to Fed.R.Civ.P. 12(f) to strike defendant's second and third counterclaims as barred by the Delaware statute of limitations. (D.I.168) Defendant asserted these counterclaims in its May 14, 1999 answer to plaintiff's second amended complaint. (D.I.160) Defendant's second counterclaim alleges that plaintiff violated § 43(a) of the Lanham Act by making false and deceptive statements about defendant's RCL-188 product. (D .I. 160, ¶¶ 71-73) The third counterclaim asserts a state law unfair competition claim based on these same allega-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

tions. (D.I.160, ¶¶ 74-75)

### 1. Plaintiff's Motion to Dismiss

In support of its motion, plaintiff argues that defendant's second and third counterclaims are compulsory and, therefore, should have been asserted earlier than in its answer to plaintiff's second amended complaint. Plaintiff, however, offers no compelling justification for departing from the well established rule that a defendant may include counterclaims in its answer to an amended complaint. *See Standard Chlorine of Del., Inc. v. Sinibaldi,* Civ. A. No. 91-188-SLR, 1995 WL 562285, at 2 (D.Del. Aug. 24, 1995); *Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.,* 50 F.R.D. 415, 419 (D.Del.1970). Courts in this district have reasoned that, because the amended pleading relates back to the date of the original pleading, the amending pleader "can hardly be heard to complain that claims filed against him are improper because they should have been asserted in response to his original pleading." *Joseph Bancroft & Sons,* 50 F.R.D. at 419.

In the present case, plaintiff filed its second amended complaint on April 7, 1999. (D.I.137) In due course, defendant then filed its answer, which included the instant counterclaims. Under the settled law of this judicial district, defendant's counterclaims were filed in a timely manner. Thus, the court shall deny plaintiff's motion to dismiss.

### 2. Plaintiff's Motion to Strike

There remains, however, the issue of whether the relevant statute of limitations bars defendant from relying on some or all of the allegations asserted in support of its second and third counterclaims. The Lanham Act provides no statute of limitations. Generally, when a federal statute provides no statute of limitations federal courts look to the applicable state statute of limitations for guidance. *See Beauty Time, Inc. v. Vu Skin Sys., Inc.,* 118 F.3d 140, 143 (3d Cir.1997). Accordingly, the court must look to the Delaware statute of limitations for the relevant limitations period for both defendant's Lanham Act and state unfair competition counterclaims.

The Delaware statute of limitations provides that "no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force ... shall be brought after the expiration of 3 years from the accruing of the cause of such action...." 10 Del. C. § 8106. Because defendant's second counterclaim is "an action based on a statute" and defendant's third counterclaim is "an action to recover damages caused by an injury unaccompanied by force," Delaware's three year statute of limitations applies in the absence of an equitable exception.

*5 Most of defendant's allegations fall within this three year period. Indeed, defendant asserts that plaintiff currently "is informing its customers and potential customers-all of whom are either customers or potential customers of [defendant]-that the use of [defendant's] RCL-188 product will infringe [plaintiff's] patents, even though [plaintiff] knows ... that its patents are invalid and unenforceable." (D.I.160, ¶ 63) Although defendant provides no specific dates for plaintiff's allegedly deceptive statements, defendant has asserted an ongoing pattern of misrepresentations and disparagement of its RCL-188 pigment by plaintiff. As such, these allegations fall within the limitations period.[FN2] Insofar as defendant relies on plaintiff's false statements about defendant's RCL-188 product, the statute of limitations does not bar defendant's second and third counterclaims.

> FN2. Defendant need not, as plaintiff argues, specify the exact date of these alleged falsehoods.

Defendant, however, also refers to a July 1995 incident in support of its second and third counterclaims. Specifically, defendant alleges that

in or about July 1995, [plaintiff] distributed to customers and potential customers a brochure comparing two of its titanium dioxide products to [defendant's competing product, RCL-4]. In that brochure, [plaintiff] intentionally made the false claims that its R-101 and R-104 products had significantly better vinyl tinting strength than RCL-4 and better dispersability than RCL-4. In fact, [plaintiff's] own internal testing documents show otherwise. The brochure also falsely claimed that [defendant's] RCL-4 product contained methyl stearate-a compound disfavored by customers-when, in fact, RCL-4 contains no methyl

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

stearate.

(D.I.160, ¶ 65) Because defendant filed its counterclaims in May of 1999, events relating to this 1995 brochure fall outside the three year limitations period. In the absence of some equitable exception, defendant cannot rely upon this 1995 brochure to support its second and third counterclaims.

