## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and
NOKIA, INC.,

      Plaintiffs,

      v.

INTERDIGITAL COMMUNICATIONS
CORPORATION and INTERDIGITAL
TECHNOLOGY CORPORATION,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

C. A. No. 05-16-JJF

**JURY TRIAL DEMANDED**

**PUBLIC VERSION**

## OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL
## RULES OF CIVIL PROCEDURE 12(B)(1), 12(B)(6), AND 12(H)(3)

POTTER ANDERSON & CORROON LLP
Richard L. Horwitz  (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

D. Dudley Oldham
Linda L. Addison
Richard S. Zembek
Fulbright & Jaworski L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel:  (713) 651-5151

*Attorneys for Defendants,*
*InterDigital Communications Corporation and*
*InterDigital Technology Corporation*

Dan D. Davison
Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Tel:  (214) 855-8000

Dated:  February 21, 2007
Public Version Dated:  March 1, 2007
780499 / 28840

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS.................................................................................I

TABLE OF AUTHORITIES ........................................................................III

SUMMARY OF ARGUMENT ......................................................................5

NATURE AND STAGE OF PROCEEDING ..................................................5

STATEMENT OF FACTS .............................................................................5

    I.    ETSI IPR Policies and Procedures...........................................5

    II.   The Nokia Goodman & Myers Report and PA Consulting
        Report....................................................................................5

ARGUMENT...............................................................................................5

    I.    Standards for Dismissal Under Federal Rules of Civil
        Procedure 12(b)(1), 12(h)(3), and 12(b)(6)................................5

    II.   The Court Should Dismiss Nokia's Request for Declaratory
        Relief Under Federal Rules of Civil Procedure 12(b)(1) and
        12(h)(3) on the Same Grounds It Dismissed Nokia's
        Original Request for Declaratory Relief .....................................5

        A.    Nokia's First Amended Complaint Improperly
               Attempts to Resurrect the Declaratory Judgment
               Action This Court Previously Dismissed........................5

        B.    Alternatively, This Court Should Exercise Its
               "Unique and Substantial" Discretion Not to Hear
               Nokia's Request for Declaratory Relief...........................5

    III.  Nokia's First Amended Complaint Should Be Dismissed
        Pursuant to Federal Rules of Civil Procedure 12(b)(1) and
        12(h)(3) to the Extent Nokia Seeks Relief Benefiting
        Entities That Are Not Parties to This Litigation .........................5

    IV.  Nokia's First Amended Complaint Should Be Dismissed
        Pursuant to Federal Rules of Civil Procedure 12(b)(1) and
        12(h)(3) to the Extent Nokia Seeks a Determination
        Whether InterDigital's Foreign Patent Claims Are Infringed....................5

i

V.    Nokia's Claims Should Be Dismissed Pursuant to Federal
Rule of Civil Procedure 12(b)(6) Because They Are
Premature and Do Not State a Claim Upon Which Relief
Can Be Granted..............................................................................................5

CONCLUSION.......................................................................................................................5

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amato v. Wilentz,*
    952 F.2d 742 (3d Cir. 1991)............................................................................21, 22

*Conley v. Gibson,*
    355 U.S. 41 (1957)...................................................................................................14

*Conte Bros. Automotive, Inc. v. Quaker State-Slick 50,*
    165 F.3d 221 (3d Cir. 1998)...................................................................................20

*Doug Grant, Inc. v. Greater Bay Casino Corp.,*
    232 F.3d 173 (3d Cir. 2000)...................................................................................14

*Elantech Devices Corp. v. Synaptics, Inc.,*
    2006 U.S. Dist. LEXIS 48756 (N.D. Cal. July 7, 2006)........................................26

*EMC Corp. v. Norand Corp.,*
    89 F.3d 807 (Fed. Cir. 1996)..................................................................................19

*Formula One Licensing, B.V. v. Purple Interactive Ltd.,*
    2001 U.S. Dist. LEXIS 2968 (N.D. Cal. Feb. 6, 2001) ........................................26

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.,*
    362 F.3d 1367 (Fed. Cir. 2004)........................................................................25, 26

*Golan v. Pingel Enter.,*
    310 F.3d 1360 (Fed. Cir. 2002)..............................................................................25

*Gould Elec. Inc. v. United States,*
    220 F.3d 169 (3d Cir. 2000)...................................................................................14

*ISCO Int'l, Inc. v. Conductus, Inc.,*
    279 F. Supp. 2d 489 (D. Del. 2003).......................................................................25

*Lum v. Bank of America,*
    361 F.3d 217 (3d Cir.), *cert. denied,* 125 S. Ct. 271 (2004) ..................................15

*MedImmune, Inc. v. Genentech, Inc.,*
    127 S. Ct. 764 (2007)........................................................................................17, 18

*Morse v. Lower Merion Sch. Dist.,*
    132 F.3d 902 (3d Cir. 1997)...................................................................................14

*In re NAHC, Inc. Sec. Litig.,*
    306 F.3d 1314 (3d Cir. 2002)....................................................................15

*Plasmart, Inc. v. Wincell Int'l, Inc.,*
    442 F. Supp. 2d 53 (S.D.N.Y. 2006)........................................................25

*Powers v. Ohio,*
    111 S. Ct. 1364 (1991).............................................................................22

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.,*
    311 F.3d 198 (3d Cir. 2002).....................................................................15

*Shell Oil Co. v. Amoco Corp.,*
    970 F.2d 885 (Fed. Cir. 1992)..................................................................18

*Singleton v. Wulff,*
    428 U.S. 106 (1976).................................................................................20

*The Pitt News v. Fisher,*
    215 F.3d 354 (3d Cir. 2000)...............................................................20, 21

*Turicentro, S.A. v. American Airlines Inc.,*
    303 F.3d 293 (3d Cir. 2002).....................................................................14

*U.S. Express Lines, Ltd. v. Higgins,*
    281 F.3d 383 (3d Cir. 2002)...............................................................14, 15

*Visto Corp. v. Sproqit Techs., Inc.,*
    360 F. Supp. 2d 1064 (N.D. Cal. 2005) ..................................................26

*Voda v. Cordis Corp.,*
    2007 U.S. App. LEXIS 2134 (Fed. Cir. Feb. 1, 2007) ...........................23

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995).................................................................................18

*Zenith Elecs. Corp. v. Exzec, Inc.,*
    182 F.3d 1340 (Fed. Cir. 1999)................................................................25

## STATUTES AND RULES

15 U.S.C. § 1117(a) .........................................................................................27

28 U.S.C. § 1919.............................................................................................27

28 U.S.C. § 2201 ................................................................................................8, 18

35 U.S.C. § 285 ......................................................................................................27

D. DEL. LR 54.1(a)(1) .............................................................................................27

FED. R. CIV. P. 10(c) ........................................................................................17, 24

FED. R. CIV. P. 12(b)(1) ................................................................................. *passim*

FED. R. CIV. P. 12(b)(6) ................................................................................. *passim*

FED. R. CIV. P. 12(h)(3) ................................................................................. *passim*

FED. R. CIV. P. 54(d) ..............................................................................................27

FED. R. EVID. 201(b) ..............................................................................................15

## SUMMARY OF ARGUMENT

On December 21, 2005, this Court dismissed Nokia's claims seeking a declaratory judgment that: (1) Nokia does not infringe certain claims of 18 InterDigital patents; and (2) certain claims of 6 of those 18 patents are invalid. This Court properly dismissed Nokia's declaratory judgment action because Nokia failed to establish the existence of an actual controversy that would support this Court's jurisdiction over such an action. The presumed effect of this Court's dismissal is that Nokia cannot file a declaratory judgment action against InterDigital seeking a declaration that the claims of those patents are invalid and noninfringed. Nokia, apparently, disagrees.

