# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOKIA CORPORATION and NOKIA INC.,<br><br>        Plaintiffs,<br><br>            v.<br><br>INTERDIGITAL COMMUNICATIONS CORPORATION and INTERDIGITAL TECHNOLOGY CORPORATION,<br><br>        Defendants. | C.A. No. 05-16-JJF<br><br>**ATTACHMENTS C & D ARE CONFIDENTIAL** |

## PLAINTIFFS' STATEMENT PURSUANT TO FIRST DISCOVERY ORDER

Pursuant to the First Discovery Order, issued by Special Master Seitz on June 12, 2006, Plaintiffs Nokia Corp. and Nokia Inc. ("Nokia") hereby serve on Defendants InterDigital Communications Corp. and InterDigital Technology Corp. ("InterDigital") Plaintiffs' Statement Pursuant to First Discovery Order.

### I.    INTERDIGITAL'S FALSE PUBLIC STATEMENTS

Nokia's allegation that "InterDigital has repeatedly made public statements that its patent portfolio covers the practice of 3G wireless phone systems and the sale of 3G compliant products" is supported by numerous statements regarding InterDigital's portfolio and specific statements regarding particular InterDigital patents.

Nokia's allegations are supported by statements in InterDigital's filings with the U.S. Securities and Exchange Commission, including the following:

- "We have indicated to the appropriate [standards bodies] that we hold patents and patent applications that are essential for implementation of the present 3G standards in products, and have, in conjunction with such indication, declared that

our patented inventions will be available for license under the general principles of fairness, reasonableness and/or non-discrimination." InterDigital Communications Corp. Form 10-K, Mar. 31, 2005.

- "As a result of our participation in the Standards, we have filed declarations that make our essential inventions available for use and we will license on fair, reasonable and non-discriminatory or similar terms consistent with the requirements of the individual Standards organizations." InterDigital Communications Corp. Form 10-K, Mar. 31, 2005.

- "We have indicated to the appropriate standards bodies that we hold patents and patent applications that are essential for implementation of the present 3G standards specifications in products, and have, in conjunction with such indication, declared that our patented inventions will be available for license under the general principles of fairness, reasonableness and/or non-discrimination for each standards body." InterDigital Communications Corp. Form 10-K, Mar. 15, 2004.

- "We have indicated to the appropriate standards bodies that we hold patents and patent applications that are essential for implementation of the present 3G standards specifications in products, and have, in conjunction with such indication, declared that our patented inventions will be available for license under the general principles for each standards body." InterDigital Communications Corp. Form 10-K, Mar. 31, 2003.

- "We have indicated to the appropriate standards setting bodies that we hold patents and patent applications that are either essential or commercially important for implementation of the present 3G standards specifications in products, and have, in conjunction with such indication, declared that our patented inventions will be available for license under the general principles for each standards body." InterDigital Communications Corp. Form 10-K405, Mar. 29, 2002

- "We have indicated to the appropriate standards setting bodies that we hold patents and patent applications that are either essential or commercially important for implementation of the present 3G standards specifications into products." InterDigital Communications Corp. Form 10-K405, Apr. 2, 2001.

- "We believe that our patent portfolio is applicable to all of the air interface protocols described in the [3G] standard, and we have indicated to the standard setting bodies that we hold patents and patent applications that are either essential or commercially important for 3G products built to present standards specifications." InterDigital Communications Corp. Form 10-K, Mar. 29, 2000.

InterDigital has also claimed on its website to have essential patents, stating:

- "InterDigital believes that, in many instances, licenses for certain of our patents are required for third parties to manufacture and sell digital cellular products in compliance with TDMA and CDMA-based standards currently in use worldwide." www.InterDigital.com/tech_products_licensing.shtml.

2

- "Today, [InterDigital's] inventions and technology are embedded in every 2G, 2.5G and 3G device." www.InterDigital.com/tech_products_introduction.shtml.

- "InterDigital has a strong portfolio of patented technologies covering 2G, 2.5G and 3G standards, which it licenses worldwide." http://www.interdigital.com/press_room_news_archive_detail.jsp?releaseId=5474 34&cb=1151594870650

- "InterDigital supports the evolution of 3G technology through active participation in the standards bodies, invention of essential patented technologies, and development of advanced 3G product solutions." http://phx.corporate-ir.net/phoenix.zhtml?c=116582&p=irol-newsArticle&ID=813104 (dated Feb. 6, 2006).

