essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

## U.S. Patent No. 6,865,217

The '217 patent claims a method for simultaneously receiving and processing multiple channels of data at independent rates. The only independent claim—claim 1— requires decoding each separated channel of a received signal at an assigned data rate, where the decoding step uses a common decoding memory; and directing each separated channel to a different decoding means and assigning such decoding means a data rate responsive to the identification of data rates by a separating step.

Claim 1 of the '217 patent is not essential to UMTS at least because UTMS does not require a specific receiver design or algorithm. See, for example, 25.101, 25.104, and 25.212. In particular, claim 1 is not essential to UMTS at least because UMTS does not require decoding separate channels using a common decoding memory. Additionally, UMTS does not require directing separate channels to different decoding devices and assigning each decoding device a data rate responsive to an identified data rate.

Moreover, each independent claim with "means" language subject to construction in accordance with 35 U.S.C. 112 ¶ 6 is not essential at least because UMTS does not require the corresponding structure, if any, in the patent specification, or its equivalents.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially

94

essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

U.S. Patent No. 6,868,076
U.S. Patent No. 6,868,078
U.S. Patent No. 6,876,665

The '076, '078, and '665 patents claim systems and methods for receiving and recovering a signal from a plurality of channels using subtractive interference. The '076 patent has 4 independent claims for a receiver or method of receiving. Each of independent claims 1, 4, 7, and 8 requires either a device or method for subtracting from each of a plurality of channels, the other channels and despreading the result for each channel.

The '078 patent has 6 independent claims, each for a base station interference canceller. Each of independent claims 1, 16, and 17 requires simultaneously subtracting from a spread-spectrum signal, each of N-1 spread-spectrum-processed-despread signals, with the N-1 spread-spectrum-processed-despread signals excluding a desired spread-spectrum-processed-despread signal. Independent claims 18 and 19 each require subtracting from a spread-spectrum signal all but a desired one of the N spread-spectrum-processed-despread. Independent claim 20 also requires a plurality of subtractors, including a first, second and nth subtractor, for subtracting from a spread-spectrum CDMA signal, all but a desired signal of N spread-spectrum-processed-despread signals.

The '665 patent has 3 independent claims, each for a method employed by a remote terminal for reducing interference in a spread-spectrum CDMA receiver. Each of

independent claims 1, 5, and 8 includes a requirement for subtracting from a spread-spectrum CDMA signal N-1 spread spectrum process despread signals, with N-1 spread spectrum process despread signals excluding the desired signal.

The independent claims of the '076, '078, and '665 patents are not essential to UMTS at least because the UMTS specification does not require a particular receiver design. Specifically, the UMTS specification does not require subtractive interference at a receiver at either a base station or a mobile terminal, as claimed in each of the independent claims of the '076, '078, and '665 patents. See, for example, 25.101 – 7; 25.104 – 7, which discuss UMTS's requirements for receivers without requiring the claimed subtractive interference technique.

Moreover, each independent claim with "means" language subject to construction in accordance with 35 U.S.C. 112 ¶ 6 is not essential at least because UMTS does not require the corresponding structure, if any, in the patent specification, or its equivalents.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

U.S. Patent No. 6,873,645

The '645 patent claims an apparatus and method for estimating the noise in a received signal. The received signal, including associated noise, is demodulated and then

96

despread using a spreading code that is uncorrelated with the spreading code associated with the received signal. The power level of the despread result is used as an estimated noise level of the frequency spectrum for the received signal.

Independent claims 1, 5, and 9 of the '645 patent are not essential to UMTS at least because UMTS does not specify any particular receiver implementation. Moreover, UMTS does not require that a received signal be despread with a spreading code that is uncorrelated with the spreading code of the received signal in order to measure noise level. These are highly specific design choices, and such choices are left to the equipment manufacturers. There are also alternatives to the claimed design. See, for example, 25.101 – 7 and 25.104 – 7.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

U.S. Patent No. 6,879,841

The '841 patent includes two independent claims (1 and 4) for a method of operating a subscriber unit to regulate transmission power. A subscriber unit repeatedly transmits a periodic signal, beginning at a predetermined power level, each transmission occurring at successively higher power levels. The subscriber unit receives a confirmation signal at a specific power level which is based, in part, upon the periodic

signal, and terminates transmission of the periodic signal when the confirmation is received. An access signal is transmitted from the subscriber unit at the power level at the time that the confirmation signal was received. The UMTS specification does not require that a short code be transmitted at an initial predetermined power level. For example, see random access procedure described at 25.211 – 5.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

**U.S. Patent No. 6,885,652**

The '652 patent claims a system and method for dynamically changing a transmission rate of an information signal. Independent claims 1 and 2 both require that the base station synchronize a first message boundary of a first spread spectrum channel to a second message boundary of a second spread spectrum channel on a sub-epoch boundary and that the base station send an information signal through the first message channel prior to the sub-epoch boundary and through the second message channel subsequent to the sub-epoch boundary. Claims 1 and 2 are not essential to UMTS at least because UMTS does not require synchronization of a message boundary to a sub-epoch boundary and because it does not require switchover of data rate at a sub-epoch boundary. See, for example, 25.321 – 4.2.3. Moreover, independent claim 1 has

