# EXHIBIT R

LEXSEE



Analysis
As of: Feb 20, 2007

JAN K. VODA, M.D., Plaintiff-Appellee, v. CORDIS CORPORATION, Defendant-Appellant.

05-1238

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2007 U.S. App. LEXIS 2134

February 1, 2007, Decided

**PRIOR HISTORY:** [*1] Appealed from: United States District Court for the Western District of Oklahoma. Judge Tim Leonard. Voda v. Cordis Corp., 2004 U.S. Dist. LEXIS 28102 (W.D. Okla., Aug. 2, 2004)

**DISPOSITION:** VACATED and REMANDED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellee patent owner sued appellant competitor for infringement of the owner's patents relating to guiding catheters for use in interventional cardiology. The competitor appealed the interlocutory order of the United States District Court for the Western District of Oklahoma which granted the owner leave to amend the complaint to assert infringement of foreign patents based on supplemental jurisdiction under 28 U.S.C.S. § 1367.

**OVERVIEW:** The owner contended that the competitor directly infringed both domestic and foreign patents relating to the same invention, and thus it was appropriate for the district court to exercise supplemental jurisdiction over the claims involving the foreign patents. The competitor argued that the federal court was an inappropriate forum for the application of the patent laws of several foreign countries to the owner's claims. The appellate court held that, even assuming that the claims involving the domestic and foreign patents constituted the same case or controversy, the exercise of supplemental jurisdiction over the foreign patent claims was not warranted based on considerations of judicial economy, convenience, fairness, and comity. Several treaties to which the

U.S. was a party recognized the independence of each country's patent adjudication systems, and did not provide for federal court adjudication of foreign patent law issues. Further, there was no showing that foreign courts would not protect the owner's rights which were created by the foreign sovereign, and the foreign courts could more capably and efficiently apply foreign patent law.

**OUTCOME:** The order granting the owner leave to assert foreign patent infringement claims was vacated, and the case was remanded for further proceedings.

**CORE TERMS:** patent, supplemental jurisdiction, foreign patent, infringement, foreign patents, foreign law, treaty, comity, sovereign, operative fact, nucleus, original jurisdiction, colleagues, convenience, patent infringement, subject matter jurisdiction, discretionary, conveniens, catheter, domestic, judicial proceeding, amicus curiae, patent law, abused, exercise of discretion, judicial authority, judicial economy, foreign country, local action, abstention

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN1] A proper exercise of supplemental subject matter jurisdiction pursuant to 28 U.S.C.S. § 1367 requires both the presence of jurisdiction under § 1367(a) and an appropriate decision to exercise that jurisdiction under § 1367(c).

2007 U.S. App. LEXIS 2134, *

*Patent Law > Jurisdiction & Review > Standards of Review > General Overview*
[HN2] Where a question is unique to U.S. patent law, the U.S. Court of Appeals for the Federal Circuit applies the law of its circuit rather than that of the regional circuit.

*Civil Procedure > Jurisdiction > General Overview*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN3] An appellate court reviews jurisdiction, a question of law, de novo. A party seeking the exercise of jurisdiction in its favor bears the burden of establishing that such jurisdiction exists.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Limited Jurisdiction*
[HN4] The district courts of the United States are courts of limited jurisdiction. They possess only that power authorized by the U.S. Constitution and statute.

*Civil Procedure > Federal & State Interrelationships > Abstention*
[HN5] Federal district courts may be obligated not to decide state law claims (or to stay their adjudication) where one of the abstention doctrines articulated by the U.S. Supreme Court applies.

*Constitutional Law > The Judiciary > Jurisdiction > General Overview*
[HN6] See U.S. Const. art. III, § 2.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN7] 28 U.S.C.S. § 1367 is a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction. The presence of other claims in the complaint, over which a district court may lack original jurisdiction, is of no moment.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN8] See 28 U.S.C.S. § 1367(a).

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN9] 28 U.S.C.S. § 1367(a) authorizes supplemental jurisdiction only over claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under U.S. Const. art. III. This statutory "case or controversy" language extends to the limits of U.S. Const. art. III.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN10] 28 U.S.C.S. § 1367(a) provides the statutory authority for federal courts to exercise supplemental jurisdiction over claims that are outside the limited original jurisdiction of federal district courts, including those within the general jurisdiction of state courts. Therefore, because the inherent powers of state courts permit them to entertain transitory causes of action arising under the laws of foreign sovereigns, § 1367 supplemental jurisdiction includes foreign law claims.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN11] The U.S. Supreme Court interprets the statutory requirement of 28 U.S.C.S. § 1367(a), that foreign claims be so related to claims in the action within such original jurisdiction that they form part of the same case or controversy, as Congress's codification of the Court's principles of pendent and ancillary jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that derive from a common nucleus of operative fact, such that the relationship between the federal claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case.

*Civil Procedure > Appeals > Standards of Review > General Overview*
[HN12] Although a determination of foreign law is a question of law, an appellate court cannot take any expert testimony to determine the extent of the differences in the governing laws. Fed. R. Civ. P. 44.1.

*Civil Procedure > Jurisdiction > General Overview*
*Civil Procedure > Venue > General Overview*
*Civil Procedure > Discovery > General Overview*

2007 U.S. App. LEXIS 2134, *

[HN13] Where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN14] A federal claim must have substance sufficient to confer subject matter jurisdiction on the court. State and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
[HN15] 28 U.S.C.S. § 1367 reaffirms that the exercise of supplemental jurisdiction is within the discretion of a district court. A district court's discretion, however, is not unfettered, and an appellate court reviews the district court's decision not to decline supplemental jurisdiction under § 1367(c) under an abuse of discretion standard.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN16] See 28 U.S.C.S. § 1367(c).

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN17] The Supreme Court has noted that 28 U.S.C.S. § 1367(c) reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.

*Constitutional Law > Supremacy Clause > Supreme Law of the Land*
[HN18] See U.S. Const. art. VI, cl. 2.

*International Law > Treaty Interpretation > Particular Treaties > General Overview*
*Patent Law > Jurisdiction & Review > General Overview*
[HN19] The Paris Convention for the Protection of Industrial Property (Paris Convention), art. 4bis, Aug. 25, 1973, 24 U.S.T. 2140, states that U.S. patents shall be independent of patents obtained for the same invention in other countries and that the foregoing provision is to be understood in an unrestricted sense, both as regards the grounds for nullity and forfeiture. In addition, Paris Convention art. 2(3) states that the provisions of the laws of each of the countries of the Union relating to judicial and administrative procedure and to jurisdiction, which may be required by the laws on industrial property are expressly reserved. The Paris Convention thus clearly expresses the independence of each country's sovereign patent systems and their systems for adjudicating those patents. Nothing in the Paris Convention contemplates nor allows one jurisdiction to adjudicate the patents of another and, as such, U.S. courts should not determine the validity and infringement of foreign patents.

*International Law > Treaty Interpretation > Particular Treaties > General Overview*
*Patent Law > General Overview*
[HN20] See Patent Cooperation Treaty, art. 27(5), Jan. 24, 1978, 28 U.S.T. 7645.

*International Law > Treaty Interpretation > Particular Treaties > General Overview*
*Patent Law > General Overview*
[HN21] The Agreement on Trade-Related Aspects of Intellectual Property Rights (TRIPS), Apr. 15, 1994, 1867 U.N.T.S. 154, contains several provisions regarding the enforcement of patents. The Agreement on TRIPS art. 41, § 1 specifies that each country shall ensure that enforcement procedures as specified in the relevant part are available under their law so as to permit effective action against any act of infringement of intellectual property rights. In addition, Agreement on TRIPS art. 41, § 4 states that parties to a proceeding shall have an opportunity for review by a judicial authority of final administrative decisions and, subject to jurisdictional provisions in a member's law concerning the importance of a case, and Agreement on TRIPS art. 41, § 5 states that it is understood that the part does not affect the capacity of members to enforce their law in general.

*Patent Law > Infringement Actions > Exclusive Rights > Limitations*

2007 U.S. App. LEXIS 2134, *

[HN22] The right conferred by a patent under United States law is confined to the United States and its territories.

*International Law > Dispute Resolution > Comity Doctrine > General Overview*
[HN23] Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states.

*International Law > Dispute Resolution > Comity Doctrine > General Overview*
[HN24] Comity, in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

*International Law > Dispute Resolution > Comity Doctrine > General Overview*
[HN25] Whatever laws are carried into execution, within the limits of any government, are considered as having the same effect every where, so far as they do not occasion a prejudice to the rights of the other governments, or their citizens.

*Patent Law > Infringement Actions > Exclusive Rights > Limitations*
[HN26] A patent right is limited by the metes and bounds of the jurisdictional territory that granted the right to exclude. Therefore, a patent right to exclude only arises from the legal right granted and recognized by the sovereign within whose territory the right is located. It would be incongruent to allow the sovereign power of one to be infringed or limited by another sovereign's extension of its jurisdiction.

*Patent Law > Ownership > Patents as Property*
[HN27] See 35 U.S.C.S. § 261.

*Governments > Legislation > Interpretation*
[HN28] The U.S. Supreme Court ordinarily construes ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN29] 28 U.S.C.S. § 1367(c)(2) states that a district court may decline exercising supplemental jurisdiction where a claim substantially predominates over the claim or claims over which the district court has original jurisdiction.

*Civil Procedure > Pretrial Matters > Separate Trials*
[HN30] There may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial. Fed. R. Civ. P. 42(b).

*Civil Procedure > Justiciability > Political Questions > Foreign Affairs*
*International Law > Dispute Resolution > Act of State Doctrine*
[HN31] As a principle of decision binding on federal and state courts alike, the act of state doctrine requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid.

COUNSEL: Mitchell G. Stockwell, Kilpatrick Stockton LLP, of Atlanta, Georgia, argued for plaintiff-appellee. With him on the brief was Jonathan K. Waldrop. Of counsel was John A. Kenney, McAfee & Taft, of Oklahoma City, Oklahoma.

John M. DiMatteo, Willkie Farr & Gallagher LLP, of New York, New York, argued for defendant-appellant. With him on the brief were Kelsey I. Nix and Diane C. Ragosa.

William C. Rooklidge, Howrey LLP, of Irvine, California, for amicus curiae American Intellectual Property Law Association. With him on the brief were Christopher J. Kelly, Mayer, Brown, Rowe & Maw LLP, of Washington, DC; and Claudia Wilson Frost and Sharon A. Israel, of Houston, Texas.

William M. Atkinson, Alston & Bird LLP, of Charlotte, North Carolina, for amicus curiae The Federal Circuit Bar Association. With him on the brief was Charles F. Schill, The Federal Circuit Bar Association, of Washington, DC.

Scott R. McIntosh, Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washing-

Page 4

2007 U.S. App. LEXIS 2134, *

ton, DC, for amicus curiae United States. With [*2] him on the brief were Peter D. Keisler, Assistant Attorney General. Of counsel on the brief were James A. Toupin, General Counsel, John M. Whealan, Solicitor, Cynthia C. Lynch and Joseph G. Piccolo, Associate Solicitors, United States Patent and Trademark Office, of Arlington, Virginia.

George L. Graff, Paul, Hastings, Janofsky & Walker LLP, of New York, New York, for amicus curiae Intellectual Property Owners Association. With him on the brief were J. Jeffrey Hawley, Intellectual Property Owners Association, of Washington, DC, and Douglas K. Norman, Eli Lilly and Company, of Indianapolis, Indiana. Of counsel was Herbert C. Wamsley, Intellectual Property Owners Association, of Washington, DC.

John R. Thomas, Georgetown University Law Center, of Washington, DC, for amici curiae Law Professors.

**JUDGES:** Before NEWMAN, GAJARSA, and PROST, Circuit Judges. Opinion for the court filed by Circuit Judge GAJARSA. Dissenting opinion filed by Circuit Judge NEWMAN.

**OPINION BY:** GAJARSA

**OPINION:** GAJARSA, Circuit Judge.

This is an interlocutory appeal by Cordis Corp. from a decision of the U.S. District Court for the Western District of Oklahoma assuming supplemental subject matter jurisdiction [*3] pursuant to 28 U.S.C. § 1367 over the foreign patent infringement claims of Jan K. Voda, M.D. ("Voda"). The district court established jurisdiction over Voda's original claims of U.S. patent infringement pursuant to § 1338. In a subsequent order, the district court granted Voda leave to amend his complaint to add infringement claims based on foreign patents. Voda's amended complaint alleged infringement taking place outside the United States in violation of patents issued by various foreign countries. The district court found subject matter jurisdiction over the foreign patent claims pursuant to the supplemental jurisdiction statute § 1367. Voda v. Cordis Corp., No. 03-1512, 2004 U.S. Dist. LEXIS 28102 at *2 (W.D. Okla. Aug. 2, 2004). The district court certified its order for interlocutory review pursuant to § 1292(b). We agreed that the interlocutory appeal "involve[s] a controlling question of law to which there is a substantial difference of opinion and for which an immediate appeal may materially advance the ultimate termination of the litigation" and thus, granted Voda's petition for interlocutory appeal of "whether the district court has supplemental subject matter [*4] jurisdiction over Dr. Voda's five foreign patents." Voda v.

Cordis Corp., 122 Fed. App'x 515 (Fed. Cir. 2005). This court has jurisdiction pursuant to § 1292(b) and (c).

In Stein Associates, Inc. v. Heat & Control, Inc., 748 F.2d 653, 658 (Fed. Cir. 1984), this court held that U.S. district courts had no discretionary power to enjoin a party from enforcing a foreign patent before a foreign tribunal. We stated unequivocally that "the issues are not the same, one action involving United States patents and the other involving British patents" and that "[o]nly a British court, applying British law, can determine validity and infringement of British patents." In this case, we are presented with a different issue but one that raises similar concerns: whether a district court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over infringement claims based on foreign patents. For the reasons discussed below, we conclude that the district court erred in granting leave to amend based on § 1367. Accordingly, we vacate the order of the district court granting leave to amend and remand for further proceedings consistent [*5] with this opinion.

**I. BACKGROUND**

The plaintiff-appellee Voda is a resident of Oklahoma City, Oklahoma. The defendant-appellant Cordis is a U.S.-based entity incorporated in Florida. None of the several foreign Cordis affiliates is a party to the present action, and we note that they appear to be separate legal entities. n1 These foreign affiliates have not been joined to this action. n2 To prevent confusion, we refer to the defendant-appellant as "Cordis U.S." The patents at issue relate generally to guiding catheters for use in interventional cardiology. The details of the technology are not essential here. Voda's U.S. patents stem from a common continuation-in-part ("CIP") application filed in October 1992, which provides the written description common to the three U.S. patents at issue in this case: U.S. Patent Nos. 5,445,625 (the '625 patent), 6,083,213 (the '213 patent), and 6,475,195 (the '195 patent). The foreign patents issued from a common Patent Cooperation Treaty ("PCT") application. The PCT application designated the European Patent Office ("EPO") and Canada as recipients. Voda's EPO patent application eventually generated European Pat. No. 0 568 624, British Pat. [*6] No. GB 568 624, French Pat. No. FR568624, and German Pat. No. DE 69 23 20 95. The PCT application also ultimately led to the issuance of Canadian Pat. No. CA 2,100,785.

n1 For example, in addition to Cordis (U.S.), there are Cordis U.K., Ltd., Cordis S.A. (France), Cordis G.m.b.H. (Germany), Cordis S.p.A. (Italy), and Cordis Benelux (Netherlands). All of the Cordis companies, both U.S. and foreign, are

members of the Johnson & Johnson family of companies.

