IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA INC.,

Plaintiffs,

v.

INTERDIGITAL COMMUNICATIONS CORPORATION and INTERDIGITAL TECHNOLOGY CORPORATION,

Defendants.

C.A. No. 05-16-JJF

**REDACTED**
**PUBLIC VERSION**

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1), 12(B)(6), AND 12(H)(3)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
jheaney@mnat.com
*Attorneys for Plaintiffs*

OF COUNSEL:

ALSTON & BIRD LLP
Peter Kontio
Patrick Flinn
Randall Allen
Lance Lawson
1201 West Peachtree Street
Atlanta, GA 30309
404-881-7000

Original Filing Date: March 21, 2007

Redacted Filing Date: March 28, 2007

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING 1

SUMMARY OF ARGUMENT 2

STATEMENT OF FACTS 4

I. SUBSTANTIAL BENEFITS OF WIRELESS TELECOMMUNICATIONS STANDARDS 5

II. INTERDIGITAL'S FALSE OR MISLEADING STATEMENTS – ETSI DECLARATIONS 7

III. INTERDIGITAL'S FALSE OR MISLEADING STATEMENTS IN THE MARKETPLACE 8

IV. NOKIA'S FIRST AMENDED COMPLAINT 10

V. INTERDIGITAL'S INCONSISTENT FILINGS 11

ARGUMENT 12

I. NOKIA HAS STATED A CLAIM UNDER THE LANHAM ACT AND VARIOUS STATE LAW CAUSES OF ACTION, GIVING THIS COURT JURISDICTION TO GRANT THE REQUESTED RELIEF. 12

A. Nokia Has Sufficiently Pleaded Lanham Act Claims Under Rule 12(b)(6). 13

B. The Court May Grant Declaratory Relief to Nokia Consistent With Resolution of Nokia's Lanham Act and State Law Claims. 15

C. Declaratory Relief Incidental to the Adjudication of Nokia's Lanham Act Claims May be Necessary in Order to Afford Nokia Complete Relief. 17

D. Nokia Does Not Need to Claim a Reasonable Apprehension of a Patent Infringement Suit to Obtain the Relief Sought Here. 18

E. Nokia Does Not Have to Engage in Patent Infringement Litigation as a Prerequisite to Pursuing a Lanham Act Claim. 20

II. THE FIRST AMENDED COMPLAINT NEITHER SEEKS TO ENFORCE THIRD-PARTY RIGHTS NOR RESOLVE FOREIGN PATENTS. 22

A. Nokia Was Damaged By InterDigital's False Statements to the Marketplace, But the Amended Complaint Does Not State Claims on Behalf of Any Third Parties. 22

B. The Amended Complaint Does Not Request, or Require, Resolution of Foreign Patents. 23

III. INTERDIGITAL'S SUMMARY JUDGMENT ARGUMENTS ARE PREMATURE AND WITHOUT MERIT. 24

CONCLUSION 27

## TABLE OF AUTHORITIES

### CASES

*Aetna Life Ins. Co. v. Haworth*,
300 U.S. 227 (1937) 19

*Altvater v. Freeman*,
319 U.S. 359 (1943) 19

*Buztronics, Inc. v. Theory3, Inc.*,
No. 104CV1485DFHVSS, 2005 WL 1865512 (S.D. Ind. Aug. 5, 2005) 16, 21

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
508 U.S. 83 (1993) 19

*Castrol, Inc. v. Pennzoil, Co.*,
987 F.2d 939 (3d Cir. 1993) 15, 16

*Conley v. Gibson*,
355 U.S. 41 (1957) 14

*Elantech Devices Corp. v. Synaptics, Inc.*,
No. C 06-01839 CRB, 2006 WL 1883255 (N.D. Cal. July 7, 2006) 21

*Enzo Life Sciences, Inc. v. Digene Corp.*,
295 F. Supp. 2d 424 (D. Del. 2003) 16, 25

*Formula One Licensing v. Purple Interactive*,
No. C 00-2222 MMC, 2001 WL 34792530 (N.D. Cal. Feb. 6, 2001) 21

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) (Alito, J.) 25

*In re Donald J. Trump Casino Sec. Litig.*,
7 F.3d 357 (3d Cir. 1993) 25

*Kline v. First W. Gov't Sec.*,
24 F.3d 480 (3d Cir. 1994) 26

*Kost v. Kozakiewicz*,
1 F.3d 176 (3d Cir. 1993) 15

*Macklin v. Butler*,
553 F.2d 525 (7th Cir. 1977) 24, 26

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*,
312 U.S. 270 (1941) 19

*MedImmune, Inc. v. Genentech, Inc.*,
127 S.Ct. 764 (2007) 1, 3, 19, 20

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
165 F.3d 891 (Fed. Cir. 1998) 17

*Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288 (1960) — 17

*Nokia Corp. v. InterDigital Tech. Corp.*, HC 05 C02026 (U.K. Patents Ct.) — 25

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578 (3d Cir. 2002) — 16

*Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587 (Cal. 1990) — 22

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) — 17

*Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989) — 24

*Santana Prods. Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123 (3d Cir. 2005) *cert. denied*, 126 S. Ct. 734 (2005) — 17

*Santiago v. Fields*, 170 F. Supp. 2d 453 (D. Del. 2001) — 25

*Tyco Indus., Inc. v. Lego Sys., Inc.*, No. 84-3201(GEB), 1987 WL 44363 (D.N.J. Aug. 26, 1987) *aff'd*, 853 F. 2d 921 (3d Cir. 1988) — 17

*Visto Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064 (N.D. Cal. 2005) — 21, 22

*Warner Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87 (3d Cir. 2000) — 16

*Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999) — 16, 21

**STATUTES AND OTHER AUTHORITIES**

15 U.S.C. § 1051 *et seq.* — 1

15 U.S.C. § 1117 — 17

28 U.S.C. § 1331 — 14

28 U.S.C. § 1367 — 14

28 U.S.C. § 2201 — 1

28 U.S.C. § 2202 — 1

Fed. R. Civ. P. 12(b)(1) — 14

Fed. R. Civ. P. 12(b)(6) — 14, 15, 24, 25

Fed. R. Civ. P. 30(b)(6) — 8, 11

## NATURE AND STAGE OF THE PROCEEDING

On January 12, 2005, Nokia Corporation and Nokia Inc. (collectively "Nokia") filed their Complaint against InterDigital Communications Corporation and InterDigital Technology Corporation (collectively, "InterDigital") asserting patent noninfringement claims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and violations of the Lanham Act, 15 U.S.C. § 1051 *et seq*. InterDigital moved to dismiss Nokia's claims ("First Motion to Dismiss") and, on December 21, 2005, the Court dismissed Nokia's Declaratory Judgment Act claims on the grounds that Nokia "did not have a reasonable apprehension of litigation at the time the Complaint was filed" (D.I. 25 at 10).[1] This Court also ruled, however, that Nokia's original Complaint "stated a claim under Section 43 of the Lanham Act sufficient to survive Defendants' motion to dismiss" (D.I. 25 at 12). InterDigital answered the Lanham Act portion of the Complaint on January 26, 2006. Discovery has been ongoing for approximately one year.

