# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and
NOKIA, INC.,

   Plaintiffs,

    v.

INTERDIGITAL COMMUNICATIONS
CORPORATION and INTERDIGITAL
TECHNOLOGY CORPORATION,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

C. A. No. 05-16-JJF

**JURY TRIAL DEMANDED**

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1), 12(B)(6), AND 12(H)(3)

OF COUNSEL:

Mark D. Flanagan
Nathan L. Walker
WILMER CUTLER PICKERING
HALE & DORR, LLP
1117 California Avenue
Palo Alto, California 94304
Tel: (650) 858-6000

Ron E. Shulman
Michael B. Levin
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Tel: (650) 493-9300

Patrick J. Coyne
Rajeev Gupta
Houtan K. Esfahani
FINNEGAN HENDERSON FARABOW
  GARRETT & DUNNER LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Tel: (202) 408-4000

Dated: May 9, 2007
794441 / 28840

Richard L. Horwitz  (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

Christopher D. Isaac
FINNEGAN HENDERSON FARABOW
  GARRETT & DUNNER LLP
Two Freedom Square
11955 Freedom Drieb
Reston, Virginia 20190
Tel: (571) 203-2700

Roger D. Taylor
R. Bruce Bower
FINNEGAN HENDERSON FARABOW
  GARRETT & DUNNER LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 30308-3263
Tel: (404) 653-6400

*Attorneys for Defendants,*
*Interdigital Communications*
*Corporation and Interdigital Technology*
*Corporation*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 4

I.    NOKIA HAS FAILED TO PLEAD A PROPER CASE FOR
      DECLARATORY RELIEF ....................................................................... 4

      A.    Nokia Concedes That The Court Should Not Grant
            Declarations Regarding Third-Party or Foreign Patent
            Rights ............................................................................................. 4

      B.    There Is No Actual Controversy Over The Infringement,
            Validity, or Essentiality of InterDigital's Patent Rights ............... 5

            1.    Nokia Has Not Satisfied The Requirements of The
                  Declaratory Judgment Act ................................................... 5

            2.    Ruling On The Truth Or Falsity Of The Statements
                  At Issue Under The Lanham Act Claim Would Not
                  Entitle Nokia To The Broad Declarations It Seeks ............. 8

            3.    The Requested Declarations As To Infringement,
                  Validity And Enforceability Bear No Necessary
                  Relation To The Lanham Act Claim And Should Be
                  Stricken ............................................................................. 11

      C.    Alternatively, This Court Should Exercise Its "Unique and
            Substantial" Discretion Not to Hear Nokia's Request for
            Declaratory Relief ......................................................................... 12

II.   NOKIA'S CLAIMS ARE FATALLY DEFECTIVE AND
      SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(6) ......... 13

III.  NOKIA'S UNPRECEDENTED REQUEST FOR
      DECLARATIONS REGARDING HUNDREDS OF PATENTS
      CREATES A CASE MANAGEMENT CRISIS NOT
      CONTEMPLATED BY THE CURRENT CASE MANAGEMENT
      SCHEDULE ............................................................................................. 14

CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                                      **PAGE(S)**

*Acxiom Corp. v. Axiom, Inc.,*
    27 F. Supp. 2d 478 (D. Del.1998)................................................................13

*Costal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
    173 F.3d 725 (9th Cir. 1999) ..................................................................16

*MedImmune, Inc. v. Genentech, Inc.,*
    ___ U.S. ___, 127 S. Ct. 764 (2007).....................................................6, 7

*Moore N. Am., Inc. v. Poser Bus. Forms, Inc.,*
    C.A. No. 97-712-SLR, 2000 WL 1480992 (D. Del. Sept. 29, 2000) ..........................13

*Quackenbush v. Allstate Ins. Co.,*
    517 U.S. 706 (1996).............................................................................12

*SanDisk Corp. v. STMicroelectronics, Inc.,*
    480 F.3d 1372 ................................................................................6, 7, 8

*Toro Co. v. Textron, Inc.,*
    499 F. Supp. 241 (D. Del. 1980)..............................................................13

