# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1480992 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

Moore North America, Inc. v. Poser Business Forms, Inc.
D.Del.,2000.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
MOORE NORTH AMERICA, INC., Plaintiff, Counter-Defendant,
v.
POSER BUSINESS FORMS, INC., Defendant, Counter-Claimant.
No. CIV.A.97-712-SLR.

Sept. 29, 2000.

Thomas P. Preston, Esquire of Reed, Smith, Shaw & McClay, Wilmington, Delaware. Counsel for plaintiff, counter-defendant. Robert A. Vanderhye, Esquire, James D. Berquist, Esquire, and Robert A. Rowan, Esquire of Nixon & Vanderhye, Arlington, Virginia. Of counsel for plaintiff, counter-defendant.
N. Richard Powers, Esquire and Patricia Smink Rogowski, Esquire of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware. Counsel for defendant, counter-claimant. Thomas H. Young, Esquire and Stephen D. Bell, Esquire of Dorsey & Whitney, Denver, Colorado. Of counsel for defendant, counter-claimant.

MEMORANDUM OPINION
ROBINSON, Chief J.

I. INTRODUCTION

*1 Plaintiff Moore North America, Inc. filed this patent infringement action on December 30, 1997 against defendant Poser Business Forms, Inc., alleging that defendant infringes U.S. Patent No. 4,918,128 ("the '128 patent"); U.S. Patent No. 5,201,464 ("the '464 patent"); and U.S. Patent No. 5,253,798 ("the '798 Patent"). Both plaintiff and defendant are engaged in the business of manufacturing and selling preformed, paper mailers. (D.I.158) Both the '464 and '798 patents are directed to the construction of a "one-piece mailer" which is a single sheet of paper that can be printed, folded, sealed, and mailed without the need for a separate envelope. (D.I. 139 at 4) The '128 patent is directed toward a pressure-sensitive adhesive that holds different mailers together.

Defendant denied infringement of all three patents-in-suit and filed a counterclaim for declaratory judgment of noninfringement, invalidity, and unenforceability. Defendant subsequently filed additional counterclaims including: (1) unfair competition under the Lanham Act, 15 U.S.C. § 1125 (1994); (2) common law unfair competition; and (3) violations of the Delaware Uniform Deceptive Trade Practices Act, Del.Code Ann. tit. 6, § 2532 (1974).

Plaintiff is incorporated under the laws of Delaware and has its principal place of business in Illinois. (D.I.1, ¶ 1) Defendant is a Delaware corporation with its principal place of business in Alabama. (D.I.158, ¶ 2) The court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338. Venue is proper in this judicial district by virtue of 28 U.S.C. § § 1391(c) and 1400(b).

Currently before the court is plaintiff's motion for partial summary judgment regarding defendant's unfair competition and deceptive trade practice claims. (D.I.208) Both parties submitted extensive briefs on these issues, and oral arguments were heard on August 22, 2000. (D.I.250) For the following reasons, the court shall grant in part and deny in part plaintiff's motion.

II. BACKGROUND

Defendant's unfair competition counterclaims arise out of plaintiff's alleged misuse of its patent portfolio. In particular, defendant alleges that plaintiff (1) mismarks its products to include patent numbers that are not embodied by those products (D.I. 158 ¶ 18); (2) misleads defendant's customers about the pendency of plaintiff's lawsuits against defendant and other competitors (D.I. 158 ¶ 15); (3) intimidates defendant's customers by citing patents "in such sheer numbers that the customer may simply agree to stop purchasing from [the defendant] to avoid the hassle and expense of determining the applicability of those numerous patents" (D.I. 158 ¶ 17); and (4) encourages its sales representatives to "leverage" its patents and "lock out the competition." (D.I. 249 at 2)

Plaintiff disputes defendant's factual contentions and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1480992 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

argues that it behaves within the statutory and constitutional bounds of its patent rights. In order to assess defendant's counterclaims, the court will examine each of defendant's allegations separately.

