**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NOKIA CORPORATION and NOKIA, INC., Plaintiffs, | ) | C.A. No. 05-16-JJF |
| v. | ) | **JURY TRIAL DEMANDED** |
| INTERDIGITAL COMMUNICATIONS CORPORATION and INTERDIGITAL TECHNOLOGY CORPORATION, Defendants. | ) | **PUBLIC VERSION** |

**INTERDIGITAL'S OPPOSITION TO**
**NOKIA'S OBJECTIONS TO SPECIAL MASTER'S AUGUST 20, 2007 DECISION**


OF COUNSEL:

Mark D. Flanagan
Nathan L. Walker
WILMER CUTLER PICKERING
HALE & DORR, LLP

Ron E. Shulman
Michael B. Levin
WILSON SONSINI GOODRICH & ROSATI

Patrick J. Coyne
Houtan K. Esfahani
Rajeev Gupta
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER LLP


Dated: September 5, 2007
Public Version Dated: September 12, 2007
818357 / 28840


Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

Christopher D. Isaac
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER LLP

Roger D. Taylor
R. Bruce Bower
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER LLP

*Attorneys for Defendants InterDigital Communications Corporation and InterDigital Technology Corporation*

**TABLE OF CONTENTS**

Page


I. NATURE AND STAGE OF THE PROCEEDINGS ..... 1

II. SUMMARY OF ARGUMENT ..... 2

III. FACTUAL BACKGROUND ..... 5

IV. ARGUMENT ..... 8

A. The Special Master's Ruling Should Be Reviewed Under an Abuse of Discretion Standard ..... 8

B. The Special Master Did Not Abuse His Discretion ..... 9

C. Nokia Cannot Prevail Even Under a De Novo Review Standard ..... 10

1. Denying the Stay Would Not Prejudice Nokia ..... 10

2. InterDigital Would Be Prejudiced If a Stay Were Granted ..... 14

3. Granting a Stay Would Not Conserve Judicial Resources ..... 15

V. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Advanced Microtherm, Inc. v. Norman Wright Mechanical Equipment Corp.*, No. C 04-02266, 2007 WL 878566 (N.D. Cal. Mar. 20, 2007) .......... 8

*Micron Technology, Inc. v. Mosel Vitelic et al.*, No. CIV 98-0293-S-LMB, 1999 WL 458168 (D. Idaho Mar. 31, 1999) .......... 12

*United Merchants & Mfrs., Inc. v. Henderson*, 495 F. Supp. 444 (N.D. Ill. 1980) .......... 10

*United Sweetener USA, Inc v. NutraSweet Co.*, 766 F. Supp. 212 (D. Del. 1991) .......... 10

## STATUTES

19 U.S.C. § 1337 .......... 1, 6

28 U.S.C. § 1659(a) .......... 3, 12

## RULES

Fed. R. Civ. P. 53(g)(3) .......... 10

Fed. R. Civ. P. 53(g)(4) .......... 10

Fed. R. Civ. P. 53(g)(5) .......... 8, 10

## I. NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Nokia Corporation and Nokia Inc. (collectively "Nokia") launched this action over 2 ½ years ago, asserting that InterDigital Communications, LLC[1] and InterDigital Technology Corp. (collectively, "InterDigital") violated the Lanham Act by making assertions to the 3G wireless standards body, ETSI, and in other public statements, that InterDigital owned patents that may be essential to the UMTS 3G standard. Thereafter, InterDigital filed a mirror-image counterclaim asserting that Nokia had made public statements falsely asserting that it owned essential 3G patents. Recognizing that the litigation of over 300 patents presented a case management nightmare, InterDigital moved for a modified case management order. The First Amended Case Management Order ("CMO") was the product of that request, which the Special Master issued on July 9, 2007 after weeks of hearings and negotiations.[2]

The CMO provides, *inter alia*, that Nokia must submit contentions pursuant to the Special Master's Second Discovery Order by August 10, 2007 in connection with the 26 InterDigital patents declared to ETSI in March 2007 (the "March 2007 Declared Patents"), including U.S. Patent Nos. 7,117,004 ("the '004 patent") and 7,190,966 ("the '966 patent") (collectively the "Two Patents").[3] On the day Nokia's submission was due, it requested an eleventh-hour discovery stay of its obligation to provide contentions with respect to the Two Patents. Nokia argued that a discovery stay was appropriate because InterDigital had initiated two patent infringement actions on August 7, 2007 on those patents: (i) a complaint with the International Trade Commission under 19 U.S.C. § 1337, *In re Certain 3G Mobile Handsets and*

---

[1] InterDigital Communications, LLC is the successor to InterDigital Communications Corporation.

