# EXHIBIT 3

**WSGR** **Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

650 Page Mill Road
Palo Alto, CA 94304-1050
PHONE 650.493.9300
FAX 650.493.6811
www.wsgr.com

June 11, 2007

<u>VIA EMAIL AND US MAIL</u>

Randall L. Allen, Esq.
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
randall.allen@alston.com

Re:    *Nokia Corp. v. InterDigital Commc'ns Corp.*, Case No.: 05-16 (JJF) (D. Del.)

Dear Randall:

As part of our rolling production, we're planning on producing tomorrow documents from InterDigital's recent correspondence with ETSI. One of these documents is InterDigital's March 2007 declaration to ETSI. Because ETSI has not yet released this declaration to the public, our production of this document is arguably premature. However, to the extent Nokia later chooses to place this ETSI declaration at issue in the litigation, we wanted to get you this document as soon as possible so that you could consider it in connection with the upcoming deadline for the designation of Representative Patents.

We note that this latest ETSI declaration by InterDigital includes 21 U.S. patents not included in our previous declaration to ETSI. We also note that it includes six new patent applications that have since issued as U.S. patents. The 27 new U.S. patents are as follows:

| | | |
|---|---|---|
| 5,663,990 | 6,842,444 | 7,137,548 |
| 5,614,914 | 6,964,369 | 7,180,885 |
| 5,859,879 | 6,975,650 | 7,190,966 |
| 6,366,568 | 7,039,030 | 7,200,405 (Ser. No. 10/902,740) |
| 6,651,883 | 7,065,366 | 7,206,581 (Ser. No. 10/939,256) |
| 6,771,632 | 7,092,371 | 7,212,824 (Ser. No. 10/637,022) |
| 6,778,515 | 7,103,027 | 7,215,655 (Ser. No. 11/019,489) |
| 6,785,251 | 7,117,004 | 7,215,974 (Ser. No. 11/000,297) |
| 6,804,207 | 7,120,189 | 7,218,625 (Ser. No. 10/988,410) |

Please let me know if you have any questions regarding the attached.

Sincerely,

Michael B. Levin

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Randall L. Allen, Esq.
June 11, 2007
Page 2


cc (via electronic mail):
        Patrick J. Flinn, Esq.
        Lance A. Lawson, Esq.
        Mark D. Flanagan, Esq.
        Christopher P. Isaac, Esq.
        Patrick J. Coyne, Esq.
        Lionel Lavenue
        Ron E. Shulman
        Gregory Wallace

# EXHIBIT 4

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. Box 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

JACK B. BLUMENFELD
302 351 9291
302 425 3012 FAX
jblumenfeld@mnat.com

July 5, 2007

Collins J. Seitz, Jr., Esquire
Connolly, Bove, Lodge & Hutz
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801

*VIA ELECTRONIC MAIL*
*and HAND DELIVERY*

Re:   *Nokia Corporation, et al. v.*
      *InterDigital Communications Corporation, et al.*
      C.A. No. 05-16 (JJF)

Dear Special Master Seitz:

I write on behalf of Nokia to respond to your June 29 letter and Case Management Order (D.I. 203), to make an objection with regard to the timetable set forth in paragraph 5 of the Order.

Paragraph 5 of the Case Management Order requires Nokia to submit its initial statement concerning the patents that InterDigital identified on Exhibit C (*i.e.*, patents from the additional group of U.S. patents that InterDigital declared to ETSI in March 2007) within 30 days from when it received the list of patents. InterDigital provided that list to Nokia on June 11. Thus, Nokia's statement with respect to 26 patents would be due next Wednesday, July 11. Nokia did not put the additional 26 patents into its case. They were added into the Case Management Order at the request of InterDigital. Thus, Nokia has not yet conducted the type of analysis required by the Case Management Order. Under the schedule set forth in the Case Management Order, Nokia's contentions on the 26 new patents would be due in four business days. Moreover, the draft Case Management Order that you distributed to counsel on June 25 did not include the 30-day deadline, so there was no reason for Nokia to raise this objection earlier.

We have asked InterDigital to agree to modify paragraph 5 of the Order so that Nokia's initial statement would be due on August 15 (approximately 45 days from the date of the Order). Nokia needs the additional time because of the substantial work to be completed pursuant to existing discovery orders requiring Nokia to respond to InterDigital's contentions on 188 patents at the end of July and in early August, in addition to the demanding task of dealing

Collins J. Seitz, Jr., Esquire
July 5, 2007
Page 2

with the 26 patents listed on Exhibit C.  InterDigital has requested an extension to submit its responsive statement to 45 days.  InterDigital has declined, however, to agree that Nokia may have 45 days and has agreed only that Nokia may have until August 1.

Nokia therefore requests that paragraph 5 of the Case Management Order be revised to provide that Nokia shall submit its initial statement by August 15.  Nokia has no objection to InterDigital's request for 45 days to respond.

Respectfully,

Jack B. Blumenfeld

JBB/dlb

cc:    Richard L. Horwitz, Esquire (Via Electronic Mail)
       Ron E. Shulman, Esquire (Via Electronic Mail)
       Mark K. Flanagan, Esquire (Via Electronic Mail)
       Patrick J. Coyne, Esquire (Via Electronic Mail)
       Patrick J. Flinn, Esquire (Via Electronic Mail)

# EXHIBIT 5

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 6

# CONNOLLY BOVE LODGE & HUTZ LLP

### ATTORNEYS AT LAW

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

Collins J. Seitz, Jr.
TEL       (302) 888-6278
FAX       (302) 255-4278
EMAIL     cseitz@cblh.com
REPLY TO Wilmington Office

August 2, 2007

**By Electronic Mail**

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

Richard L. Horwitz, Esquire
David Ellis Moore, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951

Re:    *Nokia Corporation, et al. v. InterDigital Communications*
       **C.A. No. 05-016 - JJF**

Dear Counsel:

Pending is Nokia Corporation's ("Nokia") request to amend paragraph five of the proposed case scheduling order. In March 2007, InterDigital Corporation ("InterDigital") submitted a declaration to ETSI with respect to twenty six additional United States patents ("Additional Patents"). Nokia Corporation requests that the Special Master amend paragraph five to delay Nokia's service of contentions with regard to the Additional Patents until they are officially declared by ETSI on its on-line database. Nokia argues that InterDigital has allegedly deviated from ETSI's requirements, and that the alleged deviation has caused the delay. Because it is unclear whether ETSI will accept and publish InterDigital's declaration, Nokia argues that its contentions should not be due until ETSI makes a decision on the declaration.

InterDigital opposes Nokia's request, and argues that Nokia knew as early as June 11, 2007, when InterDigital's counsel informed Nokia's counsel by letter, that InterDigital's Declaration was pending. According to InterDigital, Nokia could have made the same argument at that time. InterDigital also argues that Nokia could have, but did not, raise the issue when the parties and the Special

Jack B. Blumenfeld, Esquire
Julia Heaney, Esquire
Richard L. Horwitz, Esquire
David Ellis Moore, Esquire
Page 2
August 2, 2007
---------------------------------------------------

Master engaged in exhaustive proceedings over the proposed case scheduling order.

I agree with InterDigital that Nokia should have raised the issue earlier, and a delay is not warranted. Nokia can prepare its contentions based on the declaration as submitted by InterDigital to ETSI. When and if ETSI takes some action with regard to InterDigital's declaration, it may affect the number of patents at issue in the litigation, or may require amendment of Nokia's contentions. Discovery should not, however, be delayed during the interim.

Nokia's request is denied.

Yours very truly,

Collins J. Seitz, Jr.

CJS,Jr./saj
(556111)

# EXHIBIT 7

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 8

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899–1347

302 658 9200
302 658 3989 FAX

JACK B. BLUMENFELD
302 351 9291
302 425 3012 FAX
jblumenfeld@mnat.com

August 10, 2007

**BY E-MAIL AND HAND DELIVERY**

Collins J. Seitz, Jr., Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, Delaware  19899

> Re:  *Nokia Corporation, et al. v. Interdigital Communications Corporation, et al.,*
> C.A. No. 05-16(JJF)
> <u>URGENT REQUEST FOR TELEPHONIC CONFERENCE</u>

Dear Special Master Seitz:

On Tuesday, August 7, InterDigital initiated two new pieces of litigation against Nokia:  (1) a patent infringement action in this district, *InterDigital Communications LLC, et al. v. Nokia Corp., et al.,* C.A. No. 07-489 (Ex. A); and (2) a complaint filed with the International Trade Commission, *In re Certain 3G Mobile Handsets* and Components Thereof, Investigation No. 337-TA-___ (Ex. B).

Both suits specifically assert two of the twenty-six additional patents that InterDigital declared to ETSI in March 2007 (the "March 2007 Patents"), specifically U.S. Patent Nos. 7,177,004 and 7,190,966 (the "Crossover Patents"). It is only these patents from the March 2007 declaration that InterDigital is asserting in these new actions. Based upon InterDigital's request to include these patents in this case, you ordered Nokia to provide essentiality contentions regarding these patents by today, August 10. InterDigital was plainly aware that it intended to bring new infringement litigation on these patents last week, at the very time it was asking you to keep them in this case. InterDigital's filing before the ITC specifically references the essentiality contentions that InterDigital believes will be provided in this case for use in the ITC  proceeding. (Ex. B at 12.) Moreover, at this time, Nokia does not even have access to the entire filing as portions of it were filed under a confidentiality limitation, and will not have access to these portions so designated for at least another thirty days. Finally, Nokia has not yet formally retained counsel to represent it in either of the newly filed matters.

Collins J. Seitz, Jr., Esquire
August 10, 2007
Page 2


Nokia respectfully submits that the filing of the two infringement actions this week compels a reconsideration of whether the two patents in question – or any of the 26 patents – should be addressed in this proceeding at this time. The now double (or triple) game InterDigital has elected to play requires sorting out the forum in which the new patents should be resolved. Accordingly, Nokia requests that it be relieved temporarily of the obligation to respond long enough for you, and perhaps Judge Farnan, to consider the consequences of these new filings.

