IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOKIA CORPORATION and NOKIA INC., | |
| Plaintiffs, | |
| v. | C.A. No. 05-16 (JJF) |
| INTERDIGITAL COMMUNICATIONS CORPORATION and INTERDIGITAL TECHNOLOGY CORPORATION, | **PUBLIC VERSION** |
| Defendants. | |

## PLAINTIFFS' OPENING BRIEF IN SUPPORT OF MOTION FOR MANDATORY STAY PURSUANT TO 28 U.S.C. § 1659(a)

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com

*Attorneys for Plaintiffs*

*Of Counsel*:

Patrick Flinn
Randall Allen
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000

Original Filing Date: October 5, 2007

Redacted Filing Date: October 11, 2007

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ..................................................................1

SUMMARY OF THE ARGUMENT ..........................................................................................3

STATEMENT OF FACTS ........................................................................................................4

ARGUMENT ...........................................................................................................................11

I.     THE STATUTE MANDATES A STAY OF CLAIMS THAT HAVE ANY
ISSUES IN COMMON WITH AN ITC PROCEEDING............................................11

II.    THERE ARE OVERLAPPING ISSUES IN THIS CASE. .........................................14

     A.  The "Essentiality" Issue Is Common to Both Cases and Requires a Stay of
all Claims in this Case.....................................................................................14

     B.  The Other Common Issues With the Three Patents Also Mandate a Stay. ...........15

     C.  This Court Should Use Its Discretion to Stay Any Portions of the Case Not
Otherwise Subject to the Mandatory Stay. .........................................................17

CONCLUSION........................................................................................................................19

# TABLE OF AUTHORITIES

CASES

*Amkor Tech. , Inc. v. Carsem (M) SDN BHD,*
   No. 03-5116 MMC, 2004 WL 3237542 ................................................................ 12-13

*Broadcom Corp. v. Qualcomm Inc.,*
   No. 06-4292, 2007 WL 2475874 (3d Cir. Sept. 4, 2007) ...................................... 14

*Cellco P'ship v. Broadcom Corp.,*
   227 F. App'x. 889 (Fed. Cir. 2007) ....................................................................... 12

*Cost Bros., Inc. v. Travelers Indemnity Co.,*
   760 F.2d 58 (3d Cir. 1985) ...................................................................................... 17

*Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.,*
   No. 5:05CV156, 2005 WL 1126750 (N.D. Ohio Apr. 29, 2005) ..................... 13, 19

*In re Princo Corp.,*
   478 F.3d 1345 (Fed. Cir. 2007) .............................................................................. 12

*InterDigital Communications, LLC, et al v. Nokia Corp., et al.,*
   No. 1:07-cv-00489-SLR ............................................................................................ 2

*Landis v. N. Am. Co.,*
   299 U.S. 248 (1936) ................................................................................................. 17

*Micron Tech., Inc. v. Mosel Vitelic Corp., Inc.,*
   No. CIV 98-0293-S-LMB, 1999 WL 458168 (D. Idaho Mar. 31, 1999) .............. 13

*Pegasus Dev. Corp. v. DirecTV, Inc.,*
   C.A. No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003) ................. 17

*Thomson Licensing S.A. v. Benq Corp.,*
   No. 3:05-CV-01005-JSW, 2005 WL 1039030 (E.D. Cal. May 4, 2005) ................ 12

*Verve, LLC v. Verifone, Inc.,*
   No. C04-03659JF, 2004 WL 2600452 (N.D. Cal. Nov. 15, 2004) .................... 12, 19

*Xerox Corp. v. 3Com Corp.,*
   69 F. Supp. 2d 404 (W.D.N.Y.1999) ...................................................................... 17

## <u>TABLE OF AUTHORITIES, cont'd</u>

**STATUTES**

19 U.S.C. § 1337 ..................................................................................................9

19 U.S.C. § 1337(a)(1)(A)(i) ...............................................................................9

28 U.S.C. § 1659(a) ......................................................................................*Passim*


**OTHER AUTHORITIES**

H.R. Rep. 103-826(I), (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3773 .....................................12

## NATURE AND STAGE OF THE PROCEEDINGS

In this case, each side accuses the other of engaging in acts of unfair competition arising from declarations of essentiality of patents to the European Telecommunications Standards Institute ("ETSI"). Plaintiffs Nokia Corp. and Nokia Inc. (collectively, "Nokia") have further alleged that defendants InterDigital Communications Corp. and InterDigital Technology Corp. (collectively, "InterDigital") have made false statements about the validity and scope of certain of InterDigital's patents.

