EXHIBIT A

# ETSI Guide on Intellectual Property Rights (IPRs)

## Version endorsed by General Assembly #48 on 22 November 2006

© European Telecommunications Standards Institute 2006. All rights reserved.

**Page 2**
**ETSI Guide on IPRs, 22 November 2006**

# Contents

Background ........................................................................................................................ 4

Foreword ......................................................................................................................... 4

1    The ETSI IPR Policy ................................................................................................. 4

1.1    What is the Purpose of the IPR Policy? ................................................................ 4

1.2    Where can I find the ETSI IPR Policy? ................................................................. 5

1.3    Terminology ........................................................................................................ 5

1.4    Rights and obligations deriving from the IPR Policy ........................................... 5

1.5    "Essential" IPRs .................................................................................................. 7

2    Importance of timely disclosure of Essential IPRs ................................................... 7

2.1    Members Duties ................................................................................................... 8

2.1.1    Responding to Calls for IPRs performed in Technical Body meetings ............. 8

2.1.2    Use the ETSI IPR Information Statement and Licensing Declaration forms ..... 8

2.1.3    Update and complete the ETSI IPR Information Statement form ..................... 9

2.1.4    Copyrights in ETSI Deliverables ................................................................... 9

2.2    Members do NOT have a duty to: ........................................................................ 9

2.3    Technical Body Chairmen's duties ....................................................................... 9

2.3.1    Define scope statements for work items ......................................................... 9

2.3.2    Make call for IPRs in Technical Bodies meetings ........................................... 9

2.3.3    When and How? ........................................................................................... 10

2.3.4    Record and report information on IPRs ......................................................... 11

2.3.5    Copyrights in ETSI Deliverables ................................................................. 11

2.3.6    Confidential information ............................................................................... 11

2.4    ETSI Secretariat Duties ...................................................................................... 11

2.4.1    Information on Essential IPRs in ETSI Deliverables ....................................... 11

2.4.2    Initiate a procedure of Clause 8 when no licensing declaration can be obtained .. 12

2.4.3    Non response by an IPR owner ...................................................................... 12

2.4.4    Redrafting of ETSI Deliverables ................................................................... 12

2.4.5    Disclose copyright identified in ETSI documentation ..................................... 12

2.4.6    Acknowledgement of third parties copyright ................................................. 12

2.4.7    Reporting of a substantial IPR problem ......................................................... 13

2.4.8    Maintenance of information on Essential IPRs ............................................... 13

3    Information on Essential IPRs by ETSI ..................................................................... 13

3.1    Where to find information on essential IPRs ........................................................ 13

3.1.1    ETSI Special Report 000 314 ....................................................................... 13

3.1.2    The ETSI IPR Online Database .................................................................... 13

3.1.3    Requests to the ETSI Secretariat ................................................................... 14

3.2    What type of information and procedures for updates ......................................... 14

3.2.1    Assessment of IPR rights ............................................................................. 14

3.2.2    Update procedure for the ETSI IPR Online database ..................................... 14

4    Other ETSI IPR Policy matters ................................................................................ 14

4.1    Licensing terms ................................................................................................. 14

4.2    Dispute Resolution ............................................................................................ 15

4.3    Notice on the use of NDAs in IPR negotiations .................................................. 15

4.4    Financial contingency ........................................................................................ 15

4.5    Rationale and clarifying texts for the changes in Clause 4.1 of the ETSI IPR Policy ...... 15

**Page 3**
**ETSI Guide on IPRs, 22 November 2006**

4.5.1     History of changes ........................................................................... 15
4.5.2     EC DG COMPETITION's position regarding the rationale and scope for the changes of Clause 4.1 of the ETSI IPR Policy .............................................................. 16
4.5.3     ETSI's position regarding the rationale and scope for the changes of Clause 4.1 of the ETSI IPR Policy ................................................................................. 17
Annex A     ETSI Intellectual Property Rights Policy .................................. 19
Annex B     ETSI IPR Information Statement and Licensing Declaration Forms ................ 20
Annex C Check list of the Chairmen's obligations in respect of the notification and disclosure of IPRs ................................................................................. 23

## Background

The ETSI IPR Policy was adopted by the 21st General Assembly on 23 November 1994 and incorporated in the ETSI Directives as Annex 6 to the ETSI Rules of Procedure.

At a later stage a Technical Body Chairman's Guide on IPRs had been written to help Chairmen and others involved in ETSI's standardization activities to understand and implement the Institute's IPR Policy. That Chairman's Guide on IPR had not been endorsed by the General Assembly or the Board and therefore did not have the same official status as the ETSI Statutes, the Rules of Procedure or the Technical Working procedures. The Technical Body Chairman's Guide on IPRs is now replaced by the present ETSI Guide on IPRs.

In 2002 the ETSI General Assembly #40 identified the need to review the ETSI IPR Policy with a view to addressing and rectifying any uncertainties on the operation of this Policy and on any legal rules and obligations on the membership in order to avoid an incorrect implementation of the ETSI IPR Policy and in order to avoid anti-competitive actions. An ad-hoc IPR group, with a clear mandate to review the implementation of the IPR Policy but not to change the Policy itself, was consequently created and 30 recommendations on the operation of the ETSI IPR Policy where approved by the ETSI General Assembly #42. The present ETSI Guide on IPRs embodies most of these recommendations.

A revised version of the Clause 4.1 of the ETSI IPR Policy was adopted by the 46th General Assembly in November 2005. This revision was induced by the EC DG COMPETITION in its concern to generate a general awareness of the risk of "patent ambush" situation in the standard making process. The EC DG COMPETITION rationale behind the changes is given in section 4.5 of the present Guide.

## Foreword

Intellectual property plays an important role in standardization, especially in the telecommunications and electronic communications sector. In that context, the likelihood of having Intellectual Property Rights (IPRs) incorporated into ETSI Deliverables became critical after a few years of existence of ETSI. This tension (proprietary nature of IPRs versus wide dissemination of standards) was minimized with the adoption by the ETSI Membership of the ETSI IPR Policy as found in Annex 6 to the ETSI Rules of Procedure.

In the preparation of standards, IPR issues may arise. It is important for all parties involved in the ETSI standards-making process to be aware of their responsibilities and that there is good co-operation between all parties.

This guide is intended to help ETSI Members and any other party involved in ETSI's standardization activities (e.g. Members, Technical Body Chairmen, Secretariat, etc.) to understand and implement the Institute's IPR Policy.

This guide provides explanatory information on how to handle IPR matters in ETSI and does not replace the ETSI IPR Policy which takes precedence in all cases.

This guide has been endorsed by the Board but does not have the same official status as the Statutes, the Rules of Procedure or the Technical Working Procedures.

Should you (the reader) have any difficulty with provisions of this guide or with any practical aspects of the Policy which are not answered by this guide, please do not hesitate to contact the ETSI Secretariat (hereafter called simply "Secretariat").

## 1    The ETSI IPR Policy

### 1.1    What is the Purpose of the IPR Policy?

The purpose of the ETSI IPR Policy is to facilitate the standards making process within ETSI.  In complying with the Policy the Technical Bodies should not become involved in legal discussion on IPR matters.  The main characteristics of the Policy can be simplified as follows:

- Members are fully entitled to hold and benefit from any IPRs which they may own, including the right to refuse the granting of licenses.

- It is ETSI's objective to create Standards and Technical Specifications that are based on solutions which best meet the technical objectives of ETSI.

- In achieving this objective, the ETSI IPR Policy seeks a balance between the needs of standardization for public use in the field of telecommunications and the rights of the owners of IPRs.

- The IPR Policy seeks to reduce the risk that investment in the preparation, adoption and application of standards could be wasted as a result of an Essential IPR for a standard or technical specification being unavailable.

- Therefore, the knowledge of the existence of Essential IPRs is required as early as possible within the standards making process, especially in the case where licenses are not available under fair, reasonable and non-discriminatory (FRAND) terms and conditions.

The ETSI IPR Policy defines the rights and obligations for ETSI as an Institute, for its Members and for the Secretariat.

The Policy is intended to ensure that IPRs are identified in sufficient time to avoid wasting effort on the elaboration of a Deliverable which could subsequently be blocked by an Essential IPR.

## 1.2    Where can I find the ETSI IPR Policy?

The ETSI IPR Policy is part of the ETSI Directives and can be found in Annex 6 of the ETSI Rules of Procedures (http://www.etsi.org/legal/home.htm). This means that the rights and obligations specified by the IPR Policy are an integral part of the ETSI Rules of Procedure and are binding on all ETSI Members.

You can also find a copy of the Policy at Annex A.

## 1.3    Terminology

The ETSI IPR Policy defines a number of terms; those used in this guide correspond to those used in the Policy.

In the ETSI IPR Policy:

**an IPR includes:**

- COPYRIGHT
- PATENT
- UTILITY MODEL
- REGISTERED DESIGN
- ... and applications thereof.

**an IPR does not include:**

- TRADEMARKS
- TRADE SECRETS
- CONFIDENTIAL INFORMATION
- RIGHTS RELATING TO GET-UP (packaging)

## 1.4    Rights and obligations deriving from the IPR Policy

The ETSI IPR POLICY defines rights and obligations for ETSI as an Institute, for its Members and for the Secretariat. Non-Members of ETSI also have certain rights under the Policy but do not have legal obligations.

The following table intends to give a clear overview of the most important rights and obligations of the Institute, the Members, the Secretariat and the rights of third parties as specified under the ETSI IPR Policy. All references below which are in italics relate to the ETSI IPR Policy.

| | Obligations | Rights |
|---|---|---|
| **Institute** | • to inform users of standards about Essential IPRs declared and ensure that this information is publicly available (*Clause 7*).<br>• to perform IPR searches if the EC and/or EFTA so require and reasonable expenses are met (*Clause 6.2*).<br>• to grant licenses on ETSI-owned IPRs (other than copyright) on fair, reasonable and non-discriminatory terms and conditions to third parties, free of charge to ETSI Members (*Clause 9.3*).<br>• to respect confidential information within a Technical Body until publication of the relevant Deliverable.<br>• to include the information in a standard (*Clause 10*). | |
| **Members** | • to inform ETSI about their own, and other people's Essential IPRs (*Clause 4.1*).<br>• owners of Essential IPRs are requested to undertake to grant licenses on fair, reasonable and non-discriminatory terms and conditions (*Clause 6.1*).<br>• owners of Essential IPRs who refuse to grant license when no alternative is available, are requested to reconsider their position and provide the Director-General with a justification (*Clause 8.1*).<br>• to abstain from claiming copyright on standards documentation (text, graphics etc., of the standard itself) on behalf of the member itself and its employees (*Clause 9.1*). | • no obligation to conduct IPR searches (*Clause 4.2*).<br>• to refuse the inclusion of own IPRs in standards (*Clauses 8.1 and 8.2*).<br>• to be granted licenses on fair, reasonable and non-discriminatory terms and conditions in respect of a standard (*Clause 6.1*).<br>• to make copies of standards documentation (*Clause 11*) free of charge.<br>• to use IPRs owned by ETSI free of charge (*Clause 9.3*).<br>• to have confidential information within a Technical Body respected until publication of the relevant Deliverable (*Clause 10*). |
| **Secretariat** | • the Director-General to contact owners of Essential IPRs having refused to grant licenses on behalf of ETSI (*Clauses 8.1 and 8.2*).<br>• the Director-General to request the owner of an Essential IPR to give within three months an undertaking in writing that it is prepared to grant licenses (*Clause 6.1*). | |
| **Third Parties** | • the ETSI IPR Policy is only binding on ETSI Members. Third parties do not have any legal OBLIGATIONS under the Policy.<br>• when ETSI is informed that an IPR | • Third parties have certain RIGHTS under the ETSI IPR Policy either as owners of Essential IPRs or as users of ETSI standards or documentation:<br>  o to refuse the inclusion of their own |

| | | |
|---|---|---|
| | belonging to a non-Member could be essential for a standard, the non-Member owner is also requested to undertake to grant licenses on fair, reasonable and non-discriminatory terms and conditions (*Clause 6.1*). | Essential IPRs in ETSI Deliverables (*Clause 8.1 and 8.2*).<br><br>o To be granted licenses on fair, reasonable and non-discriminatory terms and conditions in respect of a standard at least to manufacture, sell, lease, repair, use and operate, (*Clause 6.1*)<br><br>o to be granted licenses for ETSI owned IPRs (other than copyright in the standard documentation) (*Clause 9.3*) on fair, reasonable and non-discriminatory terms and conditions.<br><br>o to have confidential information within a Technical Body respected until publication of the relevant Deliverable (*Clause 10*). |

