# EXHIBIT A

## FULLY REDACTED

# EXHIBIT B

CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER
CONTAINED IN EXHIBIT A HERETO

## THE UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

**Before the Honorable Paul J. Luckern**
**Administrative Law Judge**

| |
|---|
| In the Matter of |
| CERTAIN 3G MOBILE HANDSETS AND COMPONENTS THEREOF |

Investigation No. 337-TA-613

### NOKIA CORPORATION AND NOKIA INC.'S RESPONSE
### TO THE COMPLAINT AND NOTICE OF INVESTIGATION

Pursuant to 19 C.F.R. § 201.13(a), Respondents Nokia Corporation and Nokia Inc. (collectively "Respondents" or "Nokia") hereby respond to the Complaint filed by Complainants InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "Complainant" or "InterDigital") on August 7, 2007 in the above-captioned investigation ("this Investigation") and to the Notice of Investigation issued by the United States International Trade Commission ("the Commission") dated September 5, 2007.

The following headings and numbered paragraphs correspond to and respond to the numbered paragraphs set forth in the Complaint.

## I.    INTRODUCTION

1.    The allegations contained in Paragraph 1 are not factual allegations that call for a response from Respondents.  To the extent the allegations in Paragraph 1 require a response, Respondents deny them.

2.    Respondents admit that they have been named as Respondents in this Investigation.  Respondents deny all remaining allegations in Paragraph 2.

3.    Respondents lack sufficient information or knowledge to admit or deny the allegations of Paragraph 3, and, on that basis, deny them.

4.    Respondents deny the allegations of Paragraph 4.

5.    The allegations contained in Paragraph 5 are not factual allegations that call for a response from Respondents. To the extent the allegations in Paragraph 5 require a response, Respondents deny them.

## II.    COMPLAINANT

6.    Respondents lack sufficient information or knowledge to admit or deny the allegations of Paragraph 6, and, on that basis, deny them.

7.    Respondents admit that WCDMA technology is sometimes referred to as a "3G technology." Respondents lack sufficient information or knowledge to admit or deny the remaining allegations of Paragraph 7, and, on that basis, deny them.

8.    Respondents lack sufficient knowledge or information to admit or deny the allegations of Paragraph 8, and, on that basis, deny them.

9.    Respondents admit that Nokia Corporation entered into a patent license agreement with Complainant in the past. Respondents lack sufficient knowledge or information to admit or deny the remaining allegations of Paragraph 9, and, on that basis, deny them.

## III.    PROPOSED RESPONDENTS

10.    Respondent admits the allegations of Paragraph 10.

11.    Respondent admits the allegations of Paragraph 11.

## IV.    THE TECHNOLOGY AND PRODUCTS AT ISSUE

12.    Based upon their current information and belief, Respondents admit the allegations in Paragraph 12.

13.     Respondents admit the allegations contained in the first three sentences of Paragraph 13. Respondents deny all the remaining allegations contained in Paragraph 13.

14.     Respondents admit the allegations of Paragraph 14.

15.     Respondents admit the allegations in the first two sentences of Paragraph 15. Respondents lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 15 and, on that basis, deny them.

16.     Respondents lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 16 and, on that basis, deny them.

17.     Respondents deny the allegations of Paragraph 17.

18.     Respondents admit that Complainants are accusing UMTS handsets that can be used to place calls and transfer data. Respondents deny all the remaining allegations in Paragraph 18.

## V.    THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTION OF THE INVENTIONS

19.     Respondents admit the allegations of Paragraph 19.

### A.    United States Patent No. 7,117,004

#### 1.    Identification of the Patent and Ownership by InterDigital

20.     Based upon their current information and belief, Respondents admit that the face of the '004 Patent states that it: (i) is entitled "Method and Subscriber Unit for Performing an Access Procedure;" (ii) appears to have been issued on October 3, 2006; (iii) names as putative inventors Gary Lomp and Fatih Ozluturk; (iv) appears to be based on Patent Application Serial No. 10/866,851, filed on June 14, 2004. Respondents lack sufficient knowledge or information to admit or deny the accuracy of the above or any of the remaining allegations contained in Paragraph 20 and, on that basis, deny them.

21.    Based upon their current information and belief, Respondents admit the allegations contained in the first sentence of Paragraph 21.   The remaining allegations in Paragraph 21 are not factual allegations that call for a response from Respondents.  To the extent these allegations call for a response, Respondents deny them.

22.    Respondents lack sufficient knowledge or information to admit or deny the allegations of Paragraph 22, and, on that basis, deny them.

23.    Respondents lack sufficient knowledge or information to admit or deny the allegations of Paragraph 23 of the Complaint, and on that basis deny them.

## 2.    Non-Technical Description of the Patent

24.    Respondents deny all the allegations of Paragraph 24.

25.    Respondents deny all the allegations of Paragraph 25.

26.    Respondents deny all the allegations of Paragraph 26.

## 3.    Foreign Counterparts to the Patent

27.    Respondents lack sufficient information to admit or deny the allegations of Paragraph 27 and, on that basis, deny them.

## 4.    Licenses

28.    The allegations contained in Paragraph 28 are not factual allegations that call for a response from Respondents.   To the extent these allegations call for a response, Respondents lack sufficient knowledge or information to admit or deny the allegations and, on that basis, deny them.

**B.**     **United States Patent No. 7,190,966**

**1.**     **Identification of the Patent and Ownership of InterDigital**

29.     Based upon their current information and belief, Respondents admit that the face of the '966 Patent states that it: (i) is entitled "Method and Apparatus for Performing an Access Procedure;" (ii) appears to have been issued on March 13, 2007; (iii) names as putative inventors Gary Lomp and Fatih Ozluturk; (iv) appears to be based on Patent Application Serial No. 11/169,490 filed on June 29, 2005.  Respondents lack sufficient knowledge or information to admit or deny the accuracy of the above or any of the remaining allegations contained in Paragraph 29 and, on that basis, deny them.

30.     Based upon their current information and belief, Respondents admit the allegations contained in the first sentence of Paragraph 30.  The remaining allegations in Paragraph 30 are not factual allegations that call for a response from Respondents.  To the extent these allegations call for a response, Respondents deny them.

31.     Respondents lack sufficient knowledge or information to admit or deny the allegations of Paragraph 31, and, on that basis, deny them.

32.     Respondents lack sufficient knowledge or information to admit or deny the allegations of Paragraph 32, and, on that basis, deny them.

**2.**     **Non-Technical Description of the Patent**

33.     Respondents deny all the allegations of Paragraph 33.

34.     Respondents deny all the allegations of Paragraph 34.

35.     Respondents deny all the allegations of Paragraph 35.

### 3.    Foreign Counterparts to the Patent

36.    Respondents lack sufficient knowledge or information on which to admit or deny the allegations of Paragraph 36 of the Complaint, and, on that basis deny them.

### 4.    Licenses

37.    The allegations contained in Paragraph 37 are not factual allegations that call for a response from Respondents.  To the extent these allegations call for a response, Respondents lack sufficient knowledge or information to admit or deny the allegations and, on that basis, deny them.

## VI.    UNLAWFUL AND UNFAIR ACTS OF RESPONDENTS – PATENT INFRINGEMENT

38.    Respondents admit that the accused products are UMTS handsets.  Respondents deny the remaining allegations contained in Paragraph 38.

39.    The allegations contained in Paragraph 39 are not factual allegations that call for a response from Respondents.  To the extent these allegations call for a response, Respondents deny them.

40.    Respondents deny that the accused products infringe the patents asserted in this Investigation.  Respondents lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 40 and, on that basis, deny them.

41.    Respondents admit the allegations contained in the second sentence of Paragraph 41.  Respondents deny all the remaining allegations contained in Paragraph 41.

42.    The allegations contained in Paragraph 42 are not factual allegations that call for a response from Respondents.  To the extent the allegations call for a response, Respondents deny them.

43.    The allegations contained in Paragraph 43 are not factual allegations that call for a response from Respondents.  To the extent the allegations call for a response, Respondents deny them.

44.    Respondents deny all the allegations of Paragraph 44.

45.    Respondents deny all the allegations of Paragraph 45.

46.    Respondents admit that they have, at least, received notice of the asserted patents upon service of the Complaint.

47.    Respondents admit that the accused products are designed to be compliant with the UMTS standard.  Respondents deny any remaining allegations in Paragraph 47.

48.    Respondents deny all the allegations of Paragraph 48.

**VII.    SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE**

49.    Respondents lack knowledge or information sufficient to admit or deny the allegations of Paragraph 49 and, on that basis, deny them.