Defendant claims that the "time of discovery rule" provides such an exception. The "time of discovery rule" tolls the statute of limitations where "an inherently unknowable injury ... has been suffered by one blamelessly ignorant of the act or omission and injury complained of, and the harmful effect ... develops gradually over a period of time...." *Cavalier Group v. Strescon Indus., Inc.,* 782 F.Supp. 946, 951 (D.Del.1992) (internal quotations and citation omitted). The statute of limitations period is tolled until a person of ordinary intelligence and prudence would have had facts sufficient to put them on notice of an injury. *Id.* Defendant claims in its answering brief, but not in its counterclaims, that it was "blamelessly ignorant" of plaintiff's allegedly misleading brochure until discovery commenced in the present litigation. (D.I. 176 at 11)

The court finds that the "time of discovery" rule is not applicable to the instant case. A misleading product brochure is not an "inherently unknowable injury," especially when the brochure in question was distributed to "potential customers" in a highly competitive market. As such, defendant's counterclaims with respect to this 1995 incident are barred by the statute of limitations. Moreover, the 1995 brochure is irrelevant and immaterial to the issues at bar because it refers to completely different products than those allegedly covered by the '310 and '090 patents. Accordingly, pursuant to Fed.R.Civ.P. 12(f), the court shall strike ¶ 65 from defendant's second and third counterclaims.

### IV. CONCLUSION

*6 For the aforementioned reasons, the court shall deny defendant's motion for summary judgment and plaintiff's motion to dismiss and grant in part and deny in part plaintiff's motion to strike. An appropriate order shall issue.

D.Del.,1999.
E.I. Dupont De Nemours & Co. v. Millennium Chemicals, Inc.
Not Reported in F.Supp.2d, 1999 WL 615164 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2



**Not Reported in F.Supp.**
Not Reported in F.Supp., 1995 WL 562285 (D.Del.), RICO Bus.Disp.Guide 8944
**(Cite as: Not Reported in F.Supp.)**

Page 1

H
Briefs and Other Related Documents
Standard Chlorine of Delaware, Inc. v. SinibaldiD.Del.,1995.
United States District Court, D. Delaware.
STANDARD CHLORINE OF DELAWARE, INC.,
Plaintiff,
v.
Anthony R. SINIBALDI, Michael O. Sinibaldi, Dover Steel Company, Inc., Comma Corporation, Lorraine Equipment Co., Inc., SS & H Realty, All-American Promotions, Inc., George Mantakounis, Mantas Painting Company, and Mantas Painting Company, Inc., Defendants.
Anthony R. SINIBALDI, and Lorraine Equipment Co., Inc., Counterclaim Plaintiffs,
v.
STANDARD CHLORINE OF DELAWARE, INC., Counterclaim Defendant.
Anthony R. SINIBALDI, Michael O. Sinibaldi, Lorraine Equipment Co., Inc., Comma Corp., All-American Promotions, Inc., and SS & H Realty, Defendants and Third-Party Plaintiffs,
v.
Louis P. WIENER, Margaret L. Wiener, and Standard Chlorine Chemical Co., Inc., Third-Party Defendants.
Civ. A. No. 91-188-SLR.

Aug. 24, 1995.

Richard D. Allen and Karen L. Pascale, of Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Standard Chlorine of Delaware, Inc., Standard Chlorine Chemical, Inc., Louis P. Wiener, and Margaret L. Wiener.
Steven J. Balick, and Regina A. Iorii, of Ashby & Geddes, Wilmington, DE, for Anthony R. Sinibaldi, Michael O. Sinibaldi and Dover Steel Company, Inc.
David S. Lank, of Theisen, Lank, Mulford & Goldberg, Wilmington, DE, for Comma Corporation, Lorraine Equipment Co., Inc., SS & H Realty, and All-American Promotions, Inc.; Brian P. Kenney of Elliott, Vanaskie & Riley, Blue Bell, PA, of counsel.
Lawrence S. Drexler, and William D. Sullivan, of Elzufon, Austin & Drexler, Wilmington, DE, for George Mantakounis and Mantas Painting Company; Thomas C. Zielkinski, of Cozen and O'Connor, Philadelphia, PA, of counsel.
Angelo Falasca, Wilmington, DE, and Ronald David Ashby, of Ronald David Ashby & Associates, P.C., for Mantas Painting Company, Inc.

MEMORANDUM OPINION
SUE L. ROBINSON, District Judge.

I. INTRODUCTION

*1 This is a civil action brought by plaintiff Standard Chlorine of Delaware, Inc. ("Standard") against various individuals and companies which allegedly engaged in a long-term scheme to defraud Standard of millions of dollars. The original complaint was filed against Anthony R. Sinibaldi, Michael O. Sinibaldi (collectively, the "Sinibaldis"), and eight companies: Dover Steel Company, Inc. ("Dover"), Comma Corporation, Lorraine Rental & Equipment Company, Inc., Delaware Rental Company, SS & H Realty, SHS Holding Corp., AMB Construction Company, Inc. and All-American Promotions, Inc. Standard subsequently filed three amended complaints: the first, *inter alia,* adding as defendants George Mantakounis ("Mantakounis") and Mantas Painting Company ("Mantas"); the second, *inter alia,* adding as a defendant Mantas Painting Company, Inc. ("Mantas Inc."); [FN1] and the third, *inter alia,* dropping as defendants Delaware Rental Company, SHS Holding Corp., and AMB Construction Co., Inc. Jurisdiction is based upon Standard's allegations of violations of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). Standard also alleges various state law claims, including fraud and breach of fiduciary duty.