In its First Amended Complaint, Nokia expressly asks this Court to declare that 14 of the 18 InterDigital patents upon which Nokia's Original Complaint was based and at least an additional 113 InterDigital patents are noninfringed and nonessential. But, instead of pleading that claim as a declaratory judgment action as it did in its Original Complaint, Nokia has pled that claim as part of its Lanham Act and state law tort claims. Regardless of how those claims are packaged and labeled, this much is clear – Nokia is requesting precisely the same relief this Court has already held it lacks jurisdiction to grant. Therefore, this Court should (again) dismiss Nokia's claim for declaratory relief for lack of subject matter jurisdiction. Alternatively, if this Court determines that dismissal of Nokia's claim for declaratory relief is not mandatory, then InterDigital respectfully requests that this Court exercise its "unique and substantial" discretion not to hear such claim because it has been asserted for improper purposes.

This Court also lacks subject matter jurisdiction to hear all Counts of Nokia's First Amended Complaint because Nokia, in its prosecutorial zeal, has overreached by arguing that InterDigital has allegedly made misrepresentations regarding other

manufacturers' products infringement of InterDigital's patents. Nokia lacks standing under well-established precedent to assert claims on behalf of a third party. Furthermore, to the extent Nokia argues that InterDigital has allegedly made misrepresentations regarding the infringement and essentiality of InterDigital's foreign patents, the Federal Circuit recently held that United States federal courts lack jurisdiction to determine the infringement of foreign patents under 28 U.S.C. § 1367.

Finally, Nokia's claims should be dismissed in their entirety because they are premature. Nokia is improperly asking this Court to decide whether at least 127 of InterDigital's patents are infringed and essential in a case where the only claims that have been pled are a Lanham Act claim and state law tort claims. The usual (and most logical) procedure is for a court to decide those issues in the context of a patent infringement action and then – if and only if the court decides that the patents are noninfringed and nonessential – decide if the defendant's representations to the contrary constitute an actionable violation of the Lanham Act and/or state law. Nokia, in essence, is attempting to put the cart before the horse and, as noted above, back-door a declaratory judgment action that this Court has already determined it lacks jurisdiction to hear.

Consequently, InterDigital's motion to dismiss should be granted.

## NATURE AND STAGE OF PROCEEDING[1]

On January 12, 2005, Plaintiffs Nokia Corporation and Nokia Inc. (collectively, "Nokia") filed their Original Complaint against Defendants InterDigital Communications Corporation and InterDigital Technology Corporation (collectively, "InterDigital") asserting: (1) a declaratory judgment action that 18 of InterDigital's patents were invalid and/or noninfringed; and (2) a claim under Section 43(a) of the Lanham Act based on InterDigital's alleged statements concerning the scope and validity of those patents. D.I. 1. InterDigital moved to dismiss Nokia's claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3). D.I. 10-11. On December 21, 2005, this Court granted in part and denied in part InterDigital's motion. D.I. 25-26. Specifically, this Court dismissed Nokia's declaratory judgment action under Rule 12(b)(1) and 12(h)(3) because Nokia "did not have a reasonable apprehension of litigation at the time the Complaint was filed." D.I. 25, p. 10. Thus, there was "no actual controversy to support the Court's jurisdiction" over that action. *Id.* The Court denied InterDigital's motion to dismiss Nokia's Lanham Act claim under Rule 12(b)(6). *Id.* at 11-13.

On June 12, 2006 – prior to Nokia's filing of its motion for leave to file an amended complaint – the Special Master ordered Nokia, *inter alia*, to identify all public

---

[1]    On November 16, 2006, after exhausting contractually-required attempts to resolve its dispute with Nokia regarding the use of certain confidential licensing presentations, InterDigital initiated an arbitration proceeding with the International Chamber of Commerce to resolve Nokia's intended use of those presentations. On November 17, 2006, InterDigital filed in this Court a motion to compel arbitration and stay litigation pending completion of arbitration. D.I. 75. InterDigital's motion to compel arbitration is currently pending, and InterDigital files this brief and motion to dismiss expressly subject to and without waiving that motion. The arguments set forth in InterDigital's motion to dismiss and this brief are distinct from any issue to be decided by the I.C.C. arbitration panel and, therefore, as a matter of case management should be considered even while and after the Court decides InterDigital's motion to compel/stay.

statements by InterDigital upon which Nokia based its allegation that "InterDigital has repeatedly made public statements that its patent portfolio covers the practice of 3G wireless phone systems and the sale of 3G compliant products." D.I. 55, p. 3. In response to that order, Nokia identified statements that fall into four basic categories:

(1)    InterDigital's statements in filings with the Securities and Exchange Commission ("the SEC Statements");

(2)    InterDigital's statements on its website and through various news outlets ("the Press Statements");

(3)    InterDigital's statements to the European Telecommunications Standardization Institute ("ETSI") ("the ETSI Statements"); and

(4)    InterDigital's statements to Nokia during confidential licensing discussions ("the Confidential Licensing Statements").

Exhibit "A," pp. 1-5.[2] Thus, Nokia's Lanham Act claim and the related state law claims are limited to the above statements identified in response to the Special Master's order.

During a November 2, 2006 hearing with the Special Master, Nokia – in alleged support of its Lanham Act claim – stated its intent to conduct discovery on *195* InterDigital patents listed in InterDigital's ETSI Information Statements and Licensing Declarations ("the ETSI Disclosure"). Exhibit "B," pp. 32:10-33:21. InterDigital argued that such discovery was improper because the ETSI Disclosure contained mere statements of opinion that are not actionable under the Lanham Act. *Id.* at 34:7-17. The Special Master reasonably stated that "it may be prudent to brief the issue to see whether the claim, in fact, is defective or not as alleged in InterDigital's papers." *Id.* at 36:6-8.[3]

---

[2]    The exhibits cited in this brief are attached to the Declaration of Richard S. Zembek, filed contemporaneously herewith.

[3]    At the time InterDigital filed its motion to dismiss Nokia's original complaint, it did not know the specific factual bases of Nokia's Lanham Act claim as currently pled in Nokia's first amended complaint. If Nokia had originally pled that claim with more

On December 1, 2006, in response to the Special Master's suggestion that briefing would be helpful to determine whether the InterDigital's ETSI Disclosure contained actionable representations, InterDigital filed its Motion for Leave to File Motion for Summary Judgment, seeking dismissal of Nokia's Lanham Act claim based, in part, on the fact that InterDigital's statements of opinion are not actionable. D.I. 86.