- InterDigital's 3G license with High Tech Computer "affirms InterDigital's position as a recognized developer and contributor of essential wireless technologies." http://phx.corporate-ir.net/phoenix.zhtml?c=116582&p=irol-newsArticle&ID=547419 (dated Dec. 17, 2003).

InterDigital has also claimed through various news outlets that its patents are essential to

3G standards:

- "[W]e have essential patents.... and anybody that produces a 3G terminal U.S. device, needs to be licensed under all these essential patents. So from our perspective, every manufacturer who produces devices to that standards [sic] needs to license with us." William Merritt, Speech at Bear Stearns Annual Technology Conference (June 12, 2006).

- "Panasonic's acknowledgement that they used our technology was tantamount to a ... statement that our patents are essential. So it's not that they were making some - doing some particular implementation that lead them into our patents. It was an acknowledgement by them that, yes InterDigital does hold essential patents." Id.

- "InterDigital holds essential [intellectual property rights] in variations of 3G, including FDD, TDD and CDMA." www.tdscdma-forum.org/EN/zf/yjx.asp (attributing quote to Donald Boles, Senior Vice President and Chief Patent Strategist of InterDigital from Interview; dated July 25, 2005).

- "[InterDigital's] broad portfolio of essential patents, along with InterDigital's 3G products and technology, will serve to fuel [InterDigital's] revenue growth as the 3G market emerges." www.3Gnewsroom.com/3g_news/jan_02/news_1743.shtml (attributing quote to Howard E. Goldberg, President and Chief Executive Officer of InterDigital; dated Jan 16, 2002).

- InterDigital's 3G licenses with Matsushita, Sharp and Japan Radio Company "reflect the industry's recognition of the importance of [InterDigital's] 3G essential patent portfolio." www.3Gnewsroom.com/3g_news/jan_02

3

/news_1732.shtml (attributing quote to Howard E. Goldberg, President and Chief Executive Officer of InterDigital; dated Jan. 15, 2002).

- InterDigital is "a recognized developer and contributor of essential technology" for 3G. www.3Gnewsroom.com/3g_news/dec_02/news_2867.shtml (attributing quote to William Merritt, President of InterDigital Technology Corp.; dated Dec. 18, 2002).

- "We have said in a prior press release that we believe that our patents are essential to each of the five specifications under the third generation technology. Therefore anyone practicing that technology is going to have to deal with us." Video Interview by Bill Griffeth with Howard Goldberg, President, InterDigital Communications Corp. (Jan. 10, 2000), 2000 WLNR 2850752(statement by Goldberg).

- "InterDigital began saying on Nov. 17[, 1999] that it holds 'patents that are essential to the new IMT-2000 standard,' executive vice president Rip Tilden said yesterday." Henry J. Holcomb, *InterDigital Soars After U.N. Report a New Wireless-Technology Standard Was Adopted*, Philadelphia Inquirer (Dec. 31, 1999).

Nokia's allegation is also supported by InterDigital's declarations to the European Telecommunications Standards Institute ("ETSI") that certain foreign and domestic patents are essential to the 3G standard UMTS. In particular, on April 10, 2001, InterDigital declared 80 patents and applications to be essential to UMTS (on behalf of InterDigital or its subsidiaries). These declarations were submitted to ETSI by InterDigital's then CEO, Howard Goldberg, and a copy of these declarations is included as Attachment A to this Statement. On April 8, 2004, InterDigital declared 1,192 patents and applications to be essential to UMTS (on behalf of InterDigital or its subsidiaries). These declarations were submitted to ETSI by Donald Boles, InterDigital's Chief Patent Officer, and a copy of these declarations is included as Attachment B to this Statement.

Essentiality declarations to ETSI are publicly available in a searchable online database, available at http://webapp.etsi.org/IPR/home.asp. The ETSI website instructs manufacturers wishing to produce standards-compliant products to use the database to identify patents that have

4

been declared to be essential to the relevant standard. *See, e.g.,* http://www.etsi.org/legal/IPR_database/FAQ_IPR-Policy.htm.

Nokia's allegations are also supported by licensing presentations InterDigital has made to Nokia, included as Attachment C and Attachment D hereto. In these presentations, InterDigital has claimed that it owns a substantial number of patents essential to 3G (*see* Attachment C, at 3; Attachment D, at 4), and that specific InterDigital patents were essential to WCDMA and CDMA2000 (*see* Attachment C, at 15-41; Attachment D, at 22, 24-102.) InterDigital made these statements to Nokia for the express purposes of convincing Nokia to enter into a license agreement with InterDigital. These presentations are important marketing materials developed and utilized by InterDigital for the purpose of selling patent licenses, InterDigital's only source of revenue.