"means" language subject to construction in accordance with 35 U.S.C. 112 ¶ 6 and is not essential at least because UMTS does not require the corresponding structure, if any, in the patent specification, or its equivalents.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

## U.S. Patent No. 6,898,197

The 1197 patent claims a system and method for determining a location of a mobile station based on the round trip delay transmitted between the mobile and base stations. Even if independent claims 1, 6, and 8 were to be read onto SFN-CFN measurement of 25.215 – 5.1.8, they would not be essential at least because 25.215 does not mandate that the SFN-CFN measurement be used for determining a location. Even if independent claims 1, 6, and 8 were to be read onto the SFN-SFN measurement of 25.215 – 5.1.9, they would not be essential at least because 25.215 does not mandate that the type 1 SFN-SFN measurement be used for determining a location and such use of the type 2 SFN-SFN measurement is explicitly made optional. Independent claims 1, 6, and 8 require the use of delay lock loop to adjust the timing and are not essential at least because UMTS does not require the use of delay lock loop in round trip time determination.

Moreover, each independent claim with "means" language subject to construction in accordance with 35 U.S.C. 112 ¶ 6 is not essential at least because UMTS does not require the corresponding structure, if any, in the patent specification, or its equivalents.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

## U.S. Patent No. 6,904,294

The '294 patent includes two independent claims to a subscriber unit. A subscriber unit repeatedly transmits a periodic signal, beginning at a predetermined power level, each transmission occurring at successively higher power levels. The subscriber unit receives a confirmation signal and terminates transmission of the periodic signal when the confirmation is received. An access signal is transmitted from the subscriber unit at the power level at the time that the confirmation signal was received.

The specification does not require that a short code be transmitted at an initial predetermined power level. For example, see random access procedure described at 25.211 – 5.

Moreover, each independent claim with "means" language subject to construction in accordance with 35 U.S.C. 112 ¶ 6 is not essential at least because UMTS does not require the corresponding structure, if any, in the patent specification, or its equivalents.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

**U.S. Patent No. 6,915,473**

The '473 patent has four independent claims—claims 1, 3, 6, and 9. Each of claims 1, 3, and 9 require combining a cyclic redundancy check (CRC) with an identification of a communication unit to generate a mask. There is no such requirement in the UMTS specification. UMTS does not combine a CRC with a communication unit identification and mask the combination. Claim 6 requires a combiner for receiving data identification and mask the data with an identification field to generate a mask. The same and combining the data with an identification field to generate a mask. The same argument applies—UMTS does not combine data with an identification then mask the combination. Moreover, claim 6 requires a CRC generator for receiving the mask and generating a CRC. UMTS does not generate a CRC from a mask. Additionally, each independent claim with "means" language subject to construction in accordance with 35 U.S.C. 112 ¶ 6 is not essential at least because UMTS does not require the corresponding structure, if any, in the patent specification, or its equivalents.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically

essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

## U.S. Patent No. 6,940,817

The '817 patent claims a scheduling mechanism for controlling packet data from multiple types of data sources. The sole independent claim is not essential to UMTS at least because, even if UMTS contemplated data source queues as claimed, the capacity of each data source queue would not vary in UMTS, but is instead fixed when the radio bearer is assigned. See 25.331 – 10.3.4.25. Claim 1 is also not essential to UMTS because UMTS does not have a multiuser chained queue. Furthermore, claim 1 is not essential because UMTS does not require implementation of a backlog as claimed.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

## U.S. Patent No. 6,961,398

The '398 patent requires and claims a system and method for synchronizing a base station determined to be out-of-synchronization by using a neighboring base station. Independent claims 1 and 14 require a system and method, respectively, for adjusting a

timing of a base station having a timing accuracy that exceeds an acceptable threshold. The base station time is adjusted based on the timing difference between the base station and a neighboring base station having a time that is below the accepted threshold. In claim 6, a neighboring base station is similarly used to synchronize an out-of-sync base station. Claim 10 requires a system wherein when an out-of-sync base station is detected, the timing of that out-of-sync base station is adjusted based on a selected one of a plurality of measurement techniques, including measuring a timing of an out-of sync base station and a neighboring base station.

Claims 1, 6, 10, and 14 are not essential to the UMTS specification at least because UMTS does not require the use of neighboring base stations in adjusting the timing of a base station determined to be out-of-sync, or one having a timing accuracy value greater than a threshold value. See, for example, 25.104.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

## U.S. Patent No. 6,973,579

The '579 patent has five independent claims. Claim 1 requires a ½ rate convolutional encoder for processing at least the bits of a user identification to produce a code used for scrambling a high speed shared control channel (HS-SCCH). Claim 1 is

103

properly construed to require processing of a user identification with appended zero bits. Independent claims 3, 5, 7, and 9 each require a ½ rate convolutional encoder for encoding a 16 bit user identification code with eight appended zero bits. In the case of claims 3 and 5, which each claim a user equipment, the resulting code is used in descrambling a HS-SCCH. In the case of claims 7 and 9, which each claim a base station, the result is used in scrambling a HS-SCCH. Independent claims 1, 3, 5, 7, and 9 are not required by UMTS at least because the UMTS specification does not require encoding of a user identification with appended zero bits to produce a code for scrambling or descrambling a high speed shared control channel. Moreover, each independent claim with "means" language subject to construction in accordance with 35 U.S.C. 112 ¶ 6 is not essential at least because UMTS does not require the corresponding structure, if any, in the patent specification, or its equivalents.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