> n2 Therefore, to the extent that the dissent suggests that the district court has personal jurisdiction of the foreign Cordis entities, it is incorrect. See Dissent 1, 10, 19.

Voda sued Cordis U.S. in the United States District Court for the Western District of Oklahoma alleging infringement of his three U.S. patents: claims 1-2 and 5-7 of the '625 patent, claims 1-5 of the '213 patent, and claims 1-6 of the '195 patent. Cordis U.S. answered by asserting noninfringement and invalidity of the U.S. patents.

Voda then moved to amend his complaint to add claims of infringement of the European, British, Canadian, French, and German foreign patents. Voda's amended complaint alleges that "Cordis [U.S.] has [*7] commenced and continues acts of making, selling, offering for sale and selling at least the XB guiding catheter, which is covered by [the several foreign patents] without Dr. Voda's authority. Such acts constitute infringement, under corresponding foreign law of [these several foreign patents]." Cordis U.S. has admitted that "the XB catheters have been sold domestically and internationally since 1994. The XB catheters were manufactured in Miami Lakes, Florida from 1993 to 2001 and have been manufactured in Juarez, Mexico since 2001." Voda's amended complaint asks for damages, fees, and "such other and further relief as this Court deems just and proper." We resolve the jurisdictional issue based upon those allegations, accepting them to be true.

Cordis U.S. opposed Voda's attempt to amend its complaint to add foreign patent infringement claims on the basis that the district court lacked subject matter jurisdiction over such claims. The parties briefed the court regarding its jurisdiction over foreign patent infringement claims under 28 U.S.C. § 1367(a) and its discretion to exercise supplemental jurisdiction under § 1367(c). In a three-page order, the district [*8] court analyzed two circuit court cases discussing supplemental jurisdiction over patent claims, Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368 (Fed. Cir. 1994) (finding no jurisdiction), and Ortman v. Stanray, 371 F.2d 154 (7th Cir. 1967) (affirming district court's denial of a motion to dismiss foreign patent infringement claims). The district court determined that "[t]he allegations in the [proposed] amended complaint demonstrate that this case is more akin to Ortman than to Mars" and thus, that "it would have supplemental jurisdiction over the foreign patent[] claim[s]." Voda v. Cordis, No. CIV-03-1512-L,2004 U.S. Dist. LEXIS 28102 at *3 (August 2, 2004). There-

fore, the district court granted Voda's motion to file his amended complaint. Id.

Cordis U.S. appeals, and in light of this appeal, the proceedings with respect to the foreign patent infringement claims have been stayed. n3 The record indicates that an answer to the amended complaint has not been filed and that discovery has not been taken on the foreign claims. While the record therefore does not establish the defenses Cordis U.S. would raise, Cordis U.S. represents on appeal [*9] that it would raise invalidity of the foreign patents as a defense.

> n3 It appears that the district court conducted a jury trial on Voda's U.S. patent infringement claims, and that the jury found in favor of Voda on May 25, 2006. (Jury Verdict, May 25, 2006.) None of the parties or amicus curiae informed the court of this event, and we do not consider it necessary to our ultimate holding.

[HN1] A proper exercise of subject matter jurisdiction pursuant to § 1367 requires both the presence of jurisdiction under subsection (a) and an appropriate decision to exercise that jurisdiction under subsection (c). For the reasons discussed below, we conclude that the district court erred under subsection (c).

## II. STANDARD OF REVIEW

The existence of supplemental jurisdiction over foreign patent claims based on claims of U.S. patent infringement is [HN2] a question unique to U.S. patent law, and thus, we apply the law of our circuit rather than that of the regional circuit. Mars, 24 F.3d at 1371 ("The issue whether the district court had jurisdiction to hear Mars' claim of Japanese patent infringement is of importance [*10] to the development of the patent law and is clearly a matter that falls within the exclusive subject matter responsibility of this court." (quotation marks and citations omitted)); see Lab. Corp. of Am. Holdings v. Chiron Corp., 384 F.3d 1326, 1330 (Fed. Cir. 2004) (applying Federal Circuit law because we "apply the law of the regional circuit . . . unless the issue pertains to or is unique to patent law, in which case we will apply our own law to both substantive and procedural issues intimately involved in the substance of enforcement of the patent right" (quotation marks omitted)); cf. Unitherm Food Sys. v. Swift-Eckrich, Inc., 546 U.S. 394, 126 S. Ct. 980, 984, 163 L. Ed. 2d 974 (2006) (recognizing that Federal Circuit is bound to apply procedural law of regional circuit in case where issue did not pertain uniquely to patent law).

We have noted that [HN3] "[t]his Court . . . reviews jurisdiction, a question of law, de novo." Dehne v.

2007 U.S. App. LEXIS 2134, *

United States, 970 F.2d 890, 892 (Fed.Cir. 1992) (citation omitted); see also Elder v. Holloway, 510 U.S. 510, 516, 114 S. Ct. 1019, 127 L. Ed. 2d 344 (1994) ("[Q]uestion[s] of law . . . must be resolved de novo on appeal."). "A party seeking the exercise [*11] of jurisdiction in its favor bears the burden of establishing that such jurisdiction exists." Mars, 24 F.3d at 1372 (citing KVOS, Inc. v. Associated Press, 299 U.S. 269, 278, 57 S. Ct. 197, 81 L. Ed. 183 (1936)); cf. DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1861, 164 L. Ed. 2d 589 (2006) ("[P]arties . . . asserting federal jurisdiction[] carry the burden of establishing their standing under Article III."). Here, Voda must carry this burden.

### III. DISCUSSION

The Supreme Court has stated many times that [HN4] the "district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, 550-52, 125 S. Ct. 2611, 2616-17, 162 L. Ed. 2d 502 (2005) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)). In addition, [HN5] "district courts may be obligated not to decide state law claims (or to stay their adjudication) where one of the abstention doctrines articulated by [the Supreme] Court applies." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 174, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997). [*12]

In this case, the parties do not dispute that the Constitution may authorize district courts to hear infringement claims based on foreign patents. See U.S. Const. art. III, § 2 ( [HN6] "[J]udicial Power shall extend . . . to Controversies . . . between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."). Rather, the critical disputed issue is whether there is any statutory basis for such subject matter jurisdiction. n4

> n4  The dissent broadly states that no court has held "that it had no power or authority to receive the foreign issue." Dissent 6. Yet, the first case cited by the dissent to support this broad proposition, written by the dissenting author, held that there was no jurisdiction and alternatively, affirmed the dismissal based on forum non conveniens. See Bonzel v. Pfizer, Inc., 439 F.3d 1358, 1362-65 (Fed. Cir. 2006); see also Mars, 24 F.3d at 1373-75 (holding that no federal question or supplemental jurisdiction existed).

### A. Asserted Statutory Basis

Voda asserts that the district court has supplemental jurisdiction under 28 U.S.C. § 1367 of his foreign [*13] patent infringement claims. n5 The Supreme Court has noted that [HN7] the statute "is a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction." Exxon, 125 S. Ct. at 2620. "The presence of other claims in the complaint, over which the district court may lack original jurisdiction, is of no moment." Id.; cf. Marshall v. Marshall, 126 S. Ct. 1735, 1749, 164 L. Ed. 2d 480 (2006) (stating in diversity context that jurisdiction "is determined by the law of the court's creation and cannot be defeated by the extraterritorial operation of a [state] statute. . ., even though it created the right of action" (quotation marks and citations omitted)).

> n5  Voda has asserted no other statutory basis for subject matter jurisdiction. Therefore, the dissent's assertion that "judicial authority to determine and apply foreign law does not require that the foreign issue is supplemental to a domestic issue," Dissent 8, is irrelevant in this case. Similarly, the cases cited by the dissent that rely on federal question jurisdiction or diversity jurisdiction are inapposite. See, e.g., Uebersee Finanz-Korporation, A.G. v. McGrath, 343 U.S. 205, 206, 72 S. Ct. 618, 96 L. Ed. 888 (1952) (claim under U.S. law, Trading with the Enemy Act of 1917); Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 61-63 (1st Cir. 2002) (claim under U.S. copyright law); Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998) (diversity jurisdiction); see also Dissent 3-5.

[*14]

The Supreme Court has also noted that § 1367 both "authorize[s] the district courts to exercise supplemental jurisdiction" and "confirms the discretionary nature of supplemental jurisdiction." Chicago, 522 U.S. at 172-73. Therefore, to allow Voda to amend his complaint to add infringement claims based on foreign patents using § 1367 supplemental jurisdiction, we must evaluate (1) whether § 1367(a) authorizes such supplemental jurisdiction and (2) whether the district court's exercise of such supplemental jurisdiction was within its § 1367(c) discretion.

#### 1. Authorization

Section 1367(a) provides the statutory authority for district courts to exercise supplemental jurisdiction over certain claims outside their original jurisdiction.

Page 7

2007 U.S. App. LEXIS 2134, *

[HN8] Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States [*15] Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). This language reveals four limits on the reach of § 1367(a).

First, § 1367(a) does not authorize supplemental jurisdiction where "expressly provided otherwise by Federal statute." In this case, none of the parties or the amicus curiae cite any statute, and we have found none, that expressly strips federal courts of supplemental jurisdiction of claims arising under either foreign patents or foreign laws.

Second, § 1367(a) lists subsection (b) as an exception. Subsection (b) pertains to "any civil action of which the district courts have original jurisdiction founded solely on" diversity and thus, is not relevant here.

Third, § 1367(a) also lists subsection (c) as an exception. We discuss subsection (c), which enumerates the circumstances under which the "district courts may decline to exercise supplemental jurisdiction," in infra Part III.A.2.

Fourth, [HN9] § 1367(a) authorizes supplemental jurisdiction only over claims that are "so related to claims in the action within such original jurisdiction [*16] that they form part of the same case or controversy under Article III of the United States Constitution." This statutory "case or controversy" language extends to the limits of Article III. See, e.g., Jones v. Ford Motor Credit Co., 358 F.3d 205, 212 n.5 (2d Cir. 2004); Baer v. First Options of Chicago, Inc., 72 F.3d 1294, 1299 (7th Cir. 1995).

In this case, it is undisputed that the district court has original federal question jurisdiction over Voda's U.S. patent infringement claims. In addition, § 1367(a) appears to authorize supplemental jurisdiction over foreign law claims in certain limited circumstances. Specifically, [HN10] § 1367(a) provides the statutory authority for federal courts to exercise supplemental jurisdiction over claims that are outside the limited original

jurisdiction of federal district courts, including those within the general jurisdiction of state courts. Therefore, because the "inherent powers" of state courts "permit them to entertain transitory causes of action arising under the laws of foreign sovereigns," Tafflin v. Levitt, 493 U.S. 455, 470, 110 S. Ct. 792, 107 L. Ed. 2d 887 (1990) (Scalia, J., concurring) (citing [*17] McKenna v. Fisk, 42 U.S. (1 How.) 241, 247-249, 11 L. Ed. 117 (1843)), § 1367 supplemental jurisdiction appears to include foreign law claims. See also Printz v. United States, 521 U.S. 898, 907, 117 S. Ct. 2365, 138 L. Ed. 2d 914 (1997) ("[U]nlike legislatures and executives, [courts] applied the law of other sovereigns all the time."). Therefore, the § 1367(a) issue we discuss here is whether Voda's claims of foreign patent infringement "form part of the same case or controversy under Article III."

*a. "Common nucleus of operative fact"*

[HN11] The Supreme Court has interpreted the statutory requirement of § 1367(a) that foreign claims be "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" as Congress's codification of the Court's

> principles of pendent and ancillary jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that "derive from a common nucleus of operative fact," such that "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action [*18] before the court comprises but one constitutional 'case.'"

Chicago, 522 U.S. at 164-65 (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)) (additional citations omitted)(emphasis added); see also 13B Wright, Miller, Cooper & Freer, Federal Practice & Procedure § 3567.1, at n.42 (2d ed. Supp. 2005).

With regard to the relationship between foreign and U.S. patent infringement claims, we stated in Stein that "the issues are not the same" where "one action involv[es] United States patents and the other involv[es] British patents." 748 F.2d at 658. Mars, 24 F.3d 1368, however, is the first and only case of this court that expressly evaluates whether supplemental jurisdiction under § 1367(a) extends to infringement claims based on foreign patents. In Mars, we applied the "common nucleus of operative fact" rubric to determine whether § 1367(a) authorized supplemental jurisdiction over an infringement claim based on a Japanese patent. We held

2007 U.S. App. LEXIS 2134, *

that "the district court erred in assuming that it had 'power' to hear the Japanese patent infringement claim under section [*19] 1367(a)." Id. at 1375. Based on the facts alleged in the complaint, we reasoned:

> We conclude that the foreign patent infringement claim at issue here is not so related to the U.S. patent infringement claim that the claims form part of the same case or controversy and would thus ordinarily be expected to be tried in one proceeding. [1] The respective patents are different, [2] the accused devices are different, [3] the alleged acts are different, and [4] the governing laws are different. The assertion of supplemental jurisdiction over the Japanese infringement claim would in effect result in the trial court having to conduct two separate trials at one time.

Id. Regarding the first three factors, we noted (1) that in the U.S. patent "[a]ll three claims are method claims directed to the electronic examination and identification of coins" whereas "[i]n contrast, the sole claim of the Japanese Patent . . . is an apparatus claim that does not literally contain the limitations of [the asserted] claims . . . of the U.S. patent"; (2) that the claims of U.S. and Japanese patent infringement focused on different devices and that "the range of [*20] accused devices in Japan is much broader than in the United States"; and (3) that although Mars charged the defendant with acts of both direct and induced infringement of its U.S. patent, it charged the defendant with only direct infringement of the Japanese patent. Id.

In this case, Voda does not dispute the assertion of Cordis U.S. that the "governing laws in each of the foreign courts differ in important ways." The parties dispute whether the patents are different. Cordis U.S. asserts that the patents differ materially, while Voda asserts that they differ only in slight respects. n6 With respect to the other factors, however, there appear to be more commonalities than in Mars. Voda's amended complaint identifies Cordis U.S.'s XB guiding catheter as the accused device for the domestic and foreign infringement claims. Voda also alleges the same type of direct infringement, i.e., making, offering for sale, and selling, for all infringement claims.

n6 Therefore, none of the parties would agree with the dissent's conclusions that "the specifications are the same" or that the patents

"are identical." Dissent 10, 13. Moreover, it is unclear how the dissent arrives at these conclusions when the French and German patents are in different languages, and the record on appeal provides no translations.