On December 30, 2006, Nokia moved for leave to file an amended complaint. InterDigital did not oppose that motion. On February 6, 2007, this Court granted that motion and Nokia's First Amended Complaint ("Amended Complaint") was deemed filed as of that date. Nokia's Amended Complaint added an additional Lanham Act claim and clarified that Nokia's Lanham Act claims involved both: (i) InterDigital's declarations to standards-setting bodies; and (ii) InterDigital's statements to the marketplace that InterDigital was owed substantial royalties for use of intellectual property contained in its patent portfolio because of its purportedly "essential" patents. Nokia's Amended Complaint also added several state law claims based on

---

[1] This Court did not have, of course, the benefit of the Supreme Court decision in *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 774 n. 11 (2007), in which the Court rejected the Federal Circuit's "reasonable apprehension of imminent suit" requirement for patent declaratory judgment actions.

common law and statutory remedies for unfair competition, business disparagement, business interference, deceptive acts, and unjust enrichment (the "State Law Claims").

On February 21, 2007, InterDigital answered Nokia's Amended Complaint and filed Counterclaims mirroring those in Nokia's Amended Complaint. Simultaneously, InterDigital filed its Motion to Dismiss First Amended Complaint ("Motion to Dismiss"). Even though InterDigital is now bringing nearly identical claims, InterDigital's Motion to Dismiss contends that Nokia's claims do not state a cause of action and this Court is without jurisdiction to hear them. That contention is meritless.

**SUMMARY OF ARGUMENT**

InterDigital's Motion to Dismiss should be denied because: (i) Nokia has sufficiently pleaded its Lanham Act and State Law Claims; (ii) this Court has subject matter jurisdiction over those claims; and (iii) it is within this Court's power to grant Nokia's requested relief.

InterDigital has simply repackaged a motion this Court has already considered and denied. On December 21, 2005, this Court denied InterDigital's First Motion to Dismiss, holding that Nokia had "stated a claim under Section 43 of the Lanham Act" (D.I. 25 at 12). The Amended Complaint is grounded in the same facts and law as the original, providing only further clarification and details of the false statements at issue. With these new details, the Amended Complaint sets forth an additional Lanham Act count and appropriately adds several related state law causes of action. InterDigital, moreover, has offered nothing to undermine this Court's prior holding that Nokia had sufficiently stated a Lanham Act claim that affords this Court subject matter jurisdiction over the case.

In the guise of a jurisdictional motion, InterDigital also takes issue with the scope of Nokia's requested relief, including Nokia's prayer for declarations relating to the extent to which InterDigital's patent portfolio is implicated by practice of technology compliant with "3G"

standards. Contrary to InterDigital's argument, however, the Court does have the power to grant all necessary relief to Nokia consistent with resolution of Nokia's Lanham Act and State Law Claims – whether that relief takes the form of "declarations" or otherwise. Nokia's Lanham Act claims clearly require the resolution of the truthfulness or misleading nature of the statements at issue and the Court certainly has power to resolve such questions. Should the Court determine that full relief for Nokia requires the issuance of declarations regarding the true extent to which InterDigital's patent portfolio is implicated by 3G standards – as opposed to relying exclusively on the remedies of injunctive relief or money damages – the Court is empowered to do so. The Lanham Act is grounded in principles of equity, and this Court, as all other courts of equity, has the power to fully and finally resolve disputes before it. Accordingly, the scope of Nokia's requested relief is entirely proper.

InterDigital's remaining arguments, which are equally meritless, may be summarized as follows: (i) the Court lacks jurisdiction, because Nokia has no reasonable apprehension of imminent suit; (ii) the Court lacks jurisdiction, because Nokia seeks resolution of foreign patents and third-party rights; (iii) Nokia must bring a separate patent infringement action before proceeding with its Lanham Act claims; and (iv) InterDigital's false statements do not violate the Lanham Act pursuant to summary judgment arguments incorporated by InterDigital. None of these arguments withstands scrutiny.

First, because this Court has jurisdiction over the entire case as a result of the properly stated Lanham Act claims, the question of whether Nokia has a "reasonable apprehension of imminent suit" is irrelevant to the exercise of this Court's jurisdiction. Moreover, in its recent *MedImmune* decision, the Supreme Court rejected the Federal Circuit's "reasonable apprehension of imminent suit" test. Accordingly, that test would have no proper place in the

evaluation of subject matter jurisdiction, even if the only counts pleaded were under the Declaratory Judgment Act, which is not the case here.

Second, Nokia does not seek resolution of foreign patents or third-party rights. While Nokia's Lanham Act and State Law Claims involve broad statements by InterDigital to the entire marketplace (including third parties) and broad statements regarding InterDigital's entire patent portfolio (which could encompass foreign patents), the breadth of InterDigital's false or misleading statements cannot insulate those statements from this Court's review.

Third, a prior patent infringement suit is not a prerequisite to the pursuit of a Lanham Act claim arising from false or misleading statements of patent scope. While there are many instances of Lanham Act claims like this one, where patent owners make false claims of patent coverage, no case has ever held that the victims must litigate the patents before filing suit. The only authority InterDigital cites for this argument is California state malicious prosecution law, and no such claim is present here.

Finally, InterDigital's incorporation of its summary judgment arguments that its declarations do not violate the Lanham Act and its reliance on other matters outside the pleadings is improper and should be excluded by this Court. Moreover, those arguments are premature and without merit. InterDigital is not immunized from making false claims in the marketplace about its patents by preceding the claims with the word "believe."