**STATUTES & RULES**

15 U.S.C. § 1116........................................................................................6

15 U.S.C. § 1117(a)....................................................................................6

15 U.S.C. § 1118........................................................................................6

15 U.S.C. § 1125........................................................................................6

28 U.S.C. § 2201 .................................................................................. Passim

Fed. R. Civ. P. 12(b)(1)............................................................................17

Fed. R. Civ. P. 12(b)(6)........................................................................13, 17

Fed. R. Civ. P. 12(h)(3)............................................................................17

## INTRODUCTION

Contrary to what Nokia would have this Court believe, its First Amended Complaint does *not* plead run-of-the-mill Lanham Act claims. Rather, in unprecedented fashion, Nokia seeks, through the assertion of Lanham Act and state law claims, to obtain sweeping declaratory relief concerning the "essentiality," infringement, and validity of 127 InterDigital patents.[1]   Nokia conspicuously fails to assert these requests for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and for good reason: to mask the fact that Nokia seeks relief well beyond any perceived threat to Nokia's rights.

InterDigital is not aware of any United States court—and Nokia has cited none— having entertained or even having been asked to entertain a declaratory judgment action as to the essentiality of patents to a technical standard. There is simply no legal precedent for this novel pleading. With dozens of standards organizations in the United States and tens of thousands of declared patents, a veritable Pandora's box of advisory opinions would be opened. This case is even more egregious since Nokia has not even pled that it sells relevant 3G products in the U.S. market. Thus, based on the pleaded facts, Nokia is attempting a sweeping declaration for the purported benefit of third parties, namely, *all other* manufacturers of 3G equipment and even consumers selling and

---

[1]    While Nokia makes much of InterDigital supposedly misleading the industry into believing that it owns patents essential to the 3G standards, Nokia does not even challenge the essentiality of some *66 patents* that InterDigital declared to ETSI as potentially essential to the practice of the standard. This self-defeating omission—by definition, a patentee having one "essential" patent could block others from practicing the standard, and a patentee need have only two to have a plurality of essential patents— points up the futile nature of the claims, even on their own terms, and also points up the game that is truly afoot, as discussed below.

using components of a 3G network. But Nokia concededly is not entitled to seek sweeping declarations on behalf of this group.

Not content with this unprecedented request, Nokia further requests a declaratory judgment of non-infringement, invalidity, and unenforceability for InterDigital's 3G portfolio. Again, there is no legal precedent for a court rendering such wholesale declaratory judgment relief against an entire portfolio of one hundred plus patents. Moreover, if the Court allows this type of pleading, InterDigital would be compelled to press parallel claims bringing the total number of patents in play to almost 500.[2]

Thus, Nokia's challenge to InterDigital's 3G patent portfolio invokes interests that Nokia does not possess (since it does not allege that it makes sales in the United States) while those who *do* sell 3G equipment in the United States sit on the sidelines, apparently content to not launch a 127 patent challenge of this sort. In short, Nokia here seeks to convene not simply the largest patent trial in history, but effectively a *moot court* version of one. This Court should not countenance such a misuse of its proceedings, and should refuse to entertain what otherwise will amount to the largest patent infringement proceeding (moot or otherwise) in history.

Indeed, allowing this action to proceed would open the floodgates to similarly disguised patent declaratory judgment suits, without regard to the existence of an actual controversy. It would turn this Court into a forum where any sideline observer—industry

---

[2]     In the event claims of this sort are actionable—which InterDigital does not believe to be the case—InterDigital has asserted like claims against Nokia based on Nokia's statements regarding patents it has declared to ETSI as essential, comprising some 300 Nokia patents. InterDigital filed those counterclaims expressly subject to and without waiving its motion to dismiss (D.I. 160, p. 1). If this Court dismisses Nokia's claims, InterDigital will promptly dismiss any similar counterclaims.

investors, gadflies and the like—could obtain, in effect, an advisory opinion as to the essentiality of patents disclosed to standards bodies.