### A. Plaintiff Allegedly Mismarked its Products

*2 Plaintiff manufactures and sells a variety of preformed business forms such as tax forms, payroll checks, and invoices. Plaintiff holds a wide range of patents covering, among other things, form construction (*see, e.g.,* U.S. Patent No. 5,174,493 ("the '493 patent") entitled "C and Z Fold Reply Envelope") and pressure seals (*see, e.g.,* the '128 patent entitled "Pressure-Sensitive Adhesive"). Plaintiff marks its commercial embodiments of these patented inventions with patent numbers pursuant to 35 U.S.C. § 287. [FN1]

> FN1. "Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent .... In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter ...."

Defendant claims that plaintiff attempts to mislead the market about the substance and scope of its patent portfolio by marking certain products with patent numbers that are inapplicable. For example, plaintiff manufactures a tax form that corresponds to IRS Tax Form 1099-R ("the 1099-R form"). (D.I. 254, Ex. E at D2933) The form is folded in a standard "z-fold" construction and contains no reply envelope, unlike other "two-way" mailers. Plaintiff lists the '128 patent, U.S. Patent No. 4,928,875 ("the '875 patent"), the '493 patent, and the '464 patent in the margin of the 1099-R form. Defendant contends that plaintiff unfairly misleads the public by including three of those four patent numbers. First, the '875 patent covers an "eccentric z-fold" construction, which is not applicable to the standard z-fold form. Second, the '493 patent requires a reply envelope. Finally, the '464 patent covers "c-fold two-way" constructions, which are irrelevant to the 1099-R form-a "z fold" construction with no reply envelope. (D.I. 253 at 6-7)

Defendant alleges that plaintiff's mismarkings are part of a "scheme to injure, intimidate and drive out [defendant] and its other competitors in the industry." (D.I. 213 at 5) Defendant claims plaintiff's actions were deliberate and directed by plaintiff's in-house patent counsel, Mike Maier ("Maier"). Defendant points to an e-mail from Maier recommending that certain patent numbers be included on "c-fold" mailers "regardless of whether there is a return." (D.I.249, Ex. H) Among the patents listed are three patents that require a return envelope. (D.I. 253 at 8-9)

Plaintiff admits that some of the patent numbers on certain forms "may not be applicable to each particular form construction" and dismisses Maier's e-mail as containing "inadvertent mistakes." (D.I. 259 at 11) Plaintiff argues that because the Patent Act imposes a duty upon patentees to mark their products in order to recover damages for infringement, bad faith is a required element of any unfair competition claim related to over-marking one's products. Plaintiff claims that being over-inclusive with patent markings is merely prudent behavior by a patentee. Moreover, plaintiff notes that although some of the products may have been marked with patent numbers that do not apply to that product, each of their products is protected by at least one of the listed patents.[FN2]

> FN2. Defendant has not brought any claims against plaintiff for false marking under 35 U.S.C. § 292 which imposes a penalty for marking an unpatented article as being patented with an intent to deceive the public. Courts have consistently construed 35 U.S.C. § 292 as not being violated by a patentee who marks a patented article with more patents than actually cover an item. *See Santa Anita Mfg. Corp. v. Lugashi,* 369 F.2d 964, 968 (9th Cir.1967); *Ansul Co. v. Uniroyal Inc.,* 306 F.Supp. 541, 566 (S.D.N.Y.1969), *rev'd in part on other grounds,* 448 F.2d 872 (2d Cir.1971).

### B. Plaintiff Allegedly Mislead Defendant's Customers About Pending Litigation

*3 Defendant claims that plaintiff threatened defendant's actual and potential customers by telling those customers of plaintiff's suits against defendant and other competitors.[FN3] In particular, defendant

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00016-JJF    Document 193-2    Filed 05/09/2007    Page 4 of 7

Not Reported in F.Supp.2d                                                                                                Page 3
Not Reported in F.Supp.2d, 2000 WL 1480992 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

complains that plaintiff, when telling customers about various litigation, failed to inform those customers about adverse rulings. For example, defendant alleges that plaintiff, when telling competitors and their customers about the lawsuits, failed to mention that the Standard Register Company won a ruling of noninfringement regarding certain of plaintiff's patents.[FN4] (D.I. 158 ¶ 13)

> FN3. Moore has filed patent infringement actions against other competitors including Standard Register Company and Reynolds & Reynolds. (D.I. 158 ¶ 13)
>
> FN4. The Standard Register Company won summary judgment of noninfringement of the '464 patent, the '798 patent, and U.S. Patent No. 5,314,110 in the Eastern District of Virginia and later in the Federal Circuit. See *Moore U.S.A., Inc. v. Standard Register Co.*, No. 98-1386, 1387, 2000 WL 1370340 (Fed.Cir. Sept. 22, 2000).