[2] This Court entered the CMO on August 30, 2007.

[3] Nokia was originally scheduled to disclose its contentions with respect to the March 2007 Declared Patents on July 11, but obtained a month extension from the Special Master to do so.

*Components Thereof*, and (ii) a parallel district court action, *InterDigital Communications, LLC v. Nokia Corp.*, C. A. No. 07-489 (D. Del.). After receiving letter briefs and hearing the parties' arguments during a teleconference on August 20, 2007, the Special Master denied Nokia's request for a stay. On August 24, 2007, Nokia filed with this Court its objections to the Special Master's decision. (D.I. 212).

Meanwhile, fact discovery is ongoing and is scheduled to conclude on December 14, 2007. Nokia's effort to defer disclosing its contentions with respect to the Two Patents to an undefined date—but apparently at least until the conclusion of the ITC Action, which will not occur until the latter part of 2008—will make it virtually, if not actually, impossible to complete discovery within that time frame.

## II. SUMMARY OF ARGUMENT

This request for a discovery stay is yet another attempt by Nokia to prevent the parties from realizing the efficiencies of the First Amended Case Management Order. Nokia's request represents the *third* time Nokia has sought to delay providing its required discovery disclosures regarding the March 2007 Declared Patents. Nokia contends a stay is necessary because InterDigital filed patent infringement actions involving the Two Patents and Nokia is somehow prejudiced from providing this discovery now. However, Nokia fails to explain why providing *details* behind contentions it has already made—that InterDigital does not own essential patents—would be unfairly prejudicial.[4]

Nokia's objections to the Special Master's order should be rejected. Preliminarily, the Special Master's denial of Nokia's request to stay discovery is a purely *procedural* matter and

4 [redacted]

therefore should only be overruled if it constitutes an abuse of discretion. Nokia fails to make even a threshold showing that the Special Master abused his discretion in refusing to grant a discovery stay.

Even if the Special Master's order were subject to de novo review, Nokia's objections fail because the Special Master weighed the asserted hardships and reasonably concluded that they did not favor the piecemeal stay requested by Nokia. Fundamentally, Nokia's stay request fails because it does not articulate any cognizable prejudice that would result if Nokia were required to articulate the basis for its assertion that the Two Patents are not essential—or to admit that they in fact *are* essential.[5]

Nokia's citation to the stay provision of 28 U.S.C. § 1659(a) is entirely irrelevant because Nokia has not invoked that statute to seek a stay of its "claim that involves the same issues involved in" the ITC action until the conclusion of the ITC action. Rather, Nokia simply wants to stay *InterDigital's defense* to Nokia's Lanham Act claim. Moreover, as the Special Master recognized, Nokia's Lanham Act claims are distinct from the patent infringement claims raised in the ITC action, and the issue of essentiality framed in this case is distinct from the issue of infringement of particular Nokia products that is at issue in the ITC action.

InterDigital, on the other hand, would suffer real prejudice if the Two Patents were carved out of discovery as Nokia requests. [REDACTED] As the court is aware, under the CMO, each party is required to select, among the hundreds of patents they collectively have

---

[5] Nokia has not previously been required to articulate whether it contends that the Two Patents are essential. However, in its First Amended Complaint and in its responses with respect to the First Discovery Order, Nokia has taken the position that statements by InterDigital that it possesses more than one essential patent are false. It logically follows that Nokia has taken the position that the Two Patents cannot be essential.