We were unable to make this request earlier because these filings are brand new, and we had to consult with our client before raising this issue. In addition, neither Mr. Flinn nor Mr. Allen were in the office until today. We have alerted InterDigital's counsel to this request and are waiting for their response. We request that you either hold a conference call later today to hear our request for a postponement of a response, or grant an extension until early next week, when Mr. Flinn and Mr. Allen will be back and able to appear by telephone.

Thank you for your attention to this request.

Respectfully,

Jack B. Blumenfeld

JBB/ncf
Attachments

cc:    Richard L. Horwitz, Esquire (By E-mail)
       Ron E. Shulman, Esquire (By E-mail)
       Mark K. Flanagan, Esquire (By E-mail)
       Patrick J. Coyne, Esquire (By E-Mail)
       Patrick J. Flinn, Esquire (By E-Mail)

1204237

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERDIGITAL COMMUNICATIONS, LLC, a Pennsylvania limited liability company and INTERDIGITAL TECHNOLOGY CORP., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: _____ |
| v. | ) ) | |
| NOKIA CORPORATION, a Finnish corporation and NOKIA INC., a Delaware corporation, | ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## COMPLAINT

This is an action for patent infringement. Plaintiffs, InterDigital Communications, LLC and InterDigital Technology Corporation (collectively "InterDigital"), through their undersigned counsel, bring this action against Defendants, Nokia Corporation and Nokia Inc. (collectively "the Nokia Defendants"). In support of this Complaint, InterDigital alleges as follows:

## THE PARTIES

1.    Plaintiff, InterDigital Communications, LLC ("InterDigital Communications"), is a Pennsylvania limited liability company, having its principal place of business at 781 Third Avenue, King of Prussia, Pennsylvania 19406-1409.

2.    Plaintiff, InterDigital Technology Corporation ("InterDigital Technology"), is a Delaware corporation, having its principal place of business at Hagley Building, Suite 105, 3411 Silverside Road, Concord Plaza, Wilmington, Delaware 19810-4812.

3.    Defendant, Nokia Corporation, is a Finnish corporation, having its principal place

of business at Keilalahdentie 2-4, P.O. Box 226, FIN-00045 Espoo, Finland.

4.    Defendant, Nokia Inc., is a Delaware corporation, having its principal place of business at 6000 Connection Drive, Irving, Texas 75039, USA.  Upon information and belief, Nokia Inc. (d/b/a Nokia Mobile Phones) distributes Nokia-branded handsets in the United States.

## JURISDICTION AND VENUE

5.    This is an action for patent infringement arising under the patent laws of the United States.  This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

6.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(c)-(d) and 1400(b).

## FACTUAL BACKGROUND

7.    United States Patent No. 7,117,004 ("the '004 patent"), titled "Method and Subscriber Unit for Performing an Access Procedure," issued on October 3, 2006, to inventors Fatih Ozluturk and Gary Lomp.  InterDigital Technology owns by assignment the entire right, title, and interest in and to the '004 patent.  A true and correct copy of the '004 patent is attached to this Complaint as Exhibit A.

8.    United States Patent No. 7,190,966 ("the '966 patent"), titled "Method and Apparatus for Performing an Access Procedure," issued on March 13, 2007, to inventors Fatih Ozluturk and Gary Lomp.  InterDigital Technology owns by assignment the entire right, title, and interest in and to the '966 patent.  A true and correct copy of the '966 patent is attached to this Complaint as Exhibit B.

## FIRST CAUSE OF ACTION
## INFRINGEMENT OF U.S. PATENT NO. 7,117,004

9.    The '004 patent is presumed valid under 28 U.S.C. § 282 and remains

enforceable.

10.    On information and belief, the Nokia Defendants manufacture, use, import, offer for sale, and/or sell products in the United States that infringe the '004 patent and will continue to do so unless enjoined by this Court.

11.    On information and belief, the Nokia Defendants manufacture, use, import, offer to sell, and/or sell in the United States the following Third Generation ("3G") Wideband Code Division Multiple Access ("WCDMA") handset and components thereof that infringe the '004 patent:  N75.  The identification of this specific model is not intended to limit the scope of the Complaint, and any remedy should extend to all infringing models.

12.    The Nokia Defendants know or should have known of InterDigital's rights in the '004 patent, and their infringement of the '004 patent has been willful and deliberate.

13.    The Nokia Defendants' past and continuing infringements of the '004 patent have caused irreparable damage to InterDigital and will continue to do so unless enjoined by this Court.

## SECOND CAUSE OF ACTION
## INFRINGEMENT OF U.S. PATENT NO. 7,190,966

14.    The '966 patent is presumed valid under 28 U.S.C. § 282 and remains enforceable.

15.    On information and belief, the Nokia Defendants manufacture, use, import, offer for sale, and/or sell products in the United States that infringe the '966 patent and will continue to do so unless enjoined by this Court.

16.    On information and belief, the Nokia Defendants manufacture, use, import, offer for sale, and/or sell in the United States the following Third Generation ("3G") Wideband Code Division Multiple Access ("WCDMA") handset and components thereof that infringe the '966

3

patent: N75. The identification of this specific model is not intended to limit the scope of the Complaint, and any remedy should extend to all infringing models.

17.    The Nokia Defendants know or should have known of InterDigital's rights in the '966 patent, and their infringement of the '966 patent has been willful and deliberate.

18.    The Nokia Defendants' past and continuing infringements of the '966 patent have caused irreparable damage to InterDigital, and will continue to do so unless enjoined by this Court.

## PRAYER FOR RELIEF

19.    WHEREFORE, InterDigital respectfully requests that this Court:

(a)    Find that the Nokia Defendants have infringed one or more claims of the '004 patent and the '966 patent;

(b)    Find that this is an exceptional case under 35 U.S.C. § 285;

(c)    Permanently enjoin the Nokia Defendants from infringing the '004 patent and the '966 patent under 35 U.S.C. § 283;

(d)    Award InterDigital an amount to be determined as compensatory damages for the infringement of the '004 patent and the '966 patent and the costs of the action, as fixed by the Court, under 35 U.S.C. § 284;

(e)    Award InterDigital its costs, including expenses and reasonable attorneys' fees, incurred in bringing and prosecuting this action under 35 U.S.C. § 285;

(f)    Award InterDigital prejudgment and post-judgment interest on all amounts awarded; and

(g)    Award InterDigital any further relief that this Court deems just and proper.

4

## JURY DEMAND

20.    InterDigital demands a jury trial as to all issues that are triable by a jury in this action.

Dated: August 7, 2007

Richard K. Herrman, #405
Mary B. Matterer #2696
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com

OF COUNSEL:
Patrick J. Coyne
Christopher P. Isaac
Lionel M. Lavenue
Houtan K. Esfahani
Rajeev Gupta
Qingyu Yin
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

Attorneys for Plaintiffs,
INTERDIGITAL COMMUNICATIONS, LLC
and INTERDIGITAL TECHNOLOGY CORP.

5

# EXHIBIT B

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

In the Matter of

CERTAIN 3G MOBILE HANDSETS
AND COMPONENTS THEREOF

Investigation No. 337-TA-____

COMPLAINT OF INTERDIGITAL COMMUNICATIONS, LLC AND
INTERDIGITAL TECHNOLOGY CORPORATION
UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED

**COMPLAINANTS**

InterDigital Communications, LLC
781 Third Avenue
King of Prussia, Pennsylvania 19406-1409
(610) 878-7800

InterDigital Technology Corporation
Hagley Building, Suite 105
3411 Silverside Road, Concord Plaza
Wilmington, Delaware 19810-4812
(302) 477-2500

**COUNSEL FOR COMPLAINANTS**

Smith R. Brittingham IV
Patrick J. Coyne
Christopher P. Isaac
Lionel M. Lavenue
Houtan K. Esfahani
Elizabeth A. Niemeyer
Rajeev Gupta
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

**PROPOSED RESPONDENTS**

Nokia Corporation
Keilalahdentie 2-4
P.O. Box 226
FIN-00045 Espoo
Finland
358 (0) 7180 08000

Nokia Inc.
6000 Connection Drive
Irving, Texas 75039
USA
(972) 894-5000

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................... 1

II.   COMPLAINANT ..................................................................................... 2

III.  PROPOSED RESPONDENTS ................................................................ 3

IV.   THE TECHNOLOGY AND PRODUCTS-AT-ISSUE ............................. 3

V.    THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTION OF THE
      INVENTIONS ......................................................................................... 5

   A.  U.S. Patent No. 7,117,004 ................................................................. 5
      1.  Identification of the Patent and Ownership by InterDigital ............. 5
      2.  Non-Technical Description of the Patent ........................................ 5
      3.  Foreign Counterparts to the Patent ............................................... 6
      4.  Licenses ........................................................................................ 7
   B.  U.S. Patent No. 7,190,966 ................................................................. 7
      1.  Identification of the Patent and Ownership by InterDigital ............. 7
      2.  Non-Technical Description of the Patent ........................................ 7
      3.  Foreign Counterparts to the Patent ............................................... 9
      4.  Licenses ........................................................................................ 9

VI.   UNLAWFUL AND UNFAIR ACTS OF RESPONDENTS—
      PATENT INFRINGEMENT ................................................................... 9

VII.  SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE ........... 11

VIII. HARMONIZED TARIFF SCHEDULE ITEM NUMBERS ......................... 11

IX.   RELATED LITIGATION ....................................................................... 11

X.    THE DOMESTIC INDUSTRY .............................................................. 14

   A.  Investments in Research and Development, and Engineering ............. 15
   B.  Investments in Licensing .................................................................. 15