In an amended complaint filed in January, 2007, Nokia sought broad equitable and declaratory relief with respect to the InterDigital patent portfolio, and challenged InterDigital's public statements that manufacturers of phones compliant with ETSI's Universal Mobile Telecommunications System ("UMTS") standard[1] were required to pay InterDigital substantial sums of money due to the alleged essentiality of several hundred patents. Nokia's Amended Complaint alleges that the industry does not owe InterDigital any money for these patents because they are alternatively (a) not essential, (b) invalid, (c) already licensed to the industry, or (d) applicable to a portion of the UMTS standard not implemented by commercial carriers. In response to the Amended Complaint, InterDigital filed what it claimed was a "mirror image" of the Nokia complaint.

In March, 2007, InterDigital replaced the counsel that had been representing it since 2005 in the case. New counsel, after requesting a delay of nearly two months to learn about the case, asked the Special Master to enter an order managing discovery. A Case Management Order ("CMO") prepared by the Special Master was entered by the Court on August 29, 2007 (D.I. 214). No depositions or new, non-trivial document discovery took place

---

[1]     UMTS is a Third Generation (or "3G") standard, following the first analog-based cell phone standard ("1G") and the first digital standards ("2G").

between the time InterDigital replaced its counsel and the entry of this Order. InterDigital refused to produce patent-related documents during this period or to make any inventors available for deposition and, to date, still has not provided any such discovery.

As part of the CMO, Nokia was required, over its objections, to state contentions regarding 24 InterDigital patents that had not been declared to ETSI when Nokia's Amended Complaint was filed. On August 7, 2007, just prior to the date Nokia was required to submit these contentions, InterDigital filed a complaint with the International Trade Commission ("ITC"), asserting that Nokia infringed two of those 24 new patents. On September 5, 2007, the ITC agreed to conduct an investigation based on InterDigital's complaint. For reasons explained in more detail below, InterDigital felt it necessary to specifically allege that these two patents were essential to the practice of the UMTS standard.[2]

InterDigital also filed a complaint against Nokia for infringement of those two patents in this Court, but failed to mark it as a related case to this one, as required by D. Del. LR 3.1(b).[3]

Because InterDigital had insisted on litigating the same two patents in three different cases, Nokia asked the Special Master to delay requiring Nokia to provide contentions regarding these two patents until the correct forum was resolved. During an August 20, 2007 teleconference, the Special Master refused, but stayed that order pending Nokia's appeal of that decision. ███████████████████████████████████████████████

---

[2]    As shown below, to sue in the ITC, a patent owner must plead and prove more than infringement of a valid patent. A patent owner must prove the existence of a domestic industry that practices the accused invention. InterDigital makes no products and principally seeks patent license fees. Accordingly, it appears as if InterDigital is counting on proving essentiality as the basis for its domestic industry case.

[3]    That case, *InterDigital Communications, LLC, et al v. Nokia Corp., et al.*, C.A. No. 07-489-SLR, is currently assigned to Judge Robinson.

On September 27, 2007, this Court affirmed the Special Master's decision to require Nokia to submit contentions regarding the scope of the two ITC patents in this proceeding (D.I. 220). The next day, September 28, 2007, InterDigital sought leave in the ITC to add a third patent to the case, and filed an amended complaint in its infringement case in this Court. This new patent, U.S. Patent Number 6,973,579 (the "'579 patent"), was identified by Nokia in 2006 in this case as one of specific the patents whose scope was contested. The issues of enforceability and validity of that patent were joined in this case with the January 2007 Amended Complaint.

Today, October 5, 2007, Nokia answered InterDigital's complaint in the ITC. Among other affirmative defenses, Nokia alleges that InterDigital is not entitled to an exclusion order by virtue of its declarations of essentiality to ETSI and promise to license those patents on terms that are fair, reasonable, and non-discriminatory.

Nokia now moves, pursuant to 28 U.S.C. § 1659(a), for a mandatory stay of this entire action as a result of InterDigital's ITC filing. A companion motion seeking to stay the infringement action filed before Judge Robinson has also been filed.