**1.5      "Essential" IPRs**

Clause 15.6 of the ETSI IPR Policy gives the following definition of essentiality:

> "*15.6        ESSENTIAL as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR. For the avoidance of doubt in exceptional cases where a STANDARD can only be implemented by technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL*".

In simpler terms, an "essential IPR" is an IPR which has been included within a standard and where it would be impossible to implement the standard without making use of this IPR. The only way to avoid the violation of this IPR in respect of the implementation of the standard is therefore to request a license from the owner.

**2      Importance of timely disclosure of Essential IPRs**

The main problems for ETSI as a standards body which may arise from "late disclosures" include:

- Licenses for Patents which have been disclosed late and are not available at all, or,

- Licenses for Patents which have been disclosed late and which are available, but not on Fair, Reasonable and Non-Discriminatory (FRAND) terms, i.e. the company is unwilling to make a 'FRAND' undertaking/licensing declaration.

If the above problems cannot be satisfactorily resolved, then ETSI has to change the standard, which in some extreme cases could even include the need to start again with the development of that standard.

NOTE 1:      Definitions for "Timeliness" or "Timely" cannot be agreed because such definitions would constitute a "change to the Policy".

NOTE 2:      The following description of Intentional Delay has been noted:

> "*Intentional Delay*" *has arisen when it can be demonstrated that an ETSI Member has deliberately withheld IPR disclosures significantly beyond what would be expected from normal considerations of "Timeliness*".

This description of 'Intentional Delay' should be interpreted in a way that is consistent with the current ETSI IPR Policy. In complying with the requirements of timeliness under Clause 4.1 of the IPR Policy, Members are recommended to make IPR disclosures at the earliest possible time following their becoming aware of IPRs which are, or are likely to become, Essential.

NOTE 3:    "Intentional Delay", where proven, should be treated as a breach of the IPR Policy (Clause 14 of the ETSI IPR Policy) and can be sanctioned by the General Assembly.

## 2.1    Members Duties

### 2.1.1    Responding to Calls for IPRs performed in Technical Body meetings

Members participating in Technical Bodies should respond at the earliest possible time to the Call for IPRs performed by Technical Body Chairmen at the beginning of each meeting, based on the working knowledge of their participants.

Furthermore, the call for IPRs acts as a reminder of the Member's obligations under the IPR Policy and is performed to foster the disclosure of Essential IPRs in a timely fashion.

Members having IPR portfolios should improve their internal IPR co-ordination processes to ensure, as far as possible, that their participants in Technical Bodies are aware of any alleged-essential IPR the company may have (related to the on-going work on a particular ETSI Standard or Technical Specification), that they understand their obligations, and that they know how to discharge them.

Members are encouraged to make general IPR undertakings/licensing declarations that they will make licenses available for all their IPRs under FRAND terms and conditions related to a specific standardization area and then, as soon as feasible, provide (or refine) detailed disclosures.  This process reduces the risk of the standards making process being blocked due to IPR constraints.

### 2.1.2    Use the ETSI IPR Information Statement and Licensing Declaration forms

One of the ETSI *IPR information statement and licensing declaration* forms should be used by any IPR holders wishing to make their disclosures and undertaking to ETSI:

- The *IPR information statement and licensing declaration* should normally be submitted with the *IPR information statement* annex to identify the specific patents or pending applications which are applicable.

- An IPR holder may use the General *IPR licensing declaration* to give an undertaking to grant licenses under any of its IPR that is or becomes essential to (i) a Standard; or (ii) any Standard of a project; or (iii) all ETSI Standards.  It is submitted without the *IPR information statement annex* but, in accordance with Clause 4.1 of the ETSI IPR Policy, members should provide updates in a timely fashion via the *IPR information statement and licensing declaration* and the *IPR information statement annex.*

Use of the *General IPR licensing declaration* does not take away the obligation for members to declare essential patents to ETSI as stated in 2.1.1.

Members are requested to fill out the *information statement and licensing declaration* forms as completely as possible. Where the complete information is not provided, the declaration shall be flagged as incomplete in the ETSI IPR database.

A copy of the ETSI *IPR information statement and licensing declaration* forms and the *IPR information statement annex* can be found at Annex B and online at: http://www.etsi.org/legal/IPR_database/IPRforms-V5.doc.

These forms, once completed and duly signed should be returned to the ETSI Director-General.

Any questions related to the completion of the forms should be addressed to the ETSI Legal Advisor.

### 2.1.3 Update and complete the ETSI IPR Information Statement form

Members are not obliged to inform ETSI of any updates to their essential IPRs. Nevertheless, Members are encouraged to update and complete their information statements in line with the forms (see Annex B). A minimum of information should be provided, which allows verifying the essentiality or the potential essentiality of an IPR.

### 2.1.4 Copyrights in ETSI Deliverables

Members should be aware that once a technical proposal has been included into ETSI documentation the copyright is owned by ETSI, for the purpose of the publication of ETSI documentation.

### 2.2 Members do NOT have a duty to:

- conduct IPR searches (see Clause 4.2 of the IPR Policy).

- disclose within the Technical Body the commercial terms for licenses for which they have undertaken to grant licenses under FRAND terms and conditions. Any such commercial terms are a matter for discussion between the IPR holder and the potential licensee, outside of ETSI (see section 4.1 of this Guide).

### 2.3 Technical Body Chairmen's duties

Chairmen represent the membership while having the authority to represent the Institute in their Technical Body. Chairmen have an important role in respect of both, the identification and disclosure of essential IPRs. They have a duty to remind the Members of their statutory obligations to submit IPR disclosures.

In addition to the actions aiming at the identification of IPRs, the Chairmen also need to take the following actions, which ensure that the disclosure of essential IPRs is properly carried out:

- to record in the report of the meeting that an IPR call has been made and to record any responses;

- to inform the Secretariat of the existence of any essential IPRs identified.

Throughout the standardization process the Chairmen must take the following actions which facilitate the identification of Essential IPRs.

### 2.3.1 Define scope statements for work items

It is vital that Chairmen ensure that the scope statements for all work items in the ETSI work programme are properly defined. This will ensure that if a search for patents is required (under Clause 6.2 of the Policy) or chosen to be performed by a Member, the task can be carried out in the most effective manner.
In order that the scope statement of an ETSI work item can be used for IPR purposes, it should contain the following:

- a broad statement concerning the technical field of this work;
- a description of broad system concepts;
- identification of any standard on which the work item is likely to be based;
- a list of features which the standard will define, or on which the standard will place limitations;
- a technical description of each feature listed, in broad terms; and,
- a list of any criteria which the standard must satisfy.

### 2.3.2 Make call for IPRs in Technical Bodies meetings

Every Technical Body and working group meeting shall start with a "Call for IPRs" (either in a written form – as part of the meeting's agenda - or in oral form) performed by the Chairman. This Call for IPRs acts as a reminder of the Member's obligations under the ETSI IPR Policy and is performed to foster the disclosure of Essential IPRs in a timely fashion.

An example of this "Call for IPRs" may be found below in Clause 2.3.3. Please note that during the Operational Co-ordination Group meetings (OCG) Chairmen will be reminded to perform that call for IPRs.

Technical Body Chairmen are also invited to encourage Members to make general IPR undertakings/licensing declarations that they will make licenses available for all their IPRs under FRAND terms and conditions related to a specific standardization area and then, as soon as feasible, provide (or refine) detailed disclosures.

### 2.3.3    When and How?

A formal call for IPR disclosures shall be made by the Chairman at the beginning of each meeting.

The formal call for IPR disclosures needs to be made by the Chairman orally or in writing according to the example given below. Members need to be reminded that the recommended form for the notification of essential IPRs and licensing declaration are available on-line and attached in Annex B.

## Example of a formal call for IPRs

> The attention of the members of this Technical Body is drawn to the fact that ETSI Members shall use reasonable endeavours under Clause 4.1 of the ETSI IPR Policy, Annex 6 of the Rules of Procedure, to inform ETSI of Essential IPRs in a timely fashion. This section covers the obligation to notify its own IPRs but also other companies' IPRs.
>
> The members take note that they are hereby invited:
>
> - to investigate in their company whether their company does own IPRs which are, or are likely to become Essential in respect of the work of the Technical Body,
>
> - to notify to the Chairman or to the ETSI Director-General all potential IPRs that their company may own, by means of the IPR Information Statement and the Licensing Declaration forms that they can obtain from the ETSI Technical Officer or http://www.etsi.org/legal/IPR_database/IPRforms-V5.doc."
>
> Members are encouraged to make general IPR undertakings/declarations that they will make licenses available for all their IPRs under FRAND terms and conditions related to a specific standardization area and then, as soon as feasible, provide (or refine) detailed disclosures.

During the meeting a short reminder call for IPR disclosures should be made:

- on formal submission of a technical solution;
- on completion of the first stable draft of the standard;
- on working group approval of a draft standard;
- on TB approval of a draft standard.

E.g., this may consist of the following sentence "*May I remind Members of their obligations to use reasonable endeavours to disclose any Essential IPR [related to this issue] in a timely fashion*".

The Technical Body Chairmen should note and should make their attendees aware that disclosure of Essential or potentially Essential IPRs should be made at the earliest possible stage within the above list.

Knowing who has contributed to the development of a standard may help identify IPRs Essential to that standard.

If it becomes apparent that an IPR declaration/licensing undertaking is unlikely to be provided, the Technical Body Chairman should inform the Legal Advisor in the Secretariat, who will take the necessary action.