**VIII.    HARMONIZED TARIFF SCHEDULE ITEM NUMBERS**

50.    Respondents deny the allegations in Paragraph 50.

**IX.    RELATED LITIGATION**

51.    Respondents deny all the allegations of Paragraph 51.

52.    Respondents deny the allegations contained in the fifth and sixth sentences of Paragraph 52.  Respondents admit the remaining allegations contained in Paragraph 52.

53.    Respondents deny the allegations contained in the last sentence of Paragraph 53. Respondents admit the remaining allegations contained in Paragraph 53.

54.     Respondents lack knowledge or information sufficient to admit or deny the allegations contained in the last sentence of Paragraph 54.  Respondents admit the remaining allegations contained in Paragraph 54.

55.     Respondents admit the allegations contained in Paragraph 55.

56.     Respondents admit that there exists litigation between Complainant, Tantivy Communications, Inc. and Samsung in the United States District Court for the District of Delaware.  Respondents lack sufficient knowledge or information to admit or deny all remaining allegations of Paragraph 56, and, on that basis, deny them.

## X.     THE DOMESTIC INDUSTRY

57.     Respondents deny all the allegations of Paragraph 57.

58.     Respondents deny all the allegations of Paragraph 58.

### A.     Investments In Research and Development, and Engineering

59.     Respondents lack sufficient knowledge or information to admit or deny the allegations in Paragraph 59, and, on that basis deny them.

60.     Respondents lack sufficient knowledge or information to admit or deny the allegations in Paragraph 60, and, on that basis, deny them.

61.     Respondents lack sufficient knowledge or information to admit or deny the allegations in Paragraph 61 of the Complaint, and, on that basis deny them.

### B.     Investments in Licensing

62.     Respondents lack sufficient knowledge or information to admit or deny the allegations in Paragraph 62, and, on that basis, deny them.

63.     Respondents lack sufficient knowledge or information to admit or deny the allegations in Paragraph 63, and, on that basis, deny them.

64.    Respondents lack sufficient knowledge or information to admit or deny the allegations in Paragraph 64 of the Complaint, and, on that basis, deny them.

## XI.    RELIEF REQUESTED

65.    The allegations contained in Paragraph 65 are not factual allegations that call for a response from Respondents.  To the extent the allegations call for a response, Respondents deny them.

66.    To the extent any allegation of the Complaint is not specifically admitted in the numbered paragraphs above, Respondents deny such allegations.

67.    The following headings and numbered paragraphs do not directly correspond to numbered paragraphs set forth in the Complaint.

### RESPONSE TO NOTICE OF INVESTIGATION

Respondents acknowledge that the Commission has instituted an investigation as set forth in the Commission's Notice of Investigation dated September 5, 2007.  Respondents deny that there has been any violation of 19 U.S.C. § 1337 by Respondents in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain 3G mobile handsets and components thereof by reason of infringement of any claims of any patents owned by or assigned to the Complainant.  Respondents deny that there exists a domestic industry as required under 19 U.S.C. § 1337(a)(2) and defined under 19 U.S.C. § 1337(a)(3).  Respondents deny that Complainant is entitled to any relief as a result of this Investigation.

By providing the following information, Respondents intend only to supply data required by 19 C.F.R. § 210.13(b).  Respondents specifically deny that any of the information or data

supplied below relate to or support any allegations of infringement against Respondents or any violation of 19 U.S.C. § 1337.

Pursuant to Rule 210.13(b), Respondents provide the following additional information:

1.      The quantity and value of Respondents' products accused of infringement imported by Respondent Nokia Inc. is provided in Confidential Exhibit A to this Response.

2.      The Harmonized Tariff Schedule item number for wireless communication handsets imported by or on behalf of Respondent Nokia Inc. is 8517.12.00 and/or 8517.18.00.

3.      Respondents' capacity to manufacture the Accused Products is provided in confidential exhibit A to this Response.

4.      The United States constitutes a substantial market for Respondents for the Accused Products.

## AFFIRMATIVE DEFENSES

Respondents assert the following affirmative and other defenses.   Discovery of Complainant had just begun at the time of this Response, and therefore, Respondents have not yet had sufficient time and opportunity to collect and review all the information that may be relevant to the matters and issues raised herein.   Respondents accordingly, under 19 U.S.C. §§ 210.14(b) and 210.14(c), reserves the right to seek amendment of, modify, and/or expand these defenses and to take further positions as discovery proceeds in this Investigation.

## FIRST AFFIRMATIVE DEFENSE
(Invalidity)

A.      **United States Patent No. 7,117,004**

5.      The asserted claims of the '004 Patent are each invalid for failure to meet the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

6.    All asserted claims of the '004 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of at least the following prior art: U.S. Patent Nos. 5,430,760, 5,748,687, 5,796,776, 5,799,010, 5,991,329, 5,828,662, 5,991,332, 6,021,122, 6,049,535, 6,157,619, 6,212,174, 6,215,778, 6,229,843, 6,272,168, and 6,707,805; Telecommunications Industry Association Interim Standard 95A ("TIA-IS-95A"); A. Viterbi, et al., *Erlang Capacity of a Power Controlled CDMA System*, IEEE Journal on Selected Areas in Communications, VOL. 11, No. 6, Aug. 1993; F. Ozluturk, et al., *Performances of Acquisition Schemes for CDMA Systems with Complex Signature Sequences*, International Journal of Wireless Information Networks, Vol. 2, No. 1, 1995; and *Coherent and noncoherent DS/SSMA communications with complex signature sequences: Error and acquisition performances*, (dissertation of) Ozluturk, Fatih M., Ph.D, University of Massachusetts, 1994.  Respondents are in the process of obtaining further relevant prior art, including through discovery, which is in its early stages at the time of this Response. Respondents will set forth further invalidity allegations upon obtaining additional relevant prior art.

7.    All asserted claims of the '004 Patent are invalid for failure to comply with the requirements of 35 U.S.C. § 112 due to lack of written description, failure to particularly point out and distinctly claim the subject matter which is regarded as the alleged invention, failure to set forth the best mode contemplated by the inventors for carrying out the alleged invention, and/or failure to set forth a written description sufficient to enable any person skilled in the art to make and use the alleged invention.  For example, at least the following limitations of claim 1 of the '004 Patent are indefinite, not enabled, and/or lack adequate written description: "transmitting dynamically selected code signals;" "the transmitted dynamically selected code signals carry no data;" "[transmitting an access signal] in response to detecting the acknowledgment;" "the access

signal is associated with the dynamically selected code signals;" and "the dynamically selected code signals are shorter than the access signal."

**B.    United States Patent No. 7,190,966**

8.    The asserted claims of the '966 Patent are each invalid for failure to meet the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

9.    All asserted claims of the '966 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of at least the following prior art: U.S. Patent Nos. 5,430,760, 5,748,687, 5,796,776, 5,799,010, 5,991,329, 5,828,662, 5,991,332, 6,021,122, 6,049,535, 6,157,619, 6,212,174, 6,215,778, 6,229,843, 6,272,168, and 6,707,805; TIA-IS-95A; A. Viterbi, et al., *Erlang Capacity of a Power Controlled CDMA System*, IEEE Journal on Selected Areas in Communications, VOL. 11, No. 6, Aug. 1993; F. Ozluturk, et al., *Performances of Acquisition Schemes for CDMA Systems with Complex Signature Sequences*, International Journal of Wireless Information Networks, Vol. 2, No. 1, 1995; and *Coherent and noncoherent DS/SSMA communications with complex signature sequences: Error and acquisition performances*, (dissertation of) Ozluturk, Fatih M., Ph.D, University of Massachusetts, 1994. Respondents are in the process of obtaining further relevant prior art, including through discovery, which is in its early stages at the time of this Response. Respondents will set forth further invalidity allegations upon obtaining additional relevant prior art.

10.    All asserted claims of the '966 Patent are invalid for failure to comply with the requirements of 35 U.S.C. § 112 due to lack of written description, failure to particularly point out and distinctly claim the subject matter which is regarded as the alleged invention, failure to set forth the best mode contemplated by thee inventors for carrying out the alleged invention, and/or failure to set forth a written description sufficient to enable any person skilled in the art to

make and use the alleged invention. For example, at least the following limitations of claim 1 of the '966 Patent are indefinite, not enabled, and/or lack adequate written description: "when the subscriber unit is first accessing a CDMA network and wants to establish communications with a base station;" "the transmitter successively transmits signals;" "the transmitter further configured such that the transmitter transmits to the base station a message indicating to the base station over the communication channel to be indicated by the base station, the message being transmitted only subsequent to the subscriber unit receiving the indication;" "wherein each of the successively transmitted signals and the message are generated using a same code;" and "wherein each of the successively transmitted signals is shorter than the message."