Presently before the court are 1) plaintiff's motion to dismiss those counterclaims raised by defendants Dover and Mantas Inc. in their answers to plaintiff's third amended complaint (D.I. 414); and 2) Mantakounis's and Mantas's (D.I. 432), Standard's (D.I. 434) and the Sinibaldis' (D.I. 435) letter memoranda concerning the impact of the Third Circuit's decision in *Jaguar Cars, Inc. v. Royal Oaks Motor Car*

Not Reported in F.Supp.  Page 2
Not Reported in F.Supp., 1995 WL 562285 (D.Del.), RICO Bus.Disp.Guide 8944
(Cite as: Not Reported in F.Supp.)

*Company, Inc.*, 46 F.3d 258 (3d Cir.1995) upon the court's December 8, 1994 decision dismissing Standard's count VI. (D.I. 399; D.I. 400).

II. Standard's Motion to Dismiss

A. Standard of Proof

Standard moves pursuant to Fed.R.Civ.P. 12(b)(6) that the court dismiss Mantas Inc.'s and Dover's counterclaims for failure to state a claim upon which relief can be granted. In the alternative, Standard moves pursuant to Fed.R.Civ.P. 56 for summary judgment on the counterclaims. If in a motion to dismiss for failure to state a claim, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Fed.R.Civ.P. 12(b). In the present case, Standard offers in support its motion to dismiss numerous "matters outside the pleading." (See D.I. 415 at Attachments 1-30). Accordingly, the motion to dismiss will be treated as a motion for summary judgment under Rule 56.

Summary judgment is mandated when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

B. Discussion

1. The Mantas Inc. Counterclaims

*2 In its answer to Standard's third amended complaint, Mantas Inc. counterclaimed for breach of contract, fraud, waiver and estoppel, and unjust enrichment, seeking compensatory damages of $214,792.04 and punitive damages of $21,479,204.00. (D.I. 410). According to Standard, because 1) this court has opined that "Mantas Painting and Mantas, Inc. ... and Mantakounis 'in reality' are 'no different from each other[,]' " (D.I. 415 at 16), and 2) Mantakounis and Mantas Painting produced to Standard the invoices that form the basis of Mantas Inc.'s counterclaims on February 19, 1993 (D.I. 415 at 14), Mantakounis and Mantas Painting were obliged to present the counterclaims in their reply to Standard's first amended complaint, by which they were added as defendants. Because neither did so, Standard argues, the counterclaims are "omitted counterclaims," which may not now be pleaded without leave of court. (D.I. 415 at 16, citing Fed.R.Civ.P. 13(f)).[FN2] According to Standard, such leave should be denied in this instance because the omission was not the result of "oversight, inadvertence, or excusable neglect." (D.I. 415 at 16).

Standard's reliance on Fed.R.Civ.P. 13(f) is misplaced. It has long been the rule in this district that in answering an amended complaint the defendant is free to answer not simply the amendments, but the new complaint, as if answering an original complaint. *Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*, 50 F.R.D. 415, 419 (D.Del.1970) ("Rule 15(a) ... does not direct a response to the 'amendment,' as it might have, but to the 'amended pleading.' ") Nothing in the rules prevents the defendant from including counterclaims in its answer. ("A party securing leave to amend performs a noteworthy chronological feat. His amendment normally relates back to the date of the original pleading, Fed.R.Civ.P. 15(c), and the amended pleading is treated as if it had been filed on that date. Since the amending pleader receives the benefit of this nunc pro tunc treatment, he can hardly be heard to complain that claims filed against him are improper because they should have been asserted in response to his original pleading." *Id.*) Because Mantas Inc. thus properly counterclaimed in answer to Standard's third amended complaint, Fed.R.Civ.P. 13(f) is inapposite. The court does not find the counterclaims barred under Fed.R.Civ.P. 13(f).

Standard argues in the alternative that the counterclaims are "permissive" under Fed.R.Civ.P. 13(b) and that the court can and should dismiss them without prejudice. (D.I. 415 at 18-19) (citing 6 Wright & Miller, *Federal Practice & Procedure:* Civil 2d § 1420 at 160 & n. 18 (2d ed. 1990)).[FN3]

As explained in 6 Wright, Miller & Kane, *Federal Practice & Procedure:* Civil 2d § 1409 (2d Edition

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 562285 (D.Del.), RICO Bus.Disp.Guide 8944
(Cite as: Not Reported in F.Supp.)

Page 3

1990), "[t]he division of counterclaims into those that are compulsory and those that are permissive represents an accommodation between two competing policies-the desire to adjudicate all the disputes between the parties in one action and the need to prevent lawsuits from becoming unduly complicated." *Id.* at 48. Permissive counterclaims are claims "not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(b). A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed.R.Civ.P. 13(a).