On November 14, 2006, the Special Master issued a second discovery order directing Nokia to further clarify the specific bases of its Lanham Act claim. D.I. 71. Specifically, the Special Master ordered that: (1) Nokia "must identify on a patent by patent basis why InterDigital's ETSI declarations are false and made in bad faith;" (2) "if Nokia, in addition to the ETSI declarations, intends to rely on other statements made by InterDigital to support its Lanham Act claim, [Nokia] must make the same clear statement regarding alleged falsity that is required for InterDigital's ETSI declarations;" and (3) "[t]o the extent that Nokia's supplemental response does not cover all the information requested in InterDigital interrogatories 2 and 5, Nokia shall supplement its responses to those interrogatories on the same schedule." *Id.* at 5.[4]

---

particularity, InterDigital would have moved to dismiss Nokia's Lanham Act claim based on the arguments below in addition to the arguments urged in its first motion to dismiss.

[4]    InterDigital's Interrogatories Number 2 and 5 seek the following basic information regarding Nokia's Lanham Act Claim:

> 2.    Identify any and all evidence that InterDigital made the statements or assertions identified in Nokia's Answer to Interrogatory No. 1 in bad faith and/or with knowledge of their falsity, including all facts, documents, materials, and the person(s) with knowledge that support or refute that such statements were made in bad faith and with knowledge of their falsity. *See* Nokia's Complaint at Count XXI.

On December 14, 2006, Nokia responded to the Special Master's order by serving its Statement Pursuant to Second Discovery Order,[5] which purported to detail the alleged falsity and bad faith of InterDigital's statements regarding the 195 patents at issue and their applicability to the UMTS 3G standard. Exhibit "D." When finally forced by the Special Master to substantiate its sweeping allegations against InterDigital, Nokia's attempted defense of those allegations fell decidedly short of the mark. Specifically, Nokia's statement conspicuously failed to: (1) address on any substantive basis 65 of the 195 patents at issue; (2) address the alleged falsity of any InterDigital statements other than those contained in InterDigital's ETSI Disclosure; (3) supplement its interrogatory responses; and (4) provide any information regarding other 3G standards, such as the cdma2000 and TD-SCDMA standards. *Id.*; *see also* Exhibit "E."

On December 1, 2006, InterDigital moved for leave to file a motion for summary judgment on Nokia's remaining Lanham Act claim (also expressly subject to and without waiving its motion to compel arbitration). D.I. 86. InterDigital requested leave to file its motion for summary judgment based on this Court's revised Rule 16 Scheduling Order

---

5.  Identify all facts, documents, materials and the person(s) with knowledge related to, that support and/or that refute your contention that "InterDigital has used false or misleading descriptions or representations in connection with its patent portfolio, the WCDMA standard, the cdma2000 standard, Nokia's products, the applicability of InterDigital's patents to Nokia's products, and the applicability of InterDigital's patents to 3G standards within the meaning of 15 U.S.C. § 1125(a) (§ 43(a) of the Lanham Act)." *See* Nokia's Complaint at ¶ 142, p. 34.

Exhibit "C."

[5]    Nokia's First Amended Complaint incorporates by reference Nokia's Statement Pursuant to Second Discovery Order. D.I. 154, ¶ 36(b).

requiring such leave for case dispositive motions filed more than 10 days before August 15, 2007. D.I. 51, p. 3. InterDigital's motion for leave also is currently pending.

On December 30, 2006 – less than one month after InterDigital filed its motion for leave to file a motion for summary judgment – Nokia filed a motion for leave to file an amended complaint, which this Court granted on February 6, 2007. D.I. 108-110, 151. In its First Amended Complaint (D.I. 154), Nokia, *inter alia*:

> (1)    has vastly expanded the declaratory relief it seeks (detailed below);
>
> (2)    seeks injunctive relief barring InterDigital from "continued dissemination" of allegedly false and misleading statements and requiring InterDigital "to take all necessary steps to have its false and misleading statements withdrawn from ETSI's website"; and
>
> (3)    in addition to its Lanham Act claim, has asserted various state law claims based on the same allegations underlying its Lanham Act claim – namely, violations of the Delaware Deceptive Trade Practices Act, Common Law Unfair Competition (Delaware), Common Law Unfair Competition (Pennsylvania), Intentional Interference with Prospective Business Opportunities (Delaware), Intentional Interference with Prospective Business Relations (Pennsylvania), Intentional Interference with Prospective Business Relations (Texas), Injurious Falsehood (Delaware), Commercial Disparagement (Pennsylvania), Business Disparagement (Texas), Unjust Enrichment (Delaware), Unjust Enrichment (Pennsylvania), and Unjust Enrichment (Texas).

The scope of Nokia's request for declaratory relief bears special mention. Undeterred by this Court's prior dismissal of its original declaratory judgment action and – as its Statement Pursuant to Second Discovery Order demonstrates – its inability to substantiate a significant portion of its Lanham Act claim, Nokia now requests sweeping

declaratory relief regarding the infringement and essentiality of at least *127* InterDigital patents.[6] Specifically, Nokia requests that this Court enter judgment:

- "Declaring the extent to which any of the [127] patents set forth in Attachment A actually meet the definition of 'essential' under the ETSI IPR policy";

- "Declaring the extent to which any of the [127] patents in Attachment A are necessarily infringed by compliance of a product with a 3G standard actually commercially implemented anywhere in the world";

- "Declaring the extent to which any of the [127] patents in Attachment A have valid, enforceable claims which necessarily read on any product compliant with the [sic] any 3G standard, including but not necessarily limited to Nokia products made, used, sold, offered for sale or imported in the United States";

- "Declaring that no Nokia 3G compliant product infringes any valid, enforceable claim of any of the [127] patents in Attachment A (or any such other United States patent as InterDigital may refuse to concede is not infringed by Nokia)"; and

- "That InterDigital's statements concerning the scope and validity of its 3G patents are false or misleading."

*Id.*[7] Significantly, 14 of the 18 InterDigital patents for which Nokia sought declaratory relief in its Original Complaint (and for which declaratory relief already has been denied

---

[6]    Nokia's First Amended Complaint arguably challenges the infringement and essentiality of *195* InterDigital patents based on Nokia's contention that InterDigital's disclosure to ETSI of its belief that at least 110 InterDigital patents and 85 InterDigital patent applications are or may be essential. D.I. 154, ¶ 28 ("InterDigital has filed declarations claiming at least 195 patents were essential to the practice of the UMTS standard with the European Telecommunications Standards Institute ('ETSI')"); *id.* at ¶ 31 ("At the time InterDigital made these declarations, it knew that many, if not all of the IPRs it was declaring to ETSI did not meet this definition of 'essential'"); *id.* at ¶¶ 59-66. Nokia's "Prayer for Relief" however, merely requests declaratory relief as to the *127* InterDigital patents listed in Exhibit "A" to the complaint. *Id.* at 26 & Exh. A.