## II.    INTERDIGITAL'S STATEMENTS ARE FALSE

A review of InterDigital's patents establishes the falsity of the statements regarding the essentiality of those patents. Although the enormous number of patents InterDigital has declared to ETSI has prevented Nokia from reviewing every patent that InterDigital claims is essential, the patents Nokia has reviewed are believed not to be essential to UMTS or CDMA2000. (*See, e.g.,* Attachment E.) InterDigital can not reasonably contest this fact because it previously publicly embraced it. In December 2003, Forbes Magazine reported that Howard Goldberg, who was at that time the Chief Executive Officer of InterDigital Communications Corp., said, "Any company can design around our patents . . . ." Elizabeth MacDonald, *Pay Up Or Else*, Forbes Magazine, Dec. 22, 2003, at 122-24 (included as Attachment F). InterDigital made this statement less than four months before declaring to ETSI that 1,192 patents and applications were essential to UMTS.

5

The patents InterDigital has declared to ETSI do not substantiate InterDigital's claims regarding the essentiality of its portfolio. At least two third-party experts studying the industry have reviewed the essentiality of InterDigital's ETSI patents and determined that the vast majority of these patents are in fact not essential to UMTS. Dr. David Goodman and Dr. Robert A. Myers have concluded that approximately 64% of InterDigital's publicly declared inventions are not essential to UMTS (*see* Attachment G, at 4-5). Although this study did not find affirmatively all of InterDigital's patents to be non-essential, the study does not support InterDigital's claims that its patent portfolio is essential to UMTS. The study did not consider the file history of the patents in interpreting the claims (which may require a substantially narrower interpretation of the patent claims), nor did it examine the validity of any of InterDigital's patents.

Because the study did not disclose the patents that were not affirmatively judged essential, Nokia cannot augment this analysis with proper claim construction or with invalidity considerations at this time. Moreover, because InterDigital has declared over 1,272 patents to ETSI, it is practically impossible, at least at this stage, for Nokia to have reviewed all of InterDigital's patents for essentiality. Instead, Nokia has analyzed in detail a sample of InterDigital's self-proclaimed stronger patents. Nokia included this analysis in its responses to InterDigital's First Set of Interrogatories and includes it with this statement as Attachment E. This analysis strongly supports Nokia's view that none of these patents are essential to UMTS or CDMA2000.

Moreover, InterDigital's statements that particular patents and applications are essential to UMTS are themselves violations of the Lanham Act. The Goodman and Myers Report agrees that the vast majority of these 1,272 statements are false.

6

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Julia Heaney
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
  Attorneys for NOKIA CORPORATION and
  NOKIA INC.

OF COUNSEL:

ALSTON & BIRD LLP
Peter Kontio
Randall L. Allen
Lance A. Lawson
William R. Hubbard
1201 West Peachtree Street
Atlanta, GA 30309
404-881-7000

June 30, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA
INC.,

     Plaintiffs,

          v.

INTERDIGITAL COMMUNICATIONS
CORPORATION and INTERDIGITAL
TECHNOLOGY CORPORATION,

     Defendants.

C.A. No. 05-16-JJF

## VERIFICATION

I, Henry Muir, state as follows:

I am a Director of IPR Licensing for Nokia Corporation. I have read Plaintiffs'

Statement Pursuant to First Discovery Order ("Plaintiffs' Statement"), and I know the

contents thereof. I verify under penalty of perjury under the laws of the United States of

America that the facts in Plaintiffs' Statement are true and correct to the best of my

knowledge.

Executed this 30th day of June, 2006.

_____

Henry Muir
Director of IPR, Licensing
Nokia Corporation
Nokia House
Summit Avenue
Farnborough, Hampshire GU14 0NG
United Kingdom

ATL01/12259222v2

# EXHIBIT B

1

```
                IN THE UNITED STATES DISTRICT COURT
                  FOR THE STATE OF DELAWARE

NOKIA CORPORATION and NOKIA       :
INC.,                             :
                 Plaintiffs       :
                                  :
        -v-                       : C.A. NO. 05-16(JJF)
                                  :
INTERDIGITAL COMMUNICATIONS       :
CORPORATION and INTERDIGITAL      :
TECHNOLOGY CORPORATION,           :
                 Defendants.      :
```

Special Master Teleconference taken at the
law offices of Connelly Bove Lodge & Hutz, LLP, at 1007
North Orange Street, 10th Floor, Wilmington, Delaware on
November 2, 2006, commencing approximately at 10:05
a.m., before Elaine Gallagher Parrish, RPR, CRR and
Notary Public.