## U.S. Patent No. 6,980,538

The '538 patent claims a method for reacquisition of a subscriber unit. A subscriber unit determines a timing difference between a subscriber unit's transmission of an access signal that is epoch-aligned with a received pilot signal and reception of a

104

confirmation signal and stores the timing difference. The timing difference is used for subsequent subscriber unit reacquisitions. Claims 1, 2, 3, 4, 5, 13, and 18 are not essential at least because UMTS does not require calculating a delay value, at a mobile station, between an access signal and a confirmation signal and storing the delay. Claims 1, 2, 3, 4, 5, 13, and 18 are further not essential because UMTS does not require epoch alignment of an access signal with a pilot signal. See 25.214 – 6.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

U.S. Patent No. 6,980,615

The '615 patent requires and claims a method for synchronizing a base station determined to be out-of-synchronization by using a neighboring base station. According to independent claims 1 and 10, when a timing accuracy value associated with a base station exceeds a threshold, a time difference is calculated between the time value of the over-threshold base station and a neighboring base station having a time quality value better than that of the over-threshold base station. The time difference calculated between the out-of-sync base station and the neighboring base station is used to update the timing of the over-threshold base station.

105

Claims 1 and 10 are not essential to the UMTS specification at least because UMTS does not require the use of neighboring base stations in adjusting a time of a base station determined to have a timing accuracy value greater than a threshold value, as required by each of claims 1 and 10. See, for example, 25.104.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

**U.S. Patent No. 6,985,467**

The '467 patent claims a method and system for rapidly acquiring a spreading code. Independent claims 1, 7, 12, 18, 23, and 29 require generation of long codes from multiple short codes and modulation of a plurality of long codes onto a carrier at a plurality of phases. All independent claims also require that short codes are embedded in each long code.

Claims 1, 7, 12, 18, 23, and 29 are not essential to UMTS because UMTS does not require the generation of long codes from multiple short codes. See 25.213 – 4.3.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially

106

essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

## U.S. Patent No. 6,993,001

The '001 patent claims a system, method, and apparatus for a modular base station which uses multiple co-located base stations working together to communicate with a plurality of subscriber units. Each base station transmits a global pilot channel signal at full power for a discrete time interval that is different from the time interval in which each of the other base stations transmits its pilot codes at full power.

The '001 patent is not essential at least because UMTS does not mandate a modular base station, and in particular, does not mandate the claimed design. In particular, independent claims 1, 12, and 13 are not essential at least because the UMTS specification does not require a scalable base station configured from up to a select maximum number n of modular colocated base station units for supporting incremental communication capacity based on the number of modular base stations, each station for communicating with a predefined number of mobile terminals and each base station transmitting a unique CDMA global pilot channel signal at a full power level for a discrete limited time interval, which is distinct from the time intervals of all other base stations in the scalable base station configuration.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially

essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

**U.S. Patent No. 7,020,111**

The '111 patent claims a system for rapidly acquiring a spreading code. The only independent claim, claim 1, includes a requirement for an acquisition circuit for acquiring from a communication channel the plurality of long codes by searching in parallel N/P chips of the plurality of long codes, where P is the number of long codes and N is the number of chips in each long code.

Claim 1 of the '111 patent is not essential to UMTS because UMTS does not require search in parallel of N/P chips of a long code. The UMTS specification does not specify how the long code should be searched, and more importantly, does not require the use of the particular manner of searching in parallel N/P chips, as claimed in the '111 patent. UMTS's discussion and treatment of the long code does not specify any particular manner for searching the long code. See 25.213 – 4.3.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

**U.S. Patent No. 7,020,125**

The '125 patent claims a method for a system having spread spectrum and narrow band uses. The base station produces a spread spectrum signal, notch filters it at frequencies used by narrow band users located in the selected and adjacent sectors, and transmits the notch filtered signal in the selected sector. Claim 1 is not essential at least because UMTS does not require a system having both spread spectrum and narrow band uses. The co-placement of spread spectrum and narrowband systems would be in the province of the service provider and regulator, not a standards body. Furthermore, the need for a notch filter, if any, would be a function of a specific implementation in a specific place. Additionally, claim 1 is not essential at least because UMTS does not require a base station which notch filters a spread spectrum signal at frequencies used by narrow band users located in the selected sector and sectors of base stations other than the selected base station being adjacent to the selected sector. See, for example, 25.104, 25.201 and 25.213. Claim 1 is further not essential at least because UMTS does not require transmitting the notch filtered signal in a selected sector.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

## U.S. Patent No. 7,020,151

The '151 patent has two independent claims purportedly covering an apparatus and method for a radio network controller. Claims 1 and 2 require flow control entity for controlling a flow of data from each of a plurality of sources based on a permitted, specified amount of data to buffer for transfer over a forward access common channel allotted to the particular source. Claims 1 and 2 are not essential at least because UTMS does not require a medium access controller wherein each source has a specified amount of data buffer.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

## U.S. Patent No. 7,046,754

The '754 patent claims a method for a UE to establish a communication link. According to the only independent claim—claim 1—the UE receives a communication signal at an initial frequency. The UE processes the signal to acquire the primary scrambling code, where retrieving the scrambling code is a code decision. A search frequency of the UE is adjusted in response to the code decision.