[*21]

In addition, it is important to note that Mars does not supplant the "common nucleus of operative fact" test established by the Supreme Court in Gibbs and codified by Congress in § 1367(a). Mars simply listed four differences between the claims in that particular case that were sufficient for finding no "common nucleus of operative fact." As such, while providing precedential guidance, Mars did not establish either an exhaustive list of the factors district courts may consider under § 1367(a) or the necessary conditions for a finding of no supplemental jurisdiction.

The district court failed to articulate any such analysis. The district court correctly observed that Mars did not establish a per se rule preventing U.S. courts from asserting supplemental jurisdiction to adjudicate foreign patents, but then summarily concluded that the "allegations in the amended complaint demonstrate that this case [wa]s more akin to Ortman[, 371 F.2d 154 (7th Cir. 1967),] than to Mars. Based on those allegations, the [district] court [found] that it would have supplemental jurisdiction over the foreign patents claims." Voda, 2004 U.S. Dist. LEXIS 28102 at *2. Even [*22] if we agreed that this case were "more akin" to Ortman than Mars, that does not answer the legal question of whether there is a "common nucleus of operative fact" in this case.

Here, the district court did not articulate any findings regarding the Mars factors. n7 Moreover, [HN12] although the determination of foreign law is a question of law, we as an appellate court cannot take any expert testimony to determine the extent of the differences in the governing laws. See Fed. R. Civ. P. 44.1 (governing determination of foreign law). Since the scope of a foreign patent depends on foreign law, such testimony would also inform a comparison of the patents themselves. Therefore, because we hold in infra Part III.A.2 that the district court abused its discretion under § 1367(c), we deem it to be the more prudent course not to decide this "common nucleus of operative fact" question in the first instance.

n7 The Supreme Court has stated that [HN13] "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n.13, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (citation omitted).

2007 U.S. App. LEXIS 2134, *

The dissent cites no authority to the contrary to support its position that it is "unfair" and "inappropriate to criticize the judge for not making findings or taking evidence at the pleading stage." Dissent 11.

[*23]

   b. *"Ordinarily be expected to try them all in one judicial proceeding"*

Seizing on the Supreme Court's language in Gibbs, one of the amicus curiae asserts that in determining the existence of "the same case or controversy" under § 1367(a), we must examine not only whether there is a "common nucleus of operative fact," but also whether a district court would "ordinarily be expected to try [domestic and foreign patent infringement claims] all in one judicial proceeding."

While courts generally focus on the phrase "common nucleus of operative fact," there is an ambiguity in Gibbs, in which the Supreme Court stated:

> [HN14] The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.

383 U.S. at 725 (citation and footnote omitted) (emphasis [*24] added). From the text of Gibbs, it is therefore unclear how the phrases "common nucleus of operative fact" and "ordinarily be expected to try them all in one judicial proceeding" relate.

The Court's subsequent use of the Gibbs language indicates that the phrases could represent two separate and necessary tests or that the phrase "ordinarily be expected" is irrelevant. Compare Exxon, 125 S. Ct. at 2632 (Ginsburg, J., dissenting) ("'[T]here is power in federal courts to hear the whole,' the Court said, when the state and federal claims 'derive from a common nucleus of operative fact' and are so linked that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" (emphasis added)), and Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) ("The Court stated that a federal court

has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" (emphasis added), [*25] with Chicago, 522 U.S. at 165 ("[T]he state and federal claims 'derive from a common nucleus of operative fact,' . . . . That is all the statute requires to establish supplemental jurisdiction." (citation omitted) (emphasis added)).

Similarly, this court's use of the Gibbs language indicates that the phrases could represent two separate and necessary tests or that the phrase "ordinarily be expected to try them all in one judicial proceeding" merely informs the "common nucleus of operative fact" analysis. Compare Stark v. Advanced Magnetics, Inc., 29 F.3d 1570, 1578 (Fed. Cir. 1994) (finding § 1367 requirements met where "there is a substantial federal claim; the federal and state claims derive from common operative facts; and the plaintiff would normally expect to try all of the claims in a single proceeding"), with Highway Equip. Co., Inc. v. FECO, Ltd., 469 F.3d 1027, 1037-38 (Fed. Cir. 2006) ("For this relatedness requirement to be satisfied,'[t]he state and federal claims must derive from a common nucleus of operative fact' such that they would ordinarily be expected to be tried in one proceeding." (citation omitted), [*26] and Mars, 24 F.3d at 1374 ("The Court further explained that the requisite relatedness between the federal and non-federal claims exists for jurisdictional purposes when the claims derive from a 'common nucleus of operative fact,' and as such, would ordinarily be expected to be tried in one proceeding.").

If the phrase "ordinarily be expected to try them all in one judicial proceeding" does play a role in the scope of § 1367(a) authorization via Gibbs, district courts may be unable to exercise supplemental jurisdiction over claims based on foreign patents if the norm is that patent claims are adjudicated by the courts within the jurisdiction where such patents are created. Neither the Supreme Court nor this court, however, has addressed whether the phrase "ordinarily be expected to try them all in one judicial proceeding" constitutes an independent requirement under the "same case or controversy requirement" of § 1367(a). Because the district court abused its discretion under § 1367(c), however, we need only state in this case that none of the briefs have persuaded us to hold that such an additional requirement exists.

Accordingly, we refrain from deciding [*27] whether Voda's foreign patent infringement claims fall within the scope of the "same case or controversy" requirement of § 1367(a).

   2. Discretion

2007 U.S. App. LEXIS 2134, *

[HN15] Section 1367 "reaffirms that the exercise of supplemental jurisdiction is within the discretion of the district court." Mars, 24 F.3d at 1374; see also Chicago, 522 U.S. at 172 (stating that supplemental jurisdiction statute codifies principle "that pendent jurisdiction 'is a doctrine of discretion, not of plaintiff's right,' and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons" (quoting Gibbs, 383 U.S. at 726)). A district court's discretion, however, is not unfettered, and we review the district court's decision not to decline supplemental jurisdiction under 28 U.S.C. § 1367(c) under an abuse of discretion standard. Mars, 24 F.3d at 1375 n.4; see also Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("We review the decision of the district court to exercise supplemental jurisdiction over state law claims for an abuse of discretion."). We address the limits of that [*28] discretion here and conclude that the district court's exercise of supplemental jurisdiction over Voda's foreign patent infringement claims is independently limited by subsection (c).

Section 1367(c) provides:

[HN16] The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). [HN17] The Supreme Court has noted that the "statute thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values

of judicial economy, convenience, fairness, and comity.'" Chicago, 522 U.S. at 173 (citation omitted).

Voda asserts that such considerations "have nothing [*29] to do with, the certified question concerning existence of subject-matter jurisdiction." We disagree. The text of § 1367(a) indicates § 1367(c) constitutes an express statutory exception to the authorization of jurisdiction granted by § 1367(a). In this case, Cordis U.S. asserted that the district court should exercise its discretion to decline supplemental jurisdiction of Voda's foreign patent claims at the end of its opposition to Voda's motion to amend the complaint. The district court's order contained no § 1367(c) analysis. We find that considerations of comity, judicial economy, convenience, fairness, and other exceptional circumstances constitute compelling reasons to decline jurisdiction under § 1367(c) in this case and therefore, hold that the district court abused its discretion by assuming jurisdiction.

*a. Treaties as the "supreme law of the land"*

Article VI of the Constitution proclaims that [HN18] "all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land." U.S. Const. art. VI, cl.2. The Supreme Court has accordingly stated that "a treaty ratified by the United States is not only the law of this land, [*30] see U.S. Const., Art. II, § 2, but also an agreement among sovereign powers." El Al Isr. Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 167, 119 S. Ct. 662, 142 L. Ed. 2d 576 (1999) (citation omitted).

The United States entered into Articles 13 through 30 of the Paris Convention for the Protection of Industrial Property ("Paris Convention") on September 5, 1970 and Articles 1 through 12 of the Paris Convention on August 25, 1973. Paris Convention, art. 13-30, 21 U.S.T. 1583; id., art. 1-12, 24 U.S.T. 2140. [HN19] Article 4*bis* of the Paris Convention states that U.S. patents "shall be independent of patents obtained for the same invention in other countries" and that the "foregoing provision is to be understood in an unrestricted sense, . . . both as regards the grounds for nullity and forfeiture." In addition, Article 2(3) of the Paris Convention states that the "provisions of the laws of each of the countries of the Union relating to judicial and administrative procedure and to jurisdiction, . . . which may be required by the laws on industrial property are expressly reserved." The Paris Convention thus clearly expresses the independence of each country's [*31] sovereign patent systems and their systems for adjudicating those patents. Nothing in the Paris Convention contemplates nor allows one jurisdiction to adjudicate the patents of another, and as such, our courts should not determine the validity and infringement of foreign patents. Accordingly, while the Paris Convention contains no express jurisdictional-stripping statute,

we relied on it in Stein to hold that "[o]nly a British court, applying British law, can determine validity and infringement of British patents." 748 F.2d at 658.

Subsequently, the United States adopted the Patent Cooperation Treaty ("PCT") on January 24, 1978. Patent Cooperation Treaty, 28 U.S.T. 7645. As with the Paris Convention, the text of the PCT maintains the independence of each country's patents. Article 27(5) states: [HN20] "Nothing in this Treaty and the Regulations is intended to be construed as prescribing anything that would limit the freedom of each Contracting State to prescribe such substantive conditions of patentability as it desires."

On January 1, 1995, the United States joined the World Trade Organization by entering the Marrakesh Agreement Establishing the World Trade [*32] Organization, which through Article II § 2 binds all of its members to the Agreement on Trade-Related Aspects of Intellectual Property Rights ("TRIPS"). 1867 U.N.T.S. 154, 33 I.L.M. 1144 (Apr. 15, 1994). [HN21] The Agreement on TRIPS contains several provisions regarding the enforcement of patents. Article 41 § 1 of the Agreement on TRIPS specifies that each country "shall ensure that enforcement procedures as specified in this Part are available under their law so as to permit effective action against any act of infringement of intellectual property rights." In addition, § 4 states that "[p]arties to a proceeding shall have an opportunity for review by a judicial authority of final administrative decisions and, subject to jurisdictional provisions in a Member's law concerning the importance of a case," and § 5 states "[i]t is understood that this Part does not . . . affect the capacity of Members to enforce their law in general." See also id., art. 41-49. Like the Paris Convention, nothing in the PCT or the Agreement on TRIPS contemplates or allows one jurisdiction to adjudicate patents of another. n8 Canada, France, Germany, and the United Kingdom, which are the [*33] foreign sovereigns concerned in this case, are parties to each of these treaties. See World Intellectual Property Organization, "States Party to the PCT and the Paris Convention and Members of the World Trade Organization" (2006), available at http://www.wipo.int/pct/en/texts/pdf/pct_paris_wto.pdf.

n8 While the European Patent Convention ("EPC") states nothing of our government's intent because the United States is not a party, it may inform us on how other sovereigns treat foreign patent adjudication. Regarding claims "to the right to the grant of a European patent," the EPC has enumerated rules specifying courts of exclusive jurisdiction. European Patent Convention, Protocol on Recognition, art. 1-8, October 5,

1973. None of the treaties entered into by the United States contain such language. Moreover, while there have been working parties and draft agreements and statutes, even the members of the EPC have not yet agreed on a centralized European patent court. See European Patent Office, "Legislative Initiatives in European Patent Law" (July 26, 2006), available at http://patlawreform.european-patent-office.org/epla/.

Voda asserts and one of [*34] the amicus curiae briefs suggests that these international treaties evince a trend of harmonization of patent law and thus, that allowing the exercise of supplemental jurisdiction over Voda's foreign patent infringement claims furthers the harmonization goals underlying the treaties. Regardless of the strength of the harmonization trend, however, we as the U.S. judiciary should not unilaterally decide either for our government or for other foreign sovereigns that our courts will become the adjudicating body for any foreign patent with a U.S. equivalent "so related" to form "the same case or controversy." Cf. F. Hoffmann-La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 166-67, 124 S. Ct. 2359, 159 L. Ed. 2d 226 (2004) (finding "no convincing justification" for providing such subject matter jurisdiction in antitrust context). Permitting our district courts to exercise jurisdiction over infringement claims based on foreign patents in this case would require us to define the legal boundaries of a property right granted by another sovereign and then determine whether there has been a trespass to that right.

Based on the international treaties that the United States has joined and ratified [*35] as the "supreme law of the land," a district court's exercise of supplemental jurisdiction could undermine the obligations of the United States under such treaties, which therefore constitute an exceptional circumstance to decline jurisdiction under § 1367(c)(4). Accordingly, we must scrutinize such an exercise with caution. n9

n9 In addition, even assuming that Cordis U.S. is responsible for manufacturing the allegedly infringing devices in Juarez, Mexico, and selling them in foreign countries, the dissent's assertion that we could adjudicate a foreign patent infringement action and enforce the judgment against Cordis U.S. for its foreign manufacturing and foreign sales, Dissent 1 n.1, would be an end-run around the territorial limits of 35 U.S.C. § 271. See Dowagiac, 235 U.S. at 650 ( [HN22] "The right conferred by a patent under our law is confined to the United States and its territories." (citation omitted)); cf. AT&T Corp. v. Microsoft

2007 U.S. App. LEXIS 2134, *

Corp., 414 F.3d 1366 (Fed. Cir. 2005), cert. granted, 127 S. Ct. 467, 166 L. Ed. 2d 333 (2006).

*b. Comity and relations between sovereigns*

[HN23] "Comity refers to the spirit of [*36] cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S.D. of Iowa, 482 U.S. 522, 543 n.27, 107 S. Ct. 2542, 96 L. Ed. 2d 461 (1987).

> [HN24] Comity, in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

*Id.* (quoting Hilton v. Guyot, 159 U.S. 113, 163-64, 16 S. Ct. 139, 40 L. Ed. 95 (1895)) (quotation marks omitted) (emphasis added). Courts must also bear in mind that [HN25] "whatever laws are carried into execution, within the limits of any government, are considered as having the same effect every where, so far as they do not occasion a prejudice to the rights of the other governments, or their citizens." *Id.* (quoting Emory v. Grenough, 3 U.S. (3 Dall.) 369, 370, 8 F. Cas. 685, 1 L. Ed. 640, F. Cas. No. 4471, 3 Dall. 369 (1797) [*37] (quotation marks and citation omitted))(emphasis added). Societe provides us with these considerations to guide our determination of whether an exercise of comity supports extending or declining jurisdiction over the foreign patent infringement claims at issue here. See *id.* at 543-44 (stating that international comity concept in evidence-gathering context requires particularized analysis of facts and sovereign interests).