**STATEMENT OF FACTS**

The false or misleading statements at issue in this case arise in the context of intellectual property rights asserted against technology standards. Accordingly, to understand the nature of Nokia's claims, the injury it has suffered and the remedies it seeks, it is important to review briefly the process of setting technology standards, and the problems encountered when participants in the standards-setting process hold and assert intellectual property rights (typically

patents) on standards before and after they are promulgated. Here, as explained below, InterDigital has been abusing the standards process in ways that have inhibited and delayed the implementation of the next generation of wide-band mobile communications technology, and the claims brought here are intended to stop that abuse.

## I. SUBSTANTIAL BENEFITS OF WIRELESS TELECOMMUNICATIONS STANDARDS

Because of their utility and convenience, mobile phones have become the most common digital devices in the world – used by over two billion people.[2] The success of mobile phones stems largely from the publicly available industry standards that allow wireless service providers to create networks using equipment and handsets produced by numerous manufacturers. These interoperability standards allow for robust competition between manufacturers in the markets for handsets and infrastructure equipment. These competitive pressures ultimately improve the quality of the phone technology and reduce the prices. Moreover, telephone networks exhibit "network effects;" that is, the more people who use mobile phones, the more useful they become.[3] These network effects further magnify the competitive benefits inherent in standards that ensure interoperability.[4]

Public interoperability standards, however, require that the entire mobile telephone industry conform to certain technical requirements. If a patent covers those requirements, the entire mobile telephone industry may infringe that patent. Such a patent is typically called "essential" to the standard. Moreover, once manufacturers have invested substantial capital in

---

2 *See* GSM World – The Website of the GSM Association, at http://www.gsmworld.com/index.shtml (last visited Mar. 14, 2007).

3 See Mark A. Lemley, Intellectual Property Rights and Standard-Setting Organizations, 90 CAL. L. REV. 1889, 1869-70 (2002).

4 See id.

producing standards-compliant products (such as designing equipment and building factories) and have sold substantial quantities of standards-compliant equipment, the owner of an essential patent may be able to extort unreasonable patent royalties.[5] As a practical matter, such royalties would be driven largely by the amount of the already-invested capital that the manufacturers would be at risk of losing – not by the value of the patented invention itself.

Standards-setting organizations consequently employ a variety of strategies to address such patent "hold-ups." For example, the European Telecommunications Standards Institute ("ETSI"), which promulgates standards for one of the two principal 3G standards (UMTS),[6] requires that its members disclose essential intellectual property rights, including patents, to ETSI through a formal declaration.[7] ETSI then makes these declarations available through an on-line database, thereby facilitating licensing discussions and also disclosing to the world potential risks of infringement. Additionally, each ETSI member commits to license its patents on "fair, reasonable, and non-discriminatory" ("FRAND") terms.[8] The FRAND commitment therefore limits the royalties that a patent owner can charge for essential patents. To the extent there are patents owned by non-ETSI members who refuse to comply with the ETSI policies, ETSI has the ability to change the standard to avoid such third parties' patents.

---

5 See Daniel G. Swanson, Evaluating Market Power in Technology Markets When Standards Are Selected in Which Private Parties Own Intellectual Property Rights, Joint Hearings of the United States Department of Justice and the Federal Trade Commission regarding Competition and Intellectual Property Law and Policy in the Knowledge-Based Economy 5 (2002), available at http://www ftc.gov/opp/intellect/ 020418danielswanson.pdf.

6 "UMTS" stands for Universal Mobile Telecommunications System and is the successor to the 2G standard known as GSM.

7 *See* ETSI Guide on Intellectual Property Rights, § 2 at p. 7 (attached as Exhibit B hereto and attached to the Amended Complaint).

8 *See* Exhibit B, § 6.1 at p. 20.

In this case, Nokia alleges (among other things) that InterDigital has abused the standards-setting process regarding the most recent generation of wireless standards – the so-called "third generation" or "3G" standards – through false or misleading claims that its patents are essential to these standards. As explained in more detail below, InterDigital has corrupted the safeguards designed to prevent patent hold-ups (the concealment of essential patents) by engaging in a different form of abuse: passing off as "essential" patents that are not, in fact, essential.

In doing so, InterDigital harms those that rely on 3G standards and undermines the integrity of the standards-setting process. More importantly to this case, however, InterDigital has directly injured Nokia by this wrongful conduct. By creating a cloud of uncertainty and doubt over the intellectual property rights applicable to ETSI's 3G standard, InterDigital has delayed the acceptance of this technology by the marketplace. Because of this delay, Nokia has not been able make sales of new 3G products to the market in the volumes it and other market forecasters had predicted. This is but one of the ways in which Nokia has been damaged, as alleged in detail in the Amended Complaint.

## II. INTERDIGITAL'S FALSE OR MISLEADING STATEMENTS – ETSI DECLARATIONS

As alleged in the Amended Complaint, and as discovery over the past year has confirmed, InterDigital has made a number of false or misleading statements involving its declarations to ETSI that have undermined the standards-setting process and deprived that process of its intended benefits.

First, InterDigital has intentionally declared patents as essential to ETSI, even though InterDigital knew those patents did not meet the ETSI definition of essential. [redacted]

[redacted]

Second, InterDigital declared patents essential without even comparing the patent claims to the standards. [redacted] Through this intentionally inadequate process, InterDigital knowingly declared patents that are not essential.

Third, InterDigital made deliberately vague declarations. InterDigital [redacted] does not identify the relevant section of the standard in its essentiality declarations, even though that information is readily available to InterDigital.[12] Indeed, although the ETSI form requires a specification of the particular portion of the standard, InterDigital deliberately and systematically does not provide that information. Rather, InterDigital cites to the table of contents of the standard so that it is difficult to confirm or refute InterDigital's essentiality claims.

## III. INTERDIGITAL'S FALSE OR MISLEADING STATEMENTS IN THE MARKETPLACE

InterDigital has not confined its pattern of false or misleading statements to its ETSI submissions. InterDigital's abusive practices also include false or misleading marketplace

---

[redacted]

statements to the effect that InterDigital is owed substantial sums for its patent portfolio by any manufacturer who practices the 3G standards.