With this as a backdrop, InterDigital's motion to dismiss should be granted for the following specific, substantive reasons:

- Nokia has not properly pled a declaratory judgment claim under § 2201

- There is no case or controversy over the infringement, validity, or "essentiality" of InterDigital's patents

- Nokia's unprecedented request for a declaration as to the essentiality or non-essentiality of 127 of InterDigital's patents is not necessary to resolve its Lanham Act Claim

- Nokia's request for declarations as to the infringement, validity and enforceability of 127 of InterDigital's patents is irrelevant to its Lanham Act Claim

- Sound discretion also counsels against granting the sweeping declaratory relief Nokia seeks

- Nokia's Lanham Act claims are fatally defective because Nokia has not pled the existence of any 3G products that have been introduced into interstate commerce

In the event this Court regards InterDigital's motion to dismiss with regard to any of the foregoing issues as premature at the pleading stage, InterDigital urges the Court to take up the issue of case management. In brief, as the case is currently pled, the Court and the parties are faced with the prospect of litigating the issues of essentiality, infringement, validity and enforceability of nearly 500 patents (including the Nokia patents that are the subject of InterDigital's counterclaim). The current case schedule does not account for the enormity of this task, and InterDigital respectfully submits that the Court and the parties need to consider a sensible way of staging the case or otherwise managing the hundreds (if not thousands) of issues that are currently before the Court.

## ARGUMENT

### I.   NOKIA HAS FAILED TO PLEAD A PROPER CASE FOR DECLARATORY RELIEF

This Court dismissed Nokia's original counts seeking declaratory relief on December 21, 2005, due to the absence of an actual controversy over whether the eighteen patents then at issue were infringed and/or invalid.  Since that Order, the applicable law and facts have changed, but the constitutional and statutory requirement of an actual controversy remains, and Nokia still has not satisfied it.

#### A.   Nokia Concedes That The Court Should Not Grant Declarations Regarding Third-Party or Foreign Patent Rights

As an initial matter, Nokia concedes, as it must, that it is not entitled to determinations of third party rights (*i.e.*, a determination that other companies' 3G products do not infringe InterDigital's patent portfolio) or the infringement, validity, and/or essentiality of InterDigital's foreign patents.[3]  Despite this concession, a determination of third-party rights is exactly what Nokia now requests: namely, a ruling that third-party products compliant with any 3G standard would not, on the basis of such compliance, infringe a Nokia-dictated subset of the patents InterDigital disclosed in its April 2001 and April 2004 ETSI declarations.

Nokia's concession is correct, and should govern.  If Nokia were entitled to any relief bearing any relation to the unwieldy claims it has asserted, it necessarily would be limited to relief based on the relationship of InterDigital's *United States* 3G patents *to*

---

[3]     *See generally* Nokia's Resp., pp. 22-23; *see also id.* at 4 ("Nokia does not seek resolution of foreign patents or third-party rights"); *id.* at 23 (". . . Nokia is not seeking to enforce the rights of any third parties"); *id.* ("Just as Nokia does not assert the Amended Complaint to vindicate third-party rights, it does not do so to resolve issues related to foreign patents.").

*Nokia only*.[4]  There remains a real issue as to whether Nokia even could plead that; it certainly has not met the burden at this juncture.  The broader relief requested by Nokia—including sweeping generalizations about whether any of the 127 patents listed in Exhibit A are, in fact, "essential" to any 3G wireless standard, whether any standards-compliant device necessarily infringes any of these patents, and whether any of the patents is valid—seeks to assert third party rights and should be denied.

**B.    There Is No Actual Controversy Over The Infringement, Validity, or Essentiality of InterDigital's Patent Rights**

Even as to Nokia's rights, the declarations sought by the First Amended Complaint are impermissible.  As a matter of law, Nokia should be required to plead its declaratory judgment claims under, and to satisfy the requirements of, 28 U.S.C. § 2201.  It has not done so.  On the facts pled in the First Amended Complaint, there is no justiciable controversy over whether Nokia infringes the 127 identified patents,[5] or whether those patents are valid, enforceable or "essential" to any 3G standard.  And even if the constitutional and statutory requirements were satisfied, a decision as to the truth or falsity of the statements at issue under Nokia's Lanham Act claims would not entitle Nokia to the broad declarations it seeks.