Plaintiff contends that its references to other litigation were truthful and within a patentee's right to alert the public of its intention to enforce its patent rights. (D.I. 208 at 7-8) Plaintiff also argues that no other court has held any of the patents-in-suit to be invalid or unenforceable. Furthermore, all noninfringement rulings were with respect to other manufacturer's forms, not the defendant's. (*Id.*)

### C. Plaintiff Allegedly Intimidated Defendant's Customers by Citing Numerous Patents in Cease and Desist Letters

Defendant alleges that plaintiff sends defendant's customers cease and desist letters and cites patents "in such sheer numbers that the customer may simply agree to stop purchasing from [the defendant] to avoid the hassle and expense of determining the applicability of those numerous patents." (D.I. 158 ¶ 17) For example, on October 6, 1998, Maier sent a letter to Communication Graphics, a company who submitted a bid for a jury form contract in Montgomery, Pennsylvania. (D.I.254, Ex. P) In that letter, Maier enclosed five of plaintiff's patents and mentioned plaintiff's pending litigation against defendant and two other competitors. (*Id.*) Defendant claims that Maier made no effort to determine exactly which form Communications Graphics was trying to sell before sending that letter. Defendant further contends that three of the five patents were not applicable to that particular construction. (D .I. 253 at 9-10)

Plaintiff responds by saying that it sent patents to Communication Graphics that were relevant to form constructions requested by the customer and to the customer's most likely alternatives. (D.I. 259 at 8-9) Plaintiff argues that defendant presented no admissible evidence of actual or likely deception of defendant's customers as to the scope of plaintiff's patent rights. (*Id.* at 6-9)

### D. Plaintiff Allegedly Encouraged its Sales Representatives to "Leverage" its Patents and "Lock out the Competition"

Defendant alleges that plaintiff is "extremely aggressive with its patent portfolio, and encourages its sales force to highlight its patents in the marketplace." (D.I. 249 at 2) To support this assertion, defendant points to plaintiff's internal training manuals and marketing plans as touting plaintiff's ability to "leverage" its patent portfolio and "lock out the competition." (*Id.*) Defendant alleges that these manuals and plans have caused plaintiff's sales force to believe that plaintiff is the only company who can legally manufacture and sell pressure seal products. (*Id.*)

*4 Plaintiff counters by quoting directly from the sales force brochures that defendant complains about. Plaintiff's "Pressure Seal Mailing Solutions" brochure says, "[m]any of you may be under the impression that only [plaintiff] can manufacture and sell pressure seal forms and equipment. This is not the case." (*Id.,* Ex. A at M 009660) The same brochure further states that "[i]t is important that you understand [plaintiff's] patent protection relative to pressure seal. [Plaintiff] *does not* have a patent on the concept of pressure seal." (*Id.,* Ex. A at M 009663) Plaintiff says its sales force is simply availing itself to constitutionally and statutorily protected activities provided under the patent laws. (D.I. 259 at 11 n. 4)

### III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 4
Not Reported in F.Supp.2d, 2000 WL 1480992 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita*, 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### IV. DISCUSSION

#### A. Unfair Competition Under the Lanham Act

Defendant alleges that plaintiff's mismarking of products, telling less than the whole story about pending litigation, sending overwhelming cease and desist letters, and training its sales force to "leverage" its patents "constitute false descriptions of the nature, characteristics, and/or qualities of [plaintiff's] products under 15 U.S.C. § 1125(a)." (D.I. 158 ¶ 20) Although the parties dispute the details of plaintiff's actions, three things are clear: (1) all of plaintiff's actions involve communications relating to its patent rights; (2) plaintiff's patents are presumed to be valid; [FN5] and (3) defendant has presented no evidence that plaintiff knew that any of its patents were invalid or unenforceable. The issue is whether plaintiff's actions, viewed in the light most favorable to the nonmoving party, rise to the level of unfair competition prohibited by the Lanham Act.