declared to ETSI, eight representative patents from their own declared patents and eight representative patents from the other side's list of declared patents, that will serve as the basis for determining the truth or falsity of the statements accused in the Lanham Act claims. In addition, following compliance with the Second Discovery Order with respect to the March 2007 Declared patents, the parties are directed to take up with the Special Master how many additional patents shall be selected from the March 2007 Declared Patents. [REDACTED]

InterDigital's opportunity to select the Two Patents as among its pool of representative patents will not occur until compliance with the Second Discovery Order is complete. As a result, Nokia's stay request—for an undetermined period but presumably until the completion of the ITC action in late 2008—[REDACTED]. Meanwhile, fact discovery on all patents is scheduled to close in just over three months, with expert discovery to follow. InterDigital will suffer evident prejudice if it is prohibited from proceeding on discovery relating to its defenses.

For its part, Nokia has neither explained how the stay it requests will not delay the resolution of the case at bar, nor how the passage of time in the ITC action will clarify how the supposedly identical issues will be litigated. As Nokia evidently recognizes, it is not practical to expect this case, which has been pending since January 2005, to be stayed pending the resolution of the ITC action, which is not scheduled for a hearing until mid-2008, and in which a final

decision is not being expected until the end of 2008. Nor can Nokia's claims proceed without InterDigital being able to assert the essentiality of the Two Patents as part of its defense. In short, Nokia's stay request ultimately leads to nowhere, apart from putting off to another day Nokia's obligation to explain its claim that InterDigital owns no essential 3G patents.

## III. FACTUAL BACKGROUND

On November 14, 2006, the Special Master issued the Second Discovery Order requiring Nokia to "identify on a patent-by-patent basis why InterDigital's ETSI declarations are false and made in bad faith." *See* Ex. 1 (Second Discovery Order) at 4-5. On December 14, 2006, Nokia submitted its contentions pursuant to the Second Discovery Order for 195 of InterDigital's declared patents. *See* Ex. 2 (Plaintiffs' Statement Pursuant to Second Discovery Order). In February 2007, InterDigital asserted mirror-image counterclaims against Nokia.[6] *See* D.I. 160. InterDigital thereafter submitted its contentions pursuant to the Second Discovery Order for 188 of Nokia's declared patents.

In March 2007, InterDigital declared to the European Telecommunications Standards Institute ("ETSI") an additional group of twenty-six patents (the "March 2007 Declared Patents"). InterDigital disclosed the March 2007 Declared Patents to Nokia in a June 11, 2007 letter, prior to the entry of any case management order, so as to avoid piecemeal litigation. *See* Ex. 3 (June 11, 2007 Ltr. from M. Levin to R. Allen). The Special Master agreed that Nokia had to provide its contentions concerning these patents so that InterDigital could prepare its defenses,

[6] InterDigital submits that statements of belief made to a standards body such as ETSI cannot be actionable, as a matter of law. Accordingly, InterDigital's counterclaims concerning Nokia's statements to ETSI are expressly conditioned on the unlikely event that the Court finds InterDigital's corresponding statements to be actionable. *See* D.I. 160, ¶ 204.

and ordered that Nokia do so "within 30 days of the date InterDigital first disclosed the identity of the [March 2007 Declared Patents]," *i.e.*, by July 11, 2006. *See* (D.I. 203).

Roughly a week before its contentions were due under the original Case Management Order, Nokia submitted a letter objecting to this July 11 deadline, and requesting an extension until August 15. *See* Ex. 4 (July 5, 2007 Ltr. from J. Blumenfeld to Special Master Seitz). The Special Master accommodated Nokia, amending the Case Management Order to give Nokia an extension until August 10 to submit its contentions. *See* D.I. 204.

On the eve of this new deadline, Nokia requested a second extension,



. Thus, the Special Master rejected Nokia's second attempt at delay. *See* Ex. 6 (Aug. 2, 2007 Ltr. from Special Master Seitz to All Counsel); *see also* Ex. 7 .