XI.   RELIEF REQUESTED ......................................................................... 16

## TABLE OF EXHIBITS

| Exhibit | Document |
|---|---|
| 1 | United States Patent No. 7,117,004 |
| 2 | United States Patent No. 7,190,966 |
| 3 | Assignment Documents for the '004 and the '966 Patents |
| 4 | Table Identifying Foreign Counterparts of the '004 and the '966 Patents |
| 5 | CONFIDENTIAL  Identification of Licensees |
| 6 | Claim Charts:  Infringement of '004 Patent by Nokia Handsets |
| 7 | Claim Charts:  Infringement of '966 Patent by Nokia Handsets |
| 8 | CONFIDENTIAL  Test Report Supporting Infringement Claim Charts for Nokia Handsets |
| 9 | Nokia Website Document Supporting Infringement of Asserted Patents by Nokia Handsets |
| 10 | Standards-Related Documents, 3GPP TS 25.211, Supporting Infringement of Asserted Patents by Nokia Handsets |
| 11 | Standards-Related Documents, 3GPP TS 25.213, Supporting Infringement of Asserted Patents by Nokia Handsets |
| 12 | Standards-Related Documents, 3GPP TS 25.301, Supporting Infringement of Asserted Patents by Nokia Handsets |
| 13 | Documents and Photographs of Representative Accused Infringing Nokia Handset Demonstrating Specific Instance of Importation and Sale |
| 14 | CONFIDENTIAL  Identification of InterDigital's Domestic Industry |

## TABLE OF APPENDICES

| Appendix | Document |
|----------|----------|
| A | Prosecution History of United States Patent No. 7,117,004 |
| B | Copies of References Cited in the Prosecution History of U.S. Patent No. 7,117,004 |
| C | Prosecution History of United States Patent No. 7,190,966[1] |
| D | Copies of Additional[2] References Cited in the Prosecution History of U.S. Patent No. 7,190,966 |
| E | CONFIDENTIAL Copies of Complainant InterDigital's License Agreements |
| F | Physical Sample of Nokia N75 Handset |

---

[1] Appendix C contains Patent Office records related to the last application in the line of applications leading to issuance of the '966 patent. Since the '966 patent is a continuation of the '004 patent, the Patent Office records related to the earlier applications in the line are contained in Appendix A, which is the prosecution history for the '004 patent.

[2] Because the '966 patent is a continuation of the '004 patent, Appendix D only contains copies of each reference that is cited on the face of the '966 patent or mentioned in its prosecution history, but not in the prosecution history of the '004 patent. The references cited in the prosecution history of the '004 patent are included in Appendix B.

## I.    INTRODUCTION

1.    This Complaint is filed by InterDigital Communications, LLC and InterDigital Technology Corporation (collectively referred to as "InterDigital") under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, based on the unlawful importation into the United States, the sale for importation, and the sale within the United States after importation by owners, importers, or consignees of certain 3G mobile handsets and components thereof that infringe any of United States Letters Patent Nos. 7,117,004 ("the '004 patent") and 7,190,966 ("the '966 patent") (sometimes collectively referred to as "the asserted patents").

2.    The proposed respondents are:  Nokia Corporation and Nokia Inc. (sometimes collectively referred to as "Nokia").

3.    Certified copies of the '004 and '966 patents are attached to this Complaint as Exhibits 1 and 2.  InterDigital owns all right, title, and interest in each of the asserted patents. The '004 and the '966 patent share the same recorded assignment, a certified copy of which is attached to this Complaint as Exhibit 3.

4.    An industry as required by 19 U.S.C. § 1337(a)(2) and (3) exists in the United States relating to the technology protected by the asserted patents.

5.    InterDigital seeks, as relief, an exclusion order barring from entry into the United States infringing 3G mobile handsets and components thereof imported by or on behalf of the respondents.  InterDigital also seeks, as relief, cease-and-desist orders prohibiting the sale for importation, importation, sale after importation, offer for sale, advertising, testing, the solicitation of sales, and other commercial activity relating to infringing 3G mobile handsets and components thereof.

## II.    COMPLAINANT

6.    Complainant InterDigital Communications, LLC is a Pennsylvania limited liability company with its principal place of business at 781 Third Avenue, King of Prussia, Pennsylvania 19406-1409.[3] InterDigital Technology Corporation is a Delaware corporation with its principal place of business at Hagley Building, Suite 105, 3411 Silverside Road, Concord Plaza, Wilmington, Delaware 19810-4812. InterDigital Communications, LLC and InterDigital Technology Corporation are subsidiaries of InterDigital, Inc., a Pennsylvania corporation.

7.    Since 1993, InterDigital has been engaged in the research, development, engineering, and licensing of Code Division Multiple Access ("CDMA") technology in the United States. That work later transitioned into research, development, engineering, and licensing of Wideband CDMA technology ("WCDMA"). WCDMA is one of the wireless technologies often referred to commercially as "3G."

8.    At its King of Prussia, Pennsylvania, and Melville, New York facilities, among other activities, InterDigital researches, develops, engineers, and licenses technology for 3G mobile handsets. InterDigital also files and prosecutes worldwide patent applications covering its innovative research and development of 3G mobile technology and communications protocols used in connection with that technology.

9.    InterDigital's research, development, and engineering business has developed proprietary technology that is used in most, if not all, 3G WCDMA handsets made throughout

---

[3] InterDigital Communications, LLC was previously known as InterDigital Communications Corporation, but in connection with an internal corporate reorganization, effective July 3, 2007, InterDigital Communications Corporation (a Pennsylvania corporation) became InterDigital Communications, LLC (a Pennsylvania limited liability corporation). When referring to historical events, the term "InterDigital" will include the activities of InterDigital Communications Corporation.

the world. InterDigital's technology has been licensed to significant handset manufacturers throughout the world, including, at times in the past, Nokia.

## III. PROPOSED RESPONDENTS

10.   Respondent, Nokia Corporation, is a Finnish corporation, with its principal place of business at Keilalahdentie 2-4, P.O. Box 226, FIN-00045 Nokia Group, Finland. Upon information and belief, Nokia Corporation is involved in the design, development and manufacture of 3G mobile handsets through its Mobile Phones Business Group.

11.   Respondent, Nokia Inc., is a Delaware corporation, with its principal place of business at 6000 Connection Drive, Irving, Texas 75039. Upon information and belief, Nokia Inc. (d/b/a Nokia Mobile Phones) distributes Nokia-branded handsets in the United States.

## IV. THE TECHNOLOGY AND PRODUCTS-AT-ISSUE

12.   The technology and products-at-issue concern mobile handsets for use in Third Generation or "3G" systems.

13.   The first generation of cellular systems deployed in the United States in the late 1990s was referred to as Advanced Mobile Phone Service, or "AMPS." A variety of entities proposed improvements in that system, leading to "Second Generation" or "2G" systems. Those 2G systems used either Time Division Multiple Access ("TDMA") or Code Division Multiple Access ("CDMA") technology. The drawbacks of these systems spurred further improvements, resulting in so-called "3G" systems that were first deployed in Asia and later in Europe and the United States.

14.   The components common to all 3G cellular systems include mobile devices and base stations. A mobile device can be either a portable cellular handset or a cellular PC card used in laptops. Base stations, which include towers, act as the first point of access for the

3

mobile device into the cellular system. To place a call, for example, a mobile device must first establish communication with a base station over a communication channel.

15.   In a 3G cellular CDMA system, many mobile devices share the same frequency channel in the system. This sharing of the frequency channel, while enhancing the efficiency of the system, leads to a gradual degradation of the system performance as the number of mobile devices in the system increases because signals transmitted by each mobile device in the system contribute to the overall interference in the system. It is, therefore, important to minimize the power level at which each mobile device transmits, thereby minimizing the overall interference in the system while at the same time providing an acceptable communication quality to users of mobile devices. Controlling the power transmitted from a mobile device is important, for example, when the device first attempts to establish communication with a base station, such as when a user attempts to place a call using the mobile device.

16.   In addition to minimizing the power transmitted by a mobile device as it tries to gain access to a cellular system, it is also important for the device to gain access as quickly as possible. Reducing the access time improves the performance of the system as perceived by users when, for example, they attempt to place calls.

17.   InterDigital's continuing development efforts to improve CDMA cellular systems through development of WCDMA technologies have significantly contributed to the evolution of the 3G systems.

18.   The specific products-at-issue in this Investigation are mobile handsets, as well as components thereof, that are capable of operating in 3G cellular systems. The mobile handsets at issue operate as cellular mobile telephones, allowing users of the handsets to place and receive

4

telephone calls as well as to run data applications, such as web browsing and audio and video streaming.

## V.    THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTION OF THE INVENTIONS

19.    There are two asserted patents in this Investigation: U.S. Patent No. 7,117,004 ("the '004 patent") and U.S. Patent No. 7,190,966 ("the '966 patent").

### A.    U.S. Patent No. 7,117,004

#### 1.    Identification of the Patent and Ownership by InterDigital

20.    The '004 patent, titled "Method and Subscriber Unit for Performing an Access Procedure," issued on October 3, 2006, to inventors Gary Lomp and Fatih Ozluturk. The '004 patent is based on Patent Application Serial No. 10/866,851 filed on June 14, 2004, and claims priority to an application filed on June 27, 1996.

21.    The '004 patent has 18 independent claims and 48 dependent claims. Claims 1, 2, 7-10, 14, 15, 21, 22, 24, 30-32, 34, 35, 46, 47, 49, 59, and 60 are being asserted in this Investigation.

22.    InterDigital Technology Corporation owns by assignment the entire right, title, and interest in and to the '004 patent. *See* Exhibit 3.

23.    This Complaint is accompanied by a certified copy and three copies of the prosecution history of the '004 patent and four copies of each reference cited on the face of the '004 patent or mentioned in its prosecution history. *See* Appendices A and B.

#### 2.    Non-Technical Description of the Patent

24.    The '004 patent generally covers improvements to the way a mobile device gains access to a cellular CDMA system. In a CDMA system, the signals transmitted by mobile devices contribute to the overall interference in the system. To minimize interference, it is

5

particularly important that mobile devices transmit at the minimum possible power level necessary to gain access to the system. It is also important for mobile devices to gain access to the system as quickly as possible when, for example, users attempt to place calls.