### SUMMARY OF THE ARGUMENT

A stay of "any claim" in a district court is *mandatory* when any "issue" is presented to the ITC proceeding and a district court at the same time. 28 U.S.C. § 1659(a). In this case, the unfair competition claims will necessarily address the definition of "essential," and will do so specifically in the context of the ETSI IPR policy which defines that term. In the ITC case, InterDigital elected to prove that its patents are not just infringed, but essential to the

4.

practice of the UMTS standard and Nokia's affirmative defenses also involve the issue of essentiality.

In addition, the common issues of scope, validity and enforceability of the three InterDigital patents at issue in the ITC require that this Court stay the proceedings with respect to those three patents. Moreover, because InterDigital has consistently maintained that its counterclaims are merely contingent on Nokia's claims (and in fact InterDigital believes that its claims are not even actionable, but has filed them only in the alternative that Nokia prevails), there is no reason for InterDigital's counterclaims -- or any claims -- to proceed once Nokia's claims are stayed.

## STATEMENT OF FACTS

**Issues in Nokia's Claims in this Case.** InterDigital's violations of the Lanham Act and various state unfair competition laws arise from its false and misleading statements regarding the scope and validity of its patent portfolio and InterDigital's related claims that the mobile phone industry must pay substantial royalties for the use of InterDigital's technology purportedly covered by that portfolio.

More specifically, InterDigital claims that it owns a substantial number of valid patents that are "essential" to interoperability standards necessary for the success of the mobile telephone industries. This suit focuses on interoperability standards for mobile telephones known as UMTS, which is the predominant third and most recent generation of wireless interoperability standards.[4]

---

[4]    WCDMA (Wideband Code Division Multiple Access) is the name of the technique that allows multiple users to share the same radio frequency in UMTS, and, therefore, the terms WCDMA and UMTS are, for purposes of this Motion, used interchangeably.

5.

When a valid patent claim covers a portion of an interoperability standard, it is typically described as "essential" to the standard. The owner of such a patent can demand compensation from the entire mobile telephone industry implementing that aspect of the standard based on its asserted use. After manufacturers have expended substantial capital implementing a portion of a standard, the owner of a valid essential patent could, absent proper controls, attempt to "hold up" the industry and extort unreasonable patent royalties.

Standards-setting organizations employ a variety of strategies to prevent such "hold-ups." For example, ETSI, the world leader in promulgating UMTS, requires that its members disclose essential intellectual property rights, including patents, to the industry by making a formal declaration of essentiality to ETSI.[5] ETSI further requests that its members agree to grant irrevocable licenses for their declared patents on terms that are "fair, reasonable and non-discriminatory" or "FRAND."[6] Nokia and InterDigital are both ETSI members.

Nokia has alleged in this case InterDigital's abuse of the ETSI declaration policy. InterDigital abused the standards process by, among other things, declaring to ETSI that patents were essential when they were clearly not. InterDigital touts a portfolio of more than 200 allegedly essential patents, but that claim is a gross exaggeration. In many instances, InterDigital attempts to inflate the volume of purportedly essential patents by filing a single application that sprouts dozens of continuation applications, producing many patents with claims all arising from the same specification. Two of the patents at issue in this case and asserted by InterDigital at the ITC, U.S. Patent Numbers 7,117,004 (the "'004 patent") and 7,190,966 (the "'966 patent"), are excellent examples of this abuse. Both claim priority to an application filed in 1996. Prior to the

---

[5]    *See* ETSI Guide on Intellectual Property Rights (Exhibit A), § 2.

[6]    *See* ETSI IPR Policy (Exhibit B), ¶ 6.1.

issuance of these two patents (in late 2006 and early 2007), InterDigital had declared as "essential" at least 15 other patents springing from the same application. The first such "essential" patent issued in 1998,[7] and InterDigital's first set of declarations of "essential" patents were filed in 2001.

Although it had more than a decade to write claims to read on the emerging standard, and although it had declared at least 15 patents from a single family as essential by 2006, it is telling that InterDigital did not feel comfortable enough to charge anyone with infringing any of these 15 patents. InterDigital has abandoned all 15 of the "essential" patents from this specification and relies only on patents issued in October, 2006 and March 2007 in its ITC case against Nokia.