Ultimately, it may be necessary for the Secretariat to invoke Clause 8.1 of the Policy, which could require all work on the standard to stop. In any case, the party owning the IPR is allowed three months consideration time after the Technical Body has examined the matter and the Director-General has invited the IPR owner to reconsider its refusal to grant a license. Chairmen should use their judgment (in consultation with the Secretariat) as to whether or not the Technical Body should suspend work on the standard until the matter has been resolved.

### 2.3.4    Record and report information on IPRs

Technical Body Chairmen must be particularly careful to record in the report of each meeting that a reminder was issued and include details of any responses that were made. If there were no responses, then this fact should also be recorded.

Whenever a Chairman becomes aware of the existence of an Essential or potentially Essential IPR he must immediately inform the Legal Advisor of the ETSI Secretariat.

### 2.3.5    Copyrights in ETSI Deliverables

Chairmen shall ensure that all technical proposals adopted by their Technical Body are recorded in the minutes of the meeting, together with any restrictions on their use, and shall report them to the Secretariat. The Secretariat will inform Chairmen if copyright licenses/assignments are required.  If so, then they must be obtained before publication of the document. The Secretariat will determine, with the assistance of the Chairman, which third party copyrights, if any, have to be acknowledged.

### 2.3.6    Confidential information

It may happen that Chairmen or Technical Bodies are offered confidential information. There are certain precautions which must be observed and Chairmen are strongly urged to contact the Secretariat before proceeding.

Clause 10 of the Policy states that information disclosed to ETSI's Technical Bodies is to be regarded as non-confidential, unless all of the following criteria are satisfied:

- the information is in written or other tangible form; and
- the information is identified in writing as confidential at the time it is submitted; and
- the information is first submitted to the Technical Body Chairman and accepted by him as confidential.

Where a Chairman becomes aware that confidential information has been disclosed in breach of a confidential disclosure agreement to which ETSI is a party, he must immediately inform the Secretariat.

### 2.4    ETSI Secretariat Duties

The Secretariat, and especially the Legal Advisor, have a general duty to assist the Chairmen in IPR matters. In addition to this, the Secretariat is responsible for the actions below:

### 2.4.1    Information on Essential IPRs in ETSI Deliverables

The ETSI Secretariat will ensure that an appropriate reminder of the duty to disclose the identity of Essential IPRs is included in all published ETSI Deliverables in the form of a standard text.

Specifically, the Secretariat shall ensure that the following marking appears in ETSI Deliverables prior to Publication, Member vote, Public Enquiry or National Vote:

Page 12
ETSI Guide on IPRs, 22 November 2006

**Intellectual Property Rights**
IPRs essential or potentially essential to the present document may have been declared to
ETSI. The information pertaining to these essential IPRs, if any, is publicly available for
**ETSI members and non-members**, and can be found in SR 000 314: "*Intellectual
Property Rights (IPRs); Essential, or potentially Essential, IPRs notified to ETSI in respect
of ETSI standards*", which is available from the ETSI Secretariat. Latest updates are
available on the ETSI Web server (http://www.etsi.org/ipr).

Pursuant to the ETSI IPR Policy, no investigation, including IPR searches, has been
carried out by ETSI. No guarantee can be given as to the existence of other IPRs not
referenced in SR 000 314 (or the updates on the ETSI Web server) which are, or may be,
or may become, essential to the present document.

**2.4.2    Initiate a procedure of Clause 8 when no licensing declaration can be obtained**

Where an IPR licensing declaration cannot be obtained because of the refusal by the essential IPR
owner, the ETSI Secretariat is obliged to initiate the procedure set out in Clause 8 of the ETSI IPR
Policy.

**2.4.3    Non response by an IPR owner**

In situation where there has been no response from an IPR owner to a request for undertaking/licensing
declaration within the three months specified in Clause 6.1 of the IPR Policy or the response is not
sufficiently defined the steps listed in Clause 8 of the IPR Policy should be applied.

**2.4.4    Redrafting of ETSI Deliverables**

Published Standards or Technical Specifications should not be redrafted because a change on the
essentiality of an IPR arises unless the required undertaking/licensing declaration has not been
provided within the three month period foreseen under Clause 6.1 of the IPR Policy, or has been
refused. Any IPR changes should be entered into the ETSI IPR Database by the Secretariat, showing
the date of the entry.

**2.4.5    Disclose copyright identified in ETSI documentation**

The copyright of ETSI documentation, including that produced in its Technical Bodies, is owned by
ETSI. The Secretariat shall ensure that the following marking appears in ETSI Deliverables prior to
Publication, Member vote, Public Enquiry or National Vote:

Reproduction is only permitted for the purpose of standardization work
undertaken within ETSI.

The copyright and the foregoing restrictions extend to reproduction in all media.

© European Telecommunications Standards Institute yyyy.
All rights reserved.

This marking shall also appear in document templates provided to the Technical Organization by the
Secretariat.

**2.4.6    Acknowledgement of third parties copyright**

Due acknowledgement of copyrights owned by third parties, which are identifiable in ETSI
documentation, must be made in the following form:

Some material contained herein is the copyright of, or has been supplied
by...(insert name of party in question).

This legend should appear on the ETSI documents and/or media concerned and should immediately
follow the copyright legend(s) referred to above.

In response to the obligation on Chairmen to report to the Secretariat any copyright restrictions in technical proposals adopted by their Technical Body, the Secretariat will inform Chairmen if copyright licenses/assignments are required. If so, then they must be obtained before publication of the document. The Secretariat will determine, with the assistance of the Chairman, which third party copyrights, if any, have to be acknowledged.

### 2.4.7    Reporting of a substantial IPR problem

The ETSI Director-General should bring any [substantial] IPR problem to the ETSI Board and/or General Assembly for further discussion.

### 2.4.8    Maintenance of information on Essential IPRs

The Secretariat is responsible for the maintenance of the ETSI IPR online database and the ETSI Special Report 000 314 (see sections 3.1 and 3.2 of this guide).

## 3    Information on Essential IPRs by ETSI

All information statements and licensing declarations of IPRs received by ETSI are publicly available to ETSI Members and standards' implementers via two means: The ETSI Special Report (SR) 000 314 and the ETSI IPR Online Database.

### 3.1    Where to find information on essential IPRs

### 3.1.1    ETSI Special Report 000 314

The ETSI Special report SR 000 314 is an ETSI Deliverable entirely dedicated to information on IPRs which have been notified to ETSI as being Essential, or potentially Essential, to ETSI standards. This SR is generated twice a year and offers a summary of the information contained in the ETSI IPR Online database as of the time it is generated.

In case of any conflict between the information contained in SR 000 314 and the information contained in the ETSI IPR Online Database, the contents of the database takes precedence.

ETSI SR 000 314 can be found at: http://webapp.etsi.org/ipr.

### 3.1.2    The ETSI IPR Online Database

The ETSI IPR Online Database is an application that has been developed by the ETSI Secretariat to allow electronic online access to Information Statements and Licensing Declarations received by ETSI.

Like the SR 000 314, the ETSI IPR Online Database contains IPRs, particularly patents and patent applications, which have been notified to ETSI as being essential, or potentially essential, to ETSI standards.

Unless otherwise specified, all IPRs contained herein have been notified to ETSI, with an undertaking from the owner to grant licenses according to the terms and conditions of Clause 6.1 of Annex 6 of the ETSI Rules of Procedure (the ETSI IPR Policy).

It is important to note that the ETSI IPR online database provides data that is based on the information received, i.e.:

- ETSI has not checked the validity of the information, nor the relevance of the identified patents/patent applications to the ETSI standards and cannot confirm, or deny, that the patents/patent applications are, in fact, essential, or potentially essential,
- No investigation or IPR searches have been carried out by ETSI and therefore, no guarantee can be given concerning the existence of other IPRs which are, or may become, essential;
- Potential licensees should use the information in this database at their discretion and should contact the patent holder, for example to establish the status of a disclosed patent family, prior to making a patent licensing decision.

The ETSI IPR Online Database can be found at: http://webapp.etsi.org/ipr.

### 3.1.3     Requests to the ETSI Secretariat

Whenever requested, the ETSI Secretariat shall provide any details on information statements and licensing undertakings/licensing declarations that it has received. The main contact point is the ETSI Legal Advisor.

### 3.2     What type of information and procedures for updates

IPR information reflected by ETSI is based on the information received. ETSI has not checked the validity of the information, nor the relevance of the identified patents/patent applications to the ETSI standards and cannot confirm, or deny, that the patents/patent applications are, in fact, essential, or potentially essential. No investigation or IPR searches have been carried out by ETSI and therefore, no guarantee can be given concerning the existence of other IPRs which are, or may become, essential.

### 3.2.1     Assessment of IPR rights

As a general principle, ETSI does not perform any check on the status and validity of any Essential IPRs notified to ETSI.

In addition, ETSI does not perform any search for Essential IPRs which may exist and have not been notified.

### 3.2.2     Update procedure for the ETSI IPR Online database

In addition to the entry of new disclosures and undertakings/licensing declarations, existing data in the ETSI IPR Database should only be updated based on information received from IPR holders or as the result of a General Assembly decision, in particular with respect to the following cases:

- **Completion of an existing data entry,** e.g. the publication number, identification of standard.

- **Updating of legal information,** such as change of legal status of an IPR (e.g. grant, dropped, revoked or expired), change of ownership of the IPR.

- **Addition of information concerning studies performed on the essentiality of an IPR:** Members are obliged to disclose IPRs, which might be essential and ETSI is obliged to make these disclosures available to Members. This disclosure reflects, of course, only an opinion of the Member and some facts on the IPRs, but the Member is responsible for the content. Any further opinion should be added only with the agreement of the Member or to implement a General Assembly decision.

- **Removal of IPR disclosures at the request of the IPR holder:** Members are obliged to declare IPRs which they believe to be essential. A license undertaking/licensing declaration for these IPRs is also published. ETSI is obliged to publish this undertaking/licensing declaration. Any such removal shall be tracked in the IPR on-line database.

- **Removal of IPR disclosures in exceptional circumstances:** Removals not requested by the IPR holder shall only be performed following a decision taken by the General Assembly. Any such removal shall be tracked in the IPR on-line database.

## 4     Other ETSI IPR Policy matters

### 4.1     Licensing terms

Specific licensing terms and negotiations are commercial issues between the companies and shall not be addressed within ETSI. Technical Bodies are not the appropriate place to discuss IPR issues. Technical Bodies do not have the competence to deal with commercial issues. Members attending ETSI Technical Bodies are often technical experts who do not have legal or business responsibilities with

regard to licensing issues. Discussion on licensing issues among competitors in a standards making process can significantly complicate, delay or derail this process.

Without prejudice to ETSI IPR Policy and other sections of this Guide, voluntary, unilateral, public, ex ante disclosures of licensing terms by licensors of Essential IPRs are not prohibited under ETSI Directives. Licensing terms from such disclosures may, in some circumstances, improve transparency for individual Members in considering technologies for inclusion in STANDARDS and TECHNICAL SPECIFICATIONS.

## 4.2    Dispute Resolution

ETSI Members should attempt to resolve any dispute related to the application of the IPR Policy bilaterally in a friendly manner.

Should this fail, the Members concerned are invited to inform the ETSI GA in case a friendly mediation can be offered by other ETSI Members and/or the ETSI Secretariat.