## SECOND AFFIRMATIVE DEFENSE
### (Substantial Non-Infringing Uses)

11.    The Accused Product has substantial non-infringing uses as set forth herein.

12.    Complainant has only alleged that certain functionalities of the Accused Product infringe certain claims of the Asserted Patents.

13.    The Accused Product is capable of operating in one or more modes other than in a 3G UMTS mode.

14.    3G UMTS technology is not the primary 3G technology used in the United States.

15.    The majority of cellular networks in the United States are not capable of facilitating wireless communication using 3G UMTS technology.

16.    The Accused Product is capable of operating on cellular networks in the United States that are not 3G UMTS networks.

17.    Various of the asserted claims are method claims directed to the use of wireless communication handsets on an active cellular network, and Respondents, by import and sale in the United States of the Accused Product, do not practice such claimed methods.

-13-

## THIRD AFFIRMATIVE DEFENSE
(Inequitable Conduct)

18.    On information and belief, the Asserted Patents are unenforceable under the doctrine of inequitable conduct due to breaches of 37 C.F.R. § 1.56 by either or both of the named inventors on the Asserted Patents and others substantively involved in the prosecution of applications leading to the Asserted Patents.

19.    Respondents are continuing to obtain and review information related to the large family of United States and foreign patents and publications related to the Asserted Patents, and accordingly, Respondents intend to set forth further allegations regarding the inequitable conduct associated with the procurement of one or more of the Asserted Patents as discovery continues.

### A.    United States Patent No. 7,117,004

20.    On information and belief, individuals charged with a duty of candor on behalf of Complainant failed, with an intent to deceive, to properly disclose to the United States Patent & Trademark Office ("USPTO") information material to the patentablity of the '004 Patent. This information includes, but is not limited to, the following: United States Patent No. 5,748,687 (on which F. Ozluturk is listed as an inventor, and which claims priority to a provisional application filed on June 30, 1995); U.S. Patent Nos. 5,796,776, 5,799,010, 5,991,329, 5,991,332, 6,049,535, 6,157,619, 6,212,174, 6,215,778, 6,229,843, 6,272,168, and 6,707,805 (on each of which F. Ozluturk and G. Lomp are listed as inventors, and each of which claims priority to a provisional application filed on June 30, 1995); United States Patent No. 5,828,662 (which F. Ozluturk and G. Lomp had knowledge of through United States Patent No. 6,801,516); United States Patent No. 6,021,122 (which F. Ozluturk and G. Lomp had knowledge of through United States Patent No. 6,272,168); F. Ozluturk, et al., *Performances of Acquisition Schemes for CDMA Systems with Complex Signature Sequences*, International Journal of Wireless Information Networks,

Vol. 2, No. 1, 1995; and *Coherent and noncoherent DS/SSMA communications with complex signature sequences: Error and acquisition performances*, (dissertation of) Ozluturk, Fatih M., Ph.D, University of Massachusetts, 1994.

B.    **United States Patent No. 7,190,966**

21.    On information and belief, individuals charged with a duty of candor on behalf of Complainants failed, with an intent to deceive, to properly disclose to the USPTO information material to the patentablity of the '966 Patent. This information includes, but is not limited to, the following: United States Patent No. 5,748,687 (on which F. Ozluturk is listed as an inventor, and which claims priority to a provisional application filed on June 30, 1995); United States Patent No. 5,991,329 (on which F. Ozluturk and G. Lomp are listed as inventors, and each of which claims priority to a provisional application filed on June 30, 1995); United States Patent No. 5,828,662 (which F. Ozluturk and G. Lomp had knowledge of through United States Patent No. 6,801,516); United States Patent No. 6,021,122 (which F. Ozluturk and G. Lomp had knowledge of through United States Patent No. 6,272,168); F. Ozluturk, et al., *Performances of Acquisition Schemes for CDMA Systems with Complex Signature Sequences*, International Journal of Wireless Information Networks, Vol. 2, No. 1, 1995; and *Coherent and noncoherent DS/SSMA communications with complex signature sequences: Error and acquisition performances*, (dissertation of) Ozluturk, Fatih M., Ph.D, University of Massachusetts, 1994. Respondents are in the process of investigating for the existence of further inequitable conduct activities, including through discovery, which is in its early states at the time of this Response. Respondents may set forth further inequitable conduct allegations upon further investigation.

## FOURTH AFFIRMATIVE DEFENSE
(Lack of Domestic Industry)

22.     Complainant has not adequately alleged and cannot prove the existence of a domestic industry, as required under § 1337(a)(2) and defined under § 1337(a)(3), in connection with any of the Asserted Patents, or such that a domestic industry is in the process of being established.

## FIFTH AFFIRMATIVE DEFENSE
(Lack of Unfair Act)

23.     Respondents have committed no unfair acts.

## SIXTH AFFIRMATIVE DEFENSE
(Prosecution Laches)

24.     Complainant's claims are barred in whole or in part by delay in prosecuting the patent applications that matured into the Asserted Patents.

25.     One or more of the Asserted Patents have a purported effective filing date of more than ten years before the date Complainant requested this Investigation.

26.     Complainant, based on its representations that one or more of the Asserted Patents claim benefit under 35 U.S.C. § 120 to a series of continuation applications, could have claimed the subject matter now recited in the asserted claims of one or more of the Asserted Patents at any time from the purported effective filing dates of one or more Asserted Patents.

## SEVENTH AFFIRMATIVE DEFENSE
(Prosecution History Estoppel)

27.     By reason of acts, admissions, and statements before the USPTO made by or on behalf of applicants for the Asserted Patents during prosecution of the patent applications that matured into the Asserted Patents, Complainant is estopped from claiming infringement by Respondents of one or more claims of the Asserted Patents.

-16-

28.    For example, during prosecution of the '004 Patent, the asserted claims were amended from requiring that the transmitted dynamically selected code signals "carry no access message data" to requiring that such signals "carry no data." Based on such amendment, Complainant is now estopped from claiming infringement of the '004 Patent by the Accused Products.

## EIGHTH AFFIRMATIVE DEFENSE
(Patent Misuse)

29.    On information and belief, InterDigital is barred from asserting the patents-in-suit by the equitable doctrine of patent misuse. Both InterDigital and Nokia are members of the relevant standards-setting organizations ("SSOs"), including the European Telecommunications Standardization Institute ("ETSI"). Like other SSOs, ETSI's Intellectual Property Rights Policy ("IPR Policy") requires each ETSI member to identify all patents the member holds that may be essential to compliance with a proposed technology standard and state whether it will license such patents on fair, reasonable and non-discriminatory ("FRAND") terms. InterDigital did not declare the patents-in-suit essential to the UMTS standard in accordance with ETSI's procedures, failed to provide the information requested by ETSI for the benefit of its members, failed to verify the accuracy and completeness of the information it provided to ETSI, and failed to comply with its obligations including its failure to propose FRAND terms for the patents-in-suit it claims are essential.

## NINTH AFFIRMATIVE DEFENSE
(Express or Implied License)

30.    InterDigital's claims are barred in whole or in part pursuant to actual licenses or under the doctrine of implied license. These licenses include, but are not limited to, any express

or implied licenses arising from InterDigital's participation in ETSI and undertakings made to that or any other SSO.

### TENTH AFFIRMATIVE DEFENSE
(Unclean Hands)

31.    The patents-in-suit are void and unenforceable by reason of the equitable doctrine of unclean hands based (among other things) on InterDigital's failure to comply with ETSI rules and obligations, failure to promptly and appropriately declare any patents-in-suit to the relevant SSOs, and failure to propose FRAND terms for the patents-in-suit it claims are essential.

### ELEVENTH AFFIRMATIVE DEFENSE
(Breach of Contract)

32.    InterDigital breached its undertakings and obligations to ETSI and any other SSO responsible for the UMTS standard, as well as to Nokia as a beneficiary of such undertakings and commitments, by seeking an exclusionary order on the patents-in-suit when it has failed to propose FRAND terms for the patents-in-suit it claims are essential.

### TWELFTH AFFIRMATIVE DEFENSE
(Equitable and Promissory Estoppel)

33.    InterDigital's claims are barred in whole or in part based on equitable and/or promissory estoppel based on its failure to propose FRAND terms for the patents-in-suit it claims are essential as required by ETSI, Nokia's reliance on InterDigital's obligation to adhere to ETSI's IPR policy, and Nokia's detriment as a result of InterDigital's failure to honor its obligation.

### CONCLUSION

34.    Respondents respectfully request that the Commission determine and direct that: (i) Respondents has not violated 19 U.S.C. § 1337; (ii) Respondents have not infringed any claim of the Asserted Patents; (iii) Complainant's request for an exclusion order and a cease and desist

order be denied; (iv) the Asserted Patents are invalid and/or unenforceable; (v) there is no

protectable domestic industry in the Asserted Patents; and (vi) such other and further relief as

deemed just and proper under the law.