*3 As this court noted in *Metallgesellschaft AG v. Foster Wheeler Energy Corporation,* 143 F.R.D. 553, 558 (D.Del.1992), the United States Court of Appeals for the Third Circuit has embraced a fairly liberal interpretation of the "transaction or occurrence" standard, establishing as "the operative question in determining if a claim is a compulsory counterclaim ... whether [the counterclaim] bears a logical relationship to an opposing party's claim." *Xerox Corp. v. SCM Corp.,* 576 F.2d 1057, 1059 (3d Cir.1978), citing *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 634 (3d Cir.1961). In determining whether a "logical relationship" exists between an opposing party's claim and a counterclaim, the court will analyze several factors: (1) Are the issues in fact and law raised by the claim and counterclaim largely the same?; (2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?; and (3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim? 6 Wright, Miller & Kane, Federal Practice & Procedure: Civil 2 § 1409 (2d Edition 1990), at 52-4.

Standard's third amended complaint alleges that Mantas Inc. "was incorporated on or about July 12, 1989[,]" that Mantas Inc. and Mantas Painting, its unincorporated predecessor, "provided various painting services to Standard between 1975 and 1990," (D.I. 379 at 34), and that Standard "rent[ed] from Mantas Painting [and Mantas Inc.] inappropriate equipment for various tasks...." (*Id.* at 35). Standard further alleges that a review of records covering the year 1990 "revealed that of $832,740 in labor charges Standard paid to Mantas [Inc.] in 1990, Mantas [Inc.] could only account for $230,000 in payroll costs, resulting in a gross profit to Mantas [Inc.] (and unnecessary loss to Standard) of more than $600,000 in 1990 alone." (*Id.*) [FN4] In addition, Standard alleges that between 1984 and 1990, Mantakounis, Mantas Painting and Mantas Inc. "made substantial annual payments, in different but equal amounts, to [the Sinibaldis]," (*Id.*), that Mantas Inc. "issued tax documents showing equal payments to M[ichael] S[inibaldi] and, upon information and belief, to A[nthony] S[inibaldi]'s son in 1990," and that, "[u]pon information and belief, such payments were also made in other years." (*Id.*)

The counterclaims at issue all arise from Standard's alleged failure to pay certain invoices presented by Mantas Inc. for work performed in 1990 and 1991. Evidently, Standard has not contested the fact that it did not pay these bills. Because Standard has only sued for recovery of funds it paid, there is likely no strict overlap between the jobs at issue in Standard's claim and those at issue in Mantas Inc.'s counterclaim. Nevertheless, it is clear that all of these jobs were performed during the same time period and as part of the same contractual relationship.

*4 Based on the above, even if the counterclaims are not technically compulsory, the court will allow them to be filed as permissive counterclaims.

2. Dover's Counterclaim

Prior to the commencement of this action, Dover filed for bankruptcy under Chapter 7 of the Bankruptcy Code. Standard argues that Dover lost its standing to pursue its counterclaim upon the appointment of Dover's Chapter 7 trustee because, once the trustee was appointed, only the trustee was authorized to bring the present claim. (D.I. 415 at 20). Moreover, Standard argues, the counterclaim is barred by the statute of limitations, in that it arises from Standard's alleged failure to pay invoices for services rendered between October 8, 1990 and January 16, 1991, and was not filed until September 27, 1994, well after the expiration of the applicable three

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 4
Not Reported in F.Supp., 1995 WL 562285 (D.Del.), RICO Bus.Disp.Guide 8944
**(Cite as: Not Reported in F.Supp.)**

years limitations period. (D.I. 415 at 20-21, citing 10 Del.C. § 8106).[FN5]

Dover contends that by telephone conversation on August 11, 1994, the trustee, Michael Joseph, authorized Dover to file the counterclaim when its answer to Standard's complaint became due. In his affidavit, Joseph states:

During a telephone conversation on August 11, 1994, I expressly authorized Mr. Balick and Ms. Iorii to file counterclaims on behalf of Dover's estate. At that time, counsel's fees and expenses were being fully paid by Dover's liability insurance carrier. It was clearly understood, however, that in the event Dover's liability insurance policy ever stopped paying their fees and expenses, their compensation from that point forward would have to be on a contingency fee basis so as not to adversely impact the estate, and that even under a contingent fee arrangement, no compensation could actually be paid unless and until the fee arrangement was approved by the Bankruptcy Court....

[I]t is my understanding and belief pursuant to 11 U.S.C. § 323 that while I ultimately need Court approval before I can pay or commit to pay any legal fees, I have full authority, without Court approval, to file or authorize the filing of claims on the estate's behalf. In this case, on August 11, 1994 I authorized Mr. Balick and Ms. Iorii to file counterclaims on Dover's behalf.... I ... authorized the filings of the counterclaims on August 11, 1994, and ... Mr. Balick and Ms. Iorii were acting as the estate's duly authorized representatives.