[7]    In its First Amended Complaint, Nokia does not specifically identify the statutory basis for its request for declaratory relief. For the purpose of this motion, InterDigital assumes said request is being asserted pursuant to 28 U.S.C. § 2201.

by this Court) are included among the 127 InterDigital patents for which Nokia seeks declaratory relief in its First Amended Complaint. D.I. 1, 154 (Attach. A).

InterDigital now files this motion to dismiss the claims in Nokia's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3).

## STATEMENT OF FACTS

Nokia's claims principally concern InterDigital's statements to ETSI regarding InterDigital's intellectual property rights ("IPR"), which InterDigital submitted on an ETSI form entitled "IPR Information Statement and Licensing Declaration" ("ETSI IPR Disclosure"). Thus, an understanding of ETSI's IPR policies and procedures is critical in determining whether Nokia's claims based on InterDigital's ETSI Statements – on their face – state a claim upon which relief can be granted. Specifically, Nokia's First Amended Complaint is premised on the erroneous assumption that InterDigital's ETSI Statements are statements of fact, but ETSI's policies and procedures make clear that InterDigital's ETSI Statements consist of mere statements of opinion and belief.

## I.    ETSI IPR Policies and Procedures

The Third Generation Partnership Project ("3GPP") is an association of telecommunications standard setting organizations. *See* www.3gpp.org/About/about.htm (Exhibit "F"). 3GPP promulgates the UMTS 3G Standard. *Id.* 3GPP includes ETSI as an organizational partner. *Id.* According to 3GPP's policies and procedures, participants in the 3GPP standard-setting process "should declare, to their Organizational Partners, any IPRs which they believe to be essential, or potentially essential, to any work ongoing within 3GPP." *See* www.3GPP.org/legal/legal.htm (Exhibit "G"). The 3GPP's IPR policy thus makes clear that participants' IPR declarations to their Organizational Partners (in this case, InterDigital's declarations to ETSI) merely include IPR that they

9

"*believe*" to be "essential, or *potentially* essential." *Id.* (emphasis added). The 3GPP also does not expressly define "essential" or "potentially essential," thus requiring participants to interpret what they believe to be "essential, or potentially essential" IPR. *Id.*

In addition to 3GPP's policies and procedures governing IPR, ETSI itself has adopted an Intellectual Property Rights Policy ("ETSI IPR Policy") and a Guide on Intellectual Property Rights ("ETSI IPR Guide"). The current ETSI IPR Policy and ETSI IPR Disclosure Form merely require ETSI Members to disclose IPR that they "*believe*" "*might be* essential." D.I. 154, Exh. B (Annex A, ¶ 4.1) ("In particular, a MEMBER submitting a technical proposal for a STANDARD or TECHNICAL SPECIFICATION shall, on a *bona fide* basis, draw the attention of ETSI to any of that MEMBER'S IPR which *might be* ESSENTIAL if that proposal is adopted") (emphasis added); *id.* at Exh. B (Annex B) (ETSI IPR Disclosure Form requiring signatory to state "it is my *belief* that the IPRs listed in Annex 2 are, *or are likely to become*, Essential IPRs in relation to that Standard"); *id.* ("The SIGNATORY has notified ETSI that it is the proprietor of the IPRs listed in Annex 2 and has informed ETSI that it *believes* that the IPRs *may* be considered ESSENTIAL to the Standards listed above") (emphasis added).[8] ███████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[8]    The current version of the ETSI IPR Policy defines IPR as follows:

"**IPR**" shall mean any intellectual property right conferred by statute law including applications therefore other than trademarks. For the avoidance of doubt rights relating to get-up, confidential information, trade secrets or the like are excluded from the definition of IPR.

*Id.* at Exh. B (Annex A, ¶ 15.7).

██████████████████████████████████████████████████

████████████████████████████████

In case there is any doubt on the issue, the ETSI IPR Guide further expressly states that ETSI IPR disclosures are mere statements of opinion:

> Members are obliged to disclose IPRs, which might be essential and ETSI is obliged to make these disclosures available to Members. ***This disclosure reflects, of course, only an opinion of the Member*** and some facts on the IPRs, but the Member is responsible for the content. ***Any further opinion*** should be added only with the agreement of the Member or to implement a General Assembly decision.

D.I. 154, Exh. B (¶ 3.2.2) (emphasis added).

Unlike 3GPP, ETSI defines "essential" IPR, defining that term as follows:

> **"ESSENTIAL"** as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair use or operate EQUIPMENT of METHODS which comply with a STANDARD without infringing that IPR.  For the avoidance of doubt in exceptional cases where a STANDARD can only be implemented by technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL.

*Id.* at Exh. B (Annex A, ¶ 15.6).

Prior to 2005, ███████████████████████████ ETSI did not provide any concrete guidelines on what information an IPR owner must provide in an ETSI IPR Disclosure.  Exhibit "I."  Absent such guidelines, different IPR owners completed such disclosures in different ways.  *Id.*  Similarly, prior to 2005, there was no ETSI requirement that an ETSI IPR Disclosure identify to which standard an owner's essential IPR related.  *Id.*  Although the ETSI IPR Disclosure form had a place for stating the standard number, some IPR owners disclosed this information, but most did not.  *Id.*

11

A review of the ETSI IPR Database, where members' IPR Disclosures are stored, reveals that many companies ETSI IPR Disclosures – including Nokia's own disclosures – fall short of the standard Nokia's First Amended Complaint claims to apply to such disclosures. For example, Nokia's have varied over time – sometimes providing and sometimes not providing reference to technical specifications. *See* Exhibit "J" (ETSI IPR Database results for Nokia Corporation's disclosed UMTS United States patents and applications). And Lucent has not disclosed a single patent in an ETSI IPR Disclosure; instead, it merely states that it is likely to have IPR essential to UMTS and that it is prepared to license same. *See* Exhibit "K" (ETSI IPR Database results for Lucent Technologies Inc.'s disclosed UMTS United States patents and applications).

## II.    The Nokia Goodman & Myers Report and PA Consulting Report

While Nokia's First Amended Complaint makes much ado over the large number of patents (127) InterDigital has identified as essential or potentially essential IPR in its ETSI IPR Disclosures, Nokia itself has declared that it holds hundreds of patents that are allegedly essential to 3G standards, including the UMTS Standard and the cdma2000 Standard. On Nokia's website, in public presentations to investors, ███████████ ███████████████████ and in ETSI IPR Disclosures, Nokia has represented and continues to represent that it holds in excess of *300* essential IPRs for the UMTS Standard and in excess of *100* Essential IPRs for the cdma2000 Standard. http://www.nokia.com/NOKIA_COM_1/Press/Press_Events/Nokia_Technology_Media_ Briefing/Ulla_James_03-10-2006.pdf (Exhibit "L").