BEFORE:  COLLINS J. SEITZ, JR., ESQUIRE
         Special Master
APPEARANCES:
         JULIA HEANEY, ESQ.
         Morris, Nichols, Arsht & Tunnell
              1201 North Market Street
              P.O. Box 1347
              Wilmington, Delaware 19899-1347
                   -and-
         RANDALL ALLEN, ESQ.
         Alston & Bird, LLP
              One Atlantic Center
              1201 West Peachtree Street
              Atlanta, Georgia 30309-3424
                   -and-


         WILCOX & FETZER
    1330 King Street - Wilmington, Delaware 19801
              (302)655-0477
              www.wilfet.com
```



**W&F**
WILCOX & FETZER LTD.
Registered Professional Reporters



2

1  APPEARANCES: (Continued)

2          LANCE A. LAWSON, ESQUIRE
          Alston & Bird, LLP
3              Bank of America Plaza
              101 South Tryon Street, Suite 4000
4              Charlotte, North Carolina  28280-4000

5                  -and-

6          PATRICK J. FLINN, ESQUIRE
          Alston & Bird, LLP
7              One Atlantic Center
              1201 West Peachtree Street
8              Atlanta, Georgia 30309-3424
              for the Plaintiffs,

9

10          RICHARD L. HORWITZ, ESQ.
          Potter Anderson & Corroon
11              Hercules Plaza - 6th Floor
              1313 North Market Street
12              Wilmington, Delaware 19801

13                  -and-

14          DAN D. DAVISON, ESQUIRE
          Fulbright & Jaworski, LLP
15              2200 Ross Avenue, Suite 2800
              Dallas, Texas  75201-2784

16

                  -and-

17

18          LINDA L. ADDISON, ESQUIRE
          Fulbright & Jaworski, LLP
              1301 McKinney, Suite 5100
19              Houston, Texas  77010-3095

20                  -and-

21          ANDREW G. ISZTWAN, ESQUIRE
          InterDigital Communications Legal Department
22              781 Third Avenue
              King of Prussia, Pennsylvania  19046-1409

23              For the Defendants.

24



32

1   18 -- 11 of those patents meet that -- or that

2   particular test, and it turns out that nobody needs a

3   license to those 18 patents because the industry is

4   already licensed through another company to eight of

5   them, and the remaining three apply only to a standard

6   that nobody -- a piece of the technology nobody has ever

7   adopted, nobody has ever rolled out.  So nobody needs a

8   license to any of the patents so far that they have ever

9   actually come to the stake on.

10           Now, we will -- we will list for all 195

11  our basis for believing why they're not essential.  I

12  have to say that for a substantial number of them it's

13  going to be a fairly simple answer, which is we have

14  looked at this and we can't concede how this patent has

15  anything to do with any part of the 3G standard because

16  literally they have thrown in an amazing pile of garbage

17  into this 195.  Some of them we can be more specific,

18  like the 18 where they at least believe they had a claim

19  to pass the red face test.  To the extent that they have

20  others, that they're willing to try to say with a

21  straight face, meet not their version of what they told

22  the public but what we contend has -- is the actionable

23  statement that they have made.  Now, we will do that for

24  195.

33

1    But what Mr. Davison says is he's never

2    going to tell us their view on the 195 ever unless he's

3    ordered to, and then only grudgingly.  Now, it may seem,

4    Mr. Seitz, there is two things I think you could do to

5    resolve this dispute:  One is to say, Nokia, for 195

6    patents you tell us now why you believe none of them is

7    -- is -- meets the standard of what you think

8    InterDigital has publicly said about them, but at the

9    same time, at a very minimum, they have to open their

10   own discovery and give us their contentions and give us

11   testimony and give us the documents on their view, not

12   of whether or not it meets their version of the standard

13   of what they think they told the public but what we

14   contend they told the public.  Because if we're right,

15   that the effect of their public statements is this

16   assertion that everybody needs a license to these 195

17   patents to practice the currently rolled-out UMTS

18   technology, if that's what they said then we need to

19   know whether or not they're willing to admit or deny or

20   acknowledge that some of those 195 patents don't meet

21   the standard as we have articulated it.

22          MR. DAVISON:  Can I respond, Your Honor?

23          MR. SEITZ:  Yes.

24          MR. DAVISON:  As I understood Mr. Flinn,



34

1    he's now said that with regard to ETSI he'll comply with

2    the first discovery order.  He will tell us what patents

3    or what statements within the ETSI statements are false

4    and why.  That's all we have ever asked and that's what