The '754 patent is not essential to UMTS at least because the UMTS specification does not include a requirement for a UE to attempt to acquire a second cell when the UE

110

is rejected by the first cell. In particular, UMTS does not require an adjustment of a search frequency in response to a code decision. See, for example, 25.214 – Annex C, which provides an exemplary cell search procedure but does not require the particular procedure claimed in the '754 patent.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

**U.S. Patent No. 7,072,380**

The '380 patent claims a system, including a base station and subscriber unit, for maintaining control of power in a spread-spectrum system. The claims require that a subscriber sends to a base station, using spread spectrum modulation, an SU-spreading code on a status channel. The base station detects the SU-spreading code and sends to the SU a BS-spreading code on a checkup channel. In response to detection of the BS-spreading code, the subscriber transmits a message. If no BS-spreading code is detected, the SU increases its transmit power.

Claims 1, 3, and 5 are not required by UMTS because UMTS does not require a status channel and a check-up channel. Even if attempts were made to read claims 1, 3, and 5 on the random access procedure of UMTS, UMTS does not require that user

111

equipment (UE) send to a base station a spread spectrum code on a status channel.  In

particular, the RACH preamble is not spread.  See 25.211–5, 25.214 – 6.

For the foregoing reasons, this patent is not essential, as that term is used by

ETSI.  In light of the disagreement between the parties regarding the ETSI's use of the

term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically

essential.  Moreover, Nokia contends that whether or not the patent is commercially

essential is not relevant to InterDigital's ETSI declaration regarding this patent and

therefore neither contests nor concedes the commercial essentiality of this patent.


**U.S. Patent No. 7,085,583**

The '583 patent claims an apparatus and method for controlling transmit power

during the establishment of communications.  Independent claims 1 and 9 are not

essential at least because the power control signal is not required by UMTS.  Even if this

claim were read on the UMTS random access procedure, the AICH would not be the

claimed power control signal because it does not control the power of access signals as

claimed.  Independent claims 1, 3, 9, 16, 23, 28, 33, 68, and 99 are not essential at least

because the claimed "access signal" or "second code" is an access code transmitted at a

slow ramp-up of transmitted power following receipt of an indication that a first short

code at a faster ramp-up was detected; UMTS does not require transmission of a second

code at a slower ramp-up rate following receipt of an indication that a first short code at a

faster ramp-up was detected.  Independent claims 134 and 166 are not essential at least

because UMTS does not require transmission of a first signal that does not carry access

message data.  Even if the RACH preamble of UMTS were construed as the claimed first

signal, the RACH preamble carries information that can be used to direct an acquisition indicator to the transmitting user.

Moreover, each independent claim with "means" language subject to construction in accordance with 35 U.S.C. 112 ¶ 6 is not essential at least because UMTS does not require the corresponding structure, if any, in the patent specification, or its equivalents.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

**U.S. Patent No. 7,110,383**
**U.S. Patent No. 7,072,290**
**U.S. Patent No. 7,106,719**
**U.S. Patent No. 7,110,384**
**U.S. Patent No. 7,110,385**
**U.S. Patent No. 7,110,386**

The '383 patent claims an apparatus and method for estimating channel response for a combined signal over a shared spectrum. The claimed receiver samples the received signal at a multiple of a chip rate, estimates a channel response, and determines a spread data vector. According to each independent claim, each received data signal experiences a similar channel response. Independent claims 1, 8, 14, 20, 26, 32, 38, 42, 46, 50, 58, 66, 74, 80, 86, 92, 97, and 102 are not essential to UMTS at least because UMTS does not specify any particular receiver design. The UMTS specification does not include a requirement for any particular channel estimation algorithm at either the base station or

the UE, and in particular, does not include a requirement for performing channel estimation in the specific manner claimed. Furthermore, the independent claims require that each received data signal experiences a similar channel response. This assumption is not found in the UMTS specification, it runs counter to prevailing engineering understanding of wireless signal propagation, and would not be accepted in engineering practice. Individual channel responses vary with the propagation path of the signal, and can vary significantly.

The '290, '719, '384, '385, and '386 patents are continuations of the '383 patent. The '290, '384, and '385 claim aspects of a base station; the '719 and '386 claims aspects of a terminal. All independent claims of the five patents claim an apparatus or method for sampling the received signal at a multiple of a chip rate, estimating a channel response, and determining a spread data vector, and all require that each received data signal experience a similar channel response. As described above, all claims in all of these patents are not essential to UMTS at least because UMTS does not specify any particular receiver design. The UMTS specification does not include a requirement for any particular channel estimation algorithm at either the base station or the UE, and in particular, does not include a requirement for performing channel estimation in the specific manner claimed. Furthermore, the independent claims are not essential to UMTS at least because all claims require that each received data signal experiences a similar channel response. This assumption is not found in the UMTS specification, it runs counter to prevailing engineering understanding of wireless signal propagation, and would not be accepted in engineering practice. Individual channel responses vary with the propagation path of the signal, and can vary significantly.