In this case, these considerations of comity do not support the district court's exercise of supplemental jurisdiction over Voda's foreign patent infringement claims. First, Voda has not identified any international duty, and we have found none, that would require our judicial system to adjudicate foreign patent infringement claims. As discussed supra Part III.A.2.a, while the United States has entered into the Paris Convention, the PCT, and the Agreement on TRIPS, nothing in those

treaties contemplates or allows one jurisdiction to adjudicate the patents of another. Second, as discussed infra Part III.A.2.d, Voda has not shown that it would be more convenient for our courts to assume the supplemental jurisdiction at issue. Third, with respect to [*38] the rights of our citizens, Voda has not shown that foreign courts will inadequately protect his foreign patent rights. Indeed, we see no reason why American courts should supplant British, Canadian, French, or German courts in interpreting and enforcing British, Canadian, European, French, or German patents. Cf. Empagran, 542 U.S. at 165 (finding no reason to allow "American [antitrust]law [to] supplant, for example, Canada's or Great Britain's or Japan's own determination about how best to protect Canadian or British or Japanese customers from anticompetitive conduct").

Fourth, assuming jurisdiction over Voda's foreign patent infringement claims could prejudice the rights of the foreign governments. None of the parties or amicus curiae have demonstrated that the British, Canadian, French, or German governments are willing to have our courts exercise jurisdiction over infringement claims based on their patents. Cf. 28 U.S.C. § 1338(a) (granting federal courts exclusive jurisdiction of claims relating to U.S. patents).

In addition, the local action doctrine informs us that exercising supplemental jurisdiction in this case appears to [*39] violate our own norms of what sovereigns ordinarily expect. Courts derived the local action doctrine from the distinction between local and transitory actions beginning with Livingston v. Jefferson, written by Justice John Marshall riding Circuit. 15 F. Cas. 660, F. Cas. No. 8411 (C.C.D.Va. 1811). In Livingston, the plaintiff sued in a Virginia court for trespass to land located in Louisiana. The court dismissed the action, holding that it could be brought only in a Louisiana court. The Supreme Court subsequently held that "an action for trespass upon land, like an action to recover the title or the possession of the land itself, is a local action, and can only be brought within the State in which the land lies." Ellenwood v. Marietta Chair Co., 158 U.S. 105, 107, 15 S. Ct. 771, 39 L. Ed. 913 (1895). The Court concluded that a federal court sitting in another state had no jurisdiction to hear the trespass claim. Id. In short, the local action doctrine served to prevent courts from adjudicating claims for trespass or title to real property.

The territorial limits of the rights conferred by patents are similar to those conferred by land grants. [HN26] A patent right is limited by the [*40] metes and bounds of the jurisdictional territory that granted the right to exclude. See Dowagiac Mfg. Co. v. Minn. Moline Plow Co., 235 U.S. 641, 650, 35 S. Ct. 221, 59 L. Ed. 398, 1915 Dec. Comm'r Pat. 320 (1915) ("The right conferred by a patent under our law is confined to the United States

2007 U.S. App. LEXIS 2134, *

and its territories." (citation omitted)); NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282, 1313 (Fed. Cir. 2005) ("The territorial reach of section 271 is limited. Section 271(a) is only actionable against patent infringement that occurs within the United States." (citations omitted)). Therefore, a patent right to exclude only arises from the legal right granted and recognized by the sovereign within whose territory the right is located. It would be incongruent to allow the sovereign power of one to be infringed or limited by another sovereign's extension of its jurisdiction. Therefore, while our Patent Act declares that [HN27] "patents shall have the attributes of personal property," 35 U.S.C. § 261, and not real property, the local action doctrine constitutes an informative doctrine counseling us that exercising supplemental jurisdiction over Voda's foreign patent claims could [*41] prejudice the rights of the foreign governments.

Therefore, the four considerations enunciated by the Supreme Court in Societe demonstrate that extending our jurisdiction through § 1367(a) in this case could undermine "the spirit of cooperation" underlying the comity doctrine. Because the purpose underlying comity is not furthered and potentially hindered in this case, adjudication of Voda's foreign patent infringement claims should be left to the sovereigns that create the property rights in the first instance.

In addition, as a rule of statutory construction, [HN28] the Supreme Court "ordinarily construes ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations." Empagran, 542 U.S. at 164; cf. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 60, 98 S. Ct. 1670, 56 L. Ed. 2d 106 (1978) ("[A] proper respect both for tribal sovereignty itself and for the plenary authority of Congress in [civil actions against tribal officers] cautions that we tread lightly in the absence of clear indications of legislative intent."). As discussed, there is no explicit statutory direction indicating that the district courts should or may exercise [*42] supplemental jurisdiction over claims arising under foreign patents, and the Paris Convention, PCT, and Agreement on TRIPS neither contemplate nor allow the extraterritorial jurisdiction of our courts to adjudicate patents of other sovereign nations. We have also noted the territorially limited nature of patent rights. See Pellegrini v. Analog Devices, Inc., 375 F.3d 1113, 1117 (Fed. Cir. 2004) ("[As] the U.S. Supreme Court explained nearly 150 years ago in Brown v. Duchesne, 60 U.S. (19 How.) 183, 15 L. Ed. 595 (1857), . . . the U.S. patent laws 'do not, and were not intended to, operate beyond the limits of the United States.'"); Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1251 (Fed. Cir. 2000) ("'[T]he right conferred by a patent under our law is confined to the United States and its territories, and infringement of this right cannot be predicated on acts wholly done in a

foreign country.'" (quoting Dowagiac, 235 U.S. at 650)). Therefore, the principle that we should "avoid unreasonable interference with the sovereign authority of other nations" applies analogously here. Empagran, 542 U.S. at 164. [*43]

We would risk such interference by exercising supplemental jurisdiction over Voda's foreign patent infringement claims. Patents and the laws that govern them are often described as complex. Indeed, one of the reasons cited for why Congress established our court was because it "felt that most judges didn't understand the patent system and how it worked." Judge Pauline Newman, Origins of the Federal Circuit: The Role of Industry, 11 Fed. Cir. B.J. 541, 542 (2002). As such, Cordis U.S. and one of the amicus curiae assert, and Voda does not dispute, that the foreign sovereigns at issue in this case have established specific judges, resources, and procedures to "help assure the integrity and consistency of the application of their patent laws." Therefore, exercising jurisdiction over such subject matter could disrupt their foreign procedures. By analogy, Congress unified our patent jurisprudence by creating the Federal Circuit and granting exclusive jurisdiction of appeals on patent claims. 28 U.S.C. § 1295. Foreign courts exercising jurisdiction over claims based on U.S. patents would destroy Congress's intent to foster uniformity and to preclude [*44] forum shopping. Cf. Empagran, 542 U.S. at 168-69 (finding in antitrust context that "legally and economically technical nature of [examining foreign law, compared with American law] means lengthier proceedings, appeals, and more proceedings-to the point where procedural costs and delays could themselves threaten interference with a foreign nation's ability to maintain the integrity of its own antitrust enforcement system").

Accordingly, comity and the principle of avoiding unreasonable interference with the authority of other sovereigns dictate in this case that the district court decline the exercise supplemental jurisdiction under § 1367(c).

*c. Judicial economy*

Because of our lack of institutional competence in the foreign patent regimes at issue in this case, more judicial resources could be consumed by the district court than the courts of the foreign patent grants. Indeed, adjudication of Voda's British, Canadian, European, French, and German patent claims may substantially predominate his U.S. patent claims. Cf. [HN29] § 1367(c)(2) (stating that district courts may decline exercising supplemental jurisdiction where "the claim substantially predominates [*45] over the claim or claims over which the district court has original jurisdiction").

In addition, the likelihood of jury confusion in applying different patent regimes could result in separate

Page 14

trials. Cf. Gibbs, 383 U.S. at 726 ("Finally, [HN30] there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial, Fed.Rule Civ.Proc. 42(b)."). Therefore, exercising supplemental jurisdiction in this case could result in at least the same magnitude of litigation as Voda filing patent infringement claims in each respective sovereign's court.

Voda and one amicus curiae point out that consolidated multinational patent adjudication could be more efficient. While there may be merit in that argument, no international treaty establishes full faith and credit, nor have we found any analogous agreement that would require foreign countries to recognize or obligate the enforcement of our judgments regarding foreign patents. In this case, Voda's amended complaint asks not only for damages and fees [*46] but also for "such other and further relief as this Court deems just and proper." Therefore, the additional time and resources required by our courts may result in incomplete adjudication of the claims, prolonging and extending the expenditures by all.

The district court did not articulate any such judicial economy analysis, and accordingly, this absence of analysis supports our finding that the district court abused its discretion in this case.

*d. Convenience*

Similarly, factors of convenience may provide additional reasons to decline exercising supplemental jurisdiction in this case. Again, the district court did not articulate any such analysis, further supporting our finding that it abused its discretion.

We note that the Supreme Court does not appear to have defined convenience in the context of discretionary exercises of supplemental jurisdiction. While the parties have structured their arguments in this case around forum non conveniens, they have provided no case law justifying incorporation of that doctrine into the consideration of convenience under § 1367(c). Cf. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 248 n.13, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)(noting that [*47] Supreme Court first indicated that motions to dismiss on grounds of forum non conveniens could be made in federal diversity actions in Williams v. Green Bay & W.R. Co., 326 U.S. 549, 66 S. Ct. 284, 90 L. Ed. 311 (1946)); Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC, 155 F.3d 603, 606 (2d Cir. 1998) (stating that Supreme Court explicitly recognized applicability of forum non conveniens in federal question cases in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)). Where the doctrine does not duplicate other factors already considered, however, forum non conveniens is a useful doctrine to reference. For example, on

one hand, the cost of obtaining and translating evidence, especially experts in foreign patent law pursuant to Fed. R. Civ. P. 44.1 (governing determination of foreign law), cuts against exercising supplemental jurisdiction. On the other hand, deferring to the plaintiff's choice of forum would support such an exercise.

*e. Fairness*

Lastly, the act of state doctrine may make the exercise of supplemental jurisdiction over foreign patent infringement claims fundamentally [*48] unfair. [HN31] As "a 'principle of decision binding on federal and state courts alike,'" the act of state doctrine "requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid." W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l, 493 U.S. 400, 406, 409, 110 S. Ct. 701, 107 L. Ed. 2d 816 (1990) (citation omitted). In this case, none of the parties or amicus curiae have persuaded us that the grant of a patent by a sovereign is not an act of state. But see Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d 1287, 1293-94(3d Cir. 1979) (stating that Third Circuit was "unable to accept the proposition that the mere issuance of patents by a foreign power constitutes[] an act of state" under abstention analysis). Therefore, assuming arguendo that the act of state doctrine applies, the doctrine would prevent our courts from inquiring into the validity of a foreign patent grant and require our courts to adjudicate patent claims regardless of validity or enforceability. Given the number of U.S. patent cases that we resolve on validity or enforceability as opposed to infringement grounds, exercising [*49] such jurisdiction could be fundamentally unfair to the alleged infringer where, as one amicus curiae points out, "the patent is in fact invalid and the defendant would be excused from liability on that basis in a foreign forum." Voda has not shown in this case that the validity of the foreign patents would not be at issue. Indeed, Cordis U.S. asserts otherwise.

*f. Section 1367(c) abuse of discretion*

In summary, several reasons in this case would compel the district court to decline supplemental jurisdiction under § 1367(c): limitations imposed by treaties that are the "supreme law of the land" and considerations of comity, judicial economy, convenience, and fairness. The district court undertook none of this analysis. Accordingly, we hold that the district court abused its discretion in exercising supplemental jurisdiction.

As with the § 1367(a) factors of Mars, this is a non-exhaustive list, not a test, for district courts to consider under § 1367(c). In addition, we emphasize that because the exercise of supplemental jurisdiction under § 1367(c) is an area of discretion, the district courts should examine these reasons along with others that are relevant

2007 U.S. App. LEXIS 2134, *

in every case, [*50] especially if circumstances change, such as if the United States were to enter into a new international patent treaty or if events during litigation alter a district court's conclusions regarding comity, judicial economy, convenience, or fairness. However, "[d]iscretion is not whim, and limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike . . . a page of history is worth a volume of logic." eBay, 126 S. Ct. at 1841-42 (Roberts, C.J., concurring) (quotation marks and citations omitted).

**B. Alternate Statutory Basis**

The parties also dispute on appeal whether diversity jurisdiction under § 1332 provides an alternate and independent basis for the district court to hear Voda's claims of foreign patent infringement. However, Voda has not pled diversity, and it is not clear whether the district court would permit such a pleading to be made at this stage in the proceedings. We therefore decline to decide whether the district court could properly exercise jurisdiction based on diversity.

**C. Abstention**

The "district courts may be obligated not to decide" claims [*51] arising under foreign patents "where one of the abstention doctrines articulated by [the Supreme] Court applies." Chicago, 522 U.S. at 174. Abstention doctrines "embody the general notion that federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest, for example where abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." Id. (quotation marks and citation omitted). Because we resolve the district court's jurisdiction on statutory grounds, we do not discuss or make any holdings regarding abstention here.

**IV. CONCLUSION**

We vacate the order of the district court granting Voda leave to amend his complaint to add infringement claims based on foreign patents pursuant to the supplemental jurisdiction statute 28 U.S.C. § 1367 and remand for further proceedings consistent with this opinion.

VACATED and REMANDED

No costs.

**DISSENT BY: NEWMAN**

**DISSENT: NEWMAN, Circuit Judge, dissenting.**

I respectfully dissent, [*52] for the question here presented is not related to federalism and the federal/state relationship, or to pendent jurisdiction of state law issues; nor are disputes about foreign patents so unique as to call up the other theories collected by the panel majority to support this ousting of United States parties from access to United States courts. The certified question is concerned solely with the authority of a United States court, having personal jurisdiction of the parties, to exercise its discretion to accept the amended complaint concerning the foreign patents corresponding to the United States patent in suit. n1

> n1 Contrary to the statements of the panel majority, my position is not that the district court has or needs personal jurisdiction of Cordis' foreign subsidiaries; my premise is that the district court has authority and power to provide Voda with the requested relief through Cordis US, the manufacturer and provider of the accused catheters for all five countries. Further, both the Bonzel and Mars cases, flagged by the majority, were discretionary decisions. In Bonzel the contract was made in a foreign country between foreign nationals under foreign law, and was declined on the discretionary ground of forum non conveniens. In Mars the count against a Japanese company was declined on the discretionary ground that the kinds of patents and the structure of the devices differed significantly between the United States and Japan.

[*53]

A foreign country is not a "state" in the constitutional context, and the judicial application of foreign law plays no role in the jurisdictional balance represented by federalism. The rules governing federal jurisdiction of supplemental state claims are irrelevant to whether a United States court has the authority and can exercise its discretion to decide questions that require the application of foreign law. Courts in the United States have always had the authority to decide questions that require application of foreign law. Federal Rule of Civil Procedure 44.1 ("Determination of Foreign Law") provides procedural guidance. In Printz v. United States, 521 U.S. 898, 117 S. Ct. 2365, 138 L. Ed. 2d 914 (1997) the Court, comparing the judicial and other branches of government, remarked that courts "applied the law of other sovereigns all the time." Id. at 907. Yet the panel majority holds that a United States court cannot do so, in its sound discretion, when the issue concerns patents. Thus this court rules that the district court is precluded from considering the issues concerning the four foreign counterparts of the

2007 U.S. App. LEXIS 2134, *

United [*54] States patent that is in suit between these parties.