InterDigital has engaged in a publicity campaign regarding its claims of essentiality in the press and in other ways intended to be disseminated to the communications industry. InterDigital claims in public statements that its patents are essential to the practice of the UMTS standard, and that it expects to obtain substantial license revenue from all companies that make standards-compliant products. For example, in a November 10, 2006 press release, InterDigital claimed that it "has built an intellectual property portfolio of more than 7,500 issued patents and patents pending around the world," and boasted of its "active participation in global standards bodies that shape the evolution of the technology and the future of the industry."[13] InterDigital further claimed that its participation in the standards process allowed it to create "a strong portfolio of patented technologies which it licenses to manufacturers of 2G, 2.5G, 3G and 802 products worldwide."[14]

Even as recently as this month, InterDigital has made public statements that 3G product manufacturers must pay it substantial sums of money, threatening legal action if they do not. In its March 1, 2007 10-K filed with the Securities and Exchange Commission,[15] InterDigital stated as follows:

> Currently, numerous manufacturers supply digital cellular equipment conforming to 2G and 3G Standards. Accordingly, we believe that those companies require licenses under our essential patents and will require licenses under essential patents that may issue from our pending patent applications. . . . If we believe that a third party is required to take a license to our patents in order to

---

13 Amended Complaint, ¶ 34; November 10, 2006 Press Release (attached hereto as Exhibit C).

14 *Id.*

15 Excerpt attached hereto as Exhibit D.

manufacture and sell products, we might commence legal action against the third party if they refuse to enter into a patent license agreement.

As this recent public claim illustrates, InterDigital does more than just declare that it has essential patents with respect to 3G technologies. It claims that its portfolio of patents is sufficiently broad that all manufacturers of 3G products *must pay InterDigital substantial fees* to make standards-compliant products. These statements, particularly when considered in their totality, are false or misleading, because manufacturers and users of 3G-compliant equipment do not have to pay InterDigital substantial sums of money, if any. As explained in Plaintiffs' Statement Pursuant to Second Discovery Order,[16] InterDigital's declared patents are not essential to the 3G standards, are not used by the mobile telephone industry, are already widely licensed to the mobile telephone industry, or cannot be valid and essential to any 3G standard at the same time.

Accordingly, it is false or misleading for InterDigital to claim or suggest that the industry (including Nokia) owes it substantial sums of money for practicing the 3G standards.

## IV. NOKIA'S FIRST AMENDED COMPLAINT

Nokia has, for nearly the last year, attempted through written and oral discovery to obtain basic information from InterDigital about its essentiality declarations. Rather than cooperate, InterDigital has blocked discovery into how and why it declares patents essential to ETSI and makes misleading statements to the marketplace. Nokia was unable to discover any meaningful information about InterDigital's declaration processes until it deposed InterDigital's 30(b)(6) witness on August 29, 2006. Admissions from the 30(b)(6) deposition were the primary impetus for Nokia's restated claims in the Amended Complaint (not, as InterDigital suggests, an attempt by Nokia to rebut InterDigital's premature motion for leave to file summary judgment).

---

[16] Exhibit D to InterDigital's Opening Brief.

There is significant factual overlap between the new claims in the Amended Complaint and the Lanham Act claim set forth in Nokia's original Complaint. Nokia's original Lanham Act claim was based, in part, on InterDigital's public declarations to ETSI that its patents are essential to the UMTS standard. Nokia's Amended Complaint restates that Lanham Act claim with increased specificity and adds new claims grounded in InterDigital's additional false statements to the marketplace to the effect that InterDigital is entitled to substantial sums of money from 3G-product manufacturers, such as Nokia. Among other details, the revised Lanham Act claims specifically identify which patents InterDigital improperly declared to ETSI as essential (a list is attached as Exhibit A to the Amended Complaint). Nokia's discovery responses have further explained why each declared patent does not entitle InterDigital to substantial sums of money from the industry.[17]

Nokia has also asserted claims for: (i) violation of the Delaware Deceptive Trade Practices Act; (ii) common law unfair competition (under both Delaware and Pennsylvania law); (iii) intentional interference with prospective business opportunities (under Delaware, Pennsylvania, and Texas law); (iv) injurious falsehood; (v) commercial disparagement (under Texas and Pennsylvania law); and (vi) unjust enrichment (under Delaware, Pennsylvania, and Texas law). These claims all stem from the same basic facts that underlie Nokia's Lanham Act claims.

## V. INTERDIGITAL'S INCONSISTENT FILINGS

Finally, given the number of pending motions before the Court, it is important to note the inconsistent nature of InterDigital's numerous and unnecessary motions. First, on November 17, 2006, InterDigital moved to compel arbitration and stay this litigation (D.I. 75). Notwithstanding its

---

[17] *See* Exhibit D to InterDigital's Opening Brief.

request for a stay pending arbitration, two weeks later, InterDigital moved this Court to allow it to file a premature motion for summary judgment (the Court's original scheduling order provided that dispositive motions should not be filed until August 5, 2007), arguing that the Court should decide the entire matter.

Adding to that contradiction, InterDigital has now moved to dismiss Nokia's Amended Complaint even as it asserts counterclaims against Nokia nearly identical to those in the Amended Complaint. On February 21, 2007, the same day it filed this Motion to Dismiss, InterDigital asserted three Lanham Act counts, five Delaware state law counts and three Pennsylvania state law counts against Nokia. These counterclaims are mirror images of some of the claims Nokia has asserted in its Amended Complaint. In short, InterDigital now seeks to dismiss the exact claims it simultaneously attempts to assert, arguing the Court is without jurisdiction to hear this matter. For the reasons explained below, the Court *does* have jurisdiction, and the case should thus proceed to a timely and orderly disposition on the merits.

## ARGUMENT

### I. NOKIA HAS STATED A CLAIM UNDER THE LANHAM ACT AND VARIOUS STATE LAW CAUSES OF ACTION, GIVING THIS COURT JURISDICTION TO GRANT THE REQUESTED RELIEF.

In December 2005, this Court decided that Nokia's original Complaint stated a claim for relief under the Lanham Act (D.I. 25 at 11-13). Nothing has changed since that time to suggest that claim is improper or outside the jurisdiction of this Court to resolve. In fact, since 2005, Nokia has detailed the false statements it has been able to discover. Additionally, Nokia has explained that InterDigital's statements are false, because its patents are not essential, are already licensed to the industry, or are not used in any phones actually being manufactured.[18]

---

[18] *See, e.g.*, Plaintiffs' Statement Pursuant to First Discovery Order and Plaintiffs' Statement Pursuant to Second Discovery Order, attached as Exhibits A and D, respectively, to InterDigital's Opening Brief.

InterDigital, on the other hand, has vowed to stand by its false or misleading statements even in the face of Nokia's claims.[19] If anything, the dispute is even more clear, more definite, and more concrete now than it was in 2005.