**1.    Nokia Has Not Satisfied The Requirements of The Declaratory Judgment Act**

Nokia's First Amended Complaint seeks to resurrect—and indeed broaden—the declaratory relief this Court previously dismissed.  But Nokia does so without asserting a single count under the Declaratory Judgment Act.  Rather than denying that it seeks the same declaratory relief (and then some) in this fashion, Nokia instead concedes that its

---

[4]    InterDigital's Mot., pp. 19-24.
[5]    *See* D.I. 154, ¶ 36b and Exhibit A (listing 127 patents alleged to be not, in fact, essential to UMTS).

First Amended Complaint "is grounded in the same facts and law as the original, providing only further clarification and details of the false statements at issue." Nokia's Resp., p. 2; *see also id.* at 11. Nokia contends it is legally entitled to obtain broad declarations regarding InterDigital's patent rights simply by re-pleading the same relief it previously sought in its declaratory judgment counts as a remedy under Section 43(a) of the Lanham Act.

Not so. The Lanham Act enumerates available remedies, and declaratory relief is not among them. *See* 15 U.S.C. §§ 1125; 1116; 1117(a); and 1118. Section 2201, in turn, provides that the declaratory judgment remedy is available "upon the filing of an appropriate pleading." 28 U.S.C. § 2201. Nokia has not cited (and InterDigital is unaware of) any case holding that a Lanham Act claim is an "appropriate pleading" upon which a litigant may seek declarations of patent infringement and invalidity. In order for Nokia to pursue such declarations, it must expressly plead declaratory judgment counts for patent infringement and invalidity, and satisfy the requirements of § 2201 and Article III, which it has not done.

This Court's December 21, 2005 Order dismissed Nokia's original declaratory judgment counts for failure to satisfy the "actual controversy" requirement of § 2201. At the time, Nokia was still licensed under the patents at issue, and the test for the existence of an "actual controversy" was based on the Federal Circuit's "reasonable apprehension of suit" test, which the Federal Circuit in *SanDisk* later found to have been overruled by the Supreme Court's decision in *MedImmune*.[6] Now, Nokia's license has expired, and

---

[6]    Since the filing of InterDigital's motion to dismiss, the Federal Circuit has stated that "[t]he Supreme Court's opinion in *MedImmune* represents a rejection of our reasonable apprehension of suit test" for declaratory relief in a patent infringement

the test for the existence of an actual controversy differs. But two dispositive points remain unchanged: first, as *MedImmune* and *SanDisk* confirmed, the existence of an "actual controversy" is required, both constitutionally and under § 2201, before a litigant may seek a declaratory judgment; and second, there is no justiciable controversy about whether Nokia infringes the 127 patents listed in Exhibit A to its First Amended Complaint, or about whether those patents are valid, enforceable, or essential to any 3G standard.

The "actual controversy" requirement of § 2201 "is rooted in Article III of the Constitution, which provides for federal jurisdiction over only 'cases and controversies.'" *SanDisk*, 480 F.3d 1372, 1378 (Fed. Cir. 2007) (quoting Const. art. III). The Supreme Court recently emphasized that Article III requires a dispute to be "definite and concrete," that it touch "the legal relations of parties having adverse legal interests," that it be "real and substantial," and that it admit of "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, ___ U.S. ___, 127 S. Ct. 764, 771 (2007)).

---

action. *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (citing *MedImmune, Inc. v. Genentech, Inc.*, ___ U.S. ___, 127 S. Ct. 764, 774 n.11 (2007)). According to the Federal Circuit, "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." *Id.* at 1381. While this Court, in its December 21, 2005 Order, applied the "reasonable apprehension of suit" standard in accordance with governing law at the time, it bears mention that Nokia has not disputed that this Court, considering "the totality of the circumstances," properly ruled that there was no actual controversy to support the trial court's assertion of jurisdiction over Nokia's request for declaratory relief. D.I. 25, pp. 4-10.

Nokia bears the burden of establishing the existence of an actual controversy, and it has not even attempted to do so. It has not explained how the "clarification" of its Lanham Act claims has established the existence of an actual controversy that would support this Court's grant of declaratory relief. According to the Federal Circuit, "where a patentee *asserts rights under a patent based on certain identified ongoing or planned activity of another party*, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." *SanDisk*, 480 F.3d at 1381 (emphasis added). Here, Nokia has not even attempted to plead that InterDigital has asserted rights under any of the 127 patents based on any certain identified ongoing or planned activity of *Nokia*. This is a fatal omission.