FN5. See 35 U.S.C. § 282 (1994).

*5 Section 43(a) of the Lanham Act, states in pertinent part:
(1) Any person who ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which-

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities ... of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

The Third Circuit requires that a Lanham Act plaintiff prove by a preponderance of the evidence: (1) that defendant made false or misleading statements as to its product, or those of the plaintiff; [FN6] (2) that there was actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception was material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc. See *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir.1994).

FN6. Defendant had filed counterclaims for interference with contractual relations and product disparagement, but subsequently withdrew those claims. (D.I. 250 at 4; D.I. 253 at 2)

Here, all of the alleged Lanham Act violations stem from communications regarding plaintiff's patent portfolio. Defendant claims that these communications misrepresent the characteristics of the products sold by both plaintiff and defendant. Plaintiff claims that because patents are presumed to be valid, defendant must additionally show that plaintiff acted in bad faith, knowing that its patents were invalid or unenforceable. Defendant argues that the federal patent laws do not add a bad faith requirement to Lanham Act violations.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1480992 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

Plaintiff's argument finds support in Federal Circuit precedent. According to the Federal Circuit, "federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless [it can be shown] that the patent holder acted in bad faith." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed.Cir.1998), *rev'd on other grounds, Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed.Cir.1999). Defendant, however, urges this court to follow the same line of reasoning as was used in *Spotless Enters., Inc. v. Carlisle Plastics, Inc.*, 56 F.Supp.2d 274 (E.D.N.Y.1999). In that case, the district court, after balancing the goals of both the patent laws and federal unfair competition laws, held that the Lanham Act requires no element of bad faith, and that "there is no reason to hold that federal patent law 'trumps' the Lanham Act ...." *Id.* at 285-88. The district court thus applied regional circuit law to the Lanham Act issues rather than the Federal Circuit law despite the holding in *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1360-61 (Fed.Cir.1999) that the Federal Circuit would apply its own law to claims under section 43 of the Lanham Act. *See Spotless Enters.*, 56 F.Supp.2d at 285-88.

*6 The court concludes that it is bound by Federal Circuit law on this issue.[FN7] By requiring an element of bad faith in a Lanham Act claim, the Federal Circuit is not "trumping" patent law over the Lanham Act. Rather, the Federal Circuit is merely accommodating the entitlements under the Patent Act with the obligations under the Lanham Act. Consequently, for defendant to prevail on its counterclaims under the Lanham Act, it must show that plaintiff acted in bad faith.

> FN7. Generally speaking, the Federal Circuit binds this court on all issues "arising under any Act of Congress relating to patents." 28 U.S.C. §§ 1295, 1338. When cases from this district are appealed to the Federal Circuit, it applies regional circuit law to substantive matters outside of its exclusive jurisdiction.

1. Mismarking Products

Defendant offered undisputed evidence that some of plaintiff's forms carry patent numbers of inventions not embodied by those particular forms. Once the party alleging a Lanham Act violation proves a challenged claim is literally false, a court need not consider whether the buying public was misled before granting relief. *See Johnson & Johnson-Merck*, 19 F.3d at 129. A reasonable jury could find the necessary bad faith element in the plaintiff's e-mail from its in-house patent counsel directing its employees to mark products with patent numbers not necessarily relevant to those products. Thus, with regard to over-marking, plaintiff's motion for summary judgment is denied.

2. Telling Defendant's Customers About Litigation

Plaintiff is correct as a matter of law that its communications with defendant's customers about various lawsuits do not create a cause of action under the Lanham Act. "[C]ommunication to possible infringers concerning patent rights is not improper if the patent holder has a good faith belief in the accuracy of the communication." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed.Cir.1998). "A competitive commercial purpose is not of itself improper, and bad faith is not supported when the information is objectively accurate." *Id.*

Defendant offers no admissible support that plaintiff made any false statements to defendant or its customers regarding pending litigation. Any references to the litigation against Standard Register were objectively accurate. Plaintiff had litigation pending against Standard Register at all relevant times, and even if plaintiff did not reveal what defendant calls "adverse rulings", no court ever held that plaintiff's patents were invalid or unenforceable. The "adverse ruling" in the Eastern District of Virginia merely stated that certain Standard Register forms do not infringe upon plaintiff's patents. Whether defendant's products infringe plaintiff's patents is an entirely different question.