On August 7, 2007, InterDigital filed two patent infringement actions against Nokia: (i) a complaint with the International Trade Commission under 19 U.S.C. § 1337, *In re Certain 3G Mobile Handsets and Components Thereof*; and (ii) a parallel district court action, *InterDigital Communications, LLC v. Nokia Corp.*, Civil Action No. 07-489 (D. Del.). These patent infringement actions involve two InterDigital patents, U.S. Patents Nos. 7,117,004 ("the '004

---

[7] Throughout its brief, Nokia makes a number of incorrect assertions relating to the merits of the parties' dispute (*e.g.*, that InterDigital's March 2007 ETSI Declaration was improper), which InterDigital vigorously disputes. Because these allegations are not germane to the merits of Nokia's objections, and provide no basis for Nokia to refuse to provide the discovery required by the Second Discovery Order, InterDigital will refrain from responding to such allegations at this time.

patent") and 7,190,966 ("the '966 patent") (the "Two Patents"), that are among the twenty-six patents InterDigital declared to ETSI in March 2007.

Three days later, Nokia sent the Special Master a letter with an "urgent request for telephone conference" seeking not just an extension of time to provide its contentions with respect to the Two Patents, but for all 26 of the March 2007 Declared Patents. *See* Ex. 8 (Aug. 10, 2007 Ltr. from J. Blumenfeld to Special Master Seitz). That same day, InterDigital submitted a response opposing Nokia's request. *See* Ex. 9 (Aug. 10, 2007 Ltr. from D. Moore to Special Master Seitz). Because Nokia requested an extension on the same day that its contentions were due, the Special Master was not available to issue a ruling. InterDigital agreed to allow Nokia to temporarily defer providing its contentions with respect to the Two Patents until the Special Master could issue a ruling. Ex. 10 (Aug. 10, 2007 e-mail from D. Moore to J. Heaney). Nokia submitted its contentions on August 10 with respect to all but the Two Patents, which it redacted. *See* Ex. 11 (Nokia's Aug. 10 Submission).

On August 20, 2007, the Special Master held a hearing on Nokia's stay request. *See* Ex. 12 (Aug. 20, 2007 Hearing Transcript). After hearing from both sides, the Special Master orally denied Nokia's request. *See id.* at 21:21-23:23. The Special Master recognized that, although the issues in this Lanham Act action may overlap to some degree with the issues in the patent infringement actions, the claims are different and any potential overlap does not warrant excluding discovery on the Two Patents. *See id.* at 21:23-22:14. The Special Master identified the prejudice to the parties that a stay would cause, including the potential for delay and the possibility of bifurcation if discovery were stayed "for two of the patents while the litigation proceeds towards the close of discovery and to trial." *Id.* at 22:15-19.

The Special Master also considered, and rejected, Nokia's claims of prejudice. The Special Master ruled that Nokia would not be prejudiced because the information sought is merely *discovery* relating to essentiality determinations, and did not directly implicate "litigating the patents," or decisions on claim construction. *See id.* at 23:7-18. While not relying exclusively on the protective order, the Special Master also noted that the provision that confidential information should be used only for purposes of this litigation undermined Nokia's prejudice claim. *See id.* at 20-23.

To allow Nokia the opportunity to appeal this matter to this Court, the Special Master stayed the application of his order pending review by this Court. *Id.* at 24:14-16.

## IV. ARGUMENT

### A. The Special Master's Ruling Should Be Reviewed Under an Abuse of Discretion Standard

According to Fed. R. Civ. P. 53(g)(5), a "court may set aside a master's ruling on a procedural matter only for an abuse of discretion." Discovery orders, such as the one at issue here, are generally non-dispositive rulings directed towards "procedural" matters, and are therefore reviewed under an abuse of discretion standard. *See Advanced Microtherm, Inc. v. Norman Wright Mechanical Equipment Corp.*, No. C 04-02266, 2007 WL 878566 at *1-*2 (N.D. Cal. Mar. 20, 2007) (finding that the Special Master's order denying plaintiffs' motion to depose certain witnesses to be a "procedural matter" to which the abuse of discretion standard applied). The Special Master's denial of Nokia's request to stay discovery with respect to the Two Patents is clearly a procedural matter and therefore can be overruled only for an abuse of discretion. *See* Fed. R. Civ. P. 53(g)(5).