25. The improvements of the '004 patent achieve the above and other objectives. When a mobile device attempts to gain access to a cellular CDMA system, the mobile device starts transmitting short probe signals at an initial low power and gradually increases its transmission power until a base station in the system detects one of the short probe signals transmitted by the mobile device. In this fashion, the mobile device "ramps up" its transmission power until the base station hears the mobile device. Transmitting short probe signals while ramping up the power of the signals during the initial attempt to access the system enables the mobile device to gain access to the system in an efficient and rapid manner with minimal contribution to interference in the system.

26. In contrast to the power ramp up improvements of the '004 patent, prior known approaches employed a series of long signals, which included a message intended to be communicated along with a header. By repeatedly transmitting the entire long message and header, the initial power ramp up procedure introduced substantial unwanted interference into the system, and it took longer for mobile devices to gain access to the system. The additional interference caused poor system performance, including poor connections and failed call attempts. The prior approaches also resulted in longer delays for mobile devices to gain access to the system, further degrading system performance.

### 3.    Foreign Counterparts to the Patent

27. The '004 patent and its related U.S. applications have a number of foreign counterparts. Those foreign patents and applications, as well as related U.S. applications and patents, are identified in Exhibit 4.

6

### 4.    Licenses

28.    Under Commission Rule 210.12(a)(9)(iii), a list of licensed entities is attached to this Complaint as Confidential Exhibit 5.  Under Commission Rule 210.12(c)(1), three copies of the licenses are submitted with this Complaint as Confidential Appendix E.

### B.    U.S. Patent No. 7,190,966

#### 1.    Identification of the Patent and Ownership by InterDigital

29.    The '966 patent, titled "Method and Apparatus for Performing an Access Procedure," issued on March 13, 2007, to inventors Gary Lomp and Fatih Ozluturk.  The '966 patent is based on Patent Application Serial No. 11/169,490 filed on June 29, 2005, and claims priority to the same June 27, 1996 application, to which the asserted '004 patent also claims priority.  The '996 patent resulted from a continuation of the application that led to the asserted '004 patent.

30.    The '966 patent has 1 independent claim and 11 dependent claims.  Claims 1, 3, and 6-12 are being asserted in this Investigation.

31.    InterDigital Technology Corporation owns by assignment the entire right, title, and interest in and to the '966 patent.  *See* Exhibit 3.

32.    This Complaint is accompanied by a certified copy and three copies of the portion of the prosecution history of the '966 patent that is not included in Appendix A (the prosecution of the '004 patent) and four copies of each reference that was cited on the face of the '966 patent or mentioned in its prosecution history but not already included in Appendix B.  *See* Appendices C and D.

#### 2.    Non-Technical Description of the Patent

33.    The '966 patent generally covers improvements to the way a mobile device gains access to a cellular CDMA system.  In a CDMA system, the signals transmitted by mobile

7

devices contribute to the overall interference in the system. To minimize interference, it is particularly important that mobile devices transmit at the minimum possible power level necessary to gain access to the system. It is also important for mobile devices to gain access to the system as quickly as possible when, for example, users attempt to place calls.

34. The improvements of the '966 patent achieve the above and other objectives. When a mobile device attempts to gain access to a cellular CDMA system, the mobile device starts transmitting short signals at an initial low power and gradually increases its transmission power until a base station in the system detects one of the short signals transmitted by the mobile device. After the base station hears the mobile device, the mobile device then transmits to the base station a message that is longer in duration than each of the successively transmitted short signals, indicating to the base station that the mobile device wants to establish communication with the base station. In this fashion, the mobile device "ramps up" its transmission power until the base station hears the mobile device. Transmitting short signals while ramping up the power of the signals during the initial attempt to access the system enables the mobile device to gain access to the system in an efficient and rapid manner with minimal contribution to interference in the system.

35. In contrast to the power ramp up improvements of the '966 patent, prior known approaches employed a series of long signals, which included a message intended to be communicated along with a header. By repeatedly transmitting the entire long message and header, the initial power ramp up procedure introduced substantial unwanted interference into the system, and it took longer for mobile devices to gain access to the system. The additional interference caused poor system performance, including poor connections and failed call

8

attempts. The prior approaches also resulted in longer delays for mobile devices to gain access to the system, further degrading system performance.

### 3. Foreign Counterparts to the Patent

36. The '966 patent and its related U.S. applications have a number of foreign counterparts. Those foreign patents and applications, as well as related U.S. applications and patents, are the same as those identified in connection with the related '004 patent, and are identified in Exhibit 4.

### 4. Licenses

37. Pursuant to Commission Rule 210.12(a)(9)(iii), a list of licensed entities is attached to this Complaint as Confidential Exhibit 5. Pursuant to Commission Rule 210.12(c)(1), three copies of the licenses are submitted with this Complaint as Confidential Appendix E.

## VI. UNLAWFUL AND UNFAIR ACTS OF RESPONDENTS—PATENT INFRINGEMENT

38. The accused products are cellular telephone handsets capable of operating within a 3G system.

39. Generally, any of respondents' handsets capable of operating in a 3G WCDMA system are accused of infringing claims 1, 2, 7-10, 14, 15, 21, 22, 24, 30-32, 34, 35, 46, 47, 49, 59, and 60 of the '004 patent, and claims 1, 3, and 6-12 of the '966 patent.

40. In order to confirm that the accused products operate in the manner covered by the asserted patents, InterDigital has tested a selected accused product using analytical techniques that are generally accepted in the industry. The results of those analyses support the infringement allegations set forth in the claim charts accompanying this Complaint.

9

41.   On information and belief, the respondents collectively manufacture, import, and sell in the United States after importation 3G mobile handsets that infringe one or more of the asserted patents.  On information and belief, certain Nokia handsets can operate in a 3G WCDMA system.  For example, at least the Nokia N75 handset infringes one or more of the asserted patents.  The identification of a specific model is not intended to limit the scope of the Investigation, and any remedy should extend to all infringing models.

42.   A chart that applies representative claim 1 of the '004 patent to the accused Nokia N75 handset is attached to this Complaint as Exhibit 6.

43.   A chart that applies representative claim 1 of the '966 patent to the accused Nokia N75 handset is attached to this Complaint as Exhibit 7.

44.   To the extent any of the asserted claims require products sold by the respondents to be operated in a 3G WCDMA system in order to satisfy all claim elements, on information and belief, the accused products infringe both directly and indirectly.

45.   On information and belief, the respondents test or operate the accused products in the United States by using them in a 3G WCDMA system and performing the claimed methods, thereby directly infringing any claim requiring such operation.

46.   Respondents have had notice of the asserted patents since before the filing of this Complaint or, at a minimum, will receive notice of the asserted patents upon the filing of this Complaint.

47.   The accused product listed above is specifically designed to be used in a 3G WCDMA system.  When the accused products are operated in a WCDMA system, they have no substantial non-infringing use.

48.   Respondents induce infringement of the asserted claims by advertising their products as complying with the 3G WCDMA standards and being capable of operating according to those standards, by publishing manuals and promotional literature describing the operation of the accused devices in an infringing manner according to the 3G WCDMA standards, and by offering support and technical assistance to their customers that encourage use of the accused products in ways that infringe the asserted claims.

## VII.   SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE

49.   On or around May 4, 2007, representatives for InterDigital purchased several imported Nokia handsets in the United States. Exhibit 13 is a copy of a receipt for the purchase of a Nokia N75 handset, and a series of photographs of the handset and the box in which the handset was delivered. The label on the box bears a Nokia logo. The label on the inside of the handset states that the handset was made in Finland. A physical sample of the Nokia N75 handset (that was purchased as described above) is submitted with this Complaint as Appendix F.

## VIII.   HARMONIZED TARIFF SCHEDULE ITEM NUMBERS

50.   On information and belief, the Harmonized Tariff Schedule of the United States item numbers under which the infringing Nokia handsets or components thereof may be imported into the United States may be at least HTSUS 8525 and subsections thereof (including 8525.20.05, 8525.20.30, and 8525.20.90), 8527.90.40, 8527.90.95, and 8529 and subsections thereof.

## IX.   RELATED LITIGATION

51.   There has been no court or agency litigation, domestic or foreign, involving the specific unfair acts asserted in this Complaint.

52.    Nokia filed a suit in 2005 against InterDigital Communications Corporation and InterDigital Technology Corporation in the U.S. District Court for the District of Delaware seeking a declaratory judgment that a number of InterDigital patents relating to cellular telephone technology were invalid or not infringed. Neither of the asserted patents was the subject of any declaratory judgment request, and that declaratory judgment claim was dismissed by the Court. The complaint also claimed that certain of InterDigital's statements that certain of InterDigital's patents are essential to the 3G standard violated the Lanham Act. *See Nokia Corp. v. InterDigital Communications Corp.*, Civ. Action No. 05-16 (D. Del. 2005). Nokia later identified specific InterDigital patents and alleges such patents are not essential to the 3G standard. Although neither of the asserted patents was specifically identified by Nokia as allegedly not essential to the 3G standard, pursuant to a First Amended Case Management Order issued on July 9, 2007, by the Special Master in the case, Nokia may later identify additional InterDigital patents to be included in the case. Moreover, also pursuant to the First Amended Case Management Order, Nokia's attempt to take discovery on validity, infringement, and enforceability was denied, but Nokia may seek to modify this limitation after claim construction.

53.    In 2003, a dispute arose between InterDigital and Nokia concerning Nokia's royalty obligations under a Patent License Agreement. This matter was submitted to arbitration, and in mid-2005 the Arbitral Tribunal issued its award finding, among other things, that Nokia's obligation to pay certain royalties had been triggered. There was a subsequent action in the Southern District of New York confirming the Award and also a subsequent arbitration between the parties. In April 2006, the parties settled these disputes in a manner that provided Nokia with a 2G license for certain products and a release for certain 3G-related activities occurring before

the effective date of the settlement. There is no ongoing 3G license between InterDigital and Nokia.