This abuse places the definition of "essential" at the very center of the parties' Lanham Act and related state law claims. Indeed, the parties have repeatedly disputed the definition of essential and the Special Master ordered the parties to provide their definitions of essential in a contention interrogatory response.[8] The parties' responses, not surprisingly, differed widely. Nokia's proposed definition tracks language in the ETSI IPR policy and Nokia maintains that such language excludes patents that are considered to be commercially essential, but not technically essential.[9] Nokia further recognizes that an exception is available only in

---

[7]    U.S. Patent No. 5,841,768 (filed in 1996).

[8]    *See* First Amended Case Management Order (D.I. 204) at ¶ 2.

[9]    The definition of "essential" in the ETSI IPR Policy states:

ESSENTIAL as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR. For the avoidance of doubt in exceptional cases where a STANDARD can only be implemented by

"exceptional cases" where patents may be essential if there are a number of ways of implementing a standard, but all of them are patented.[10]   InterDigital, on the other hand, claims that nearly 50% of its patents for which essentiality remains an issue fall within the "exceptional case" provision of the definition.[11]   The parties' dispute regarding the definition of essentiality is of paramount importance to Nokia's claims and InterDigital's mirror-image counterclaims.

When Nokia filed its Amended Complaint in this case, InterDigital had only submitted its patents to ETSI as essential to UMTS on two occasions:  once in 2001, and once in 2004.   The 2004 declaration included the '579 patent and Nokia's Amended Complaint unquestionably put the scope, validity and enforceability of the '579 patent at issue.   Then, on March 21, 2007, InterDigital submitted its third set of declarations to ETSI regarding 26 additional patents, which included the '004 patent and the '966 patent.   ETSI, however, did not publish, and still has not published, the March, 2007 submission in its online database of ETSI declarations.   ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL.

(Exhibit B).

[10]   *See* Nokia's September 18, 2007 Interrogatory Response Pursuant to Paragraph Two of the Amended Case Management Order (Exhibit C) at 1-2.

[11]   *See* First Amended Case Management Order (D.I. 204) at Exhibits A and B.   In Exhibit A, InterDigital identifies 239 patents it has declared to ETSI, although the essentiality of roughly 70 of these patents is not at issue because they are either associated with a portion of the UMTS standard not used by the industry or are already licensed to the industry.   In Exhibit B, InterDigital identifies 77 patents (or roughly half of the patents still at issue) which it claims are essential only under the exceptional case provision.

8.

██████████████████████████████████████████ The Special

Master agreed that these new patents were part of this action and ordered Nokia to provide

essentiality contentions regarding the 26 newly declared InterDigital patents (D.I. 204). The

Court then adopted the Special Master's Order (D.I. 214). As explained below, the '579, '004

and '966 patents are each also at issue in InterDigital's ITC action against Nokia.

**Issues in InterDigital's Counterclaims in this Action.** On February 21, 2007,

InterDigital filed retaliatory counterclaims against Nokia that attempt to mirror Nokia's claims

against InterDigital, ostensibly attacking the essentiality of 195 patents that Nokia has declared

to ETSI as essential to UMTS.

InterDigital made clear that its counterclaims were filed in the "alternative," and

on the condition that the Court concluded that the submission of an ETSI information statement

was actionable under the Lanham Act.[13]    InterDigital has confirmed this aspect of its

counterclaims on numerous, recent occasions. First, in a June 4, 2007 letter from InterDigital's

counsel to the Special Master, InterDigital explained under its heading "Description of the

Case," that it "filed a conditional counterclaim, essentially mirroring Nokia's claims against it,"

and that the claims were "contingent," and filed only to ensure that Nokia's own statements

would be "assessed under the same standards it invokes to challenge InterDigital's statements."[14]

More recently, InterDigital again confirmed that "InterDigital's counterclaims concerning

---

[12]    ████████████████████████████████████████████████████

[13]    InterDigital's Original Answer to Nokia's First Amended Complaint and Original
        Counterclaims (D.I. 160) at ¶ 204.

[14]    June 4, 2007 Letter from Richard Horwitz to Special Master (Exhibit F) at 3-4.