However, it should be noted that once an IPR (patent) has been granted, in the absence of an agreement between the parties involved, the national courts of law have the sole authority to resolve IPR disputes.

## 4.3    Notice on the use of NDAs in IPR negotiations

It is recognized that Non Disclosure Agreements (NDAs) may be used to protect the commercial interests of both potential licensor and potential licensee during an Essential IPR licensing negotiation, and this general practice is not challenged. Nevertheless, ETSI expects its Members (as well as non-ETSI Members) to engage in an impartial and honest Essential IPR licensing negotiation process for FRAND terms and conditions.

## 4.4    Financial contingency

Members developing products based on standards where there may be Essential IPRs, but there is uncertainty, have mechanisms available which they can use to minimize their risk. As a non-exclusive example, a Member might wish to put in place financial contingency, based on their assessment of "reasonable", against the possibility that further/additional license fees might become payable.

## 4.5    Rationale and clarifying texts for the changes in Clause 4.1 of the ETSI IPR Policy

A revised version of the Clause 4.1 of the ETSI IPR Policy was adopted by the 46th General Assembly on November 2005. This revision was induced by the EC DG COMPETITION in its concern to generate a general awareness of the risk of "patent ambush" situation in the standard making process.

### 4.5.1    History of changes

Prior to the 46th ETSI General Assembly, Clause 4.1 of the ETSI IPR Policy read:

*4.1    Each MEMBER shall use its reasonable endeavours to timely inform ETSI of ESSENTIAL IPRs it becomes aware of. In particular, a MEMBER submitting a technical proposal for a STANDARD or TECHNICAL SPECIFICATION shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.*

During the 46th ETSI General Assembly the modifications below to Clause 4.1 of the ETSI IPR Policy were adopted:

*4.1    Subject to Clause 4.2 below, Eeach MEMBER shall use its reasonable endeavours, in particular during the development of a STANDARD or TECHNICAL SPECIFICATION where it participates, in particularto timely inform ETSI of ESSENTIAL IPRs in a timely fashionit becomes aware of. In particular, a MEMBER submitting a technical proposal for a STANDARD or TECHNICAL SPECIFICATION shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.*

**Page 16**
**ETSI Guide on IPRs, 22 November 2006**

**4.5.2**    **EC DG COMPETITION's position regarding the rationale and scope for the changes of Clause 4.1 of the ETSI IPR Policy**

The extracts below are taken from various correspondences between ETSI and the EC DG COMPETITION services.

**4.5.2.1**    **Addition of the sentence "Subject to Clause 4.2 below..." and Deletion of the phrase "... it is aware of or becomes aware of."**

**RATIONALE from DG COMPETITION**

" .... the deletion of the phrase *becomes aware of* is important from the Commission's "patent ambush" perspective...."

Source:    DG COMPETITION letter dated 26 April 2005 reproduced in B#52(05)17, Annex, Footnote 2.

**CLARIFYING LANGUAGE from DG COMPETITION"**

" .... the deletion of the phrase *becomes aware of* is important from the Commission's "patent ambush" perspective, [but] does not imply an extra burden on ETSI Members - by definition, a company can only inform about essential IPRs if it has knowledge of such IPRs."

Source:    DG COMPETITION letter dated 26 April 2005 reproduced in B#52(05)17, Annex, Footnote 2.

"... the deletion of the words *becomes aware of* "*arguably imposes a higher burden of disclosure for the ETSI Members*". More specifically, you raise the concern that this might oblige Members to conduct IPR searches. We do not believe that this concern is warranted. As Mr. Mensching noted in his letter of 28 January 2005, the rationale behind the proposed deletion of "*becomes aware of*" is that we would expect a Member in a standard-setting process to have a general awareness of the scope of its IPR rights in that area, and therefore where necessary, "*use its reasonable endeavours*" to identify these IPR.[1] However, as has been explicitly confirmed to you in writing on numerous occasions, this does not mean that we would expect Members[2] to conduct patent/IPR searches. As such, our proposed change does not create a heightened expectation for Members to identify essential IPRs. Nor does it create any contradiction with Article 4.2 of ETSI's IPR policy. Nevertheless, in order to explicitly convey this message in ETSI's IPR policy itself, we would be willing to incorporate, at the beginning of Article 4.1, the phrase "*Subject to Clause/Article 4.2 below*". "

Source:    DG COMPETITION LETTER dated 29 March 2005 reproduced in GA#45(05)22, Annex I, paragraph 4

**4.5.2.2**    **Addition of the phrase "... where it participates ..."**

**RATIONALE from DG COMPETITION**

"The addition of the phrase "*in which it participates*" therefore addresses the concern expressed by some ETSI members, and also means that to the extent that a member is not participating in an ETSI standards development committee/working group but becomes aware of certain essential IPRs,[3] a general obligation to inform ETSI of the essential IPRs remains".

Source:    DG COMPETITION LETTER dated 26 April 2005 reproduced in B#52(05)17r1, Annex III (paragraph 4 of Annex to the EC letter of 26.04.05).

---

[1]    Once again, this is consistent with the notion of members being invited by the meeting Chairman to identify essential IPR at the beginning of each relevant meeting.

[2]    whether or not they are participating in the development of a standard.

[3]    In this regard, as you correctly noted at the General Assembly, the deletion of the phrase "*becomes aware of*" is important from the Commission's "patent ambush" perspective, but does not imply an extra burden on ETSI members - by definition, a company can only inform about essential IPRs if it has knowledge of such IPRs.

#### 4.5.2.3     Re the expression "in particular"

**CLARIFYING LANGUAGE from DG COMPETITION**

> "Firstly, I note your concern that DG Competition's proposed wording might be interpreted as narrowing the obligation to disclose essential IPR to a very specific phase of the standardisation process. As you stress, we have already confirmed that our proposed changes do not mean that the window of opportunity to declare essential IPR is closed when a standard is adopted. However, to more explicitly address your concern in Article 4.1 of the IPR rules, we are happy to accept your proposed addition of the words *"in particular"*.

> Source:     DG COMPETITION LETTER dated 29 March 2005 reproduced in GA#45(05)22, Annex I, paragraph 2

#### 4.5.3     ETSI's position regarding the rationale and scope for the changes of Clause 4.1 of the ETSI IPR Policy

The extracts below has been developed, with the support of EC DG COMPETITION, by the ETSI membership and endorsed by the 46th ETSI General Assembly.

#### 4.5.3.1     Re the addition of the sentence "Subject to Clause 4.2 below…"

The insertion of the phrase "Subject to Clause 4.2 below" at the beginning of the first sentence of the new text of Clause 4.1 is intended to reflect the general framework under which the requirement of disclosure of Clause 4.1 operates. This insertion explicitly conveys the notion that the requirement of disclosure contained in Clause 4.1 is not to be interpreted as an obligation on ETSI Members to conduct IPR searches.

As DG COMPETITION explicitly confirmed to ETSI in writing on numerous occasions;

- the new text of Clause 4.1 "does not mean that we would expect Members4 to conduct patent/IPR searches. As such, our proposed change does not create a heightened expectation for Members to identify essential IPRs. Nor does it create any contradiction with Article 4.2 of ETSI's IPR policy. Nevertheless, in order to explicitly convey this message in ETSI's IPR policy itself, we would be willing to incorporate, at the beginning of Article 4.1, the phrase "Subject to Clause/Article 4.2 below".

> Source:     Letter from Angel Trabacete, DG COMPETITION, to Karl Heinz Rosenbrock, ETSI Director-General, 29 March 2005 reproduced in GA#45(05)22, Annex I, paragraph 4.

- "it is clear that it should not be reasonably expected that an ETSI Member should have a duty to take steps to find out about potential IPR it might have relating to ETSI standards development work in areas/committees where that Member is not participating in that work (no more than it should be expected, as we have previously confirmed, that a Member carry out patent/IPR searches)."

> Source:     Letter from Angel Tradacete, DG COMPETITION, to Karl Heinz Rosenbrock, ETSI Director-General, 26 April 2005, reproduced in B#52(05)17r1, Annex III (paragraph 2 of Annex to the EC letter of 26.04.05).

#### 4.5.3.2     Re the deletion of the phrase "… it is aware of or becomes aware of."

DG COMPETITION's intention in pursuing deletion of the phrase *"it becomes aware of"* is viewed as important from the patent ambush perspective.[5]  The idea is to prevent an ETSI Member from intentionally not disclosing Essential Intellectual Property Rights (EIPR) during the standardization process, and after the standard has issued, then disclosing such EIPR with the intention to not license

---

**4**    Whether or not they are participating in the development of a standard.

**5**    DG COMPETITION letter dated 26 April 2005

on fair, reasonable, and non-discriminatory (FRAND) terms as expected by ETSI Policy for EIPR[6]. Intentional non-disclosure of EIPR generally occurs in two instances:

1)    when a representative participating in a Technical Body on behalf of a Member has actual knowledge of EIPR, and yet the Member holds back notification; or,

2)    when a member fosters an atmosphere of ignorance amongst its employees participating at ETSI with the intent to avoid its EIPR disclosure and FRAND licensing obligations.

DG COMPETITION has made it clear that the removal of the *"it becomes aware of"* wording is not intended to place a higher burden of disclosure upon a Member, nor is it intended to create a heightened expectation for Members to identify EIPR.[7] This position is consistent with the ETSI IPR Policy and ETSI practice to requiring Members participating in Technical Bodies to respond at the earliest possible time to the Call for IPRs performed by Technical Body Chairmen at the beginning of each meeting, based on the working knowledge of their participants.[8]

Further, it has been explicitly confirmed by DG COMPETITION on numerous occasions that the removal of the words does not mean a Member would be required to conduct patent/IPR searches.[9]

Concern has been raised that removal of the "it becomes aware of" wording places an untenably broad burden of disclosure on ETSI Members. Based on the above, it appears the intent is for the burden to remain the same while identifying conduct whereby "patent ambush" in violation of the ETSI IPR Policy may be assumed.

### 4.5.3.3    Addition of the phrase "... where it participates ..."

The term "where it participates" as employed in Clause 4.1 seeks to clarify that a Member's obligation to use such reasonable endeavours under this Clause should be adhered to in those Technical Bodies or its Working Groups in which an employee (or otherwise authorised representative) of such Member (as defined within the ETSI IPR Policy) performs at least one of the following:

i)     attends a meeting of;
ii)    participates in or contributes, directly or indirectly, to the work of;
iii)   votes on any matter raised within;

such Technical Body or Working Group where such Technical Body or Working Group is responsible for the ETSI Work Item from which such STANDARD or TECHNICAL SPECIFICATION, [as an ETSI Deliverable], has or will result.

### 4.5.3.4    Re the expression "in particular"

The insertion of the phrase *"in particular"* in the first sentence of the new text of Clause 4.1 is intended to reflect the importance placed by DG COMPETITION on a member's informing ETSI of Essential IPRs during the period when that information might be most relevant to the development of a Standard of Technical Specification. DG COMPETITION has made clear (see DG Competition Letter dated 29 March 2005 reproduced in GA#45(05)22, Annex 1, paragraph 2) that the inclusion of this phrase does not mean either that the window of opportunity for a member to declare its Essential IPRs is closed once a standard is adopted or that the member's duty to use its *"reasonable endeavours"* post-adoption is waived or altered.