Dated: October 5, 2007                          Respectfully submitted,

                                                Paul F. Brinkman
                                                ALSTON & BIRD LLP
                                                950 F Street, N.W.
                                                Washington, DC  20004
                                                Tel. (202) 756-3300
                                                Fax (202) 756-3333
                                                E-mail: nokia.interdigital.itc@alston.com

                                                Patrick J. Flinn
                                                ALSTON & BIRD LLP
                                                1201 West Peachtree Street
                                                Atlanta, GA  30309-3424
                                                Tel. (404) 881-7000
                                                Fax (404) 881-7777

                                                Lance A. Lawson
                                                ALSTON & BIRD LLP
                                                101 South Tryon Street, Suite 4000
                                                Charlotte, NC  28280
                                                Tel. (704) 444-1000
                                                Fax (704) 444-1111

                                                Erica Taggart
                                                QUINN EMMANUEL URQUHART OLIVER &
                                                HEDGES LLP
                                                865 South Figueroa Street
                                                Los Angeles, CA 90017-2543
                                                Tel. (213) 443-3000
                                                Fax. (213) 443-3100

# ENTIRE PAGE REDACTED

## VERIFICATION OF RESPONSE TO
## THE COMPLAINT AND NOTICE OF INVESTIGATION

I, Tero Ojanperä, for and on behalf of Nokia Corporation and Nokia Inc. declare as follows:

1. I am Executive Vice President and Chief Technology Officer of Nokia Corporation and am duly authorized to sign this Verification of Response to Complaint and Notice of Investigation ("Response") on behalf of both Complainants Nokia Corporation and Nokia Inc.;

2. I have read the Response and am aware of its contents;

3. To the best of my knowledge, information and belief founded upon reasonable inquiry:

   a. the foregoing Response contains claims, defenses, and other legal contentions that are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

   b. the allegations and other factual contentions contained in the Response have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

   c. the denials or factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief; and

    d. the Response is not being presented for any improper purpose, such as to

harass or to cause unnecessary delay or needless increase in the cost of

the investigation or related proceeding.

    I declare under penalty of perjury under the laws of the United States that the

following statements are true and correct to the best of my knowledge, information and

belief.

Executed this ___5___ day of October, 2007              _____

                                                 Tero Ojanperä

LEGAL02/30470576v1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day, a true and correct copy of the foregoing document was served by the indicated means to the persons at the addresses below:

The Honorable Paul J. Luckern               [  ]  UPS Overnight
Administrative Law Judge                      [ X ]  Hand Delivery
U.S. International Trade Commission                  (2 copies)
500 E Street, S.W.
Washington, D.C.  20436

David Hollander, Jr., Esq.                    [  ]  UPS Overnight
U.S. International Trade Commission            [ X ]  Hand Delivery
Office of Unfair Import Investigations
500 E. Street, S.W., Room 401-D
Washington, D.C.  20436

Smith Brittingham, IV, Esq.                   [  ]  UPS Overnight
Patrick J. Coyne, Esq.                        [ X ]  Hand Delivery
Christopher P. Isaac, Esq.
Lionel M. Lavenue, Esq.
Houtan K. Efahani, Esq.
Vamsi K. Kakarla, Esq.
Elizabeth A. Niemeyer, Esq.
Rajeev Gupta, Esq.
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413

Dated: October 5, 2007

                                              Paul F. Brinkman

# EXHIBIT C

# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Jack B. Blumenfeld
302 351 9291
302 425 3012 Fax
jblumenfeld@mnat.com

August 10, 2007

**BY E-MAIL AND HAND DELIVERY**

Collins J. Seitz, Jr., Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, Delaware  19899

Re:    *Nokia Corporation, et al. v. Interdigital Communications Corporation, et al.,*
C.A. No. 05-16(JJF)
<u>URGENT REQUEST FOR TELEPHONIC CONFERENCE</u>

Dear Special Master Seitz:

On Tuesday, August 7, InterDigital initiated two new pieces of litigation against Nokia: (1) a patent infringement action in this district, *InterDigital Communications LLC, et al. v. Nokia Corp., et al.,* C.A. No. 07-489 (Ex. A); and (2) a complaint filed with the International Trade Commission, *In re Certain 3G Mobile Handsets* and Components Thereof, Investigation No. 337-TA-___ (Ex. B).

Both suits specifically assert two of the twenty-six additional patents that InterDigital declared to ETSI in March 2007 (the "March 2007 Patents"), specifically U.S. Patent Nos. 7,177,004 and 7,190,966 (the "Crossover Patents"). It is only these patents from the March 2007 declaration that InterDigital is asserting in these new actions. Based upon InterDigital's request to include these patents in this case, you ordered Nokia to provide essentiality contentions regarding these patents by today, August 10.  InterDigital was plainly aware that it intended to bring new infringement litigation on these patents last week, at the very time it was asking you to keep them in this case. InterDigital's filing before the ITC specifically references the essentiality contentions that InterDigital believes will be provided in this case for use in the ITC proceeding. (Ex. B at 12.)  Moreover, at this time, Nokia does not even have access to the entire filing as portions of it were filed under a confidentiality limitation, and will not have access to these portions so designated for at least another thirty days. Finally, Nokia has not yet formally retained counsel to represent it in either of the newly filed matters.

Collins J. Seitz, Jr., Esquire
August 10, 2007
Page 2

      Nokia respectfully submits that the filing of the two infringement actions this week compels a reconsideration of whether the two patents in question – or any of the 26 patents – should be addressed in this proceeding at this time. The now double (or triple) game InterDigital has elected to play requires sorting out the forum in which the new patents should be resolved. Accordingly, Nokia requests that it be relieved temporarily of the obligation to respond long enough for you, and perhaps Judge Farnan, to consider the consequences of these new filings.

      We were unable to make this request earlier because these filings are brand new, and we had to consult with our client before raising this issue. In addition, neither Mr. Flinn nor Mr. Allen were in the office until today. We have alerted InterDigital's counsel to this request and are waiting for their response. We request that you either hold a conference call later today to hear our request for a postponement of a response, or grant an extension until early next week, when Mr. Flinn and Mr. Allen will be back and able to appear by telephone.

      Thank you for your attention to this request.

              Respectfully,

              *Jack B. Blumenfeld*

              Jack B. Blumenfeld

JBB/ncf
Attachments

cc:   Richard L. Horwitz, Esquire (By E-mail)
       Ron E. Shulman, Esquire (By E-mail)
       Mark K. Flanagan, Esquire (By E-mail)
       Patrick J. Coyne, Esquire (By E-Mail)
       Patrick J. Flinn, Esquire (By E-Mail)

1204237

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| INTERDIGITAL COMMUNICATIONS, LLC, a Pennsylvania limited liability company and INTERDIGITAL TECHNOLOGY CORP., a Delaware corporation, | ) ) ) ) ) |  |
| Plaintiffs, | ) ) | Civil Action No.: _____ |
| v. | ) |  |
| NOKIA CORPORATION, a Finnish corporation and NOKIA INC., a Delaware corporation, | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) |  |

## COMPLAINT

This is an action for patent infringement. Plaintiffs, InterDigital Communications, LLC and InterDigital Technology Corporation (collectively "InterDigital"), through their undersigned counsel, bring this action against Defendants, Nokia Corporation and Nokia Inc. (collectively "the Nokia Defendants"). In support of this Complaint, InterDigital alleges as follows:

## THE PARTIES

1.    Plaintiff, InterDigital Communications, LLC ("InterDigital Communications"), is a Pennsylvania limited liability company, having its principal place of business at 781 Third Avenue, King of Prussia, Pennsylvania 19406-1409.

2.    Plaintiff, InterDigital Technology Corporation ("InterDigital Technology"), is a Delaware corporation, having its principal place of business at Hagley Building, Suite 105, 3411 Silverside Road, Concord Plaza, Wilmington, Delaware 19810-4812.

3.    Defendant, Nokia Corporation, is a Finnish corporation, having its principal place

of business at Keilalahdentie 2-4, P.O. Box 226, FIN-00045 Espoo, Finland.

4.    Defendant, Nokia Inc., is a Delaware corporation, having its principal place of business at 6000 Connection Drive, Irving, Texas 75039, USA.  Upon information and belief, Nokia Inc. (d/b/a Nokia Mobile Phones) distributes Nokia-branded handsets in the United States.

## JURISDICTION AND VENUE

5.    This is an action for patent infringement arising under the patent laws of the United States.  This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

6.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(c)-(d) and 1400(b).