(D.I. 428 at Exhibit A, pp. 3-4) (emphasis added). An order lifting the automatic stay to allow Standard to proceed against Dover was signed by the bankruptcy judge on September 7, 1994. According to Dover, Dover's answer thereby became due on September 27, 1994, and on that day Dover filed its counterclaim. (D.I. 428 at 1-2)

According to Dover, the trustee's authorization renders meritless Standard's lack of standing argument. (D.I. 428 at 4). As for Standard's statue of limitations argument, Dover contends that the relevant limitations period was indeed extended by operation of Bankruptcy Code Section 108(a), which provides:

*5 If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of-

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

11 U.S.C. § 108(a) (emphasis added). Dover contends that, in the present case, under Delaware law, the limitations period would have expired at the earliest in October 1993, three years after the date of provision of the earliest of the invoiced services. Dover filed its Chapter 7 petition on December 2, 1992. Thus, Dover argues, the trustee had until December 2, 1994-two years after the order for relief-to bring the claim for the unpaid bills, and Dover brought the claim with the trustee's authorization well within this period. (D.I. 428 at 4-6).

Standard replies that the informal telephone authorization is insufficient to confer standing on Dover. In Standard's view, the claim was only Dover's to bring if it was abandoned by the trustee as property of the estate. Citing 11 U.S.C. § 554 and Bankruptcy Rule 6007, Standard argues that the claim could not be abandoned without notice to all creditors. Because the claim was not abandoned, Standard concludes, it remained the property of the estate, and only the trustee could bring it. (D.I. 433 at 7-12). The above-quoted telephone conversation was insufficient to authorize counsel to file the counterclaim on the estate's behalf, Standard argues, for the following reasons: (1) the representation by counsel of the debtor and the trustee poses clear conflict of interest problems [FN6]; (2) the record indicates that Dover, not the trustee, has always been the counterclaim plaintiff; (3) the trustee could not have retained counsel on a contingency fee basis without court approval [FN7]; and (4) the trustee could not appoint counsel his agents under 11 U.S.C. § 102(9) (which defines "U.S. Trustees" to include "their agents") because the benefit of that section is confined to United States Trustees. (D.I. 433 at 13, n. 6).

Standard is clearly correct that the trustee could not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 562285 (D.Del.), RICO Bus.Disp.Guide 8944
(Cite as: Not Reported in F.Supp.)

Page 5

abandon the claim against Standard without complying with the relevant requirements of the Bankruptcy Code, including notice to creditors. Thus, the counterclaim is only proper if it has been brought on behalf of the estate. The pleading in which the counterclaim appears represents that it is the response of "Dover Steel Company, Inc." to the third amended complaint. (D.I. 377 at 2). The counterclaim itself is headed "Counterclaim of Dover Steel Company, Inc. against Standard Chlorine of Delaware, Inc." (*Id.* at 39). Counsel signed the pleading as "Attorneys for Defendant Dover Steel Company, Inc." (*Id.* at 40). Nowhere in the pleading is there any suggestion that the counterclaim was filed on behalf of the estate. Moreover, even if the pleading were filed on behalf of the estate, it is not clear that the telephone authorization was sufficient to vest authority in counsel to act on the estate's behalf. 11 U.S.C. § 327 provides that "the trustee, with the court's approval, may employ one or more attorneys ... to represent or assist the trustee in carrying out the trustee's duties...." 11 U.S.C. § 327(a). Pursuant to 11 U.S.C. § 327(e), "[t]he trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." Dover does not address the problem posed by § 327, but the trustee, in his affidavit, implicitly argues that court approval is necessary only to an application for compensation, not to standing to sue. Support for his position is found in *In re Bob Grissett Golf Shoppes, Inc.,* 58 B.R. 996 (E.D.Va.1986), in which the district court, faced with a similar standing challenge, stated:

*6 In order to receive compensation for their services, professionals must meet the qualifications of § 327, which includes Bankruptcy Court approval. However, it is possible that the trustee could retain a professional, that the professional expend time and labor for the benefit of the trustee prior to Bankruptcy Court approval of his employment, yet still receive compensation for the prior employment upon an order nunc pro tunc. [citation omitted]....

[E]quitable principles may enter into bankruptcy code adjudication.

In the present case I do not believe dismissal of the action was appropriate. Although [counsel] could be barred from compensation or ethically restrained from representation and required to withdraw as counsel, § 327 qualification should have no bearing upon the pendency of the trustee's action. Attorneys sometimes file suit on behalf of a client and subsequently discover a conflict mandating withdrawal; however, the client-party may substitute counsel or represent himself in certain cases.

The principles of equity require that such a conflict should not determine the validity of a claim. All claims should be decided on their merits and not on the issue of whether their counsel had a conflict of interest in the case.

*Id.* at 999.

Applying the principles of equity to the case at bar, FN8 the court finds first that the counterclaim has been brought on behalf of the estate. Counsel's failure clearly to identify the counterclaim as being brought on behalf of the estate appears to have resulted primarily from the counterclaim's inclusion within an answer filed by Dover subsequent to a lifting of a stay.