To bolster its claim that it holds more Essential IPR for the UMTS Standard than any other company and to support its demands for royalties from various potential licensees, Nokia secretly funded an article authored by Drs. David J. Goodman and

Robert A. Myers that Nokia promotes as an independent scholarly article (the "Nokia Goodman & Myers Study"). *See* David J. Goodman & Robert A. Myers, 3G Cellular Standards and Patents, IEEE WirelessCom (June 13, 2005) (available at http://europe.nokia.com/link?cid=EDITORIAL_6212) (Exhibit "M"); Exhibit "N," p. 18. Even with Nokia's funding and control (and likely to Nokia's chagrin), the Nokia Goodman & Myers Study judged over 57% of Nokia's declared UMTS essential IPRs and over 68% of Nokia's declared cdma2000 essential IPRs to be *non-essential* IPR. Exhibit "M," pp. 4-5. The study further concluded that InterDigital holds patents that are essential to the FDD Mode of the UMTS Standard and judged over 36% of the patents disclosed by InterDigital that it reviewed to be *essential*. *Id.*

In addition to the Nokia Goodman & Myers Study, PA Consulting Group ████ ██████████████████████████████████████████████████ evaluated patents that different companies, including InterDigital, have disclosed to ETSI as essential or potentially essential IPR.  PA Consulting published the results of its evaluation in a report entitled "Essential Intellectual Property in 3GPP-FDD" ("the PA 3GPP                                                     Report"). http://www.paconsulting.com/services/tech_innovation/wireless/_entry_3gIPR.htm  (Exhibit "P").  While InterDigital did not fund or control the preparation of the PA 3GPP Report and disagrees with certain conclusions therein, ███████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████

## ARGUMENT

I.    **Standards for Dismissal Under Federal Rules of Civil Procedure 12(b)(1), 12(h)(3), and 12(b)(6)**

InterDigital files this motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3). Rule 12(b)(1) authorizes dismissal of a suit if the court lacks subject matter jurisdiction over the claims in question. FED. R. CIV. P. 12(b)(1) & 12(h)(3). Unlike challenges under Rule 12(b)(6), challenges to a district court's jurisdiction under Rule 12(b)(1) may be "facial" or "factual." *See, e.g.*, *Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 300 n.4 (3d Cir. 2002); *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Facial attacks contest the sufficiency of the pleadings while factual attacks contest the factual allegations in the pleadings. *Id.* When considering a factual attack, a district court "accords plaintiff's allegations no presumption of truth" and may consider evidence outside the pleadings, including "affidavits, documents, and even limited evidentiary hearings." *Id.* "[I]f there is a dispute of a material fact, the court must conduct a plenary trial on the contested facts prior to making a jurisdictional determination." *Gould Elec. Inc.*, 220 F.3d at 177.

Dismissal is proper under Rule 12(b)(6) if "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A district court must accept as true the allegations in the plaintiff's complaint and must construe reasonable inferences in the light most favorable to the plaintiff. *See, e.g.*, *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). A district court, however, need not accept "bald assertions," "unwarranted inferences," or "legal conclusions" in the complaint. *See, e.g.*, *Doug Grant, Inc. v. Greater Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d

14

902, 906 (3d Cir. 1997); *see also In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d

198, 216 (3d Cir. 2002) ("[L]egal conclusions draped in the guise of factual allegations

may not benefit from the presumption of truthfulness").

In deciding a motion to dismiss under Rule 12(b)(6), a district court may consider

"the allegations in the complaint, exhibits attached to the complaint, matters of public

record, and documents that form the basis of a claim." *See, e.g., Lum v. Bank of America*,

361 F.3d 217, 221 n.3 (3d Cir.), *cert. denied*, 125 S. Ct. 271 (2004). A document "forms

the basis of a claim if the document is 'integral to or explicitly relied upon in the

complaint.'" *Id.* Matters of public record include facts of which a district court may take

judicial notice under Federal Rule of Evidence 201(b). *See, e.g.*, FED. R. EVID. 201(b); *In*

*re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002). Thus, attachment of the

above categories of documents in support of a motion to dismiss does not convert it into a

motion for summary judgment. *See U.S. Express Lines, Ltd.*, 281 F.3d at 388.

**II.     The Court Should Dismiss Nokia's Request for Declaratory Relief Under**
**Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) on the Same Grounds**
**It Dismissed Nokia's Original Request for Declaratory Relief** [9]

**A.     Nokia's First Amended Complaint Improperly Attempts to Resurrect**
**the Declaratory Judgment Action This Court Previously Dismissed**

On December 21, 2005, this Court dismissed Nokia's original declaratory

judgment action that Nokia does not infringe 18 of InterDigital's patents and that 6 of

---

[9]     InterDigital files its Answer and Original Counterclaims contemporaneously with
and subject to and without waiving this Motion to Dismiss and subject to and without
waiving the relief requested in its Motion to Compel Arbitration and Stay Litigation
Pending Completion of Arbitration, Motion for Leave to File Motion for Summary
Judgment, and this Motion to Dismiss. InterDigital reserves the right to plead additional
counterclaims and request additional relief, if the Court denies the above motions.

those 18 InterDigital patents are invalid. D.I. 25-26. This Court properly dismissed that action on the ground that it lacked subject matter jurisdiction over such an action:

> In sum, the Court concludes that Plaintiffs did not have a reasonable apprehension of litigation at the time the Complaint was filed. Therefore, there is no actual controversy to support the Court's jurisdiction over the declaratory judgment claims under the Declaratory Judgment Act. Accordingly, the Court will dismiss Plaintiffs' declaratory judgment claims for lack of subject matter jurisdiction.

D.I. 25, p. 10; *id.* at 4-10.

Apparently unable to take "no" for an answer, Nokia's First Amended Complaint again seeks a declaration that 127 of InterDigital's patents are noninfringed and non-essential, including 14 of the 18 patents for which Nokia originally sought declaratory relief. *Compare* D.I. 1 (patents in Original Complaint) *with* D.I. 154, Exh. A (patents in First Amended Complaint). In the "Prayer for Relief" of its First Amended Complaint, Nokia expressly and specifically requests that this Court enter judgment:

- "Declaring the extent to which any of the [127] patents set forth in Attachment A actually meet the definition of 'essential' under the ETSI IPR policy";

- "Declaring the extent to which any of the [127] patents in Attachment A are necessarily infringed by compliance of a product with a 3G standard actually commercially implemented anywhere in the world";

- "Declaring the extent to which any of the [127] patents in Attachment A have valid, enforceable claims which necessarily read on any product compliant with the [sic] any 3G standard, including but not necessarily limited to Nokia products made, used, sold, offered for sale or imported in the United States";

- "Declaring that no Nokia 3G compliant product infringes any valid, enforceable claim of any of the [127] patents in Attachment A (or any such other United States patent as InterDigital may refuse to concede is not infringed by Nokia)"; and

- "That InterDigital's statements concerning the scope and validity of its 3G patents are false or misleading."

16

D.I. 154, p. 26. Thus, this Court should dismiss Nokia's claims for declaratory relief for the same reasons set forth in its 12/21/05 decision and in InterDigital's original motion to dismiss, which is incorporated by reference herein. FED. R. CIV. P. 10(c); D.I. 10-11.