5    you ordered them to do on June the 30th that they still

6    haven't done.

7              I would, and it was addressed a little bit

8    in the response that was filed yesterday, I know

9    Mr. Flinn wasn't the Nokia corporate rep, but he keeps

10   talking about ETSI being the declaration of right.  His

11   own corporate representative said that's not true.

12   Everybody knows it's just an opinion.  It's an opinion

13   of the declarant.  The ETSI rules and policies section

14   3.2.2 says that as a matter of fact it says it says the

15   disclosure reflects, of course, only an opinion of the

16   member, and then it goes on and talks about further

17   opinions -- when further opinions should be added.

18             MR. SEITZ:  On that issue, Mr. Davison,

19   when the motion to dismiss was briefed before Judge

20   Farnan were these arguments made about why the Lanham

21   Act allegation should be dismissed as well?

22             MR. DAVISON:  No.  I do not believe these

23   issues were, Your Honor, because at that point we didn't

24   know what claims they were asserting under the Lanham



1   both of you to follow up for me on the issue of whether

2   or not that issue was considered by Judge Farnan when he

3   denied the motion to dismiss. And the reason I think

4   it's important is because if it wasn't before him it may

5   be prudent – and I'm not going to stop discovery while

6   we do this – but it may be prudent to brief the issue to

7   see whether the claim, in fact, is defective or not as

8   alleged in InterDigital's papers.

9           MR. FLINN: Let me make one other comment,

10  Mr. Seitz. Patrick Flinn. Mr. Davison keeps going on

11  and on about how Nokia's 30(b)(6) witness made this

12  statement. Ironically enough, given our last appearance

13  before you, that was a question way outside the scope

14  for which he was designated. And Mr. Davison

15  acknowledges that he was riding the range with that

16  question. And the fact of the matter is that – and we

17  don't think that it's going to be that controversial

18  and, in fact, InterDigital has been sued in the past for

19  Lanham Act violations, Ericsson sued it for a Lanham Act

20  violation claiming that its patents were essential to

21  second-generation or 2G standards.

22          MR. DAVISON: And which we got summary

23  judgment on that.

24          MR. SEITZ: Hang on. We're far too much



# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOKIA CORPORATION and<br>NOKIA, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C. A. No. 05-16-JJF |
| v. | ) | |
| | ) | |
| INTERDIGITAL COMMUNICATIONS | ) | **JURY TRIAL DEMANDED** |
| CORPORATION and INTERDIGITAL | ) | |
| TECHNOLOGY CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFFS

Defendants, InterDigital Communications Corporation and InterDigital Technology Corporation (collectively, "InterDigital") serve their first set of interrogatories on Plaintiffs, Nokia Corporation and Nokia Inc. (collectively, "Nokia"). The interrogatories shall be answered by Nokia separately and fully in writing under oath as required by the FEDERAL RULES OF CIVIL PROCEDURE. Nokia shall supplement all answers to the discovery requests as required by the FEDERAL RULES OF CIVIL PROCEDURE and the Local Rules of Practice for the District of Delaware.

### I.
### DEFINITIONS

As used in these requests, the following words and phrases are defined as follows:

1.  **"2G Standard(s)"** shall mean second generation digital wireless cellular phone standards, including, without limitation, GSM, GPRS, EDGE, cdmaOne (IS-95), and US-TDMA (IS-56 and/or IS-136).

2.  **"2G Product(s)"** shall mean hardware and software, including, without limitation, terminal units and infrastructure equipment complying in whole or in part with 2G Standards.

3.    **"3G Standard(s)"** shall mean third generation digital wireless cellular phone standards, including, without limitation, WCDMA, UMTS, cdma2000, and TD-SCDMA.

4.    **"3G Product(s)"** shall mean hardware and software, including, without limitation, terminal units and infrastructure equipment complying in whole or in part with 3G Standards, including those terminal units and infrastructure equipment which operates or is capable to operate so as to comply in whole or in part with 3G Standards.

5.    **"3G Technology"** shall mean technology used in connection with 3G Products.

6.    **"cdma2000"** means the family of standards promulgated by the TIA and known as cdma2000, 1XEV-DO, and 1xEV-DV, including, without limitation, TIA/EIA/IS-2000 (revisions 0, A, B, C, and D), IS-707A, TIA/EIA/IS-835, TIA/EIA/IS-856, and TIA/EIA/IS-878 standards.

7.    **"Correspondence"** shall mean and include any transmission or exchange of information between two or more persons, whether orally or in writing, including, without limitation, any conversation or discussion face-to-face or by means of letter, note, memorandum, telephone, telegraph, telex, telecopier, electronic mail, cable, or some other medium, whether electronic or otherwise, and whether by chance or prearrangement, formal, or informal.