114

Moreover, each independent claim with "means" language subject to construction in accordance with 35 U.S.C. 112 ¶ 6 is not essential at least because UMTS does not require the corresponding structure, if any, in the patent specification, or its equivalents.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

## U.S. Patent No. 7,123,600

The '600 patent claims a system and method for base station acquisition by the UE. Independent claims 1, 3, 5, 7, and 9 are not essential at least because UMTS does not require transmission of an access signal using spread-spectrum modulation. Even if the RACH preamble were construed as an "access signal," the RACH preamble cannot meet the limitations of the claims because the RACH preamble is not spread.

Moreover, each independent claim with "means" language subject to construction in accordance with 35 U.S.C. 112 ¶ 6 is not essential at least because UMTS does not require the corresponding structure, if any, in the patent specification, or its equivalents.

For the foregoing reasons, this patent is not essential, as that term is used by ETSI. In light of the disagreement between the parties regarding the ETSI's use of the term "essential," Nokia adds that, for the foregoing reasons, the patent is not technically essential. Moreover, Nokia contends that whether or not the patent is commercially

115

essential is not relevant to InterDigital's ETSI declaration regarding this patent and therefore neither contests nor concedes the commercial essentiality of this patent.

116

**U.S. Patent No. 5,260,967**

InterDigital omitted this patent from its 2004 declaration to ETSI. InterDigital admitted that its 2004 declaration superseded its 2001 declaration. *See* Boles Tr. Vol. 1, 114-15. InterDigital therefore has disclaimed the essentiality of this patent.

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (*see, e.g.,* Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

117

**U.S. Patent No. 5,410,568**

InterDigital omitted this patent from its 2004 declaration to ETSI. InterDigital admitted that its 2004 declaration superseded its 2001 declaration. See Boles Tr. Vol. 1, 114-15. InterDigital therefore has disclaimed the essentiality of this patent.

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

118

**U.S. Patent No. 6,463,074**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,577,668**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those

119

concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see. e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

U.S. Patent No. 6,577,669

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has

120

contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,584,139**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning

121

TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,587,499**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

## U.S. Patent No. 6,587,697

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by

123

the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made

public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio

including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without

limitation, the right to challenge the essentiality and validity of this patent.

## U.S. Patent No. 6,590,927

InterDigital declared this patent essential to UMTS, a 3G standard encompassing

two distinct technologies: those concerning time division duplexing ("TDD") and those

concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely

implemented, but for all practical purposes UMTS-TDD has not been implemented for

wireless mobile phone applications. InterDigital declared this patent to ETSI and has

contended that manufacturers must pay to use its essential patents, including this one,

thereby claiming that this patent relates to technology that manufacturers are currently

implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning

TDD, and InterDigital's essentiality declaration and indication that payment must be

made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital

granted Nokia a license to its TDD technology, including patents and patent applications,

in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by

the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made

public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio

including this TDD-related patent, those statements are false and/or misleading.

124

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

## U.S. Patent No. 6,597,723

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

125

**U.S. Patent No. 6,597,724**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,600,773**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those

concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely

implemented, but for all practical purposes UMTS-TDD has not been implemented for

wireless mobile phone applications. InterDigital declared this patent to ETSI and has

contended that manufacturers must pay to use its essential patents, including this one,

thereby claiming that this patent relates to technology that manufacturers are currently

implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning

TDD, and InterDigital's essentiality declaration and indication that payment must be

made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital

granted Nokia a license to its TDD technology, including patents and patent applications,

in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by

the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made

public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio

including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without

limitation, the right to challenge the essentiality and validity of this patent.

U.S. Patent No. 6,603,797

InterDigital declared this patent essential to UMTS, a 3G standard encompassing

two distinct technologies: those concerning time division duplexing ("TDD") and those

concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely

implemented, but for all practical purposes UMTS-TDD has not been implemented for

wireless mobile phone applications. InterDigital declared this patent to ETSI and has

127

contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

## U.S. Patent No. 6,603,798

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning

128

TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

U.S. Patent No. 6,606,343

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

129

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,606,345**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by

130

the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,615,054**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

131

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,633,602**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (*see, e.g.*, Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

132

U.S. Patent No. 6,690,711

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

U.S. Patent No. 6,717,927

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those

concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,717,930**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has

134

contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,745,045**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning

135

TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

U.S. Patent No. 6,795,417

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

136

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,807,192**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by

137

the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

## U.S. Patent No. 6,831,941

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

138

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,845,088**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

139

**U.S. Patent No. 6,845,104**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,845,122**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those

140

concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufactures are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,850,556**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies:  those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has

141

contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,874,113**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning

142

TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

U.S. Patent No. 6,885,649

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

143

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

## U.S. Patent No. 6,909,901

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by

144

the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made

public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio

including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without

limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,934,271**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing

two distinct technologies: those concerning time division duplexing ("TDD") and those

concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely

implemented, but for all practical purposes UMTS-TDD has not been implemented for

wireless mobile phone applications. InterDigital declared this patent to ETSI and has

contended that manufacturers must pay to use its essential patents, including this one,

thereby claiming that this patent relates to technology that manufacturers are currently

implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning

TDD, and InterDigital's essentiality declaration and indication that payment must be

made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital

granted Nokia a license to its TDD technology, including patents and patent applications,

in the TDD Development Agreement, (see, *e.g.*, Article 4 and section 4.2), executed by

the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made

public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio

including this TDD-related patent, those statements are false and/or misleading.