The district court had agreed to receive the amended complaint. Our role, at this pleading stage, is to determine whether that action is supportable. My colleagues hold that the district court abused its discretion in exercising supplemental jurisdiction of the foreign patent issues, indeed holding that the district court has no discretion to accept this amended complaint because it involves foreign patents. I cannot agree. It is inappropriate for the Federal Circuit to create this unique exception to the authority of American courts to resolve controversies that require the application of foreign law.

Access of a nation's citizenry to dispute resolution in the nation's courts is fundamental to a nation ruled by law. This court's new rule carves an inapt exception into judicial authority, judicial obligation, and judicial discretion. Such special treatment of patent issues is flawed as a matter of precedent, procedure, and policy.

*Courts Routinely Apply Foreign Law*

Precedent illustrates myriad situations in which the courts have determined and applied foreign law, and also illustrates those few situations in which [*55] a court has declined to resolve a specific foreign-based issue. Today's extreme barrier to exercise of the district court's discretion when foreign patents are involved stands alone among the vast variety of causes in which such determinations have been made.

United States courts have determined and applied foreign commercial law, foreign property law, foreign inheritance law, foreign citizenship law, foreign copyright law, foreign trademark law, foreign liability and negligence law, and other foreign law as appropriate to resolution of the dispute between the parties before the court. The principle is that a court should apply the same law that would be applied in the nation where the event occurred, or the law having the most significant relationship to the event in dispute. For example, in Smith v. Condry, 42 U.S. (1 How.) 28, 11 L. Ed. 35 (1843), concerning liability for a collision between American vessels in the port of Liverpool, the Court held that the British statutes should be applied to determine fault, and that liability and damages should be decided under British law. In Nashua Savings Bank v. Anglo-American Land, Mortgage & Agency Co., 189 U.S. 221, 230, 23 S. Ct. 517, 47 L. Ed. 782 (1903) [*56] the Court discussed various methods of proving foreign law, then viewed as a question of fact, in an action by an English corporation to recover an assessment on its capital stock; the Court explained that: "By subscribing to stock in a foreign corporation, defendant subjects itself to the laws of such foreign country in respect to the powers and obligations of

such corporation." In Uebersee Finanz-Korporation, A.G. v. McGrath, 343 U.S. 205, 72 S. Ct. 618, 96 L. Ed. 888 (1952) the Court held that it was appropriate to determine property ownership of a usufructuary under German law, predicate to application of the Trading with the Enemy Act.

A sampling of recent cases yields further illustration of judicial authority and dispute-resolution obligation when foreign law is involved: In Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co., 295 F.3d 59 (1st Cir. 2002) the court observed that the district court may apply United States copyright law, German contract law, and Austrian inheritance law, to resolve all of the issues in the case. In Abogados v. AT&T, Inc., 223 F.3d 932 (9th Cir. 2000) the court applied California [*57] choice of law analysis to hold that the law of Jalisco, Mexico should be applied by the district court to an issue of tortious interference with a contract made in Mexico between the Mexican plaintiffs and the Mexican subsidiary of AT&T. In Tschira v. Willingham, 135 F.3d 1077 (6th Cir. 1998) the court applied German law to decide whether a letter created a fiduciary duty, and then applied Tennessee law to a fraudulent misrepresentation concerning property in Tennessee. In Curley v. AMR Corp., 153 F.3d 5, 12 (2nd Cir. 1998) the court compared the laws of Mexico and New York as to various torts including false imprisonment and negligence, and stated its "agreement with the concept that appellate courts, as well as trial courts, may find and apply foreign law"; the court held that foreign law should be applied to the acts that occurred in Mexico unless "violative of fundamental notions of justice and prevailing concepts of good morals." See generally 9 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § § 2444-446 at 644-58 (2d ed. 1995) (discussing application of foreign law in federal courts).

In Dorman v. Emerson Electric Co., 23 F.3d 1354 (8th Cir. 1994) [*58] the court applied the "most significant relationship" test to determine that Canadian law applied to a personal injury claim against a product that was designed in Missouri, manufactured in Taiwan, and sold and used in Canada. In Indasu Int'l, C.A., v. Citibank, N.A., 861 F.2d 375, 379 (2nd Cir. 1988) the court determined the applicable Ecuadorian law of contracts and guaranty, then applied that law to the obligation between the United States guarantor and a Panamanian corporation as to a contract to be performed in Ecuadorian waters. In Mathews v. ABC Television, Inc., 776 F. Supp. 821 (S.D.N.Y. 1991) a Kenyan film-maker sued ABC Television in New York for injuries by a rhinoceros in Kenya, alleging that an ABC employee's reckless conduct caused the attack; the district court applied the Kenyan comparative negligence law and case law of the East African Court of Appeals. In In re Houbigant, Inc.,

2007 U.S. App. LEXIS 2134, *

914 F. Supp. 964 (S.D.N.Y. 1995) the district court applied various provisions of the Canadian Trade-Marks Act, and also applied the laws of the Province of Quebec and the State of New York to the interpretation of a licensing arrangement. [*59] In Armstrong v. Virgin Records, Ltd., 91 F. Supp. 2d 628 (S.D.N.Y. 2000) the district court exercised jurisdiction of the United States and foreign copyright claims, stating that "there is no principled reason to bar, in absolute fashion, copyright claims brought under foreign law for lack of subject matter jurisdiction," and that "subject matter jurisdiction over any claims properly arising under United States copyright law, potentially allowing the Court to exercise pendent jurisdiction over claims arising under foreign law." Id. at 637.

As for cases involving foreign patents, in Ortman v. Stanray, 371 F.2d 154 (7th Cir. 1967) the court approved the exercise of supplemental jurisdiction of counts concerning the corresponding Canadian, Brazilian, and Mexican patents. In Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368 (Fed. Cir. 1994), this court declined to decide the Japanese patent issues, explaining that the accused devices, the scope and class of the claims, and the charges of infringement were different in Japan and the United States. In Medigene AG v. Loyola Univ. of Chicago, No. 98 C 2026, [*60] 2001 U.S. Dist. LEXIS 25269, 2001 WL 1636916 (N.D. Ill. Dec. 19, 2001) the district court declined to dismiss the issue of inventorship of foreign patent applications, stating that "[Mars] makes clear that in appropriate circumstances Section 1367 permits exercise of supplemental jurisdiction over a claim for infringement of a foreign patent." 2001 U.S. Dist. LEXIS 25269, [WL] at *1. In Forbo-Giubiasco S.A. v. Congoleum Corp., 516 F. Supp. 1210 (S.D.N.Y.1981), the court observed that "[a] finding against Congoleum on this point [inequitable conduct in obtaining the foreign patents] would affect only the rights between Congoleum and Giubiasco, not Congoleum's foreign patent rights generally." Id. at 1218. In Distillers Co. v. Standard Oil Co., 1964 U.S. Dist. LEXIS 7879, 150 USPQ 42 (N.D. Ohio 1964), in a dispute involving various patents on the manufacture of acrylonitrile, the court stated that "It cannot be doubted, nor does the plaintiff question, that this Court is empowered to consider claims arising under foreign patents." Id. (citing Aluminum Co. of Am. v. Sperry Products, Inc., 285 F.2d 911 (6th Cir. 1950) and Nat'l Latex Products Co. v. Sun Rubber Co., 274 F.2d 224 (6th Cir. 1960)). [*61]

In no case did the court hold that it had no power or authority to receive the foreign issue, reciting various reasons in a few situations where the court declined the foreign issue. An example is Bonzel v. Pfizer, Inc., 439 F.3d 1358 (Fed. Cir. 2006), where this court sustained

the district court's discretion in dismissing, on the ground of forum non conveniens, an action that required application of German contract law to interpret a patent license agreement that was made in Germany between a German national and the Swiss subsidiary of a United States company. Other cases are: Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 645 (2nd Cir. 1956) ("the district court did not abuse its discretion in declining to exercise its jurisdiction over that portion of the case arising in Canada and governed by Canadian trade-mark law"); Torah Soft Ltd. v. Drosnin, 136 F. Supp. 2d 276 (S.D.N.Y. 2001) (district court declined to exercise jurisdiction over foreign copyright claims because the United States copyright claim had been dismissed); Berkshire Furniture Co. v. Glattstein, 921 F. Supp. 1559, 1562 (W.D. Ky. 1995) [*62] (district court stated that on principles of international comity it was "disinclined to decide issues related to the designs that arise under U.K. and Malaysian law"); Packard Instrument Co. v. Beckman Instruments, Inc., 346 F. Supp. 408 (N.D. Ill. 1972) (district court declined to resolve patent infringement in nine foreign countries, stating that the patentee could obtain effective relief by enforcement of its United States patent). In none of these cases was there any assertion of judicial incapacity to resolve the foreign issues, or of any prohibition on the exercise of discretion to accept the case.

The district court herein, in exercising its discretion to accept the Voda amended complaint, explained that the factual situation in Ortman, supra, was more akin to this case than the factual situation in Mars, supra. In Ortman the court had accepted the foreign patent issues, stating that "all of the actions of defendant of which complaint is made are the result of defendant doing similar acts both in and out of the United States," 371 F.2d at 158, whereas in Mars, citing the differences in the patents [*63] and the products this court held that the Japanese issues would more appropriately be resolved by a Japanese court. In contrast to the case-specific analyses in precedent, my colleagues now hold that it would always be an abuse of discretion for the district court to decide foreign patent issues, unless some sort of new treaty is produced. However, it is inappropriate to compel the district court to decline the adjudicative authority available in all other areas of law.

In explaining this unique inroad on discretion when foreign patents are involved, my colleagues rely heavily on the criteria of supplemental jurisdiction as codified in 28 U.S.C. § 1367. However, judicial authority to determine and apply foreign law does not require that the foreign issue is supplemental to a domestic issue. Further, even if the criteria of § 1367 are applied they support, rather than negate, the district court's decision herein.

2007 U.S. App. LEXIS 2134, *

Judicial authority to decide questions of foreign law is not a matter of the federal/state relationship codified at 28 U.S.C. § 1367. Nonetheless, the elaboration in United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) [*64] concerning federal supplemental jurisdiction of state law causes that have "a common nucleus of operative fact" is a useful analogy to the Voda/Cordis situation, for the "considerations of judicial economy, convenience and fairness to litigants" that are served by supplemental jurisdiction, 383 U.S. at 726, are relevant to considerations of the exercise of judicial discretion. If these criteria are applied they reinforce, rather than negate, the district court's exercise of discretion to accept Voda's amended complaint.

The principles of supplemental jurisdiction as applied to federal/state issues, 28 U.S.C. § 1367, weigh on the side of the exercise of jurisdiction absent compelling reason:

> § 1367(a). Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution . . . . [*65]

A district court may decline to exercise supplemental jurisdiction over such a related claim:

> § 1367(c). The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(All emphases added). Although my colleagues fault the district court for "not making a Section 1367(c) analysis," this is an inapt criticism, for the district court did not decline jurisdiction by invoking § 1367(c); instead, the court applied the principle of § 1367(a) and accepted the claim, exercising its authority and recognizing its dispute-resolution obligation. Indeed, in Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 125 S. Ct. 2611, 2620, 162 L. Ed. 2d 502 (2005) the Court counseled against unduly narrowing the application of [*66] § 1367(a). The Federal Circuit in Mars applied the principles of § 1367(c) and held that the Japanese patent issues should be litigated in Japan because the "common nucleus of operative fact" required by Gibbs was not present, but this court also stated that § 1367(c) "reaffirms that the exercise of supplemental jurisdiction is within the discretion of the district court." 24 F.3d at 1374.

The court's ruling today essentially eliminates this discretionary option in foreign patent cases; the court makes no mention of the common nucleus of operative facts among Voda's United States and foreign patent issues, and does not review the district court's ruling on the ground of abuse of discretion. In eBay Inc. v. MercExchange L.L.C., 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006) the Court discouraged the carving out of an exception uniquely for patent cases, and required that the equitable discretion of the district court be as available in patent cases as in other cases. The panel majority strays from precedent, policy, and prudence, in ruling that the discretionary authority of the district court cannot or should not be exercised to resolve foreign [*67] patent disputes between parties properly before the court. My colleagues' reliance on the rules of supplemental jurisdiction does not support their restraint on this exercise of discretion.

I respond to the several other justifications offered in the majority opinion, for they also are flawed:

### The Facts as Pled Support the District Court's Action

The district court followed the Seventh Circuit's decision in Ortman, the closest precedent. The commonality of issues in the five countries of the Voda patents, including the United States, was before the district court. The accused catheter is the same in all five countries; it is manufactured by Cordis Corporation in a single plant, initially at Miami Lakes, Florida and now in Mexico. Cordis manages the Mexican plant and arranges for shipment to the Cordis companies in the five countries

where infringement is charged, viz., Cordis Corporation (US), Cordis S.A. (France), Cordis G.m.b.H (Germany), Cordis UK Limited, and Cordis in Canada. All of the Cordis companies are related to the Johnson & Johnson Company.

The patents in the five countries show that they are of common origin. A PCT (Patent Cooperation Treaty) [*68] application, based on the United States application, was filed in the Canadian and European Patent Offices. All of the patents have identical drawings, and the specifications are the same with additional text in the United States. The European patent application was filed and prosecuted in English, and the French and German patents are translations of the European patent. The British, French, and German patents have the specification and claims of the European patent grant. n2

> n2 As for the majority's challenge to our knowledge of the content of the foreign-language patents, the record contains all five patents, and states, without challenge, that the German and French patents are translations of the European patent (the French patent is headed "Traduction de Brevet Europeen").

Cordis says in its brief that there are differences among the patents, although no details were provided and differences are not apparent. But accepting this statement, I doubt that any differences are beyond the understanding of a United States court, with appropriate explanation if needed. Cordis also says that it intends to challenge the validity of all of the patents based on a reference [*69] that was not cited in any examination; it is not explained why a new reference cannot be considered as to not only the United States patent, but the foreign patents.

My colleagues, supporting their ruling that the district court should not and can not in its discretion accept cases that raise issues of foreign patent validity and infringement, state that "more judicial resources could be consumed by the district court than the courts of the foreign patent grants." Maj. Op. at 26. This reason is unsupported by the pleaded facts. Nor should a court ignore the consumption of private as well as judicial resources in duplicative litigation between the same parties in five countries, in three languages, with five sets of lawyers and the other trappings and burdens of trial.