The Amended Complaint merely supplements the original Complaint by clarifying the false or misleading statements at issue and adding an additional Lanham Act claim and related State Law Claims. There is no reason to dismiss the Amended Complaint under Rule 12(b)(6).

It necessarily follows that the Court also should deny InterDigital's motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. This Court has subject matter jurisdiction over Nokia's well-pleaded Lanham Act claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the related state claims under 28 U.S.C. § 1367. InterDigital's motion should be denied.

### A. Nokia Has Sufficiently Pleaded Lanham Act Claims Under Rule 12(b)(6).[20]

Nearly two years ago, Nokia responded to InterDigital's first motion to dismiss and explained how the original Complaint stated a Lanham Act claim (D.I. 14 at 25-34). The Amended Complaint is rooted in the same facts as the original Complaint, which the Court already held states a proper Lanham Act claim for relief. Accordingly, the Court need not long

---

19 [redacted] November 14, 2006 Second Discovery Order at ¶ 8 n. 6 ("At argument, InterDigital said it was standing by its ETSI declarations . . . .").

20 InterDigital has moved the Court to dismiss Nokia's State Law Claims only on the grounds that the Court should not exercise supplemental jurisdiction over such claims if the Lanham Act claims are dismissed. Accordingly, Nokia responds only regarding the specific pleading requirements for the Lanham Act. However, the facts and circumstances giving rise to the Lanham Act claims, as detailed in the Amended Complaint, also support Nokia's well-pleaded State Law Claims. Because Nokia has sufficiently pleaded Lanham Act claims, which claims support the Court's exercise of subject matter jurisdiction over this case in the first instance, the Court should continue to exercise supplemental jurisdiction over the State Law Claims as well.

consider whether Nokia also sufficiently pleads Lanham Act claims in the Amended Complaint, particularly given that the Court should not grant InterDigital's Rule 12(b)(6) motion to dismiss unless Nokia "can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Nonetheless, Nokia briefly restates the manner in which the Amended Complaint satisfies the Lanham Act pleading standard.

First, InterDigital has made false or misleading statements as to its products, or those of Nokia, by making false declarations to ETSI that its patents are essential to 3G standards and by making marketplace statements that InterDigital is entitled to substantial sums of money from makers of 3G standards-compliant products. *See* Amended Complaint, *e.g.*, ¶¶ 27-41. Second, there was actual deception or at least a tendency to deceive a substantial portion of the intended audience, as InterDigital's patent portfolio is not infringed by 3G-compliant products. *See id.*, *e.g.*, ¶¶ 36-37, 55 and 62. Third, the deception was material in that it is likely to influence purchasing decisions. *See id.*, *e.g.*, ¶¶ 42-46, 55-56, and 62-63. Fourth, the advertised goods traveled in interstate commerce. *See id.*, *e.g.*, ¶¶ 2, 48, 56, 65. Fifth, there is a likelihood of injury to Nokia. *See id.*, *e.g.*, ¶¶ 42-46, 56, 63. Finally, InterDigital acted in bad faith in its scheme to mislead the industry into paying it substantial sums of money. *See id.*, *e.g.*, ¶¶ 40-46, 57, 65.

Given that the purpose of a motion to dismiss is to test the sufficiency of a complaint, and not to resolve disputed facts or the merits of the case, it is clear that the Amended Complaint sufficiently pleads Nokia's Lanham Act and State Law Claims and should not be dismissed pursuant to InterDigital's Rule 12(b)(6) argument. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

**B. The Court May Grant Declaratory Relief to Nokia Consistent With Resolution of Nokia's Lanham Act and State Law Claims.**

InterDigital contends that this Court does not have subject matter jurisdiction over Nokia's claims because Nokia seeks, as part of the resolution of its Lanham Act and State Law Claims, declarations related to the falsity of InterDigital's claims about its patents. In doing so, InterDigital suggests that the Declaratory Judgment Act is the sole vehicle by which the Court can address the truth or falsity of a claim in an unfair competition case. That argument is without merit.

First, the Declaratory Judgment Act is not a jurisdictional statute, but is simply a statute that added to existing remedies. *See* 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2766 (1998) ("The operation of the Declaratory Judgment Act is procedural only. By passage of the Act, Congress enlarged the range of remedies available in the federal courts but it did not extend their subject-matter jurisdiction."). There is no authority for the proposition that the passage of the Declaratory Judgment Act deprived the federal courts of power to rule on issues arising in other causes of action.

Courts in Lanham Act cases routinely and necessarily make rulings on the truth or falsity of the statements at issue in the case. For example, in *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943-45 (3d Cir. 1993), the Third Circuit upheld the district court's finding that Pennzoil does not provide better protection from viscosity breakdown than any other leading brand (namely, Castrol). Specifically, after a bench trial on the merits, the district court held that Pennzoil's advertisements contained claims of superiority which were "literally false," and permanently enjoined Pennzoil from broadcasting, publishing, or disseminating, in any form or in any medium, the challenged advertisements or any revised or reformulated versions thereof.

*Id.* at 941. Certainly, the Declaratory Judgment Act imposed no barrier to the declaration that formed the legal and logical predicate for the Court's jurisdiction in *Castrol*.

The district court's binding, reviewable decision that the statements at issue in *Castrol* were false, and its publication of the same in its opinion, is no different than the declaration Nokia seeks here. Where Castrol sought a binding decision that Pennzoil did not provide superior protection, Nokia seeks a binding decision that neither it nor others in the industry owe InterDigital the allegedly substantial sums of money to which InterDigital claims to be entitled for its purportedly essential patents. Whether labeled as a "declaration" or not, a binding determination as to the falsity or misleading nature of challenged statements is part and parcel of the adjudication of a Lanham Act case. *See, e.g., Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 599-600 (3d Cir. 2002) (affirming district court's finding that product was specially formulated for nighttime relief); *Warner Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 96-97 (3d Cir. 2000) (upholding district court's finding that advertisement that product fights bad breath at the source was literally false, and strengthening injunctive relief).