Therefore, to the extent Nokia's First Amended Complaint seeks a declaratory judgment that InterDigital's patents are not infringed, are invalid, and are unenforceable—relief this Court expressly dismissed in its December 21, 2005 order for lack of jurisdiction—Nokia's renewed claims for such declaratory relief, predicated solely on alleged Lanham Act violations, likewise should be dismissed, as should its newly sought declarations about whether InterDigital's patents are, in fact, "essential" to the practice of any 3G standard.

### 2. Ruling On The Truth Or Falsity Of The Statements At Issue Under The Lanham Act Claim Would Not Entitle Nokia To The Broad Declarations It Seeks

Nokia argues that no authority bars this Court from finding that a defendant's alleged representations are false or misleading as "part and parcel" of an award of

damages or injunctive relief under the Lanham Act.[7]  Thus, Nokia argues, whether the Court makes such a finding in such a manner or as part of a declaratory judgment action is of no moment.  But even if Nokia had properly pled a valid Lanham Act claim, and even if the Court could make findings about the truth or falsity of statements in connection with ordering coercive Lanham Act relief, it does not follow that Nokia would be entitled to the sweeping declarations it seeks.

To the contrary, a comparison of the accused representations to the declarations Nokia seeks shows that allowing Nokia's declaratory judgment claims to proceed based on the Lanham Act counts of the First Amended Complaint would be an invitation to error.  More specifically, Nokia's request for declarations concerning only 127 of InterDigital's 194 3G patents disclosed to ETSI fails because those declarations would not resolve any controversy between the parties with respect to the essentiality of InterDigital's 3G portfolio or InterDigital's statements about it.

Nokia's prayer for relief seeks broad declarations regarding the 127 patents set forth in its Attachment A:

a) the extent to which any of the 127 patents *"actually meet[s]* the definition of 'essential' under the ETSI IPR policy;"

b) the extent to which any of the 127 patents are *"necessarily infringed* by compliance of a product with a 3G standard actually commercially implemented anywhere in the world;"

c) the extent to which any of the 127 patents "have *valid, enforceable claims* which *necessarily read on any product* compliant with the *any* [sic] 3G standard,

---

[7]      Nokia's Resp., pp. 15-17.

9

*including but not necessarily limited to Nokia products made, used, sold, offered for sale or imported in the United States*"; and

d) "that no Nokia 3G compliant product infringes any valid, enforceable claim of *any of the patents* in Attachment A (*or any such other United States patent as InterDigital may refuse to concede is not infringed by Nokia*)."

D.I. 154, at p. 26 (Prayer For Relief) (emphasis added).

Nokia has conceded the overbreadth of these declarations with regard to third-party and foreign patent rights. Thus, at a bare minimum, the Court should dismiss Nokia's claims to the extent they purport to seek relief with respect to any non-Nokia product.

In addition, even if InterDigital's ETSI declarations were actionable under the Lanham Act (which they are not), the declaratory relief sought by Nokia is neither necessary nor proper to a determination of whether the representations forming the basis of Nokia's Lanham Act claims were true or false. Nokia's selective identification of InterDigital patents it wishes to litigate proves as much.

According to the First Amended Complaint, "InterDigital has filed declarations claiming at least 195 patents were essential to the practice of the UMTS standard with [ETSI]." D.I. 154, at ¶ 28. But Nokia is not seeking declarations regarding all of these patents; it seeks declarations regarding only the 127 patents listed in Exhibit A. (*See Id.*, at ¶ 36b). Thus, Nokia's sought-for determinations as to this subset of patents would not resolve Nokia's Lanham Act claim that InterDigital falsely represented that it possesses "patents essential to the 3G standard." Indeed, even if *none* of the 127 were essential, that would not prove the "falsity" of InterDigital's statements; only a declaration as to all

10

194 declared patents could accomplish that, and not even Nokia seeks such a broad inquiry—presumably because it has no legitimate arguments about the essentiality of the remaining 66 patents.[8]