Defendant claims that the Lanham Act covers both false and misleading statements and that a genuine issue of material facts exists as to whether plaintiff's statements about various lawsuits were intentionally misleading and designed to intimidate. Defendant is correct that the Lanham Act covers misleading statements, however, defendant failed to produce any admissible evidence that plaintiff intentionally mislead or intimidated anyone. Absent any evidence to the contrary and mindful of a patentee's right to publicize his patent rights, the court grants plaintiff's motion for summary judgment to the extent that the claims revolve around plaintiff telling defendant's customers about pending litigation.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                  Page 6
Not Reported in F.Supp.2d, 2000 WL 1480992 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

### 3. Cease and Desist Letters

*7 Defendant's allegations that plaintiff intimidates defendant's customers through cease and desist letters fails for the same reasons. Defendant offers no evidence to establish a *prima facie* Lanham Act violation regarding plaintiff's publication of its patent right through cease and desist letters. As the party who will bear the burden at trial, defendant failed to make a showing on an essential element of its case. Thus, plaintiff's motion for summary judgment regarding any cease and desist letters is granted.

### 4. Sales Force Training

Finally, defendant alleges that plaintiff encourages its sales force to "leverage" its patents and "lock out the competition." Again, defendant presented no evidence of a Lanham Act violation here. Defendant complained that plaintiff's internal memoranda cause plaintiff's sales force to believe that only plaintiff can legally manufacture and sell pressure seal products. However, upon reviewing these documents, no reasonable jury could conclude this to be true. The one training manual that defendant complains of specifically says "[m]any of you may be under the impression that only [plaintiff] can manufacture and sell pressure seal forms and equipment. This is not the case." (D.I. 249, Ex. A at M 009660) The same brochure further states that "[i]t is important that you understand [plaintiff's] patent protection relative to pressure seal. [Plaintiff] *does not* have a patent on the concept of pressure seal." (*Id.*, Ex. A at M 009663) Because defendant failed to establish a *prima facie* Lanham Act claim, plaintiff's motion for summary judgment is granted to the extent that defendant's claims revolve around plaintiff training its sales force to "leverage" its patents.

### B. Common Law Unfair Competition and the Delaware Uniform Deceptive Trade Practices Act

Defendant's unfair competition allegations include claims under common law unfair competition and violations of the Delaware Uniform Deceptive Trade Practices Act, Del.Code Ann. tit. 6, § 2532 (1974). Because the Uniform Deceptive Trade Practices Act codifies the common law of unfair competition, *see Young v. Joyce,* 351 A.2d 857 (Del.1975); *Accu Personnel, Inc. v. Accustaff, Inc.,* 846 F.Supp. 1191 (D.Del.1994), the court will treat defendant's remaining counterclaims together.

Plaintiff argues that the state unfair competition claims are preempted by patent law. However, such claims are preempted only to the extent that the party bringing the unfair competition claims fails to allege bad faith. *See Hunter Douglas,* 153 F.3d at 1336. Defendant presented sufficient allegations of bad faith regarding plaintiff's over-marking of its products, and thus, defendant will be allowed to proceed with its state law unfair competition claims regarding plaintiff's bad faith over-marking.

With regard to plaintiff's other alleged violations, defendant failed to come forth with admissible evidence of bad faith. Therefore, any state law unfair competition claims are preempted by federal patent law. *Id.* Plaintiff's motion for summary judgment is granted with respect to those activities.

### V. CONCLUSION

*8 For the foregoing reasons, the court shall grant in part and deny in part plaintiff's motion for summary judgment. Defendant may proceed with its Lanham Act and state law unfair competition claims only to the extent that they revolve around plaintiff's bad faith over-marking of its products. There are no genuine issues of material fact regarding defendant's other allegations, and plaintiff is entitled to judgment as a matter of law with respect to those claims. An appropriate order shall issue.

D.Del.,2000.
Moore North America, Inc. v. Poser Business Forms, Inc.
Not Reported in F.Supp.2d, 2000 WL 1480992 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.