**B. The Special Master Did Not Abuse His Discretion**

As part of the Special Master's duties, he issued the Second Discovery Order, requiring the parties to provide their patent-by-patent essentiality contentions in a timely fashion. *See* D.I. 40, ¶ 3; D.I. 71. Nokia here seeks a stay of the requirements of that order, including the CMO's requirement that Nokia comply with respect to the Two Patents by August 10, 2007. The Special Master's rejection of Nokia's requested stay of that order was a proper exercise of his authority.

Nokia claims that the Special Master abused his discretion by supposedly: (i) "not balancing the hardships to Nokia from denying a stay against the prejudice to InterDigital from awarding a stay"; and (ii) "not recognizing the savings in judicial resources from a stay." Nokia's Brf. at 8. Nokia is wrong on both counts.

Contrary to Nokia's suggestion, the Special Master *did* balance the supposed hardships to Nokia with the prejudice to InterDigital. With regard to the hardship to Nokia, nearly an entire page of the transcript is dedicated to the Special Master's explanation as to why "Nokia will not be prejudiced providing this information on the two patents." *See* Ex. 12 (Aug. 20, 2007 Hearing Transcript) at 22:24-23:18. The Special Master also considered the prejudice to InterDigital, concluding that a stay would not only delay the proceeding, it could result in a bifurcated proceeding. *See id.* at 22:15-19. As noted above, apart from these salient points, InterDigital also would be prejudiced by its inability to take discovery or rely upon the Two Patents as part of its defense.

Nokia's claim that the Special Master did not recognize the savings in judicial resources from a stay is equally baseless. *See* Nokia's Brf. at 8. In fact, the Special Master properly considered that extra judicial resources would be required if the case were delayed and if a second trial were required.

In short, the Special Master clearly considered the factors relevant to Nokia's stay request, and on that basis rejected the request. The Special Master did not abuse his discretion and Nokia's objections should be overruled.

### C. Nokia Cannot Prevail Even Under a De Novo Review Standard

Nokia tries to have this Court review the Special Master's decision de novo by characterizing his *procedural* order denying a stay of discovery under Rule 53(g)(5) as an order involving findings of fact and conclusions of law under Rule 53(g)(3) and (4). *See* Nokia's Brf. at 8. Nokia labors in vain, as the order clearly was a purely procedural one under 53(g)(5). Nonetheless, Nokia's objections fail even under a de novo review.

In considering the propriety of a stay, a court should "evaluate the possible damage, hardship and inequities to the parties to the lawsuit and the relationship of the stay to the fulfillment of judicial objectives of simplification of the issues in question and trial of the case." *United Sweetener USA, Inc v. NutraSweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991) (quoting *United Merchants & Mfrs., Inc. v. Henderson*, 495 F. Supp. 444, 447 (N.D. Ill. 1980)). Here, a stay is not warranted because (i) Nokia would not be prejudiced in the absence of a stay; (ii) a stay would prejudice InterDigital [REDACTED] [REDACTED], by depriving it of relevant discovery, and by potentially giving rise to piecemeal litigation; and (iii) it would complicate the issues in the case, wasting judicial resources.

#### 1. Denying the Stay Would Not Prejudice Nokia

[REDACTED]

[REDACTED]



**b. Because the Second Discovery Order Is Simply Seeking *Discovery*, there Is No Prejudice**

[REDACTED], Nokia's argument would fail because it is not, at this time, required to litigate the merits of the Two Patents. As the Special Master properly found, Nokia is simply being asked to comply with the Second Discovery Order by providing ***discovery*** on its Lanham Act contentions as they relate to the Two Patents. *See* Ex. 12 (Aug. 20, 2007 Hearing Transcript at 25). Any trial on the merits as to the Two Patents remains remote. *See id.* at 23:7-18. Indeed, the CMO expressly prohibits discovery on the issues of validity, enforceability or infringement of the patents, which may become issues in the new infringement actions. Accordingly, there is little risk for inconsistent findings, or any other type of cognizable prejudice to Nokia.