54.   On March 23, 2007, InterDigital filed a complaint with the International Trade Commission identifying as proposed respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America LLC, and alleging infringement of the '004 patent, U.S. Patent No. 6,674,791 ("the '791 patent"), and U.S. Patent No. 6,973,579 ("the '579 patent"). The complaint requested that the Commission institute an investigation and, after determining there had been a violation of 19 U.S.C. § 1337, issue a permanent exclusion order and a permanent cease-and-desist order. An investigation was instituted on April 20, 2007, as Investigation No. 337-TA-601. On June 4, 2007, InterDigital filed an amended complaint in that investigation alleging infringement of the '966 patent. That investigation is currently in discovery.

55.   On March 23, 2007, the same day InterDigital filed the complaint in Investigation No. 337-TA-601, InterDigital filed a complaint against the same Samsung entities in the U.S. District Court for the District of Delaware alleging infringement of the '004, '791, and '579 patents. *See InterDigital Communications Corp. v. Samsung Electronics Corp., Ltd.*, Civ. Action No. 07-165 (D. Del. 2007). On May 4, 2007, InterDigital filed an amended complaint in that action alleging infringement of the '966 patent. This action in the District of Delaware has been stayed until the ITC determination in Investigation No. 337-TA-601 becomes final.

56.   On March 23, 2007, the same day InterDigital filed the complaints in Investigation No. 337-TA-601 and in the U.S. District Court for the District of Delaware, Samsung Telecommunications America LLP ("Samsung Telecom") and Samsung Electronics Co., Ltd. ("Samsung Electronics") filed a complaint against defendants InterDigital Communications

13

Corporation, InterDigital Technology Corporation, and Tantivy Communications, Inc. in the U.S. District Court for the District of Delaware. The complaint seeks damages and injunctive relief for defendants' alleged refusal to comply with their contractual obligations to be prepared to license their patents on fair, reasonable, and nondiscriminatory ("FRAND") terms. The complaint also seeks declarations that (i) InterDigital's alleged refusal to provide FRAND licenses to Samsung Telecom or Samsung Electronics constitutes an unfair business practice; (ii) Samsung Telecom and Samsung Electronics have a right to InterDigital's patents by virtue of their relationship with Qualcomm Incorporated; (iii) the claims of various InterDigital's patents are unenforceable; (iv) the claims of various InterDigital's patents are invalid; and (v) the claims of various InterDigital's patents are not infringed by Samsung Telecom or Samsung Electronics. *See Samsung Electronics Corp., Ltd. v. InterDigital Communications Corp.,* Civ. Action No. 07-167 (D. Del. 2007). Neither of the asserted patents was specifically identified in the complaint. This action has been stayed until September 14, 2007.

## X.    THE DOMESTIC INDUSTRY

57.    InterDigital has established a domestic industry under at least 19 U.S.C. § 1337(a)(3)(C).

58.    A domestic industry exists with respect to InterDigital's activities in the United States that exploit the asserted patents by reason of InterDigital's substantial investment in domestic research, development, engineering, and licensing of the WCDMA technology protected by the patents, including past and present development of the technology itself, testing of that technology and components, and technical support services to licensees. InterDigital's research activities with respect to CDMA technology date back to 1993 and continue today.

14

### A.    Investments in Research and Development, and Engineering

59.    InterDigital operates facilities in King of Prussia, Pennsylvania and Melville, New York that are used for the research and development and engineering of technology used in the 3G mobile handsets at issue and covered by the asserted patents.

60.    In 1993, InterDigital began working on research and development of a CDMA technology at its Melville, New York facility. That work later transitioned into research and development of WCDMA technology. That WCDMA technology is utilized by handsets and PC cards today, including in the accused products, and is covered by the '004 and '966 patents. In 1997, InterDigital also began working on CDMA research and development projects at its King of Prussia location. Between 1993 and 1999, InterDigital employed between 21 and 130 engineering and technical staff, associated support personnel, and management personnel in that research.

61.    The value of InterDigital's plant and equipment and the specific number of employees involved in these research and development activities are disclosed in more detail in Confidential Exhibit 14.

### B.    Investments in Licensing

62.    InterDigital has invested in personnel and resources to monitor the market, identify potential manufacturers and users of its 3G wireless technology, establish contacts with those potential manufacturers and users, provide pre-licensing technical services, negotiate licenses, conduct technology transfers, and monitor licensee compliance with the licensing program.

63.    InterDigital's 3G wireless technology licensing efforts include the '004 and '966 patents.

15

64. InterDigital's investments in intellectual property and technology licensing operations attributable to domestic industry activities exploiting the '004 and '966 patents are set forth in more detail in Confidential Exhibit 14.

## XI.    RELIEF REQUESTED

65. WHEREFORE, by reason of the foregoing, Complainant InterDigital respectfully requests that the United States International Trade Commission:

(a)    Institute an immediate Investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337(a)(1)(B)(i) and (b)(1) with respect to violations of Section 337 based upon the importation, sale for importation, and sale after importation into the United States of infringing 3G mobile handsets and components thereof that infringe one or more of the asserted claims of InterDigital's United States Letters Patent Nos. 7,117,004 or 7,190,966;

(b)    Schedule and conduct a hearing on said unlawful acts and, following said hearing;

(c)    Issue a permanent exclusion order pursuant to 19 U.S.C. § 1337(d)(1) barring from entry into the United States all infringing 3G mobile handsets and components thereof imported by or on behalf of any of the respondents;

(d)    Issue a permanent cease-and-desist order, pursuant to 19 U.S.C. § 1337(f), directing each respondent to cease and desist from importing, marketing, advertising, demonstrating, warehousing inventory for distribution, offering for sale, selling, distributing, licensing, or using 3G mobile handsets or components thereof that infringe one or more claims of the asserted patents; and

(e)    Grant such other and further relief as the Commission deems just and proper based on the facts determined by the Investigation and the authority of the Commission.

Respectfully Submitted,

Dated: August 7, 2007

Smith R. Brittingham IV
Patrick J. Coyne
Christopher P. Isaac
Lionel M. Lavenue
Houtan K. Esfahani
Elizabeth A. Niemeyer
Rajeev Gupta

FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

Counsel for Complainants
InterDigital Communications, LLC and
InterDigital Technology Corporation

## VERIFICATION OF COMPLAINT

I, Bruce G. Bernstein, declare, in accordance with 19 C.F.R. §§ 210.4 and 210.12(a), under penalty of perjury, that the following statements are true:

1. I am the Chief Intellectual Property and Licensing Officer for Complainant InterDigital Communications, LLC as well as for Complainant InterDigital Technology Corporation. I am duly authorized to sign this Complaint on behalf of both Complainants.

2. I have read the foregoing Complaint.

3. To the best of my knowledge, information, and belief, based on reasonable inquiry, the foregoing Complaint is well-founded in fact and is warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

4. The allegations and other factual contentions have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

5. The foregoing Complaint is not being filed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Executed on: August 6, 2007

Bruce G. Bernstein
Chief Intellectual Property and Licensing Officer
InterDigital Communications, LLC

Executed on: August 6, 2007

Bruce G. Bernstein
General Patent Counsel
InterDigital Technology Corporation

# EXHIBIT 9



Potter
Anderson
&Corroon LLP

David E. Moore

Attorney at Law
dmoore@potteranderson.com
302 984-6147  Direct Phone
302 658-1192  Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

August 10, 2007

**VIA EMAIL AND HAND DELIVERY**

Collins J. Seitz, Jr., Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19899

      Re:   *Nokia Corp, et al. v. InterDigital Comms., et al.*
            **C. A. No. 05-16 (JJF)**

Dear Special Master Seitz:

        I am writing to respond to Jack Blumenfeld's letter of August 10, 2007, by which Nokia seeks — yet again — to delay (or avoid entirely) submitting its contentions with respect to the March 2007 InterDigital Patents. Nokia's eleventh hour request — Nokia's *third* such request — is a baseless attempt by Nokia to shirk its obligations under the Second Discovery Order.

        First, as it did in its most recently denied request to indefinitely delay complying with the Second Discovery Order, Nokia once again does not even contend that it *cannot* comply with the Order. Nor does Nokia claim prejudice. It already has had *two months* to analyze the 26 InterDigital March 2007 Patents as they relate to Nokia's claims of non-essentiality. Indeed, had InterDigital filed the new ITC action and Delaware infringement action (the "New Actions") on Monday, August 13, 2007, Nokia would no doubt have submitted its contentions today without (further) complaint. That InterDigital happened to file these actions earlier this week has no impact on Nokia's ability or obligation to comply.

        Second, Nokia's attempt to use the filing of the New Actions as yet another excuse for delay is wholly without merit. The New Actions involve different claims than those at issue in the present Lanham Act proceeding. The New Actions allege that certain Nokia products *infringe* two of InterDigital's patents.[1] By contrast, the present Lanham Act proceeding

---

[1] Nokia references page 12 of Exhibit B to the letter, InterDigital's ITC complaint, implying that the essentiality pleadings in this proceeding are central to the ITC action. In fact, the ITC complaint simply describes as background the other litigation between the parties, as required by ITC rules.

Collins J. Seitz, Jr., Esquire
August 10, 2007
Page 2

involves claims that InterDigital has allegedly made false or misleading statements regarding the *essentiality* of its patents, and has improperly declared patents to ETSI. Pursuant to the amended Case Management Order, the present proceeding *does not* involve issues of infringement. Accordingly, there is no reason that the submission due today should be affected by the recent filing of the New Actions.