Nokia's statements to ETSI are expressly conditioned on the unlikely event that the Court finds InterDigital's corresponding statements to be actionable."[15]

**InterDigital's ITC Case.** On August 7, 2007, InterDigital filed an investigation request with the ITC alleging infringement by Nokia of two patents (the '004 patent and the '966 patent, both among InterDigital's March, 2007 filing with ETSI and, as described above, both part of the pending action) and requesting, among other relief, an order barring Nokia from importing infringing UMTS handsets into the United States.[16] On September 5, 2007, the ITC agreed to conduct an investigation based on the Original ITC Complaint and the ITC named Nokia as a respondent.[17] Then, on September 28, 2007, InterDigital filed a Motion to Amend its Original ITC Complaint which adds an infringement claim for the '579 patent.[18]

The purported essentiality of these three patents to UMTS is central to InterDigital's ITC action. InterDigital appears to believe that proving essentiality is necessary for it to obtain any relief from the ITC. This is because the remedy provided by the ITC under 19 U.S.C. § 1337 does *not* give the ITC jurisdiction over patent infringement claims asserted against *all* imported products. Rather, a complainant in the ITC must plead and prove the existence of "an industry in the United States" that would be "destroy[ed] or substantially injure[d]" by the importation of an infringing product. 19 U.S.C. § 1337(a)(1)(A)(i). This

---

[15]    InterDigital's September 5, 2007 Opposition to Nokia's Objections to Special Master's August 20, 2007 Decision (D.I. 216) at n. 6.

[16]    *See* ITC Complaint (Exhibit G), ¶ 65(c).

[17]    *See* Notice of Investigation (Exhibit H).

[18]    *See* InterDigital's proposed Amended Complaint ("Amended ITC Complaint") (Exhibit I), ¶ 39.

requires the complainant to prove that some domestic industry practices the technology claimed in the patents at issue.

This "domestic industry" requirement is particularly difficult for InterDigital to prove because InterDigital does not make any products that practice the patents. Rather, InterDigital claims the benefit of a domestic industry based on its activities in standard setting and the alleged practice of its inventions by its *licensees*.[19] It is unlikely that any licensee has ever specifically licensed only the three ITC patents to the exclusion of the other patents in the InterDigital portfolio given what appears to be InterDigital's typical practice of licensing only on a portfolio basis. Thus, the two ways InterDigital could try to meet its burden of proving that a domestic industry practices these inventions are: to prove (a) specific practice of the patents through technical information provided by a licensee somehow willing to help InterDigital; or (b) that the patents are essential to UMTS. InterDigital will likely seize on the second method given the obvious problems in proving the first.

For this reason, essentiality permeates the ITC proceedings. InterDigital's Amended ITC Complaint states that "any of [Nokia's] handsets capable of operating in a 3G WCDMA [i.e., UMTS] system are accused of infringing [the '004 and the '966 patents]," (Exhibit I, ¶ 51) and that Nokia's handsets capable of operating with a specific portion of the UMTS standard called HSDPA are accused of infringing the '579 patent (*see id*. at ¶ 52). Further, InterDigital explains that Nokia's products are specifically designed to be used in a 3G UMTS system, are advertised as working with a 3G UMTS system, and that there is no substantial non-infringing use of the products when used in a 3G UMTS system. *See id*. at ¶¶ 62-63.

---

[19]    *See* InterDigital's Original ITC Complaint (Exhibit G), ¶ 64.

11.

InterDigital's Amended ITC Complaint sets forth InterDigital's purported work in developing the 3G standard and the fact that InterDigital's licensees make 3G-compliant products. *See id.* at ¶¶ 75, 80-81. In addition to the statements in the Amended ITC Complaint, InterDigital also provided with its filing lengthy portions of the UMTS standard and claims charts comparing the '579, '004 and '966 patents to the UMTS standard.[20]

InterDigital served discovery requests in the ITC requesting that Nokia admit or deny that the '004 patent and '966 patent are essential to UMTS and that practice of UMTS infringes the '004 and '966 patents.[21] InterDigital has made it quite clear that it plans to address directly the issue of whether these patents are "essential" to the UMTS standard promulgated by ETSI.