### 4.5.3.5    Re the expression "Reasonable Endeavours"

The new text of Clause 4.1 of the ETSI IPR Policy provides, in part, that each ETSI Member *"shall use its reasonable endeavours, in particular during the development of a Standard or Technical*

---

[6]    ETSI Guide on Intellectual Property Rights, Section 6.1.
[7]    DG COMPETITION letter dated 28 April 2005.
[8]    ETSI Guide on Intellectual Property Rights, Section 2.3.1.
[9]    DG COMPETITION letter dated 29 March 2005.

*Specification where it participates, to inform ETSI of Essential IPRs in a timely fashion."* Clause 4.2 of the ETSI IPR Policy provides that these disclosure obligations "do however not imply any obligation on Members to conduct IPR searches."

As DG COMPETITION has pointed out, the concept of *"reasonable endeavours"* qualifies the obligation to disclose essential patents. As it has noted, *"it is clear that it should not be reasonably expected that an ETSI Member should have a duty to take steps to find out about potential IPR it might have relating to ETSI standards development work in areas/committees where that Member is not participating in that work (no more than it should be expected, as we have previously confirmed, that a member carry out patent/IPR searches)."*

> Source:    Letter from Angel Tradacete, DG COMPETITION, to Karl Heinz Rosenbrock, ETSI
>            Director General, 26 April 2005, at Annex.

This interpretation by DG COMPETITION is supported by the longstanding interpretation of *"reasonable endeavours"* in the ETSI Guide on Intellectual Property Rights. The steps that must be taken to identify essential patents focus on the activities and knowledge of the ETSI Member's representatives who are active in a particular ETSI matter. Each Technical Body and working group meeting, for example, must begin with a call for IPRs. *See* ETSI Guide on Intellectual Property Rights, Section 2.3.2. *"Members participating in Technical Bodies should respond at the earliest possible time to the Call for IPRs performed by Technical Body Chairmen at the beginning of each meeting, based on the working knowledge of their participants." Id.,* Section 2.1.1.

Accordingly, it seems that the *"reasonable endeavours"* that are to be taken to disclose patents that are essential to a particular ETSI deliverable should be measured in terms of the knowledge of representatives of an ETSI Member who are actively involved in the work of the body developing that ETSI deliverable. This interpretation acknowledges, as DG COMPETITION has noted, that *"reasonable endeavours"* has the benefit of being able to cover different scenarios on their merits on a logical, case-by-case basis."

> Source:    Letter from Angel Tradacete at Annex, note 1.

## Annex A    ETSI Intellectual Property Rights Policy

*See ETSI Rules of Procedure, Annex 6*

**Page 20**
**ETSI Guide on IPRs, 22 November 2006**

**Annex B      ETSI IPR Information Statement and Licensing Declaration Forms**

---

**General IPR licensing declaration**

**IPR Holder/Organisation**

  Legal Name: _____

**Signatory**

  Name: _____

  Position: _____

  Department: _____

  Address: _____

  _____

  Tel: _____ Fax: _____

  E-mail: _____

**General IPR licensing declaration**

  In accordance with the ETSI IPR Policy, Clause 4.1, I hereby inform ETSI that (mark one as appropriate),

         [  ] with reference to ETSI Standard(s) No. _____
         or
         [  ] with reference to ETSI Project name(s) _____
         or
         [  ] with reference to all ETSI Standards

  and with reference to (mark one as appropriate):

         [  ] IPRs contained within technical contributions made by the SIGNATORY and/or
              its AFFILIATES, or
         [  ] any IPRs

  the SIGNATORY hereby declares that it and its AFFILIATES are prepared to grant, subject to reciprocity, irrevocable licenses under its/their IPRs on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy, in respect of the STANDARD(S) or the Project(s), as identified above, to the extent that the IPRs are, become and remain ESSENTIAL to practice that STANDARD or those STANDARDS or, as applicable, any STANDARD resulting from proposals or work items within the current scope of the Project(s), for the field of use of practice of such STANDARD.

  The construction, validity and performance of this DECLARATION shall be governed by the laws of France.

  **Place, Date:**                                    **Signature:**

  _____                          _____
  (Place, Date)                                 (Signed for and on behalf of the SIGNATORY)

  Please return this form duly signed to: ETSI Director-General
  ETSI - 650, route des Lucioles – F-06921 Sophia Antipolis Cedex - FRANCE
  Fax. +33 (0) 4 93 65 47 16

---

## IPR information statement and licensing declaration

**IPR Holder/Organisation**

Legal Name: _____

**Signatory**

Name: _____

Position: _____

Department: _____

Address: _____

_____

Tel.: _____ Fax: _____

E-mail: _____

**IPR information statement**

In accordance with the ETSI IPR Policy, Clause 4.1, I hereby inform ETSI that,

with reference to the technical proposal identified as _____
and/or
in relation to Work Item No. _____
and/or
with reference to ETSI Standard No. _____

it is my belief that the IPRs listed in the attached IPR information statement annex are, or are likely to become, Essential IPRs in relation to that Standard.

**IPR licensing declaration**

The SIGNATORY has notified ETSI that it is the proprietor of the IPRs listed in the attached *IPR information statement annex* and has informed ETSI that it believes that the IPRs may be considered ESSENTIAL to the Standards listed above.

The SIGNATORY and/or its AFFILIATES hereby declare that they are prepared to grant irrevocable licences under the IPRs on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy, in respect of the STANDARD, to the extent that the IPRs remain ESSENTIAL.

This undertaking is made subject to the condition that those who seek licences agree to reciprocate the same in respect of the STANDARD in accordance with Clause 6.1 of the ETSI IPR Policy (delete this paragraph if this condition is not required).

The construction, validity and performance of this DECLARATION shall be governed by the laws of France.

**Place, Date:**                                    **Signature:**

_____                          _____
(Place, Date)                                   (Signed for and on behalf of the SIGNATORY)

Please return this form duly signed to: ETSI Director-General
ETSI - 650, route des Lucioles - F-06921 Sophia Antipolis Cedex - FRANCE
Fax. +33 (0) 4 93 65 47 16

Page 22
ETSI Guide on IPRs, 22 November 2006

## IPR information statement annex

| ETSI Standard / Technical Specification or Work Item | | | | Patent Proprietor | Application No. | Patent No. | Patent Subject Title | OPTIONAL INFORMATION | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Project or Standard name | Work Item or Standard No. | Illustrative Specific part of the standard (e.g. Section) | Version (Y.XX.X) | | | | | Country of registration | Other Patents/Applications No. in same family* | |
| | | | | | | | | | Patent/Application No. | Country/Applicable |
| e.g. UMTS | ETSI TS 125 215 | 6.1.1.2 | V3.5.0 | Abcd | 1131972 | | Scheduling of slotted-mode related measurements | EPO | 1274000 | Australia |
| | | | | | | | | | 99813100.8 | China P.R. |
| | | | | | | | | | 108270 | Finland |
| | | | | | | | | | 11-318161 | Japan |
| | | | | | | | | | 6532226 | USA |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

*Patent family information is provided voluntarily. The completeness and accuracy of any patent family information that is provided cannot be guaranteed.

Please return this form duly signed to: ETSI Director-General
ETSI - 650, route des Lucioles - F-06921 Sophia Antipolis Cedex – France / Fax. +33 (0) 4 93 65 47 16

**Annex C    Check list of the Chairmen's obligations in respect of the notification and disclosure of IPRs**

- Check that the scope statements for work items are sufficiently defined

- Perform "call for IPRs" in Technical Bodies meetings:

  - at the beginning of meetings using the text supplied in Clause 2.3.3 of the IPR Guide.

  - during meetings: (reminder of the formal call of IPRs) as in Clause 2.3.3 of the IPR Guide:

    - on formal submission of a technical solution;
    - on completion of a first stable draft;
    - on working group approval of a draft standard;
    - on TB approval of a draft standard.

- Record that the "call" has been performed.

- Record any responses received (or the absence thereof) and inform the Secretariat.

- Record any copyright identified (or absence thereof) and inform the Secretariat.

# EXHIBIT B

## ETSI IPR Policy

**Extracted from the ETSI Rules of Procedure, 22 November 2006**

### Annex 6:    ETSI Intellectual Property Rights Policy

### 1    Introduction

The General Assembly of ETSI has established the following Intellectual Property Rights POLICY.

### 2    Definitions

Terms in the POLICY which are written in capital letters shall have the meaning set forth in Clause 15 entitled DEFINITIONS.

### 3    Policy Objectives

3.1    It is ETSI's objective to create STANDARDS and TECHNICAL SPECIFICATIONS that are based on solutions which best meet the technical objectives of the European telecommunications sector, as defined by the General Assembly. In order to further this objective the ETSI IPR POLICY seeks to reduce the risk to ETSI, MEMBERS, and others applying ETSI STANDARDS and TECHNICAL SPECIFICATIONS, that investment in the preparation, adoption and application of STANDARDS could be wasted as a result of an ESSENTIAL IPR for a STANDARD or TECHNICAL SPECIFICATION being unavailable. In achieving this objective, the ETSI IPR POLICY seeks a balance between the needs of standardization for public use in the field of telecommunications and the rights of the owners of IPRs.

3.2    IPR holders whether members of ETSI and their AFFILIATES or third parties, should be adequately and fairly rewarded for the use of their IPRs in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS.

3.3    ETSI shall take reasonable measures to ensure, as far as possible, that its activities which relate to the preparation, adoption and application of STANDARDS and TECHNICAL SPECIFICATIONS, enable STANDARDS and TECHNICAL SPECIFICATIONS to be available to potential users in accordance with the general principles of standardization.

### 4    Disclosure of IPRs

4.1    Subject to Clause 4.2 below, each MEMBER shall use its reasonable endeavours, in particular during the development of a STANDARD or TECHNICAL SPECIFICATION where it participates, to inform ETSI of ESSENTIAL IPRs in a timely fashion. In particular, a MEMBER submitting a technical proposal for a STANDARD or TECHNICAL SPECIFICATION shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.

4.2    The obligations pursuant to Clause 4.1 above do however not imply any obligation on MEMBERS to conduct IPR searches.

### 5    Procedures for Committees

ETSI shall establish guidelines for the chairmen of COMMITTEES with respect to ESSENTIAL IPRs.

## 6 Availability of Licences

6.1 When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an undertaking in writing that it is prepared to grant irrevocable licences on fair, reasonable and non-discriminatory terms and conditions under such IPR to at least the following extent:

- MANUFACTURE, including the right to make or have made customized components and sub-systems to the licensee's own design for use in MANUFACTURE;

- sell, lease, or otherwise dispose of EQUIPMENT so MANUFACTURED;

- repair, use, or operate EQUIPMENT; and

- use METHODS.

The above undertaking may be made subject to the condition that those who seek licences agree to reciprocate.