## FACTUAL BACKGROUND

7.    United States Patent No. 7,117,004 ("the '004 patent"), titled "Method and Subscriber Unit for Performing an Access Procedure," issued on October 3, 2006, to inventors Fatih Ozluturk and Gary Lomp.  InterDigital Technology owns by assignment the entire right, title, and interest in and to the '004 patent.  A true and correct copy of the '004 patent is attached to this Complaint as Exhibit A.

8.    United States Patent No. 7,190,966 ("the '966 patent"), titled "Method and Apparatus for Performing an Access Procedure," issued on March 13, 2007, to inventors Fatih Ozluturk and Gary Lomp.  InterDigital Technology owns by assignment the entire right, title, and interest in and to the '966 patent.  A true and correct copy of the '966 patent is attached to this Complaint as Exhibit B.

## FIRST CAUSE OF ACTION
## INFRINGEMENT OF U.S. PATENT NO. 7,117,004

9.    The '004 patent is presumed valid under 28 U.S.C. § 282 and remains

2

enforceable.

10.     On information and belief, the Nokia Defendants manufacture, use, import, offer for sale, and/or sell products in the United States that infringe the '004 patent and will continue to do so unless enjoined by this Court.

11.     On information and belief, the Nokia Defendants manufacture, use, import, offer to sell, and/or sell in the United States the following Third Generation ("3G") Wideband Code Division Multiple Access ("WCDMA") handset and components thereof that infringe the '004 patent: N75. The identification of this specific model is not intended to limit the scope of the Complaint, and any remedy should extend to all infringing models.

12.     The Nokia Defendants know or should have known of InterDigital's rights in the '004 patent, and their infringement of the '004 patent has been willful and deliberate.

13.     The Nokia Defendants' past and continuing infringements of the '004 patent have caused irreparable damage to InterDigital and will continue to do so unless enjoined by this Court.

## SECOND CAUSE OF ACTION
## INFRINGEMENT OF U.S. PATENT NO. 7,190,966

14.     The '966 patent is presumed valid under 28 U.S.C. § 282 and remains enforceable.

15.     On information and belief, the Nokia Defendants manufacture, use, import, offer for sale, and/or sell products in the United States that infringe the '966 patent and will continue to do so unless enjoined by this Court.

16.     On information and belief, the Nokia Defendants manufacture, use, import, offer for sale, and/or sell in the United States the following Third Generation ("3G") Wideband Code Division Multiple Access ("WCDMA") handset and components thereof that infringe the '966

3

patent: N75. The identification of this specific model is not intended to limit the scope of the Complaint, and any remedy should extend to all infringing models.

17.    The Nokia Defendants know or should have known of InterDigital's rights in the '966 patent, and their infringement of the '966 patent has been willful and deliberate.

18.    The Nokia Defendants' past and continuing infringements of the '966 patent have caused irreparable damage to InterDigital, and will continue to do so unless enjoined by this Court.

## PRAYER FOR RELIEF

19.    WHEREFORE, InterDigital respectfully requests that this Court:

(a)    Find that the Nokia Defendants have infringed one or more claims of the '004 patent and the '966 patent;

(b)    Find that this is an exceptional case under 35 U.S.C. § 285;

(c)    Permanently enjoin the Nokia Defendants from infringing the '004 patent and the '966 patent under 35 U.S.C. § 283;

(d)    Award InterDigital an amount to be determined as compensatory damages for the infringement of the '004 patent and the '966 patent and the costs of the action, as fixed by the Court, under 35 U.S.C. § 284;

(e)    Award InterDigital its costs, including expenses and reasonable attorneys' fees, incurred in bringing and prosecuting this action under 35 U.S.C. § 285;

(f)    Award InterDigital prejudgment and post-judgment interest on all amounts awarded; and

(g)    Award InterDigital any further relief that this Court deems just and proper.

4

## JURY DEMAND

20.    InterDigital demands a jury trial as to all issues that are triable by a jury in this

action.


Dated:  August 7, 2007

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware  19801
(302) 888-6800
rherrmann@morrisjames.com

OF COUNSEL:
Patrick J. Coyne
Christopher P. Isaac
Lionel M. Lavenue
Houtan K. Esfahani
Rajeev Gupta
Qingyu Yin
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, DC  20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

Attorneys for Plaintiffs,
INTERDIGITAL COMMUNICATIONS, LLC
    and INTERDIGITAL TECHNOLOGY CORP.

5

# EXHIBIT B

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN 3G MOBILE HANDSETS**<br>**AND COMPONENTS THEREOF** | Investigation No. 337-TA-_____ |

## COMPLAINT OF INTERDIGITAL COMMUNICATIONS, LLC AND INTERDIGITAL TECHNOLOGY CORPORATION
### UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED

**COMPLAINANTS**

InterDigital Communications, LLC
781 Third Avenue
King of Prussia, Pennsylvania 19406-1409
(610) 878-7800

InterDigital Technology Corporation
Hagley Building, Suite 105
3411 Silverside Road, Concord Plaza
Wilmington, Delaware 19810-4812
(302) 477-2500

**COUNSEL FOR COMPLAINANTS**

Smith R. Brittingham IV
Patrick J. Coyne
Christopher P. Isaac
Lionel M. Lavenue
Houtan K. Esfahani
Elizabeth A. Niemeyer
Rajeev Gupta
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

**PROPOSED RESPONDENTS**

Nokia Corporation
Keilalahdentie 2-4
P.O. Box 226
FIN-00045 Espoo
Finland
358 (0) 7180 08000

Nokia Inc.
6000 Connection Drive
Irving, Texas 75039
USA
(972) 894-5000

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   COMPLAINANT ............................................................................................... 2

III.  PROPOSED RESPONDENTS ......................................................................... 3

IV.   THE TECHNOLOGY AND PRODUCTS-AT-ISSUE..................................... 3

V.    THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTION OF THE
      INVENTIONS ................................................................................................... 5

      A.  U.S. Patent No. 7,117,004........................................................................ 5

          1.  Identification of the Patent and Ownership by InterDigital.............. 5

          2.  Non-Technical Description of the Patent........................................... 5

          3.  Foreign Counterparts to the Patent ................................................. 6

          4.  Licenses............................................................................................ 7

      B.  U.S. Patent No. 7,190,966........................................................................ 7

          1.  Identification of the Patent and Ownership by InterDigital.............. 7

          2.  Non-Technical Description of the Patent........................................... 7

          3.  Foreign Counterparts to the Patent ................................................. 9

          4.  Licenses............................................................................................ 9

VI.   UNLAWFUL AND UNFAIR ACTS OF RESPONDENTS—
      PATENT INFRINGEMENT ............................................................................ 9

VII.  SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE ........... 11

VIII. HARMONIZED TARIFF SCHEDULE ITEM NUMBERS........................... 11

IX.   RELATED LITIGATION ............................................................................... 11

X.    THE DOMESTIC INDUSTRY ...................................................................... 14

      A.  Investments in Research and Development, and Engineering.................. 15

      B.  Investments in Licensing .......................................................................... 15

XI.   RELIEF REQUESTED.................................................................................... 16

# TABLE OF EXHIBITS

| Exhibit | Document |
|---|---|
| 1 | United States Patent No. 7,117,004 |
| 2 | United States Patent No. 7,190,966 |
| 3 | Assignment Documents for the '004 and the '966 Patents |
| 4 | Table Identifying Foreign Counterparts of the '004 and the '966 Patents |
| 5 | CONFIDENTIAL  Identification of Licensees |
| 6 | Claim Charts:  Infringement of '004 Patent by Nokia Handsets |
| 7 | Claim Charts:  Infringement of '966 Patent by Nokia Handsets |
| 8 | CONFIDENTIAL  Test Report Supporting Infringement Claim Charts for Nokia Handsets |
| 9 | Nokia Website Document Supporting Infringement of Asserted Patents by Nokia Handsets |
| 10 | Standards-Related Documents, 3GPP TS 25.211, Supporting Infringement of Asserted Patents by Nokia Handsets |
| 11 | Standards-Related Documents, 3GPP TS 25.213, Supporting Infringement of Asserted Patents by Nokia Handsets |
| 12 | Standards-Related Documents, 3GPP TS 25.301, Supporting Infringement of Asserted Patents by Nokia Handsets |
| 13 | Documents and Photographs of Representative Accused Infringing Nokia Handset Demonstrating Specific Instance of Importation and Sale |
| 14 | CONFIDENTIAL  Identification of InterDigital's Domestic Industry |

## TABLE OF APPENDICES

| Appendix | Document |
|---|---|
| A | Prosecution History of United States Patent No. 7,117,004 |
| B | Copies of References Cited in the Prosecution History of U.S. Patent No. 7,117,004 |
| C | Prosecution History of United States Patent No. 7,190,966[1] |
| D | Copies of Additional[2] References Cited in the Prosecution History of U.S. Patent No. 7,190,966 |
| E | CONFIDENTIAL Copies of Complainant InterDigital's License Agreements |
| F | Physical Sample of Nokia N75 Handset |

---

[1] Appendix C contains Patent Office records related to the last application in the line of applications leading to issuance of the '966 patent. Since the '966 patent is a continuation of the '004 patent, the Patent Office records related to the earlier applications in the line are contained in Appendix A, which is the prosecution history for the '004 patent.