In addition, the court finds that the counterclaim is not barred by the trustee's failure to secure bankruptcy court approval under § 327. While arguably such approval should have been secured prior to the assertion of the counterclaim, and indeed must be secured prior to the awarding of compensation, the court will not dismiss the counterclaim for this failure.

Finally, the court finds that because the counterclaim was brought on behalf of the estate, the limitations period was extended by operation of § 108.

For these reasons, based on the record before it, the court will deny Standard's motion to dismiss Dover's counterclaim.

### III. Standard's, the Sinibaldis' and Mantakounis's and Mantas's Letter Memoranda

On February 7, 1995, the court ordered the parties to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1995 WL 562285 (D.Del.), RICO Bus.Disp.Guide 8944  
(Cite as: Not Reported in F.Supp.)

Page 6

submit letter memoranda addressing the impact of the Third Circuit's decision in *Jaguar Cars, Inc. v. Royal Oaks Motor Car Company, Inc.*, 46 F.3d 258 (3d Cir.1995), upon the court's December 8, 1994 decision dismissing Standard's count VI. (D.I. 425). In its December 8, 1994 decision, the court addressed the question whether under 18 U.S.C. § 1962(c) Mantakounis, as officer and sole shareholder of Mantas Painting Company, Inc. ("Mantas Inc.") and sole proprietor of Mantas Painting Company ("Mantas Painting"), can be the "person" who was conducting a pattern of racketeering activity through the corporation/sole proprietorship as an "enterprise." (D.I. 399 at 10). In deciding this question in the negative, the court reasoned as follows:

*7 As the Third Circuit explained in *Petro-Tech*, 824 F.2d at 1359, "section 1962(c) was intended to govern only those instances in which an 'innocent' or 'passive' corporation is victimized by the RICO 'person,' and either drained of its own money or used as a passive tool to extract money from third parties." In the present case, Standard has identified both Mantas [Painting] and Mantas Inc. as co-defendants with Mantakounis in every count of the complaint except count VI. In counts II-V, Mantakounis, Mantas [Painting] and Mantas Inc. are alleged "jointly and severally" to have aided and abetted violations of § 1962(c) by Dover, Comma, Lorraine, AS and MS. (D.I. 379 at ¶¶ 170, 182, 194 and 206). In count VII, Mantakounis, Mantas [Painting] and Mantas Inc., "and each of them," are alleged to have "unlawfully, willfully and knowingly conspired" with the other defendants to violate § 1962(c), in violation of 18 U.S.C. § 1962(d). (D.I. 379 at ¶ 221). In its factual averments, Standard charges Mantas [Painting] and Mantas Inc. with, *inter alia*, overcharging Standard, renting it inappropriate equipment, and paying kickbacks to the Sinibaldis. (D.I. 379 at ¶¶ 147-152).

On the summary judgment record before it, including in particular Standard's own representations, the court cannot find that Mantakounis is a "person" separate and distinct from a "victimized," "innocent" and "passive" enterprise comprised of Mantas [Painting] and Mantas Inc.

(*Id.* at 10-11).

*Jaguar* was a RICO action in which plaintiff, Jaguar Cars ("Jaguar"), alleged that defendant Theodore Forhecz, Sr., and his two sons, Theodore Forhecz, Jr. and Mark Forhecz, had perpetrated a scheme systematically to submit fraudulent warranty claims to Jaguar through their jointly owned Jaguar dealership, Royal Oaks Motor Car Company, Inc. ("Royal Oaks") in violation of 18 U.S.C. §§ 1962(c) and (d). A jury awarded Jaguar damages of $1.1 million against Theodore Forhecz, Sr. and $900,000 against Mark Forhecz. On appeal, Theodore Forhecz, Sr. contended, *inter alia*, that Jaguar's RICO claims were legally insufficient because Jaguar failed to establish sufficient distinctiveness between the defendant "persons," allegedly liable for the RICO violations, and the "enterprise" through which those persons acted. The Third Circuit disagreed, reasoning as follows.

Section 1962(c) of Title 18 provides in relevant part:  
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

Title 18 defines "person" to include "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). "Enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). *Jaguar*, 46 F.3d at 262. In *Hirsch v. Enright Refining Co.*, 751 F.2d 628, 633 (3d Cir.1984), the court held that a § 1962(c) claim could not be brought against a defendant corporation where the corporation was alleged to be both the "person" and the "enterprise." The court articulated two grounds in support of this holding: (1) the language of the statute contemplates that the "person" must be associated with a separate "enterprise" before there can be RICO liability on the part of the "person;" and (2) Congress intended to limit RICO's application to preventing the infiltration of legitimate organizations by criminal and corrupt organizations. *Jaguar*, 46 F.3d at 262.