InterDigital anticipates that Nokia will argue that the United States Supreme Court's recent decision in *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764 (2007) has called the Federal Circuit's declaratory judgment jurisprudence into question, including the principles cited in this Court's 12/21/05 decision dismissing Nokia's original declaratory judgment action. The Supreme Court, however, did not overrule the Federal Circuit's "reasonable apprehension of imminent suit" standard for declaratory relief under the Declaratory Judgment Act because the only issue before the Court was whether a patent licensee must "terminate or be in breach of its license agreement before it can seek a declaratory judgment that the underlying patent is invalid, unenforceable or not infringed." *Id.* at 767. Significantly, this Court – in addition to relying on Nokia's status as a licensee – also found that "under the totality of the circumstances, the facts alleged do not give rise to a reasonable apprehension of a lawsuit." D.I. 25, p. 7. Specifically, the Court found that InterDigital has not threatened much less filed a patent infringement action against Nokia. *Id.* at 7-9. And nothing in Nokia's First Amended Complaint indicates that this Court incorrectly held that Nokia does not have a reasonable apprehension of imminent suit. D.I. 154. Thus, there still is no actual controversy upon which this Court could base jurisdiction over Nokia's claims for declaratory relief.

**B.    Alternatively, This Court Should Exercise Its "Unique and Substantial" Discretion Not to Hear Nokia's Request for Declaratory Relief**

Even if this Court concludes that an actual controversy exists or that the Supreme Court has overruled the Federal Circuit's reasonable apprehension of imminent suit test,

this Court retains "unique and substantial discretion" to decline to hear Nokia's declaratory judgment action and should exercise that discretion here. *See, e.g.*, 28 U.S.C. § 2201(a); *MedImmune, Inc.*, 127 S. Ct. at 776 ("The Declaratory Judgment Act provides that a court 'may declare the rights and other legal relations of any interested party,' not that it must do so. This text has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'") (emphasis and citations omitted); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

This Court should exercise its "unique and substantial discretion" and decline to hear Nokia's putative declaratory judgment action because Nokia has brought such claim for improper purposes, and exercising jurisdiction over that claim would not serve the purposes of the Declaratory Judgment Act or principles of sound judicial administration. Specifically, Nokia filed its declaratory judgment action not to preempt an imminent suit by InterDigital, but to use as leverage in other disputes and licensing negotiations with InterDigital.  Furthermore, Nokia's amended claims – filed just one month after InterDigital filed its motion for summary judgment – were clearly brought based on their concern that the motion for summary judgment could dispense with their lawsuit in its entirety (and still can). InterDigital should not be forced to defend such a claim simply because Nokia is itching for a fight and the timing is good for Nokia. *See Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 889 (Fed. Cir. 1992) ("The Declaratory Judgment Act was intended to protect threatened parties, not to drag a non-threatening patentee into court"). Moreover, under "principles of sound judicial administration" this Court should decline to hear Nokia's requests for declaratory relief regarding 127 or more patents, including

the overwhelming task of construing the claims and determining infringement of all those

patents. *See EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813-15 (Fed. Cir. 1996).

**III.    Nokia's First Amended Complaint Should Be Dismissed Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) to the Extent Nokia Seeks Relief Benefiting Entities That Are Not Parties to This Litigation**

This is not a class action lawsuit. Yet, in its First Amended Complaint, Nokia

improperly seeks to litigate not only the rights of the Nokia entities but also the rights of

additional unspecified third parties. *See, e.g.,* D.I. 154, ¶¶ 34-37, 50-51, 61-62, 71-72 &

pp. 26-27. For example, in its First Amended Complaint, Nokia specifically complains

of InterDigital's alleged representations regarding parties besides Nokia. *See, e.g., id.* at

¶ 36(a) (complaining of InterDigital's alleged statement that "*[p]articipants in the*

*industry, including manufacturers and users of 3G compliant equipment*" have to pay

InterDigital money due to InterDigital's patent portfolio) (emphasis added); *id.* at ¶ 37

(complaining of InterDigital's alleged statement that "*the industry as a general matter*

owes it money, or should pay it money, for the practice of 3G standards") (emphasis

added); *see also* Exhibit "A" (Nokia's Statement Pursuant to First Discovery Order /

identifying other alleged InterDigital statements regarding third parties).

Nokia further requests sweeping relief that is not narrowly tailored to address

Nokia's alleged injuries only. Instead, Nokia has swung for the fences, requesting: (1) a

declaration of "the extent to which any of the patents in Attachment A are necessarily

infringed by compliance of *a product with a 3G standard actually commercially*

*implemented anywhere in the world*"; (2) a declaration of "the extent to which any of the

patents in Attachment A have valid, enforceable claims *which necessarily read on any*

*product compliant with any 3G standard*, including *but not necessarily limited to* Nokia

products made, used, sold, offered for sale or imported in the United States"; (3) a

judgment that "InterDigital's statements concerning the scope and validity of its 3G patents are false or misleading"; (4) an injunction barring InterDigital "from continued dissemination of these false and misleading statements"; (5) an injunction requiring InterDigital to "take all necessary steps to have these false and misleading statements withdrawn from ETSI's website"; and (6) an order requiring InterDigital to disgorge its alleged "unjust enrichment." D.I. 154, pp. 26-27 (emphasis added).

This Court should dismiss Nokia's overzealous and overreaching claims for relief on behalf of companies who are not parties to this suit because Nokia lacks standing to assert such claims under Rules 12(b)(1) and 12(h)(3).[10]  The United States Supreme Court has admonished courts to exercise care in asserting jurisdiction over claims seeking to vindicate the rights of third parties:

> Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation. The reasons are two. First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not. . . . Second, third parties themselves usually will be the best proponents of their own rights.  The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them.  The holders of the rights may have a like preference, to the extent they will be bound by the courts' decisions under the doctrine of stare decisis.

*Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976).  Consequently, "[t]he longstanding basic rule of third party standing is that 'in the ordinary course, a litigant must assert his or her

---

[10]    A plaintiff's ability to assert a third party's legal rights implicates its prudential (as opposed to its Article III) standing to bring a claim. *See, e.g., The Pitt News v. Fisher*, 215 F.3d 354, 361-62 (3d Cir. 2000); *Conte Bros. Auto, Inc. v. Quaker State-Slick 50*, 165 F.3d 221, 226 (3d Cir. 1998).

own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Amato v. Wilentz*, 952 F.2d 742, 748 (3d Cir. 1991).

Given the general rule against bringing *jus tertii* claims, federal courts have applied the following three-factor analysis in determining whether a party may bring a third-party claim: (1) the plaintiff must have suffered an actual injury; (2) the plaintiff must have a close enough relationship with the third party whose rights it is asserting (to ensure that the plaintiff has a "sufficiently concrete interest" in the outcome of the issue in dispute and that the plaintiff will be an effective advocate); and (3) there must exist some "hindrance" to the third party's ability to protect his or her own interests. *See, e.g.,* *The Pitt News*, 215 F.3d at 362; *see also Amato*, 952 F.2d at 749 (in determining plaintiff's standing to bring third-party claim, courts must consider: (1) relationship between plaintiff and third party; (2) ability of third party to advance its own rights; and (3) whether plaintiff and third party have consistent interests).