8.    **"Document"** and **"documents"** shall have the broadest meaning accorded by Rule 34(a) of the FEDERAL RULES OF CIVIL PROCEDURE and shall include, without limitation, all of the matters defined in Rule 1001 of the FEDERAL RULES OF EVIDENCE, correspondence (as defined below), memoranda, stenographic or handwritten notes, drafts, studies, publications, invoices, ledgers, journals, books, records, accounts, pamphlets, voice recordings, photographs, reports, surveys, statistical compilations, work papers, data processing cards, computer tapes or printouts, microfiche or microfilm, and writings of every other kind and character, whether originals or reproductions. The terms "document" and "documents" also include every copy where such copy is not an identical reproduction of the original or where such copy contains any commentary, marginal comment, or notation whatsoever that does not appear in the original. The terms "document" and "documents" also mean any printed, typewritten, or handwritten matter of reproduction thereof of whatever character, or means or electronic storage of information, such as e-mail, that is within Nokia's possession, control, or custody. The terms "document" and "documents" also include all drafts. Without limitation of the term "control," a document is deemed to be with Nokia's control if Nokia has ownership, possession, or custody of the document or a copy thereof, or the right to secure the document or a copy thereof, from any other person or public or private entity having physical possession thereof,. If any document requested herein was, but is no longer, subjected to Nokia's control, please state what disposition was made of it, and the date or dates, or the approximate date or dates, of such disposition.

9.    **"Identify"** shall mean:

(a)    when used with reference to a "document," state the Bates number(s) of the document;

(b)    when used with reference to an oral communication;

    (i)     state the time and place of the oral communication;

    (ii)    identify the person who made the oral communication and each person who was present (in person or by telephone or other communications means) when it was made;

    (iii)   state its subject matter and contents; and

    (iv)   identify, in accordance with Definition 8(a) above, each document which refers thereto or which was prepared as a consequence of the oral communication; and

  (c)   when used with reference to a person, state the person's full name, correct employer, job title, and address.

    10.    **"InterDigital"** shall mean InterDigital Communications Corporation and/or InterDigital Technology Corporation.

    11.    **"InterDigital's Patent Portfolio"** shall mean the patents issued to and/or held by InterDigital and Tantivy and IPR Licensing and which form the basis of the claims made in Nokia's Complaint.

    12.    **"Reflecting," "referring," and "relating"** shall be used in the broadest sense and shall mean and include without limitation "referring to," "mentioning," "discussing," "containing," or "setting forth" and refers to every document or other form of information that in any way explicitly or implicitly refers to, or reasonably could be construed to refer to, the subject mater of the document requested or inquired about, or which in fact refers to its subject matter through such reference is only determinable with reference to some extrinsic information, program, or code. In the latter case, the document request or inquiry shall be read to include whatever extrinsic information, program, or code is useful or necessary to render intelligible the relationship and meaning of the document or other form of information with respect to the subject matter thereof, including, but not limited to, codes for identifying the person, organizations, and transactions described in the document request or inquiry.

    13.    **"Nokia's Complaint"** shall mean Nokia's Complaint for Declaratory Judgment of Patent Invalidity and Infringement and Violations of the Lanham Act relating to 3G Mobile Phone Technology filed on or about January 12, 2005 and all amendments or supplements thereto.

    14.    **"WCDMA"** shall mean the family of standards promulgated by 3GPP and known as WCDMA, UMTS FDD, and UMTS TDD, including, without limitation, UMTS FDD, UMTS TDD, FOMA, IMT-2000, IMT-DS Direct Spread, and UTRA-FDD.

    15.    **"You," "your,"** and **"Nokia"** shall mean Nokia Corporation and/or Nokia Inc. and any of their officers, directors, employees, agents, and persons acting on behalf of each and predecessor or successor entities.

## II.
## INSTRUCTIONS

1.    In the event Nokia claims that an interrogatory is overly broad, Nokia is requested to respond to that portion which is unobjectionable and to specifically identify that portion of the interrogatory that is allegedly overly broad.