145

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

U.S. Patent No. 6,947,402

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

146

**U.S. Patent No. 6,956,889**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,983,008**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those

147

concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely

implemented, but for all practical purposes UMTS-TDD has not been implemented for

wireless mobile phone applications. InterDigital declared this patent to ETSI and has

contended that manufacturers must pay to use its essential patents, including this one,

thereby claiming that this patent relates to technology that manufacturers are currently

implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning

TDD, and InterDigital's essentiality declaration and indication that payment must be

made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital

granted Nokia a license to its TDD technology, including patents and patent applications,

in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by

the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made

public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio

including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without

limitation, the right to challenge the essentiality and validity of this patent.

U.S. Patent No. 6,985,457

InterDigital declared this patent essential to UMTS, a 3G standard encompassing

two distinct technologies: those concerning time division duplexing ("TDD") and those

concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely

implemented, but for all practical purposes UMTS-TDD has not been implemented for

wireless mobile phone applications. InterDigital declared this patent to ETSI and has

148

contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

U.S. Patent No. 6,993,063

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning

TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

U.S. Patent No. 6,996,082

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

150

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 7,023,835**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by

151

the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 7,046,655**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

U.S. Patent No. 7,095,723

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

153

**U.S. Patent No. 7,102,994**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 7,120,188**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those

concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. RE35,402**

InterDigital declared this patent essential to UMTS, a 3G standard encompassing two distinct technologies: those concerning time division duplexing ("TDD") and those concerning frequency division duplexing ("FDD"). UMTS-FDD has been widely implemented, but for all practical purposes UMTS-TDD has not been implemented for wireless mobile phone applications. InterDigital declared this patent to ETSI and has

155

contended that manufacturers must pay to use its essential patents, including this one, thereby claiming that this patent relates to technology that manufacturers are currently implementing, i.e., UMTS-FDD. This patent, however, relates to technology concerning TDD, and InterDigital's essentiality declaration and indication that payment must be made for this patent are false and misleading.

Moreover, Nokia is already specifically licensed to this patent. InterDigital granted Nokia a license to its TDD technology, including patents and patent applications, in the TDD Development Agreement, (see, e.g., Article 4 and section 4.2), executed by the parties and effective January 29, 1999. Thus, to the extent that InterDigital has made public statements implying that Nokia must pay to use InterDigital's 3G patent portfolio including this TDD-related patent, those statements are false and/or misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

156

**U.S. Patent No. 5,093,840**

InterDigital omitted this patent from its 2004 declaration to ETSI. InterDigital admitted that its 2004 declaration superseded its 2001 declaration. See Boles Tr. Vol. 1, 114-15. InterDigital therefore has disclaimed the essentiality of this patent.

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby claiming that those manufacturers are not already licensed to these patents. A substantial portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all rights to the patent were included in specific licenses granted with respect to the practice of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 5,179,571**

InterDigital omitted this patent from its 2004 declaration to ETSI. InterDigital admitted that its 2004 declaration superseded its 2001 declaration. See Boles Tr. Vol. 1, 114-15. InterDigital therefore has disclaimed the essentiality of this patent.

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby

157

claiming that those manufacturers are not already licensed to these patents. A substantial

portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all

rights to the patent were included in specific licenses granted with respect to the practice

of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public

statements implying that Nokia or other manufacturers must take an additional license to

this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without

limitation, the right to challenge the essentiality and validity of this patent.

U.S. Patent No. 5,228,056

InterDigital declared this patent essential to UMTS standard and contends that the

manufacturing industry must license its essential patents, including this one, thereby

claiming that those manufacturers are not already licensed to these patents. A substantial

portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all

rights to the patent were included in specific licenses granted with respect to the practice

of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public

statements implying that Nokia or other manufacturers must take an additional license to

this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without

limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 5,274,665**

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby claiming that those manufacturers are not already licensed to these patents. A substantial portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all rights to the patent were included in specific licenses granted with respect to the practice of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 5,299,226**

InterDigital omitted this patent from its 2004 declaration to ETSI. InterDigital admitted that its 2004 declaration superseded its 2001 declaration. See Boles Tr. Vol. 1, 114-15. InterDigital therefore has disclaimed the essentiality of this patent.

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby claiming that those manufacturers are not already licensed to these patents. A substantial portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all rights to the patent were included in specific licenses granted with respect to the practice

159

of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

U.S. Patent No. 5,345,467

InterDigital omitted this patent from its 2004 declaration to ETSI. InterDigital admitted that its 2004 declaration superseded its 2001 declaration. See Boles Tr. Vol. 1, 114-15. InterDigital therefore has disclaimed the essentiality of this patent.