My colleagues unfairly criticize the district court for not making any findings regarding the differences between the domestic and foreign patents, and equally unfairly criticize the absence of expert analysis of the foreign patent laws. It is surely inappropriate to criticize the

judge for not making findings or taking evidence at the pleading stage. On a motion to amend the pleadings the court shall accept the well-pled [*70] allegations, Fed. R. Civ. P. 12(b)(6), and indeed no challenge to the premises has been presented.

Discretionary authority is of broad scope, as is the judicial obligation to resolve disputes between litigants who are properly before the court. The district court's action reflects the "balance of conveniences," Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 n.23, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981), for the court could have considered the convenience to Dr. Voda, a citizen of Oklahoma, and balanced it against the convenience of multiple litigation in foreign countries. Cordis does not argue that it would be more "convenient" for it to litigate in five countries instead of one.

Although a district court may decline to exercise its jurisdiction when it appears that the convenience of the parties and the court and the interests of justice are such that the action should be tried in another forum, id. at 249-50, this determination is committed to the sound discretion of the district court. See, e.g., Leetsch v. Freedman, 260 F.3d 1100, 1102-03 (9th Cir. 2001) ("When we review a forum non conveniens [*71] determination, we give less deference to a foreign plaintiff's choice of a United States forum than to a domestic plaintiff's choice" and "[w]hether to dismiss an action on forum non conveniens grounds require the district court to consider the availability of an adequate alternative forum, and then to consider whether several 'private' and 'public' interest factors favors dismissal."). Cordis has the burden of persuasion that the district court abused its discretion in choosing to receive the amended complaint. Our appellate role is to determine whether Cordis has met this burden and has shown that the district court's exercise of discretion is not sustainable in this case; it is an improper appellate ruling to remove that discretion.

### Complexity of Law or Fact

I turn to the matter of complexity, for this aspect is also pressed in the panel majority's reasoning. My colleagues propose that in view of the complexities that may arise in connection with foreign patents, United States courts should not or can not exercise their discretion to enter the arena. Such a sweeping elimination of judicial authority contravenes the fundamentals of judicial responsibility, for judges [*72] cannot avoid cases because they may be complex. The complexity of patent law does not evict the district court from its discretionary authority.

My colleagues appear to believe that each nation's patent on Dr. Voda's invention covers a different scope of subject matter. The proposition that the scope of coun-

2007 U.S. App. LEXIS 2134, *

terpart patents, particularly those having identical claims, will usually vary significantly will come as a surprise and shock to the holders of literally millions of counterpart patents. In this case all five patents are of common origin and text, and the patents in Great Britain, France, and Germany are identical as granted by the European Patent Office. It is well recognized that most inventions receive consistent protection under the patent laws of the major industrial nations. The few areas of difference are well understood by practitioners. n3 The international structure of patent laws, patent practitioners, and patent treaties, is bottomed on this commercial premise. International business depends on this expectation and reality.

> n3 Voda's catheter is a mechanical device, and does not raise new policy issues based on evolving areas of technology, such as the role of patents on computer software or genetic products.

[*73]

There is no assertion that the Voda catheter is so complicated as to test the nuances of comprehension and law. The panel majority states that its concern about "construing" different claims or even the same claims in different countries, and that expert testimony might be required. Expert testimony is not unusual in patent litigation, and experts on the meaning and scope of the claims in these countries are undoubtedly available if needed. See Fed. R. Civ. P. 44.1. n4

> n4 **Rule 44.1.** **Determination of Foreign Law.** A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

"The parties, therefore, carry the burden of proving foreign law; where they do not do so, we 'will ordinarily apply the forum's law.'" Ferrostaal, Inc. v. M/V Sea Phoenix, 447 F.3d 212, 216 (3rd Cir. 2006) [*74] (quoting Bel-Ray v. Chemrite Ltd., 181 F.3d 435, 440 (3d Cir. 1999)); Banco de Credito Industrial, S.A. v. Tesoreria Gen., 990 F.2d 827, 836 (5th Cir. 1993) (analyzing Spanish and French law and holding that "[w]hen the parties have failed to conclusively establish foreign law, a court is entitled to look to its own forum's law in order to fill in any gaps.").

We do not know whether the accused Cordis device is a simple copy of the Voda invention or whether it embodies significant changes; that is, we do not know whether claim "construction," under any law, will be necessary. As for foreign languages, about which my colleagues also express concern, the Canadian and British patents are in English, as is the European patent of which the German and French patents are translations. The prosecution history in the European Patent Office is in English, as of course in Canada and the United States. It surely is not apparent that multiple litigation of the same issues in five countries and three languages is likely to be more economical of judicial time and litigation expense, and more likely to achieve a correct and just result, than resolving all of the [*75] issues before one judge in one case and one language. This aspect cannot serve to negate the district court's exercise of discretion to receive these issues.

My colleagues also express concern about "jury confusion" when proving infringement of patents written in other languages and under foreign law. I take note that the Uniform Interstate and International Procedure Act, Article IV § 4.03, states that "the court, not the jury, shall determine foreign law." See also Fed. R. Civ. P. 44.1. It need not be ignored that the extent to which the question of infringement is presented to a jury is diminished in the United States since the advent of the Markman practice; and whether a corresponding foreign question under the laws of a country that does not have a jury system would avoid any Seventh Amendment obligation is not here at issue.

The panel majority also states its concern that issues of foreign patents may not be correctly decided by a United States court. Undoubtedly this concern fits all of the areas in which courts have applied foreign law, and could be a factor in a district court's determination of whether to exercise jurisdiction [*76] in a particular case. However, such a discretionary determination is quite different from the panel majority's ruling that discretion should not be exercised to accept and decide foreign patent issues.

My colleagues propose that permitting exercise of the district court's discretion to accept jurisdiction "could be fundamentally unfair to the alleged infringer." Indeed, fairness is an important aspect of discretionary rulings, and fairness to both sides must be considered. The panel majority does not explain its apparent balance of fairness in its holding that the alleged infringer is always more disadvantaged and can only be sued in the situs of the infringement. Such considerations would have evicted American courts in many areas of law, as in the representative cases cited earlier in this opinion. This concern does not warrant treating patent cases differently from all other causes of action.

2007 U.S. App. LEXIS 2134, *

In this case, the district court was willing to take on the foreign issues. Perhaps the district court gave weight to the fact that the United States patent was being litigated anyway, on the same grounds and against the same device that is at issue in all five countries. Perhaps the court [*77] gave weight to equitable considerations, for they are always relevant to judicial discretion. None of the aspects here raised supports departing from the authority of courts to resolve disputes between parties that are properly before them, whether or not foreign law is involved. The fundamental question now presented is whether a district court will be permitted to retain its judicial authority, or will this specific area be uniquely limited, whatever the position of the district court as to its discretion and its obligation.

### The Local Action Doctrine

My colleagues also refer to the "local action" doctrine as barring the district court's jurisdiction of foreign patent issues. This "doctrine" arose in United States jurisprudence in the early days of the Republic, clarifying the jurisdiction of the state courts with respect to each other. In Livingston v. Jefferson, 15 F. Cas. 660, F. Cas. No. 8411 (C.C.D. Va. 1811), the court recognized the common law concept of local action and established that an action involving real property can be brought only within the state of the United States where the land is located. Such rulings have no relation to whether a United States [*78] court can resolve a dispute between persons personally before the tribunal by applying the law of a foreign country, whatever the issue. See generally 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters 2d § 3822, at 451-54 (2007). It is obscure how this "doctrine" supports my colleagues' ruling that a United States court cannot resolve disputes that raise questions of foreign patent law.

### The Act of State Doctrine

The panel majority also invokes the "Act of State" doctrine as justification for barring the district court from choosing to decide the issues of Voda's foreign patents. The theory appears to be that the grant of a foreign patent is a governmental act of state, and thereby untouchable by a United States court. Thus the panel majority proposes that the district court's discretionary act would "prejudice the rights of other governments" to decide the validity and enforceability of their patents. That proposition is unsupported. In Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d 1287, 1293-94 (3rd Cir. 1979) the court rejected the theory that "the mere issuance [*79] of patents by a foreign power constitutes either an act of state, as that term has developed under case law, or an example of governments' compulsion." In Forbo-

Giubiasco, 516 F. Supp. at 1217 the court explained that "it cannot be said that a determination by an American court that a private company failed to present relevant information to a foreign patent office could interfere with our government's conduct of foreign affairs."

In Banco Nationalde Cuba v. Sabbatino, 376 U.S. 398, 84 S. Ct. 923, 11 L. Ed. 2d 804 (1963) the Court explained that [t]he act of state doctrine in its traditional formulation precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory," and that the doctrine precludes judicial determination of the legality of acts of foreign states within their own territories which might embarrass the executive department in its conduct of foreign affairs. Id. at 427-49. Not every governmental action is an act of state, and not every ministerial activity carries the political and international implications of that usage.

Whether a [*80] particular governmental action is properly viewed as an act of state has been explained in a variety of contexts; the common thread is whether the issue is one that is normally consigned to the executive branches, such that an international dispute is resolved by political negotiations between diplomats; or whether the issue is more suitable to the individual review that is given to litigants in judicial proceedings dealing with specific facts. See generally 12 A.L.R. Fed. 707 (2006) ("Modern Status of the Act of State Doctrine"). The fundamental criterion is whether the governmental action is a significant public act or whether it is a ministerial function, accompanied by whether the proposed judicial review is directed to the public interests of the nation as served by the governmental act, or is a private effort to enforce a private claim.

Clearly, the grant of a patent is not an Act of State, whether done by the United States or by a foreign country. No support has been offered for so creative an application of international law; this "doctrine" provides no support for this court's removal of judicial discretion of United States courts to resolve a commercial [*81] dispute between private parties involving private patent rights. The Act of State doctrine is not relevant to judicial review of the Voda foreign patents; patent validity and infringement are legal and commercial issues, not acts of state. This doctrine does not create an exception that excludes foreign patents from access to dispute resolution in our courts.

### Enforcement Is Not An Issue

There is no issue raised by either party concerning enforcement by a foreign court of the district court's potential decision concerning any of the Voda foreign patents. This case does not raise issues of comity, treaty,

2007 U.S. App. LEXIS 2134, *

and diplomacy, when judgments are sought to be enforced in another country. The complexities of enforcement of foreign judgments, at which my colleagues hint, indeed serve to protect litigants from abusive procedures, and under the various protocols and treaties that relate to foreign judgments, a foreign court can refuse to accept a decision of another nation's tribunal. See Laker Airways Ltd. v. Sabena, Belgian World Airlines, 235 U.S. App. D.C. 207, 731 F.2d 909, 937-38 (D.C. Cir. 1984) ("No nation is under an unremitting obligation to enforce foreign [*82] interests which are fundamentally prejudicial to those of the domestic forum."); Motorola Credit Corp. v. Uzan, 388 F.3d 39, 60 (2d Cir. 2004) ("orders of foreign courts are not entitled to comity if the litigants who procure them have 'deliberately courted legal impediments' to the enforcement of a federal court's orders") (citation omitted); Finanz AG Zurich v. Banco Economico S.A., 192 F.3d 240, 246 (2d Cir. 1999) (judicial proceedings may receive comity to the extent that the "foreign court had proper jurisdiction and enforcement does not prejudice rights of United States citizens or violate domestic public policy"). See generally Restatement (Third) of Foreign Relations Law of the United States § § 481-82 (1987) (recognition and enforcement of foreign judgments and grounds for non-recognition of such judgments).

The enforcement aspect was not raised by either party. The district court may have recognized that both Dr. Voda and Cordis Corporation, the manufacturer for all five countries, are within the district court's personal jurisdiction. In Forbo-Giubiasco, supra, the court explained [*83] that its findings with respect to the foreign patents were directed to the obligations of the parties to each other, and not to whether or how a foreign tribunal would view the decision.

The issues and relationships herein reinforce the district court's exercise of discretion to accept the amended complaint, and further impugns this court's withdrawal of the district court's discretion as to foreign patents. There is no sound reason why speculative concerns of enforcement in foreign countries warrant depriving the district court of its discretion to resolve this dispute between these United States parties. While we do not know the extent to which the district court might find liability and impose constraints in this case, the answer to this dispute is not to bar the court from hearing it.

### The Role of Patent Treaties

The panel majority proposes that it would violate the Paris Convention for the Protection of Industrial Property, the Patent Cooperation Treaty, and the TRIPS Agreement of the World Trade Organization, if the United States were to consider the validity and infringement of Dr. Voda's foreign patents. None of these treaties

prohibits resolution by a national [*84] court of private disputes that include foreign patent rights. The question is not as presented by the panel majority, whether any treaty imposes "an international duty" on a nation's courts to render decision concerning foreign patents. The question is whether any treaty prohibits a national court from resolving a dispute between entities under the personal jurisdiction of the court. No treaty bars such dispute resolution.

### Dispute Resolution is an Obligation of Courts

The ruling of the panel majority departs not only from judicial precedent, but from judicial obligation. Although the court appears to concede that the district court may have "jurisdiction" to resolve the foreign aspects of this dispute, my colleagues hold that this authority cannot be exercised to resolve this dispute. This holding contravenes the judicial role. The district court has both the power and the obligation to resolve the dispute between the parties. See Cheney v. U.S. District Court for the District of Columbia, 542 U.S. 367, 370, 124 S. Ct. 2576, 159 L. Ed. 2d 459 (2004)(referring to the district court's constitutional responsibility to resolve cases and controversies within its jurisdiction); [*85] Kirkpatrick & Co. v. Envt'l Tectonics Corp. Int'l, 493 U.S. 400, 409, 110 S. Ct. 701, 107 L. Ed. 2d 816 (1990) ("Courts in the United States have the power, and ordinarily the obligation, to decide cases and controversies properly presented to them.").

The majority postulates that discretion perhaps could be exercised" especially if circumstances change, such as if the United States were to enter into a new international patent treaty or if events during litigation alter a district court's conclusion regarding comity, judicial economy, convenience, or fairness." This is at best a confusing wrap-up to this important question, for no new international treaty is at hand, and the proposal that events during litigation may change the conclusion is not helpful, for the question is whether this litigation will be conducted at all.

The question here is simply whether, in a dispute between United States entities of whom the district court has personal jurisdiction, does the court have discretion to resolve aspects that concern foreign patents. The panel majority's conclusion that the court cannot exercise its discretion to do so is contrary to principle, practice, and judicial obligation. [*86]

### Comity, Harmonization, and the Future

Comity is a complex concept of international law, and its generalization to evict United States courts from their dispute-resolution obligation is not supported on any theory of comity. See Hilton v. Guyot, 159 U.S. 113,

Page 23

2007 U.S. App. LEXIS 2134, *

164, 16 S. Ct. 139, 40 L. Ed. 95 (1895) (defining comity as "neither of absolute obligation. . . nor of mere courtesy and good will" but "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both the international duty and convenience, and to the rights of its own citizens . . . who are under the protection of its laws."). Comity has no relevance to the need to apply foreign law and the obligation and authority to meet that need. In Piper Aircraft, 454 U.S. at 260 n.29, the Court observed that "[t]he need to apply foreign law . . . alone is not sufficient to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate."