The necessity of determining the misleading nature of statements at issue in Lanham Act cases is as present in patent-related cases as in cases involving motor oil or cold remedies. *See Buztronics, Inc. v. Theory3, Inc.*, No. 104CV1485DFHVSS, 2005 WL 1865512, *4 (S.D. Ind. Aug. 5, 2005) (denying a motion to dismiss Lanham Act claim related to patent statements and noting that to prevail on Lanham Act claim regarding patent validity, plaintiff would ultimately need to prove the invalidity); *see also Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999) (holding that a Lanham Act claim is viable for market statements about one's own patents); *Enzo Life Sciences, Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 427-28 (D. Del.

2003) (same); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) ("[A] threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights."). Nokia's requested relief asks for no more than that the Court resolve the false or misleading nature of InterDigital's statements, and in the course of doing so, to make a binding, public and final decision regarding the same. There is nothing novel or controversial about the scope of Nokia's requested relief, and in any event, a jurisdictional motion is hardly the proper vehicle for determining the scope of remedies to which Nokia may ultimately be entitled.

### C. Declaratory Relief Incidental to the Adjudication of Nokia's Lanham Act Claims May be Necessary in Order to Afford Nokia Complete Relief.

This Court, as other courts of equity, has the power to fully and completely resolve disputes before it and issue all necessary relief. *See Porter v. Warner Holding Co.*, 328 U.S. 395, 399 (1946) ("[W]here, as here, the equitable jurisdiction of the court has properly been invoked for injunctive purposes, *the court has the power to decide all relevant matters in dispute and to award complete relief even though the decree includes that which might be conferred by a court of law.*") (emphasis added); *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 291-292 (1960) ("When Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in the light of statutory purposes.").

Courts' broad equitable powers extend to the Lanham Act as well. *See* 15 U.S.C.A. § 1117 (expressly providing that the Lanham Act is "subject to the principles of equity"); *Santana Prods. Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 135 (3d Cir. 2005) *cert. denied*, 126 S. Ct. 734 (2005) (relying on the "principles of equity" in applying equitable laches and unclean hands doctrines to Lanham Act claim); *Tyco Indus., Inc. v. Lego Sys., Inc.*, No. 84-3201(GEB),

1987 WL 44363, *8 (D.N.J. Aug. 26, 1987) *aff'd*, 853 F. 2d 921 (3d Cir. 1988) ("Section 43(a) of the Lanham Act is a remedial statute and is broadly construed by the courts to protect the consumer from false advertising, and also from 'unfair competitive practices involving actual or potential deception.'"). Consequently, this Court may grant the full scope of Nokia's requested relief and certainly need not dismiss the Amended Complaint merely because it requests the full range of relief to which Nokia may be entitled.

Here, this Court may find that full relief for Nokia from InterDigital's false or misleading statements may also require a separate and independent declaration of the falsity or misleading nature of InterDigital's statements. Even injunctive relief ordering retraction of the statements at issue or withdrawal of the ETSI declarations may not fully relieve the harm caused to Nokia by InterDigital's statements. Specifically, if InterDigital's statements have resulted in marketplace confusion regarding intellectual property and 3G standards (as Nokia has alleged), it may be that such confusion can be corrected only with an express declaration regarding which of InterDigital's patents, if any, actually are essential, valid, not already licensed to the industry, or actually in use by the industry.

For example, such a declaration could be required to prevent InterDigital from making new, but similarly misleading, statements regarding the essentiality of the patents in its 3G portfolio. If so, as discussed below, this Court is empowered to grant such relief. In any event, as noted above, the scope of relief available to Nokia is properly reserved until a determination of the merits and is not a proper question to resolve in the abstract.

### D. Nokia Does Not Need to Claim a Reasonable Apprehension of a Patent Infringement Suit to Obtain the Relief Sought Here.

Because Nokia has properly pleaded a Lanham Act claim, and because the equitable power granted this Court by that Act empowers it to issue such declarations as it may determine

necessary and appropriate at the time judgment is entered, InterDigital's motion must be denied. Even so, it is worth addressing briefly InterDigital's argument that Nokia must show that it has a "reasonable apprehension" of a patent infringement suit before it can obtain the relief it seeks here.

InterDigital rests its argument on the theory that *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764 (2007), did "not overrule the Federal Circuit's 'reasonable apprehension of imminent suit' standard for declaratory relief."[21] InterDigital's purported reading of *MedImmune* is simply wrong. In *MedImmune*, the Supreme Court held that the Federal Circuit's "reasonable apprehension" test conflicted with or was contradicted by at least three existing Supreme Court cases (*Altvater v. Freeman*, 319 U.S. 359 (1943), *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941), and *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)), and another Supreme Court case (*Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993)) is in "tension" with the standard. *MedImmune*, 127 S. Ct. at 774 n.11. When the Supreme Court holds that a test is "in conflict" with its precedents, that test is no longer the law.

Beyond demonstrating that the apprehension of suit test is inconsistent with prior Supreme Court law, the Supreme Court also overruled the doctrine on the facts of the *MedImmune* case. Thus, there can be no doubt that the disposal of the doctrine was holding, and not dicta. Specifically, the Supreme Court allowed the *MedImmune* plaintiff to assert a declaratory judgment action for noninfringement even though the plaintiff's "own acts . . . *eliminate[d] the imminent threat of harm.*" *MedImmune*, 127 S.Ct at 772 (emphasis added). By allowing a plaintiff to proceed even though the threat of suit was eliminated, the Supreme Court clearly and unequivocally overruled the reasonable apprehension of suit standard.

---

[21] InterDigital's Opening Brief at 17.

InterDigital's misreading of the *MedImmune* case is perhaps not entirely surprising given that InterDigital filed an amicus brief with the Supreme Court urging that the reasonable apprehension doctrine should be maintained. InterDigital's position, however, did not prevail in the Supreme Court and it should not prevail here.[22] The reasonable apprehension of suit test has been eliminated, and even if it still existed, is irrelevant to justiciability of Nokia's Lanham Act and State Law Claims.

**E. Nokia Does Not Have to Engage in Patent Infringement Litigation as a Prerequisite to Pursuing a Lanham Act Claim.**

Clearly reaching the bottom of its theory barrel, InterDigital argues that Nokia's Amended Complaint should be dismissed because Nokia must first make a separate showing of bad faith by proving that InterDigital's patent portfolio is not essential to 3G standards.[23] InterDigital is incorrect. To the extent required, both the element of bad faith and the related showings of falsity or tendency to mislead can and will be made in the context of this case – not some other, hypothetical, yet-to-be filed case that InterDigital claims Nokia must file.