Shorn of any principled reason for seeking declarations as to only a portion of InterDigital's declared patents, Nokia's true goal is revealed: to try to pick apart InterDigital's 3G portfolio even if it cannot prevail on its Lanham Act claims given that it has, in effect, conceded the essentiality of 66 of the 194 declared patents. Thus, apart from the fact that Nokia has failed to allege a justiciable controversy sufficient to provide for declaratory relief, the scope of Nokia's challenge is self-defeating. Accordingly, the requested declarations that InterDigital's patents are not essential need not and should not be made as "part and parcel" of granting coercive relief under Nokia's Lanham Act claims.[9]

### 3. The Requested Declarations As To Infringement, Validity And Enforceability Bear No Necessary Relation To The Lanham Act Claim And Should Be Stricken

Quite apart from the problems with Nokia's request for a declaration as to essentiality, Nokia's request for declarations as to the infringement ("by compliance of a product with a 3G standard actually commercially implemented"), validity and enforceability of the 127 patents bears no relation to Nokia's Lanham Act claims. Nokia has not alleged any statements by InterDigital with respect to infringement by Nokia or the validity or enforceability of the patents. As such, even if declaratory relief were

---

[8]    There are 66 instead of 67 remaining patents because one patent was surrendered in favor of a reissue patent, RE35,410.

[9]    In addition, as discussed below, InterDigital's statements to ETSI and otherwise constituted statements of opinion, which would not be resolved with any finding as to actual essentiality.

11

available, as a general matter, for a Lanham Act claim, these requests for relief would fail on the facts as pled. The Court therefore should dismiss them.

### C. Alternatively, This Court Should Exercise Its "Unique and Substantial" Discretion Not to Hear Nokia's Request for Declaratory Relief

Even if the Court were to find the requirements of the Declaratory Judgment Act technically satisfied, and even if the Court were to conclude that the Lanham Act authorizes it to grant the declarations Nokia seeks, the Court still could exercise its discretion to decline, for prudential reasons, to entertain Nokia's declaratory judgment claims.[10] Nokia does not dispute that this Court retains that discretion. Nor does Nokia's Response attempt to refute the reasons cited in InterDigital's Motion to Dismiss, which counsel against hearing such a request.

InterDigital respectfully submits that even if this Court concludes that there is a cognizable legal basis for Nokia's requested declaratory relief, it should exercise its discretion not to hear that request. Allowing these claims would open the door to any challenge to the essentiality of any patent declared to a standards body, by anyone— irrespective of the presence of any case or controversy. In effect, this Court, and others, would become arbiters over any academic disagreement over declarations not just to ETSI, but to all of the many standards bodies. The inevitable result would be to undermine the constitutional and statutory requirement of an actual controversy, and to cause standards body participants to err *against* disclosing intellectual property rights— *exactly the opposite effect as that intended by the disclosure policies of those standards*

---

[10]    This discretion is no less present should the Court decide it would be permissible to grant declaratory relief as an equitable remedy accompanying the Lanham Act, since courts sitting in equity always possess discretion to grant or deny relief. *See, e.g.,* *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 718 (1996) (noting the historic discretion of federal courts sitting in equity to grant or deny relief).

*bodies*, which in turn would hinder their ability to design and develop standards with full knowledge of the IPR landscape.

Finally, as described in greater detail below, allowing the claims to proceed as pled would present the court and the parties with a procedural nightmare, the likes of which have not been seen before. Discretion counsels against entertaining such an action. Indeed, it is in part for this reason that the "case or controversy" requirement makes such good sense—*true* controversies have a way of focusing the issues between litigants. This is not such a case and for that reason it threatens to embroil the court and the parties in an endless morass of largely theoretical debates.