**c. The Lanham Act Action and the Patent Infringement Actions Do Not Involve the Same Issues**

Nokia's prejudice argument depends on the notion that this Lanham Act action involves the same issues as the new patent infringement actions. In doing so, Nokia cites to the

mandatory stay provision that permits a defendant in a district court patent infringement action to stay the action because of a pending ITC action on the same patent. *See* Nokia's Brf. at 11-12 (discussing 28 U.S.C. § 1659(a)). This argument fails on a number of grounds.

First, as the Special Master properly found, even if this case did involve some of the same issues as the ITC action, that still would not warrant a stay. InterDigital is aware of no cases staying a Lanham Act claim under 28 U.S.C. § 1659(a), and Nokia has cited none. *See* Ex. 12 (Aug. 20, 2007 Hearing Transcript) at 6:22-7:11. But even if that statute were applicable to Lanham Act claims, there is not a sufficient overlap to warrant a stay. A mere overlap or even ***substantial similarity*** in issues is ***not*** enough to warrant a stay under 28 U.S.C. § 1659(a); rather, the issues must be the same. *See Micron Technology, Inc. v. Mosel Vitelic et al.*, No. CIV 98-0293-S-LMB, 1999 WL 458168 at *3 (D. Idaho Mar. 31, 1999) (finding that while the patent infringement claims of the seven related patents filed before the district court "raise issues that are substantially similar to the issues that will be raised in the patent infringement claims before the ITC, those issues are not the same issues as required by the statute.").

The present action involves *Lanham Act* claims, which relate in part to the "essentiality" of hundreds of InterDigital's (and Nokia's) patents, two of which are also involved in the patent infringement actions. They do not involve the *same* legal issues as the patent infringement actions. One of the issues Nokia has raised in this case is whether the parties' declared patents read on any of the third generation ("3G") of wireless standards so as to be "essential," as that term is defined by ETSI. However, Nokia's claims do not turn on whether or not particular patents are valid or enforceable, or whether or not any particular products infringe any particular patents. For that reason, the First Amended Case Management Order expressly denied discovery

on the issues of validity, enforceability and infringement of products.[8] *See* D.I. 204, ¶ 9. Thus, even in the absence of any stay, there will not be *any* discovery regarding the validity, enforceability, or infringement of the Two Patents in the present action.

Nokia, nonetheless, attempts to justify its request for a stay because it contends the issues of "essentiality, claim construction, and validity" are supposedly present both in this action as well as in the patent infringement actions. *See* Nokia's Brf. at 12. Nokia is wrong.

On the issue of validity, first, Nokia's Amended Complaint does not even fairly raise that issue—as witnessed by the fact that Nokia has been unable to point to any actionable statement by InterDigital regarding the validity of the patents it disclosed to ETSI. But even if validity were at issue, under the CMO, discovery relating to the validity of all the patents, including the '004 and '966 patents, is currently prohibited. Thus, for the foreseeable future, the supposedly "overlapping" issue of validity does not overlap at all, for all intents and purposes.

The same consideration holds true for claim construction. Under the current scheduling order, claim construction will not take place until mid-2008. *See* D.I. 171. Thus, a stay of ***discovery*** is not required to hold off any "overlap" between the two proceedings as to that issue.

Finally, with respect to essentiality, Nokia incorrectly suggests that essentiality is simply a proxy for infringement. In this case, the issue is whether particular ***patents*** are essential to the 3G standards. Unlike the infringement actions, no ***products*** are at issue in this suit. Thus, the question whether particular Nokia products infringe those patents—which is the central issue in the infringement actions—will not be resolved in this case.

---

[8] The First Amended Case Management Order permits either party to apply for relief from this limitation following claim construction. *See* D.I. 204, ¶ 9.

**d. The Protective Order Undermines Nokia's Prejudice Argument**

Lastly, the protective order undermines Nokia's prejudice argument. As noted above, Nokia's prejudice theory—in effect, that it might say things in this case that it regrets in the other cases—would not constitute *unfair* prejudice. But even if it were a valid concern, as the Special Master recognized, Nokia would have the ability to raise the protective order in this case if InterDigital applied to use, in another case, statements made by Nokia in this case. *See* August 20, 2007 transcript at 23.