Nokia's claim of lack of access to the entire ITC filing is likewise baseless. Tellingly, Nokia does not state that anything in the confidential portions of the ITC filing somehow affects its ability to address the issue of essentiality. Nor could it. The confidential portions of the ITC filing relate solely to InterDigital's licensees, information regarding the domestic industry for the patents, and product testing reports. They have nothing to do with any issues of essentiality of the patents. Nokia's position on the alleged non-essentiality of the March 2007 Patents is developed by comparing the claims of the patents to the relevant standards, all of which is publicly available information. But even if the confidential portions of the ITC filing were somehow relevant (and they are not), Nokia still can set forth its non-essentiality contentions now and amend them later should the confidential material somehow become relevant.

Finally, Nokia suggests InterDigital is playing a "game" with respect to its request that Nokia comply with the Second Discovery Order.[2] This is not true. The only "gaming" here is Nokia's third and baseless attempt to avoid its discovery obligations in this case. The ITC filing has nothing to do with those obligations. Nokia should be ordered, once again, to comply.

InterDigital does not believe that a telephone conference is necessary to resolve this issue. However, if such a conference is deemed appropriate, counsel for InterDigital is available to speak this afternoon.

Respectfully submitted,

David E. Moore

812038 / 28840

cc:    Counsel of Record (via electronic mail)

---

[2] Nokia separately suggests that the fact that it is in the process of choosing counsel in the New Actions is somehow relevant. Nokia does not even attempt to explain how this decision affects in any way its obligations to respond to discovery in the current proceeding. Whether or not Nokia uses the same or different counsel in a different proceeding has no bearing on its requirement to comply with discovery requirements in this matter.

# EXHIBIT 10

| From: | Moore, David E. [dmoore@potteranderson.com] |
|---|---|
| Sent: | Friday, August 10, 2007 2:41 PM |
| To: | Heaney, Julie |
| Cc: | Horwitz, Richard L.; Blumenfeld, Jack |
| **Subject:** | Nokia IDC Litigation |

Julie:

We think your position is unsound. But given the fact that you have sought relief from Special Master Seitz and he has not yet ruled, we, as a compromise, will allow you to defer responding with respect to the two patents that are the subject of the new actions until Special Master Seitz rules on your request.

We expect to receive your response on the other 24 patents today.

Dave

Potter
Anderson
Corroon LLP

**David E. Moore**
Attorney at Law
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
302 984 6147 Direct Dial
302 658 1192 Fax
dmoore@potteranderson.com
www.potteranderson.com

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed herein.

THIS ELECTRONIC MAIL TRANSMISSION AND ANY ATTACHMENTS MAY CONTAIN PRIVILEGED, CONFIDENTIAL, OR PROPRIETARY INFORMATION INTENDED ONLY FOR THE PERSON(S) NAMED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE AUTHORIZED REPRESENTATIVE OF THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISTRIBUTION, COPYING, OR DISCLOSURE OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

# EXHIBIT 11

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 12

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


NOKIA CORPORATION and NOKIA, INC.,       )
                                         )
                         Plaintiffs,     )
                                         )   Civil Action
            v.                           )     No. 05-16
                                         )      (JJF)
INTERDIGITAL COMMUNICATIONS              )
CORPORATION and INTERDIGITAL             )
TECHNOLOGY CORPORATION,                  )
                                         )
                         Defendants.     )


        Special Master Teleconference taken at the
law offices of Connolly Bove Lodge & Hutz, LLP,
1007 North Orange Street, Tenth Floor, Wilmington,
Delaware, beginning at 3:00 p.m. on Monday,
August 20, 2007, before Kathleen White Palmer,
Registered Merit Reporter and Notary Public.


BEFORE:  COLLINS J. SEITZ, JR., ESQUIRE
         Special Master


APPEARANCES:


         JULIE HEANEY, ESQUIRE
         MORRIS, NICHOLS, ARSHT & TUNNELL
            1201 North Market Street - 18th Floor
            Wilmington, Delaware  19801
                    -and-

----------------------------------------------------
                  WILCOX & FETZER
    1330 King Street - Wilmington, Delaware 19801
                  (302) 655-0477

                  www.wilfet.com

2

```
 1   APPEARANCES (Continued):

 2

 3            PATRICK J. FLINN, ESQUIRE
              ALSTON & BIRD, LLP
 4              One Atlantic Center
                1201 West Peachtree Street
 5               Atlanta, Georgia   30309-3424
                 for the Plaintiffs
 6
              RICHARD L. HORWITZ, ESQUIRE
 7            POTTER ANDERSON & CORROON LLP
                1313 North Market Street
 8               Hercules Plaza - Sixth Floor
                Wilmington, Delaware  19801
 9                     -and-
              RON E. SHULMAN, ESQUIRE
10            MICHAEL B. LEVIN, ESQUIRE
              WILSON SONSINI GOODRICH & ROSATI
11              650 Page Mill Road
                Palo Alto, California   94304
12                     -and-
              CHRISTOPHER P. ISAAC, ESQUIRE
13            FINNEGAN HENDERSON FARABOW
              GARRETT & DUNNER LLP
14              Two Freedom Square
                11955 Freedom Drive
15              Reston, Virginia   20190-5675
                for the Defendants
16

17
     ALSO PRESENT:
18

19            ANDREW G. ISZTWAN, ESQUIRE
              InterDigital Communications
20              781 Third Avenue
                King of Prussia, Pennsylvania  19046-1409
21

22

23                  - - - - -

24
```

3

1          MS. HEANEY:  Julie Heaney from Morris

2   Nichols and Patrick Flinn is on from Alston & Bird.

3          SPECIAL MASTER SEITZ:  Okay.  Welcome.

4   Good afternoon.

5          And for InterDigital?

6          MR. HORWITZ:  It's Rich Horwitz, and with

7   me is Ron Shulman, Mike Levin, Chris Isaac, and Andy

8   Isztwan from InterDigital.

9          MR. FLINN:  Good afternoon, everyone, and

10  thank you.  We are on the record now.

11          Mr. Flinn or Ms. Heaney, I believe it's

12  your request.

13          MR. FLINN:  This is Patrick Flinn,

14  Mr. Seitz.

15          Yes, this is our request with respect to

16  two of the 26 patents that were the subject of a

17  submission to ETSI in March of 2007.  As I'm sure you

18  recall, these 26 patents were the subject of two

19  requests by Nokia not to have them included in the

20  materials we are presently submitting regarding

21  contentions in discovery.

22          On those two occasions, at InterDigital's

23  urging, you overruled our objections and said we

24  should go ahead and provide contentions regarding the

4

1   essentiality of those 26 patents.

2        Some days, literally a couple of days after

3   they last asked you to require us to submit

4   contentions on these patents -- and one of the

5   reasons, ironically, they gave you why we should do

6   this was because they were afraid of multiple

7   litigation -- they filed two actions, one in the ITC,

8   and the other one in District Court in Delaware

9   accusing Nokia of infringing those two patents.

10       With that information, we had asked for

11  relief from your order with respect to those two

12  patents given the fact that we don't know yet where

13  the litigation over these two patents ought to take

14  place:  in this case; in the new case they have filed,

15  which, according to my most recent understanding, was

16  assigned to Judge Robinson; or the case that they

17  filed in the ITC.

18       We think that it is appropriate for

19  contentions regarding these two patents to wait until

20  we find out in which forum they are going to be

21  litigated in the first instance to avoid prejudice as

22  a result of leveraging statements in one patent into

23  another lawsuit, and as a result of the need to move

24  resources in consideration of these patents.

5

1          I would note just a couple of things, one

2     of which is, as I'm sure, Mr. Seitz, you are aware,

3     when an action is filed in the ITC, a respondent, the

4     named respondent is entitled to a stay of infringement

5     litigation of those patents in a District Court action

6     while the ITC matter is proceeding.

7          It is ironic that while they are not

8     entitled to proceed with an infringement litigation

9     that somehow they could get around that by the

10    mechanism that they have used here.

11         My final comment is simply that there's no

12    prejudice in any meaningful way to InterDigital from

13    the relief that we are requesting.  It is not as if we

14    are running out of patents to litigate in the current

15    proceeding that we have in front of us.  There is

16    plenty of work to do on all the other patents.  And if

17    we set these two patents aside for the time being

18    until the proper forum is sorted out, I think no one

19    will be harmed.

20         SPECIAL MASTER SEITZ:  So, Mr. Flinn, the

21    suit that was recently filed by InterDigital, that is

22    a patent infringement action as opposed to a Lanham

23    Act action?  Do I have that correct?

24         MR. FLINN:  That's correct.  It is a patent

6

1    infringement action accusing us of infringing these

2    two patents.

3            SPECIAL MASTER SEITZ:  Explain to me again,

4    because I'm not sure I completely understand, how

5    Nokia is prejudiced by having to fulfill its discovery

6    obligations in the Lanham Act case for these two

7    patents.

8            MR. FLINN:  The issue is two-fold.  The

9    first is there is statutorily recognized prejudice

10   from having to proceed on the same patents in the

11   District Court and in the ITC.

12           SPECIAL MASTER SEITZ:  But it's a different

13   claim.

14           MR. FLINN:  It is a different claim but the

15   same issues are present.  As we have pointed out in

16   the past, our Lanham Act case is not limited merely to

17   the question of whether or not the patents are

18   essential.  Our claim arises from the assertion that

19   InterDigital has made publicly that Nokia and others

20   owe it money for the right to use these patents.

21           SPECIAL MASTER SEITZ:  I understand the

22   overlap in issues, Mr. Flinn.  Do you have any

23   authority for the proposition that where related

24   issues are raised that the ITC proceeding and the stay

1   that might accompany it should apply in a case like

2   this?

3           MR. FLINN:   I don't think that anybody has

4   ever attempted to do what InterDigital has done in

5   this case.

6           The argument I raise based on the ITC

7   statute is premised on the policy underlying it.   I

8   don't think that there is any direct precedent in

9   which the patents were being litigated in a Lanham Act

10  case, and where then someone filed an ITC action at

11  the same time.

12          But the statute provides for a mandatory

13  stay if requested by the responding party and a

14  discretionary stay to stay other aspects of it, as

15  necessary, and I think that the policy underlying

16  those provisions are applicable here.