## ARGUMENT

### I. THE STATUTE MANDATES A STAY OF CLAIMS THAT HAVE ANY ISSUES IN COMMON WITH AN ITC PROCEEDING.

Congress has provided that when an *issue* exists in common between an ITC case and a district court case, the *claims* where those issues are present *must be stayed.* 28 U.S.C. § 1659(a) provides:

> In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, *the district court shall stay,* until the determination of the Commission becomes final, *proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission,* but only if such request is made within-- (1) 30 days after the party is named as a respondent in the proceeding before

---

[20]    *See* Exhibits 18 and 19 to Exhibit I; Exhibits 6, 7, 10, 11, and 12 to Exhibit G.

[21]    *See* InterDigital's September 11, 2007 First Set of Requests for Admission to Respondents (Exhibit J), Request Nos. 32-39.

the Commission, or (2) 30 days after the district court action is
filed, whichever is later.

(Emphasis added.)  This statute implements Congress' decision to allow an ITC Respondent to

avoid fighting the same issues on multiple legal fronts and instead, to "address the possibility

that infringement proceedings may be brought against imported goods in two forums at the same

time." H.R. Rep. 103-826(I), at 141 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3773; *see also In

re Princo Corp.*, 478 F.3d 1345, 1355 (Fed. Cir. 2007) (Congress enacted this provision "to

prevent separate proceedings on the same issues occurring at the same time").

The key to § 1659(a) is not that Congress opted to stay only identical disputes or

identical claims, but all claims in civil courts where the claims involve the same issues as those

in a claim between the same parties pending before the ITC.  Specifically, stays are not limited to

infringement actions or issues only, but stays are instead appropriate "with respect to any claim

that involves the same issues as those pending before the Commission."  H.R. Rep. 103-826(I),

at 141; *see also Princo Corp.*, 478 F.3d at 1356 ("[t]he statute is *not limited to a stay of any

district court determination of issues pending before the Commission; it extends to any district

court 'proceedings' on a 'claim' involving issues pending before the Commission*") (emphasis

added).

Consistent with the above discussion of the purposes of § 1659(a), the statute has

generally been applied by district courts (or discussed by other courts) to stay matters with little

comment or discussion regarding what constitutes the same issues.  *See Verve, LLC v. Verifone,

Inc.*, No. C04-03659JF, 2004 WL 2600452, at *1 (N.D. Cal. Nov. 15, 2004); *Cellco P'ship v.

Broadcom Corp.*, 227 F. App'x. 889 (Fed. Cir. 2007); *Thomson Licensing S.A. v. Benq Corp.*,

No. 3:05-CV-01005-JSW, 2005 WL 1039030, at *1 (E.D. Cal. May 4, 2005); *Amkor Tech. , Inc.*

13.

*v. Carsem (M) SDN BHD*, No. 03-5116 MMC, 2004 WL 3237542, at * 1 (N.D. Cal. Feb. 9, 2004).

There are some limited circumstances, however, where district courts have addressed in more detail § 1659(a)'s requirement that the same issues be before the court and the ITC. These circumstances arise when courts consider whether to stay claims in a district court involving patents that are similar, but legally separate, from patents involved in ITC actions. Notably, that is not the circumstance in the present case given that each of Nokia's claims includes InterDigital's patent portfolio and thus the patents at issue in the ITC action.

In the limited situations described above, some courts have determined that where the ITC will construe similar claims to those at issue before the court or consider other issues which will make resolution of claims easier for the court, even claims solely regarding patents not before the ITC should be stayed. *See Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.*, No. 5:05CV156, 2005 WL 1126750, at *4 (N.D. Ohio Apr. 29, 2005). Other courts have determined that § 1659(a) only applies to the claims involving precisely the same patents at issue in the ITC action, and not the other patent infringement claims, and therefore have refused their discretion to stay claims solely related to other patents not present at the ITC. *See Micron Tech., Inc. v. Mosel Vitelic Corp., Inc.*, No. CIV 98-0293-S-LMB, 1999 WL 458168, at *3 (D. Idaho Mar. 31, 1999). Regardless of the fact that courts have differed on how to treat claims expressly about patents not before the ITC, the fact remains that here, all of Nokia's claims, at InterDigital's insistence, include the three patents which InterDigital seeks to litigate in the ITC, and, as demonstrated below, because the same issues are at present in both actions, all claims in this case should be stayed.