6.2 As long as the requested undertaking of the IPR owner is not granted, the COMMITTEE Chairmen should, if appropriate, in consultation with the ETSI Secretariat use their judgment as to whether or not the COMMITTEE should suspend work on the relevant parts of the STANDARD or TECHNICAL SPECIFICATION until the matter has been resolved and/or submit for approval any relevant STANDARD or TECHNICAL SPECIFICATION.

6.3 At the request of the European Commission and/or EFTA, initially for a specific STANDARD or TECHNICAL SPECIFICATION or a class of STANDARDS/TECHNICAL SPECIFICATIONS, ETSI shall arrange to have carried out in a competent and timely manner an investigation including an IPR search, with the objective of ascertaining whether IPRs exist or are likely to exist which may be or may become ESSENTIAL to a proposed STANDARD or TECHNICAL SPECIFICATIONS and the possible terms and conditions of licences for such IPRs. This shall be subject to the European Commission and/or EFTA meeting all reasonable expenses of such an investigation, in accordance with detailed arrangements to be worked out with the European Commission and/or EFTA prior to the investigation being undertaken.

## 7 Information on IPR by ETSI

7.1 Any published STANDARD or TECHNICAL SPECIFICATION shall include information pertaining to ESSENTIAL IPRs which are brought to the attention of ETSI prior to such publication.

7.2 ETSI shall establish appropriate procedures to allow access to information at any time with respect to ESSENTIAL IPRs which have been brought to the attention of ETSI.

## 8 Non-availability of Licences

8.1 Non-availability of licences prior to the publication of a STANDARD or a TECHNICAL SPECIFICATION

8.1.1 Existence of a viable alternative technology

Where prior to the publication of a STANDARD or a TECHNICAL SPECIFICATION an IPR owner informs ETSI that it is not prepared to license an IPR in respect of a

STANDARD or TECHNICAL SPECIFICATION in accordance with Clause 6.1 above, the General Assembly shall review the requirement for that STANDARD or TECHNICAL SPECIFICATION and satisfy itself that a viable alternative technology is available for the STANDARD or TECHNICAL SPECIFICATION which:

- is not blocked by that IPR; and

- satisfies ETSI's requirements.

8.1.2    Non-existence of a viable alternative technology

Where, in the opinion of the General Assembly, no such viable alternative technology exists, work on the STANDARD or TECHNICAL SPECIFICATION shall cease, and the Director-General of ETSI shall observe the following procedure:

a)    If the IPR owner is a MEMBER,

i)    the Director-General of ETSI shall request that MEMBER to reconsider its position.

ii)    If that MEMBER however decides not to withdraw its refusal to license the IPR, it shall then inform the Director-General of ETSI of its decision and provide a written explanation of its reasons for refusing to license that IPR, within three months of its receipt of the Director-General's request.

iii)    The Director-General of ETSI shall then send the MEMBER's explanation together with relevant extracts from the minutes of the General Assembly to the ETSI Counsellors for their consideration.

b)    If the IPR owner is a third party,

i)    the Director-General of ETSI shall, wherever appropriate, request full supporting details from any MEMBER who has complained that licences are not available in accordance with Clause 6.1 above and/or request appropriate MEMBERS to use their good offices to find a solution to the problem.

ii)    Where this does not lead to a solution the Director-General of ETSI shall write to the IPR owner concerned for an explanation and request ultimately that licences be granted according to Clause 6.1 above.

iii)    Where the IPR owner refuses the Director-General's request and decides not to withdraw its refusal to license the IPR or does not answer the letter within three months after the receipt of the Director-General's request, the Director-General shall then send the IPR owner's explanation, if any, together with relevant extracts from the minutes of the General Assembly to the ETSI Counsellors for their consideration.

8.1.3    Prior to any decision by the General Assembly, the COMMITTEE should in consultation with the ETSI Secretariat use their judgment as to whether or not the COMMITTEE should pursue development of the concerned parts of the STANDARD or a TECHNICAL SPECIFICATION based on the non-available technology and should look for alternative solutions.

8.2 Non-availability of licences after the publication of a STANDARD or a TECHNICAL SPECIFICATION

Where, in respect of a published STANDARD or TECHNICAL SPECIFICATION, ETSI becomes aware that licences are not available from an IPR owner in accordance with Clause 6.1 above, that STANDARD or TECHNICAL SPECIFICATION shall be referred to the Director-General of ETSI for further consideration in accordance with the following procedure:

i) The Director-General shall request full supporting details from any MEMBER or third party who has complained that licences are not available in accordance with Clause 6.1 above.

ii) The Director-General shall write to the IPR owner concerned for an explanation and request that licences be granted according to Clause 6.1 above. Where the concerned IPR owner is a MEMBER, it shall inform the Director-General of ETSI of its decision and provide a written explanation of its reasons in case of continuing refusal to license that IPR.

iii) Where the IPR owner refuses the Director-General's request or does not answer the letter within three months, the Director-General shall inform the General Assembly and, if available, provide the General Assembly with the IPR owner's explanation for consideration. A vote shall be taken in the General Assembly on an individual weighted basis to immediately refer the STANDARD or TECHNICAL SPECIFICATION to the relevant COMMITTEE to modify it so that the IPR is no longer ESSENTIAL.

iv) Where the vote in the General Assembly does not succeed, then the General Assembly shall, where appropriate, consult the ETSI Counsellors with a view to finding a solution to the problem. In parallel, the General Assembly may request appropriate MEMBERS to use their good offices to find a solution to the problem.

v) Where (iv) does not lead to a solution, then the General Assembly shall request the European Commission to see what further action may be appropriate, including non-recognition of the STANDARD or TECHNICAL SPECIFICATION in question.

In carrying out the foregoing procedure due account shall be taken of the interest of the enterprises that have invested in the implementation of the STANDARD or TECHNICAL SPECIFICATION in question.

# 9    ETSI ownership of IPRs

9.1 The ownership of the copyright in STANDARDS and TECHNICAL SPECIFICATIONS documentation and reports created by ETSI or any of its COMMITTEES shall vest in ETSI but due acknowledgement shall be given to copyrights owned by third parties that are identifiable in ETSI copyrighted works.

9.2 In respect of IPRs other than copyright in STANDARDS and TECHNICAL SPECIFICATIONS documentation and reports, ETSI shall only seek ownership of IPRs generated either by its employees or by secondees to ETSI from organizations who are not MEMBERS.

9.3 ETSI shall, on request by a non-member, grant licences to that non-member on fair and reasonable terms and conditions in respect of any IPRs, other than those referred to in Clause 9.1 above, owned by ETSI. MEMBERS shall be allowed to use IPRs owned by ETSI free of charge.

## 10    Confidentiality

The proceedings of a COMMITTEE shall be regarded as non-confidential except as expressly provided below and all information submitted to a COMMITTEE shall be treated as if non-confidential and shall be available for public inspection unless:

- the information is in written or other tangible form; and

- the information is identified in writing, when submitted, as confidential; and

- the information is first submitted to, and accepted by, the chairman of the COMMITTEE as confidential.

CONFIDENTIAL INFORMATION incorporated in a STANDARD or TECHNICAL SPECIFICATION shall be regarded as non-confidential by ETSI and its MEMBERS, from the date on which the STANDARD or TECHNICAL SPECIFICATION is published.

## 11    Reproduction of Standards Documentation

MEMBERS may make copies of STANDARDS and TECHNICAL SPECIFICATIONS documentation produced by ETSI for their own use free of charge but may not distribute such copies to others.

## 12    Law and Regulation

The POLICY shall be governed by the laws of France. However, no MEMBER shall be obliged by the POLICY to commit a breach of the laws or regulations of its country or to act against supranational laws or regulations applicable to its country insofar as derogation by agreement between parties is not permitted by such laws.

Any right granted to, and any obligation imposed on, a MEMBER which derives from French law and which are not already contained in the national or supranational law applicable to that MEMBER is to be understood as being of solely a contractual nature.

## 13    Policy Decisions

Without prejudice to ETSI's Statutes and Rules of Procedure, no decisions shall be taken by ETSI in relation to implementation of the POLICY unless supported by a 71 % majority of the weighted individual votes cast by MEMBERS.

## 14    Violation of Policy

Any violation of the POLICY by a MEMBER shall be deemed to be a breach, by that MEMBER, of its obligations to ETSI. The ETSI General Assembly shall have the authority to decide the action to be taken, if any, against the MEMBER in breach, in accordance with the ETSI Statutes.

## 15    Definitions

1    "AFFILIATE" of a first legal entity means any other legal entity:

- directly or indirectly owning or controlling the first legal entity, or

- under the same direct or indirect ownership or control as the first legal entity, or

- directly or indirectly owned or controlled by the first legal entity,

for so long as such ownership or control lasts.

Ownership or control shall exist through the direct or indirect:

- ownership of more than 50 % of the nominal value of the issued equity share capital or of more than 50 % of the shares entitling the holders to vote for the election of directors or persons performing similar functions, or

- right by any other means to elect or appoint directors, or persons who collectively can exercise such control. A state, a division of a state or other public entity operating under public law, or any legal entity, linked to the first legal entity solely through a state or any division of a state or other public entity operating under public law, shall be deemed to fall outside the definition of an AFFILIATE.

2    **"COMMITTEE"** shall mean any Technical Body of ETSI and shall include ETSI Projects, Technical Committees, ETSI Partnership Projects, and their Working Groups.

3    **"CONFIDENTIAL INFORMATION"** shall mean all information deemed to be confidential pursuant to Clause 10 of the POLICY disclosed directly or indirectly to the MEMBER.

4    **"EQUIPMENT"** shall mean any system, or device fully conforming to a STANDARD.

5    **"METHODS"** shall mean any method or operation fully conforming to a STANDARD.

6    **"ESSENTIAL"** as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR. For the avoidance of doubt in exceptional cases where a STANDARD can only be implemented by technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL.

7    **"IPR"** shall mean any intellectual property right conferred by statute law including applications therefor other than trademarks. For the avoidance of doubt rights relating to get-up, confidential information, trade secrets or the like are excluded from the definition of IPR.

8    **"MANUFACTURE"**, shall mean production of EQUIPMENT.

9    **"MEMBER"** shall mean a member or associate member of ETSI. References to a MEMBER shall wherever the context permits be interpreted as references to that MEMBER and its AFFILIATES.

10   **"POLICY"** shall mean ETSI's Intellectual Property Rights Policy.

11   **"STANDARD"** shall mean any standard adopted by ETSI including options therein or amended versions and shall include European Standards (ENs) (telecommunications series), ETSI Standards (ESs), Common Technical Regulations (CTRs) which are taken from ENs (telecommunications series) and including drafts of any of the foregoing, and documents made under the previous nomenclature, including ETSs, I-ETSs, parts of NETs and TBRs, the technical specifications of which are available to all MEMBERS, but not including any standards, or parts thereof, not made by ETSI.

The date on which a STANDARD is considered to be adopted by ETSI for the purposes of this POLICY shall be the date on which the technical content of that STANDARD was available to all MEMBERS.

12    **"TECHNICAL SPECIFICATION"** shall mean any Technical Specification (TS) adopted
by ETSI including options therein or amended version including drafts, the Technical
Specifications of which are available to all MEMBERS, but not including any technical
specifications, or parts thereof, not made by ETSI.