[2] Because the '966 patent is a continuation of the '004 patent, Appendix D only contains copies of each reference that is cited on the face of the '966 patent or mentioned in its prosecution history, but not in the prosecution history of the '004 patent. The references cited in the prosecution history of the '004 patent are included in Appendix B.

## I.     INTRODUCTION

1.     This Complaint is filed by InterDigital Communications, LLC and InterDigital Technology Corporation (collectively referred to as "InterDigital") under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, based on the unlawful importation into the United States, the sale for importation, and the sale within the United States after importation by owners, importers, or consignees of certain 3G mobile handsets and components thereof that infringe any of United States Letters Patent Nos. 7,117,004 ("the '004 patent") and 7,190,966 ("the '966 patent") (sometimes collectively referred to as "the asserted patents").

2.     The proposed respondents are:  Nokia Corporation and Nokia Inc. (sometimes collectively referred to as "Nokia").

3.     Certified copies of the '004 and '966 patents are attached to this Complaint as Exhibits 1 and 2.  InterDigital owns all right, title, and interest in each of the asserted patents. The '004 and the '966 patent share the same recorded assignment, a certified copy of which is attached to this Complaint as Exhibit 3.

4.     An industry as required by 19 U.S.C. § 1337(a)(2) and (3) exists in the United States relating to the technology protected by the asserted patents.

5.     InterDigital seeks, as relief, an exclusion order barring from entry into the United States infringing 3G mobile handsets and components thereof imported by or on behalf of the respondents.  InterDigital also seeks, as relief, cease-and-desist orders prohibiting the sale for importation, importation, sale after importation, offer for sale, advertising, testing, the solicitation of sales, and other commercial activity relating to infringing 3G mobile handsets and components thereof.

## II.    COMPLAINANT

6.    Complainant InterDigital Communications, LLC is a Pennsylvania limited liability company with its principal place of business at 781 Third Avenue, King of Prussia, Pennsylvania 19406-1409.[3]  InterDigital Technology Corporation is a Delaware corporation with its principal place of business at Hagley Building, Suite 105, 3411 Silverside Road, Concord Plaza, Wilmington, Delaware 19810-4812.  InterDigital Communications, LLC and InterDigital Technology Corporation are subsidiaries of InterDigital, Inc., a Pennsylvania corporation.

7.    Since 1993, InterDigital has been engaged in the research, development, engineering, and licensing of Code Division Multiple Access ("CDMA") technology in the United States.  That work later transitioned into research, development, engineering, and licensing of Wideband CDMA technology ("WCDMA").  WCDMA is one of the wireless technologies often referred to commercially as "3G."

8.    At its King of Prussia, Pennsylvania, and Melville, New York facilities, among other activities, InterDigital researches, develops, engineers, and licenses technology for 3G mobile handsets.  InterDigital also files and prosecutes worldwide patent applications covering its innovative research and development of 3G mobile technology and communications protocols used in connection with that technology.

9.    InterDigital's research, development, and engineering business has developed proprietary technology that is used in most, if not all, 3G WCDMA handsets made throughout

---

[3] InterDigital Communications, LLC was previously known as InterDigital Communications Corporation, but in connection with an internal corporate reorganization, effective July 3, 2007, InterDigital Communications Corporation (a Pennsylvania corporation) became InterDigital Communications, LLC (a Pennsylvania limited liability corporation).  When referring to historical events, the term "InterDigital" will include the activities of InterDigital Communications Corporation.

the world. InterDigital's technology has been licensed to significant handset manufacturers throughout the world, including, at times in the past, Nokia.

## III. PROPOSED RESPONDENTS

10. Respondent, Nokia Corporation, is a Finnish corporation, with its principal place of business at Keilalahdentie 2-4, P.O. Box 226, FIN-00045 Nokia Group, Finland. Upon information and belief, Nokia Corporation is involved in the design, development and manufacture of 3G mobile handsets through its Mobile Phones Business Group.

11. Respondent, Nokia Inc., is a Delaware corporation, with its principal place of business at 6000 Connection Drive, Irving, Texas 75039. Upon information and belief, Nokia Inc. (d/b/a Nokia Mobile Phones) distributes Nokia-branded handsets in the United States.

## IV. THE TECHNOLOGY AND PRODUCTS-AT-ISSUE

12. The technology and products-at-issue concern mobile handsets for use in Third Generation or "3G" systems.

13. The first generation of cellular systems deployed in the United States in the late 1990s was referred to as Advanced Mobile Phone Service, or "AMPS." A variety of entities proposed improvements in that system, leading to "Second Generation" or "2G" systems. Those 2G systems used either Time Division Multiple Access ("TDMA") or Code Division Multiple Access ("CDMA") technology. The drawbacks of these systems spurred further improvements, resulting in so-called "3G" systems that were first deployed in Asia and later in Europe and the United States.

14. The components common to all 3G cellular systems include mobile devices and base stations. A mobile device can be either a portable cellular handset or a cellular PC card used in laptops. Base stations, which include towers, act as the first point of access for the

mobile device into the cellular system.  To place a call, for example, a mobile device must first establish communication with a base station over a communication channel.

15.    In a 3G cellular CDMA system, many mobile devices share the same frequency channel in the system.  This sharing of the frequency channel, while enhancing the efficiency of the system, leads to a gradual degradation of the system performance as the number of mobile devices in the system increases because signals transmitted by each mobile device in the system contribute to the overall interference in the system.  It is, therefore, important to minimize the power level at which each mobile device transmits, thereby minimizing the overall interference in the system while at the same time providing an acceptable communication quality to users of mobile devices.  Controlling the power transmitted from a mobile device is important, for example, when the device first attempts to establish communication with a base station, such as when a user attempts to place a call using the mobile device.

16.    In addition to minimizing the power transmitted by a mobile device as it tries to gain access to a cellular system, it is also important for the device to gain access as quickly as possible.  Reducing the access time improves the performance of the system as perceived by users when, for example, they attempt to place calls.

17.    InterDigital's continuing development efforts to improve CDMA cellular systems through development of WCDMA technologies have significantly contributed to the evolution of the 3G systems.

18.    The specific products-at-issue in this Investigation are mobile handsets, as well as components thereof, that are capable of operating in 3G cellular systems.  The mobile handsets at issue operate as cellular mobile telephones, allowing users of the handsets to place and receive

4

telephone calls as well as to run data applications, such as web browsing and audio and video streaming.

## V.    THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTION OF THE INVENTIONS

19.    There are two asserted patents in this Investigation: U.S. Patent No. 7,117,004 ("the '004 patent") and U.S. Patent No. 7,190,966 ("the '966 patent").

### A.    U.S. Patent No. 7,117,004

#### 1.    Identification of the Patent and Ownership by InterDigital

20.    The '004 patent, titled "Method and Subscriber Unit for Performing an Access Procedure," issued on October 3, 2006, to inventors Gary Lomp and Fatih Ozluturk. The '004 patent is based on Patent Application Serial No. 10/866,851 filed on June 14, 2004, and claims priority to an application filed on June 27, 1996.

21.    The '004 patent has 18 independent claims and 48 dependent claims. Claims 1, 2, 7-10, 14, 15, 21, 22, 24, 30-32, 34, 35, 46, 47, 49, 59, and 60 are being asserted in this Investigation.

22.    InterDigital Technology Corporation owns by assignment the entire right, title, and interest in and to the '004 patent. *See* Exhibit 3.

23.    This Complaint is accompanied by a certified copy and three copies of the prosecution history of the '004 patent and four copies of each reference cited on the face of the '004 patent or mentioned in its prosecution history. *See* Appendices A and B.

#### 2.    Non-Technical Description of the Patent

24.    The '004 patent generally covers improvements to the way a mobile device gains access to a cellular CDMA system. In a CDMA system, the signals transmitted by mobile devices contribute to the overall interference in the system. To minimize interference, it is

5

particularly important that mobile devices transmit at the minimum possible power level necessary to gain access to the system. It is also important for mobile devices to gain access to the system as quickly as possible when, for example, users attempt to place calls.