*8 In *Sedima v. Imrex Co.*, 473 U.S. 479 (1985),

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1995 WL 562285 (D.Del.), RICO Bus.Disp.Guide 8944
(Cite as: Not Reported in F.Supp.)

however, the Supreme Court, finding that "Congress wanted to reach both legitimate and illegitimate enterprises[,]" "foreclosed *Enright* 's second rationale." *Jaguar,* 46 F.3d at 7.[FN9] Nevertheless, in *Petro-Tech, Inc. v. Western Co.,* 824 F.2d 1349, 1359 (3d Cir.1987), "relying on the infiltrating racketeer legislative history cited in *Enright,* [the Third Circuit] held that '§ 1962(c) was intended to govern only those instances in which an "innocent" or "passive" corporation is victimized by the RICO "persons," and either drained of its own money or used as a passive tool to extract money from third parties.' " *Jaguar,* 46 F.3d at 262-63. Subsequently, in *Glessner v. Kenny,* 952 F.2d 702, 710-14 (3d Cir.1991), the Third Circuit (1) "considered whether 'the individual defendants who were officers and employees of the corporation[ ] can be the "persons" who were conducting a pattern of racketeering through the corporation [ ] as an enterprise[;]' " (2) "acknowledged that in certain instances officers and employees could constitute persons conducting a pattern of racketeering activity through a corporate enterprise[;]" but (3) again "dismissed the action on the authority of the *Petro-Tech* limitation...." *Jaguar,* 46 F.3d at 263-64. In view of the above, the Third Circuit in *Jaguar* concluded that its "current interpretation of § 1962(c) improperly limits its application to those circumstances where infiltrating racketeers have successfully positioned themselves as employees and/or officers within an otherwise legitimate corporate enterprise." 46 F.3d at 265.

In *Reves v. Ernst & Young,* 113 S.Ct. 1163 (1993), the Supreme Court held that "liability under § 1962(c) is limited to those who 'participate in the operation or management of the enterprise itself.' " *Jaguar,* 46 F.3d at 265-66. Likewise, in *National Organization for Women v. Scheidler,* 114 S.Ct. 798 (1994), the Court stated: "[T]he 'enterprise' in subsection (c) connotes generally the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity." *Jaguar,* 46 F.3d at 266, quoting *Scheidler,* 114 S.Ct. at 804. Both *Reves* and *Scheidler* directly conflict with the Third Circuit's holding that § 1962(c) liability requires that the corporate enterprise be (1) a victim or (2) a passive tool used to extract money from third parties (as opposed to the enterprise through which the fraudulent scheme was perpetrated). *Jaguar,* 46 F.3d at 266. *Reves* and *Scheidler* hold that the "enterprise" in (c) "is properly viewed as the 'vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity.' " *Jaguar* at 15 (citations omitted). Consequently, "a victim corporation 'drained of its own money' by pilfering officers and employees could not reasonably be viewed as the enterprise through which employee persons carried out their racketeering activity. Rather, in such an instance, the proper enterprise would be the association of employees who are victimizing the corporation, while the victim corporation would not be the enterprise, but instead the § 1962 claimant." *Jaguar,* 46 F.3d at 267.[FN10]

*9 In sum,

the essential holding of *Enright* remains undisturbed-a claim simply against one corporation as both "person" and "enterprise" is not sufficient. Instead, a viable § 1962(c) action requires a claim against defendant "persons" acting through a distinct "enterprise." ... [A]lleging conduct by officers or employees who operate or manage a corporate enterprise satisfies this requirement. A corporation is an entity legally distinct from its officers or employees, which satisfies the "enterprise" definition of 18 U.S.C. § 1961(4).

*Jaguar,* 46 F.3d at 268.[FN11] This interpretation is supported by the Seventh Circuit's decision in *United States v. Robinson,* 8 F.3d 398 (7th Cir.1993), which relied on that court's earlier decision in *McCullough v. Suter,* 757 F.2d 142, 144 (7th Cir.1985). The *Suter* decision addressed the case of a sole proprietorship, concluding that "the only important thing" in determining whether person and enterprise were distinct "is that [the enterprise] be either formally (as when there is incorporation) or practically (as when there are other people besides the proprietor working in the organization) separable from the individual." *Jaguar,* 46 F.3d at 268-69, quoting *Suter,* 757 F.2d at 144. Thus, "when officers and/or employees operate and manage a legitimate corporation, and use it to conduct, through interstate commerce, a pattern of racketeering activity, those defendant persons are properly liable under § 1962(c)." *Jaguar,* 46 F.3d at 269.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 8
Not Reported in F.Supp., 1995 WL 562285 (D.Del.), RICO Bus.Disp.Guide 8944
(Cite as: Not Reported in F.Supp.)