While not admitting that Nokia can satisfy the first factor of the above analysis, Nokia's claims clearly fail to satisfy at least the second factor because Nokia's interests do not necessarily coincide with all (or any) of the other companies whose rights it purports to be asserting. A number of those companies have executed license agreements with InterDigital and – unlike Nokia – may not wish to assert the legal challenges Nokia has made in this case (assuming, of course, they can even do so). Still other companies may not wish to assert such legal challenges because they believe Nokia's legal strategy is baseless or simply bad business (*e.g.*, they may wish to enforce their own patents which they believe to be essential). It also is far from clear that Nokia – a direct competitor of many of those companies – would be "fully, or very nearly, as effective a

proponent" of those companies' rights as the companies themselves, particularly when Nokia lacks the same degree of knowledge and incentives to defend those companies' products against InterDigital's purported allegations of infringement. *See Amato*, 952 F.2d at 751 ("The cases also search for a 'relationship between the litigant and the third party . . . such that the former is fully, or very nearly, as effective a proponent of the right as the latter") (*quoting Powers v. Ohio*, 111 S. Ct. 1364, 1372 (1991)).

Nokia's claims also clearly fail under the third factor because Nokia cannot legitimately argue or prove that the other companies whose products are allegedly impacted by InterDigital's representations – which include companies that are many orders of magnitude larger than InterDigital – are in any way "hindered" from protecting their legal interests by bringing suit against InterDigital on their own. Those companies certainly do not need Nokia to act as their own private attorney general.

## IV.    Nokia's First Amended Complaint Should Be Dismissed Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) to the Extent Nokia Seeks a Determination Whether InterDigital's Foreign Patent Claims Are Infringed

Nokia's claims also should be dismissed under Rules 12(b)(1) and 12(h)(3) to the extent they ask this Court to determine whether Nokia and other third parties infringe InterDigital's foreign patents because this Court lacks jurisdiction to resolve such claims. Specifically, InterDigital's patent portfolio contains foreign as well as United States patents. *See* Exhibit "Q" (InterDigital's 2004 ETSI IPR Disclosure). Therefore, to the extent Nokia's claims purport to be based on statements made by InterDigital regarding Nokia and other third parties' infringement of InterDigital's entire patent portfolio, Nokia improperly seeks judgment that InterDigital's foreign patents are noninfringed or nonessential. *See, e.g.*, D.I. 154, ¶ 35 ("That is, InterDigital does more than just claim that it has essential patents with respect to 3G technologies. InterDigital claims that *its*

22

*portfolio of patents* is sufficiently broad that all manufacturers of 3G products must pay InterDigital substantial fees for the privilege of making standards-compliant products"); *id.* at ¶ 36 (complaining of InterDigital's statements that "[p]articipants in the industry, including manufacturers and users of 3G compliant equipment, do not have to pay InterDigital any money, notwithstanding the IPRs claimed in *InterDigital's portfolio* . . ."); *id.* at ¶ 48 ("InterDigital has used false or misleading descriptions or representations in connection with *its patent portfolio* . . .") (emphasis added). Nokia also has requested judgment "[t]hat InterDigital's statements concerning the scope and validity of its 3G patents are false or misleading" – without limiting such relief to InterDigital's United States patents. *Id.* at 26.

The Federal Circuit recently held that a district court abused its discretion by exercising supplemental jurisdiction under 28 U.S.C. § 1367 over a claim asserting infringement of a foreign patent. *Voda v. Cordis Corp.*, 2007 U.S. App. LEXIS 2134, at *4 (Fed. Cir. Feb. 1, 2007) (Exhibit "R").[11] The Court enumerated several reasons why the district court abused its discretion in exercising such jurisdiction, including "limitations imposed by treaties that are the 'supreme law of the land' and considerations of comity, judicial economy, convenience, and fairness." *Id.* at *27-*51. All of those factors apply with equal force in this case to the extent Nokia's claims are based on

---

[11]    In its First Amended Complaint, Nokia states that "[t]his Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 based on federal question jurisdiction, *and has supplemental jurisdiction over all other claims based on 28 U.S.C. § 1367.*" D.I. 154, ¶ 9 (emphasis added). This Court's exercise of supplemental jurisdiction over Nokia's claims based on InterDigital's foreign patents, of course, is contingent on the existence of original jurisdiction over Nokia's claims based on InterDigital's U.S. Patents – a fact InterDigital does not concede for the reasons set forth above.    InterDigital's challenge to this Court's supplemental jurisdiction is expressly conditioned on this Court ruling that such original jurisdiction exists.

InterDigital's alleged representations regarding the infringement and essentiality of its foreign patents. Therefore, this Court should decline to exercise its discretion to exercise supplemental jurisdiction over any such claims under 28 U.S.C. § 1367.

## V. Nokia's Claims Should Be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6) Because They Are Premature and Do Not State a Claim Upon Which Relief Can Be Granted

All of Nokia's Lanham Act and state law tort claims should be dismissed pursuant to Rule 12(b)(6) because: (1) the claims are premature absent a judicial determination of the infringement and essentiality of the InterDigital patents at issue; and (2) Nokia's First Amended Complaint, on its face, is based on alleged InterDigital statements that are not commercial speech or promotion and are mere opinions (and, thus, do not state a claim for relief under the Lanham Act).[12] This brief focuses primarily on the first argument.[13]

As to the first argument, Nokia's Lanham Act and state law tort claims based on InterDigital's alleged representations regarding the infringement and essentiality of its patents should be dismissed because those claims are premature. Nokia is improperly

---

[12] If this Court concludes that dismissal of Nokia's Lanham Act claim is proper, InterDigital respectfully submits that this Court should dismiss Nokia's remaining state law claims as well because: (1) those state law claims are based on the same alleged conduct by InterDigital forming the basis of Nokia's Lanham Act claim; or (2) alternatively, this Court should decline to continue exercising supplemental jurisdiction over those state law claims after the basis for this Court's subject matter jurisdiction (federal question jurisdiction) has been eliminated.