2.    In the event Nokia claims that an interrogatory is unduly burdensome, Nokia is requested to respond to that portion which is unobjectionable and specifically identify that portion of the interrogatory that is allegedly unduly burdensome, and identify why that portion is unduly burdensome.

3.    If Nokia maintains that any exemption(s) or privilege(s) exists, Nokia shall fully and completely identify the specific exemption or privilege that it claims exists as to the request.

4.    The conjunctions "and" and "or" shall be individually interpreted in every instance as meaning "or" and shall not be interpreted disjunctively to exclude any information otherwise within the scope of any of the following interrogatories.

5.    Unless the context requires otherwise, use in the following interrogatories the singular shall include the plural, use of the present tense shall include the past tense, and vice versa, use of the words "any" or "all" shall be read to mean each and every, and use of the word "including" and "include" shall mean "including without limitation" and "include but not limited to."

## III.
## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each statement or assertion made by InterDigital which forms the basis of Nokia's Lanham Act claim, including the declarant, recipient, date each statement was allegedly made, and the statement or assertion made, together with any documents, materials or individuals with knowledge that relate to such statement(s) or assertion(s). *See* Nokia's Complaint at Count XXI.

### ANSWER:

### INTERROGATORY NO. 2:

Identify any and all evidence that InterDigital made the statements or assertions identified in Nokia's Answer to Interrogatory No. 1 in bad faith and/or with knowledge of their falsity, including all facts, documents, materials, and the person(s) with knowledge that support or refute that such statements were made in bad faith and with knowledge of their falsity. *See* Nokia's Complaint at Count XXI.

**ANSWER:**

**INTERROGATORY NO. 3:**

Identify all facts, documents, materials and the person(s) with knowledge related to, that support and/or that refute your contention that "all of InterDigital's 3G patents are either invalid or not infringed by mobile handset and infrastructure products being rolled out in the United States. In particular, no Nokia product either sold in the United States or in development for sale to the United States infringes any claim of InterDigital 3G patent." *See* Nokia's Compliant at p. 5, ¶ 11. Your answer should include what analyses Nokia conducted to make such determination, the result of such analyses for each and every InterDigital patent analyzed, when such analyses took place and the individual(s) with knowledge of such analyses.

**ANSWER:**

**INTERROGATORY NO. 4:**

Identify all analyses performed by or for Nokia related to its contention that any or all patents in InterDigital's Patent Portfolio are non-essential, invalid, and/or not infringed, including, without limitation, all facts, documents, materials, conclusions and the person(s) with knowledge related to each analysis.

**ANSWER:**

**INTERROGATORY NO. 5:**

Identify all facts, documents, materials and the person(s) with knowledge related to, that support and/or that refute your contention that "InterDigital has used false or misleading descriptions or representations in connection with its patent portfolio, the WCDMA standard, the cdma2000 standard, Nokia's products, the applicability of InterDigital's patents to Nokia's products, and the applicability of InterDigital's patents to 3G standards within the meaning of 15 U.S.C. § 1125(a) (§ 43(a) of the Lanham Act)." *See* Nokia's Complaint at ¶ 142, p. 34.

**ANSWER:**

**INTERROGATORY NO. 6:**

Identify all facts, documents, materials and the person(s) with knowledge related to, that support and/or that refute your contention that statements by InterDigital "... influenced purchasing decisions by raising costs for all market participants ... increased production costs for Nokia and raised the cost of Nokia developing and marketing standards compliant technology and deterred

Nokia's customers from purchasing Nokia's standards complaint products." *See* Plaintiffs' Answering Brief in Opposition to Defendants' Motion to Dismiss Pursuant to FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1), 12(B)(6) and 12(H)(3) ("Nokia's Answering Brief"), at p. 30.

**ANSWER:**

**INTERROGATORY NO. 7:**

Identify all facts, documents, materials and the person(s) with knowledge related to, that support and/or that refute your contention that InterDigital made false statements representing the characteristics of Nokia's products which have harmed Nokia's goodwill and reputation.

**ANSWER:**

**INTERROGATORY NO. 8:**

Identify how each statement or assertion identified in Interrogatory No. 1 has caused Nokia to be damaged and the dollar amount, if any, of such damage, including the amount of damages claimed for Nokia's goodwill and reputation. *See* Nokia's Answering Brief at pp. 30-31.