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby claiming that those manufacturers are not already licensed to these patents. A substantial portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all rights to the patent were included in specific licenses granted with respect to the practice of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

160

**U.S. Patent No. 5,365,544**

InterDigital omitted this patent from its 2004 declaration to ETSI. InterDigital admitted that its 2004 declaration superseded its 2001 declaration. See Boles Tr. Vol. 1, 114-15. InterDigital therefore has disclaimed the essentiality of this patent.

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby claiming that those manufacturers are not already licensed to these patents. A substantial portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all rights to the patent were included in specific licenses granted with respect to the practice of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 5,367,533**

InterDigital omitted this patent from its 2004 declaration to ETSI. InterDigital admitted that its 2004 declaration superseded its 2001 declaration. See Boles Tr. Vol. 1, 114-15. InterDigital therefore has disclaimed the essentiality of this patent.

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby

claiming that those manufacturers are not already licensed to these patents. A substantial

portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all

rights to the patent were included in specific licenses granted with respect to the practice

of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public

statements implying that Nokia or other manufacturers must take an additional license to

this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without

limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 5,420,896**

InterDigital omitted this patent from its 2004 declaration to ETSI. InterDigital

admitted that its 2004 declaration superseded its 2001 declaration. See Boles Tr. Vol. 1,

114-15. InterDigital therefore has disclaimed the essentiality of this patent.

InterDigital declared this patent essential to UMTS standard and contends that the

manufacturing industry must license its essential patents, including this one, thereby

claiming that those manufacturers are not already licensed to these patents. A substantial

portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all

rights to the patent were included in specific licenses granted with respect to the practice

of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public

statements implying that Nokia or other manufacturers must take an additional license to

this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

## U.S. Patent No. 5,506,864

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby claiming that those manufacturers are not already licensed to these patents. A substantial portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all rights to the patent were included in specific licenses granted with respect to the practice of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

## U.S. Patent No. 5,535,238

InterDigital omitted this patent from its 2004 declaration to ETSI. InterDigital admitted that its 2004 declaration superseded its 2001 declaration. See Boles Tr. Vol. 1, 114-15. InterDigital therefore has disclaimed the essentiality of this patent.

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby

163

claiming that those manufacturers are not already licensed to these patents. A substantial portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all rights to the patent were included in specific licenses granted with respect to the practice of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

U.S. Patent No. 5,631,921

InterDigital omitted this patent from its 2004 declaration to ETSI. InterDigital admitted that its 2004 declaration superseded its 2001 declaration. See Boles Tr. Vol. 1, 114-15. InterDigital therefore has disclaimed the essentiality of this patent.

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby claiming that those manufacturers are not already licensed to these patents. A substantial portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all rights to the patent were included in specific licenses granted with respect to the practice of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without

limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 5,663,956**

InterDigital declared this patent essential to UMTS standard and contends that the

manufacturing industry must license its essential patents, including this one, thereby

claiming that those manufacturers are not already licensed to these patents. A substantial

portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all

rights to the patent were included in specific licenses granted with respect to the practice

of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public

statements implying that Nokia or other manufacturers must take an additional license to

this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without

limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 5,974,039**

InterDigital declared this patent essential to UMTS standard and contends that the

manufacturing industry must license its essential patents, including this one, thereby

claiming that those manufacturers are not already licensed to these patents. A substantial

portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all

rights to the patent were included in specific licenses granted with respect to the practice

of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,226,316**

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby claiming that those manufacturers are not already licensed to these patents. A substantial portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all rights to the patent were included in specific licenses granted with respect to the practice of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,396,824**

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby

166

claiming that those manufacturers are not already licensed to these patents. A substantial portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all rights to the patent were included in specific licenses granted with respect to the practice of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

U.S. Patent No. 6,873,643

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby claiming that those manufacturers are not already licensed to these patents. A substantial portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all rights to the patent were included in specific licenses granted with respect to the practice of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,917,601**

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby claiming that those manufacturers are not already licensed to these patents. A substantial portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all rights to the patent were included in specific licenses granted with respect to the practice of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. 6,925,071**

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby claiming that those manufacturers are not already licensed to these patents. A substantial portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all rights to the patent were included in specific licenses granted with respect to the practice of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public

statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

## U.S. Patent No. 7,020,114

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby claiming that those manufacturers are not already licensed to those patents. A substantial portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all rights to the patent were included in specific licenses granted with respect to the practice of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

## U.S. Patent No. 7,099,292

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby claiming that those manufacturers are not already licensed to these patents. A substantial portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all rights to the patent were included in specific licenses granted with respect to the practice of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

**U.S. Patent No. RE38,627**

InterDigital omitted this patent from its 2004 declaration to ETSI. InterDigital admitted that its 2004 declaration superseded its 2001 declaration. See Boles Tr. Vol. 1, 114-15. InterDigital therefore has disclaimed the essentiality of this patent.

InterDigital declared this patent essential to UMTS standard and contends that the manufacturing industry must license its essential patents, including this one, thereby claiming that those manufacturers are not already licensed to these patents. A substantial portion of the manufacturing industry, however, is already licensed to this patent.