The panel majority raises the specter that foreign courts might adjudicate United States patent rights, proposing that if our courts [*87] are permitted to decide questions under foreign patent law, other countries will feel free to decide questions of United States patent law. Cordis too sounds the alarm, stating that creative litigants will choose exotic foreign forums to resolve complex patent issues, and that the district court's decision will open the door to international chaos. I doubt that a United States district court is an exotic foreign forum; and it is not new for courts in other countries to apply the

law of other nations when warranted. Courts in other countries have not refrained from applying foreign patent law, including United States law. A Japanese court recently applied the United States doctrine of equivalents in a suit between Japanese companies that included questions of infringement of United States patents, in K.K. Coral Corp. v. Marine Bio K.K., Case No. 1943(wa)/2002 (Tokyo District Court, Oct. 16, 2003). All nations have recognized their obligation to provide a judicial forum to address disputes involving their citizens; no warrant has been shown to remove foreign patents from this purview.

Proponents of patent "harmonization" point to the similarity of the policies that underlie patent [*88] law of all industrialized nations, and stress that for most technologies the same scope of practical protection is available to industrial development in all nations. It would be anomalous indeed for the United States now to rule that the courts cannot understand patent principles as applied in other nations.

Preclusion and prejudgment are inappropriate and unnecessary. From my colleagues' extreme limitation and bar on the district court's exercise of discretion to receive and resolve foreign patent issues, I respectfully dissent.

# EXHIBIT S

LEXSEE



Analysis
As of: Feb 20, 2007

ELANTECH DEVICES CORPORATION, Plaintiff, v. SYNAPTICS, INC., Defen-
dant. and related counterclaims

No. C 06-01839 CRB

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA

2006 U.S. Dist. LEXIS 48756

July 7, 2006, Decided
July 7, 2006, Filed

SUBSEQUENT HISTORY: Later proceeding at
Elantech Devices Corp. v. Synaptics, Inc., 2006 U.S.
Dist. LEXIS 48806 (N.D. Cal., July 7, 2006)

COUNSEL: [*1] For Elantech Devices Corporation,
Plaintiff: Sean DeBruine, Hsin-Yi Cindy Feng, Yitai Hu,
Akin Gump Strauss Hauer & Feld LLP, Palo Alto, CA.

For Synaptics, Inc, Defendant: Karl J. Kramer, Erika Lin
Labit, Robert L. McKague, Morrison & Foerster LLP,
Palo Alto, CA.

For Synaptics, Inc., Counter-claimant: Karl J. Kramer,
Morrison & Foerster LLP, Palo Alto, CA.

For Elantech Devices Corporation, Counter-claimant:
Hsin-Yi Cindy Feng, Akin Gump Strauss Hauer & Feld
LLP, Palo Alto, CA.

JUDGES: CHARLES R. BREYER, UNITED STATES
DISTRICT JUDGE.

OPINION BY: CHARLES R. BREYER

OPINION:

ORDER

Now pending before the Court is Synaptics, Inc.'s
motion to dismiss Elantech's counterclaims. After care-
fully considering the parties' papers, Elantech's motion is
GRANTED. As currently pled, Elantech's state claims
are preempted by the federal patent law, see Zenith Elec-
tronics Corp. v. Exzec, Inc., 182 F.3d 1340, 1353-55
(Fed. Cir. 1999), fall within the California litigation
privilege, Sharper Image v. Target Corp., 425 F.Supp.2d
1056, 1077-78 (N.D. Cal. 2006), and fail to sufficiently
identify that business relationships that it alleges Synap-
tics interfered with. The question, [*2] then, is whether
the claims should be dismissed with leave to amend.

Normally, leave to amend should be freely granted.
Fed. R. Civ. P. 15(a). Here, however, Elantech's claims
are premature. Elantech cannot plead around preemption
and allege that Synaptics' infringement allegations were
"objectively baseless" until Synaptics' infringement
claims are resolved. See Visto Corp. v. Sproqit Techs.,
Inc., 360 F. Supp. 2d 1064, 1072 (N.D. Cal. 2005). Elan-
tech's assertion that its counterclaims are not based on
Synaptics' infringement allegations is disproved by the
language of Elantech's counterclaims: "Synaptics has
been sending Elantech's customers letters containing, and
visiting Elantech's customers providing, false and mis-
leading information *about Elantech's alleged infringe-
ment of Synaptics' patents*. Counterclaims at P 10 (em-
phasis added).

Accordingly, Elantech's state law counterclaims are
dismissed with leave to amend; however, Elantech's
amendment of the claims is stayed until the adjudication
of Synaptics' patent infringement claims.

IT IS SO ORDERED.

Dated: July 7, 2006

CHARLES R. BREYER

Page 1

2006 U.S. Dist. LEXIS 48756, *

UNITED STATES DISTRICT [*3] JUDGE

# EXHIBIT T

LEXSEE



Cited

As of: Feb 20, 2007

**FORMULA ONE LICENSING, B.V., Plaintiff, v. PURPLE INTERACTIVE LTD.,
et al., Defendants; FORMULA1.COM LTD., et al., Counterclaim Plaintiffs v.
FORMULA ONE LICENSING, B.V., et al., Counterclaim Defendants**

**No. C 00-2222 MMC**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA**

**2001 U.S. Dist. LEXIS 2968**

**February 6, 2001, Decided
February 6, 2001, Filed**

**DISPOSITION:** [*1] Counter-defendants' motion to dismiss GRANTED and, with the exception of Count Nine of Formula1.com's FAAC, all counterclaims DISMISSED with leave to amend to cure the deficiencies noted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In an action alleging trademark infringement in electronic commerce, plaintiffs moved to dismiss defendants' amended counterclaims pursuant to Fed. R. Civ. P. 12(b)(6).

**OVERVIEW:** After plaintiff filed the instant complaint, defendants counterclaimed alleging antitrust, monopolization, group boycott, and state law counterclaims of unfair competition, and interference with prospective economic advantage. Plaintiff's motion to dismiss was granted. With the exception of one counterclaim, defendants were given leave to amend their counterclaims. The antitrust counterclaims lacked the required particularity needed to dismiss a sham exception found under the Noerr-Pennington doctrine. The monopoly claims were based on a market defined by trademarks. They cannot be used to define markets, trademarks are used to define makers. The group boycott counterclaims failed to plead the existence of an agreement between the parties engaged in the boycott. Because the state law unfair competition counterclaim was based on the anti-trust counterclaims, it had to be dismissed. The interference with pro-

spective economic advantage counterclaim had to be dismissed because it was derivative of the antitrust counterclaims.

**OUTCOME:** The motion to dismiss counterclaims was granted. With the exception of one counterclaim, defendants were given leave to cure the deficiencies. Eight antitrust counterclaims lacked the required particularity for the sham exception to apply, the monopolization counterclaims lacked the identity of a product market not defined in terms of trademarks, the group boycott counterclaims lacked the pleading of any agreement.

**CORE TERMS:** com, counter-defendant, antitrust, counterclaimants, trademark, pleaded, counterclaim, trademark infringement, prospective economic advantage, domain, particularity, collectively, competitor, rule of reason, boycott, Sherman Act, antitrust claim, sham exception, initiation, anticompetitive, violating, meritless, lawsuit, compete, monopoly power, monopolization, sport, unfair competition claim, unfair competition, internet

**LexisNexis(R) Headnotes**

*Civil Procedure > Alternative Dispute Resolution >
Mediations
Computer & Internet Law > Copyright Protection >
Digital Millennium Copyright Act > General Overview*

2001 U.S. Dist. LEXIS 2968, *

*Trademark Law > Foreign & International Protections > International Treaties*
[HN1] Uniform Domain Name Dispute Resolution Policy proceedings are held before the World Intellectual Property Organization Arbitration and Mediation Center, operated by the World Intellectual Property Organization.

*Antitrust & Trade Law > Exemptions & Immunities > Noerr-Pennington Doctrine > Coverage*
[HN2] Under the Noerr-Pennington doctrine, those who petition government for redress are generally immune from antitrust liability. The doctrine applies to petitions to courts.

*Antitrust & Trade Law > Exemptions & Immunities > Noerr-Pennington Doctrine > General Overview*
[HN3] Where an antitrust plaintiff challenges the filing of a complaint, immunity from antitrust liability is lost only if a party engages in sham petitioning. To state a claim based on the sham exception, the antitrust plaintiff must demonstrate that the lawsuit was (1) objectively baseless, and (2) a concealed attempt to interfere with the plaintiff's business relationships. Such allegations must be pleaded with specificity.

*Antitrust & Trade Law > Market Definition > Product Market*
*Trademark Law > Subject Matter > General Overview*
[HN4] Without a definition of the market there is no way to measure a party's ability to lesson or destroy competition. Product markets are not defined in terms of one trademark or another; trademarks simply identify the origin of a product.

*Antitrust & Trade Law > Monopolization > General Overview*
[HN5] Monopoly power allegations must be appraised in light of the relevant product markets.

*Antitrust & Trade Law > Price Fixing & Restraints of Trade > Per Se Rule & Rule of Reason > General Overview*
*Contracts Law > Types of Contracts > General Overview*
[HN6] Sherman Act § 1 prohibits agreements that unreasonably restrain trade. Certain kinds of agreements will so often prove so harmful to competition and so rarely prove justified that the antitrust laws do not require proof that an agreement of that kind is, in fact,

anticompetitive in the particular circumstances. An agreement of such a kind is unlawful per se. Other alleged violations are subject to rule of reason analysis to determine whether particular concerted conduct unreasonably restrains competition.

*Antitrust & Trade Law > Price Fixing & Restraints of Trade > Per Se Rule & Rule of Reason > General Overview*
[HN7] An antitrust plaintiff bringing a claim based upon a per se violation need not identify the relevant product market in which the parties compete.

*Antitrust & Trade Law > Price Fixing & Restraints of Trade > Horizontal Restraints > General Overview*
*Antitrust & Trade Law > Price Fixing & Restraints of Trade > Per Se Rule & Rule of Reason > Boycotts*
[HN8] Where a claim is based upon an alleged group boycott, a per se analysis is appropriate only if the boycott involves horizontal agreements among direct competitors.

*Antitrust & Trade Law > Price Fixing & Restraints of Trade > Per Se Rule & Rule of Reason > General Overview*
[HN9] To state a rule of reason claim, a party must sufficiently identify the relevant product markets in which it and counter-defendants compete, and allege facts demonstrating that counter-defendants conduct has an anticompetitive effect on such markets.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview*
[HN10] Where a plaintiff fails to state an antitrust claim, and where an unfair competition claim is based upon the same allegations, such state claims are properly dismissed.

*Torts > Business Torts > Commercial Interference > Prospective Advantage > Elements*
[HN11] To state an interference with prospective advantage claim, a plaintiff must allege conduct that is wrongful by some legal measure other than the fact of interference itself.

*Torts > Business Torts > Commercial Interference > Prospective Advantage > Elements*

2001 U.S. Dist. LEXIS 2968, *

*Trademark Law > Infringement Actions > General Overview*
[HN12] Where a plaintiff seeks to base a claim of interference with prospective economic advantage upon the pursuit of litigation, the plaintiff must allege that the litigation was brought without probable cause and that the litigation concluded in plaintiff's favor.

*Torts > Business Torts > Commercial Interference > Prospective Advantage > Elements*
[HN13] The elements of the tort of interference with prospective economic advantage include an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff, and actual disruption of the relationship.

**COUNSEL:** For FORMULA ONE LICENSING B.V., Plaintiff: David W. Slaby, McDermott Will & Emery, Menlo Park, CA.

For PURPLE INTERACTIVE LIMITED, FORMULA1.COM LTD, PURPLE TRAINING LTD, defendants: Victoria E. Brieant, Coudert Brothers, San Francisco, CA.

For PURPLE INTERACTIVE LIMITED, FORMULA1.COM LTD, PURPLE TRAINING LTD, BRUCE MCDIFFETT, FORMULA 1 INTERNET, defendants: Jeffrey G. Benz, Mark H. Wildasin, Coudert Brothers, San Francisco, CA.

For PURPLE INTERACTIVE LIMITED, FORMULA1.COM LTD, PURPLE TRAINING LTD, Counter-claimants: Victoria E. Brieant, Coudert Brothers, San Francisco, CA.

For PURPLE INTERACTIVE LIMITED, FORMULA1.COM LTD, PURPLE TRAINING LTD, BRUCE MCDIFFETT, FORMULA 1 INTERNET, Counter-claimants: Jeffrey G. Benz, Mark H. Wildasin, Coudert Brothers, San Francisco, CA.

For FORMULA ONE LICENSING B.V., Counter-defendant: David W. Slaby, McDermott Will & Emery, Menlo Park, CA.

**JUDGES:** MAXINE M. CHESNEY, United States District Judge.

**OPINION BY:** MAXINE M. CHESNEY

**OPINION:**

**ORDER GRANTING     [*2]     COUNTER-DEFENDANTS' MOTION TO DISMISS; VACATING HEARING**

Before the Court is the motion of plaintiff/counter-defendant Formula One Licensing B.V. ("FOLBV") and counter-defendants Federation Internationale de L'Automobile ("FIA") and Formula One Management Limited ("FOM") (collectively "counter-defendants") to dismiss amended counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants/Counterclaimants Formula1.com Ltd., Purple Training Ltd., Purple Interactive Ltd., Bruce McDiffett, First One Co., and Formula 1 Internet (collectively "counterclaimants") filed opposition, to which counter-defendants replied. The Court deems the matter appropriate for decision on the papers filed in support of and in opposition to the motion, VACATES the hearing scheduled for February 2, 2001, and rules as follows.

**BACKGROUND**

Plaintiff FOLBV, in its First Amended Complaint ("FAC"), alleges that it owns and maintains trademarks and trade names used in connection with the annual FIA Formula One World Championship motor sport race, including F1, F1 Formula 1 and Design, Formula One, Formula 1, and FIA Formula 1 World Championship and Design. FOLBV alleges that defendants [*3] Formula1.com Ltd. and Purple Training Ltd (collectively "Formula1.com"), n1 defendant Purple Interactive Ltd. ("Purple Interactive"), and defendants Bruce McDiffett, First One Co., and Formula 1 Internet (collectively "McDiffett"), n2 are infringing FOLBV's trademarks.

> n1 In its First Amended Answer and Counterclaims ("FAAC"), Formula1.com Ltd. and Purple Training Ltd. state that they are the same entity. "Purple Training Ltd. was the prior name of the entity currently known as Formula1.com Limited." (Formula1.com's FAAC at P 104.)

> n2 According to the FAC and McDiffett's First Amended Answer and Counterclaims ("FAAC"), McDiffett is an individual who does business as First One Co. and as Formula 1 Internet.