Assuming bad faith is essential to the Lanham Act claims,[24] it is properly pleaded here. As implicitly recognized by this Court in ruling on the first motion to dismiss, Nokia is required only to plead bad faith, not demonstrate the same in a separate, prior action (D.I. 25 at 12 (allowing Lanham Act claim to proceed in view of Nokia's allegation "that Defendants made

---

22 While the reasonable apprehension of suit doctrine clearly has been eliminated, even if the doctrine did apply, Nokia continues to have reasonable apprehension of suit. As recently as this month, InterDigital continues to make public statements that third parties, such as Nokia, who manufacture 3G-compliant products "require licenses under [its] essential patents and will require licenses under essential patents that may issue from [its] pending patent applications," and that InterDigital "might commence legal action against the third part[ies] if they refuse to enter into a patent license agreement." Exhibit D hereto.

23 InterDigital's Opening Brief at 27.

24 Bad faith appears to be required before money damages can be awarded for a Lanham Act violation. A separate question arises, however, as to whether false statements about patents can be enjoined once proven to be false, even if made in good faith initially.

false or misleading statements in bad faith to the effect that Defendants' patents cover Plaintiffs' 3G products")). *See also Zenith,* 182 F.3d at 1353 (holding that a "patentee's statements regarding its patent rights are conditionally privileged under the patent laws, so that such statements are not actionable unless made in bad faith," but imposing no requirement of a prior patent action to determine the accuracy of those statements); *Buztronics,* 2005 WL 1865512 at *3 ("[W]hile plaintiff ultimately will need to prove the '939 patent is invalid, that is not the plaintiff's burden at this stage. The plaintiff has given defendant ample notice of the Lanham Act claim.").

In the face of such clear precedent, InterDigital cites three California cases in support of its novel argument that Nokia must first separately litigate the scope of InterDigital's patents before pursuing advertising claims: *Elantech Devices Corp. v. Synaptics, Inc.*, No. C 06-01839 CRB, 2006 WL 1883255 (N.D. Cal. July 7, 2006); *Visto Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064 (N.D. Cal. 2005); and *Formula One Licensing v. Purple Interactive Ltd.*, No. C 00-2222 MMC, 2001 WL 34792530 (N.D. Cal. Feb. 6, 2001). InterDigital's reliance on these cases is misplaced.

Each of the three cases relied upon by InterDigital involved the assertion of disguised malicious prosecution counterclaims under California state law. The defendants in each of these cases alleged that the plaintiffs' very filing of the underlying lawsuits caused some form of tortious injury. Under California law, however, the "only common law tort claim that treats the instigation or bringing of a lawsuit as an actionable injury is the action for malicious prosecution." *Visto Corp.*, 360 F. Supp. 2d at 1071 (internal quotations omitted). Accordingly, although the defendants in *Visto*, *Elantech*, and *Formula One* attempted to couch their counterclaims in terms of defamation and intentional interference with prospective economic

relations, the court recognized the counterclaims for the malicious prosecution claims that they actually were, holding that the defendants had to prove the elements of malicious prosecution. Under California law, those elements include a showing that the underlying action "'was brought without probable cause and *was pursued to a legal termination in [their] favor*.'" *Visto Corp.*, 360 F. Supp. 2d at 1071 (quoting *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587 (Cal. 1990)).

In short, there is no California malicious prosecution claim in this case. The elements of a California malicious prosecution action are entirely irrelevant to this matter. Like every other Lanham Act case involving false or misleading statements about patents, falsity and bad faith can and will be determined in the same proceeding.

## II. THE FIRST AMENDED COMPLAINT NEITHER SEEKS TO ENFORCE THIRD-PARTY RIGHTS NOR RESOLVE FOREIGN PATENTS.

InterDigital claims the Amended Complaint should be dismissed because Nokia purportedly seeks to enforce the rights of third parties and resolve foreign patents. Both of these arguments are red herrings, because Nokia does neither.

### A. Nokia Was Damaged By InterDigital's False Statements to the Marketplace, But the Amended Complaint Does Not State Claims on Behalf of Any Third Parties.

The statements that InterDigital cites in the Amended Complaint to support its third-party rights argument unquestionably were made to the relevant industry and marketplace in general, and therefore included communications to parties other than Nokia alone. That, of course, is the essence of the Lanham Act, which allows parties to recover when false or misleading statements deceive or have the tendency to deceive a substantial portion of the intended audience of third parties, as this Court has already observed (D.I. 25 at 11).

Here, the intended audience was the marketplace of 3G-compliant manufacturers. As alleged in the Amended Complaint, Nokia was harmed by those statements, because those statements caused confusion in the marketplace and impeded the roll-out of 3G-compliant technology. While, as in any Lanham Act case, statements disseminated to third parties are the mechanism by which InterDigital carried out its strategy of deception and caused harm to the market and Nokia, Nokia is not seeking to enforce the rights of any third parties.

### B. The Amended Complaint Does Not Request, or Require, Resolution of Foreign Patents.

Just as Nokia does not assert the Amended Complaint to vindicate third-party rights, it does not do so to resolve issues related to foreign patents. InterDigital is again correct that some of its false or misleading statements at issue involve InterDigital's entire patent portfolio and that its portfolio includes certain foreign patents. The core of this case, however, rests on the United States patents. The list of patents declared to ETSI which Nokia alleges are not essential (attached as Exhibit A to the Amended Complaint) contains only United States patents. Further, the parties' Statements Pursuant to the Second Discovery Order, by which they set out contentions regarding essentiality and non-essentiality, deal only with United States patents. Moreover, the parties are litigating the essentiality of InterDigital's U.K. patents in a proceeding in that country.[25]

InterDigital cannot insulate itself from liability merely by ensuring that when it makes false or misleading statements regarding its patent portfolio it does so in a broad enough fashion to cover some related foreign patents as well. While Nokia believes this case can be resolved by addressing the U.S. portfolio, the fact that InterDigital parades its falsehoods on a global stage is no reason to dismiss the Amended Complaint.

---

25 *See Nokia Corp. v. InterDigital Tech. Corp.*, HC 05 C02026 (U.K. Patents Ct.).

## III. INTERDIGITAL'S SUMMARY JUDGMENT ARGUMENTS ARE PREMATURE AND WITHOUT MERIT.

Pursuant to the Court's Scheduling Order prohibiting the filing of dispositive motions until August 5, 2007, InterDigital filed on December 1, 2006 a Motion for Leave to File Motion for Summary Judgment, including a Motion for Summary Judgment and Brief in Support as attachments. In an attempt, however, to bypass the Court's decision on that pending motion for leave, InterDigital has attached hundreds of pages of exhibits and expressly incorporated its summary judgment briefing in its so-called Motion to Dismiss.