## II.    NOKIA'S CLAIMS ARE FATALLY DEFECTIVE AND SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(6)[11]

Nokia's Lanham Act claim also is defective on its face because Nokia has not alleged facts in support of the "interstate commerce" element of such a claim. This Court's December 21, 2005 Order recognized that to state a claim for relief under § 43(a) of the Lanham Act, a plaintiff must allege, among other things, that "the advertised goods traveled in interstate commerce." (Dec. 21, 2005 Order, at 11 (citing *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)). The Court found that element satisfied based on the allegation in Nokia's original complaint that "Nokia is currently designing, rolling out and further

---

[11] Plaintiff is entitled to no greater relief for common law unfair competition or disparagement or for violation of the Deceptive Trade Practices Act than for violation of the Lanham Act. *Toro Co. v. Textron, Inc.*, 499 F. Supp. 241, 249 n.17 (D. Del. 1980). Accordingly, courts often "limit [their] discussion to the Lanham Act claim." *Id.*; *see also Acxiom Corp. v. Axiom, Inc.*, 27 F.Supp.2d 478, 506-07 (D. Del.1998). Because the Delaware Deceptive Trade Practices Act codifies the Uniform Deceptive Trade Practices Act, which in turn, codifies the common law of unfair competition, courts generally "treat . . . [these] counterclaims together," *Moore N. Am., Inc. v. Poser Bus. Forms, Inc.*, C.A. 97-712-SLR, 2000 WL 1480992, at *7 (D. Del. Sept. 29, 2000) (Ex. A hereto).

developing 3G products in the United States that will be manufactured and sold by Nokia after 2006," which it interpreted to mean "that at least some 3G products have already been developed and entered interstate commerce." (*Id.*, at 12-13 (quoting Original Complaint, at ¶ 15)).

Nokia's First Amended Complaint does not contain this allegation and does not otherwise allege that any of Nokia's goods allegedly affected by InterDigital representations have traveled in interstate commerce. Accordingly, Nokia's Lanham Act claims should be dismissed for failure to state a claim upon which relief can be granted.

**III.   NOKIA'S UNPRECEDENTED REQUEST FOR DECLARATIONS REGARDING HUNDREDS OF PATENTS CREATES A CASE MANAGEMENT CRISIS NOT CONTEMPLATED BY THE CURRENT CASE MANAGEMENT SCHEDULE**

InterDigital argued in its opening brief that dismissal was proper because the accused statements were non-actionable statements of opinion rather than statements of fact, incorporating by reference its proposed summary judgment motion. That opening brief preceded the Court's March 22, 2007 Order, which denied leave to file the proposed summary judgment motion. (D.I. 25). InterDigital understands and accepts the Court's view, as expressed in that Order, that Nokia should be permitted to rely upon statements other than those alleged in the First Amended Complaint. InterDigital also is mindful that the Court declined to entertain, at an earlier juncture, its motion for summary judgment premised in part upon the non-actionability of the alleged statements.

Nonetheless, InterDigital submits that fundamentally, all of Nokia's asserted claims—and any other statements Nokia might later turn up—ultimately turn on the question of whether statements regarding the essentiality of InterDigital's patents

14

constitute statements of fact or non-actionable statements of opinion.[12]  It is here where Nokia's claims, and any amendments it might attempt, founder.

It is folly to suggest that whether a given patent is infringed or essential is an "objective fact" that is somehow knowable before the patent has even been litigated.  As any court or litigant familiar with patent litigation well knows, the precise scope of a patentee's rights cannot be ascertained until a complex legal analysis including, among other things, claim construction, is undertaken—frequently by not one, but two courts. Indeed, the notorious frequency with which the Federal Circuit reverses district court claim constructions and findings of infringement and validity amply illustrates that reasonable minds can differ on these often highly technical determinations.  Likewise, in virtually every patent case, opposing experts offer differing *opinions* on those same issues.[13]

If allowed to proceed according to Nokia's plan, resolution of Nokia's claims and InterDigital's counterclaims could entail full-blown patent cases on at least 127 InterDigital patents and 300 Nokia patents, with all the attendant tasks and proceedings: claim construction hearings, fact discovery on infringement, validity and enforceability, expert reports on each of those issues for each patent, not to speak of discovery regarding

---

[12]     Of course, at this point, more than two years into this lawsuit, one would reasonably expect that Nokia has finally identified all the statements on which it supposedly relied.