**2. InterDigital Would Be Prejudiced If a Stay Were Granted**

Conversely, a stay would prejudice InterDigital in a real, cognizable fashion. As the Special Master recognized in the Second Discovery Order, InterDigital is entitled to seek Nokia's contentions concerning the patents that Nokia contends are not essential. The Two Patents are no different from the remaining patents for which Nokia has provided contentions, and InterDigital would be prejudiced if Nokia does not have to take a position on them.

Under the CMO, InterDigital may request that one or more of the March 2007 Declared Patents, including the Two Patents, become "Representative Patents." *See* D.I. 204, ¶ 5. However, under the CMO, the selection of the representative patents from among the March 2007 Declared Patents cannot take place until after Nokia has provided its essentiality contentions with respect to these patents, including the Two Patents. If Nokia is permitted to withhold its contentions for the Two Patents, InterDigital will be denied the information necessary to make its selection of Representative Patents [redacted] [redacted]. At worst, the entire case will grind to a halt since InterDigital will be unable to pick its Representative Patents. At best, InterDigital will be denied a level playing field in making its selections and, if even it gets the opportunity to pick one or

both of the Two Patents, it will be denied the opportunity to take discovery with respect to Nokia's contentions as to those patents.

### 3. Granting a Stay Would Not Conserve Judicial Resources

Finally, Nokia contends that a stay would somehow promote judicial economy because this case might not be "the appropriate piece of litigation in which to address the [Two Patents]." Nokia's Brf. at 15. This statement wrongly assumes that the Lanham Act claims could not proceed in relation to any patents that are otherwise subject to an infringement action in another forum. As discussed above, the Lanham Act claims involve different legal claims, and different issues. But even if there were some overlap in issues, the Lanham Act claims still will proceed in this Court. Accordingly, Nokia cannot indefinitely avoid providing its contentions regarding the Two Patents pursuant to the Second Discovery Order.

Indeed, a stay would have the opposite effect that Nokia suggests. A stay could well result in multiple trials on the Lanham Act claims—one for the original patents and a later one on the stayed patents—which would be an inefficient use of judicial resources.

## V. CONCLUSION

For the foregoing reasons, Nokia's objections to the Special Master's August 20, 2007 Order should be overruled, and Nokia's request for a stay should be denied.

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

Mark D. Flanagan
Nathan L. Walker
WILMER CUTLER PICKERING
HALE & DORR, LLP
1117 California Avenue
Palo Alto, California 94304
Tel: (650) 858-6000

Ron E. Shulman
Michael B. Levin
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Tel: (650) 493-9300

Patrick J. Coyne
Houtan K. Esfahani
Rajeev Gupta
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Tel: (202) 408-4000

OF COUNSEL:

Christopher D. Isaac
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER LLP
Two Freedom Square
11955 Freedom Drieb
Reston, Virginia 20190
Tel: (571) 203-2700

Roger D. Taylor
R. Bruce Bower
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER LLP
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 30308-3263
Tel: (404) 653-6400

*Attorneys for Defendants InterDigital Communications Corporation and InterDigital Technology Corporation*

Dated: September 5, 2007
Public Version Dated: September 12, 2007
818357 / 28840

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on September 12, 2007, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on September 12, 2007, I have Electronically Mailed the document to the following person(s):

Jack B. Blumenfeld
Julia Heaney
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
jblumenfeld@mnat.com
jheaney@mnat.com

A. William Urquhart
Marshall M. Searcy
Quinn Emanuel Urquhart
Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
billurquhart@quinnemanuel.com
marshallsearcy@quinnemanuel.com

Peter Kontio
Patrick J. Flinn
Gardner S. Culpepper
Keith E. Broyles
Randall L. Allen
Lance Lawson
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
pkontio@alston.com
pflinn@alston.com
gculpepper@alston.com
keith.broyles@alston.com
rallen@alston.com
llawson@alston.com

By: */s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

713935 / 28840