17          But the larger issue is that InterDigital

18  would love to be able to get discovery now on these

19  patents when it's not entitled to that discovery as

20  yet in either of the two proceedings in which those

21  two proceedings and how they are governed and where

22  they will be governed are going to be decided by other

23  judges.

24          Given the fact that the proper location for

8

1    these three patents has not been decided yet, it will

2    have to be decided.  I don't think that there's a

3    reasonable scenario that contemplates the scope and

4    validity of these patents being litigated in this case

5    or in another case at the same time.  That makes no

6    sense at all.

7              If that's going to be the case, we ought to

8    figure out which court they are going to be in so we

9    don't avoid duplication of discovery and we don't

10   avoid the situation in which they are able to take the

11   discovery in this case and leverage it for use in the

12   other proceedings where they are not entitled to

13   discovery.

14             SPECIAL MASTER SEITZ:  Okay.

15             Mr. Shulman, are you speaking?

16             MR. SHULMAN:  Yes, sir, I am, or will be

17   shortly here.  Let me start out where Mr. Flinn left

18   off.

19             The scope and validity of the patents are

20   not at issue in this case.  You have already ruled

21   that infringement, validity, enforceability are not

22   the issues to be discovered in this case, but rather

23   whether or not the patents are essential to the

24   standard.

1          The issue of essentiality that's present in

2    the case that we are before you on today is not at

3    issue in the ITC case and is not at issue in the

4    companion District Court case that is pending before

5    Judge Robinson.  Essentiality has nothing to do with

6    infringement.  Either they infringe or they don't, and

7    that's a particular product that infringes and that

8    product is not at issue in the case that brings us

9    here together today.

10          With respect to taking positions on

11   essentiality, once again, that has nothing to do with

12   the way that their product operates.  We are going to

13   address that in the ITC case and/or the District Court

14   action.

15          Here they simply look at the standard which

16   is applicably available information, compare the

17   standards of the patent, and take a position one way

18   or the other as to whether or not they believe that

19   the patent is or is not essential.

20          So there is no direct overlap whatsoever

21   between the issues to be litigated in the ITC and the

22   recently filed District Court action and the issues to

23   be litigated in the present case.  In this case there

24   are no contentions about infringement.  There are none

1    about validity.  There are none about enforceability.

2    Those will be the three issues that get litigated in

3    the ITC case and in the District Court action.

4             So I don't see why there is any reason for

5    them not to take a position.  In fact, they've already

6    taken the position when they gave us their contentions

7    on the other 24 patents.  That document contained

8    their contentions on these two patents because they

9    perfectly well formulated them.  They just masked it

10   out.  So the work is done.

11            Insofar as inconsistent positions are

12   concerned or how we might leverage it, we have a

13   protective order here that allows us to use the

14   information in the manner that is prescribed by the

15   protective order and we intend to abide by that.

16            So this notion that we are somehow going to

17   improperly take discovery that was obtained in this

18   case and use it contrary to however the protective

19   order allows us to use it is just nonsense.

20            So I don't see, going back to the original

21   question that you put to Mr. Flinn, what prejudice are

22   they going to suffer, he hasn't articulated any

23   because there is none.  They have already formulated

24   their positions.  We can go forward.  If they want to

11

1   stay the District Court action, which is their option,

2   not our option, they are perfectly free to do so.

3           With respect to the insinuation both in the

4   letter to you and in today's comments that somehow we

5   were playing games here, had we filed suit in the ITC

6   and in the District Court two days after instead of

7   two days before the contentions were due, we'd have

8   the contentions and there would be no issue about it.

9   The fact that we did it earlier rather than later gave

10  them more information, not less information.

11          So I don't see any prejudice here.  I don't

12  see any reason to derail what has already been argued

13  three times here; namely, they have to respond on

14  these patents and they should be ordered to do so and

15  they can do it in a heartbeat.  All they have to do is

16  unmask the portions of the work they've already

17  generated.

18          SPECIAL MASTER SEITZ:  Mr. Flinn?

19          MR. FLINN:  A couple of responses.

20          Let me be crystal clear about one issue

21  because I think Mr. Shulman and I see this quite

22  differently.

23          Mr. Shulman says that this case has got

24  nothing to do with the validity of the patents or

12

1    their scope and it says that you have so ruled.

2         Mr. Seitz, with all due respect, you have

3    made rulings with regard to what may be proper subject

4    of discovery, but I don't think there is or can be any

5    legitimate dispute as to the breadth of the

6    allegations that we have made in our first amended

7    complaint and the issues that are tendered to

8    Judge Farnan for resolution.

9         Now, whether or not they want to convince

10   Judge Farnan not to consider these issues does not

11   mean that they are not in the case.  Whether they

12   are -- whether the validity of the patent is currently

13   a subject of discovery under a discovery management

14   plan that they have asked you to implement, again,

15   does not mean that those issues are not to be

16   adjudicated in this case.

17        The other thing that Mr. Shulman said that

18   I think is quite important is his suggestion that

19   there is no connection whatsoever between the

20   essentiality of the patents and their infringement.

21        That is, I don't think, really a

22   sustainable position under much scrutiny at all.  Why

23   would anyone claim that they are essential under any

24   definition of essential if it doesn't mean that you're

13

1   contending that if you comply with the standard that

2   that somehow is connected to your infringement of the

3   patents?

4           If we need any more evidence that there is

5   at least some relationship between infringement and

6   essentiality, you can look to the claims charts that

7   InterDigital submitted to the ITC.

8           If essentiality were completely unrelated

9   to the question of infringement, InterDigital would

10  have said nothing about the standards in its

11  submission to the ITC, but no.  In its claims charts

12  it specifically attempted to read the patents onto the

13  standard.

14          Indeed, if you read their complaint

15  carefully, one of the things that they are trying to

16  get out of the ITC is a ruling not just that Nokia's

17  products currently manufactured in compliance with the

18  standard infringe, but they are going to seek a

19  ruling, and certainly they are complained to use of

20  this, that all standards-compliant products infringe

21  and, thus, joining the issue of essentiality and

22  infringement very closely, which explains the leverage

23  that they are trying to get out of using this

24  proceeding to get discovery that they are not

14

1    necessarily entitled to in the ITC or in their

2    District Court action.

3              It is not the work involved.  It is the

4    prejudice of having to litigate on two or three fronts

5    at the same time that is the prejudice here.  It is,

6    again, I think without reasonable doubt that the scope

7    of the patents and their validity is raised in all

8    three proceedings.

9              SPECIAL MASTER SEITZ:  Mr. Shulman, when

10   you talked about the protective order, does it have

11   one of those provisions in it that talks about the

12   evidence only being used for purposes of this

13   particular proceeding?

14             MR. SHULMAN:  I don't have it before me, so

15   I can't say unequivocally that the answer is yes, but

16   I believe it does.  Maybe somebody else on the line

17   can respond to that.

18             SPECIAL MASTER SEITZ:  Well, or maybe you

19   can just make a commitment or a representation.

20             Is what you are offering is to only use the

21   information for purposes of this proceeding?  I mean,

22   the typical protective order language is such that you

23   can only use it for purposes of the pending

24   proceeding.

1          So obviously relief can be sought from

2    that, but as I interpreted those provisions in the

3    past, it basically means that what happens in one case

4    can't be used in another case absent an amendment of a

5    protective order by the Court.

6          MR. SHULMAN:  I am not actually

7    representing InterDigital in the ITC matter, but

8    counsel on the line is, and so I will defer to them on

9    that.  But I believe that the protective order has

10   that provision and, you know, we can certainly

11   double-check, but certainly that was my intention.

12         SPECIAL MASTER SEITZ:  That's why I'm just

13   trying to circle back to why you raised the protective

14   order issue in the first place.

15         MR. SHULMAN:  Yes, because I believe that

16   it has this provision in it that says thou shalt only

17   use stuff in this case and this case only because they

18   typically all do, and so this notion that we are

19   somehow gaining an unfair advantage wouldn't make any

20   sense.

21         If the protective order doesn't have that

22   provision, that may be a different story, but I

23   believe that it doesn't.  I don't know.  Maybe

24   somebody is looking it up while we are speaking on

1    this matter.

2                SPECIAL MASTER SEITZ:   Okay.

3                MR. FLINN:   Let me respond to the

4    protective order very briefly because I don't think

5    that it cures any of the problems.

6                First of all, it doesn't cure the problem

7    that we should not be forced to litigate these same

8    patents on the same issues on multiple be fronts.

9                Secondly, there is no guarantee that either

10   Judge Robinson or the ITC would find this protective

11   order to be any particular barrier.  All it takes is

12   an order requiring Nokia to produce to them what we've

13   said in this case, and there is nothing we can do

14   about that.  We would be required to comply with that

15   order or face the sanctions that could be imposed by

16   either Judge Robinson or the ITC.

17               Secondly, this is a bell that cannot be

18   unrung.  Once InterDigital uses this lawsuit to

19   leverage information out of this, they can't forget

20   the information and the same counsel who are here on

21   the pleadings on this case and with entitlement to

22   access to it can have and will have access to it and

23   they can't forget it and put it out of their minds

24   when they are in front of the ITC.

1          The issue is that at some point, some group

2    of people between Judge Farnan, Judge Robinson, and

3    the ITC are going to figure out where these patents

4    belong.  Until that happens, there is no reason to

5    proceed with forcing Nokia to produce discovery on

6    these patents or, frankly, InterDigital from doing

7    discovery on these patents until that issue is sorted

8    out.

9          MR. SHULMAN:  There's not going to be a

10   meeting of three judges.  It never happens in the

11   history of jurisprudence as far as I know.  I mean,

12   cases proceed on the basis that they proceed.  We are

13   allowed to bring an action in the ITC and a companion

14   case in the District Court.