## II.    THERE ARE OVERLAPPING ISSUES IN THIS CASE.

### A.    The "Essentiality" Issue Is Common to Both Cases and Requires a Stay of all Claims in this Case.

The issue of what is an "essential" patent, and how that definition is applied to patents declared to ETSI, is a central issue in both this case and in the ITC case. It is central here because InterDigital claims that its statements of "essentiality" are true because of the nature of the definition of "essential" under the ETSI policy. It is central in the ITC case because if the patents are not "essential," then there is no domestic industry to protect and the ITC has no jurisdiction.

Moreover, as noted above, the ETSI definition of "essential" is also central in the ITC case because the declaration to ETSI of "essential" patents gives rise to various defenses, including patent misuse of those patents. Indeed, the Third Circuit has recently ruled in a case involving the ETSI IPR policy that a "patent holder's intentionally false promise to license essential proprietary technology on FRAND terms," coupled with the "patent holder's subsequent breach of that promise" gives rise to antitrust liability. *See Broadcom Corp. v. Qualcomm Inc.*, No. 06-4292, 2007 WL 2475874, at *11 (3d Cir. Sept. 4, 2007). Thus, the presence of the essentiality issues in all claims requires all claims to be stayed.

Indeed, when addressing the narrow issue of whether to require discovery on the ITC patents in this case, the Special Master in this case recognized the presence of overlapping *issues* between the actions.[22] Similarly, this Court noted that "determining essentiality of the patents may implicate issues synonymous to issues raised in the infringement actions [before the

---

[22]    *See* Transcript of Aug. 20, 2007 Teleconference (Exhibit K) at 22:6-7.

15.

ITC and before this Court].''[23]  This Court cannot continue with the prosecution of the claims or counterclaims in light of the presence of the essentiality issues in the two parallel proceedings.

B.    The Other Common Issues With the Three Patents
      Also Mandate a Stay.

With regard to the three patents (the '579, '004 and '966 patents) InterDigital has injected into this case and the ITC, there are unquestionably issues in common.  The scope of the patents – what they cover and what they do not – will be decided in both cases.  InterDigital will seek to prove in both cases that the patents are essential.  Both this Court and the ITC will be required to construe the claims of these patents.

The validity of these patents is likewise at issue in both cases.  Nokia's Amended Complaint puts directly at issue the validity of the patents Nokia specifically challenged, including the '579 patent.  For example, Nokia's Amended Complaint alleges that, even if some of InterDigital's patents were to "meet the definition of 'essential,' members of the industry do not need to pay InterDigital any money for them . . . [in part because] the patents cannot be valid and cover the standard at the same time.''[24]  Indeed, Nokia's requested relief includes judgment:

> (c) Declaring the extent to which any of the patents [challenged by Nokia] have valid, enforceable claims which necessarily read on any product compliant with . . . any 3G Standard . . . ; [and]
>
> . . .
>
> (e) That InterDigital's statements concerning the scope and validity of its 3G patents are false and misleading[.][25]

Moreover, because ████████████ the '004 and '966 patents be included in this case ███████████████████████████████████ the

---

[23]    September 27, 2007 Memorandum Opinion (D.I. 220) at 4.

[24]    Nokia Amended Complaint (D.I. 122) at ¶ 36(d); *see also id.* at ¶¶ 50-51.

[25]    *Id.* at p. 26.

validity of those patents is in common in both cases.  The same is true for the enforceability of these patents.

Because these *issues* with respect to the three patents are found in *all* of Nokia's unfair competition *claims*, there is no separate claim that can be litigated in this Court free from the requirements of § 1659(a).

---

[26]     InterDigital's September 5, 2007 Opposition to Nokia's Objections to Special Master's August 20, 2007 Decision (D.I. 216) at 3, 4, 11 and 14.

[27]     *See* September 11, 2007 Letter from Special Master (Exhibit L) at 1.

17.

C.    This Court Should Use Its Discretion to Stay Any Portions
of the Case Not Otherwise Subject to the Mandatory Stay.

The essentiality issues discussed above permeate both the claims and the counterclaims in this case, and the claims and defenses in the ITC. Likewise, the patent specific issues in this case cannot be separated from InterDigital's claims or the defenses Nokia today asserts in that action. To the extent there is anything left, however, this Court should exercise its discretion and stay anything remaining.