The date on which a TECHNICAL SPECIFICATION is considered to be adopted by
ETSI for the purposes of this POLICY shall be the date on which the technical content
of that TECHNICAL SPECIFICATION was available to all MEMBERS.

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA INC.,

    Plaintiffs,

       v.

INTERDIGITAL COMMUNICATIONS
CORPORATION and INTERDIGITAL
TECHNOLOGY CORPORATION,

    Defendants.

C.A. No. 05-16-JJF

## PLAINTIFFS' INTERROGATORY RESPONSE PURSUANT TO PARAGRAPH TWO OF THE AMENDED CASE MANAGEMENT ORDER

          Pursuant to Rule 26 of the Federal Rules of Civil Procedure and the Amended Case Management Order entered by the Court on August 29, 2007, Plaintiffs Nokia Corporation and Nokia Inc. ("Nokia") hereby serve on Defendants InterDigital Communications Corporation and InterDigital Technology Corporation ("Defendants" or "InterDigital") Plaintiffs' Interrogatory Response Pursuant to Paragraph Two of the Amended Case Management Order.

### AMENDED CASE MANAGEMENT ORDER ¶ 2 INTERROGATORY:

          State in detail the ETSI definition of "Essential" that (Nokia/InterDigital) contends should be applied by the Court to determine the claims and counterclaims in this action.

### NOKIA RESPONSE:

          Nokia contends that the definition of "essential" should be applied as it appears in the ETSI IPR Policy:

          "ESSENTIAL" as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking

into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR. For the avoidance of doubt in exceptional cases where a STANDARD can only be implemented by technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL.

The first sentence excludes patents that are considered to be commercially essential, but not technically essential.

The second sentence applies, as stated, to "exceptional cases" where there are a number of ways of implementing a standard, but *all* of them are patented.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
Attorneys for Plaintiffs

OF COUNSEL:

Patrick Flinn
Randall Allen
Lance Lawson
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000

September 18, 2007
1236614

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA
INC.,

      Plaintiffs,

          v.

INTERDIGITAL COMMUNICATIONS
CORPORATION and INTERDIGITAL
TECHNOLOGY CORPORATION,

      Defendants.

C.A. No. 05-16-JJF

## VERIFICATION

I, Kalle Moilanen, state as follows:

      I am a IPR Manager for Nokia Corporation. As such, I am authorized to make this verification. I have read Plaintiffs' Interrogatory Response Pursuant to Paragraph Two of the Amended Case Management Order, and the facts stated therein are true to the best of my knowledge, information, or belief.

      I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed at Salo this 18th day of September, 2007.

_Kalle Moilanen_

Kalle Moilanen
IPR Manager
Nokia Corporation

3

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on September 18, 2007 copies of the

foregoing were caused to be served upon the following in the manner indicated:

### BY E-MAIL

Ron E. Shulman
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050

Mark D. Flanagan
Wilmer Cutler Pickering Hale and
    Dorr LLP
1117 California Avenue
Palo Alto, CA 94304

Christopher P. Isaac
Finnegan, Henderson, Farabow,
    Garrett & Dunner, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190-5675

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

Julia Heaney (#3052)

EXHIBIT D

REDACTED

# EXHIBIT E

REDACTED

# EXHIBIT F



Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027  Direct Phone
302 658-1192  Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

June 4, 2007

**VIA EMAIL AND HAND DELIVERY**

Collins J. Seitz, Jr., Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19899

Re:     *Nokia Corp, et al. v. InterDigital Comms., et al.*
        <u>C.A. No. 05-16 (JJF)</u>

Dear Special Master Seitz:

Pursuant to the direction of the Special Master, defendants and counter-claimants InterDigital Communications Corporation and InterDigital Technology Corporation (collectively, "InterDigital") hereby submit the following statement regarding case management, which introduces InterDigital's case management proposal. As explained in more detail below, InterDigital proposes sequencing the case by having a separate, initial phase, during which the complete universe of statements at issue would be identified and the legal actionability of those statements would be resolved. After this initial phase, which is likely to narrow or eliminate many, if not all, of the issues in the case, the Court and the parties would address how to handle the balance of the issues remaining in the case.

Nokia has indicated that it proposes bifurcating liability and damages issues. For the reasons discussed below, InterDigital submits that such a plan would not solve the real problem with the current schedule.

We will be prepared to discuss the matters addressed in this letter at the conference scheduled for June 5, 2007.

## INTRODUCTION

As the Special Master is aware, this case has been pending for more than two years, and the Court and the parties now find themselves at a crossroads. The road chosen at this juncture is critically important because it will have broad implications for the breadth of work — discovery, motions, claim construction and trial — that the Court, the Special Master, the parties and third parties will have to undertake to resolve the many issues currently presented. Simply put, absent thoughtful case management, the case as presently postured will require the Court, the Special

Collins J. Seitz, Jr., Esquire
June 4, 2007
Page 2

Master and the parties to confront the nearly impossible task of taking discovery on, construing the claims of, and litigating the "essentiality," infringement, validity and enforceability of *more than 250* patents declared by the respective parties to ETSI.[1] Indeed, this case is on a course that will make it the largest patent case in history — albeit one without a single claim of patent infringement or a single declaratory relief claim.

A conventional case management schedule like the current one — comprising a sequence of fact discovery, followed by expert discovery, briefing on claim construction, dispositive motions and (if necessary) trial — can accommodate most typical patent cases involving one to three patents. Such an approach is, however, completely ill-suited to a case involving 250+ patents. Indeed, if a conventional case management schedule were to be followed in this case, with no sequencing of legal or factual issues, it likely would take years merely to take discovery on the patent issues and construe the meaning of even representative claims of each of the 250+ patents involved. Apart from the sheer duration of that approach, it also would use inefficiently the resources of the Court, the Special Master and the parties. The good news is that a lengthy, inefficient case can be avoided with some creative re-crafting of the case management schedule.

The parties, in fact, appear to be in broad agreement that some form of phasing of the case — in which certain threshold legal and factual issues would be decided before others, thereby narrowing the issues to be discovered and decided — would be appropriate. As noted above, Nokia advocates bifurcating liability and damages issues. Thus, from the parties' perspective at least, the question is not *whether* to alter the current case management schedule, but rather *how*.

What follows is a description of the issues presently before the Court, the current case management schedule, and InterDigital's proposal for sequencing the case in an efficient manner.

## DESCRIPTION OF THE CASE

### I.    The Claims and Required Discovery

#### A.    The Claims

On February 9, 2007, Nokia filed its First Amended Complaint, which seeks — through the assertion of Lanham Act and state law claims — to obtain sweeping declaratory relief concerning the "essentiality," infringement, validity and enforceability of 119 of InterDigital's

---

[1]    Nokia has challenged the essentiality of 119 patents that InterDigital disclosed to ETSI. Curiously, Nokia does not even challenge the essentiality of another 66 patents that InterDigital also declared to ETSI. InterDigital's analysis of Nokia's declared patents is not yet complete, but InterDigital expects that it will challenge over 150 of the patents that Nokia declared to ETSI.

Collins J. Seitz, Jr., Esquire
June 4, 2007
Page 3

U.S. patents.[2]  The essence of Nokia's Lanham Act claims is that InterDigital falsely told the market that it owns patents that are essential to 3G standards.  Nokia's allegations are based on three sets of statements: 1) InterDigital's declaration to ETSI, pursuant to ETSI's disclosure requirements, of patents in connection with the UMTS standard; 2) public statements about InterDigital's patent rights relating to 3G technology in the press and filings with the SEC in accordance with SEC rules and regulations; and 3) statements made during confidential licensing discussions with Nokia and others.[3]

Although InterDigital believes that Nokia's claims fail as a matter of law, InterDigital has filed a conditional counterclaim, essentially mirroring Nokia's claims against it.  More specifically, InterDigital does not agree with Nokia that the disclosure of patents that may or might be "essential" to ETSI is actionable, but Nokia has made the same types of statements it contends render InterDigital liable for violating the Lanham Act.  Consequently, InterDigital has asserted a contingent counterclaim challenging the veracity of statements made by Nokia concerning the essentiality of Nokia's own patents, including Nokia's declaration of over 200 patents to ETSI in relation to UMTS, and other public statements Nokia has made.[4]  InterDigital has done this to ensure that, if such claims are actionable, Nokia's own statements will be assessed under the same standards it invokes to challenge InterDigital's statements.

The Special Master's initial discovery orders have been helpful in that they have created a process for identifying the allegedly false statements relied upon by the parties, the basis for the alleged "falsity" of those statements, and the parties' responses to those allegations.

---

[2]    Nokia's Original Complaint sought declarations of noninfringement and invalidity of eighteen InterDigital patents pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and one count under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  The Court dismissed the patent declaratory judgment counts.  Earlier this year, Nokia obtained leave to file a First Amended Complaint, which seeks to re-inject the issues of infringement, validity and enforceability into the case, but only indirectly, through a broad prayer for relief.

Of the 194 U.S. Patents InterDigital declared to ETSI in relation to the UMTS standard, Nokia asserts that 127 are not essential.  Among its defenses, InterDigital denies having made any false or misleading statements, and maintains that 119 of those 127 patents may or might be "essential" to the UMTS standard as that term is defined by ETSI.  InterDigital's Motion to Dismiss the First Amended Complaint on various grounds remains pending.

[3]    Discovery concerning the statements made to Nokia during confidential licensing discussions has been stayed pending the outcome of an ICC arbitration.  InterDigital contends that any statements made to third parties are irrelevant to Nokia and non-actionable as a matter of law.

[4]    InterDigital filed its counterclaims expressly subject to and without waiving its motion to dismiss.  If the Court dismisses Nokia's claims, InterDigital will promptly dismiss any similar counterclaims.

Collins J. Seitz, Jr., Esquire
June 4, 2007
Page 4

Tellingly, that process alone has consumed, and continues to consume, an enormous amount of resources in light of the sheer volume of the patents. Much, much more lies ahead.

     B.    <u>Patent Discovery</u>

On the patent issues alone, the parties face fact and expert discovery of unparalleled dimensions. The parties have propounded written discovery as to all of the 250+ patents. In addition to infringement and essentiality, Nokia has served discovery requests for patent file histories, inventor work papers, prior art, and discovery as to the meaning of claim terms, the level of ordinary skill in the art of each claimed invention, conception, diligence, and reduction to practice.[5] InterDigital also will require discovery on the designs of Nokia's standards-compliant devices. Literally dozens of inventors will have to be deposed, as well as prosecuting attorneys and persons knowledgeable about each of the infringing features of the relevant devices.

Moreover, the patent-related fact-finding will not be confined to the parties. Absent a narrowing of issues, the parties will need extensive third party discovery on patent issues, including document and testimonial discovery into the proprietary designs of standards-compliant devices from Nokia's direct competitors (relevant to issues of essentiality and infringement, if Nokia has its way) and documents and testimony on prior art (relevant to validity and enforceability, if Nokia has its way).[6]

Meanwhile, the parties must retain armies of expert witnesses and consultants to study the patents and devices and render opinions on essentiality and (if Nokia has its way) infringement, validity and enforceability. Given the number of patents involved, it is an open question whether this untold number of experts can produce expert reports and be deposed before the end of this decade.