25. The improvements of the '004 patent achieve the above and other objectives. When a mobile device attempts to gain access to a cellular CDMA system, the mobile device starts transmitting short probe signals at an initial low power and gradually increases its transmission power until a base station in the system detects one of the short probe signals transmitted by the mobile device. In this fashion, the mobile device "ramps up" its transmission power until the base station hears the mobile device. Transmitting short probe signals while ramping up the power of the signals during the initial attempt to access the system enables the mobile device to gain access to the system in an efficient and rapid manner with minimal contribution to interference in the system.

26. In contrast to the power ramp up improvements of the '004 patent, prior known approaches employed a series of long signals, which included a message intended to be communicated along with a header. By repeatedly transmitting the entire long message and header, the initial power ramp up procedure introduced substantial unwanted interference into the system, and it took longer for mobile devices to gain access to the system. The additional interference caused poor system performance, including poor connections and failed call attempts. The prior approaches also resulted in longer delays for mobile devices to gain access to the system, further degrading system performance.

### 3.    Foreign Counterparts to the Patent

27. The '004 patent and its related U.S. applications have a number of foreign counterparts. Those foreign patents and applications, as well as related U.S. applications and patents, are identified in Exhibit 4.

### 4.    Licenses

28.    Under Commission Rule 210.12(a)(9)(iii), a list of licensed entities is attached to this Complaint as Confidential Exhibit 5.  Under Commission Rule 210.12(c)(1), three copies of the licenses are submitted with this Complaint as Confidential Appendix E.

### B.    U.S. Patent No. 7,190,966

#### 1.    Identification of the Patent and Ownership by InterDigital

29.    The '966 patent, titled "Method and Apparatus for Performing an Access Procedure," issued on March 13, 2007, to inventors Gary Lomp and Fatih Ozluturk.  The '966 patent is based on Patent Application Serial No. 11/169,490 filed on June 29, 2005, and claims priority to the same June 27, 1996 application, to which the asserted '004 patent also claims priority.  The '996 patent resulted from a continuation of the application that led to the asserted '004 patent.

30.    The '966 patent has 1 independent claim and 11 dependent claims.  Claims 1, 3, and 6-12 are being asserted in this Investigation.

31.    InterDigital Technology Corporation owns by assignment the entire right, title, and interest in and to the '966 patent.  *See* Exhibit 3.

32.    This Complaint is accompanied by a certified copy and three copies of the portion of the prosecution history of the '966 patent that is not included in Appendix A (the prosecution of the '004 patent) and four copies of each reference that was cited on the face of the '966 patent or mentioned in its prosecution history but not already included in Appendix B.  *See* Appendices C and D.

#### 2.    Non-Technical Description of the Patent

33.    The '966 patent generally covers improvements to the way a mobile device gains access to a cellular CDMA system.  In a CDMA system, the signals transmitted by mobile

devices contribute to the overall interference in the system. To minimize interference, it is particularly important that mobile devices transmit at the minimum possible power level necessary to gain access to the system. It is also important for mobile devices to gain access to the system as quickly as possible when, for example, users attempt to place calls.

34. The improvements of the '966 patent achieve the above and other objectives. When a mobile device attempts to gain access to a cellular CDMA system, the mobile device starts transmitting short signals at an initial low power and gradually increases its transmission power until a base station in the system detects one of the short signals transmitted by the mobile device. After the base station hears the mobile device, the mobile device then transmits to the base station a message that is longer in duration than each of the successively transmitted short signals, indicating to the base station that the mobile device wants to establish communication with the base station. In this fashion, the mobile device "ramps up" its transmission power until the base station hears the mobile device. Transmitting short signals while ramping up the power of the signals during the initial attempt to access the system enables the mobile device to gain access to the system in an efficient and rapid manner with minimal contribution to interference in the system.

35. In contrast to the power ramp up improvements of the '966 patent, prior known approaches employed a series of long signals, which included a message intended to be communicated along with a header. By repeatedly transmitting the entire long message and header, the initial power ramp up procedure introduced substantial unwanted interference into the system, and it took longer for mobile devices to gain access to the system. The additional interference caused poor system performance, including poor connections and failed call

attempts. The prior approaches also resulted in longer delays for mobile devices to gain access to the system, further degrading system performance.

### 3. Foreign Counterparts to the Patent

36. The '966 patent and its related U.S. applications have a number of foreign counterparts. Those foreign patents and applications, as well as related U.S. applications and patents, are the same as those identified in connection with the related '004 patent, and are identified in Exhibit 4.

### 4. Licenses

37. Pursuant to Commission Rule 210.12(a)(9)(iii), a list of licensed entities is attached to this Complaint as Confidential Exhibit 5. Pursuant to Commission Rule 210.12(c)(1), three copies of the licenses are submitted with this Complaint as Confidential Appendix E.

## VI. UNLAWFUL AND UNFAIR ACTS OF RESPONDENTS— PATENT INFRINGEMENT

38. The accused products are cellular telephone handsets capable of operating within a 3G system.

39. Generally, any of respondents' handsets capable of operating in a 3G WCDMA system are accused of infringing claims 1, 2, 7-10, 14, 15, 21, 22, 24, 30-32, 34, 35, 46, 47, 49, 59, and 60 of the '004 patent, and claims 1, 3, and 6-12 of the '966 patent.

40. In order to confirm that the accused products operate in the manner covered by the asserted patents, InterDigital has tested a selected accused product using analytical techniques that are generally accepted in the industry. The results of those analyses support the infringement allegations set forth in the claim charts accompanying this Complaint.

9

41. On information and belief, the respondents collectively manufacture, import, and sell in the United States after importation 3G mobile handsets that infringe one or more of the asserted patents. On information and belief, certain Nokia handsets can operate in a 3G WCDMA system. For example, at least the Nokia N75 handset infringes one or more of the asserted patents. The identification of a specific model is not intended to limit the scope of the Investigation, and any remedy should extend to all infringing models.

42. A chart that applies representative claim 1 of the '004 patent to the accused Nokia N75 handset is attached to this Complaint as Exhibit 6.

43. A chart that applies representative claim 1 of the '966 patent to the accused Nokia N75 handset is attached to this Complaint as Exhibit 7.

44. To the extent any of the asserted claims require products sold by the respondents to be operated in a 3G WCDMA system in order to satisfy all claim elements, on information and belief, the accused products infringe both directly and indirectly.

45. On information and belief, the respondents test or operate the accused products in the United States by using them in a 3G WCDMA system and performing the claimed methods, thereby directly infringing any claim requiring such operation.

46. Respondents have had notice of the asserted patents since before the filing of this Complaint or, at a minimum, will receive notice of the asserted patents upon the filing of this Complaint.

47. The accused product listed above is specifically designed to be used in a 3G WCDMA system. When the accused products are operated in a WCDMA system, they have no substantial non-infringing use.

48. Respondents induce infringement of the asserted claims by advertising their products as complying with the 3G WCDMA standards and being capable of operating according to those standards, by publishing manuals and promotional literature describing the operation of the accused devices in an infringing manner according to the 3G WCDMA standards, and by offering support and technical assistance to their customers that encourage use of the accused products in ways that infringe the asserted claims.

## VII.    SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE

49. On or around May 4, 2007, representatives for InterDigital purchased several imported Nokia handsets in the United States. Exhibit 13 is a copy of a receipt for the purchase of a Nokia N75 handset, and a series of photographs of the handset and the box in which the handset was delivered. The label on the box bears a Nokia logo. The label on the inside of the handset states that the handset was made in Finland. A physical sample of the Nokia N75 handset (that was purchased as described above) is submitted with this Complaint as Appendix F.

## VIII.    HARMONIZED TARIFF SCHEDULE ITEM NUMBERS

50. On information and belief, the Harmonized Tariff Schedule of the United States item numbers under which the infringing Nokia handsets or components thereof may be imported into the United States may be at least HTSUS 8525 and subsections thereof (including 8525.20.05, 8525.20.30, and 8525.20.90), 8527.90.40, 8527.90.95, and 8529 and subsections thereof.

## IX.    RELATED LITIGATION

51. There has been no court or agency litigation, domestic or foreign, involving the specific unfair acts asserted in this Complaint.