Mantakounis and Mantas argue that the *Jaguar* decision should not affect the court's holding dismissing count VI. According to Mantakounis and Mantas, the *Jaguar* decision not only left standing the distinctiveness requirement, but left undisturbed the Third Circuit's decision in *Brittingham v. Mobil Corp.*, 943 F.2d 297, 303 (3d Cir.1991), in which the court held the requirement not met "when the enterprise and defendant, although facially distinct, are in reality no different from each other." (D.I. 432 at 2). According to Mantakounis and Mantas, Standard has repeatedly insisted that the Mantas defendants are not separate and distinct. (See, e.g., D.I. 415 at 16).

Standard rejects the notion that it has repeatedly contended that the Mantas defendants are not distinct and urges that under the *Suter* test, both Mantas Painting and Mantas Inc. qualify as distinct enterprises. (D.I. 434 at 3-4).

The court concludes that *Jaguar* requires reversal of its order of December 8, 1994 dismissing Standard's count VI. While on the record the relationship between the three Mantas defendants at times invites theological comparison, it is clear that in its incarnation as sole proprietorship (Mantas Painting) and corporation (Mantas Inc.), Mantakounis's painting business was an entity employing persons other than Mantakounis and, therefore, under the reasoning in *Suter*, distinct for purposes of § 1962(c). Therefore, the court will reverse its order dismissing count VI of the third amended complaint.

IV. Conclusion

*10 For the above reasons, the court will deny Standard's motion to dismiss Mantas Inc.'s and Dover's counterclaims, and will reverse its order of December 8, 1994 dismissing Standard's count VI. In addition, the court will grant Standard 10 days to respond to the Sinibaldis' motion for partial summary judgment on count V of the third amended complaint. In view of the current stage of the proceedings, the court will entertain requests from the parties for additional discovery time. An order consistent with this memorandum opinion shall issue.

FN1. The court will refer to Mantakounis, Mantas and Mantas Inc. collectively as the "Mantas defendants."

FN2. Fed.R.Civ.P. 13(f) provides: "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment."

FN3. Standard argues that sufficient grounds for dismissal are: (1) if the counterclaims are allowed, the trial will be delayed; and (2) if the counterclaims are allowed and the trial is not delayed, Standard will be unfairly prejudiced. (D.I. 415 at 19).

FN4. The complaint refers to Mantas Painting and Mantas Inc. collectively as "Mantas Painting." Because Mantas Inc. is alleged to be Mantas Painting's corporate successor, the court assumes for purposes of this motion that allegations relating to events occurring after Mantas Inc.'s date of incorporation are intended to be directed against Mantas Inc.

FN5. Standard also argues that Dover's bankruptcy did not extend the time during which Dover might bring the claim, and that the fact that the bankruptcy effected no extension did not prejudice Dover, because Dover might at any time within the limitations period have sought from the bankruptcy court an order (1) compelling the trustee to bring the claim or abandon the claim as an asset of the estate; or (2) authorizing Dover to bring the claim on its own behalf. (D.I. 415 at 20-21).

FN6. This contention would be relevant to the bankruptcy court's 11 U.S.C. § 327 determination whether to approve the retention of specific counsel to act for the trustee. See discussion below.

FN7. Standard cites 11 U.S.C. § 328(a) ("Limitation on compensation of professional persons"), which provides that "[t]he

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 562285 (D.Del.), RICO Bus.Disp.Guide 8944
(Cite as: Not Reported in F.Supp.)

Page 9

trustee ..., with the court's approval, may employ or authorize the employment of a professional person under section 327 or section 1103 of this title ... on any reasonable terms ..., including ... on a contingency fee basis."

FN8. In particular, the court notes that were the motion to dismiss granted, Dover's claim would now indeed, even with the benefit of § 108, be barred by the statute of limitations.

FN9. Enright's first rationale, however-"*Enright*'s basic holding that 'the "person" subject to liability cannot be the same entity as the "enterprise," ' *Enright,* 751 F.2d at 633 [-] plainly survived *Sedima.*" *Jaguar,* 46 F.3d at 7.

FN10. In reliance on this language, the Sinibaldis argue that count V of the third amended complaint is no longer viable. count V alleges that Standard is the "enterprise" and that the "persons" who utilized that enterprise for racketeering were the Sinibaldis. The Sinibaldis request that their letter memorandum be treated as a new motion for partial summary judgment and supporting opening brief, or that the court grant them leave to file a more formal motion and supporting papers. (D.I. 435). The court will grant their first request and direct Standard to respond.

FN11. According to the court in *Jaguar,* § 1962(c) liability based on the corporate enterprise being used as a passive tool to extract money from third parties remains "a proper, but very limited, application of § 1962(c) under *Reves.*" Outside persons might on occasion be liable under § 1962(c), but implicit in the *Reves* decision was "the recognition that 'inside' managers are the 'persons' § 1962(c) was designed to reach." 46 F.3d at 267.

D.Del.,1995.
Standard Chlorine of Delaware, Inc. v. Sinibaldi
Not Reported in F.Supp., 1995 WL 562285 (D.Del.),

RICO Bus.Disp.Guide 8944

Briefs and Other Related Documents (Back to top)

• 1:91CV00188 (Docket) (Mar. 31, 1991)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.