[13] To avoid unnecessary duplication and for a full and detailed discussion of the second argument, InterDigital respectfully refers this Court to and incorporates by reference herein InterDigital's motion for summary judgment and brief in support attached to its December 1, 2006 motion for leave to file same. FED. R. CIV. P. 10(c); D.I. 86. In short, InterDigital's challenged statements are not commercial speech or promotion and are mere opinions as expressly stated in the ETSI IPR Policy. *See* D.I. 154, Exh. B (¶ 3.2.2) ("*This disclosure reflects, of course, only an opinion of the Member* and some facts on the IPRs, but the Member is responsible for the content.").

attempting to put the cart before the horse by bringing those claims before any judicial determination has been made that Nokia's (and other companies') products do not infringe InterDigital's patents and that those patents are nonessential.  Such judicial determinations are prerequisites for any finding that InterDigital's alleged representations to the contrary were false and made in objective and subjective bad faith.[14]

In *Globetrotter Software, Inc.*, the Federal Circuit explained why federal preemption and First Amendment concerns preclude state law tort liability based on a patentee's publication of infringement allegations absent a showing that the patentee made such allegations in objective bad faith:

---

[14]    A finding that InterDigital's alleged representations were made in bad faith is required for *all of* Nokia's claims, even if bad faith is not an element of the federal or state law tort being asserted. *See, e.g., Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) ("[T]he objectively baseless standard of *Professional Real Estate* applies to state-law claims based on communications alleging patent infringement . . . .  A plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless"); *Golan v. Pingel Enter.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002) ("[P]atentees do not violate the rules of fair competition by making accurate representations, and are allowed to make representations that turn out to be inaccurate provided they make them in good faith.  Nevertheless, if the party challenging such statements under state or federal law presents clear and convincing evidence that the infringement allegations are *objectively false*, and that the patentee made them in bad faith, viz., with knowledge of their incorrectness or falsity, or disregard for either, the statements are actionable and are not protected by the existence of a patent") (citation omitted and emphasis added); *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999) ("[W]e conclude that, before a patentee may be held liable under § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith. This prerequisite is a function of the interaction between the Lanham Act and patent law, and is in addition to the elements required by § 43(a) itself . . ."); *Plasmart, Inc. v. Wincell Int'l, Inc.*, 442 F. Supp. 2d 53, 57 (S.D.N.Y. 2006) ("[W]here, as here, a plaintiff asserts claims under state tort law based on assertions of patent infringement, *even if it is not generally a required element of the state cause of action*, there can be no liability unless plaintiff clears the additional hurdle of proving bad faith") (emphasis added / citing cases above); *ISCO Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 504, 506 n.8 (D. Del. 2003) (same).

> Our decision to permit state-law tort liability for only objectively baseless allegations of infringement rests on both federal preemption and the First Amendment. The federal patent laws preempt state laws that impose tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation. In addition, the same First Amendment policy reasons that justify the extension of *Noerr* immunity to pre-litigation conduct in the context of federal antitrust law apply equally in the context of state-law tort claims.

*Globetrotter Software, Inc.*, 362 F.3d at 1377 (citation omitted).

In accordance with *Globetrotter Software, Inc.*, federal courts have dismissed as premature claims that are "inextricably intertwined" with the resolution of unresolved claims of patent infringement. *See, e.g., Elantech Devices Corp. v. Synaptics, Inc.*, 2006 U.S. Dist. LEXIS 48756, at *2 (N.D. Cal. July 7, 2006) (Exhibit "S") ("Elantech's claims are premature. Elantech cannot plead around preemption and allege that Synaptics' infringement allegations were 'objectively baseless' until Synaptics' infringement claims are resolved"); *Visto Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064, 1072-73 (N.D. Cal. 2005) (dismissing counterclaims for tortious interference with prospective economic advantage and defamation in patent infringement action as premature because claims were based on allegations concerning prelitigation threats of patent infringement and were thus "inextricably intertwined" with resolution of underlying claims of patent infringement.); *see also Formula One Licensing, B.V. v. Purple Interactive Ltd.*, 2001 U.S. Dist. LEXIS 2968, at *14-*16 (N.D. Cal. Feb. 6, 2001) (dismissing interference with economic advantage claim as "premature" because complaint failed to allege that trademark infringement action concluded in counterclaimant's favor) (Exhibit "T").

In this case, Nokia's Lanham Act and state law tort claims are "inextricably intertwined" with the resolution of purported unresolved claims of patent infringement and essentiality. Nokia cannot argue that InterDigital falsely represented in bad faith that

its patents are infringed and essential (*e.g.*, that compliance with the 3G standard necessarily infringes InterDigital's patents) until this Court separately determines whether Nokia's (and the other companies') products are infringed and essential as part of a patent infringement action. That determination has not yet been made and cannot be made at this time based on: (1) this Court's prior determination that it lacks subject matter jurisdiction to hear Nokia's declaratory judgment seeking a declaration that InterDigital's patents are invalid and noninfringed (D.I. 25-26); and (2) Nokia's strategic decision not to plead a cause of action that would resolve such claims as to the 127 InterDigital patents currently at issue (D.I. 154).[15]   Therefore, this Court should dismiss Nokia's Amended Complaint because Nokia's claims are premature.

## CONCLUSION

For the reasons stated above, Defendants InterDigital Communications Corporation and InterDigital Technology Corporation respectfully request that this Court: (1) grant InterDigital's Motion to Dismiss First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3); and (2) dismiss with prejudice any and all of Plaintiffs Nokia Corporation and Nokia Inc.'s claims in their First Amended Complaint and enter a take-nothing judgment on any and all such claims.

If this Court grants such relief in full or in part, InterDigital further requests that this Court – pursuant to 35 U.S.C. § 285, 15 U.S.C. § 1117(a), 28 U.S.C. § 1919, Federal Rule of Civil Procedure 54(d), District of Delaware Local Rule 54.1(a)(1), and any other

---

[15]    Indeed, deciding the infringement and essentiality of InterDigital's patents in the context of a case based solely on a Lanham Act claim and state law tort claims would improperly permit Nokia to back-door the declaratory judgment action that it previously filed seeking declarations that its products do not infringe InterDigital's patents and that this Court dismissed for lack of subject matter jurisdiction. D.I. 25-26.

applicable law – award InterDigital its reasonable attorney's fees and costs in this litigation. InterDigital expressly reserves the right to submit separate and additional briefing in support of its entitlement to such attorney's fees and costs.

InterDigital further requests all other relief to which it may be justly entitled.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

D. Dudley Oldham
Linda L. Addison
Richard S. Zembek
Fulbright & Jaworski L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel: (713) 651-5151

Dan D. Davison
Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Tel: (214) 855-8000

Dated: February 21, 2007
Public Version Dated: March 1, 2007
780499 / 28840

By:  _/s/ David E. Moore_____
     Richard L. Horwitz (#2246)
     David E. Moore (#3983)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, Delaware 19801
     Tel: (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

*Attorneys for Defendants,*
*InterDigital Communications Corporation and*
*InterDigital Technology Corporation*

28

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 1, 2007, the attached document was hand delivered to the following person(s) and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Julia Heaney
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347

I hereby certify that on March 1, 2007, I have Electronically Mailed the documents to the following:

Peter Kontio
Patrick J. Flinn
Gardner S. Culpepper
Keith E. Broyles
Randall L. Allen
Lance Lawson
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
pkontio@alston.com
pflinn@alston.com
gculpepper@alston.com
keith.broyles@alston.com
rallen@alston.com
llawson@alston.com

A. William Urquhart
Marshall M. Searcy
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
billurquhart@quinnemanuel.com
marshallsearcy@quinnemanuel.com

By:  /s/ David E. Moore
    Richard L. Horwitz
    David E. Moore
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

713935 / 28840