**ANSWER:**

**INTERROGATORY NO. 9:**

Identify all facts, documents, materials and the person(s) with knowledge related to, that support and/or that refute your contention that "InterDigital's statements have chilled consumer demand after the expiration of the 1999 license because consumers are reluctant to buy allegedly infringing products."

**ANSWER:**

**INTERROGATORY NO. 10:**

Identify each Nokia customer you claim was "deterred from purchasing Nokia's standard compliant products" as a result of InterDigital's alleged false and misleading statements, including, without limitation, the contact person at such customer(s) and all facts, documents, materials, and the person(s) with knowledge that support or refute that such customers have been so deterred.

**ANSWER:**

- 6 -

**INTERROGATORY NO. 11:**

For any 3G patent or technology license Nokia has negotiated, entered or attempted to enter with a third party in which InterDigital's Patents Portfolio or 3G technology was discussed, identify the license agreement, licensee or potential licensee, licensor or potential licensor, date of license and the patents or technology licensed.

    **ANSWER:**

**INTERROGATORY NO. 12:**

State whether, how and when Nokia determines to declare a patent to be essential to a 3G Standard, including the identity of all facts, documents (by production numbers), materials, and the person(s) with knowledge that relate to Nokia's construction(s) of "essential" for such 3G Standard(s).

    **ANSWER:**

**INTERROGATORY NO. 13:**

Identify all facts, documents, materials and the person(s) with knowledge related to, that support and/or that refute your contention that "the goods that InterDigital has disparaged have indisputably traveled in interstate commerce." *See* Nokia's Answering Brief at p. 31. Your answer should include, but not be limited to, the goods claimed to be disparaged, when the goods were shipped, where the goods were shipped from and to and to whom the goods were shipped.

    **ANSWER:**

**INTERROGATORY NO. 14:**

Identify the name, address, phone number and principal contact person for all customers or prospective customers to whom Nokia has presented, demonstrated, offered to sell, sold, offered to license or licensed any Nokia 3G Products, including the Nokia employee(s) with the most knowledge of the foregoing.

    **ANSWER:**

**INTERROGATORY NO. 15:**

Identify by production number one complete, non-duplicative set of Nokia's business plans, from January 1, 1990, to the present, that are related to InterDigital, patents essential to 3G Standards,

3G Products sold or offered for sale by Nokia, 3G Standards, or any other Nokia product or service that was the subject of InterDigital's purported false or misleading statements.

**ANSWER:**

**INTERROGATORY NO. 16:**

Please identify by patent number, the date declared, and the applicable 3G Standard, the patents Nokia has within its patent portfolio that Nokia has declared or contends to be essential to 3G Standards.

**ANSWER:**

OF COUNSEL:                                   POTTER ANDERSON & CORROON LLP

D. Dudley Oldham
Linda L. Addison
Richard S. Zembek                             By: */s/ David E. Moore*
Fulbright & Jaworski L.L.P.                        Richard L. Horwitz (#2246)
1301 McKinney, Suite 5100                         David E. Moore (#3983)
Houston, Texas 77010-3095                         Hercules Plaza, 6th Floor
Tel: (713) 651-5151                               1313 N. Market Street
Fax:   (713) 651-5246                             Wilmington, Delaware 19801
doldham@fulbright.com                             Tel: (302) 984-6000
laddison@fulbright.com                            rhorwitz@potteranderson.com
rzembek@fulbright.com                             dmoore@potteranderson.com

Dan D. Davison                                .   *Attorneys for Defendants,*
Fulbright & Jaworski L.L.P.                        *INTERDIGITAL COMMUNICATIONS*
2200 Ross Avenue, Suite 2800                      *CORPORATION and INTERDIGITAL*
Dallas, Texas 75201-2784                          *TECHNOLOGY CORPORATION*
Tel: (214) 855-8000
Fax:   (214) 855-8200
ddavison@fulbright.com

Dated: March 30, 2006
726026/28840

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 30, 2006, a true and correct

copy of the within document was caused to be served on the following counsel of record, in

the manner indicated below:

### VIA HAND DELIVERY

Jack B. Blumenfeld
Julia Heaney
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347


### VIA ELECTRONIC MAIL

Peter Kontio
Patrick J. Flinn
Gardner S. Culpepper
Keith E. Broyles
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA  30309-3424
pkontio@alston.com
pflinn@alston.com
gculpepper@alston.com
keith.broyles@alston.com

/s/ David E. Moore
David E. Moore

671739