Nokia, like much of the industry, does not need a license to this patent because all rights to the patent were included in specific licenses granted with respect to the practice of the IS-95 CDMA standard. Thus, to the extent that InterDigital has made public statements implying that Nokia or other manufacturers must take an additional license to this patent, those statements are false and misleading.

Nokia reserves all of its rights with respect to this patent, including without limitation, the right to challenge the essentiality and validity of this patent.

170

ATTACHMENT B

1.  U.S. Patent No. 5,081,643
2.  U.S. Patent No. 5,093,840
3.  U.S. Patent No. 5,179,571
4.  U.S. Patent No. 5,260,967
5.  U.S. Patent No. 5,299,226
6.  U.S. Patent No. 5,345,467
7.  U.S. Patent No. 5,351,269
8.  U.S. Patent No. 5,363,403
9.  U.S. Patent No. 5,365,544
10. U.S. Patent No. 5,367,533
11. U.S. Patent No. 5,410,568
12. U.S. Patent No. 5,420,896
13. U.S. Patent No. 5,469,468
14. U.S. Patent No. 5,535,238
15. U.S. Patent No. 5,553,062
16. U.S. Patent No. 5,574,747
17. U.S. Patent No. 5,588,020
18. U.S. Patent No. 5,631,921
19. U.S. Patent No. 5,703,874
20. U.S. Patent No. 5,719,852
21. U.S. Patent No. 5,748,687
22. U.S. Patent No. 5,796,776
23. U.S. Patent No. 5,799,010

24. U.S. Patent No. 5,835,527

25. U.S. Patent No. 5,841,768

26. U.S. Patent No. 5,995,538

27. U.S. Patent No. 6,005,898

28. U.S. Patent No. 6,011,789

29. U.S. Patent No. 6,014,373

30. U.S. Patent No. 6,115,406

31. U.S. Patent No. 6,157,619

32. U.S. Patent No. 6,181,949

33. U.S. Patent No. 6,215,778

34. U.S. Patent No. RE38,627

ATTACHMENT C

U.S. Patent No. 5,260,967
U.S. Patent No. 5,410,568
U.S. Patent No. 6,463,074
U.S. Patent No. 6,577,668
U.S. Patent No. 6,577,669
U.S. Patent No. 6,584,139
U.S. Patent No. 6,587,499
U.S. Patent No. 6,587,697
U.S. Patent No. 6,590,927
U.S. Patent No. 6,597,723
U.S. Patent No. 6,597,724
U.S. Patent No. 6,600,773
U.S. Patent No. 6,603,797
U.S. Patent No. 6,603,798
U.S. Patent No. 6,606,343
U.S. Patent No. 6,606,345
U.S. Patent No. 6,615,054
U.S. Patent No. 6,633,602
U.S. Patent No. 6,690,711
U.S. Patent No. 6,717,927
U.S. Patent No. 6,717,930
U.S. Patent No. 6,745,045
U.S. Patent No. 6,795,417

U.S. Patent No. 6,807,192

U.S. Patent No. 6,831,941

U.S. Patent No. 6,845,088

U.S. Patent No. 6,845,104

U.S. Patent No. 6,845,122

U.S. Patent No. 6,850,556

U.S. Patent No. 6,874,113

U.S. Patent No. 6,885,649

U.S. Patent No. 6,909,901

U.S. Patent No. 6,934,271

U.S. Patent No. 6,947,402

U.S. Patent No. 6,956,889

U.S. Patent No. 6,983,008

U.S. Patent No. 6,985,457

U.S. Patent No. 6,993,063

U.S. Patent No. 6,996,082

U.S. Patent No. 7,023,835

U.S. Patent No. 7,046,655

U.S. Patent No. 7,095,723

U.S. Patent No. 7,102,994

U.S. Patent No. 7,120,188

U.S. Patent No. RE35,402

ATTACHMENT D

U.S. Patent No. 5,093,840

U.S. Patent No. 5,179,571

U.S. Patent No. 5,228,056

U.S. Patent No. 5,274,665

U.S. Patent No. 5,299,226

U.S. Patent No. 5,345,467

U.S. Patent No. 5,365,544

U.S. Patent No. 5,367,533

U.S. Patent No. 5,420,896

U.S. Patent No. 5,506,864

U.S. Patent No. 5,535,238

U.S. Patent No. 5,631,921

U.S. Patent No. 5,663,956

U.S. Patent No. 5,974,039

U.S. Patent No. 6,226,316

U.S. Patent No. 6,396,824

U.S. Patent No. 6,873,643

U.S. Patent No. 6,917,601

U.S. Patent No. 6,925,071

U.S. Patent No. 7,020,114

U.S. Patent No. 7,099,292

U.S. Patent No. RE38,627

<u>CERTIFICATE OF SERVICE</u>

I, Jack B. Blumenfeld, hereby certify that copies of Plaintiffs' Statement

Pursuant to Second Discovery Order were caused to be served this 14th day of

December, 2006 upon the following in the manner indicated:

<u>BY HAND AND E-MAIL</u>

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

<u>BY E-MAIL</u>

Dan D. Davison
Fulbright & Jaworski LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201-2784

Jack B. Blumenfeld (#1014)