Formula1.com's FAAC pleads eight antitrust claims (Counts One through Eight), one trademark cancellation claim (Count Nine), n3 and two state law claims, respectively, unfair competition, Cal. Bus. & Prof. Code § 17200, (Count Ten) and tortious interference with existing and prospective economic advantage [*4] ("IPEA") (Count Eleven). Formula1.com alleges that it competes

2001 U.S. Dist. LEXIS 2968, *

with counter-defendants in a market defined as "the market for sales of FIA Formula One Championship-related motor sport goods and services." (See Formula1.com's FAAC at P 121.) Formula1.com alleges that counter-defendants have engaged in the following allegedly anti-competitive activity: (1) filing an allegedly meritless proceeding under the Uniform Domain Name Dispute Resolution Policy ("UDRP") against McDiffett; n4 (2) filing a meritless complaint in this action; (3) publishing knowingly false statements in the marketplace accusing Formula1.com of trademark infringement; (4) refusing to supply photographs relating to the FIA Formula One World Championship or that owned by Formula1.com; (5) excluding Formula1.com from the market by refusing to deal with Formula1.com; and (6) instructing a Ferrari apparel licensee, TSS&P, not to supply Formula1.com with Ferrari merchandise.

n3 Count Nine is not challenged by the instant motion.

n4 [HN1] UDRP proceedings are held before the World Intellectual Property Organization ("WIPO") Arbitration and Mediation Center. See PACCAR, Inc. v. TeleScan Technologies, L.L.C., 115 F. Supp. 2d 772, 777 n.4 (E.D. Mich. 2000). "Operated by the World Intellectual Property Organization (WIPO), the WIPO Arbitration and Mediation Center mediates and arbitrates cases involving Internet domain name disputes." Id.

[*5]

Separate amended counterclaims have been filed by defendants Purple Interactive and McDiffett. Both of these counterclaimants plead a single IPEA claim, which claims are, in all respects, identical.

## DISCUSSION

### I. Antitrust Claims

#### A. Noerr-Pennington Doctrine

All eight antitrust claims brought by Formula1.com are based, in part, upon FOLBV's filing a complaint in the instant action. To the extent the counterclaims are based on FOLBV's initiation of the instant action, counter-defendants contend they are immune from liability under the Noerr-Pennington doctrine. [HN2] Under the Noerr-Pennington doctrine, "those who petition government for redress are generally immune from antitrust liability." See Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, 508 U.S. 49, 56, 123 L. Ed. 2d 611, 113 S. Ct. 1920 (1993); see also Eastern Railroad Presidents Conference v. Noerr Motor Freight,

Inc., 365 U.S. 127, 5 L. Ed. 2d 464, 81 S. Ct. 523 (1961); United Mine Workers v. Pennington, 381 U.S. 657, 14 L. Ed. 2d 626, 85 S. Ct. 1585 (1965). The doctrine applies to "petitions to courts." See Oregon Natural Resources Council v. Mohla, 944 F.2d 531, 533 (9th Cir. 1991). [*6]

[HN3] Where an antitrust plaintiff challenges the filing of a complaint, "immunity from antitrust liability is lost only if a party engages in 'sham' petitioning." See USS-Posco Industries v. Contra Costa County Building & Construction Trades Council, AFL-CIO, 31 F.3d 800, 810 (9th Cir. 1994). To state a claim based on the "sham exception," "the antitrust plaintiff must demonstrate that the lawsuit was (1) objectively baseless, and (2) a concealed attempt to interfere with the plaintiff's business relationships." See Kottle v. Northwest Kidney Centers, 146 F.3d 1056, 1060 (9th Cir. 1998). Such allegations must be pleaded with specificity. See Boone v. Redevelopment Agency, 841 F.2d 886, 894 (9th Cir. 1988); see, e.g., Oregon Natural Resources Council, 944 F.2d at 535 (holding dismissal of antitrust claim based on filing lawsuit proper where plaintiff "failed to plead with particularity that [defendant's lawsuit] was a sham").

Counter-defendants are thus entitled to immunity from antitrust liability based on the filing of the instant action unless Formula1.com pleads with particularity facts to show that it can establish [*7] the "sham exception." See Kottle, 146 F.3d at 1060, 1063. The only allegation made by Formula1.com specific to such claim is the following: "FOLBV has instigated a meritless trademark infringement action against the defendants in this action alleging the infringement of unenforceable, generic marks." (See Formula1.com's FAAC at P 123.) Such allegation is insufficient to meet the heightened pleading requirement. Accordingly, to the extent Formula1.com's eight antitrust claims are based on FOLBV's filing of the instant complaint, such claims are DISMISSED with leave to amend to state with particularity facts necessary to plead the "sham exception" to the Noerr-Pennington doctrine.

#### B. Monopolization Claims

Formula1.com alleges in the first six counts that counter-defendants are violating § 2 of the Sherman Act by engaging in monopolization and attempted monopolization. All such claims require Formula1.com to identify a relevant product market. " [HN4] Without a definition of the market there is no way to measure [the defendant's] ability to lessen or destroy competition." Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456, 122 L. Ed. 2d 247, 113 S. Ct. 884 (1993) [*8] (citation omitted) (holding monopolization claims must be appraised in terms of alleged relevant market).

2001 U.S. Dist. LEXIS 2968, *

Counter-defendants contend Formula1.com's identification of a relevant product market is deficient in that, inter alia, Formula1.com has defined the product market in terms of trademarks. "Product markets are not defined in terms of one trademark or another; trademarks simply identify the origin of a product." Generac Corp. v. Caterpillar, Inc., 172 F.3d 971, 977 (7th Cir. 1999); see, e.g., Weber v. National Football League, 112 F. Supp. 2d 667, 673-74 (N.D. Ohio 2000) (holding seller of internet domain names misidentified relevant product market as market for two specific domain names in which defendants held trademarks; actual relevant product market was market for domain names generally). Here, by identifying the allegedly relevant product market as "the market for sales of FIA Formula One Championship-related motor sport goods and services," (see Formula1.com's FAAC at P 121), Formula1.com appears to have defined a product market in terms of one or more trademarks. Accordingly, these antitrust claims are DISMISSED with leave to amend [*9] to identify a product market not defined in terms of trademarks. n5

n5 Counter-defendants also argue that Formula1.com fails to sufficiently allege that counter-defendants have monopoly power in the relevant product market. As stated above [HN5] monopoly power allegations must be appraised in light of the relevant product markets. Given the Court's finding that Formula1.com has not sufficiently identified a relevant product market, the Court need not decide whether Formula1.com has adequately alleged monopoly power.

**C. Group Boycott Claims**

Formula1.com alleges in Counts Seven and Eight that counter-defendants are violating § 1 of the Sherman Act by conspiring to engage in a group boycott to prevent Formula1.com from competing in the relevant product market. Count Seven is pleaded under a per se theory. Count Eight is pleaded under a rule of reason theory.

" [HN6] Sherman Act § 1 prohibits agreements that unreasonably restrain trade." Big Bear Lodging Assoc. v. Snow Summit, Inc., 182 F.3d 1096, 1101 (9th Cir. 1999). [*10] "Certain kinds of agreements will so often prove so harmful to competition and so rarely prove justified that the antitrust laws do not require proof that an agreement of that kind is, in fact, anticompetitive in the particular circumstances. An agreement of such a kind is unlawful per se." Id. (quoting NYNEX Corp. v. Discon, Inc., 525 U.S. 128, 133, 142 L. Ed. 2d 510, 119 S. Ct. 493 (1998)). n6 "Other alleged violations are subject to 'rule of reason' analysis to determine 'whether particular

concerted conduct unreasonably restrains competition.'" Id. (quoting Oltz v. St. Peter's Community Hosp., 861 F.2d 1440, 1445 (9th Cir. 1988)).

n6 [HN7] An antitrust plaintiff bringing a claim based upon a per se violation need not identify the relevant market in which the parties compete. See id. at 1445-50.

[HN8] Where, as here, a claim is based upon an alleged group boycott, a per se analysis is appropriate only if the boycott "involves horizontal agreements among direct competitors. [*11] " See NYNEX Corp., 525 U.S. at 135; see, e.g., Fashion Originators' Guild of America, Inc. v. FTC, 312 U.S. 457, 85 L. Ed. 949, 61 S. Ct. 703 (1941) (finding per se rule applicable to claim that clothing designers, manufacturers, and suppliers agreed not to sell their products to retailers who bought clothes from competing manufacturers and suppliers).

Counter-defendants argue that Count Seven is deficient because Formula1.com does not allege that FOLBV, FOM, and FIA are direct competitors. Formula1.com alleges that FIA controls "the television and other media rights relating to all FIA sanctioned events," (see Formula1.com's FAAC at P 100), that FOM's "principal business [] is promotion of the FIA Formula One Championship, including . . . marketing the broadcast rights to the Championship," (see id. at P 103), and that FOLBV "claims to own and maintain the 'Formula One family of trademarks and trade names' used in connection with the FIA Formula One World Championship." (See id. at P 106.) Such allegations cannot be reasonably interpreted to state that FIA, FOM, and FOLBV are direct competitors. Further, to the extent Formula1.com argues [*12] that its group boycott conspiracy claim is premised upon an agreement between Ferrari apparel licensee TSS&P and FOM, no such agreement is pleaded in the counterclaim, nor is any allegation made that TSS&P is a direct competitor of FOM or any other counter-defendant. Accordingly, Count Seven is DISMISSED with leave to amend.

In Count Eight, Formula1.com seeks to plead a rule of reason claim. [HN9] To state such a claim, Formula1.com must sufficiently identify the relevant product markets in which it and counter-defendants compete, and allege facts demonstrating that counter-defendants conduct has an anticompetitive effect on such markets. See Big Bear Lodging, 182 F.3d at 1101-02, 1105 (holding plaintiff seeking to prove § 1 violation under rule of reason must identify relevant product markets). As stated above, Formula1.com has not sufficiently alleged a relevant product market. Accordingly, Count Eight is DISMISSED with leave to amend.

2001 U.S. Dist. LEXIS 2968, *

## II. State Claims

### A. Unfair Competition

In Count Ten of Formula1.com's FAAC, Formula1.com alleges that counter-defendants' actions constitute a violation of California Business & Professions Code § 17200. As pleaded, such [*13] claim is derivative of the antitrust claims. As stated above, however, the antitrust claims are deficiently pleaded. [HN10] Where a plaintiff fails to state an antitrust claim, and where an unfair competition claim is based upon the same allegations, such state claims are properly dismissed. See Kentmaster Mfg. Co. v. Jarvis Products Corp., 146 F.3d 691, 695 (9th Cir. 1998). Accordingly, Formula1.com's unfair competition claim is DISMISSED with leave to amend.

### B. Interference With Prospective Economic Advantage

In Count Eleven, Formula1.com alleges an IPEA claim. In their separate FAACs, Purple Interactive and McDiffett each allege an IPEA claim as well. n7

n7 Although Purple Interactive and McDiffett plead no antitrust claims, their IPEA claims are based on much of the same behavior as alleged by Formula1.com, and, in particular, that counter-defendants interfered by filing the instant action, by instituting an UDRP proceeding with the WIPO Arbitration and Mediation Center, and by falsely accusing counterclaimants of trademark infringement.

[*14] [HN11]

To state an IPEA claim, a plaintiff must allege "conduct that [is] wrongful by some legal measure other than the fact of interference itself." See id. at 695 (citation omitted). Although the California courts have not provided a definitive meaning of "wrongful" conduct, in Bed, Bath & Beyond v. La Jolla Village Square Venture Partners, 52 Cal. App. 4th 867 (Cal. Ct. App. 1997), the California Court of Appeal acknowledged that various courts have defined that phrase as follows: (1) conduct that is independently tortious or a restraint of trade; (2) conduct violating a statute, regulation, a recognized rule of common law, or an established standard of a trade or profession; or (3) conduct that is illegal, unfair, or immoral according to common understandings of society. See id. at 882 n.10.

Counter-defendants argue that the conduct alleged by counterclaimants is not "wrongful." Counter-defendants further argue that none of the IPEA claims

identifies any particular relationship that has been disrupted by counter-defendants.

### 1. Wrongful Conduct

Counter-defendants argue and Formula1.com agrees that the wrongful conduct forming [*15] the basis for Formula1.com's IPEA claim is, in large part, the antitrust activity alleged earlier in the FAAC. Accordingly, each party adopts its arguments made in connection with Formula1.com's antitrust claims. As discussed above, Formula1.com has not sufficiently pleaded an antitrust claim. Consequently, Formula1.com's IPEA claim fails to the extent that claim is derivative of Formula1.com's antitrust claims. See Kentmaster, 146 F.3d at 695.

Formula1.com argues, as do Purple Interactive and McDiffett, that they have sufficiently identified "wrongful" conduct by alleging FOLBV's trademark infringement claims are baseless and without merit. [HN12] Where a plaintiff seeks to base a claim of interference with prospective economic advantage upon the pursuit of litigation, the plaintiff "must allege that the litigation was brought without probable cause and that the litigation concluded in plaintiff's favor." See Pacific Gas & Elec. Co. v. Bear Stearns, 50 Cal. 3d 1118, 1137, 270 Cal. Rptr. 1, 791 P.2d 587 (Cal. 1990). Here, counterclaimants cannot allege the subject action concluded in their favor, as the litigation is on going. Accordingly, to the extent [*16] counterclaimants' IPEA claims are based upon the initiation of the instant action by FOLBV, such claims are premature. n8

n8 Although counterclaimants have alleged that the UDRP proceeding concluded in McDiffett's favor, counterclaimants, for the reasons discussed infra, have not sufficiently pleaded a claim based on FOLBV's initiation of that proceeding. For the same reasons, counterclaimants have not sufficiently pleaded an IPEA claim based on the allegation that counter-defendants made false accusations of trademark infringement.

### 2. Disruption of Relationship

[HN13] The elements of the tort of interference with prospective economic advantage include "an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff," and "actual disruption of the relationship." See Morton v. Rank America, Inc., 812 F. Supp. 1062, 1075 (C.D. Cal. 1993) (quoting Pacific Gas & Elec., 50 Cal. 3d at 1126 n.2). Here, counterclaimants [*17] allege in the most general terms that their relationships with "customers" have been disrupted. Counterclaimants fail

2001 U.S. Dist. LEXIS 2968, *

to identify with any degree of particularity the relationships which form the basis of these claims or the manner in which counter-defendants' actions interfered therewith. As a result, counterclaimants have not provided sufficient information to meet even the minimal pleading requirements under the Federal Rules. See Fed. R. Civ. P. (a); Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957) (holding Rule 8(a) requires statement "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

Accordingly, counterclaimants' IPEA claims are DISMISSED with leave to amend.

**CONCLUSION**

For the reasons stated, counter-defendants' motion to dismiss is hereby GRANTED and, with the exception of Count Nine of Formula1.com's FAAC, all counterclaims are DISMISSED with leave to amend to cure the deficiencies noted. Any such amended counterclaims shall be filed no later than 30 days from the date of this order.

**IT IS SO ORDERED.**

Dated: FEB X 6 2001

MAXINE M. CHESNEY

United [*18] States District Judge