Federal Rule of Civil Procedure 12(b)(6) provides that "[if] . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . ."). *See Rose v. Bartle*, 871 F.2d 331, 340 n.3 (3d Cir. 1989); *Santiago v. Fields*, 170 F. Supp. 2d 453, 457 (D. Del. 2001). *See also Macklin v. Butler*, 553 F.2d 525, 528 (7th Cir. 1977) (finding "incorporations by reference" of other motions into a second motion to dismiss warranted converting the latter into one for summary judgment).

Therefore, the Court must either convert the Rule 12(b)(6) component of InterDigital's Motion to Dismiss into one for summary judgment, or exclude the attachments and materials incorporated by reference. In view of both the Scheduling Order and the stage of these proceedings, the Court should exclude the attachments and the incorporated motion for summary judgment and treat this as a motion to dismiss.

Notably, once the matters outside the pleadings are excluded, InterDigital's entire Rule 12(b)(6) argument consists of the unsupported contention (covered above) that Nokia must first initiate infringement litigation before it can present its Lanham Act and State Law Claims. Because that new argument is without support, and because the Court already has ruled that

Nokia sufficiently pleaded a Lanham Act claim under Rule 12(b)(6), it is clear that InterDigital's Rule 12(b)(6) Motion should be denied.

Even if the Court were to consider InterDigital's incorporated summary judgment arguments, those arguments are meritless. InterDigital expressly points the Court to its summary judgment argument that ETSI declarations are opinions and therefore not actionable.[26] In doing so, InterDigital places particular emphasis on the fact that most of its statements contain words of belief. However, "the mere fact that a statement takes the form of an expression of opinion is not always conclusive, and a statement may be so expressed as to bind the person making it to its truth...." 37 Am. Jur. 2d Fraud and Deceit § 69.

InterDigital's motion for summary judgment attempts to analogize cases involving securities fraud in which statements of belief were at issue. Specifically, InterDigital cites *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1427 (3d Cir. 1997) (Alito, J.), for the out-of-context proposition that "statements of belief have been uniformly rejected by courts as nonactionable."[27] However, the Third Circuit's (and apparently then-Judge Alito's) view on the subject is much more nuanced. *See, e.g.*, *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 (3d Cir. 1993) (then-Judge Alito participating on the panel) ("We have squarely held that opinions, predictions and other forward-looking statements are not *per se* inactionable under the securities laws. Rather, such statements of 'soft information' may be actionable

---

26 InterDigital's proposed summary judgment motion also contains arguments to the effect that the statements put at issue by the Amended Complaint are not actionable commercial speech under the Lanham Act. For the reasons stated at pages 10-12 of Nokia's Answering Brief in Opposition to Defendants' Motion for Leave to File Motion for Summary Judgment, and as will be supplied to the Court if and when InterDigital's request for leave to file a summary judgment motion is granted, those arguments are without merit. *See, e.g., Enzo Life Sciences*, 295 F. Supp. 2d at 428 (Farnan, J.) (allowing Lanham Act claim to proceed based upon statements in press releases that were "disseminated sufficiently to the relevant purchasing public").

27 InterDigital's Opening Brief at 23.

misrepresentations if the speaker does not genuinely and reasonably believe them."); *Kline v. First W. Gov't Sec.*, 24 F.3d 480, 486 (3d Cir. 1994) ("[A]n opinion that has been issued without a genuine belief or reasonable basis is an 'untrue' statement which, if made knowingly or recklessly, is culpable conduct actionable [under the federal securities laws].").

Under settled law, the fact that some of InterDigital's statements technically contained "belief" language, does not mean that they are "per se inactionable." Nokia has alleged that InterDigital made statements in bad faith and with knowledge of their falsity. For example, Nokia alleges that the ETSI Guide on Intellectual Property Rights makes clear that only technically essential, not merely commercially essential, patents should be declared.[28] [redacted] InterDigital cannot be insulated from liability for statements that it knew were false, simply because it inserted "we believe" in front of the statements.

Moreover, the Amended Complaint puts at issue InterDigital's entire scheme of marketplace statements to the effect that it is owed substantial money by manufacturers of standards-compliant 3G products, due to the scope of its patent portfolio (Amended Complaint, ¶¶ 34-37). InterDigital has not contended in its Motion to Dismiss that these marketplace statements are nonactionable, nor could there be any good-faith basis for doing so.

---

[28] *See* Amended Complaint, ¶ 31; Exhibit B, §§ 1.5 and 15.6, at pp. 7 and 23, respectively.

[29] *See* Exhibit A, at 167:18 – 168:07; 172:14-19.

## CONCLUSION

For the foregoing reasons, Nokia respectfully requests that this Court deny InterDigital's Motion to Dismiss.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Julia Heaney (#3052)*

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
jheaney@mnat.com
*Attorneys for Plaintiffs*

OF COUNSEL:

ALSTON & BIRD LLP
Peter Kontio
Patrick Flinn
Randall Allen
Lance Lawson
1201 West Peachtree Street
Atlanta, GA 30309
404-881-7000

March 21, 2007
771290

**EXHIBIT LIST**

| | |
|---|---|
| Exhibit A | Excerpts from Deposition Transcript of Donald Boles |
| Exhibit B | ETSI Intellectual Property Guide |
| Exhibit C | November 10, 2006 InterDigital Press Release |
| Exhibit D | Excerpt from InterDigital's March 1, 2007 10-K Filing |
| Exhibit E | Excerpt of Transcript of Nov. 2, 2006 Hearing before Special Master Collins J. Seitz |

**CERTIFICATE OF SERVICE**

I, Julia Heaney, hereby certify that on March 28, 2007 I electronically filed the foregoing with the Clerk of Court using CM/ECF, which will send notification of such filing(s) to the following:

Richard L. Horwitz
Potter Anderson & Corroon LLP
rhorwitz@potteranderson.com

I also certify that copies were caused to be served on March 28, 2007 upon the following in the manner indicated:

**BY HAND AND E-MAIL**

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

**BY E-MAIL**

Dan D. Davison
Fulbright & Jaworski LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201-2784

*/s/ Julia Heaney (#3052)*
Julia Heaney (#3052)