[13]     The ETSI Policy itself recognizes that such declarations of essentiality constitute opinions, not statements of fact. *See, e.g.*, D.I. 154, Exh. B (¶ 3.2.2) (emphasis added) ("Members are obliged to disclose IPRs, which *might be* essential and ETSI is obliged to make these disclosures available to Members. *This disclosure reflects, of course, only an opinion of the Member* and some facts on the IPRs, but the Member is responsible for the content. *Any further opinion* should be added only with the agreement of the Member or to implement a General Assembly decision").

the statements themselves and Nokia's alleged reliance thereon, all followed by a trial or trials that would be measured in years, not days.

InterDigital respectfully submits that allowing its motion for partial summary judgment to proceed now could end this impossible task, or turn it into one that is merely Herculean. This is so because the statements Nokia has identified to date all fall into the category of opinions about potential rights that were unknowable at the time they were made. *See, e.g., Costal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731-32 (9th Cir. 1999) (statement that competitor was "not licensed," which implied license was legally required, was not actionable under Lanham Act because statements purporting to interpret a statute or regulation are opinion statements).

Accordingly, if the Court is not prepared to address the actionability of the accused statements as pled, InterDigital urges the Court to reconsider its March 22, 2007 ruling, and to issue an order allowing the actionability of the alleged misrepresentations to be briefed fully. In that manner, a fundamental threshold issue about the viability of Nokia's Lanham Act claims at all can be addressed. At a bare minimum, the matter of revisions to the case management schedule should be addressed; there likely are issues that can be resolved early on that have the potential to significantly narrow the issues currently presented. InterDigital has raised this issue with the Special Master, who expressed a desire to confer with the parties and probably the Court on that issue. In the meantime, the parties are meeting and conferring with regard to revisions to the case management schedule and expect to forward proposals to the Special Master and/or the Court in advance of that conference, which has not yet been scheduled.

16

## CONCLUSION

For the reasons stated above and in its Motion to Dismiss, Defendants InterDigital Communications Corporation and InterDigital Technology Corporation respectfully request that this Court: (1) grant InterDigital's Motion to Dismiss First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3); and (2) dismiss with prejudice any and all of Plaintiffs Nokia Corporation and Nokia Inc.'s claims in their First Amended Complaint, and enter a take-nothing judgment on those claims. InterDigital further requests all other relief to which it may be entitled.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: /s/
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19801
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

OF COUNSEL:

Mark D. Flanagan
Nathan L. Walker
WILMER CUTLER PICKERING
HALE & DORR, LLP
1117 California Avenue
Palo Alto, California 94304
Tel: (650) 858-6000

OF COUNSEL:

Christopher D. Isaac
FINNEGAN HENDERSON FARABOW
 GARRETT & DUNNER LLP
Two Freedom Square
11955 Freedom Drieb
Reston, Virginia 20190
Tel: (571) 203-2700

Ron E. Shulman
Michael B. Levin
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Tel: (650) 493-9300

-and-

-and-

17

Patrick J. Coyne
Rajeev Gupta
Houtan K. Esfahani
FINNEGAN HENDERSON FARABOW
 GARRETT & DUNNER LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Tel: (202) 408-4000


Dated: May 9, 2007
794441 / 28840

Roger D. Taylor
R. Bruce Bower
FINNEGAN HENDERSON FARABOW
 GARRETT & DUNNER LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 30308-3263
Tel: (404) 653-6400

*Attorneys for Defendants,
Interdigital Communications
Corporation and Interdigital Technology
Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on May 9, 2007, the attached document was hand delivered to the following person(s) and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Julia Heaney
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347

I hereby certify that on May 9, 2007, I have Electronically Mailed the documents to the following:

Peter Kontio
Patrick J. Flinn
Gardner S. Culpepper
Keith E. Broyles
Randall L. Allen
Lance Lawson
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
pkontio@alston.com
pflinn@alston.com
gculpepper@alston.com
keith.broyles@alston.com
rallen@alston.com
llawson@alston.com

A. William Urquhart
Marshall M. Searcy
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
billurquhart@quinnemanuel.com
marshallsearcy@quinnemanuel.com

By:   /s/ Richard L. Horwitz
      Richard L. Horwitz
      David E. Moore
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, Delaware 19899-0951
      (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

713935 / 28840