15          The fact that they chose to pick a fight

16   with us earlier that happens to overlap in some sense

17   is not our problem.  We are allowed to proceed in a

18   manner we want to proceed.

19          They can stay the District Court action if

20   they choose to.  It's their right to do that.  We

21   don't have the right to do that.  They have the right

22   to do that.

23          Then they will be proceeding with respect

24   to particular accused products in the ITC on the issue

18

1   of infringement, and we will proceed in this case on

2   the Lanham Act claims which have nothing to do with

3   infringement because there's no product at issue here.

4   It's strictly a comparison between what the standard

5   says and what the patent claims look like.

6              MR. FLINN:  Again, Mr. Shulman's narrow

7   view of our complaint simply can't be reconciled with

8   the plain allegations in it.

9              But more to the point, it is not a given in

10  my mind that the ITC action is going to be the one

11  that proceeds.  Maybe it will.  It's not a given in my

12  mind that the action in front of Judge Robinson won't

13  proceed.  It may be that it does.

14             But the point is you have all three of them

15  in this case, and there is no compelling reason why

16  out of the nearly 300 or more patents that are at

17  issue in this case, for some reason there is a

18  burning, pressing need to get discovery on these two

19  patents.

20             In fact, the fact that InterDigital is so

21  hot and insistent on all the patents getting discovery

22  on these two suggest that there is some reason why

23  they need to get our contentions on these patents

24  forthwith.

19

```
 1          SPECIAL MASTER SEITZ:  But, Mr. Flinn, as

 2   Mr. Shulman said, what if they waited a week and then

 3   filed a suit?  Would you be making the same arguments?

 4   I mean, with all due respect, I have to say it's

 5   somewhat of a "So what?"  If they had waited a week,

 6   this wouldn't have even mattered; right?

 7          MR. FLINN:  I don't know what their timing

 8   was.  I don't know if it was entirely voluntary on

 9   their part because I don't know what the ITC made them

10   do when they did it.

11          So it's not entirely clear to me that they

12   were doing us a big favor by doing this earlier.  It

13   may well be that they intended to spring a trap and

14   they just weren't able to.

15          But even if they weren't compelled to make

16   this disclosure earlier than they wanted to, had they,

17   in fact, attempted to do this, the relief we would

18   have sought in that instance might well have been much

19   more significant with respect to preserving our rights

20   here, including whether or not the counsel who

21   attempted to close the track should be able to

22   participate in the other litigations where they would

23   not be entitled to have this information.

24          It may well have been that counsel's
```

1    calculation about risks and benefits springing the

2    trap were such that they elected to not risk springing

3    the trap because they didn't want to risk being

4    disqualified by this maneuver, particularly when they

5    knew this was all going to happen when they were

6    asking you to make us provide this discovery.

7            They are faced with a protective order that

8    said they are not supposed to be used in other cases,

9    and that may well have been part of their calculation.

10           MR. SHULMAN:  Special Master Seitz, this is

11   Rich Horwitz.  I want to complete the record on the

12   protective order.

13           I'm not going to get into the discussions

14   about whether there was a trap or not.  I think that

15   you asked the right question and I'm not sure if it

16   was even answered.

17           But paragraph 20 of the protective order

18   says:  "Subject to paragraph 2 above, confidential and

19   attorneys'-eyes-only information shall be held in

20   confidence by each person to whom it is disclosed,

21   shall be used only for purposes of this litigation,

22   should not be used for any other purpose, suit,

23   arbitration, or legal proceeding, and shall not be

24   disclosed to any person who is not entitled to receive

21

1    such information as herein provided.

2              "All produced confidential and

3    attorneys'-eyes-only information shall be carefully

4    maintained so as to preclude access by persons who are

5    not entitled to receive such information."

6              SPECIAL MASTER SEITZ:  And the "subject to"

7    language in 2(a), does that change that result at all?

8              MR. LAWSON:  Your Honor, this is Mr. Lawson

9    for Nokia.

10             It does.  The first sentence of paragraph 2

11   of the protective order says:  "By entering the order

12   and limiting disclosure of information in this case,

13   the Court does not intend to preclude another court

14   from finding that the information may be relevant and

15   subject to disclosure in another case."

16             MR. SHULMAN:  Ron Shulman.

17             Of course, that's always true.  If one

18   Court orders you to do something, you got to do it.

19   But the point is:  You can't voluntarily make use of

20   it.

21             SPECIAL MASTER SEITZ:  Okay.  Your

22   arguments have been helpful.  Here's my ruling.

23             It's my view that there are different

24   claims pending in the case that has been proceeding

22

1    here in the District of Delaware; namely, Lanham Act

2    claims versus the patent infringement claims which

3    have been brought by InterDigital against Nokia on the

4    two patents and are also the subject of ITC

5    proceedings.

6              Although the issues may overlap to some

7    degree, the claims are different and this litigation

8    has been proceeding apace for some time under the

9    understanding that we are going to get discovery

10    completed in a timely fashion for all patents that so

11    far have been made part of these proceedings and,

12    therefore, in my opinion, it does not warrant

13    excluding these two patents even though they were part

14    of the March 2007 submissions.

15              Again, I want to emphasize, this case has

16    been pending for some time and has been moving apace,

17    and I don't want to see discovery bifurcated for two

18    of the patents while the litigation proceeds towards

19    the close of discovery and to trial.

20              There has been mention, although I'm not

21    relying on it exclusively, of the protective order

22    provision which deals with using the information only

23    for purposes of this litigation.

24              Now that we have had this telephone

23

1    conference and I am making my ruling in this case,

2    obviously there's a heightened concern about sharing

3    information, and I would think that Nokia could bring

4    this to the attention of the District Court when and

5    if appropriate if there is an application made to

6    deviate from the language of the protective order.

7              Finally, I find that there really is no

8    real prejudice to Nokia in providing the information

9    on two patents out of a number of patents.  We are in

10   discovery as opposed to another phase of the

11   litigation as Mr. Flinn pointed out.

12             So although, as he said, there might be

13   prejudice in, quote, litigating the patents, the view

14   I have right now is that we are only in discovery.

15   The issues relate primarily, although not exclusively,

16   to the essentiality determinations.  Therefore, Nokia

17   will not be prejudiced providing this information on

18   the two patents.

19             So it's my ruling and recommendation that

20   the information be provided.  This transcript will act

21   as the formal order entered by me, so if there are

22   exceptions taken from it, follow the local rules for

23   taking exceptions.

24             Is there anything else I can help you with

24

1    today?

2            MR. FLINN:  This is Patrick Flinn,

3    Mr. Seitz.

4            In discussions with my client about seeking

5    review by Judge Farnan from this order, and to the

6    extent necessary, we would be asking Judge Farnan to

7    stay this aspect of the order until he can review it.

8            In many instances, and this is probably one

9    of them, that application has to be first made to you

10   before we can make it to Judge Farnan.

11           So what I would ask is if you would agree

12   to stay the application of this order pending our

13   appeal of it to Judge Farnan.

14           SPECIAL MASTER SEITZ:  I will.  The order

15   is stayed pending your opportunity to have my

16   recommendation reviewed by Judge Farnan.

17           Do you want to fix a date by when you'll

18   decide so that we can get this closed off, Mr. Flinn?

19           MR. FLINN:  We will certainly decide

20   whether to take the appeal by this Friday.

21           SPECIAL MASTER SEITZ:  Okay.  Let's set

22   Friday as the deadline for filing any exceptions to

23   this ruling.

24           I was curious, also, to see that the case

25

1    was assigned to Judge Robinson, the InterDigital new

2    case.  Did counsel for InterDigital put on the civil

3    cover sheet that this was a related proceeding to the

4    pending proceeding or not?

5              MR. SHULMAN:  Yes.  Notice of related case

6    was actually filed by Nokia, I believe, and we joined

7    in.  But, you know, the inner workings of the court,

8    who knows what happened?

9              SPECIAL MASTER SEITZ:  Okay.  Just very

10   curious.

11             MR. SHULMAN:  There is one other issue we

12   wanted to raise with you if you have just another

13   minute or two.

14             SPECIAL MASTER SEITZ:  Yes.

15             MR. SHULMAN:  We were just wondering,

16   Judge Farnan hasn't entered or signed that other

17   scheduling order.

18             SPECIAL MASTER SEITZ:  Yes.

19             MR. SHULMAN:  I don't know if there's an

20   issue that he needs us to address or what the status

21   is, but we wanted to inquire to see if perhaps you

22   knew if there was something else we needed to do to

23   move that along.

24             SPECIAL MASTER SEITZ:  I'll inquire of the

26

1    Court and see if there are any issues.  Okay?

2            MR. SHULMAN:  Okay.

3            SPECIAL MASTER SEITZ:  Mr. Flinn, anything

4    else?

5            MR. FLINN:  No.  That is it from our side.

6            SPECIAL MASTER SEITZ:  Okay.

7            Mr. Shulman?

8            MR. SHULMAN:  No.  That's it.  Thank you.

9            SPECIAL MASTER SEITZ:  Okay.  Thank you

10   very much.

11           ALL:  Thank you.

12           (The hearing was then concluded at

13   3:30 p.m.)

14                   - - - - -

15

16

17

18

19

20

21

22

23

24

27

```
 1    State of Delaware      )
                             )
 2    County of New Castle )

 3

 4
                    C E R T I F I C A T E
 5

 6
              I, Kathleen White Palmer, Registered
 7    Professional Reporter and Notary Public, do hereby
      certify that the foregoing record, pages 1 to 27,
 8    inclusive, is a true and accurate transcript of my
      stenographic notes taken on Monday, August 20, 2007,
 9    in the above-captioned matter.

10            IN WITNESS WHEREOF, I have hereunto set my
      hand and seal this 20th day of August, 2007, in New
11    Castle County.

12

13                              _____
                        KATHLEEN WHITE PALMER, RMR, CSR, CLR
14                      Certification No. 149-RPR
                        (Expires January 31, 2008)
15

16

17

18

19

20

21

22

23

24
```