District courts have the inherent power to stay a particular case pending the conclusion of some other event. *See, e.g., Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). The Third Circuit has held that a court has the "inherent power to conserve judicial resources by controlling its own docket." *Cost Bros., Inc. v. Travelers Indemnity Co.*, 760 F.2d 58, 60 (3d Cir. 1985). Such stays are discretionary. *See Pegasus Dev. Corp. v. DirecTV, Inc.*, C.A. No. 00-1020-GMS, 2003 WL 21105073, at *1 (D. Del. May 14, 2003). In ruling on a motion to stay, courts are guided by three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Id.* at *1 (quoting *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y.1999)).

Here, Nokia's and InterDigital's claims are so entwined, that if any claims are stayed, all should be stayed. Specifically, InterDigital has made numerous and express statements that its counterclaims are filed in the "alternative," and are brought only on the condition that the Court concludes that the submission of ETSI information statements is

18.

actionable under the Lanham Act.[28]    InterDigital maintains that its counterclaims are "contingent" claims, filed only to ensure that Nokia's own statements would be "assessed under the same standards it invokes to challenge InterDigital's statements."[29] ██████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

The other two prongs cited above (whether a stay will simplify the issues in question and the trial of the case and whether discovery is complete and a trial date has been set) also weigh in favor of staying any claims remaining after application of the mandatory stay. The benefit of the ITC's adjudication of issues, whether or not issue preclusive, will certainly be of benefit to this Court. As for the final prong, discovery in this case has been at a virtual standstill since March and does not close until December of this year (D.I. 171). As the Court recognized,

---

[28]    InterDigital's Original Answer to Nokia's First Amended Complaint and Original Counterclaims (D.I. 160) at ¶ 204.

[29]    Exhibit F at 3-4; *see also* InterDigital's September 5, 2007 Opposition to Nokia's Objections to Special Master's August 20, 2007 Decision (D.I. 216) at n. 6 ("InterDigital's counterclaims concerning Nokia's statements to ETSI are expressly conditioned on the unlikely event that the Court finds InterDigital's corresponding statements to be actionable").

[30]    ████████████████████████████████████████████████████

staying only a portion of the case "could result in bifurcated proceedings," which would not conserve judicial resources.[31]

Finally, a stay of remaining claims after § 1659(a) is applied is consistent with other courts' actions. *See Flexsys*, 2005 WL 1126750, at *4 (staying claims on patents that were not before the ITC given the court had already stayed other claims pursuant to § 1659(a)); *Verve, LLC,* 2004 WL 2600452, at *1 (staying claims involving non-moving defendants who were not parties to the related ITC action given the same claims against moving defendants, who were parties to the ITC, had been stayed). Accordingly, to the extent the Court finds any claims are not subject to § 1659(a)'s mandatory stay, the Court should nonetheless stay the entire action, in its discretion, pending resolution of InterDigital's ITC action.[32]

## CONCLUSION

Because a stay of claims is mandatory when they share issues in common with an ITC proceeding, this Court should stay this case in its entirety pending the resolution of the ITC case. Any claims found not to have issues in common should be stayed under the Court's discretionary power.

---

[31]    September 27, 2007 Memorandum Order (D.I. 220) at 5.

[32]    In the unlikely event that the Court finds a stay of Nokia's claims is warranted but a stay of InterDigital's contingent counterclaims is not, Nokia would respectfully request that Nokia's claims go forward on all patents at issue except for the three ITC patents (the '579, '004 and '966 patents) in order to avoid piecemeal, inefficient, and asymmetrical litigation of the Lanham Act issues.

20.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld (#1014)*
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE  19801
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com

*Attorneys for Plaintiffs*

*Of Counsel*:

Patrick Flinn
Randall Allen
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA  30309
(404) 881-7000

October 5, 2007

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on October 11, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Richard L. Horwitz
POTTER ANDERSON & CORROON LLP

I also certify that copies were caused to be served on October 11, 2007 upon the following in the manner indicated:

**BY ELECTRONIC MAIL**
**and HAND DELIVERY**

Richard L. Horwitz
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

**BY ELECTRONIC MAIL**

Ron E. Shulman
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050

Mark D. Flanagan
WILMER CUTLER PICKERING HALE
  AND DORR LLP
1117 California Avenue
Palo Alto, CA 94304

Patrick J. Coyne
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001

/s/ Julia Heaney
Julia Heaney (#3052)
jheaney@mnat.com