Then, after the parties conduct this extensive patent discovery, it would next fall on the Court to construe the terms of the more than 1,000 patent claims at issue. The number of terms to be construed likely will be some multiple of these 1,000+ claims. The burden that this task represents to the Court and the parties is, quite frankly, unreasonable. Were the Court to entertain briefing and hearings on claim construction as it does in conventional patent cases, it would require a year or more for briefing alone, followed by a several months-long *Markman* hearing. Even under an alternative approach in which the Court would hold multiple, staged,

---

[5]    It should be noted that Nokia has demanded extensive discovery on matters relating to the validity and enforceability of the challenged 119 InterDigital patents on the premise that InterDigital's statements somehow implicate these issues. Consistent with the Special Master's prior ruling that validity is not relevant, InterDigital has asserted objections to those requests.

[6]    One can reasonably expect that the parties will meet a fair amount of resistance to such discovery from Nokia's competitors and others.

Collins J. Seitz, Jr., Esquire
June 4, 2007
Page 5

*Markman* hearings, this case might require ten or more *Markman* hearings, which would stretch out over well more than a year.

      C.      Non-Patent Discovery

      Assuming, without at all conceding, the legal sufficiency of the Lanham Act claims, the parties will have to take additional non-patent discovery both from each other as well as from third parties. Although non-trivial, such discovery is dwarfed by the patent-related discovery. The non-patent discovery likely would include inquiry into the standards and practices for making declarations to ETSI, including the practices of other ETSI declarants; the materiality of the statements and their tendency, if any, to deceive or mislead the very sophisticated intended audience, including discovery from members of that audience; the effect, if any, the parties' ETSI declarations had on the adoption of the UMTS standard; and the damages, if any, suffered by the parties as a result of the statements at issue.

**II.**      **The Current Case Management Schedule**

      The current Rule 16 scheduling order provides as follows:

| | |
|---|---|
| Close of fact discovery: | December 14, 2007 |
| Parties agree on disputed claim terms: | February 14, 2008 |
| Opening expert reports: | March 14, 2008 |
| Joint claim construction statement: | April 2, 2008 |
| Answering expert reports: | May 2, 2008 |
| Opening *Markman* briefs: | May 16, 2008 |
| Close of expert discovery: | June 27, 2008 |
| Answering *Markman* briefs: | July 1, 2008 |
| Dispositive motions: | To be determined |
| Final pre-trial conference: | October 16, 2008 |

      While these time frames, ordered by the Court in March, are a vast improvement over the prior schedule, InterDigital submits that they remain wholly unrealistic for the reasons described above — there is simply too much to do. More importantly, what the Court and the parties need is not simply more time but, rather, a process that provides a real opportunity to significantly narrow, if not eliminate, the issues in this case *before* the Court engages in a months-long (if not years-long) *Markman* procedure, followed by an unimaginably long 250+ patent trial. Fortunately, the legal and factual nature of the claims lend themselves to such a structure.

**INTERDIGITAL'S PROPOSAL**

      Two principal points about the parties' claims inform the question of how to manage this very large and complex case. *First*, as the discussion above reveals, the enormity of this case almost entirely traces to the patent issues that form the basis for the Lanham Act claims. *Second*,

Collins J. Seitz, Jr., Esquire
June 4, 2007
Page 6

both parties' claims are based upon three categories of statements: (1) declarations to ETSI, in which both parties specifically disclosed hundreds of potentially essential patents to the standards-setting body, (2) other public statements and SEC filings, in which the parties made more general statements about their ownership of potentially essential patents, without identifying particular patents that might be essential, and (3) statements made during confidential licensing discussions.

These two factors — the size of the patent side of the case and the distinct nature of the three types of accused statements — present the Court and the parties with an opportunity to narrow the case significantly, if not dispose of it entirely. The sheer size of the patent part of the case strongly militates in favor of identifying issues that will narrow or eliminate that part of the case. And given their respective natures, the three categories of statements present an opportunity to do so.

With respect to all of the accused statements, there is a significant *legal* issue as to whether or not they are actionable at all — in particular, whether they are actionable statements of *fact* or non-actionable statements of *opinion*. If none of the statements is an actionable statement of fact, then the case is over, and the Court and the parties will be spared the significant time and expense associated with litigating all of the other aspects of the case, including the patent issues. Even if some of the statements are held to be actionable, that finding necessarily will narrow future discovery and substantially reduce future motion practice. For example, if the Court finds that the ETSI statements are not actionable — based on, for example, the ETSI Guide on Intellectual Property Rights and the warning in Clause 3.2.2 that the declarations are "only an opinion" of the declarant — the patent case would be dramatically narrowed in that the parties would not have to defend each and every patent they disclosed to ETSI. Instead, because the only remaining statements at issue would be the public statements and confidential licensing discussions, to the extent they did not specify which patents were essential, the parties could defend a much smaller number of patents as being essential. At that point, the Court could utilize conventional patent case management methods to require each party to identify representative patents and claims upon which they choose to rely in defending their statements.

InterDigital is mindful of the Court's expressed concern, in denying InterDigital's motion for leave to file an early summary judgment motion, that Nokia should have the opportunity to rely upon additional statements it might learn of during discovery. In order to address this concern, InterDigital proposes that the first phase of the case, which would focus on the actionability of accused statements, also include a period for the parties to take discovery on the universe of public statements concerning essentiality that might have damaged each of them. At the end of this initial period of discovery, the parties could supplement their list of "accused" statements, if any, at which point the parties and the Court would address the legal question as to the actionability of the identified universe of statements. In this manner, both parties will have had a full and fair opportunity to take discovery on what statements were made and the Court

Collins J. Seitz, Jr., Esquire
June 4, 2007
Page 7

would not be faced with the prospect of making piecemeal rulings as to the actionability of some but not all of the statements.

Accordingly, InterDigital hereby proposes sequencing discovery and bifurcating the case according to the following schedule:

*Phase 1: Identify Universe of Statements and Resolve Legal Issue of Actionability of These Statements*

This initial phase of the case would be completed before the remaining case management issues are resolved. The discovery required in Phase 1 would be minimal. This phase would allow both parties 60 days in which to take discovery to identify statements made by the other party with respect to the essentiality of its 3G patents. During this phase, all other discovery would be stayed. At the conclusion of this 60-day period, all statements relied upon by either party as the basis for its Lanham Act claim will have been identified, and the universe of statements at issue will be resolved. The parties would then brief the issue of the actionability of those statements. InterDigital expects that these issues largely, if not entirely, will be legal issues suitable for resolution by the Court. The timing would be as follows:

- 60-day discovery period running from date of the Court's Order

- 70 days after Court's Order, parties identify any additional statements

- 90 days after Court's Order, parties submit opening briefs on summary judgment concerning actionability of statements

- 120 days after Court's Order, parties submit opposition briefs

- 135 days after Court's Order, parties submit reply briefs

*Phase 2: Address Remaining Issues, Such as Patent Issues, Materiality, Likelihood of Deception and Damages*

After receiving the Court's ruling on the motions, which will determine which, if any, statements are actionable, the Court and the parties would promptly meet to address any subsequent sequencing and management of the case that may be necessary. This approach makes eminent good sense because patent discovery and the need for *Markman* hearings may be eliminated or dramatically reduced. *See, e.g., Ciena Corp. v. Corvis Corp.,* 210 F.R.D. 519, 520-21 (D. Del. 2002) (Farnan, J.) (bifurcating 5-patent trial into separate liability and damages phases and noting that bifurcation or even trifurcation is common in complex patent trials and used to simplify issues and maintain manageability of the volume and complexity of the evidence) (citing Thomas L. Creel & Robert P. Taylor, *Bifurcation, Trifurcation, Opinions of Counsel, Privilege and Prejudice,* 424 PLI/Pat 823, 826 (1995); *Manual for Complex Litigation*

Collins J. Seitz, Jr., Esquire
June 4, 2007
Page 8

(Third) § 33.62 (1995); Steven S. Gensler, *Bifurcation Unbound*, 75 Wash. L. Rve. 705, 725 (2000)); *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986) (endorsing the "now-standard practice of separating for trial patent issues and those raised in an antitrust counterclaim").

    This approach also has another important advantage: it would not force the parties to make an early choice about whether to waive privilege to defeat the bad faith element of the Lanham Act claims. *See Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999) (holding that bad faith is a prerequisite to § 43(a) liability for marketplace activity in support of a patent). Such decisions are properly deferred where, as here, a so-called *Quantum*-like dilemma otherwise would be presented. *See, e.g., St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.*, 2002 WL 1901268 (D. Del. 2002)(Farnan, J.)(bifurcating willfulness issue from other patent issues in order to avoid prejudice from early disclosure of privileged materials); *Kos Pharms., Inc. v. Barr Labs., Inc.*, 218 F.R.D. 387, 393-94 (S.D.N.Y. 2003) (declining to bifurcate trial on five patents with a common application into separate liability and damages trials, but staying discovery relating to willfulness to the extent patent owner sought legal opinions). A *Quantum* dilemma occurs where an accused infringer must choose prematurely between waiving privilege to invoke an advice of counsel defense to a charge of willfulness (which, in addition to the costs imposed by waiving privilege, could prejudice its liability case), and foregoing such a defense. This case presents a similar dilemma, because the parties have the opportunity to waive privilege in whole or in part to prove their good faith in making the patent-related statements. The case should be sequenced so as not to force that choice unless and until it is absolutely necessary. *See also* Creel & Taylor, 424 PLI/Pat at 827 (noting that trials are sequenced or bifurcated to avoid prejudice where evidence on one issue would be inadmissible and highly prejudicial to another).

## NOKIA'S PROPOSAL

    The parties met and conferred on two occasions (May 11 and June 1) to discuss manners by which the case might be managed in an efficient manner. InterDigital set forth the basic parameters of its proposal. On June 1, Nokia indicated that it would propose bifurcating liability and damages issues. In InterDigital's view, that proposal would solve little or none of the challenges currently facing the Court and the parties. As discussed above, the single biggest (and likely avoidable) task concerns the construction and litigation of the 250+ patents currently at issue. Simply bifurcating liability from damages would do nothing to solve that problem; all of the patent discovery described above would have to be taken before resolution of any of the threshold legal issues that likely will render moot much if not all of the patent discovery and Markman hearings currently on the horizon with all 250+ patents still at issue. Accordingly, InterDigital respectfully objects to Nokia's proposal.

Collins J. Seitz, Jr., Esquire
June 4, 2007
Page 9

## CONCLUSION

For the foregoing reasons, InterDigital respectfully requests that the Court modify the current schedule to sequence this case into a first phase during which the universe and actionability of the statements at issue will be resolved.

Respectfully,

Richard L. Horwitz

/msb
799237 / 28840

cc:     Jack Blumenfeld (via hand delivery)
        Lance A. Lawson (via electronic mail)
        Patrick J. Flinn (via electronic mail)
        Peter Kontio (via electronic mail)
        Ron E. Shulman (via electronic mail)
        Mark D. Flanagan (via electronic mail)
        Christopher D. Isaac (via electronic mail)