52.     Nokia filed a suit in 2005 against InterDigital Communications Corporation and InterDigital Technology Corporation in the U.S. District Court for the District of Delaware seeking a declaratory judgment that a number of InterDigital patents relating to cellular telephone technology were invalid or not infringed.  Neither of the asserted patents was the subject of any declaratory judgment request, and that declaratory judgment claim was dismissed by the Court.  The complaint also claimed that certain of InterDigital's statements that certain of InterDigital's patents are essential to the 3G standard violated the Lanham Act.  *See Nokia Corp. v. InterDigital Communications Corp.*, Civ. Action No. 05-16 (D. Del. 2005).  Nokia later identified specific InterDigital patents and alleges such patents are not essential to the 3G standard.  Although neither of the asserted patents was specifically identified by Nokia as allegedly not essential to the 3G standard, pursuant to a First Amended Case Management Order issued on July 9, 2007, by the Special Master in the case, Nokia may later identify additional InterDigital patents to be included in the case.  Moreover, also pursuant to the First Amended Case Management Order, Nokia's attempt to take discovery on validity, infringement, and enforceability was denied, but Nokia may seek to modify this limitation after claim construction.

53.     In 2003, a dispute arose between InterDigital and Nokia concerning Nokia's royalty obligations under a Patent License Agreement.  This matter was submitted to arbitration, and in mid-2005 the Arbitral Tribunal issued its award finding, among other things, that Nokia's obligation to pay certain royalties had been triggered.  There was a subsequent action in the Southern District of New York confirming the Award and also a subsequent arbitration between the parties.  In April 2006, the parties settled these disputes in a manner that provided Nokia with a 2G license for certain products and a release for certain 3G-related activities occurring before

the effective date of the settlement. There is no ongoing 3G license between InterDigital and Nokia.

54.     On March 23, 2007, InterDigital filed a complaint with the International Trade Commission identifying as proposed respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America LLC, and alleging infringement of the '004 patent, U.S. Patent No. 6,674,791 ("the '791 patent"), and U.S. Patent No. 6,973,579 ("the '579 patent"). The complaint requested that the Commission institute an investigation and, after determining there had been a violation of 19 U.S.C. § 1337, issue a permanent exclusion order and a permanent cease-and-desist order. An investigation was instituted on April 20, 2007, as Investigation No. 337-TA-601. On June 4, 2007, InterDigital filed an amended complaint in that investigation alleging infringement of the '966 patent. That investigation is currently in discovery.

55.     On March 23, 2007, the same day InterDigital filed the complaint in Investigation No. 337-TA-601, InterDigital filed a complaint against the same Samsung entities in the U.S. District Court for the District of Delaware alleging infringement of the '004, '791, and '579 patents. *See InterDigital Communications Corp. v. Samsung Electronics Corp., Ltd.*, Civ. Action No. 07-165 (D. Del. 2007). On May 4, 2007, InterDigital filed an amended complaint in that action alleging infringement of the '966 patent. This action in the District of Delaware has been stayed until the ITC determination in Investigation No. 337-TA-601 becomes final.

56.     On March 23, 2007, the same day InterDigital filed the complaints in Investigation No. 337-TA-601 and in the U.S. District Court for the District of Delaware, Samsung Telecommunications America LLP ("Samsung Telecom") and Samsung Electronics Co., Ltd. ("Samsung Electronics") filed a complaint against defendants InterDigital Communications

13

Corporation, InterDigital Technology Corporation, and Tantivy Communications, Inc. in the

U.S. District Court for the District of Delaware. The complaint seeks damages and injunctive

relief for defendants' alleged refusal to comply with their contractual obligations to be prepared

to license their patents on fair, reasonable, and nondiscriminatory ("FRAND") terms. The

complaint also seeks declarations that (i) InterDigital's alleged refusal to provide FRAND

licenses to Samsung Telecom or Samsung Electronics constitutes an unfair business practice; (ii)

Samsung Telecom and Samsung Electronics have a right to InterDigital's patents by virtue of

their relationship with Qualcomm Incorporated; (iii) the claims of various InterDigital's patents

are unenforceable; (iv) the claims of various InterDigital's patents are invalid; and (v) the claims

of various InterDigital's patents are not infringed by Samsung Telecom or Samsung Electronics.

*See Samsung Electronics Corp., Ltd. v. InterDigital Communications Corp.*, Civ. Action No. 07-

167 (D. Del. 2007). Neither of the asserted patents was specifically identified in the complaint.

This action has been stayed until September 14, 2007.

## X.    THE DOMESTIC INDUSTRY

57.    InterDigital has established a domestic industry under at least 19 U.S.C.

§ 1337(a)(3)(C).

58.    A domestic industry exists with respect to InterDigital's activities in the United

States that exploit the asserted patents by reason of InterDigital's substantial investment in

domestic research, development, engineering, and licensing of the WCDMA technology

protected by the patents, including past and present development of the technology itself, testing

of that technology and components, and technical support services to licensees. InterDigital's

research activities with respect to CDMA technology date back to 1993 and continue today.

A.    Investments in Research and Development, and Engineering

59.    InterDigital operates facilities in King of Prussia, Pennsylvania and Melville, New York that are used for the research and development and engineering of technology used in the 3G mobile handsets at issue and covered by the asserted patents.

60.    In 1993, InterDigital began working on research and development of a CDMA technology at its Melville, New York facility. That work later transitioned into research and development of WCDMA technology. That WCDMA technology is utilized by handsets and PC cards today, including in the accused products, and is covered by the '004 and '966 patents. In 1997, InterDigital also began working on CDMA research and development projects at its King of Prussia location. Between 1993 and 1999, InterDigital employed between 21 and 130 engineering and technical staff, associated support personnel, and management personnel in that research.

61.    The value of InterDigital's plant and equipment and the specific number of employees involved in these research and development activities are disclosed in more detail in Confidential Exhibit 14.

B.    Investments in Licensing

62.    InterDigital has invested in personnel and resources to monitor the market, identify potential manufacturers and users of its 3G wireless technology, establish contacts with those potential manufacturers and users, provide pre-licensing technical services, negotiate licenses, conduct technology transfers, and monitor licensee compliance with the licensing program.

63.    InterDigital's 3G wireless technology licensing efforts include the '004 and '966 patents.

64.   InterDigital's investments in intellectual property and technology licensing operations attributable to domestic industry activities exploiting the '004 and '966 patents are set forth in more detail in Confidential Exhibit 14.

## XI.    RELIEF REQUESTED

65.   WHEREFORE, by reason of the foregoing, Complainant InterDigital respectfully requests that the United States International Trade Commission:

(a)    Institute an immediate Investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337(a)(1)(B)(i) and (b)(1) with respect to violations of Section 337 based upon the importation, sale for importation, and sale after importation into the United States of infringing 3G mobile handsets and components thereof that infringe one or more of the asserted claims of InterDigital's United States Letters Patent Nos. 7,117,004 or 7,190,966;

(b)    Schedule and conduct a hearing on said unlawful acts and, following said hearing;

(c)    Issue a permanent exclusion order pursuant to 19 U.S.C. § 1337(d)(1) barring from entry into the United States all infringing 3G mobile handsets and components thereof imported by or on behalf of any of the respondents;

(d)    Issue a permanent cease-and-desist order, pursuant to 19 U.S.C. § 1337(f), directing each respondent to cease and desist from importing, marketing, advertising, demonstrating, warehousing inventory for distribution, offering for sale, selling, distributing, licensing, or using 3G mobile handsets or components thereof that infringe one or more claims of the asserted patents; and

(e)     Grant such other and further relief as the Commission deems just and proper

based on the facts determined by the Investigation and the authority of the Commission.

Respectfully Submitted,

Dated:  August 7, 2007

Smith R. Brittingham IV
Patrick J. Coyne
Christopher P. Isaac
Lionel M. Lavenue
Houtan K. Esfahani
Elizabeth A. Niemeyer
Rajeev Gupta

FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001
Telephone:  (202) 408-4000
Facsimile:  (202) 408-4400

Counsel for Complainants
InterDigital Communications, LLC and
InterDigital Technology Corporation

17

## VERIFICATION OF COMPLAINT

I, Bruce G. Bernstein, declare, in accordance with 19 C.F.R. §§ 210.4 and 210.12(a), under penalty of perjury, that the following statements are true:

1.  I am the Chief Intellectual Property and Licensing Officer for Complainant InterDigital Communications, LLC as well as for Complainant InterDigital Technology Corporation.  I am duly authorized to sign this Complaint on behalf of both Complainants.

2.  I have read the foregoing Complaint.

3.  To the best of my knowledge, information, and belief, based on reasonable inquiry, the foregoing Complaint is well-founded in fact and is warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

4.  The allegations and other factual contentions have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

5.  The foregoing Complaint is not being filed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Executed on: August ⎯6⎯, 2007

Bruce G. Bernstein
Chief Intellectual Property and Licensing Officer
InterDigital Communications, LLC


Executed on: August ⎯6⎯, 2007

Bruce G. Bernstein
General Patent Counsel
InterDigital Technology Corporation